## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

UNITED STATES OF AMERICA
*ex rel.* DR. CLARISSA ZAFIROV,

       Plaintiff/Relator,

v.

FLORIDA MEDICAL ASSOCIATES, LLC,
d/b/a VIPCARE; PHYSICIAN PARTNERS,
LLC, PHYSICIAN PARTNERS
SPECIALTY SERVICES, LLC; SUN LABS
USA, INC.; ANION TECHNOLOGIES,
LLC; ANTHEM, INC.; FREEDOM
HEALTH, INC.; OPTIMUM
HEALTHCARE, INC.; and SIDDHARTHA
PAGIDIPATI,

       Defendants.

Case No. 8:19-cv-01236-SDM-SPF

DISPOSITIVE MOTION

## DEFENDANTS ANTHEM, INC., FREEDOM HEALTH, INC., AND OPTIMUM HEALTHCARE, INC.'S MOTION TO DISMISS COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendants Anthem, Inc. ("Anthem"), Freedom Health, Inc. ("Freedom"), and

Optimum HealthCare, Inc. ("Optimum") (collectively, the "MA Defendants"),[1] by and

through undersigned counsel, respectfully move to dismiss the Complaint filed by Relator

Dr. Clarissa Zafirov ("Relator") for failure to state a claim under Federal Rule of Civil

Procedure ("Rule") 12(b)(6), for failure to plead fraud with specificity under Rule 9(b), for

failure to allege a plausible basis for the MA Defendants' liability under Rule 8(a), and

---

[1] Relator's Complaint impermissibly groups together Defendants Anthem, Freedom, and Optimum as "MA [Medicare Advantage] Defendants." *See infra* Section IV(A)(2). However, to remain consistent with the Complaint, Defendants will use the term "MA Defendants" in this memorandum of law.

pursuant to the False Claims Act's public disclosure bar, 31 U.S.C. § 3730(e).

## I.   INTRODUCTION

Relator asserts vague and undifferentiated False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*., allegations against the MA Defendants that neither meet the particularity requirements of Rule 9(b) nor provide a plausible basis under Rule 8(a) that the MA Defendants knowingly violated the FCA.  Rather, Relator—who purports to be an employee of Florida Medical Associates, LLC d/b/a VIPcare ("VIPcare")—presents conclusory allegations that amount to nothing more than her unsupported assertion that the MA Defendants must have violated the FCA because they had a business relationship with her employer and with other entities that she labels "PO [Provider Organization] Defendants."

But Relator does not plead with particularity the essential facts of a false claim—the what, when, where, how, and by whom—demonstrating that the MA Defendants knowingly submitted any specific false claims to the Government.  And she consistently and impermissibly lumps all of the MA Defendants together, failing to plead with particularity the facts relevant to each MA Defendant.  In short, she does not plead a plausible basis that any of the MA Defendants knowingly violated the FCA.  Relator, a corporate outsider to all the MA Defendants, does not allege any inside information regarding their business processes or practices, and her few references to the MA Defendants tellingly and impermissibly rely on publicly available information.  There is no basis to expect that Relator can cure these deficiencies through amendment, and her Complaint should therefore be dismissed with prejudice as to each of the MA Defendants.

## II.   STATEMENT OF FACTS

### A.   Medicare Advantage

Relator alleges that Defendants submitted false claims in connection with the Medicare Part C program, commonly known as Medicare Advantage ("MA").  Complaint ("Compl.") (Doc. 1) ¶¶ 5, 45.  Under MA, private insurance companies—referred to as MA Organizations ("MAOs")—administer Medicare benefits.  42 U.S.C. § 1395w-22; Medicare Managed Care Manual ("MMCM"[2]) ch. 1, § 10.  MAOs, such as Anthem, Freedom, and Optimum, enter into contracts with the Centers for Medicare and Medicaid Services ("CMS"), whereby the MAOs provide benefits to their enrollees through various types of health care providers.  *See* 42 U.S.C. § 1395w-22, § 1395w-23, § 1395w-27.  In return, each MAO receives prospective payments from CMS on a per-member-per-month basis that reflect the expected costs of providing care to the enrollees under each contract.  42 U.S.C. § 1395w-23(a).  This program is significantly different from Medicare Parts A and B, whereby health care providers bill and are reimbursed by CMS on a fee-for-service basis. *See* 42 U.S.C. § 1395w-21(a); 42 U.S.C. § 1395c *et seq*.; 42 U.S.C. § 1395j *et seq*.

The MA program is designed to compensate MAOs for the risks they are assuming according to the expected costs of treating beneficiaries.  *See* 42 U.S.C. § 1395w-23(a)(1)(C)(i); MMCM ch. 7, § 20.  CMS applies a system known as risk adjustment to determine this compensation, which adjusts the payments to MAOs based on enrollees' demographic information and health status.  *See* 42 U.S.C. § 1395w-23(a)(1)(C)(i); 42 C.F.R.

---

[2] https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Internet-Only-Manuals-IOMs-Items/CMS019326.

§ 422.308(c).  CMS bases the health status information on enrollees' diagnoses.  42 C.F.R.

§ 422.310; MMCM ch. 7, § 70.  MAOs do not provide care directly to enrollees and do not

diagnose enrollees' conditions, but instead typically receive diagnosis information in the

form of diagnosis codes generated by physicians and other providers.  *See* MMCM ch. 7,

§ 40.  MAOs, in turn, submit the diagnosis information to CMS.  42 C.F.R. § 422.310.  CMS

then uses its own Hierarchical Condition Category ("HCC") model to group diagnosis codes

together in a way that takes into account the clinical characteristics, severity, and cost

implications of the diagnoses.  MMCM ch. 7, § 70.1.  CMS combines each enrollee's health

status information, as reflected by HCCs, and demographic factors to calculate a "risk score"

for that enrollee, which CMS then uses to risk adjust, either up or down, CMS's base

payments to the MAOs for their enrollees.  42 U.S.C. § 1395w-23(a)(1); MMCM ch. 7, § 70.

CMS does not require this diagnosis code information to be "perfect."  Medicare

Program; Medicare+Choice Program, 65 Fed. Reg. 40,170, 40,268 (June 29, 2000)

("[MAOs] cannot reasonably be expected to know that every piece of data is correct, nor is

that the standard that [CMS], the OIG, and DoJ believe is reasonable to enforce.").  Rather,

CMS expects MAOs to "mak[e] good faith efforts to certify" that the data submitted to CMS

for each annual contract is "accura[te], complete[], and truthful[]" based on "best knowledge,

information, and belief."  *Id.*; 42 C.F.R. § 501(l)(2).

**B.      Procedural History**

On May 20, 2019, Relator filed the Complaint and a motion to file the Complaint

under seal, which the Court granted on May 23, 2019.  Compl.; Doc. 2; Doc. 3.  On June 11,

2020, the Court directed the clerk to unseal the record, including the Complaint.  Doc. 17.

The Government filed a notice declining to intervene on September 21, 2020.  Doc. 40.

**C.      Relator's Complaint**

Relator alleges that Defendants violated the FCA by knowingly submitting or causing the submission of false claims in violation of 31 U.S.C. § 3729(a)(1)(A), knowingly using or causing the use of false records and statements material to false claims in violation of § 3729(a)(1)(B), and knowingly using or causing the use of false records and statements material to the obligation to repay overpayments and knowingly and improperly avoiding the repayment of the same in violation of § 3729(a)(1)(G) (a "reverse false claim").[3]  Compl. ¶ 4.

Relator's allegations focus primarily on the conduct of her employer at the time of the Complaint, VIPcare, which she groups with other entities as the "PO Defendants."  Compl. ¶¶ 6–7, 49.  She contends that the PO Defendants violated the FCA by inaccurately coding diagnoses recorded by physicians, mainly through the use of a "5 Star Check List" and an improper physician incentive structure.  *Id.* ¶¶ 49–90.  The Complaint does not clearly allege the role that Anthem, Freedom, or Optimum allegedly played in furthering these violations as the Complaint does not plead facts describing the involvement of the MA Defendants and does not distinguish these entities with particularity.  *Id.* ¶ 8; *see infra* Section IV(A)(2).  Relator does not even assert that Anthem's own conduct violated the FCA, but only that it is responsible for the alleged violations of its subsidiaries, Freedom and Optimum, as their corporate parent.  Compl. ¶ 8.

---

[3] Relator's titles for her claims in the Complaint do not match the provisions of the FCA that she cites. Relator's first and second claims, against all Defendants, cite 31 U.S.C § 3729(a)(1)(A) and (B) respectively, but are both titled "Reverse False Claims."  However, reverse false claims are covered by § 3729(a)(1)(G). Relator's third claim, against MA Defendants, cites § 3729(a)(1)(G), but is mistitled as "Making or Using False Records or Statements," which is actually covered by § 3729(a)(1)(B).  Compl. ¶¶ 97–108.

## III.  LEGAL STANDARD

A complaint brought under the FCA must allege (i) the existence of a "false or fraudulent claim for payment," or "a false record or statement material to a false or fraudulent claim," or "a false record or statement material to an obligation to pay or transmit money or property to the Government"; (ii) that any such claim was "material" to the Government's payment decision; and (iii) that a claim was submitted "knowingly."  31 U.S.C. §§ 3729(a)(1)(A)–(B), (G).  Because the FCA is a fraud statute, Relator's Complaint is subject to the pleading standards of Rule 9(b).  *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1307–08 (11th Cir. 2002).  Rule 9(b) requires that a relator plead fraud with "particularity."  *Id.* at 1309–10.  A relator must allege facts to show the "'actual submission' of a false claim," and cannot simply assert that false claims "must have been submitted" or "were likely submitted" to the Government.  *United States ex rel. Ashmore v. 1st Fin. Inc.*, No. 8:16-cv-1387-T-23JSS, 2018 WL 310032, at *1 (M.D. Fla. Jan. 5, 2018) (Merryday, J.) (quoting *Clausen*, 290 F.3d at 1311); *see also Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (FCA allegations must go beyond "information and belief" or "aware[ness]" of practices and explain the details of false claims actually submitted).[4] The requirements of Rule 9(b) are satisfied only if a relator's allegations include the "who, what, where, when, and how" of the alleged fraud.  *Corsello*, 428 F.3d at 1013–14; *see also Marsteller ex rel. United States v. Tilton*, 880 F.3d 1302, 1310–11 (11th Cir. 2018) (a relator must plead "facts as to time, place, and substance" of the alleged fraudulent activity).[5]

---

[4] Unless otherwise specified, all internal quotations and citations are omitted.
[5] Relator is not entitled to a relaxed pleading standard by virtue of being an outsider as to all MA Defendants. *See Clausen*, 290 F.3d at 1314 (finding that "while an insider might have an easier time obtaining information about billing practices and meeting the pleading requirements under the False Claims Act, neither the Federal

While Rule 9(b) permits relators to allege knowledge generally, a relator must still plead knowledge in accordance with Rule 8(a)'s plausibility requirement.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 686–87 (2009).  Rule 8(a) requires that a relator do more than allege the bare elements of an FCA action—she must allege facts sufficient to state a plausible, not merely conceivable, claim*. Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *United States ex rel. Keeler v. Eisai*, 568 F. App'x 783, 792–93 (11th Cir. 2014).  If the Complaint does "not permit the court to infer more than the mere possibility of misconduct," a relator has not met her burden under Rule 8(a).  *Iqbal*, 556 U.S. at 679.

## IV.   ARGUMENT

Relator fails to plead her allegations with the particularity required by Rule 9(b) and fails to plausibly allege that the MA Defendants acted knowingly under Rule 8(a).  With respect to her reverse false claim allegations, she does not plead basic elements of a claim.  Additionally, Relator's allegations must be dismissed pursuant to the "public disclosure bar" provision of the FCA, 31 U.S.C. § 3730(e)(4)(A), because her claims arise out of a publicly disclosed and previously settled matter involving Freedom and Optimum.  Relator's Complaint accordingly fails to state any claims against the MA Defendants and should be dismissed with prejudice because allowing her to file an amended complaint would be futile.

**A.**      **Relator's Generalized Allegations Against the MA Defendants Fail to Establish That They Submitted False Claims to CMS.**

"The submission of a claim is . . . the *sine qua non* of a False Claims Act violation," but the Complaint does not allege facts showing that the MA Defendants submitted false

---

Rules nor the Act offer any special leniency" to a corporate outsider).  The face of the Complaint confirms that Relator was never employed by any of the MA Defendants.  *See* Compl. ¶ 6.

claims for payment to CMS. *Clausen*, 290 F.3d at 1311–12 ("failure to allege with any specificity if—or when—any actual improper claims were submitted to the Government is indeed fatal to [relator's] complaints"). No amount of detail regarding any other aspect of the alleged fraudulent scheme—of which Relator offers very little—can remedy a failure to plead with particularity this essential "link in the FCA liability chain." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) (affirming dismissal where relator "described in detail what he believes is an elaborate scheme," but did not allege with particularity "that the defendants *actually submitted* reimbursement claims"). Relator must plead the "who, what, where, when, and how" of specific "fraudulent submissions" to meet the requirements of Rule 9(b). *Corsello*, 428 F.3d at 1014.

1.      **Relator Fails to Allege Any Specific False Claims That the MA Defendants Submitted to CMS.**

The Court may not simply infer submission of false claims because "such an assumption would strip all meaning from Rule 9(b)'s requirements of specificity." *Corsello*, 428 F.3d at 1013. That is all that Relator's Complaint offers, summarily alleging that "the Defendants" submitted either "thousands" or "hundreds of thousands" of false diagnosis codes to CMS, but providing at most three insufficient "examples" of such diagnosis code submissions by Freedom that impermissibly rely on "information and belief" and no allegations at all with respect to Anthem or Optimum. Compl. ¶¶ 45, 48, 72–74. Even assuming *arguendo* that an individual diagnosis code is a claim,[6] these conclusory allegations

---

[6] Relator simply assumes that individual diagnosis codes submitted to CMS are "claims" within the meaning of the FCA, but an individual diagnosis code submission to CMS in the MA program is not a "request or demand . . . for money or property." 31 U.S.C. § 3729(b)(2)(A). Given that diagnosis code data submissions lack a request for funds, they cannot constitute a false "claim" for FCA purposes. *Cf. United States v. Krizek*, 111 F.3d 934, 939–40 (D.C. Cir. 1997); *United States ex rel. Bahnsen v. Bos. Sci. Neuromodulation Corp.*, Civ.

fall far short of the requirements of Rule 9(b) because Relator does not sufficiently plead any "specific facts to show the *actual submission* of a false claim to the United States." *Ashmore*, 2018 WL 310032, at *1 (emphasis added); *see also Clausen*, 290 F.3d at 1311–12.

For Freedom, Relator generally alleges that Freedom "accepted" diagnosis codes from the PO Defendants that it knew were invalid, without any factual allegations indicating that Freedom or the other MA Defendants submitted these specific codes to CMS.  Compl. ¶¶ 50–53.  She specifies no patients, no diagnosis codes, and no claims submitted to CMS by Freedom and no resulting payments by CMS to Freedom arising from the submission of the allegedly false diagnosis codes.  At most, Relator provides three "examples" of improper diagnosis codes allegedly billed by physicians to Freedom.  *See* Compl. ¶¶ 72–74.  Each allegation falls short of Rule 9(b)'s requirements:

- "Freedom paid that claim and, upon information and belief, assigned C.B. that diagnosis in documents submitted to CMS."  Compl. ¶ 72.

- "Upon information and belief, Freedom submitted claims and documentation to CMS for B.G. in at least the years 2015, 2016, [and] 2017 . . . . Freedom submitted claims and other documentation to CMS with the phony CLL diagnosis."  Compl. ¶ 73.

- "[T]he PO Defendants characterized A.B. as having at least two other diagnoses for which Freedom submitted claims and other documentation to CMS."  Compl. ¶ 74.

In none of these examples does Relator allege facts showing that Freedom, in fact, submitted the supposedly false diagnosis codes to CMS.  As a corporate outsider who has never worked for Freedom, she instead relies entirely on "information and belief."  Statements like these, which fail to sufficiently allege that a false claim was actually submitted to CMS, are precisely the sort of "conclusory statement[s] tacked on to each allegation" that cannot

---

No.11-1210, 2018 WL 4604307, at *4 (D.N.J. Sept. 24, 2018).

satisfy Rule 9(b). *Clausen*, 290 F.3d at 1312 ("If Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in such conclusory fashion."); *Corsello*, 428 F.3d at 1011 ("baldly asserting that improper practices resulted in the submission of false claims" is not sufficient under Rule 9(b)); *United States ex rel. Jallali v. Sun Healthcare Grp.*, No. 12-61011-CIV-WILLIAMS, 2015 WL 10687577, at *2, 6 (S.D. Fla. Sep. 17, 2015), *aff'd*, 667 F. App'x 745 (11th Cir. 2016) (dismissing a complaint "merely alleging that a relator has seen patient charts that contained improper billing codes" and finding that she "conflate[s] the internal processes of maintaining patient records with the separate act of billing the government").

Relator's reliance "upon information and belief"—whether made explicit as in paragraphs 72 and 73, or implied by a lack of factual pleading as in paragraph 74[7]—does not provide a proper basis for these allegations. Compl. ¶¶ 72–74. Relator "cannot base a fraud claim on 'information and belief.' Rather, the relator must allege the time, the circumstance, and the details of the alleged fraud." *United States ex rel. McFarland v. Fla. Pharmacy Sols.*, 358 F. Supp. 3d 1316, 1326 (M.D. Fla. 2017). Where, as here, allegations are "based on belief," they "can survive, if at all, only to the extent that the Complaint provides the belief with some indicia of reliability." *Cade v. Progressive Cmty. Healthcare, Inc.*, No. 1:09-cv-3522-WSD, 2011 WL 2837648, at *5 n.5 (N.D. Ga. July 14, 2011). Where a complaint contains "[n]o specific allegation of fact [that] supports the conclusion that the

---

[7] Relator cannot skirt this issue by simply omitting the phrase "on information and belief." Where "allegations that Defendants submitted false claims are not explicitly stated 'upon information and belief,' the inability to plead presentment with particularity, the lack of firsthand knowledge about the submission of claims, and [Relator's] limited role in the billing process support that [Relator] is *implicitly pleading based on belief*." *See Cade v. Progressive Cmty. Healthcare, Inc.*, No. 1:09–cv–3522–WSD, 2011 WL 2837648, at *5 n.5 (N.D. Ga. July 14, 2011) (emphasis added).

[defendants] submitted a fraudulent claim," it must be dismissed. *McFarland*, 358 F. Supp. 3d at 1325. The Complaint fails to satisfy this standard.

*Atkins* provides a comparable case. As in *Atkins*—in which the Eleventh Circuit affirmed dismissal "for want of sufficient indicia of reliability to support the assertion that the defendants submitted false claims"—Relator here (i) is a provider without firsthand knowledge of the submission of claims to CMS, and (ii) "does not profess to have firsthand knowledge of the defendants' submission of false claims" and "summarily concludes that the defendants submitted false claims to the government." 470 F.3d at 1358–59.

Similarly, in *Corsello*, the relator was an employee of two of the defendants but had never worked in any defendant's billing department. Although his complaint "alleged many details of numerous schemes, employees, and claims," and "provided the initials of patients whose Medicare forms were improperly completed," his allegations, "often based on information and belief, lacked the indicia of reliability required by *Clausen* because they failed to provide an underlying basis for [his] assertions." 428 F.3d at 1013–14. Like Relator here, Corsello "did not explain why he believe[d] fraudulent claims were ultimately submitted." *Id.* at 1014. The Eleventh Circuit rejected the argument that "a pattern of improper practices . . . leads to the inference that fraudulent claims were submitted to the government" and "decline[d] to make inferences about the submission of fraudulent claims." *Id.* at 1013. Corsello did not allege the "who, what, where, when, and how of fraudulent submissions to the government." *Id.* at 1014. This same failure requires dismissal here.

Relator's summary allegations that "the defendants" collectively submitted false diagnosis codes to CMS through six "schemes" do not remedy this failure. Compl. ¶¶ 47–48.

*Clausen*, 290 F.3d at 1311 (Rule 9(b) "does not permit a [relator] merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government").  Her first three allegations—which relate to diagnosis coders and incentives causing physicians to generate inaccurate diagnosis data—contain no facts at all regarding the conduct of the MA Defendants.  Relator provides no details regarding any diagnosis coders that the MA Defendants utilized, let alone how such coders caused the generation of false claims.  The assertion that physicians were induced into improper diagnosis coding appears to be based on the use of the "5 Star Check List" by the *PO Defendants*.  Compl. ¶¶ 49–79.  But Relator does not allege with particularity that the PO Defendants' use of this checklist resulted in the submission of false claims by the MA Defendants.  Similarly, the Complaint states that the "PO Defendants implemented a bonus system," references "VIPcare's Performance Bonus Program," and describes the program as directed by employees of the PO Defendants.  *See, e.g.,* Compl. ¶¶ 47, 80–90.  She does not contend that the MA Defendants had involvement in or were even aware of these programs, or that the operation of these programs resulted in the submission of any false claims.  *Id.*

As to her fourth assertion that Defendants "knowingly us[ed] an automated submission processing system that was incapable of filtering out invalid data," Relator never mentions this contention again in her Complaint, and it is unclear what she is alleging.  Compl. ¶ 47.  In any event, this bald assertion is completely unsupported by factual allegations describing this automated submission system, how it operates, or the manner in which it was supposedly used by the MA Defendants to submit false claims to CMS.

Relator's fifth "scheme" of providing "medically unnecessary office visits," Compl. ¶¶ 47, 49, provides no basis for an FCA claim even assuming the allegation was pled with sufficient detail—which it is not.  As the Complaint itself acknowledges, in the MA payment system, "payment does not depend on the amount of healthcare services provided to an enrollee."  Compl. ¶ 30.  "Medically unnecessary" services thus do not lead to increased costs to CMS in the MA program and cannot be the basis for an FCA claim.  *See United States ex rel. Rasmussen v. Essence Grp. Holdings Corp.,* No. 17-3273-CV-S-BP, 2020 WL 4381771, at *4 (W.D. Mo. Apr. 29, 2020) (dismissing claims because the service at issue, even if "medically unnecessary (as Relator alleges) . . . cannot support a claim under the FCA" for MA); *United States ex rel. Gray v. United Healthcare Ins. Co.*, No. 15-cv-7137, 2018 WL 2933674, at *7 (N.D. Ill. Oct. 29, 2018) (similarly dismissing FCA claims).

Finally, Relator alleges that the MA Defendants "knowingly pursued these FCA violations without any meaningful compliance training programs . . . despite that Defendants Freedom and Optimum are under strict legal obligations pursuant to the Corporate Integrity Agreement."  Compl. ¶ 91; *see also id.* ¶ 47.  But the Complaint does not allege what these "strict legal obligations" are nor how they were violated.  It contains no factual allegations at all regarding the MA Defendants' compliance programs, any deficiencies in those programs, or how failures of those programs caused the submission of any specific false claims to CMS. Relator likewise identifies no facts at all about the publicly available Corporate Integrity Agreement or any resulting false claims from any alleged failure to comply with its requirements.  As a corporate outsider to all three MA Defendants, Relator has alleged no specific facts regarding the MA Defendants' compliance programs or indeed any aspects of

their operations.  Instead, Relator's allegations reduce to a bald assertion that because there were alleged violations by the PO Defendants, there necessarily must have been an insufficient compliance program by the MA Defendants.  This circular and conclusory logic, devoid of factual support, does not show the actual submission of a false claim to the United States by the MA Defendants and cannot satisfy the requirements of Rule 9(b).

> **2.      Relator Fails to Allege Who Submitted Any False Claims to CMS.**

Relator does not sufficiently plead *who* submitted any false claims to CMS.  First, Relator fails to adequately distinguish among Defendants.  The Complaint frequently lumps together Anthem, Freedom, and Optimum as if they are interchangeable or a single entity, without any attempt to differentiate their conduct and plead facts detailing the role each played in the alleged fraud.  With the exception of a few conclusory assertions about Freedom, discussed *supra* Section IV(A)(1), Relator does not differentiate among Defendants.  After the "Parties" section of the Complaint, Anthem is never mentioned again.[8] Optimum is referred to only as "Freedom/Optimum" or "Freedom and Optimum."  *See* Compl. ¶¶ 47, 88, 90–91.[9]  It is well established that "[i]n an action with more than one

---

[8] Relator alleges that Anthem "is grouped in this Complaint as a MA Defendant because, as the parent company directing the policies and practices, it is ultimately responsible for the policies and practices of its subsidiaries, named as MA Defendants herein." Compl. ¶ 8(c).  This contention is contrary to established law.  One corporation is not liable for the acts of another simply because it owns the stock. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  The only instances in which the corporate "parent" may expose itself to liability for the acts of its subsidiary are when (1) it "actively participated" in the underlying conduct or (2) "the corporate veil may be pierced." *Id.* at 62, 67.  When addressing FCA claims, this District has held that the federal common-law test for corporate veil piercing applies and asks whether (1) "there is a unit[y] of interest and ownership among Defendants that makes their separate personalities no longer exist" and (2) "an inequitable result would flow from treating Defendants separately." *U.S. ex rel. Stepe v. RS Compounding LLC*, 325 F.R.D. 699, 707 (M.D. Fla. Dec. 4, 2017).  "Only in unusual circumstances will courts disregard the separate identities of a parent and its subsidiary, even a wholly-owned subsidiary." *U.S. ex rel. Lawson v. Aegis Therapies, Inc.*, No. CV 210–72, 2013 WL 5816501, at *4 (S.D. Ga. Oct. 29, 2013).  Relator has not alleged the requisite facts to pierce the corporate veil, and dismissal of Anthem is thus required on these alternate grounds as well.
[9] Although "they have separate CMS contracts and are operated under their own names," Relator baldly asserts that Freedom and Optimum are "effectively the same entity" and "[t]he practices which lead to violations of the

defendant, the complaint must inform each defendant of the nature of his alleged participation in the fraud," and that this requirement cannot be satisfied "by grouping together several defendants and alleging with particularity *one* defendant's submission of a false claim." *McFarland*, 358 F. Supp. 3d at 1328 (emphasis added). Here, by referring to multiple Defendants "collectively and interchangeably," the Complaint fails to describe with particularity any defendant's participation in the alleged fraud. *United States ex rel. Schiff v. Norman*, No. 8:15-cv-1506-T-23AEP, 2018 WL 264253, at *1 (M.D. Fla. Jan. 2, 2018) (Merryday, J.); *see also Hopper v. Solvany Pharm., Inc.*, 588 F.3d 1318, 1326 (11th Cir. 2009) (affirming dismissal where it cannot be "discern[ed] from the complaint a specific person or entity that is alleged to have presented a claim of any kind, let alone a false or fraudulent claim").

Second, even if her collective references were sufficient, Relator fails to identify any person—or even any corporate team or department—responsible for any aspect of submitting diagnosis code data to CMS. None of the individuals to whom Relator refers in her Complaint is an employee of any of the MA Defendants. Instead, she alleges conduct by employees of other Defendants, such as her employer VIPcare. *See, e.g.,* Compl. ¶¶ 50, 53–57, 68, 73, 85, 88, 90. Because the Complaint does not include "the details of the defendants' allegedly fraudulent acts" including "who engaged in them," it fails to satisfy Rule 9(b) as to the MA Defendants. *Clausen*, 290 F.3d at 1310 (quoting *Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 567–68 (11th Cir. 1994)).

---

False Claims Act described herein are common to both." Compl. ¶ 11. Relator's unsupported assertion is insufficient to pierce the corporate veil between Freedom and Optimum, and her failure to plead fraud with particularity as to each corporation requires dismissal.

    **3.    Relator Fails to Allege When or How the MA Defendants Submitted Any False Claims to CMS.**

Relator does not sufficiently plead *when* the MA Defendants submitted *any* false claims to CMS.  The nearest the Complaint comes to alleging the date on which a claim was submitted is the assertion that "[u]pon information and belief, Freedom submitted claims and documentation to CMS for B.G. in at least the years 2015, 2016, 2017[.]"  Compl. ¶ 73.  In *Clausen*, the court found insufficient relator's similarly conclusory allegations that claims were submitted "on the date of service or within a few days thereafter."  290 F.3d at 1306, 1312.  Relator here identifies no specific dates of service in any of her examples and cannot narrow the time frame for the potential submission of a false claim any further than within a full calendar year.  That is simply not sufficient.  *See, e.g., McFarland*, 358 F.Supp.3d at 1325 (dismissing complaint that "identifies neither the amount nor the date" of any false claim); *Ashmore*, 2018 WL 310032, at *1 (fraud is not pled with particularity where complaint does not specify "when [defendant] misrepresented" any fact at issue).

Nor does Relator plead any explanation of *how* claims came to be submitted to CMS.  The Complaint contains no description of any aspect of any of the MA Defendants' data processing, billing, or data submission procedures to CMS.  No "policies about billing or even second-hand information about billing practices" are described.  *Clausen*, 290 F.3d at 1306.  Relator's Complaint essentially *assumes* that if the PO Defendants submitted fraudulent data to Freedom, Freedom must have knowingly submitted the same fraudulent data to CMS.  But as the Eleventh Circuit found in *Hopper*, this sort of logical leap "piles inference upon inference" to merely "suggest" the ultimate submission of a claim, which does not satisfy the particularity requirements of Rule 9(b).  588 F.3d at 1326 (dismissing

claims where complaint failed to describe with particularity "any step of [the claim submission] process"). This improper inference is particularly evident where, as here, Relator "do[es] not allege personal knowledge of the billing practices of any person or entity" and the Complaint "does little more than hazard a guess" that someone ultimately submitted a false claim to CMS. *Id.*

The Eleventh Circuit has affirmed dismissal under Rule 9(b) where a relator provided far more factual support than is included here. In *Mitchell v. Beverly Enterprises, Inc.*, relator alleged that he "observed and participated in" the billing process, that "therapists would complete [billing log] forms, take the forms to the [administrator], and then have that information entered and sent directly to [Medicare]," and attached to his complaint a page from one such billing log. 248 F. App'x 73, 75 (11th Cir. 2007). The Eleventh Circuit affirmed the district court ruling that this level of factual detail—which far surpasses any allegations by Relator here—was insufficient because it did not allege "specific facts as to who submitted the bills to Medicare, how they were submitted, or when they were submitted." *Id.* Relator's less detailed Complaint must be dismissed for the same reason.

**B.      Relator's Reverse False Claim Allegations Should Be Dismissed as to the MA Defendants Because She Fails to Plead the Basic Elements of a Claim Under 31 U.S.C. § 3729(a)(1)(G).**

To plead a "reverse false claim" under the FCA, a relator must allege: "(1) a false record or statement and (2) the defendant's knowledge of the falsity; (3) that the defendant makes, uses, or causes to be made or used a false statement; (4) for the purpose to conceal, avoid, or decrease an obligation to pay money to the government; and (5) materiality of the misrepresentation." *United States ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 869 F. Supp.

2d 1336, 1346 (M.D. Fla. 2012); 31 U.S.C. § 3729(a)(1)(G). Rule 9(b)'s heightened pleading standard applies to reverse false claims. *Mastej* 869 F. Supp. 2d at 1346–47. But Relator here does not plead facts corresponding to any of these five elements. Relator makes only a general allegation that "[h]ad CMS been aware of Defendants' knowing false coding and knowing failure to return overpayments, it would have taken steps to recover them," Compl. ¶ 107, which does not allege the key elements of knowing concealment or the obligation to return funds, let alone any related facts. *See United States ex rel. Herbold v. Doctor's Choice Home Care, Inc.*, No. 8:15-cv-1044-T-33AEP, 2019 WL 5653459, at *14 (M.D. Fla. Oct. 31, 2019). Relator is attempting to improperly repackage the same allegations under two different FCA sections, without identifying the independent obligation that supports her allegation of a reverse false claim. *Cf., United States ex rel. Stepe v. RS Compounding LLC*, 325 F.R.D. 699, 709–10 (M.D. Fla. 2017). Like her other allegations, this claim lacks the necessary particularity to survive dismissal under Rule 9(b) and, given Relator's failure to allege even the basic elements of the claim, the Complaint does not provide the notice pleading required under Rule 8(a). *Twombly*, 550 U.S. at 555 (explaining that even "a formulaic recitation of the elements of a cause of action will not do").

C.   **Relator's Complaint Should Be Dismissed as to the MA Defendants Because Relator Does Not Plausibly Allege That They Knowingly Submitted False Claims.**

The FCA imposes liability only where a defendant presents a false claim with knowledge that it is false. 31 U.S.C. § 3729(a)(1)(A)–(B), (G). Relator must make "a showing of actual knowledge, deliberate ignorance, or reckless disregard [to] satisf[y] the [FCA's] scienter requirement." *McFarland*, 358 F.Supp.3d at 1329. Rule 9(b) permits

relators to allege knowledge generally, but a relator still must plead knowledge in accordance with Rule 8(a)'s plausibility requirement.  *Iqbal*, 556 U.S. at 686–87 ("Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss.").  Here, Relator offers no plausible basis for her allegation that the MA Defendants knowingly violated the FCA.  In the section of the Complaint entitled "knowledge," Relator alleges only that the Defendants generally "knew the importance of risk adjustment and the workings of CMS's RAPS and EDS data systems" because "they are in the business of operating MA Plans and POs" and "their principals are all seasoned executives of MA Plans."  Compl. ¶¶ 44–46.  She later alleges that all Defendants "knew" they submitted false codes and "turned a blind eye at best; and at worst, intentionally doubled down on their scheme."  *Id.* ¶ 93.  These allegations, which attribute to the MA Defendants familiarity with general aspects of the MA program and mirror the language of the FCA statute, do not meet notice pleading requirements.  They provide no plausible basis for the Court to infer that the MA Defendants had knowledge of *specific false claims submitted for payment* or any reckless disregard or deliberate ignorance of business processes that would have resulted in the same.

Relator's allegations focus on the conduct of the PO Defendants, which Relator alleges created false diagnosis codes through the use of a 5 Star Check List and an improper physician incentive structure that were eventually passed along to the MA Defendants. Compl. ¶¶ 49, 54–70, 80–90.  Relator does not, however, allege any facts from which the Court could infer that the MA Defendants were aware of the allegedly fraudulent business processes of the other Defendants, processes that occurred entirely outside their control and

before Freedom or Optimum would have received any data reflecting the patient visit.  And

even if she had alleged facts showing that the MA Defendants had knowledge of the PO

Defendants' business processes, Relator alleges no facts from which the Court could infer

that the MA Defendants submitted to CMS any diagnosis codes received from the PO

Defendants that were impacted by the alleged schemes with knowledge that those codes were

false.  Relator's lack of factual allegations regarding the MA Defendants' knowledge fails to

meet the plausibility requirements of Rule 8(a).[10]

**D.    Relator's Complaint Should Be Dismissed as to the MA Defendants Under the Statutory Requirements of the FCA.**

**1.    Relator's Complaint Should Be Dismissed in Its Entirety as to the MA Defendants Due to the FCA's Public Disclosure Bar.**

Relator's allegations against the MA Defendants should be dismissed in their entirety

because they are based on a publicly disclosed and substantively similar FCA case that the

Government previously settled: *United States ex rel. Sewell v. Freedom Health, Inc.*, *et al.*,

Case No. 8:09-cv-1625-MSS-AEP (M.D. Fla.).  The FCA's public disclosure bar prohibits

such duplicative actions, requiring dismissal where the allegations "in the action or claim

were publicly disclosed . . . unless . . . the person bringing the action is an original source of

the information."  31 U.S.C. § 3730(e)(4)(A).  The bar applies here, where the allegations

(1) were previously publicly disclosed, (2) are substantially the same as allegations contained

in the public disclosures, and (3) the relator is not the "original source" of that information.

---

[10] Relator does not plead that the MA Defendants acted with "reckless disregard" for failure to maintain a proper compliance program, but even if the Court were to infer such a contention, reckless disregard requires an "unjustifiably high" risk of harm that was either known or so obvious it should have been known.  *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68–69 (2007).  As discussed above, Relator has alleged no facts at all regarding the supposed deficiencies in the MA Defendants' compliance procedures, and certainly none that would support a claim of reckless disregard.

*See United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 812, 814 (11th Cir. 2015).[11]

First, although the timeframe at issue in Relator's Complaint is unclear, at one point she does allege unspecified violations of the FCA for the preceding ten years (i.e., beginning in May 2009). Compl. ¶ 2. The *Sewell* action, which was settled by the Government in 2017 for conduct through 2013 and for which Freedom and Optimum expressly denied any wrongdoing or liability, was publicly disclosed before Relator filed her Complaint in May 2019.[12] These public announcements were made via a federal court case, a May 2017 DOJ press release, and a variety of news articles, any of which satisfy the first element of the public disclosure bar.[13] *See* 31 U.S.C. § 3730(e)(4)(A)(i)–(iii); *Osheroff*, 776 F.3d at 812 (allegations based on information disclosed in federal court proceedings, newspaper articles and advertisements, and public websites are subject to the bar); *United States ex rel. Patel v. GE Healthcare, Inc*., No. 8:14-cv-120-T-33TGW, 2017 WL 4310263, at *4 (M.D. Fla. Sept. 28, 2017) (court pleadings and a DOJ press release are public disclosures).

Second, when a *qui tam* action is based "*in any part*" on publicly disclosed information, it satisfies the second prong of the public disclosure analysis. *See Osheroff*, 776 F.3d at 814 (noting that this requirement is a "quick trigger to get to the more exacting original source inquiry"). Courts in this Circuit have held that allegations of new occurrences related to ongoing conduct that do not allege an "entire new scheme" are insufficient to evade this element of the test. *United States ex rel. Payton v. Pediatric Servs.*

---

[11] The Eleventh Circuit evaluates a motion to dismiss based on a violation of the public disclosure bar under Rule 12(b)(6). *See Osheroff*, 776 F.3d at 810–11.

[12] *See* MA Defendants' concurrently filed Motion for Judicial Notice ("Mot. for Judicial Notice").

[13] *See* Mot. for Judicial Notice, Exhibits A–H.

*of Am., Inc.*, 2017 WL 3910434, at *7 (S.D. Ga. Sept. 6, 2017).  Relator directly references the *Sewell* action at numerous points in the Complaint, Compl. ¶¶ 46–47, 91, and borrows *specific language* from the operative complaint in the *Sewell* action.  *Compare* Compl. ¶¶ 49, 51–52 *with Sewell*, Case No. 8:09-cv-1625 (M.D. Fla. Apr., 17, 2013), Dkt. 44 ¶¶ 113, 125–26.  This significant overlap between Relator's allegations and the previous *Sewell* action is more than enough to meet the liberally construed second prong of the public disclosure bar. *See Payton*, 2017 WL 3910434, at *7.

Third and relatedly, Relator is not the original source of the allegations.  To be an "original source," the burden is on Relator to prove that she voluntarily disclosed the information to the Government prior to public disclosure or that she has "knowledge that is independent of and materially adds to the publicly disclosed allegations."  31 U.S.C. § 3730(e)(4)(B).  A relator's knowledge materially adds to publicly disclosed information only if it presents specific allegations beyond background information.  *See Osheroff*, 776 F.3d at 815.  While Relator's allegations against the MA Defendants extend beyond 2013, courts within the Eleventh Circuit have held that allegations of ongoing violations of the FCA may materially add to a public disclosure *only* where the relator alleges facts describing "the who, what, when, where and how of the events at issue."  *Jacobs v. Bank of Am. Corp.*, No. 1:15-cv-24585-UU, 2017 WL 2361943, at *7 (S.D. Fla. Mar. 21, 2017); *see also Payton*, 2017 WL 3910434, at *7–8 (rejecting a *qui tam* suit based on alleged ongoing violations of the FCA following a publicly disclosed settlement agreement because relator lacked firsthand knowledge of billing).  But as discussed *supra* Section IV(A)(1), Relator offers only generalized allegations and does not identify the submission of any false claims by the MA

Defendants.  She adds no materially new information and is not an original source.

### 2.    Alternatively, Relator's Allegations of FCA Violations in 2013 and Earlier Should Be Dismissed as to the MA Defendants.

Relator's allegations of FCA violations occurring from 2009 through 2013 should be dismissed based on the FCA's statute of limitations and the prior *Sewell* settlement.  First, for the allegations against the MA Defendants, the FCA prohibits civil actions filed more than six years after the date of the alleged violation.  31 U.S.C. § 3731(b)(1); *see also Foster v. Savannah Commc'n*, 140 F. App'x 905, 907 (11th Cir. 2005).  Relator filed her Complaint on May 20, 2019.  Accordingly, any allegations against the MA Defendants arising before May 20, 2013 should be dismissed pursuant to § 3731(b)(1).

Second, the *Sewell* settlement agreement, which covers the submission of "unsupported diagnosis data and diagnosis codes to CMS" through December 2013,[14] bars Relator's claims under the doctrine of *res judicata*.[15]  The *Sewell* settlement explicitly releases Freedom and Optimum from any future claim by the United States for covered conduct,[16] and the court issued an order dismissing all claims with prejudice pursuant to the parties' agreement.  Order of Dismissal, *Sewell*, No. 8:09-cv-1625-MSS-AEP, Doc. 99.

The doctrine of *res judicata* bars re-litigation of a claim if four requirements are met: "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both

---

[14] Mot. for Judicial Notice, Exhibit C.

[15] *Res judicata* "may be raised in a Rule 12(b)(6) motion where the existence of the defense can be determined from the face of the complaint."  *Solis v. Glob. Acceptance Credit Co.*, 601 F. App'x 767, 771 (11th Cir. 2015) (internal citation omitted).  Here, the *res judicata* defense is apparent on the face of the Complaint because Relator repeatedly references the *Sewell* settlement agreement on which she bases her allegations.  *See* Compl. ¶¶ 46–47, 91.

[16] Mot. for Judicial Notice, Exhibit C at 3.

suits; and (4) the same cause of action is involved in both cases." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999).  Each requirement is met here.  First, the Eleventh Circuit has held that a settlement may serve as a final judgment on the merits for the purposes of *res judicata*. *See id; Norfolk S. Corp. v. Chevron, U.S.A., Inc.,* 371 F.3d 1285, 1288 (11th Cir. 2004).  Second, the U.S. District Court for the Middle District of Florida issued an order of dismissal in the *Sewell* action and there is no question that this Court is a court of competent jurisdiction. *See* Order of Dismissal*, Sewell*, No. 8:09-cv-1625-MSS-AEP (M.D. Fla. May 26, 2017), Doc. 99.  Third, while the relators are different, the real party in interest in this matter and *Sewell* is the United States. *See United States ex rel. Dimartino v. Intelligent Decisions, Inc.*, 308 F.Supp.2d 1318, 1322 n.8 (M.D. Fla. Mar. 10, 2004) ("The United States is the real party in interest in a *qui tam* action under the FCA.").  Fourth, *res judicata* applies to Relator's FCA allegations through December 2013, which overlap with the FCA allegations covered in the *Sewell* settlement agreement.  The clear language of the agreement, in which the United States released Freedom and Optimum from any future claims based on covered conduct, shows the parties' intent to make the agreement preclusive. *See Norfolk S. Corp.,* 371 F.3d at 1288.  Relator's allegations against Freedom and Optimum that predate 2013 are thus barred and should be dismissed.

**E.     Relator's Complaint Should Be Dismissed as to the MA Defendants with Prejudice Because Amendment Is Futile.**

Dismissal with prejudice is appropriate where amendment is futile. *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019).  Amendment is futile where relator lacks "knowledge about the submission of a . . . claim and access to information about . . . submission[.]" *McFarland*, 358 F. Supp. 3d at 1331.  Further amendment of initial

complaints may be found to be futile.  *See, e.g., United States ex rel. Howard v. USA Envtl., Inc.*, No. 8:06–cv–27–T–33MAP, 2009 WL 652433, at *5–6 (M.D. Fla. Mar. 12, 2009), *aff'd*, 363 F. App'x 737 (11th Cir. 2010).

Relator *has not* alleged basic and essential facts supporting a claim against the MA Defendants because she *cannot*.  She has no direct connection to the MA Defendants.  As a result, she is entirely reliant on litigation discovery to cure the deficiencies in the Complaint. The Eleventh Circuit has specifically warned of allowing relators "to learn the complaint's bare essentials [of a claim] through discovery and [] needlessly harm a defendant's goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, are baseless allegations used to extract settlements."  *Clausen*, 290 F.3d at 1313 n.24.  This is precisely the danger faced by the MA Defendants should the Court permit Relator to amend.  Her suit against the MA Defendants is a fishing expedition attempting to reel in the MA Defendants using nothing more than a contractual hook to her employer. These baseless allegations warrant dismissal with prejudice.

## V.   CONCLUSION

WHEREFORE, Defendants Anthem, Freedom, and Optimum respectfully move this Honorable Court for the entry of a final order: (1) Granting this Motion to Dismiss, and (2) Dismissing each count of the Complaint as to Anthem, Freedom, and Optimum with prejudice.

Dated:    September 22, 2020                       Respectfully submitted,

                                                   By: /s/ David J. Leviss
                                                       David J. Leviss (Trial Counsel)*
                                                       Benjamin D. Singer*
                                                       O'MELVENY & MYERS LLP

1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
(202) 383-5414 (fax)
dleviss@omm.com
bsinger@omm.com

David M. Deaton*
O'MELVENY & MYERS LLP
610 Newport Center Dr., 17th Floor
Newport Beach, CA 92660
(949) 823-6900
(949) 823-6994 (fax)
ddeaton@omm.com

Elizabeth M. Bock*
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
(213) 430-6000
(213) 430-6407 (fax)
ebock@omm.com

Ginger Boyd
Fla. Bar No. 294550
NELSON MULLINS RILEY &
SCARBOROUGH LLP
215 South Monroe Street, Suite 400
Tallahassee, FL 32301
(850) 205-3356
(850) 521-1472 (fax)
Ginger.Boyd@nelsonmullins.com

*Counsel for Defendants Anthem, Inc.;
Freedom Health, Inc.; and Optimum
HealthCare, Inc.*

*admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2020, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will provide electronic service to all counsel of record.

By:  /s/ David J. Leviss

David J. Leviss (Trial Counsel)*
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
(202) 383-5414 (fax)
dleviss@omm.com

*Counsel for Defendants Anthem, Inc.;*
*Freedom Health, Inc.; and Optimum*
*HealthCare, Inc.*

*\*admitted pro hac vice*