# EXHIBIT C

# Freedom Health, Inc. Settlement Agreement (May 2017)

### Summary

**Effective Date:** May 12, 2017

**Party:** Mital Panara

**Party:** Rupesh Shah

**Party:** Dr. Devaiah Pagidipati

**Party:** Dr. Kiranbhai C. Patel

**Party:** America's 1st Choice Health Plans Inc.

**Party:** Health Management Services of USA LLC

**Party:** Liberty Acquisition Group LLC

**Party:** America's 1st Choice Holdings

**Party:** Optimum HealthCare Inc.

**Party:** Freedom Health. Inc.

**Type of Health Care Entity:** Medicare managed care plan

**Alleged Violation:** Medicare managed care fraud

**Court:** U.S. District Court, Middle District of Florida

**Alleged Violation:** Medicaid managed care fraud

**Settlement Amount:** $15.0 million

## SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America. acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS) (collectively. the "United States"); the State of Florida; and Freedom Health. Inc., Optimum HealthCare Inc., America's 1st Choice Holdings of Florida, LLC, Liberty Acquisition Group LLC, Health Management Services of USA LLC, Global TPA, LLC. America's 1st Choice Holdings of NC, LLC, America's 1st Choice Holdings of SC, LLC, America's 1st Choice Insurance Company of North Carolina. Inc., America's 1st Choice Health Plans Inc., (collectively "AFC"); Dr. Kiranbhai C. Patel, Dr. Devaiah Pagidipati, Rupesh Shah, and Mital Panara (collectively. the "Individual Defendants"); and David Sewell on behalf of the estate of Darren Sewell (collectively. "Sewell" or "Relator"): (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A. AFC is a Medicare Advantage Organization that had contracts with CMS during 2008 through 2012 to provide healthcare benefits to its members under the Medicare Advantage Program, also referred to as Part C. 42 U.S.C. §§ 1302 and 1395w-21 et seq. AFC had contracts with the State of Florida during 2008 through 2012 to participate as a managed care plan in the Medicaid managed care program.

B. In August 2009. Sewell filed a *qui tam* action in the United States District Court for the Middle District of Florida



© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

// PAGE 1

captioned *United States ex rel. Sewell v. Freedom Health. Inc., et al.,* Case No. 8:09-cv-1625, pursuant to the qui tam provisions of the False Claims Act. 3I U.S.C. ti 3730(b), and the Florida False Claims Act. Fla. Stat. §§ 68.081-.092 (the "Civil Action"). On or about March 17. 2011. Relator filed a First Amended Complaint in the Civil Action, and. on or about March 6.2013. Relator filed a Second Amended Complaint in the Civil Action, which is the operative complaint. The United States and the State of Florida are in the process of intervening in the Civil Action for the purposes of settlement in the Civil Action on the Covered Conduct described further below in subparagraph D as to AFC and one other defendant, declining to intervene as to the remaining Individual Defendants named by Relator, and declining to intervene as to the other allegations made by Relator.

C. The United States contends that AFC submitted or caused to be submitted claims for payment under the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1 395-1395111 ("Medicare-) and the Medicaid Program. Title XIX of the Social Security Act. 42 U.S.C. §§ 1398-1396w-5 (Medicaid). The State of Florida contends that AFC submitted or caused to be submitted claims for payment under the Medicaid Program.

D. The United States contends that it has certain civil claims against AFC arising from AFC's operation of Medicare Advantage contracts 115427, 115594, 114268, 116881, H0979, 113421, and 114738 during the period from January 2008 through December 2013. The State of Florida contends that it has certain civil claims against AFC arising from AFC's operation of non-institutional Medicaid provider agreements for participation in the Florida Medicaid Program. Medicaid contract FA953, Medicaid contract AA185, Medicaid contract FA954, and Medicaid contract AA186 during the period from January 2008 through December 2013. The United States and the State of Florida contend:

(1) AFC submitted unsupported diagnosis data and diagnosis codes to CMS in connection with Medicare Advantage contracts H5427 and H5594 which resulted in inflated payments from CMS during the relevant time period, as alleged in the risk adjustment allegations contained in paragraphs 108 through 185 of the Second Amended Complaint: and

(2) AFC made alleged material misrepresentations to CMS regarding the scope and content of its provider networks in AFC's applications to expand into new service areas in connection with AFC's 2009 expansion in Florida for Medicare Advantage contracts 115427 and 115594, non-institutional Medicaid provider agreements for participation in the Florida Medicaid Program. Medicaid contract FA953. Medicaid contract AA 185, Medicaid contract FA954, and Medicaid contract AA I 86. 2011 expansion in North Carolina for Medicare Advantage contracts H4268, 116881. and 110979, and in South Carolina for Medicare Advantage contracts 1-13421 and H4738 as alleged in the network expansion allegations in paragraphs 272 through 357 of the Second Amended Complaint.

The foregoing conduct contained within this Paragraph D is referred to below as the "Covered Conduct."

E. This Settlement Agreement is neither an admission of liability by AFC and the Individual Defendants nor a concession by the United States. State of Florida, or Relator that their respective claims are not well founded. AFC and the Individual Defendants deny the United States' and State of Florida's allegations in Paragraph D and expressly deny any wrongdoing or liability alleged by Relator in the Civil Action and not included in the Covered Conduct described above, and expressly deny any other wrongdoing or liability alleged by Relator.

F. Relator claims entitlement under 31 U.S.C. § 3730(d) and the Florida False Claims Act. Fla. Stat. § 68.085 to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses necessarily incurred, plus reasonable attorneys' fees and costs, related to the United States and the State of Florida intervening in the Civil Action and settling claims arising from the Covered Conduct.

G. To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises, warranties, and obligations set forth in this Settlement Agreement. The Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1. AFC shall pay to the United States fifteen million nineteen thousand one hundred nineteen dollars ($15,019,119.00) and interest that has accrued at an annual percentage rate of 1.875% from January I. 2017, no later than seven (7) business days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney for the Middle District of Florida. AFC shall pay to the State of Florida seventy-eight thousand, four hundred and fourteen dollars ($78,414.00) no later than seven (7) business days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the State of Florida. Further, the United States has credited AFC for sixteen million six hundred and seventy-six thousand four

**Bloomberg Law®**    © 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

hundred and seventy-four dollars ($16.676.474.00) through the Medicare Risk Adjustment reconciliation process. Thus, the total to be received by the United States is thirty-one million six hundred ninety-five thousand five hundred and ninety-three ($31,695,593.00), and the total to the received by the State of Florida is seventy-eight thousand, four hundred and fourteen dollars ($78.414.00) (collectively the "Settlement Amount").

2. AFC shall pay directly to Relator a sum of two million three hundred and forty-five thousand seven hundred and eighty three dollars and seventy cents ($2.345.783.70), no later than seven (7) business days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by Relator. This amount, plus any amount previously paid by Defendants to Katz, Marshall & Banks, LLP, represents a complete and full settlement of any and all reasonable expenses, necessarily incurred, plus reasonable attorneys' fees, and costs by Relator and his attorneys related in any way to the Civil Action, whether entitlement is claimed pursuant to 31 U.S.C. § 3730(d), the Florida False Claims Act. Ha. Stat. §68.085, or otherwise (the "Fee Amount").

3. Subject to the exceptions in Paragraph 8 (concerning the United States' excluded claims) below, and conditioned upon full payment of the Settlement Amount, the United States releases AFC, together with its current and former parent corporations: direct and indirect subsidiaries: brother or sister corporations: divisions: current or former corporate owners: and the corporate successors and assigns of any of them, from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act. 31 U.S.C. §§ 37293733: the Civil Monetary Penalties Act. 42 U.S.C. § 1320a-7a: the Program Fraud Civil Remedies Act. 31 U.S.C. §§ 3801-3812: or the common law theories of payment by mistake, unjust enrichment, overpayment, disgorgement, and fraud.

4. Subject to the exceptions in Paragraph 9 (concerning the State of Florida's excluded claims) below, and conditioned upon full payment of the Settlement Amount the State of Florida releases AFC together with its current and former parent corporations, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them: the Individual Defendants in the Civil Action: and all of AFC's current and former officers, directors, employees, shareholders. and agents from any civil or administrative monetary claim the State of Florida has for the Covered Conduct under the Florida False Claims Act, Fla. Stat. § § 68.081-.092: or the common law theories of payment by mistake, unjust enrichment, overpayment, breach of contract, disgorgement, and fraud.

5. Conditioned upon the full payment of the Settlement Amount, identified in Paragraph I. and the Fee Amount, identified in Paragraph 2, Relator for himself and for his heirs, successors. Attorneys. agents, and assigns fully and finally releases AFC together with its current and former parent corporations, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, corporate successors, and assigns of any of them: the Individual Defendants in the Civil Action: and all of AFC's current and former officers. directors, employees, shareholders, and agents from any civil monetary claim Relator has on behalf of the United States under the False Claims Act, 31 U.S.C. § 3729-3733 or on behalf of the State of Florida under Florida's False Claims Act, Fla. Stat. § § 68.081-.092 and further fully and finally releases AFC, together with its current and former parent corporations, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, corporate successors, and assigns of any of them: the Individual Defendants in the Civil Action, and all of AFC's current and former officers, directors, employees, shareholders, and agents from any other claims, allegations, demands, actions or causes of action whatsoever, known or unknown, fixed or contingent, in law or in equity, in contract or in tort, under any statute, regulation, or ordinance, or under common law (including claims for attorney's lees. costs. and expenses of every kind and however denominated, whether under 31 U.S.C. § 3730(d), the Florida False Claims Act, Fla. Stat. §68.085, or otherwise), that he, his heirs, successors, attorneys, agents and assigns have asserted or could have asserted from the beginning of time through and including the Effective Date of this Agreement. Relator further covenants and agrees on his behalf and on behalf of his heirs, successors, agents, and assigns that, except as required by law, he will not assist in the preparation or prosecution of any legal proceeding or claim initiated by another person or entity, of any kind, in any jurisdiction, court, or tribunal, against AFC, its current and former parent corporations, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, corporate successors, and assigns of any of them: the Individual Defendants in the Civil Action or any of AFC's current and former officers, directors, employees, shareholders, and agents related to any matter or action: provided, however that, subject to the provisions of Paragraphs 16, 17 and 20 this covenant: (a) shall not restrict Relator's counsel's ability to represent clients other than Relator in any way: and (b) shall not preclude Relator from complying with legal obligations imposed by any applicable rules of civil procedure or court order. Notwithstanding the foregoing, the release and covenant set forth in this paragraph shall not apply to any defendant named in the Civil Action who is not a signatory to this agreement.

6. In consideration of Relator's obligations set forth in this Agreement, AFC and the Individual Defendants fully and

© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

**Bloomberg Law** ®

finally release the Relator and his heirs, successors, attorneys, agents, and assigns from any claims, allegations, demands, actions or causes of action whatsoever, known or unknown, fixed or contingent, in law or in equity, in contract or in tort, under any federal or state statute or regulation, or under common law (including claims for attorney's fees, costs. and expenses of every kind and however denominated) that the defendants, their successors, attorneys, agents and/or assigns have asserted or could have asserted related to any matter or action that is released by this Agreement, including without limitation the Covered Conduct, the claims in the Civil Action or the reporting, investigation or prosecution thereof, or under 31 U.S.C. § 3730(d) or the Florida False Claims Act. Fla. Stat. §68.086, for expenses or attorneys' fees and costs. Notwithstanding the foregoing, this release is not given on behalf of any defendant named in the Civil Action who is not a signatory to this agreement.

7. In consideration of the obligations of Freedom Health. Inc. and Optimum HealthCare, Inc. in this Agreement and the Corporate Integrity Agreement (CIA), entered into between OIG-HHS, Freedom Health, Inc. and Optimum HealthCare. Inc., and conditioned upon AFC's full payment of the Settlement Amount, the OIG-HHS agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare. Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against Freedom Health, Inc. and Optimum HealthCare, Inc. under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law). 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud. kickbacks. and other prohibited activities) or 42 U.S.C. § 1320a-7(b)(16) (permissive exclusion for making false statements or misrepresentation of material facts) for the Covered Conduct, except as reserved in this Paragraph and in Paragraph 8 (concerning excluded claims), below. The OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude Freedom Health. Inc. and Optimum HealthCare, Inc. from Medicare. Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct. Nothing in this Paragraph precludes the OIG-HHS from taking action against entities or persons, or for conduct and practices for which claims have been reserved in Paragraph 8, below.

8. Notwithstanding the releases given in paragraphs 3 and 7 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and arc not released:

a. Any liability arising under Title 26. U.S. Code (Internal Revenue Code):

b. Any criminal liability:

c. Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal health care programs:

d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct:

e. Any liability based upon obligations created by this Agreement;

f. Except as explicitly stated in this Agreement, any liability of individuals.

9. Notwithstanding the releases given in paragraph 4 of this Agreement or any other term of this Agreement, the following claims of the State of Florida are specifically reserved and not released, although certain claims may be subject to discharge under 11 U.S.C. §§ 727, 1141. and/or 1328:

a. any criminal, civil or administrative liability arising under the State revenue code:

b. any criminal liability not specifically released under this Agreement:

c. any civil or administrative liability that any person or entity including AFC or the Individual Defendants has or may have to the State or to the individual consumers or state program payors under any statute, regulation or rule not expressly covered by the release in Paragraph 4 above, including but not limited to any and all of the following claims: (i) State or federal antitrust violations; (ii) Claims involving unfair and/or deceptive acts and practices and/or violation of consumer protection laws;

d. any liability to the State for any conduct other than the Covered Conduct;

e. any liability which may be asserted on behalf of any other payors or insurers, including those that are paid by the State's Medicaid Program on a capitated basis;

f. any liability based upon the obligations created in this Agreement:



© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

g. except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from the State's Medicaid Program:

h. any liability for express or implied warranty claims or other claims for defective or deficient products and services provided by Defendants;

i. any liability for personal injury or property damage or for other consequential damages arising from Covered Conduct: and

j. any liability based on failure to deliver goods or services due.

10. Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B) and the Florida False Claims Act. Fla. Stat. §68.084(2)(b). Conditioned upon Relator's receipt of the full payment of the share of the proceeds of this Agreement and/or the Civil Action that the United States, the State of Florida, and Relator agree arc due or that, if the United States. State of Florida, and Relator fail to reach such agreement. that the Court orders the United States and the State of Florida to pay, Relator and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive. and forever discharge the United States and the State of Florida, their agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730 or §§ 68.081-.092. Fla. Stat., as those sections pertains to the Civil Action.

11. AFC waives and shall not assert any defenses it may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

12. AFC fully and finally releases the United States and the State of Florida. Their agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs. and expenses of every kind and however denominated) that they have asserted or could have asserted against the United States and the State of Florida, their agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States" and State of Florida's investigation and prosecution thereof.

13. The AFC Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by the Medicare program or any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct: and AFC agrees not to resubmit to the Medicare program or any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

14. AFC agrees to the following:

a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation. 48 C.F.R. r 31.205-47: and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ l395-1395kkk-l and l396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of AFC, its present or former officers, directors, employees, shareholders, and agents in connection with:

1. the matters covered by this Agreement;

2. the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

3. AFC's investigation, defense. and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

4. the negotiation and performance of this Agreement;

5. the payment AFC makes to the United States pursuant to this Agreement and any payments that AFC may make to Relator, including costs and attorney's fees; and

**Bloomberg Law**®          © 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

6. the negotiation of, and obligations undertaken pursuant to the CIA to: (i) retain an independent review organization to perform annual reviews as described in Section III of the CIA; and (ii) prepare and submit reports to the OIG-HHS

are unallowable costs for government contracting purposes and under the Medicare Program. Medicaid Program. TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs). However, nothing in paragraph I 3.a.(6) that may apply to the obligations undertaken pursuant to the CIA affects the status of costs that are not allowable based on any other authority applicable to AFC.

b. Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for [in nonreimbursable cost centers] by AFC, and AFC shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by AFC or any of its subsidiaries or affiliates to the Medicare, Medicaid. TRICARE or FEHBP Programs.

c. Treatment of Unallowable Costs Previously Submitted for Payment: AFC further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to payments sought in any cost reports cost statements, information reports, or payment requests already submitted by AFC or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, he adjusted to account for the effect of the inclusion of the Unallowable Costs. AFC agrees that the United States, at a minimum, shall be entitled to recoup from AFC any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by AFC or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on AFC or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

d. Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine AFC's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions or this Paragraph.

15. AFC, consistent with its rights and privileges, agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice. AFC shall encourage, and agree not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. AFC further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports memoranda of interviews, and records in its possession custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

16. With respect to any personal health information in his possession. Relator and Relator's attorneys:

a. acknowledge and agree that they are HIPAA covered entities and agree to abide by the requirements of the Health Insurance Portability and Accountability Act ("HIPAA") and Health Information Technology for Economic and Clinical Health ("HITECH") Act (Division A, Title XIII and Division B. Title IV of Public Law 111-5): the Standards for Privacy of Individually Identifiable Health Information (codified at 45 C.F.R. Parts 160 and 164. subparts A and E): the Security Standards for the Protection of Electronic Protected Health Information (codified at 45 C.F.R. Parts 160 and 164, subparts A and C): and Notification in the Case of Breach of Unsecured Protected Health Information (codified at 45 C.F.R. Part 164), subpart D:

b. acknowledge and agree that their obligations under this paragraph relate to all personal health information in their possession produced or obtained by a Party or third parties in connection with the Civil Action, whether pursuant to compulsory process or voluntarily:

c. acknowledge and agree that counsel in possession of personal health information are responsible for restricting its use and disclosure in accordance with applicable statutory and regulatory provisions, and the Local Rules for the Middle District of Florida.

d. acknowledge and agree that, pursuant to 45 CFR I 64.512(e)(1)(v): (I) they are prohibited from using or disclosing protected health information, including information derived therefrom as well as copies, excerpts, summaries, and compilations. for any purpose other than the Civil Action: and (2) except to the extent that protected health information is included in the Encrypted Attorney Files pursuant to Paragraph 17(d) below, within 30 days after the final resolution of the amount of the statutory relator's share in this case by agreement or judgment, they are required to either return to AFC or to certify to AFC, in the form attached as Exhibit A hereto, that they have destroyed all protected health information, including information derived therefrom as well as copies, excerpts, summaries, and compilations.

17. The Relator and his attorneys agree that all AFC materials, electronic or otherwise, produced by AFC to the United States and shared with Relator, or directly or indirectly taken from AFC by the Relator (the "AFC Records"), and subject to the provisions of paragraph 16 of this Agreement, shall be subject to the following conditions:

a. The Relator and his attorneys agree that any use of the AFC Records shall be governed by the provisions of the Stipulated Protective Order, attached as Exhibit B hereto (the "Stipulated Protective Order").

b. Relator and Relator's attorneys may use the AFC Records in litigating or negotiating the amount of the statutory relator's share in this case, subject to the provisions of the Stipulated Protective Order described in paragraph I 7(a) and attached as Exhibit f3 hereto.

c. With the exception of the AFC Records described in paragraph 17(d) below. Relator and his attorneys shall, within 30 days after the final resolution of the amount of the statutory relator's share in this case by agreement or judgment, certify the permanent destruction of the AFC Records in the form attached as Exhibit C hereto. In certifying the destruction of the AFC Records. Relator's attorneys will search and inspect files and folders, including electronic files and folders, that arc specific to this case. Relator's attorneys are not required to search or inspect portions of email folders that are not case-differentiated, *e.g.,* sent items folders, deleted items folders, or general inboxes: provided, however, that Relator's attorneys agree not to search such folders for AFC Records, and that if Relator's attorneys find any AFC Records in such folders. Relator's attorneys will immediately delete such AFC Records.

d. In lieu of destruction. Relator's attorneys may create up to two encrypted electronic copies of all or a portion of Relators' attorneys' correspondence, attorney work, and attorney files that may contain AFC Records (the "Encrypted Attorney Files"). Relator's attorneys shall provide all such copies of the Encrypted Attorney Files (without an encryption key) to AFC and the Suarez Law Firm ("SLF"). AFC and SLF will maintain the Encrypted Attorney Files for a live-year period ending on the 5th anniversary of the Effective Date hereof. To protect against the risk of accidental loss or destruction. AFC and SLF shall store the Encrypted Attorney Files in their locked fireproof safes located in their respective separate facilities in Tampa. Florida. Relator and/or Relator's attorneys shall be entitled to request the return of the Encrypted Attorney Files from AFC and SLF if those documents are relevant to the defense of Relator or Relator's attorneys in a proceeding in which Relator or Relator's attorneys are a defendant or, in the case of an arbitration proceeding, a respondent ("Defense Proceeding"). Prior to any return of the Encrypted Attorney Files. Relator or Relator's attorneys shall provide to AFC and SLF written notice requesting return of the Encrypted Attorney Files, together with such other written documentation as AFC and SLF shall reasonably require to confirm the existence and ongoing nature of the Defense Proceeding. Within ten (10) business days after AFC's and SLF's receipt of such written notice and other documentation. AFC and SLF shall make the Encrypted Attorney Files available for delivery to Relator or Relator's attorneys at AFC's and SLF's Tampa. Florida offices, or such other location as Relator or Relator's attorneys shall direct in writing, with Relator or Relator's attorney responsible for the cost and liability associated with delivery to such other location. Upon receipt of the Encrypted Attorney Files. Relator or Relator's attorneys may use any AFC Records contained therein only for the defense of the proceeding or in rebuttal to the defense or the proceeding, and subject to the provisions of the Stipulated Protective Order described in paragraph 17(a) and attached as Exhibit B hereto. AFC and SLF shall not authorize any individual or entity, including themselves or any of their clients, to attempt to open, copy, or access the data on the Encrypted Attorney Files. Unless Relator or Relator's attorneys provide AFC and SLF with written notice 30 days prior to the 5th anniversary of the Effective Date hereof, AFC and SLF may destroy the Encrypted Attorney Files at any time after the 5th anniversary of the Effective Date hereof', without further notice to Relator or Relator's attorneys. AFC and SLF shall not be liable for the conduct of Relator or Relator's attorneys or for any accidental destruction, erasure, or corruption of the Encrypted Attorney Files, or for any act of God or third party that results in the theft, destruction, erasure, or corruption of the Encrypted Attorney Files.

**Bloomberg Law** ®

© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

HHS Settlement Agreement, Freedom Health, Inc. Settlement Agreement (May 2017)

e. The Relator, his attorneys and AFC agree that the encryption of the data on the Encrypted Attorney Files constitutes reasonable steps to maintain the confidentiality of those files, and that the provision of the Encrypted Attorney Files is not, and shall not be construed as, a waiver of any privileges or protections that may apply to those files or to any materials therein.

f. Except as provided in Paragraph 17(b) and (d) herein, the Relator and his attorneys agree that they cannot use AFC Records for any other purpose.

g. Nothing in this agreement shall be interpreted to suggest that the use of AFC Records for the purpose of investigating or litigating the Civil Action on behalf of the Relator prior to the execution of this agreement was improper.

h. Nothing in this agreement shall be interpreted to suggest that Relator's attorneys are prohibited from using any records legally obtained after the effective date of this agreement.

18. AFC requests and the United States and the State of Florida agree that all materials, electronic or otherwise, produced by AFC in response to the United States" Authorized Investigative Demands issued under 18 U.S.C. § 3486 (the "AID Records") and all AFC Records obtained by the United States and State of Florida, shall be subject to the following conditions:

a. AFC and the United States and the State of Florida agree that the United States and the State of Florida may use the AID Records and the AFC Records in litigating or negotiating the amount of the statutory relator's share in this case.

b. After the final resolution of the amount of the statutory relator's share in this case by agreement or judgment, the United States will destroy the AID Records and AFC Records in the ordinary course of its business, unless otherwise governed by the Federal Records Act, 44 U.S.C. § 3100, *et seq.,* or any other applicable federal statute.

c. After the final resolution of the amount of the statutory relator's share in this case by agreement or judgment. AID Records and AFC Records in possession of the State of Florida will be subject to Florida's public records law, as delineated in the Florida Constitution and Chapter 119, Florida Statutes, In the event that the State of Florida receives a public records request for AID Records or AFC Records obtained by the State of Florida Medicaid Fraud Control Unit during its investigation of this case, the State of Florida will comply with the applicable public records law in all regards. Upon receipt of such a request, the State of Florida will notify AFC of the request in writing as soon as practicable. This written notice shall be sent to:

Office of the General Counsel

Corporate Counsel Freedom Health, Inc. and Optimum HealthCare, Inc.,

5600 Mariner Street

Suite 227

Tampa, Fl 33609

d. The United States acknowledges and agrees to abide by the Privacy Act. 5 U.S.C. § 552a, to the extent that it governs any personally identifiable health information in its possession.

19. Except as otherwise provided for in this Agreement, this Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraphs 3 and 7 (United States' release paragraphs), Paragraph 4 (the State of Florida's release paragraph) Paragraphs 5 and 10 (Relator's release paragraphs). Paragraphs 6 and 12 (AFC release paragraphs), and Paragraph 2 I (AFC waiver for beneficiaries paragraph).

20. Each Party represents and warrants to the other Party that:

a. It has all requisite power and authority to execute, deliver and perform this Agreement and all documents to be executed in connection therewith;



© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

b. Entering into this Agreement has been duly authorized:

c. Upon execution by such Party, this Agreement will be a legally binding obligation of that Party, enforceable in accordance with its terms: and

d. It is not a party to any other agreement that would restrict or prohibit it from entering into this Agreement and complying with the terms and conditions set forth herein.

Relator further warrants that:

e. Other than this action, he has not made or filed—whether publicly or confidentially, including under seal—any complaints, grievances, charges, or claims against AFC, the Individual Defendants, or anyone that he knows to be a current or former officer, director, employee, shareholder, or agent of AFC:

f. He is not aware of any other individuals who have made or filed or arc planning to make or file—whether publicly or confidentially, including under seal—any complaints, grievance, or claims against AFC, the Individual Defendants, or anyone that he knows to be a current or former officer, director, employee, shareholder, or agent of AFC:

g. He has not, directly or indirectly, assigned, conveyed or otherwise transferred to any party any of the claims or causes of actions released pursuant to Paragraph 5 and 10: and

The Parties understand and agree that the warranties in this paragraph are given on behalf of the Relator alone and not on behalf of his attorneys, Relator's counsel warrant on behalf of themselves and their respective law firms that they have not used and will not use AFC Records for any other purpose in any matter or in representation of anyone other than the Relator in this case.

21. AFC agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

22. Upon receipt of the payments described in Paragraphs 1 and 2 above, the United States, the State of Florida, and the Relator shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal, in the form attached hereto as Exhibit D, as follows:

a. with prejudice as to all claims and allegations of the Relator on behalf of the United States and the State of Florida pursuant to the False Claims Act and Florida False Claims Act, respectively:

b. with prejudice as to those claims and allegations of the United States and the State of Florida in the Civil Action that arc included within the scope of the Covered Conduct: and

c. without prejudice as to the United States and the State of Florida for all other remaining claims and allegations in the Civil Action.

22. Notwithstanding the foregoing Relator shall reserve and will not dismiss his claims under 31 U,S,C. 3730(d) and the Florida False Claims Act. Fla. Stat. §68.085, for a share of the proceeds of the settlement. The Court shall retain jurisdiction over those claims, notwithstanding the dismissal of other claims.

23. Except as otherwise provided for in this Agreement, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

24. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

25. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute with the United States relating to this Agreement is the United States District Court for the Middle District of Florida, Disputes between the defendants. State of Florida, and Relator relating to the performance or breach of this Agreement shall be governed by the laws of the State of Florida. The exclusive jurisdiction and venue for any dispute between the defendants. State of Florida, or Relator relating to this Agreement is the Thirteenth Judicial Circuit in and for Hillsborough County. Florida. For purposes of construing this Agreement, this Agreement shall he deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in

**Bloomberg Law®**          © 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

HHS Settlement Agreement, Freedom Health, Inc. Settlement Agreement (May 2017)

any subsequent dispute.

26. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

27. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

28. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

29. This Agreement is binding on AFC's successors, transferees, heirs, and assigns.

30. This Agreement is binding on Relator's successors, transferees. Heirs, and assigns.

31. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

32. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

| THE UNITED STATES OF AMERICA | |
|---|---|

| | |
|---|---|
| DATED: 5/12/17 | BY: /s/ |
| | **J. Jennifer Koh** |
| | Trial Attorney |
| | Commercial Litigation Branch |
| | Civil Division |
| | United States Department of Justice |
| DATED: 5/11/17 | BY: /s/ |
| | **Randall Harwell** |
| | Assistant United States Attorney |
| | Middle District of Florida |
| DATED: _____ | BY: _____ |
| | **Lisa Re** |
| | Assistant Inspector General for Legal Affairs |
| | Office of Counsel to the Inspector General |
| | Office of the Inspector General |
| | United States Department of Health and Human Services |

| THE UNITED STATES OF AMERICA | |
|---|---|

| | |
|---|---|
| DATED: _____ | BY: _____ |

| | **J. Jennifer Koh** |
|---|---|
| | Trial Attorney |
| | Commercial Litigation Branch |
| | Civil Division |
| | United States Department of Justice |
| DATED: _____ | BY: _____ |
| | **Randall Harwell** |
| | Assistant United States Attorney |
| | Middle District of Florida |
| DATED: 5/11/17 | BY: /s/ |
| | **Lisa Re** |
| | Assistant Inspector General for Legal Affairs |
| | Office of Counsel to the Inspector General |
| | Office of the Inspector General |
| | United States Department of Health and Human Services |

| **THE STATE OF FLORIDA** |
|---|

| DATED: 5/11/17 | BY: /s/ |
|---|---|
| | **Patricia A. Conners** |
| | Chief Deputy Attorney General |
| | Office of the Attorney General |
| | Medicaid Fraud Control Unit |

| **DAVID SEWELL ON BEHALF OF THE ESTATE OF DARREN SEWELL** |
|---|

| DATED: 5/12/17 | BY: /s/ |
|---|---|
| | **David Sewell** |
| DATED: _____ | BY: _____ |
| | **Elaine Stromgren** |
| | James Hoyer, P.A. |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |
| DATED:_____ | BY:_____ |
| | **Mary Inman** |
| | Constantine Cannon, LLP |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |
| DATED: _____ | BY: _____ |
| | **Debra S. Katz** |

HHS Settlement Agreement, Freedom Health, Inc. Settlement Agreement (May 2017)

| | Katz, Marshall & Banks, LLP |
| --- | --- |
| | Counsel for David Sewell on behalf of the estate of Darren Sewell |
| DATED: _____ | BY:_____ |
| | **Stephen S. Hasegawa** |
| | Phillips & Cohen, LLP |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |

### DAVID SEWELL ON BEHALF OF THE ESTATE OF DARREN SEWELL

| DATED: _____ | BY: _____ |
| --- | --- |
| | **David Sewell** |
| DATED: 5/12/17 | BY: /s/ |
| | **Elaine Stromgren** |
| | James Hoyer, P.A. |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |
| DATED:_____ | BY:_____ |
| | **Mary Inman** |
| | Constantine Cannon, LLP |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |
| DATED: _____ | BY: _____ |
| | **Debra S. Katz** |
| | Katz, Marshall & Banks, LLP |
| | Counsel for David Sewell on behalf of the estate of Darren Sewell |
| DATED: _____ | BY:_____ |
| | **Stephen S. Hasegawa** |
| | Phillips & Cohen, LLP |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |

### DAVID SEWELL ON BEHALF OF THE ESTATE OF DARREN SEWELL

| DATED: _____ | BY: _____ |
| --- | --- |
| | **David Sewell** |
| DATED: 5/12/17 | BY: /s/ |
| | **Elaine Stromgren** |
| | James Hoyer, P.A. |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |
| DATED:_____ | BY:_____ |
| | **Mary Inman** |

HHS Settlement Agreement, Freedom Health, Inc. Settlement Agreement (May 2017)

| | Constantine Cannon, LLP |
|---|---|
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |
| DATED: _____ | BY: _____ |
| | **Debra S. Katz** |
| | Katz, Marshall & Banks, LLP |
| | Counsel for David Sewell on behalf of the estate of Darren Sewell |
| DATED: _____ | BY:_____ |
| | **Stephen S. Hasegawa** |
| | Phillips & Cohen, LLP |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |

| DAVID SEWELL ON BEHALF OF THE ESTATE OF DARREN SEWELL |
|---|

| DATED: _____ | BY: _____ |
|---|---|
| | **David Sewell** |
| DATED: _____ | BY: _____ |
| | **Elaine Stromgren** |
| | James Hoyer, P.A. |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |
| DATED: 5/12/17 | BY: /s/ |
| | Mary Inman |
| | Constantine Cannon, LLP |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |
| DATED: _____ | BY: _____ |
| | **Debra S. Katz** |
| | Katz, Marshall & Banks, LLP |
| | Counsel for David Sewell on behalf of the estate of Darren Sewell |
| DATED: _____ | BY:_____ |
| | Stephen S. Hasegawa |
| | Phillips & Cohen, LLP |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |

| DAVID SEWELL ON BEHALF OF THE ESTATE OF DARREN SEWELL |
|---|

| DATED: _____ | BY: _____ |
|---|---|
| | **David Sewell** |
| DATED: _____ | BY: _____ |
| | Elaine Stromgren |

HHS Settlement Agreement, Freedom Health, Inc. Settlement Agreement (May 2017)

| | James Hoyer, P.A. |
|---|---|
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |
| DATED: 5/12/17 | BY: /s/ |
| | **Mary Inman** |
| | Constantine Cannon, LLP |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |
| DATED: _____ | BY: _____ |
| | **Debra S. Katz** |
| | Katz, Marshall & Banks, LLP |
| | Counsel for David Sewell on behalf of the estate of Darren Sewell |
| DATED: _____ | BY:_____ |
| | **Stephen S. Hasegawa** |
| | Phillips & Cohen, LLP |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |

| DAVID SEWELL ON BEHALF OF THE ESTATE OF DARREN SEWELL |
|---|

| DATED: _____ | BY: _____ |
|---|---|
| | **David Sewell** |
| DATED: _____ | BY: _____ |
| | Elaine Stromgren |
| | **James Hoyer, P.A.** |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |
| DATED: _____ | BY: _____ |
| | Mary Inman |
| | Constantine Cannon, LLP |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |
| DATED: 5/12/17 | BY: /s/ |
| | **Debra S. Katz** |
| | Katz, Marshall & Banks, LLP |
| | Counsel for David Sewell on behalf of the estate of Darren Sewell |
| DATED: _____ | BY:_____ |
| | **Stephen S. Hasegawa** |
| | Phillips & Cohen, LLP |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |

| DAVID SEWELL ON BEHALF OF THE ESTATE OF DARREN SEWELL |
|---|

© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

HHS Settlement Agreement, Freedom Health, Inc. Settlement Agreement (May 2017)

| DATED: _____ | BY: _____ |
|---|---|
| | **David Sewell** |
| DATED: _____ | BY: _____ |
| | **Elaine Stromgren** |
| | James Hoyer, P.A. |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |
| DATED: _____ | BY: _____ |
| | **Mary Inman** |
| | Constantine Cannon, LLP |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |
| DATED: 5/12/17 | BY: /s/ |
| | **Debra S. Katz** |
| | Katz, Marshall & Banks, LLP |
| | Counsel for David Sewell on behalf of the estate of Darren Sewell |
| DATED: _____ | BY: _____ |
| | **Stephen S. Hasegawa** |
| | Phillips & Cohen, LLP |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |

| **DAVID SEWELL ON BEHALF OF THE ESTATE OF DARREN SEWELL** |
|---|

| DATED: _____ | BY: _____ |
|---|---|
| | **David Sewell** |
| DATED: _____ | BY: _____ |
| | Elaine Stromgren |
| | James Hoyer, P.A. |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |
| DATED: _____ | BY: _____ |
| | **Mary Inman** |
| | Constantine Cannon, LLP |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |
| DATED: 5/12/17 | BY: /s/ |
| | Debra S. Katz |
| | Katz, Marshall & Banks, LLP |
| | Counsel for David Sewell on behalf of the estate of Darren Sewell |
| DATED: 5/12/17 | BY: /s/ |
| | **Stephen S. Hasegawa** |
| | Phillips & Cohen, LLP |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |

© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

HHS Settlement Agreement, Freedom Health, Inc. Settlement Agreement (May 2017)

| | DAVID SEWELL ON BEHALF OF THE ESTATE OF DARREN SEWELL |
|---|---|

| DATED: _____ | BY: _____ |
|---|---|
| | **David Sewell** |
| DATED: _____ | BY: _____ |
| | Elaine Stromgren |
| | **James Hoyer, P.A.** |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |
| DATED: _____ | BY: _____ |
| | **Mary Inman** |
| | Constantine Cannon, LLP |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |
| DATED: 5/12/17 | BY: /s/ |
| | **Debra S. Katz** |
| | Katz, Marshall & Banks, LLP |
| | Counsel for David Sewell on behalf of the estate of Darren Sewell |
| DATED: _____ | BY:_____ |
| | **Stephen S. Hasegawa** |
| | Phillips & Cohen, LLP |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |

| | AFC |
|---|---|

| DATED: 5/11/2017 | BY: /s/ |
|---|---|
| | **Dr. Kiran Patel** |
| | Freedom Health, Inc., Optimum HealthCare, Inc., America's 1st Choice Holdings of Florida, LLC, Liberty Acquisition Group LLC, Global TPA, LLC, America's 1st Choice Holdings of NC, LLC America's 1st Choice Holdings of SC, LLC, America's 1st Choice Insurance Company of North Carolina, Inc., America's 1st Choice Health Plans, Inc. |
| DATED: 5/11/17 | /s/ |
| | **Latour "LT" Lafferty** |
| | Holland & Knight, LLP |
| | Counsel for Freedom Health, Inc., Optimum HealthCare, Inc. America's 1st Choice Holdings of Florida, LLC, Liberty Acquisition Group LLC, Global TPA, LLC, America's 1st Choice Holdings of NC, LLC, America's 1st Choice Holdings of SC, LLC, America's 1st Choice Insurance Company of North Carolina, Inc., America's 1st Choice Health Plans, Inc. |
| DATED: 5/11/2017 | BY: /s/ |

HHS Settlement Agreement, Freedom Health, Inc. Settlement Agreement (May 2017)

| | |
|---|---|
| | **Eduardo Suarez** |
| | The Suarez Law Firm, PA |
| | Counsel for Freedom Health, Inc. Optimum HealthCare, Inc., America's 1st Choice Holdings of Florida, LLC, Liberty Acquisition Group LLC, Global TPA, LLC, America's 1st Choice Holdings of SC, LLC, America's 1st Choice Insurance Company of North Carolina Inc., America's 1st Choice Health Plans, Inc. |
| DATED: 5/11/2017 | BY: /s/ |
| | **Rachel May Zysk** |
| | The Suarez Law Firm, PA |
| | Counsel for Freedom Health, Inc. Optimum HealthCare, Inc., America's 1st Choice Holdings of Florida, LLC, Liberty Acquisition Group LLC, Global TPA, LLC, America's 1st Choice Holdings of SC, LLC, America's 1st Choice Insurance Company of North Carolina Inc., America's 1st Choice Health Plans, Inc. |
| DATED: 5/11/17 | BY: /s/ |
| | **Dr. Devaiah Pagidipait** |
| | Health Management Services of USA, LLC |
| DATED: 5/11/17 | /s/ |
| | **Marcos E. Hasbun** |
| | Sara Alpert Lawson |
| | Zuckerman Spaeder, LLP |
| | Counsel for Health Management Services of USA, LLC |

| | |
|---|---|
| | **DR. KIRAN C. PATEL** |

| | |
|---|---|
| DATED: 5/11/17 | BY: /s/ |

| | |
|---|---|
| | **DR. DEVAIAH PAGIDIPAIT** |

| | |
|---|---|
| DATED: 5/11/17 | BY: /s/ |

| | |
|---|---|
| | **DR. RUPESH SHAH** |

| | |
|---|---|
| DATED: 5/11/17 | BY: /s/ |

**Bloomberg Law** ®

© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

HHS Settlement Agreement, Freedom Health, Inc. Settlement Agreement (May 2017)

**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

United States of America Ex. Rel, Darren Sewell

And

State of Florida

Case No, 8:09-cv-1625

Ex. Rel. Darren Sewell

Plaintiffs,

v.

America's 1st Choice Holdings of Florida, LLC,

America's 1st Choice Holdings of North Carolina, LLC,

America's 1st Choice Holdings of South Carolina, LLC,

Freedom Health, Inc,, Optimum HealthCare, Inc,,

Liberty Acquisition Group LLC,

Health Management Services of USA LLC,

Global TPA LLC, America's 1st Choice Insurance

Company of North Carolina, Inc. ("AFC-NC"),

America's 1st Choice Health Plans, Inc. ("AFC-SC"),

Dr. Kiranbhai C. Patel, Dr. Devaiah Pagidipati, Siddhartha Pagidipati,

Rupesh Shah, and Mital Panara,

Defendants,

_____/

**CERTIFICATION OF DESTRUCTION OF PERSONAL HEALTH INFORMATION**

**I HEREBY CERTIFY** that, pursuant to 45 C,F,R. 164.512(e)(1)(v) and the Settlement Agreement in the above-captioned matter between America's 1st Choice Holdings of Florida LLC, America's 1st Choice Holdings of North Carolina, LLC, America's 1st Choice Holdings of South Carolina, LLC, Freedom Health, Inc., Optimum HealthCare, Inc., Liberty Acquisition Group LLC, Health Management Services of USA LLC, Global TPA LLC, America's 1st Choice Insurance Company of North Carolina, Inc, ("AFC-NC"), and America's 1st Choice Health Plans, Inc, ("AFC-SC") (collectively "AFC") and Relator Darren Sewell, through David Sewell on behalf of the estate of Darren Sewell ("Plaintiff/Relator"), all protected health information, including information derived therefrom as well as copies, excerpts, summaries, and compilations, in any and all formats, ever in my or my agents' possession, has been permanently destroyed except, if applicable, to the extent that protected health information may be contained in attorneys' correspondence, attorney work, and attorney files.

**I HEREBY CERTIFY** that, to the extent that protected health information may be contained in attorneys'



© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

correspondence, attorney work, and attorney files, I have created encrypted electronic copies of those records and provided the copies, without the encryption key, to AFC and the Suarez Law Firm to maintain for a period of five years.

In the event that I assigned the destruction of the aforementioned records to a third-party vendor, that vendor has been identified below.

Name and Contact Information for Vendor:_____

_____

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED:_____ BY:_____

STATE OF FLORIDA

COUNTY OF_____

THE FOREGOING INSTRUMENT WAS ACKNOWLEDGED BEFORE ME THIS

_____DAY OF_____, 20_____

BY_____

(Insert name of person acknowledged)

WHO IS PERSONALLY KNOWN TO ME OR WHO HAS PRODUCED_____

(State type of identification)

AS IDENTIFICATION AND WHO (DID) (DID NOT) TAKE AN OATH.

NOTARY PUBLIC

MY COMMISSION EXPIRES:_____

**Exhibit B**

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA, *ex rel.*

DARREN SEWELL,

and

Case No. 8:09-cv-1625

State of Florida, ex rel.

Darren Sewell,

Plaintiffs,

*v.*

AMERICA'S 1ST CHOICE HOLDINGS OF FLORIDA, LLC,

AMERICA'S 1ST CHOICE HOLDINGS OF NORTH CAROLINA, LLC,

AMERICA'S 1ST CHOICE HOLDINGS OF SOUTH CAROLINA, LLC,

FREEDOM HEALTH, INC., OPTIMUM HEALTHCARE, INC,,

LIBERTY ACQUISITION GROUP LLC,

HEALTH MANAGEMENT SERVICES OF USA LLC,

GLOBAL TPA LLC, AMERICA'S1ST CHOICE INSURANCE

COMPANY OF NORTH CAROLINA, INC. ("AFC-NC"),

AMERICA'S 1ST CHOICE HEALTH PLANS, INC. ("AFC-SC"),

DR. KIRANBHAI C. PATEL, DR. DEVAIAH PAGIDIPATI, SIDDHARTHA PAGIDIPATI,

RUPESH SHAH, and MITAL PANARA.

Defendants.

_____/

**STIPULATED PROTECTIVE ORDER**

In order to preserve and maintain the confidentiality of certain information produced and obtained in relation to the above-captioned litigation (the "Proceeding"), and the Relator Darren Sewell, through David Sewell on behalf of the estate of Darren Sewell ("Plaintiff/Relator") and Freedom Health, Inc., Optimum HcalthCarc, Inc., America's lst Choice Holdings of Florida. LLC, Liberty Acquisition Group LLC, Health Management Services of USA LLC, Global TPA, LLC, America's lst Choice Holdings of NC, LLC. America's 1st Choice Holdings of SC, LLC, America's 1st Choice Insurance Company of North Carolina, Inc., America's 1st Choice Health Plans, Inc. ("AFC"), (collectively, the "Parties") having so stipulated, **IT IS ORDERED**:

**I. SCOPE OF ORDER**

1. This protective order (the "Order") shall govern all documents, data, and things produced, given, or served by AFC in response to investigative subpoenas served in advance of the unsealing of this Proceeding, and all documents, data, and things directly or indirectly taken by the Plaintiff/Relator from AFC prior to the date of this Order (collectively, "AFC Records").

2. Entering into, agreeing to, and/or complying with the terms of this Order shall not operate as an admission by any person that the AFC Records, in whole or in part, contain or reflect trade secrets, proprietary, confidential or competitively sensitive business, commercial, financial or personal information.

**II. SCOPE OF USE**

3. The AFC Records shall be used solely for the purposes of this Proceeding and any proceedings in which Relator or Relator's attorneys are a defendant or, in the case of an arbitration proceeding, a respondent ("Defense Proceedings") and for no other purpose. The AFC Records shall not be disclosed to any person except in accordance with the terms of this Order. The Parties to this Proceeding and their attorneys, and any non-parties and future parties to this Proceeding and their attorneys, and any Parties and non-parties in Defense Proceedings and their attorneys to the extent they may be bound by this order arc authorized to disclose and transmit AFC Records only to the extent permitted herein and subject to the conditions outlined herein.

**III. TIME PERIOD FOR PROTECTION**

4. Except as otherwise provided herein, all AFC Records, in whole or in part, and any summaries or descriptions of the contents of AFC Records, shall be subject to the provisions of this Order until the Parties agree in writing otherwise or a court order otherwise directs.

## IV. AUTHORIZED PERSONS

5. Authorized Persons, as used herein, shall include only individuals or entities involved in the Proceeding or Defense Proceedings as follows:

a. The Relator;

b. Any court, mediator, or arbitrator and their personnel, and court reporters and videographers transcribing or recording testimony at depositions or hearings;

c. Outside counsel for the parties, including contract attorneys, regularly or temporarily employed support personnel, and outside vendors as reasonably incident to discovery and to the preparation for trial;

d. Outside consultants and/or experts engaged or used by a Party;

e. Outside or in-house counsel for insurance companies or other indemnitors of any party from which a Party claims coverage or that are providing coverage for claims;

f. Potential witnesses, witnesses noticed for depositions, and designated witnesses for hearing or trial, their counsel in connection with their testimony or in preparation therefore, and other counsel attending a deposition or trial at which witnesses arc questioned about one or more AFC Records.

6. With the exception of the court, court personnel, and witnesses and counsel at depositions, AFC Records shall not be made available to any Authorized Person unless such Authorized Person has first read this Order and has agreed: (1) to be bound by the terms thereof; (2) to maintain the confidentiality of the information and not to use or disclose it to anyone other than as provided therein; and (3) to use such information solely for the purpose of the Proceeding or Defense Proceedings or as provided in this Order.

## V. DISCLOSURE OF AFC RECORDS

7. If an Authorized Person seeks to file AFC Records in court, it must move the court for an order permitting the AFC Records to be filed under seal. The Authorized Person shall serve on AFC a copy of the motion to file under sea land the AFC Records it intends to file, and shall provide a courtesy copy of the motion to AFC's undersigned counsel by electronic means on the date the motion is filed. The Authorized Person shall state in its motion to file under seal that AFC, pursuant to the Parties' agreement, shall have ten (10) days to file a response, to give AFC an opportunity further to explain the basis for the confidentiality of the AFC Records. If the court grants the motion to file AFC Records under seal, the records must be filed under seal, and AFC Records shall be marked "CONFIDENTIAL — SUBJECT TO PROTECTIVE ORDER," with a reference to the case title and case number of this action. If the court denies the motion to file AFC Records under seal, such material may be filed in the public record. Other than as set forth in this paragraph, an Authorized Person may not file in the public record in any action any AFC Records, but if any person fails to follow the procedures set forth in this paragraph, any party to this Order may request that the Court place the filing under seal.

8. In the event disclosure of AFC Records covered by this Order are sought from an Authorized Person by a non-party through any means that may legally require production, such as through a subpoena, discovery in other litigation, or via a request for public records pursuant to any applicable state or local law ("Third Party Request"), the Authorized Person shall provide AFC with a copy of the Third Party Request and the responsive AFC Records; and shall provide AFC with a minimum of ten (10) days to take appropriate measures to protect against the disclosure. No disclosure of information or documents covered by this Order shall be made to a non-party through a Third Party Request absent agreement of AFC or court order compelling disclosure.

## VI. CONCLUSION OF PROCEEDING

9. The provisions of this Order shall continue in effect with respect to any AFC Records until expressly released in writing by AFC, and such effectiveness shall survive the final determination of this action

10. The Parties and any non-party invoking the terms of this Order agree that the U.S.District Court for the Middle District of Florida, Tampa Division, will have jurisdiction to enforce the terms of this Order over the Parties and any recipients of AFC Records for enforcement of the terms of this Order following termination of this Proceeding.



HHS Settlement Agreement, Freedom Health, Inc. Settlement Agreement (May 2017)

**IT IS SO STIPULATED THROUGH COUNSEL OF RECORD.**

| COUNSEL FOR DAVID SEWELL ON BEHALF OF THE ESTATE OF DARREN SEWELL | |
|---|---|

| DATED: 5/12/17 | BY: /s/ |
|---|---|
| | Elaine Stromgren |
| | James Hoyer, P.A. |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |
| DATED: _____ | BY:_____ |
| | Mary Inman |
| | Constantine Cannon, LLP |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |
| DATED: _____ | BY:_____ |
| | Debra S. Katz |
| | Katz, Marshall & Banks, LLP |
| | Counsel for David Sewell on behalf of the estate of Darren Sewell |
| DATED:_____ | BY:_____ |
| | Stephen S. Hasegawa |
| | Phillips & Cohen, LLP |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |

| COUNSEL FOR DAVID SEWELL ON BEHALF OF THE ESTATE OF DARREN SEWELL | |
|---|---|

| DATED: _____ | BY: _____ |
|---|---|
| | Elaine Stromgren |
| | James Hoyer, P.A. |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |
| DATED: 5/12/17 | BY: /s/ |
| | Mary Inman |
| | Constantine Cannon, LLP |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |
| DATED: _____ | BY:_____ |
| | Debra S. Katz |
| | Katz, Marshall & Banks, LLP |
| | Counsel for David Sewell on behalf of the estate of Darren Sewell |
| DATED: 5/12/17 | BY: s/ |
| | Stephen S. Hasegawa |

| | Phillips & Cohen, LLP |
| | Counsel for David Sewell on behalf of the Estate of Darren Sewell |

| **AFC** |

| DATED: 5/12/17 | BY: /s/ |
| | Latour "LT" Lafferty |
| | Holland & Knight, LLP |
| | Counsel for Freedom Health, Inc. Optimum HealthCare, Inc. America's 1st Choice Holdings of Florida, LLC, Liberty Acquisition Group LLC, Global TPA, LLC, America's 1st Choice Holdings of NC, LLC, America's 1st Choice Holdings of SC, LLC, America's 1st Choice Insurance Company of North Carolina, Inc., America's 1st Choice Health Plans, Inc. |
| DATED: 5/12/17 | BY: /s/ |
| | Eduardo Suarez |
| | The Suarez Law Firm, PA |
| | Counsel for Freedom Health, Inc. Optimum HealthCare, Inc. America's 1st Choice Holdings of Florida, LLC, Liberty Acquisition Group LLC, Global TPA, LLC, America's 1st Choice Holdings of NC, LLC, America's 1st Choice Holdings of SC, LLC, America's 1st Choice Insurance Company of North Carolina, Inc., America's 1st Choice Health Plans, Inc. |
| DATED: 5/12/17 | BY: /s/ |
| | Rachel May Zysk |
| | The Suarez Law Firm, PA |
| | Counsel for Freedom Health, Inc. Optimum HealthCare, Inc. America's 1st Choice Holdings of Florida, LLC, Liberty Acquisition Group LLC, Global TPA, LLC, America's 1st Choice Holdings of NC, LLC, America's 1st Choice Holdings of SC, LLC, America's 1st Choice Insurance Company of North Carolina, Inc., America's 1st Choice Health Plans, Inc. |
| DATED: 5/12/17 | BY: /s/ |
| | Marcos E. Hasbun |
| | Sara Alpert Lawson |
| | Zuckerman Spaeder, LLP |
| | Counsel for Health Management Services USA, LLC |

**SO ORDERED**

| Dated: _____ | _____ |

| Mary S. Scriven |
|---|
| United States District Court Judge |

**EXHIBIT C**

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

United States of America Ex. Rel. Darren Sewell

And

State of Florida

Ex. Rel. Darren Sewell

Plaintiffs,

v.

America's 1st Choice Holdings of Florida, LLC,

America's 1st Choice Holdings of North Carolina, LLC,

America's 1st Choice Holdings of South Carolina, LLC,

Freedom Health, Inc., Optimum HealthCare, Inc.,

Liberty Acquisition Group LLC,

Health Management Services of USA LLC,

Global TPA LLC, America's 1st Choice Insurance

Company of North Carolina, Inc. ("AFC-NC"),

America's 1st Choice Health Plans, Inc. ("AFC-SC"),

Dr. Kiranbhai C. Patel, Dr. Devaiah Pagidipati, Siddhartha Pagidipati,

Rupesh Shah, and Mital Panara,

Defendants.

Case No. 8:09-cv-1625

_____/

**CERTIFICATION OF DESTRUCTION OF AFC RECORDS**

**I HEREBY CERTIFY** that, pursuant to the Settlement Agreement in the above-captioned matter between America's 1st Choice Holdings of Florida, LLC, America's 1st Choice Holdings of NC, LLC, America's 1st Choice Holdings of SC, LLC, Freedom Health, Inc., Optimum HealthCare, Inc., Liberty Acquisition Group LLC, Health Management Services of USA LLC, Global TPA LLC, America's 1st Choice Insurance Company of North Carolina, Inc. ("AFC-NC"), and America's 1st Choice Health Plans, Inc. ("AFC-SC") (collectively "AFC") and the Relator Darren Sewell, through David Sewell on behalf of the estate of Darren Sewell ("Plaintiff/Relator"), I have permanently destroyed all AFC materials, electronic or otherwise, produced by AFC to the United States and shared with Plaintiff/Relator, or directly or indirectly

**Bloomberg Law** ®

taken from AFC by the Plaintiff/Relator (the "AFC Records"), subject to two exceptions, if applicable:

(a) to the extent that AFC Records may be contained in attorneys' correspondence, attorney work, and attorney files, subject to the certification below; and

(b) to the extent that AFC Records are contained in portions of email folders that are not case-differentiated, e.g., sent items folders, deleted items folders, or general inboxes; provided, however, that Plaintiff/Relator's attorneys agree not to search such folders for AFC Records, and that if Plaintiff/Relator's attorneys find any AFC Records in such folders, Plaintiff/Relator's attorneys will immediately delete such AFC Records.

**I HEREBY CERTIFY** that, to the extent that AFC Records may be contained in attorneys' correspondence, attorney work, and attorney files, I have created encrypted electronic copies of those records and provided the copies, without the encryption key, to a representative for AFC and the Suarez Law Firm to maintain for a period of five years.

In the event that I assigned the destruction of the aforementioned records to a third-party vendor, that vendor has been identified below.

Name and Contact Information for Vendor:_____

_____

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED:_____ BY:_____

STATE OF FLORIDA_____

COUNTY OF_____

THE FOREGOING INSTRUMENT WAS ACKNOWLEDGED BEFORE ME THIS

_____DAY OF_____, 20_____

BY_____

(Insert name of person acknowledged)

WHO IS PERSONALLY KNOWN TO ME OR WHO HAS PRODUCED_____

(State type of identification)

AS IDENTIFICATION AND WHO (DID) (DID NOT) TAKE AN OATH.

NOTARY PUBLIC

MY COMMISSION EXPIRES:_____

**Exhibit D**

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

United States

Ex. Rel Darren Sewell

and

State of Florida

**Bloomberg Law** ®      © 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

Ex. Rel. Darren Sewell

Plaintiffs,

v.

America's 1st Choice Holdings of Florida, LLC,

America's 1st Choice Holdings of North Carolina, LLC,

America's 1st Choice Holdings of South Carolina, LLC,

Freedom Health, Inc., Optimum HealthCare, Inc.,

Liberty Acquisition Group LLC,

Health Management Services of USA LLC,

Global TPA LLC, America's 1st Choice Insurance

Company of North Carolina, Inc. ("AFC-NC"),

America's 1st Choice Health Plans, Inc. ("AFC-SC"),

Dr. Kiranbhai C. Patel, Dr. Devaiah Pagidipati, Siddhartha Pagidipati,

Rupesh Shah, and Mital Panara,

Defendants.

Case No. 8:09-cv-1625-T-35TGW

**FILED UNDER SEAL**

_____/

**STIPULATION OF DISMISSAL**

Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) and the False Claims Act, 31 U.S.C. § 3730(b), the United States, the State of Florida, and Relator Darren Sewell, through David Sewell on behalf of the estate of Darren Sewell ("Relator"), through their undersigned counsel, hereby stipulate to the dismissal of this action ("the Civil Action"), consistent with the terms of the two settlement agreements ("Settlement Agreements"), as follows:

• With prejudice as to all claims and allegations of the Relator on behalf of the United States and the State of Florida pursuant to the False Claims Act and Florida False Claims Act;

• with prejudice as to Relator's claims for reasonable attorney's fees, costs and expenses;

• with prejudice as to those claims and allegations of the United States and the State of Florida in the Civil Action that are included within the scope of the Covered Conduct (as defined in the Settlement Agreements); and

• without prejudice as to the United States and the State of Florida for all other remaining claims and allegations in the Civil Action.

Notwithstanding the foregoing, Relator reserves and does not dismiss his claims under 31 U.S.C. § 3730(d) and Florida Statute, § 68.085, for a share of the proceeds of the settlement, and the Court shall retain jurisdiction over those claims, notwithstanding the dismissal of other claims.

Pursuant to 31 U.S.C. § 3730(b)(1) and Florida Statute § 68.083(2), Relator, the United States, and the State of Florida respectfully request that the Court order that this action be dismissed pursuant to the terms of this Stipulation of

© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

HHS Settlement Agreement, Freedom Health, Inc. Settlement Agreement (May 2017)

Dismissal. A proposed Order is attached as Exhibit 1.

Respectfully submitted this_____ day of_____, 2017.

By:_____

J. Jennifer Koh

Trial Attorney, Commercial Litigation Branch

Civil Division, United States Department of Justice Telephone:

(202) 305-1816

E-Mail: Jennifer.Koh@usdoj.gov

Randy Harwell

Assistant United States Attorney Florida Bar No.

400 North Tampa St., Suite 3200 Tampa, Florida 33602

Telephone: 813-274-6000

Facsimile: 813-274-6198

E-Mail:  randv.harwell@usdoj.gov

**Counsel for the United States**

**By:**

C. Ian Garland

Assistant Attorney General

Medicaid Fraud Control Unit

Florida Office of the Attorney General

Tel: (850) 414-3904

Fax: (850) 410-0179

Cedell.Garland@mvfloridalegal.com

**Counsel for the State of Florida**

By:

Mary Inman

CONSTANTINE CANNON

4 Embarcadero Center, 14th Floor

San Francisco, CA 94111

Telephone: 415.426.5661

Facsimile: 650.636.9709

**Bloomberg Law®**       © 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

HHS Settlement Agreement, Freedom Health, Inc. Settlement Agreement (May 2017)

E-Mail:  minman@constantinecannon.com

By:

Steven S. Hasegawa PHILIPS & COHEN

100 The Embarcadero, Suite 300

San Francisco, CA 94105 Phone: 415-836-9000

E-Mail: shasegawa@pcsf.com

By:

Deborah Katz

Katz, Marshall & Banks, LLP

1718 Connecticut Avenue, NW

Sixth Floor

Washington, DC 20009 Phone: (202) 299-1140

E-Mail:  katz@kmblegal.com

By:

Elaine Stromgren

James Hoyer, P.A.

4830 West Kennedy Boulevard, Suite 550

Tampa, Florida 33609

Phone: 813-397-2300

Email: estromgren@jameshoyer.com

**Counsel for David Sewell on behalf of
the estate of Darren Sewell**

**CERTIFICATE OF SERVICE**

I hereby certify that on_____, 2017, I caused a true and correct copy of the foregoing to be served by U.S. mail and electronic mail upon the following:

| Eddie Suarez | Rachel May Zysk |
|---|---|
| SUAREZ LAW FIRM, P.A. | 1011 West Cleveland Street |
| Tampa FL 33606 | Email: esuarez@suarezlawfirm.com |
| rzysk@saurezlawfirm.com | |
| LT Lafferty | HOLLAND & KNIGHT LLP |
| 100 North Tampa Street | Suite 4100 |
| Tampa FL 33602 | Email: Lt.lafferty@hklaw.com |



HHS Settlement Agreement, Freedom Health, Inc. Settlement Agreement (May 2017)

| | |
|---|---|
| Marcos E. Hasbun | Sara A. Lawson |
| ZUCKERMAN SPAEDER LLP | 101 East Kenndy Blvd., Suite 1200 |
| Tampa, FL 33602 | Email: mhasbun@zuckerman.com |
| slawson@zuckerman.com | |

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISON**

United States of America

Ex Rel. Darren Sewell

And

State of Florida

Ex. Rel. Darren Sewell

Plaintiffs,

v.

America's 1st Choice Holdings of Florida, LLC,

America's 1st Choice Holdings of North Carolina, LLC,

America's 1st Choice Holdings of South Carolina, LLC,

Freedom Health, Inc., Optimum HealthCare, Inc.,

Liberty Acquisition Group LLC,

Health Management Services of USA LLC,

Global TPA LLC, America's 1st Choice Insurance

Company of North Carolina, Inc. ("AFC-NC"),

America's 1st Choice Health Plans, Inc. ("AFC-SC"),

Dr. Kiranbhai C. Patel, Dr. Devaiah Pagidipati, Siddhartha Pagidipati, Rupesh Shah, and Mital Panara

Defendants.

Case No. 8:09-cv-1625

_____/

**[PROPOSED] ORDER OF DISMISSAL**

This Court, having been informed of the settlements entered in this action and pursuant to

the Stipulation of Dismissal, it is hereby ORDERED this _____day of_____, 2017 that this action is dismissed:

• with prejudice as to all claims and allegations of the Relator on behalf of the United States and the State of Florida pursuant to the False Claims Act and Florida False Claims Act;



HHS Settlement Agreement, Freedom Health, Inc. Settlement Agreement (May 2017)

• with prejudice as to Relator's claims for reasonable attorney's fees, costs and expenses;

• with prejudice as to those claims and allegations of the United States and the State of Florida in the Civil Action that are included within the scope of the Covered Conduct (as defined in the Settlement Agreements); and

• without prejudice as to the United States and the State of Florida for all other remaining claims and allegations in the Civil Action.

Notwithstanding the foregoing, Relator reserves and does not dismiss his claims under 31 U.S.C. § 3730(d) and Florida Statute, § 68.085, for a share of the proceeds of the settlement, and the Court shall retain jurisdiction over those claims, notwithstanding the dismissal of other claims.

_____

Mary S. Scriven

United States District Court Judge

---

© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services