UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

United States *ex rel.* Clarissa Zafirov,

    *Plaintiff/Relator*,

v.                                          Case No. 8:19-cv-01236-SDM-SPF

Florida Medical Associates, LLC
d/b/a VIPcare; Physician Partners,
LLC; Physician Partners Specialty
Services, LLC; Sun Labs USA, INC.;
Anion Technologies, LLC; Anthem,
Inc.; Freedom Health, Inc.; Optimum
Healthcare, Inc.; and Siddhartha Pagidipati,

    *Defendants*.
_____/

## **SIDDHARTHA PAGIDIPATI'S MOTION TO DISMISS COMPLAINT**

Siddhartha Pagidipati, the only individual defendant in this suit, is a product of the healthcare system. His parents are both physicians. When he witnessed first-hand the inefficiencies in the healthcare system, he devoted his adult life to fixing an outdated model that prized procedures over prevention. Pagidipati's work in healthcare has focused on one core principle—reorienting the focus away from a broken "sick" care system into a more proactive, preventive-oriented "health" care system.

Pagidipati's emphasis on value-based care mirrors the larger paradigm shift in the federal healthcare system. By emphasizing a move from a Fee-for-Service model to a Fee-for-Value Medicare Advantage model, the federal government has signaled a commitment to aligning physician and patient incentives and focusing on quality-based outcomes. Through the healthcare teams that he leads, he has played a meaningful role in changing the incentives in healthcare. And,

1

Pagidipati's efforts have worked. Several of Pagidipati's teams have been accredited by the Center for Medicare and Medicaid Services ("CMS") with its esteemed 5-Star Health Plan status, a quality designation reserved for less than 3% of Medicare Advantage plans.

Yet, for as much as Pagidipati has played a role in transforming the economic incentive problem in healthcare, he finds himself at the mercy of the perverse incentives inherent in the False Claims Act ("FCA") and its rewarding of opportunistic relators. No case underscores the skewed incentives of the FCA than this one. In May 2017, Pagidipati settled four years of tortured litigation and resolved a healthcare FCA suit with the government. He admitted no liability as part of the settlement, which related to a decade-old allegation about expanding market access for a corporation.[1] He paid a settlement which reflected a small fraction of the relator's allegations and the government's initial demands. He then continued his focus on reorienting healthcare through a Medicare Advantage-based entity.

Yet, on the heels of that public settlement, Clarissa Zafirov applied for a job at one of Pagidipati's companies, Florida Medical Associates, LLC. From its founding to the present, Zafirov is the *only* physician (of several hundred candidates) to apply for employment at FMA unsolicited. Prior to her employment application, she had spoken with no one at FMA. Zafirov had

---

[1] More specifically, the allegations against Pagidipati related to the use of a leased-network to expand Freedom Health's county service area—a common health insurance industry practice. During the CMS application process, Freedom Health and Pagidipati, then its Chief Operating Officer, submitted via written application, communicated via email, and received contractual approval from CMS to use the leased-network. The relator, a disgruntled former medical director who voluntarily surrendered his medical license, secretly recorded Pagidipati directing relator to use the leased network. After five years of government investigation under seal, Pagidipati decided that dedicating time, energy and financial resources to fixing healthcare was more important than continuing prolonged litigation with the government.

no Medicare Advantage experience. She had little practical healthcare whatsoever, having just graduated from medical school two years earlier.

Despite not understanding the Medicare Advantage model, Zafirov immediately took issue with an approach that focused on quality-based outcomes. Rather than report her concerns to Pagidipati—who she never spoke with—she instead filed suit alleging "fraud." Indeed, within *just seven months* of employment at FMA, Zafirov had: (1) retained a whistleblower firm that boasts about "fraudulent conduct reach[ing] virtually every corner of the healthcare field"[2]; (2) removed numerous patient files and other confidential documents from FMA's offices; (3) accessed materials beyond the scope of her employment; and (4) worked with her attorneys to draft and file a 45-page complaint that was largely copied-and-pasted from the previous complaint filed against Pagidipati. This is all the more remarkable given that she never once spoke to or communicated with Pagidipati, despite Pagidipati repeatedly reminding team-members about his "open-door" policy, and in light of his openly stated desire for team members to communicate about concerns or suggestions.

Zafirov's complaint names not only Pagidipati and her employer, FMA, but also seven other corporate entities that she knows nothing about. During her tenure at FMA, she had no role, responsibility, or access to information regarding these other corporations or the Medicare Advantage claim submissions or payment processes.

The inclusion of the corporate defendants in the complaint is bad enough. But, far worse, is Zafirov's naming of Pagidipati as an individual defendant. He is the **sole** individual listed as a defendant in this suit. The **only** allegations lodged against him are that he: (1) was a member of a

---

[2] *See* "Healthcare Fraud," available at https://www.morganverkamp.com/our-practice/healthcare/

3

different organization that settled a different False Claims Act suit years earlier; and (2) "controls the policies, procedures, and operations" of the Provider Defendants. More specifically, there is ***not even a mention*** of Pagidipati in the complaint apart from two references to the prior settlement for unrelated conduct and a single conclusory allegation that he had "control" over some corporate defendants. Incredibly, Zafirov never spoke to or interacted with Pagidipati in any way during her tenure at FMA, and she makes no allegation to the contrary.

Zafirov's naming of Pagidipati as a defendant constitutes harassment and defamation of a successful individual. This Court should not tolerate the inclusion of an individual defendant in a complaint under these circumstances. Accordingly, Pagidipati respectfully requests that this Court dismiss the lawsuit against him with prejudice and adopt any other such remedies necessary.

## ARGUMENT

***Zafirov has not—and cannot—plead any facts about Pagidipati, much less particular facts.***

Zafirov's complaint fails to plead any facts to show that Pagidipati is liable under the False Claims Act. Fundamental to any False Claims Act suit is the notion that the relator must plead the "'who,' 'what,' 'where,' 'when,' and 'how' of fraudulent submissions to the government." *Hopper v. Solvay Pharmaceuticals*, *Inc.,* 588 F.3d 1318, 1326–27 (11th Cir. 2009) (quoting *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005)). Absent this particularized information, the case must be dismissed.

Here, Zafirov alleges the "who." But she does not—and cannot—allege anything more. And with good reason. She has never met Pagidipati. She has never interacted with him. She does not allege even one communication with him, whether it be in person, over text, or through email.[3]

---

[3] It is illuminating that Zafirov references only ***one*** email in her entire complaint, an email from a fellow physician asking Zafirov to apply her own clinical judgment to certain medical diagnoses. While the lack of contemporaneous documents to support her claim is glaring, it is not

4

She knows nothing about him other than that, after four years of litigation, he resolved a prior False Claims Act case in which he expressly denied any admission of liability.

Perhaps recognizing this weakness, Zafirov argues in conclusory fashion—just once—that Pagidipati "not only owns but also controls the policies, procedures, and operations of the PO Defendants." *See* Compl. ¶ 15. Yet, this does not do the trick. Zafirov's complaint merely assumes Pagidipati violated the False Claims Act because he was in a "position[] of authority when the claims were submitted," asking the Court to infer that he "must have done something wrong too." *United States v. Pub. Warehousing Co. KSC*, 242 F. Supp. 3d 1351, 1360 (N.D. Ga. 2017) (dismissing claims against an individual identified as "owner/director" but whose personal involvement in any False Claims Act violations was not alleged). The Court should not allow Zafirov to subject Pagidipati to "vague, potentially damaging accusations of fraud." *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1257 (D.C. Cir. 2004).

Indeed, it appears that the ***sole*** reason Pagidipati appears in this instant suit is to justify referencing the prior settlement. But, if that was the goal, Zafirov's reliance on that settlement is misplaced. By the government's own acknowledgment, Pagidipati's settlement in the prior case related to a 2008 application to the Center for Medicaid and Medicare Services about Medicare Advantage network expansion, an issue irrelevant to the instant litigation.[4] Moreover, Pagidipati

---

surprising: she filed her suit within just seven months of employment. She simply was not at FMA long enough to have any relevant communications, much less communications that support her salacious allegations.

[4] The Government's acknowledgement of the settlement is available at https://www.justice.gov/opa/pr/medicare-advantage-organization-and-former-chief-operating-officer-pay-325-million-settle. This governmental representation is judicially noticeable, *see* Fed. R. Evid. 201 (allowing the Court to "judicially notice a fact that is not subject to reasonable dispute"); *Chapman v. Abbott Labs.*, 930 F. Supp. 2d 1321, 1323 (M.D. Fla. 2013) (taking judicial notice of information on government website without converting a motion to dismiss into one for summary judgment), and can be considered under the rule of completeness, *see* Fed. R. Evid. 106

5

specifically denied any liability in that matter. Courts have routinely held that settling a lawsuit, especially where the settlement contains a denial of wrongdoing, does not create an inference, presumption, or evidence of new wrongdoing. *See Cruz v. City of New York,* No. 15-CIV-2265(PAE), 2016 WL 234853, at *7 (S.D.N.Y. Jan. 19, 2016) (rejecting the inference that a past settlement suggests new wrongdoing); *Correction Officers Benevolent Ass'n of Rockland Cty. v. Kralik,* 226 F.R.D. 175, 177 (S.D.N.Y. 2005) (stating that "[p]rior settlement agreements, no matter how similar the litigation, are irrelevant to this case or the facts giving rise thereto"); *Nguyen v. Simpson Strong-Tie Co.*, No. 19-cv-07901-TSH, 2020 WL 5232563, at *3 (N.D. Cal. Sep. 2, 2020) (striking irrelevant "allegations regarding the purported settlements").

The inclusion of Pagidipati in this instant case appears to be nothing more than a misdirected effort to harass and malign a managing member of some of the corporate defendants. And while Zafirov might hope to bolster her lack of knowledge with discovery, these efforts should be resisted. "The particularity requirement of Rule 9 is a nullity if Plaintiff gets a ticket to the discovery process without identifying a single claim." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) (quoting *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1307 (11th Cir. 2002)). Zafirov should not be allowed to drag Pagidipati through the burden and expense of discovery, hoping she can cure her lack of knowledge. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560 (2007). For this reason, dismissal should be with prejudice. *See United States ex rel. McFarland v. Florida Pharmacy Solutions*, 358 F. Supp. 3d 1316, 1330 (M.D. Fla. 2017) (dismissing "a baseless claim asserted to extract a settlement" with prejudice).

---

(allowing the Court to consider "any other writing or recorded statement – that in fairness ought to be considered at the same time" as Zafirov's initial invocation of the settlement agreement)*.*

***The government's non-intervention shows that there are no material false claims here.***

Finally, the government's decision not to intervene shows that any allegedly incorrect diagnosis coding was not material. *See* Doc. 40 (government's notice of election to decline intervention); *Polansky v. Executive Health Res.*, 422 F. Supp. 3d 916, 938 (E.D. Pa. 2019) ("Post-*Escobar*, numerous federal courts have found insufficient FCA materiality where the government investigated a relator's allegations but chose not to intervene or otherwise address the defendant's allegedly improper behavior."). The government has investigated Zafirov's allegations and declined to take action, either in this *qui tam* action or under the Corporate Integrity Agreement from *Sewell*. Zafirov therefore cannot plausibly allege that any of the Defendants' actions, much less Pagidipati's actions, affected the government's payment decision.

## CONCLUSION

For all of the foregoing reasons, as well as the co-defendants' arguments—which are incorporated herein by reference—Pagidipati requests that the pending complaint against him be dismissed with prejudice and that this Court award any other remedies it deems appropriate.

Dated: September 23, 2020

        Respectfully submitted,

*/s/ A. Lee Bentley, III*
A. Lee Bentley III
Florida Bar No. 1002269
Jason P. Mehta
Florida Bar No. 106110
Kyle W. Robisch
Florida Bar No. 113089
BRADLEY ARANT BOULT CUMMINGS LLP
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5500
Facsimile: (813) 229-5946
Primary E-mail: lbentley@bradley.com
Primary E-mail: jmehta@bradley.com
Primary E-Mail: krobisch@bradley.com
Secondary E-Mail: dmills@bradley.com

Counsel for Defendant Siddhartha Pagidipati

## **CERTIFICATE OF SERVICE**

  I hereby certify that on September 23, 2020, I filed the foregoing with the Court's electronic filing system, which will cause a copy to be served upon all counsel of record.

                */s/ A. Lee Bentley, III*
                OF COUNSEL