# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| *ex rel.* DR. CLARISSA ZAFIROV, | ) | |
| | ) | |
|     Plaintiff/Relator | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE NO. 8:19-cv-01236 |
| FLORIDA MEDICAL ASSOCIATES, LLC, | ) | |
| d/b/a VIPCARE; PHYSICIAN PARTNERS, LLC, | ) | |
| PHYSICIAN PARTNERS SPECIALITY | ) | |
| SERVICES, LLC; SUN LABS USA, INC. | ) | |
| ANION TECHNOLOGIES, LLC; ANTHEM, | ) | |
| INC.; FREEDOM HEALTH, INC.; OPTIMUM | ) | |
| HEALTHCARE, INC.; and SIDDHARTHA | ) | |
| PAGIDIPATI, | ) | |
| | ) | |
|     Defendants. | ) | |

## RELATOR DR. CLARISSA ZAFIROV'S RESPONSE IN OPPOSITION TO DEFENDANT SIDDHARTHA PAGIDIPATI'S MOTION TO DISMISS

## I.    Introduction and Background

Defendant Siddhartha Pagidipati's Motion to Dismiss (Dkt. 49) is designed to inject into the record facts not alleged in nor material to Relator's complaint. It ignores the unalterable fact that the factual allegations of the complaint are taken as true, and offers no justification for incorporating facts which are not in the complaint. It makes no legal arguments distinct from those raised in the motion to dismiss by the Provider Organizations which he admits that he controls (Dkt. 44). Defendant Pagidipati's motion is remarkable for its naked vitriol against Dr. Clarissa Zafirov for her courage in reporting her allegations of fraud, and for its self-aggrandizing narrative which adds nothing to the case at bar. Simply, Defendant Pagidipati's pedigree as a self-appointed savior of the healthcare industry is immaterial, except insofar as it illustrates that he has yet to run

or participate in a healthcare company that wasn't riddled with fraud allegations from employees, contractors, or the United States of America.

In fact, contrary to the substance of his arguments, Defendant Pagidipati's opening salvo establishes that he *was* exercising operational control over the provider organizations identified by Relator. Defendant Pagidipati concedes he, personally, "play[s] a meaningful role" in his healthcare companies, stemming from the "teams that he leads." Dkt. 49 at 1. He also asserts that he maintains control through his "'open-door' policy" and "his openly stated desire for team members to communicate about concerns or suggestions." *Id.* at 3. In addition to Relator's well-pled allegations, Defendant Pagidipati's own statements make clear that he is not a party in this suit as a means to harass or defame him.[1] He is named individually because (as he now admits), he holds complete operational control over each of his intertwined corporations, thus directing the fraudulent conduct and causing false claims to be submitted to the United States.

It is no small irony that Defendant Pagidipati cries harassment, but then turns his responsive pleading into an opportunity to diminish Dr. Zafirov and cast her as a naïve young doctor with little knowledge of the operation of her own practice. But Defendant Pagidipati has no medical training, and he has no basis whatsoever to refute that Dr. Zafirov is anything other than a talented and dedicated physician who was heavily recruited by his company when she expressed interest in an online job posting.[2] Dr. Zafirov's *bona fides* speak for themselves: she is a bilingual family

---

[1] Oddly, Mr. Pagidipati refutes his own assertion when he claims, just one page later, that "it appears that the ***sole*** reason Pagidipati appears in this instant suit is to justify referencing the prior settlement." Dkt. 49 at 5 (emphasis in original). This statement is equally as baseless; the MA Defendants were also parties to the *Sewell* case and settlement, so it would have been instructive as to knowledge and materiality whether Defendant Pagidipati was named or not.

[2] It is of no relevance whether, even if it is true, that Dr. Zafirov is the only physician to ever apply for employment at FMA, so Relator will not muddy the docket by entering in the copious evidence as to how heavily she was recruited by FMA once she emailed an inquiry in response to an online job posting, unless the Court so desires. Suffice to say, however, that Dr. Zafirov was courted heavily, including a

medicine physician that holds degrees from the University of Nebraska and the Medical University of Sofia (Bulgaria). She completed a family medicine residency at Mercy Hospital in Des Moines, IA in 2016 and, that same year, obtained Board certification from the American Board of Family Medicine (Dkt. 1 at ¶6), a qualification that denotes "the expertise and experience of a physician in a particular field of medicine"[3] which is held by just half of Defendant FMA's physicians.[4] Dr. Zafirov may not have worked in a Medicare Advantage practice before she was hired by Defendant Pagidipati's companies, but she did not need prior experience to understand that the relentless pressure to override a doctor's professional judgment and the submission of claims for payment related to diagnostic codes without physician approval or acceptance were false claims to the United States.

## II.   Relator's complaint pleads allegations against Defendant Pagidipati with specificity as required by Rule 9(b), Fed. R. Civ. P.

### A.   The Rule 9(b) pleading standard is satisfied by establishing indicia of reliability that false claims were submitted to the United States.

Defendant Pagidipati fails to set forth the proper pleading standard governing the review of a complaint for False Claims Act violations by a corporate insider like Dr. Zafirov. Instead, he summarily concludes that, "[a]bsent ["the who, what, where, when and how of a fraudulent

---

team of executives (including Physician Partners' medical director) traveling to visit her in her hometown, an expenses-paid trip to the PP offices in Ocala, and countless conversations over several months before she accepted the position based on the representations made by PP and FMA.

Indeed, if Dr. Zafirov *is* the first doctor ever to apply for a job in this 500-physician leviathan, one might wonder how the other 499 came to be employed.

[3] American Board of Physician Specialties, "Not all Physicians Are Board Certified in the Specialties They Practice." Last accessed on Oct. 18, 2020 at: https://www.abpsus.org/physician-board-certified-specialties/

[4] Based on the distinction of Board Certification identified on physician profiles on the VIPcare website as of October 10, 2020. Last accessed on Oct. 19, 2020 at: www.getvipcare.org

submission to the government], the case must be dismissed." Dkt. 49 at 4, *citing Hopper v. Solvay Pharmaceuticals, Inc.*, 588 F.3d 1318, 1326-27 (11th Cir. 2009). This is an overly simplistic and inaccurate pronouncement. Rather, a relator is required to plead with a level of specificity sufficient to meets the twin purposes of Rule 9(b): "alert[ing] defendants to the precise misconduct with which they are charged and protect[ing] defendants against spurious charges[.]" *United States ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012), *quoting Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). With those purposes in mind, "[t]he Eleventh Circuit has championed a 'nuanced, case-by-case approach' for examining whether the requisite indicia of reliability are present." *United States v. Crumb,* No. 15-0655-WS-N, 2016 U.S. Dist. LEXIS 112661, at *21-24 (S.D. Ala. Aug. 23, 2016), citing *United States ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 Fed. Appx. 693, 704 (11th Cir. 2014).

Undoubtedly, "[a]llegations of date, time or place satisfy the Rule 9(b) requirement that the circumstances of the alleged fraud must be pleaded with particularity, *but alternative means are also available to satisfy the rule*." *Mastej*, 591 Fed. Appx. at 704 (emphasis added), *quoting Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1512 (11th Cir. 1988). Thus, while a complaint must include "indicia of reliability" that a claim was submitted and pleading the "who, what, when, where and how" of a specific false claim is *one way* of satisfying that obligation, it is not the *only way. Id.* ("[T]here is no per se rule that an FCA complaint must provide exact billing data or attach a representative sample claim.").[5] Particularly salient here, where the allegations are complex and precise, a "detailed mosaic of complementary allegations does support a reasonable inference that the defendant is liable for the misconduct alleged." *Crumb*, 2016 U.S. Dist. LEXIS 112661, at *95.

---

[5] The Provider Organization Defendants and the Medicare Advantage Defendants provide more fulsome arguments with respect to the Rule 9(b) pleading requirements for a False Claims Act case in the Eleventh Circuit. Dkts. 44 and 41, respectively. Relator responds in kind in her oppositions to those briefs, and incorporates by reference her arguments thereto as though they were fully set forth herein.

With respect to liability for an individual, Defendant relies solely on *United States v. Pub. Warehousing Co.* for the proposition that claims against an individual identified as an "owner/director" are not sufficient where no further details about the owner's personal involvement in the False Claims Act violation are alleged. 242 F. Supp. 3d 1351, 1360 (N.D. Ga. 2017). There, the relator pled only that three individual defendants were owners or managers of the corporate defendants. *Id*. The court concluded, "[w]hile group pleading is allowed in certain circumstances, it is also well established that a corporation's shareholders or managers cannot be held liable *based solely on their title or ownership*." *Id*. (emphasis supplied). That much is not in dispute when control or individual responsibility is not plausibly alleged.

But, when, as here, more than uninvolved ownership is alleged (and admitted), an individual can face False Claims Act liability because he exercises control over the corporate entities which he uses to effectuate the fraud scheme. *United States ex rel. Ramsey-Ledesma v. Censeo Health, LLC*, No. 3:14-CV-00118-M, 2016 U.S. Dist. LEXIS 135392, at *24-25 (N.D. Tex. Sep. 30, 2016) (individual allegations were sufficiently pled where Relator had first-hand knowledge of the scheme and observed that the individual directed the improper practices at issue). Indeed, holding individuals accountable when they have actually perpetrated wrongdoing is a critical aspect of the False Claims Act because "it deters future illegal activity, it incentivizes changes in corporate behavior, it ensures that the proper parties are held responsible for their actions, and it promotes the public's confidence in our justice system." Yates, Sally Q., *DOJ Memorandum regarding "Individual Accountability for Corporate Wrongdoing,"* Sept. 9, 2015.[6]

---

[6] This memorandum, colloquially known as "the Yates Memo," is accessible at:
https://www.justice.gov/archives/dag/file/769036/download.

**B.**    **Defendant Pagidipati exercises operational control over his intertwined companies.**

Relator's complaint does more than allege that Pagidipati is liable for the fraudulent scheme based *solely* on his ownership or title. If that was the allegation, Relator would have also named several other members of the Pagidipati family who hold ownership or title over various corporate defendants. But as alleged in Relator's complaint and as supported in public documents, Defendant Pagidipati "*not only owns* but also controls the policies, procedures and operations of the PO defendants." Dkt. 1 at ¶ 15 (emphasis added). Defendant Siddhartha Pagidipati *alone* is the nucleus to which *every* corporation with a role in this scheme is tied: in 2016, at the same time that his scheme at Freedom had fully unraveled, Pagidipati became a managing member of Florida Medical Associates, a managing member of Anion Technologies, LLC, and a managing member of Physician Partners Specialty Services, LLC; he had already been a member of Sun Labs USA, Inc. since 2002.[7]

Critically, Defendant Pagidipati took over the reins as the *sole shareholder* of Physician Partners, LLC that same year, completely excising any other Pagidipati family members from ownership of the organization at the core of his fraud scheme. Defendant Pagidipati is not a passive observer or a silent partner in the companies which he owns, nor is it solely his ownership of *any single entity* which draws him into this case. Rather, it is Defendant Pagidipati's unique position

---

[7] Each entity is a registered corporation in the State of Florida, so all of their corporate information is available on the State of Florida's "SunBiz" website which provides public access to business records filed with the Florida Secretary of States. The Court can take judicial notice of the public records filed with the State of Florida and available on www.sunbiz.com, the Florida Division of Corporations' searchable website, because such records are "not subject to reasonable dispute." *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (holding that a court can take judicial notice of documents without converting the motion to dismiss to a motion for summary judgment); *Memmo v. Direct Supply of Wis., Inc.*, No. 8:18-cv-879-JSM-JSS, 2018 U.S. Dist. LEXIS 232519, at *3 (M.D. Fla. July 6, 2018) (taking judicial notice of records on Florida's "Sunbiz" profile from the Florida Dept. of State's website).

of ownership and operational control at *every one* of the Provider Organization corporations which enable the execution of this carefully orchestrated scheme and established Defendant Pagidipati as the "hub" to all of his corporate "spokes." *United States ex rel. Silingo v. Wellpoint, Inc.*, 904 F.3d 667, 678 (9th Cir. 2018) (permitting group pleading of a wheel conspiracy-like fraud).

Tellingly, Defendant Pagidipati does not challenge that he did, in fact, exert that the exact universal control that Relator alleges – thus evidencing that he understands the role he is alleged to have held in the fraud scheme. In fact, he admits that he, individually, led the "teams" at his companies and that he, individually, endeavored to engage with *all* of *his* "team members" to address their concerns and suggestions, roles he could only undertake if he was exercising control at each company. Dkt. 49 at 1, 3. Defendant Pagidipati's *only* argument is that he never interacted directly with Dr. Zafirov – an assertion that is meaningless to his ultimate control over the entire corporate web.

Finally, despite Defendant's contentions, Relator does not allege that Defendant Pagidipati is liable for the conduct alleged in this case simply because he previously settled allegations of engaging in another fraudulent scheme against the United States. However, his role in the previous case does speak directly to his knowledge of the complex operations of the Medicare Advantage system and his knowledge that it is material to the United States that risk adjustment scores be accurate and not manipulated for the purposes of increasing capitation rates. Relator need not allege knowledge with particularity at the pleading phase; she must establish it only generally. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001), citing Rule 9(b), Fed. R. Civ. P. Here, Defendant Pagidipati's operational control of the corporate entities establishes his knowledge of their fraudulent practices, and his role in the prior litigation establishes that he knew those practices would ultimately lead to materially false claims.

**III.    The Government's decision not to intervene does not bear on the merits nor materiality of Defendant Pagidipati's fraudulent conduct.**

Defendant Pagidipati makes a two-sentence assertion that "the government's non-intervention shows that there are no material false claims here." Dkt. 49 at 7. This argument is inconsistent with the vast body of law in the Eleventh Circuit and around the country which holds squarely that the Government's intervention decision does not weigh on the materiality of the alleged conduct.

Defendant cites only one out-of-circuit case in support of his argument. But, save for the occasional anomalous holding, it has been universally recognized that a decision of the United States to decline intervention is not to be construed as an indication that the Government believes the relator's claims are without merit or not material. "Because the government 'may have a host of reasons for not pursuing a claim,' courts 'do not assume that in each instance in which the government declines intervention in an FCA case, it does so because it considers the evidence of wrongdoing insufficient or the *qui tam* relator's allegations [of] fraud to be without merit." *United States ex rel. Feldman v. van Gorp*, 2010 U.S. Dist. LEXIS 73633, at *5-6 (S.D.N.Y. July 8, 2010), *quoting United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 n.17 (11th Cir. 2006); *United States ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125, 144 n.3 (E.D. Pa. 2012) (noting the "overwhelming weight of authority…that no such presumption should be imposed").

Rather, "[t]he Justice Department may have myriad reasons for permitting the private suit to go forward including limited prosecutorial resources and confidence in the relator's attorney." *United States, ex rel. Chandler v. Cook County, Illinois*, 277 F.3d 969, 974 n. 5 (7th Cir. 2002); *United States ex rel. Ubl v. IIF Data Solutions*, 650 F.3d 445, 457 (4th Cir. 2011) ("The government's decision not to intervene in an FCA action does not mean that the government believes the claims are without merit … and the government's decision not to intervene therefore

is not relevant in an FCA action brought by a private party."). Defendant does not, and cannot, identify any indication by the United States that its decision not to intervene in this case reflects a lack of merit of Relator's allegations, and the Court cannot read one into the hollow argument. Indeed, the Government did not elect to dismiss the case (as it has the authority to do when it concludes that a False Claims Act case lacks merit). Rather, its Notice of Election to Decline expressly contemplates the case continuing forward: "[The United States] respectfully refers the Court to 31 U.S.C. § 3730(b)(1), which allows the relator to maintain the action in the name of the United States…" Dkt. 40 at 1.

Accordingly, no weight should be given to Defendant Pagidipati's effort to use the Government's declination decision as a shield from Relator's prosecution of this case.

## IV.  Relator's first-hand observations of Defendant Pagidipati's control continued after the filing of this complaint.

Although Dr. Zafirov was only employed by the Provider Defendants for seven months before filing her case, she continued her employment for an additional ten months. Over the whole term of her employment, directly and through her colleagues, Dr. Zafirov witnessed the control of Defendant Pagidipati. Thus, even if the Court determines that the Defendant Pagidipati needs additional information to be fully understand of the allegations against him, Relator is equipped to so provide and seeks leave to amend her complaint. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001), quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice") (internal quotation omitted).

## V.      Conclusion

For the reasons set forth herein, Relator respectfully requests that this Court deny Defendant Siddhartha Pagidipati's motion to dismiss.

Respectfully submitted this 20th day of October, 2020,

/s/ Jillian L. Estes_____
Frederick M. Morgan, Jr. (Ohio Bar No. 0027687)
Jillian L. Estes (Fla. Bar No. 0055774)
Jonathan Lischak (Ohio Bar No. 97669)
MORGAN VERKAMP LLC
35 East 7th Street, Suite 600
Cincinnati, OH 45202
Phone: (513) 651-4400
Fax: (513) 651-4405
rmorgan@morganverkamp.com
jillian.estes@morganverkamp.com
jonathan.lischak@morganverkamp.com

Kenneth J. Nolan (Fla. Bar No. 603406)
Marcella Auerbach (Fla. Bar No. 249335)
NOLAN, AUERBACH & WHITE, LLP
435 N. Andrews Ave., Suite 401
Fort Lauderdale, FL 33301
Phone: (954) 779-3943
Fax: (954) 779-3937
ken@whistleblowerfirm.com
marcellla@whistleblowerfirm.com

**Counsel for Relator Dr. Clarissa Zafirov**

## CERTIFICATE OF SERVICE

I, Jillian Estes, hereby certify that the foregoing Notice was served on October 20, 2020, to all parties of record via the CM/ECF electronic filing system.

/s/ Jillian L. Estes_____   _____
Jillian L. Estes (Fla. Bar No. 0055774)