**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

United States *ex rel.* Clarissa Zafirov,

      *Plaintiff/Relator*,

v.                           CASE NO. 8:19-cv-01236-SDM-SPF

Florida Medical Associates, LLC
d/b/a VIPcare; Physician Partners,
LLC; Physician Partners Specialty
Services, LLC; Sun Labs USA, INC.;
Anion Technologies, LLC; Anthem,
Inc.; Freedom Health, Inc.; Optimum
Healthcare, Inc.; and Siddhartha Pagidipati,

      *Defendants*.

_____/

**PROVIDER DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

    Defendants Florida Medical Associates, LLC, Physician Partners, LLC, Physician Partners Specialty Services, LLC, Sun Labs USA, Inc., and Anion Technologies, LLC (the "Provider Defendants") file this reply in support of their motion to dismiss Zafirov's complaint. The False Claims Act's statutory bars require dismissal of all Zafirov's claims—permanently.

**ARGUMENT**

**I.**    **The public disclosure bar forecloses Zafirov's efforts to relitigate *Sewell*.**

    For Zafirov's claims to survive the False Claims Act's public disclosure bar, she needs to show that (1) her claims were not already publicly disclosed, (2) her allegations are not "substantially similar" to prior public disclosures, and (3) she is an "original source" of the publicly

1

disclosed information. *See* Doc. 50 at 17–18.[1] She fails in all three respects. Because Zafirov, not the Provider Defendants, "bears the burden of proving that the public disclosure bar does not preclude h[er] FCA action," her claims should be dismissed with prejudice. *See U.S. ex rel Brown v. BankUnited Trust 2005-1*, 235 F. Supp. 3d 1343, 1354 (S.D. Fla. 2017) (quoting *U.S. ex rel. May v. Purdue Pharma. L.P.*, 811 F.3d 636, 640 (4th Cir. 2016)).

*First,* Zafirov's efforts to run from the prior public disclosures are unavailing. Zafirov's argument boils down to a single idea, namely, that because she alleges continued fraud, involving additional defendants, the public disclosure bar is inapplicable. *See* Doc. 56 at 22–23; Doc. 57 at 18. This argument is flawed in that it conflates the "public disclosure" prong with the "substantial similarity" prong. Under the first prong's "generally broad scope," the Provider Defendants' cited public disclosures readily satisfy this prong. *Schlinder Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 404 (2011).

What is more, it is enough that the prior public disclosures generally overlap with what she alleges here. *See also U.S. ex rel. Boothe v. Sun Healthcare Grp., Inc.*, 496 F.3d 1169, 1174 (10th Cir. 2007) ("[n]ot a single circuit has held that a *complete* identity of allegations, even as to time, place and manner, is required to implicate the public disclosure bar.") (emphasis in original). The allegations featured in *Sewell* and its press coverage overlap significantly with those made by Zafirov. *See* Doc. 50 at 18–20 (describing *Sewell*'s same allegations concerning, and the press's focus on, "doctors" and "physicians"); *see also Sewell* Second Am. Compl. ¶¶ 109–113 (alleging "that the diagnosis codes submitted by certain *providers* are incorrect or even fraudulent.") (emphasis added).

---

[1] Docket 50 is the refiled version of Docket 44—the Provider Defendants' motion to dismiss—and citations across those documents are therefore the same.

*Sewell* also resulted in a Corporate Integrity Agreement ("CIA") requiring Freedom to submit its data to a third-party auditor "to determine whether Freedom properly submitted risk adjustment eligible diagnoses to CMS in accordance with CMS's rules and criteria under the Medicare Advantage Program."[2] Doc. 50, Ex. A, at App'x C. The *Sewell* CIA is publicly available on the government's website and is linked in a DOJ press release about the case.[3] The Sixth Circuit recently held that a publicly available CIA requiring a Medicare provider to submit its coding, billing, and claims submissions to a third-party auditor was a public disclosure under § 3730(e)(4)(A)(1). *See U.S. ex rel. Maur v. Hage-Korban*, --- F.3d ----, No. 20-5301, 2020 WL 7038408, at *3 (6th Cir. Dec. 1, 2020). The Sixth Circuit's decision is squarely on point. The Court should follow its analysis here.

*Second,* Zafirov's allegations are "substantially similar" to those earlier public disclosures. Here, Zafirov suggests that because she has sued more defendants than the *Sewell* relator, and spread her allegations over a different—but largely overlapping—time period, there is no substantial similarity. *See* Doc. 56 at 22-23; Doc. 57 at 18. This misapplies the law and misstates the facts.

As to the law, the Eleventh Circuit has held that later cases based in "*any part*" on prior public disclosures are substantially similar. *See* Doc. 50 at 20-21 (quoting *Battle v. Bd. of Regents*

---

[2] Separately, Zafirov argues that industry and government CMS reports detailing this fraud do not qualify as public disclosures. *See* Doc. 56 at 22. That is incorrect: regardless of the identities of doctors who wrote down the allegedly incorrect codes, the underlying conduct has also been publicly disclosed in a government report.

[3] *See* DOJ, *Medicare Advantage Organization and Former Chief Operating Officer to Pay $32.5 Million to Settle False Claims Act Allegations* (May 30, 2017), https://www.justice.gov/opa/pr/medicare-advantage-organization-and-former-chief-operating-officer-pay-325-million-settle; HHS OIG, *Corporate Integrity Agreement Between the Office of Inspector General of the Department of Health and Human Services and Freedom Health Inc. and Optimum Healthcare, Inc.*, https://oig.hhs.gov/fraud/cia/agreements/Freedom_Health_Inc_and_Optimum_Healthcare_Inc_05112017.pdf (last visited Dec. 8, 2020).

*for Ga.*, 468 F.3d 755, 762 (11th Cir. 2006) (emphasis in original). By openly admitting to "recycling" from *Sewell*, Zafirov essentially concedes substantial similarity. *See* Doc. 57 at 19. Moreover, she does much more than merely "recycle some applicable language" from *Sewell*: she lifts her whole theory of the case from *Sewell*. A side-by-side comparison of the two complaints is telling:

| Sewell Second Amended Complaint | Zafirov's Current Complaint |
|---|---|
| Defendants "submit as many diagnosis codes as possible . . . look[ing] for any hint of medical conditions that correspond to HCC codes that substantially increase CMS payments, and then claim that the patient was treated for that condition – regardless of whether the patient actually has the condition or was treated for it in the year in question, by a qualified provider [] in a face-to-face visit." (¶ 121) | Defendants "submit as many [] diagnosis codes as possible . . . look[ing] for any hint of medical conditions that correspond to HCC codes that substantially increase CMS payments, and then claim that the patient was treated for that condition – regardless of whether the patient actually has the condition or was treated for it in the year in question by a qualified provider in a face-to-face visit." (¶ 49.b) |
| "Relator identified flagrant coding violations . . . f[inding] that Freedom had coded every condition it could find, consistently assigning the highest possible value code to each condition, regardless of whether those codes violated CMS rules." (¶ 124) | "Relator identified flagrant coding violations . . . f[inding] that physicians routinely coded, and Freedom accepted, every condition the doctor could conceivably find and then assigned the highest possible code to those conditions, regardless of whether . . . the coding violated CMS rules." (¶ 50) |

*See* Doc. 50 at 20–21 (additional side-by-side comparisons of the *Sewell* and Zafirov complaints); *see also Hage-Korban*, 2020 WL 7038408, at *4 (affirming substantial similarity where the relator "copie[d] much of the [earlier] complaint verbatim"). That easily activates this prong's "quick trigger." *U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 814 (11th Cir. 2015).

Layering new patient examples and additional defendants onto the *Sewell* allegations cannot save this complaint. Adding "new [d]efendants, and describ[ing] different specific patient examples," the crux of what Zafirov pretends to "add" to *Sewell*, does not dilute substantial

similarity. *See Hage-Korban*, 2020 WL 7038408, at *2 (affirming a district court's application of the public disclosure bar on those grounds).

Zafirov's effort to recast her claims as something new because they relate in part to actions taken after the *Sewell* settlement is likewise unavailing. *See* Doc. 57 at 19–20. Federal courts "consistently f[ind] that a continuing fraud in a new time period is not a new fraud, but is, instead, substantially similar to prior public disclosures." *U.S. v. Medco Health Solutions, Inc.*, No. 11-684-RGA, 2017 WL 63006, at *8 (D. Del. Jan. 5, 2017); *see also U.S. ex rel. Galmines v. Novartis Pharmaceuticals Corp.*, 88 F. Supp. 3d 447, 450 (E.D. Pa. 2015) ("new allegations" against similar defendants "are substantially similar, [because] they allege the same underlying scheme, but as applied to a new time period."). Zafirov alleges the same conduct (inflated capitation payments), by the same individuals (insurers, physicians, and their bosses), under the same legal theories (indistinguishable FCA claims). Because Relator at best "allege[s] the same fraud continued in a new time period, h[er] complaint is substantially similar to . . . public disclosures." *Medco Health*, 2017 WL 63006, at *8

*Third*, Zafirov is not an original source, much less a "consummate" one. For the first time, and in a single sentence, she suggests that she "voluntarily provided her information to the Government before filing this case." *See* Doc. 57 at 20. Even assuming that is true, it is not enough. As an initial matter, Zafirov's bald conclusion—absent from her complaint—fails to provide any "specific facts" establishing her "original source status knowledge": the who, what, where, and when of what she learned and how she informed the government. *BankUnited Trust*, 235 F. Supp. 3d at 1358. This independently dooms her original source status.

In any event, Zafirov further fails to prove, as she must to establish herself as an original source, that she satisfies one of two prerequisites: that she either (a) voluntarily disclosed

everything in her complaint to the government before the *original* public disclosure (e.g., *Sewell*) or (b) had "independent" knowledge which "materially added" to the public disclosures *and* that she has voluntarily provided ***all*** such information to the government before filing this action. 31 U.S.C. § 3730(e)(4)(B). As to the first prerequisite, it is irrelevant that she may have "provided her information to the Government before filing this case," because that is not the inquiry. Doc. 57 at 20. Instead, the first prerequisite asks whether the relator disclosed her information "*prior to [the] public disclosure.*" 31 U.S.C. § 3730(e)(4)(B) (emphasis added). Here, the *Sewell* case was settled over a year before Zafirov began working at Physician Partners. She obviously did not disclose her allegations to the government before the *Sewell* case was filed.

As for the second prerequisite, "independent" knowledge means "direct knowledge"; information "derived from secondhand sources" does not count. *See U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 841 F.3d 927, 936-37 (11th Cir. 2016). Zafirov's copied-and-pasted complaint betrays any claim that her knowledge is legitimately independent of what *Sewell* revealed. Throughout her complaint, Zafirov levels her weightiest allegations "on information and belief," which is "categorically insufficient for original source status." *Medco Health*, 2017 WL 63006, at *9; *see, e.g.,* Compl. ¶¶ 11-14, 66, 72, 73, 76, 80 (offering dozens of allegations on "information and belief").

Moreover, when Zafirov is not relying upon "information and belief," she bases her claims on secondhand—rather than "independent"—knowledge. She repeatedly refers to other physicians' care notes, hearsay passed on from other physicians and staff, and her guesses about what Defendants did (or did not) do billing- and submission-wise. *See, e.g.,* ¶ 50 (relying on hearsay); ¶ 73 (alleging submissions "on information and belief"). This sort of "second-hand knowledge derived from evidence . . . in [a] prior case and conversations with doctors, other

6

providers, and [defendants'] officials" does not qualify as "independent" original source information. *See Wilheim v. Molina Healthcare of Fla.*, 674 F. App'x 960, 961 (11th Cir. 2017) (per curiam). In short, Zafirov's "background information" and "secondhand information . . . fails . . . the original source requirement." *See Fresenius Med. Care*, 841 F.3d at 937.

Moreover, any "independent" knowledge underlying Zafirov's allegations does not "materially add to" the prior public disclosures. "Materiality" means "information of 'such a nature that knowledge' of it 'would affect' the 'government's decision-making.'" *Hage-Korban*, 2020 WL 7038408, at *8. (quoting *U.S. ex rel. Advocates for Basic Legal Equality, Inc. v. U.S Bank*, 816 F.3d 428, 432 (6th Cir. 2016) [hereinafter *ABLE*]). New complaints which "merely add[] details to what is already known in outline" do not "materially add" anything. *See ABLE*, 816 F.3d at 432 (internal quotation marks and citations omitted). As discussed throughout, everything in Zafirov's complaint merely adds detail to what previously has been alleged and would not have— and has not—affected the government's decision-making.

Simply put, the public disclosure bar permanently blocks Zafirov's case. Because no amount of amendment can undo *Sewell*'s public disclosures, the Complaint should be dismissed with prejudice. *See Osheroff*, 776 F.3d at 816 (affirming dismissal with prejudice under the public disclosure bar); *see also U.S. ex rel. Barber v. Paychex, Inc.*, No. No. 09-20990-CIV, 2010 WL 2836333, at *1 (S.D. Fla. July 15, 2010) (dismissing a relator's first complaint with prejudice under the public disclosure bar).

## II.     Zafirov's copycat case is also barred by the first-to-file rule.

Zafirov's claims are also barred by the FCA's first-to-file rule. Zafirov and the Provider Defendants apparently agree on two things: the first-to-file analysis is "simple" and Zafirov generally alleges the same fraud as the *Fernandez* relator. *See* Doc. 56 at 18–20 (conceding that

"both complaints allege schemes to increase risk scores in order to secure higher payments from Medicare"); Doc. 50 at 16-17. Yet, Zafirov urges the Court to ignore the first-to-file rule because, in her view, she alleges more than the *Fernandez* relator.[4] *See* Doc. 56 at 19. Not only is that the wrong inquiry, it also isn't true.

As Zafirov admits, the first-to-file rule asks only whether the later complaint "alleges a fraudulent scheme the government already would be equipped to investigate based on the first complaint." *U.S. ex rel. Bernier v. Infilaw Corp.*, 347 F. Supp. 3d 1075, 1083 (M.D. Fla. 2018) (internal quotation marks and citations omitted). Thus, "even if the [later] allegations incorporate additional or somewhat different facts or information," the bar blocks the later-filed case, so long as the fraud alleged is generally the same. *Id; see also U.S. ex rel. Cho v. HIG Capital,* No. 2020 WL 5076712, at *11 (M.D. Fla. Aug. 26, 2020) ("[t]he fact that the later action names different or additional defendants is not dispositive as long as the two complaints identify the same general fraudulent scheme").

As a comparison of the *Fernandez* and Zafirov complaints reveals, that is precisely the case here. Indeed, Zafirov alleges the same fraud (upcoding to secure higher capitated payments), based on the same conduct (billing for medically unnecessary care and pressuring physicians to upcode), by the many of the same defendants (including, for example, Physician Partners),  in an effort to recover for the *same three claims*.[5] *See U.S. ex rel. Fernandez v. Physician Partners, et al.*, No.

---

[4] *Fernandez* is moving forward: the relator secured new counsel and the Clerk recently issued summons to the Provider Defendants.

[5] For these reasons, *Fernandez* readily equipped the Government to investigate Zafirov's allegations too. *Fernandez* alleges more than "unnecessary diagnostic scans": it alleges physician pressuring, corporate (i.e., non-physician) upcoding, false submissions, and more. *See* Doc. 56 at 20; Ex. A ¶¶ 21–28. In short, *Fernandez* gave the government more than "enough information to discover the fraud alleged in the second-filed complaint." *HIG Capital*, 2020 WL 5076712, at *11 (internal quotation marks and citation omitted)).

8:18-cv-1959-T-35-JSS (M.D. Fla.), Compl. ¶¶ 17, 20–24, 34–44 (a true and correct copy of the *Fernandez* complaint is attached as **Exhibit A)**. Zafirov and Fernandez even poach from the same public disclosure: *Sewell*. *See id.* ¶ 6. So, although Zafirov's "complaint contains slightly different details," both complaints allege the same general scheme, triggering the first-to-file bar. *See HIG Capital*, 2020 WL 5076712, at *9; *see also Cooper v. Blue Cross & Blue Shield of Fla.*, 19 F.3d 562, 567 (11th Cir. 1994) ("once one suit has been filed . . . all other suits … based on the same kind of conduct [are] barred.")

### III. Because the government already settled the claims Zafirov repackages here, the government action bar also blocks this case.

The government action bar, too, forecloses Zafirov's complaint. Her only arguments otherwise—that she is allowed to steal from *Sewell* and, disingenuously, that she is *not* stealing from *Sewell*—fail. *See* Doc. 56 at 23-24. Because her allegations parrot *Sewell*, because *Sewell* was indisputably a civil suit, and because the government was a party to *Sewell*, her complaint triggers the government action bar. *See* Doc. 50 at 22 (quoting 31 U.S.C. § 3730(e)(3)).

Zafirov takes more than "three similar sentences" from *Sewell*: she pilfers entire paragraph's worth of allegations, verbatim, *and* her whole theory of fraud. *See supra* at 3–5 (assessing substantial similarity); *see also Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 256, 262 (E.D. Pa. 2020) (observing that the "inquiry is essentially a test of factual similarity"). In fact, Zafirov pulls her whole theory of the case right out of *Sewell*: arguing that "[d]espite [Defendants'] previous lawsuit and settlement, the Defendants violated the FCA *again.*" Compl. ¶ 47 (emphasis in original). It is difficult to imagine a clearer case of a later, "parasite" case "receiving support, advantage, or the like" from an earlier, "host case": Zafirov outright admits the connection. *Sturgeon*, 438 F. Supp. 3d at 262.

The mere fact that some of the defendants here were not named defendants in *Sewell* does not change the analysis. *See* Doc. 56 at 23. Physician Partners had its contracts with Freedom and Optimum before they settled *Sewell* in May 2017. Moreover, the *Sewell* relator alleged that Physician Partners' predecessor-in-interest, FIPA, LLC, was incentivized to make inaccurate diagnoses and that it submitted false codes. *See Sewell* Second Am. Compl. ¶¶ 160-167. Therefore, even before it settled *Sewell*, the government was well equipped to proceed against Physician Partners, as well as against the other Provider Defendants whom Zafirov alleges Pagidipati owned and controlled. It chose not to do so. Similarly, the government has chosen not to intervene in the instant case. By definition, then, there is "no useful return to the government" from this follow-on case. *See U.S. ex rel. Batty v. Amerigroup Ill., Inc.*, 528 F. Supp. 2d 861, 876 (N.D. Ill. 2007) (noting there is "no useful return to the government . . . where [the] government decline[s] to intervene in [a] second *qui tam* action") (quotation omitted).

At bottom, the government knew before, during, and after *Sewell* that the Provider Defendants allegedly played a role in that case. Yet the government declined to go after them—twice. Because the government action bar applies "to the [initial] suit as a whole," not merely "a particular claim or number of claims," Zafirov's entire case should be dismissed. *U.S. ex rel. Bennett v. Biotronik, Inc,* 876 F.3d 1011, 1021 (9th Cir. 2017); *see also Amerigroup*, 528 F. Supp. 2d at 873 ("once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds").

## <u>CONCLUSION</u>

For all of the foregoing reasons, as well as the co-defendants' arguments, the Provider Defendants request that the Complaint be dismissed with prejudice.

Dated: December 16, 2020

Respectfully submitted,


*/s/ A. Lee Bentley, III*
A. Lee Bentley III
Florida Bar No. 1002269
Jason P. Mehta
Florida Bar No. 106110
Kyle W. Robisch
Florida Bar No. 113089
BRADLEY ARANT BOULT CUMMINGS LLP
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5500
Facsimile: (813) 229-5946
Primary E-mail: lbentley@bradley.com
Primary E-mail: jmehta@bradley.com
Primary E-Mail: krobisch@bradley.com
Secondary E-Mail:  dmills@bradley.com

Counsel for Defendants Florida Medical Associates,
LLC, Physician Partners, LLC, Physician Partners
Specialty Services, LLC, Sun Labs USA, Inc.,
Anion Technologies, LLC

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2020, I filed the foregoing with the Court's electronic filing system, which will cause a copy to be served upon all counsel of record.


*A. Lee Bentley III*
Attorney for the Provider Defendants

4845-5055-7396.1