## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

UNITED STATES OF AMERICA
*ex rel.* DR. CLARISSA ZAFIROV,

      Plaintiff/Relator,

v.

PHYSICIAN PARTNERS, LLC;
FLORIDA MEDICAL ASSOCIATES,
LLC, d/b/a VIPCARE; ANION
TECHNOLOGIES, LLC; FREEDOM
HEALTH, INC.; and OPTIMUM
HEALTHCARE, INC.,

      Defendants.

Case No. 8:19-cv-01236-KKM-SPF

DISPOSITIVE MOTION

### DEFENDANTS FREEDOM HEALTH, INC. AND OPTIMUM HEALTHCARE, INC.'S MOTION TO DISMISS AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendants Freedom Health, Inc. ("Freedom") and Optimum HealthCare, Inc. ("Optimum") (collectively, the "MA Defendants") move to dismiss Relator Dr. Clarissa Zafirov's ("Relator") Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), failure to plead fraud with particularity under Rule 9(b), failure to allege a plausible basis for the MA Defendants' liability under Rule 8(a), and pursuant to the False Claims Act's ("FCA") public disclosure and government action bars, 31 U.S.C. §§ 3730(e)(3), -(4).

The Court dismissed Relator's first complaint under the public disclosure bar and for failure to plead fraud with sufficient particularity. Doc. 81 ("Order"). The Amended Complaint corrects none of the deficiencies and should be dismissed as to the MA Defendants. As a physician who never worked for the MA Defendants and

who has no insight into their billing practices, Relator does not and cannot allege the basic elements of an FCA action nor the involvement of the MA Defendants with the plausibility and specificity that the Federal Rules require.

The FCA's public disclosure and government action bars separately foreclose Relator's action.  The parasitic Amended Complaint still tracks the allegations disclosed in *United States ex rel. Sewell v. Freedom Health, et al.*, Civil Action No. 8:09-CV-01625 (M.D. Fla.), and again fails to establish that Relator is entitled to an exception as an "original source."  The few new allegations about the MA Defendants are insufficient to meet her burdens, and in many instances, cannot be considered by the Court because Relator failed to disclose them to the government before filing suit.  Because the Amended Complaint suffers from fatal flaws—both new and old—and because there is no reason to believe she can salvage her action through further amendment, dismissal with prejudice is required.

## STATEMENT OF FACTS

### A.    Regulatory Background

Relator alleges that the MA Defendants submitted false claims in connection with the Medicare Advantage ("MA") program.  Amended Complaint ("FAC"), Doc. 86, ¶ 1.  The MA Defendants incorporate by reference the discussion of the MA program's background from their motion to dismiss instead of repeating it here.  *See* MA Defendants' Motion to Dismiss Relator's Initial Complaint, Doc. 41, at 3–4. One principle, however, bears renewed emphasis.

CMS does not require diagnosis code submissions to be "perfect."  Medicare

Program; Medicare+Choice Program, 65 Fed. Reg. 40,170, 40,268 (June 29, 2000) ("[MA organizations] cannot reasonably be expected to know that every piece of data is correct, nor is that the standard that [CMS], the OIG, and DoJ believe is reasonable to enforce."). When a medical doctor identifies diagnoses and reports them to MA plans, the provider submits their diagnosis codes to the plans—but not the medical records underlying them.[1]  CMS has no expectation that MA plans undertake the impossible task of reviewing every underlying medical record or guarantee the accuracy of every diagnosis code a provider submits before the plans submit them to CMS; instead, CMS expects the plans to "mak[e] good faith efforts to certify" that their submissions are "accura[te], complete[], and truthful[]" based on "best knowledge, information, and belief." *Id.*; 42 C.F.R. § 422.504(*l*)(2).

## B.    Relator's FCA Action

Relator filed her initial complaint under seal in May 2019. Docs. 1–3. In June 2020, the Court unsealed the complaint, Doc. 17, and the government declined to intervene in September 2020, Doc. 40. The MA Defendants then moved to dismiss Relator's first complaint, and the Court granted the motion, citing Relator's (1) failure to "adequately allege that the defendants submitted false claims to the government, much less who submitted the claims, when they were submitted, and how those claims were submitted," as required by Rule 9(b), and (2) inability to

---

[1] *See* CMS, Pub. No. 100-16, *Medicare Managed Care Manual*, ch. 7, § 120 (2014), https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/mc86c07.pdf (noting that MA Organizations must submit five required "data elements" when submitting MA claims to CMS, none of which constitute or include underlying medical records).

overcome the public disclosure bar, as her allegations were "substantially the same as those" in *Sewell* and she did not qualify as an "original source" of the allegations. Order at 1.  The Court recognized it would be "awfully difficult" for Relator to successfully amend her complaint given her status as an outsider to MA Defendants, *id.* at 13, but granted her leave to attempt to do so, *id.* at 22.

Relator filed the FAC on November 12, 2021, again alleging that Defendants knowingly presented false claims and made or used false records or statements material to false claims in violation of §§ 3729(a)(1)(A) and (B), and knowingly made or used false records and statements material to the obligation to repay overpayments to knowingly and improperly avoid such repayments in violation of § 3729(a)(1)(G) (a "reverse false claim").  FAC ¶¶ 332–46.

The FAC primarily focuses on the Provider Defendants'[2] conduct, alleging that they trained employees to enter incorrect diagnosis codes, improperly suggested codes with the "5 Star Checklist," pressured employees to adopt improper coding practices, and had their non-physician staff replace codes reported by physicians with misleading or unsupported ones.  *See id.* ¶¶ 87–179.

The allegations against the MA Defendants are limited.  Relator alleges that MA Defendants (1) failed to "conduct appropriate oversight" of the Provider Defendants who saw patients and submitted diagnosis codes, and (2) took an "active role" in the fraudulent scheme by providing improper coding guidance to providers.

---

[2] Defendants Physician Partners, LLC; Florida Medical Associates, LLC, d/b/a VIPCare; and Anion Technologies, LLC will be referred to collectively as "Provider Defendants."

*Id.* ¶¶ 180, 184.  The FAC cites supposedly false claims, *id.* at ¶¶ 202–83, though, as explained below, Relator fails to allege with particularity that the MA Defendants submitted them to CMS.  Lastly, Relator purports to identify new allegations to address the public disclosure bar.  *See id.* ¶¶ 33–38.

## LEGAL STANDARD

A *qui tam* relator must do more than generally allege the elements of an FCA action.  Rule 8(a)(2) requires relators to allege facts sufficient to state a plausible claim for relief, as opposed to a merely conceivable one.  *Ashcroft v. Iqbal*, 556 U.S. 662, 686–87 (2009); *U.S. ex rel. McFarland v. Fla. Pharmacy Sols.*, 358 F. Supp. 3d 1316, 1329 (M.D. Fla. 2017).  And Rule 9(b) requires relators to plead the allegations of fraud with particularity—that is, facts that show the "who, what, where, when, and how" of the alleged fraud, and the "actual submission of a false claim."[3] *Clausen*, 290 F.3d at 1307–11 (conclusory assertions that claims "must have been" or "were likely" submitted to the government are insufficient); *see also Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013–14 (11th Cir. 2005) (allegations must go beyond "information and belief" or "aware[ness]" of practices to explain details of false claims actually submitted).[4]

## ARGUMENT

Relator does not allege the actual submission of a false claim—or the retention

---

[3] That Relator is a corporate outsider to the MA Defendants does not lessen her pleading burden. *See U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1314 (11th Cir. 2002) ("neither the Federal Rules nor the [FCA] offer any special leniency").

[4] Unless otherwise specified, all internal quotations and citations are omitted.

of a payment pursuant to a reverse false claim—with the particularity Rule 9(b) demands, and does not plausibly allege that the MA Defendants acted knowingly under Rule 8(a).  The public disclosure and government action bars also independently foreclose Relator's action.  § 3730(e)(4)(A), *id.* § -(e)(3).  Allowing further amendment of Relator's twice-deficient complaint would be futile; the case against the MA Defendants should be dismissed with prejudice.

## A.    The FAC Fails To Meet Rule 9(b)'s Heightened Pleading Standard

Relator fails to allege the purported fraud, including the MA Defendants' submission of false claims for payment to the government, with the specificity Rule 9(b) demands.

### 1.    The FAC's Patient Examples Do Not Establish The MA Defendants' Actual Submission Of A False Claim

The FAC alleges inaccurate diagnoses for twenty patients.[5]  Not *one* of those allegations show that the MA Defendants submitted claims to CMS for payment.[6]

---

[5] Relator again assumes that individual diagnosis codes submitted to CMS are "claims" within the meaning of the FCA.  They are not.  An individual diagnosis code submission to CMS in the MA program is not itself a "request or demand . . . for money or property."  31 U.S.C. § 3729(b)(2)(A).  Given that diagnosis code submissions lack a request for funds, they cannot constitute a "claim" for FCA purposes.  *United States v. Krizek*, 111 F.3d 934, 939–40 (D.C. Cir. 1997); *United States ex rel. Bahnsen v. Bos. Sci. Neuromodulation Corp.*, 2018 WL 4604307, at *4 (D.N.J. Sept. 24, 2018).  That said, the Court need not reach this question to decide this motion; even assuming individual diagnosis codes are claims, Relator still fails to show the MA Defendants' actual submission of false claims to CMS.  *See infra* at 6–10.

[6] The cursory assertions about Patients B, C, D, E, F, G, and the two patients noted in FAC ¶¶ 140–41 can be dismissed outright, as the FAC lacks even a conclusory allegation that the MA Defendants submitted claims for payment, or even paid a claim to Provider Defendants for those patients, let alone allegations amounting to an FCA violation.  *See* FAC ¶¶ 136, 140–41, 150.  Likewise, for Patient O, Relator takes no issue with MA Defendants' conduct, asserting specifically that the initial submission of a claim for Patient O would not have been a false claim, and instead alleging that *Provider Defendants* violated the Overpayment Rule.  *Id.* ¶¶ 282–83.  While the allegations for Patients A, H, I, J, K, L, M, N, P, Q, and R are more lengthy, they do not meet Rule 9(b)'s requirements.  *See infra* at 6–10.

With each patient, Relator focuses on the Provider Defendants' conduct, suggesting that they added false diagnosis codes to a patient's record or failed to remove an improper code after Relator apprised the Provider Defendants of a coding error.  The few conclusory references to the MA Defendants' conduct are insufficient to satisfy Rule 9(b)'s requirements.  For example, with Patients I, L, and N, the *only* mention of the MA Defendants' conduct is the allegation that a "false claim was submitted for payment to [MA Defendants]" and "paid by [MA Defendants] on behalf of the United States."  *See* FAC ¶¶ 220, 250, 271.  Tellingly, Relator only alleges that Provider Defendants submitted the claim to the *MA Defendants*, and that the MA Defendants paid *Provider Defendants*; nowhere does Relator allege that the MA Defendants submitted the claim for payment to CMS.

The exhibits Relator attaches to the FAC are of no help.  They primarily comprise documents internal to the Provider Defendants' operations: (1) Relator's progress notes following patient visits, *see, e.g.*, FAC Ex. 5-L1; (2) "5 Star Checklist" forms, which Relator alleges are generated by, transmitted to, and used by Provider Defendants, *see, e.g.*, *id.* Ex. 2-I1; and (3) screenshots from "Physician Partners' Q360 electronic records system," or Q360 portal, *see, e.g.*, *id.* Ex. 2-I3.  Relator does not allege that the MA Defendants receive or review these materials, or that they are part of the MA Defendants' claim submission process.  Allegations based solely on documents like these—that is, Provider Defendants' internal records—are insufficient to state a claim *against the MA Defendants*.  The Eleventh Circuit recognized this principle in *Mitchell v. Beverly Enters., Inc.*, 248 F. App'x 73 (11th Cir.

2007).  There, the relator alleged that the defendant health plan administrator engaged in fraudulent billing practices: "therapists would complete [billing log] forms, take the forms to the [administrator], and then have that information entered and sent directly to [CMS]."  *Id.* at 75.  Though the relator had attached a billing log for a specific patient to the complaint, the Eleventh Circuit affirmed dismissal under Rule 9(b) because relator relied on his "*belief* that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government [without] alleging specific facts as to who submitted the bills to Medicare, how they were submitted, or when they were submitted."  *Id.*  For similar reasons, dismissal is warranted here; that a diagnosis is listed on the Provider Defendants' "5 Star Checklist" or noted as "paid" on an internal record system does not show the MA Defendants' knowing submission of a specific false claim to CMS.  *See, e.g.*, FAC ¶¶ 218, 247, 270, 289, 293 (allegations for Patients I, L, N, Q, and A).

The two other exhibit types Relator cites are screenshots from the "Prospective Possible Condition Report" and "Freedom Member Health Profile" on the MA Defendants' "MRA/HEDIS" portal for Patients H, J, K, and M.  *See, e.g.*, FAC ¶ 210, Ex. 1-H8; ¶ 238, Ex. 4-K9; ¶ 260, Ex. 6-M7; ¶ 227, Ex. 3-J6.  These exhibits purport to identify "medical conditions that have been reported to CMS in the past," noting "that some of the conditions may have resolved and/or may not exist in [the] current year."  *Id.* Exs.1-H8, 4-K9, 6-M7, and 3-J6.  The exhibits are not themselves records of payments, or of the submission of any claims for payment.

As an initial matter, the Court should disregard the allegations stemming from

these screenshots.  In the context of the public disclosure analysis, courts have held that a relator cannot rely on information to establish herself as an "original source" unless she discloses that same information to the government before filing suit. § 3730(e)(4)(B)(ii); *see also, e.g.*, *Nat. Gas Royalties Qui Tam Litig. v. Pac. Gas & Elec. Co.*, 562 F.3d 1032, 1044 (10th Cir. 2009) (declining to consider any allegations that relator did not deem "important enough to voluntarily disclose . . . to the government").  Here, Relator acquired these screenshots between October 2019 and March 2020, months after she filed her initial complaint,[7] and thus could not have disclosed them to the government before filing her suit.  As explained *infra* at 23–24, the Court cannot consider allegations stemming from these screenshots when evaluating whether Relator is an original source, and because the Court cannot consider them in that context, it likewise cannot rely on them when evaluating the sufficiency of the FAC under Rule 9(b).  *See U.S. ex rel. Bernier v. InfiLaw Corp.*, 311 F. Supp. 3d 1288, 1298 (M.D. Fla. 2018) ("Since the Public Disclosure Bar rids the Amended Complaint of most allegations, the Court need only consider whether the remaining allegations satisfy Rule 9(b)'s particularity requirement.").

Even if the Court were to consider them, they do nothing to meet Relator's burden to satisfy Rule 9(b).  Relator does not allege that the screenshots reflect the

---

[7] *See, e.g.*, FAC, Ex. 1-H8 (Patient H's data obtained on October 16, 2019); *id.* Ex. 3-J6 (Patient J's data obtained on March 10, 2020); *id*. Ex. 4-K9 (Patient K's data obtained on October 7 and October 18, 2019); *id.* Ex. 6-M7 (Patient M's data obtained on October 15, 2019); *see also* FAC ¶¶ 38–39 (alleging Relator voluntarily disclosed her allegations to the government on May 16, 2019, and filed suit on May 20, 2019).

MA Defendants' claims submission process—nor can she, as both documents are intended to assist physicians as they evaluate *prospective* diagnoses for their patients. *See, e.g.*, FAC ¶ 238 (describing "Prospective Possible Condition Report").  Because these reports are divorced from the actual claims submission process, and do not reflect the MA Defendants' submission of specific false claims to CMS, they too lack the requisite specificity.  *See U.S. ex rel. Musachia v. Pernix Therapeutics, LLC*, 2021 WL 2826429, at *8 (N.D. Ala. July 7, 2021) (dismissing complaint where it lacked "any information regarding claims, billing information, dates of submission, bills submitted, amounts charged to the Government, or any amount received from the Government").

At most, Relator's twenty patient examples and associated exhibits show "particular patients, dates and corresponding medical records" for diagnosis codes Relator alleges were inaccurate, but fail "to provide the next link in the FCA liability chain: showing that the defendants *actually submitted* reimbursement claims" for the codes she criticizes.  *See U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) (though relator described in detail the alleged fraud, he failed to plead the actual submission of false claims where he, a healthcare provider, was not knowledgeable about billing practices or the filing and submitting of claims); *see also* Order at 13 ("Rule 9(b) requires more than inferences, consistencies, and suppositions.").

### 2.    As A Corporate Outsider To The MA Defendants, Relator Cannot Allege The Fraudulent Scheme With The Particularity Required

Falling short of the Court's holding that Relator must allege "the who, what, where, when, and how of fraudulent submissions," Order at 11, Relator fails to set forth "facts as to time, place, and substance of the [defendants'] alleged fraud." *Corsello*, 428 F.3d at 1012.

Relator does not identify any person—or corporate team or department— responsible for submitting diagnosis code data to CMS.[8]  *See Clausen*, 290 F.3d at 1310.  Nor does Relator allege what the MA Defendants submitted to CMS; the FAC lacks allegations as to "the content of the forms or bills submitted, their identification numbers, the amount of money charged to the Government," or other billing-related details sufficient to indicate the reliability of Relator's allegations.  *U.S. ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 797 (11th Cir. 2014); *see Carrel v. AIDS Healthcare Found., Inc.*, 898 F.3d 1267, 1271, 1278 (11th Cir. 2018) (affirming dismissal where relator submitted a spreadsheet listing "patients, employees, test dates, and potential sources of insurance coverage" that nonetheless lacked sufficient indicia of reliability because it was "neither a billing form nor a record of actual reimbursements").

Relator likewise does not allege "when" the MA Defendants submitted false claims to CMS, instead tying her patient-specific allegations to the dates on which

---

[8] She identifies one individual connected to the MA Defendants, Dr. Dennis Mihale, but those allegations concern physician training and have nothing to do with the MA Defendants' analysis and submission of claims to CMS.  FAC ¶ 185.

patients allegedly saw providers.  These vague allegations are deficient even compared to the insufficient allegations in *Clausen*.  *See* 290 F.3d at 1312 (alleging claims were submitted "within a few days" of the date of service).  Finally, Relator does not plead how or where the MA Defendants submitted claims to CMS, failing to provide any information on "policies about billing or even second-hand information about billing practices."  *See id*. at 1306; *see also Mitchell*, 248 F. App'x at 75 (affirming dismissal where relator did not allege "specific facts as to who submitted the bills to Medicare, how they were submitted, or when they were submitted"); *Hopper v. Solvany Pharm., Inc.*, 588 F.3d 1318, 1326 (11th Cir. 2009) (affirming dismissal where complaint failed to describe "any step of [the claim submission] process" or the "billing practices of any person or entity").

Relator's inability to satisfy Rule 9(b)'s heightened pleading requirements is not surprising.  Having never worked for the MA Defendants, she has no basis from which to allege a fraudulent scheme with the requisite specificity.

*          *          *

These pleading failures are not inconsequential.  Relator seeks to sweep more than seven years of patient visits into a single lawsuit, and no doubt hopes to seek expansive, costly, and burdensome discovery of conduct she has insufficiently put at issue in the FAC.  Relator should not be permitted to impose these costs on the defendants by means of a deficient complaint simply based on the hope that details about diagnosis errors will emerge through discovery.  *Keeler*, 568 F. App'x at 803; *Clausen*, 290 F.3d at 1313 n.24 ("When a plaintiff does not specifically plead the

minimum elements of their allegation, it enables them to learn the complaint's bare essentials through discovery and may needlessly harm a defendants' [sic] goodwill and reputation by bringing a suit that is . . . missing some of its core underpinnings, and at worst, [consists of] baseless allegations used to extract settlements."); *Bingham v. HCA, Inc.*, 783 F. App'x 868, 876 (11th Cir. 2019) ("[P]rohibiting a relator 'to use discovery to meet the requirements of Rule 9(b) reflects, in part, a concern that a *qui tam* plaintiff, who has suffered no injury in fact, may be particularly likely to file suit as a pretext to uncover unknown wrongs.'").  The Court should reject Relator's attempt to avoid Rule 9(b)'s gatekeeping function, and dismiss the FAC with prejudice.[9]

## B.    The Reverse False Claim Allegations Against MA Defendants Also Fail

To plead a "reverse false claim," a relator must allege with particularity: "(1) a false record or statement and (2) the defendant's knowledge of the falsity; (3) that the defendant makes, uses, or causes to be made or used a false statement; (4) for the purpose to conceal, avoid, or decrease an obligation to pay money to the government; and (5) materiality of the misrepresentation." *U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 869 F. Supp. 2d 1336, 1346–47 (M.D. Fla. 2012); § 3729(a)(1)(G).

---

[9] If the Court disagrees that the FAC should be dismissed in full—either under Rule 9(b) for the reasons described above or under Rule 8(a)(2), the public disclosure bar, and government action bar for the reasons set forth below—Relator's allegations should still be dismissed to the extent the FAC challenges conduct beyond risk adjustment submissions for the patients' diagnoses that Relator has alleged are unsupported.  Relator's conclusory allegations notwithstanding, the FAC fails "to offer[] a basis— let alone a sufficiently specific one under Rule 9(b)—to infer that patients other than those it identifies were improperly diagnosed or led to false claims submitted to the government." *Graves v. Plaza Medical Centers, Corp.*, 2014 WL 5040284, at *2 (S.D. Fl. 2014) (limiting relator's claims to those patients specified in the complaint ).

Crucially, "a relator must show that the defendant owed a definite and clear obligation to pay money to the United States *at the time of the allegedly false statements*." *United States v. Space Coast Med. Assocs., L.L.P.*, 94 F. Supp. 3d 1250, 1263 (M.D. Fla. 2015) (emphasis added).

Relator does not plead specific facts sufficient to support her reverse false claim allegations. She refers generally to the patient examples concerning the purported §§ 3729(a)(1)(A) and (B) violations, and claims that "by failing to submit proper codes to convey accurate information to CMS," the MA Defendants violated § 3729(a)(1)(G). *See* FAC ¶¶ 272–73. As already explained, those allegations lacked the requisite particularity for affirmative false claims under Rule 9(b), *see supra* at 6–13, and thus, are equally deficient allegations of reverse false claims violations.[10]

Moreover, the MA Defendants could not have had a "definite and clear obligation" to repay money until *after* they received monies from CMS. *See Space Coast*, 94 F. Supp. 3d at 1263. Relator's conclusory allegations that the MA Defendants submitted false claims for payment are thus unavailing, *see, e.g.*, FAC ¶ 287, as Relator fails to allege a false statement made *after* the supposed false claims were submitted to CMS and MA Defendants received payment. *See U.S. ex rel. Cullins v. Astra, Inc.*, 2010 WL 625279, at *6 (S.D. Fla. Feb. 17, 2010) (if defendants had learned of an overpayment and retained it, they "may owe the U.S. Government

---

[10] Further, the Court should reject Relator's improper attempt to seek duplicative relief from the same allegations without identifying the independent obligation that supports her reverse false claim theory. *Graves v. Plaza Medical Centers, Corp.*, 276 F.Supp.3d 1335, 1346 (S.D. Fl. 2017) (reverse false claim liability does not merely "provide a redundant basis to state a false statement claim").

money," but would *not* have necessarily violated the FCA).

The patient examples Relator cites in support of her § 3729(a)(1)(G) allegations are likewise lacking.[11]  FAC ¶¶ 274–95.  For Patient Q, Relator alleges that the Provider Defendants reported false codes and that Freedom "knew or should have known" that the coding was false, because the patient allegedly never received any related treatments.  *Id.* ¶¶ 289–91.  But nowhere does she suggest that the MA Defendants made any false statement to avoid an obligation to repay the government *after* the submission of the allegedly false coding.  Relator also summarily alleges that Freedom had actual knowledge or should have known that claims for Patients A and P were false.  With Patient A, she cites a screenshot of a Q360 Portal that shows conflicting information on whether a claim was previously paid, *see id.* ¶ 293, and with Patient P, she cites a screenshot that affirmatively shows that Freedom did *not* submit a claim in 2020, *id*. ¶ 287 (marking "N" for "Confirmed 2020 [Date of Service]").  Relator's lack of particularized knowledge about these patients—both of whom Relator alleged were miscoded *before* Relator was employed by Provider Defendants—is plain, given the familiar absence of any allegations showing the MA Defendants' use of a false statement to avoid a payment obligation.  Because not one allegation establishes a specific false statement or record made to knowingly conceal

---

[11] The allegations as to Patient O and R merit little discussion.  Relator does not allege a FCA violation by the MA Defendants as to Patient O.  *See supra* at 6 n.6.  And with Patient R, Relator repeats her allegations concerning patient "B.G." from her initial complaint, addressing none of the deficiencies the Court identified in her previously rejected, conclusory allegation that "Freedom submitted diagnostic codes to CMS."  *Compare* Doc. 1 at ¶ 73 *with* FAC ¶ 295.

the MA Defendants' obligation to return payments to the government *after* receiving

an overpayment, Relator's reverse false claim allegations fail Rule 9(b)'s heightened

standard.

**C.      The Amended Complaint's Knowledge Allegations Are Equally Deficient**

The FAC also should be dismissed in its entirety for Relator's failure to allege

a plausible basis to infer that the MA Defendants acted with the requisite knowledge.

§ 3729(a)(1); *Clausen*, 290 F.3d at 1311 (no FCA liability unless a defendant

"knowingly asks the Government to pay amounts it does not owe").  Although Rule

9(b) permits plaintiffs to allege knowledge generally, it does not "give [them] license

to evade the . . . strictures of Rule 8." *Iqbal*, 556 U.S. at 686–87.  Courts thus dismiss

FCA complaints where, as here, Relator's allegations of knowledge are not plausible.

*See, e.g.*, *U.S. ex rel. Mason v. State Farm Mut. Auto. Ins. Co.*, 2009 WL 2486339, at *6–8

(D. Idaho Aug. 13, 2009) (complaint did not adequately allege that defendant insurer

knew Medicare had erroneously covered a beneficiary's bill, or knew it had a duty to

reimburse the Medicare program as a result); *United States v. Scan Health Plan*, 2017

WL 4564722, *5 (C.D. Cal. Oct. 5, 2017) (dismissing complaint where it failed to

"sufficiently plead that at least one of [the corporation's] officers had the requisite

scienter at the time they made the allegedly misleading statements").

While Relator asserts that the MA Defendants acted with "actual knowledge"

or, alternatively, "with deliberate ignorance or reckless disregard as to the truth or

falsity" of codes allegedly submitted to the United States,[12] she fails to allege facts sufficient to make these allegations plausible.  *See* FAC ¶¶ 199–200 (FAC section discussing knowledge).

     *First*, her allegations that the MA Defendants knew or should have known that they were submitting false diagnosis codes for payment fall far short of Rule 8's standard.  Relator's failure to allege the "who" of the alleged fraud with particularity, *see supra* at 11, also undermines her allegations regarding the MA Defendants' knowledge; she fails to allege that any single MA Defendant employee knew that any diagnosis code identified in her complaint was, in fact, false.  Relator does not allege that the MA Defendants received or reviewed medical records underlying a provider's diagnosis codes as a matter of course, much less that they received them for any of the twenty patients identified in the FAC.  Nor is there an allegation that the MA Defendants received any other information regarding the supposed false claims, such that they would learn of potential wrongdoing.  Given Relator has never worked for the MA Defendants and has no familiarity with their practices, the absence of these allegations is again not surprising.

     The Provider Defendants' purportedly fraudulent business practices occurred entirely outside the MA Defendants' control and before they would have received

---

[12] A "reckless disregard" claim requires Relator to show that MA Defendants' failure to maintain an adequate compliance program created an "unjustifiably high" risk of harm that was either known to MA Defendants, or was so obvious it should have been known.  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68–69 (2007).  Relator offers no specific allegations regarding MA Defendants' compliance regime and cannot meet this lesser knowledge standard.

the diagnosis codes for submission.  In many instances, Relator alleges that the Provider Defendants altered codes submitted by physicians before they were reported to the MA Defendants, failing to explain how the MA Defendants would learn of (or should have discovered) the purported false claims.  *See, e.g.*, FAC ¶¶ 203–12.  The FAC's suggestion that the circumstances—for example, a diagnosis code of amputation without any related treatments or supporting documentation—should have put the MA Defendants on notice rests on a basic misunderstanding of a MA organization's responsibilities.[13]  *See, e.g., id.* ¶ 294.  The MA Defendants were not reviewing *every* diagnosis code and corresponding records for accuracy and completeness before submitting claims for payment.  *See supra* at 2–3.  Relator alleges no facts from which the Court could infer such a review was occurring and more importantly, CMS does not require it.[14]  *See Scan Health Plan*, 2017 WL 4564722, at *6 (noting that MA organization need not validate codes submitted by providers through chart review programs, and finding "knowledge" allegations insufficient where government did not allege that anyone within the organization knew about

---

[13] There also is no basis from which the Court can conclude that the absence of certain documentation or treatment necessarily leads to the singular inference that a diagnosis code was inaccurate; for example, it is equally plausible that there simply were no related treatments for the patient or that the patient was receiving care from a different provider and thus Relator was not privy to other documentation.  Rule 8(a)(2) requires a complaint to show more than the possibility of misconduct—particularly where its allegations support an alternative inference of permissible conduct.  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).  Here, the absence of certain documentation or related treatments, at best, amounts to the *possibility* of misconduct.

[14] CMS requires MA plans to have processes in place to "detect, correct, and prevent fraud," to attest that their data submissions are accurate based on their "best knowledge, information, and belief" and to delete erroneous data submissions if and when they are discovered.  Dep't of Health & Human Servs., Office of Inspector Gen., Medicare Advantage Organizations' Identification of Potential Fraud and Abuse at 2 (Feb. 24, 2012).  Satisfying this standard does not require plans to review or guarantee the accuracy of every diagnosis code a provider submits.  *Id.*

false claims or kept the corporation "in the dark about company fraud").

*Second*, though Relator asserts that the MA Defendants failed to supervise Provider Defendants, the FAC lacks specific allegations about the MA Defendants' oversight practices.  The closest Relator comes to any such allegation concerns specialist referrals, not risk adjustment coding issues,[15] and still does nothing to satisfy Relator's burden to show that the MA Defendants submitted *specific false claims for payment* with the requisite knowledge.

*Third,* Relator alleges that the MA Defendants took an "active role" in Provider Defendants' operations by providing coding education, permitting provider access to the MRA/HEDIS portal, and contacting patients directly.  *See* FAC ¶¶ 180, 184–89.  None of these activities plausibly suggest that the MA Defendants had the requisite knowledge.  In support, Relator quotes a training video featuring Dr. Mihale, *id.* ¶¶ 186–87, and a "mailer" on the coding of alcohol-related conditions, *id.* ¶ 189.[16]  Both are insufficient.  Even Relator's cherry-picked quotations from Dr. Mihale's presentation show he was educating providers on *correct* coding practices, thus failing to raise a plausible inference that he was encouraging improper coding. And the full video confirms as much.[17]  Relator's treatment of the mailer is even

---

[15] *See* FAC ¶ 194 (alleging that Provider Defendants promised to discuss her concerns about the acceptance of specialist referrals during a weekly meeting with Freedom).

[16] The video and mailer are incorporated into the FAC by virtue of Relator's excerpt of each in the FAC.  *See Lewis v. Governor of Alabama*, 944 F.3d 1287, 1313 n.6  (11th Cir. 2019) ("[P]laintiffs incorporate by reference the whole text of the press release by quoting portions of it in the Amended Complaint.").

[17] *See* Declaration of David Leviss in Support of Motion to Dismiss Amended Complaint ("Leviss Decl."), Ex. A.  For example, rather than advise providers to *change* a historical condition to an active one without basis, as Relator suggests, Dr. Mihale told them to correctly document a

more disingenuous.  Contrary to Relator's characterization, the mailer directed physicians to code for the risk-adjusting "alcohol dependence" only when properly supported by diagnostic criteria.[18]

Relator's inability to allege that the MA Defendants acted with the requisite knowledge warrants dismissal.

## D.   The Public Disclosure Bar Requires The FAC's Dismissal With Prejudice

The public disclosure bar is an independent basis for the FAC's dismissal with prejudice.  The bar requires dismissal of allegations that (1) were previously publicly disclosed, (2) are substantially the same as allegations contained in the public disclosures, and (3) come from a relator who is not an "original source" of that information.  § 3730(e)(4)(A).  The Court found each of these elements satisfied, requiring dismissal of Relator's first complaint.  *See* Order at 15–21.  Nothing in the FAC changes that analysis; the public disclosure bar again dooms Relator's case.

There is no dispute that the first prong of the public disclosure bar is met—the *Sewell* litigation was publicly disclosed before Relator filed her complaint in May

---

condition as active instead of *mis*characterizing it as purely historical based on a linguistic ambiguity common in medical parlance.  *See* FAC ¶ 186.  In the full video, Dr. Mihale's statement is even accompanied by a graphic instructing doctors to code for an "active diagnosis" only if the patient is "on treatment," and to instead document a "Z Code (History of)" if the patient is receiving "no treatment."  Leviss Decl., Ex. A, at 26:00.  And, Dr. Mihale's promise to update providers should dementia become a risk-adjusting code so that they could "adjust [their] documentation *properly*" shows attention to accurate coding.  *Id.* ¶ 187 (emphasis added); *see also* Leviss Decl., Ex. A, at 12:30; *see generally Am. Dental Ass'n*, 605 F.3d at 1290 ("courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct").

[18] The full document confirms that the mailer is intended only to improve the "coding accuracy" of the physicians who received it.  Leviss Decl., Ex. B.  Relator does not allege that the hypothetical patient discussed in the mailer could not reasonably be diagnosed with "alcohol dependence," nor could she.  *Id.*

2019.  *See* Order at 16–17 (noting Relator's concession); FAC ¶¶ 33–37.

Relator attempts to elide the public disclosure bar's second inquiry—whether her allegations are "substantially the same" as those publicly disclosed in *Sewell*—by shifting the timeframe at issue: whereas her original complaint included allegations between 2009 and 2013 (which overlapped with the *Sewell* allegations), the FAC's allegations now start in January 2014.  FAC ¶ 36.  The shift makes no difference.[19] "[T]here need not be a 'complete identity of allegations, even as to time, place, and manner' to trigger the public-disclosure bar."  *U.S. ex rel. Maur v. Hage-Korban*, 981 F.3d 516, 523 (6th Cir. 2020); *U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 812, 814 (11th Cir. 2015) (second prong satisfied where action based "in any part" on publicly disclosed information); *see Payton*, 2017 WL 3910434, at *6–7 (allegations of fraud occurring after a prior settlement still based "in part" on prior allegations); *Jacobs v. Bank of Am. Corp.*, 2017 WL 2361943, at *6 (S.D. Fla. Mar. 21, 2017) (rejecting allegations based on conduct after a consent judgment "as the crux of Plaintiff's claims were already disclosed").  "The key inquiry is whether the disclosures could have put the government on notice of the fraud alleged in the qui tam complaint."  Order at 17 (citing *Maur*, 981 F.3d at 523).  That inquiry is easily

---

[19] Relator also contends that the MA Defendants' active participation in the Provider Defendants' operations differentiates these allegations from those in *Sewell*.  This argument fails too.  First, as explained *supra* at 16–20, these allegations are not plausible under Rule 8(a); besides Relator's conclusory allegation of participation, there is nothing to suggest that the MA Defendants in fact participated in the fraudulent scheme, let alone submitted false claims to CMS for payment.  Second, even if they were plausible (which they are not), Relator cannot avoid the public disclosure bar by asserting additional details about the same previously disclosed scheme of conduct.  *See U.S. ex rel. Payton v. Pediatric Servs. of Am., Inc.*, 2017 WL 3910434, at *6–7 (S.D. Ga. Sept. 6, 2017) (rejecting effort to overcome bar by "[m]erely providing additional detail" about underlying scheme).

met: the government is "on notice" of the fraud while the Corporate Integrity

Agreement ("CIA") that arose from *Sewell* remains in effect, *see* Order at 21.  And

Relator continues to allege the same basic scheme that was at issue in *Sewell*:

Freedom and Optimum allegedly "defrauded CMS by knowingly submitting

incorrect and/or unsubstantiated risk adjustment data to CMS," including by

"submitting risk adjustment data to CMS without checking their validity" and failing

in their obligations to CMS to correct erroneously submitted diagnosis codes,

*compare* Doc. 42-1, ¶¶ 8–9 *with* FAC ¶¶ 1, 12, 17; *see also* Order at 18–21.

Finally, under the third prong of the analysis, Relator does not "materially

add" to the publicly disclosed allegations, and thus cannot be an original source of

the information.[20]  *See Osheroff*, 776 F.3d at 814–15; § 3730(e)(4)(B)(ii).  To materially

add to public disclosures, a relator "must bring something to the table that would add

value for the government," *Maur*, 981 F.3d at 527.  Allegations of ongoing FCA

violations, like Relator's, materially add to a public disclosure only if they describe

"the who, what, when, where and how of the events at issue."  *Jacobs*, 2017 WL

2361943, at *7; *see also Payton*, 2017 WL 3910434, at *7–8 (rejecting suit based on

ongoing violations after a publicly disclosed settlement where relator lacked firsthand

knowledge).

As Relator is a corporate outsider to the MA Defendants, it is unsurprising

---

[20] Relators can also be original sources where they voluntarily disclose allegations to the government before *any* public disclosure, § 3730(e)(4)(B)(ii); that is not the case here, as the *Sewell* allegations were disclosed well before Relator's May 2019 complaint, *see* FAC ¶ 34.

that her allegations primarily focus on the conduct of her former employer and the other Provider Defendants.  *See* FAC ¶¶ 87–179.  While she provides some details as to the conduct of other defendants, she does not materially add to the allegations against the MA Defendants.  She merely alleges the perpetuation of the same fraudulent scheme to submit false diagnosis codes to CMS "that the government is aware of and actively handling."  *See* Order at 21.  Relator's generalized allegations about the MA Defendants have been public since *Sewell*, and the FAC fails to allege particularized facts showing that the MA Defendants made fraudulent submissions to CMS or plausibly allege that they did so knowingly.

The few new allegations as to the MA Defendants do not materially add to what was publicly known of prior conduct either.  For example, that the MA Defendants provided coding education and supposedly contacted patients, FAC ¶ 184, is not material, as Relator fails to connect it to the MA Defendants' knowing submission of a false claim for payment.  *See Osheroff*, 776 F.3d at 815 (relator did not "materially add" to public disclosures by alleging new "background information" on programs already alleged to be fraudulent).  Moreover, as noted *supra* at 9, the FAC's allegations relying on exhibits Relator acquired months after she filed her complaint should be dismissed outright, as the information was not disclosed to the government prior to filing her complaint.  *See supra* at 9 n.7 (identifying exhibits for Patients H, J, K, and M as acquired between October 2019 and March 2020).  The FCA requires Relator to have "provided *the* information to the Government before filing" this action.  § 3730(e)(4)(B)(ii).  The statutory directive is unambiguous—a relator with

material knowledge does not become an original source by merely providing *some*

information to the government about the alleged false claims; rather, Relator needed

to provide the very information that "materially adds" to the government's

knowledge, and she did not.  *Id.*; *see Nat. Gas Royalties*, 562 F.3d at 1044 ("Permitting

a relator to satisfy the pre-filing disclosure requirement by providing the government

with a minimal amount of information regarding the fraud [while withholding other

material information] would hamper the government's ability to investigate the fraud

. . . .").

With or without these documents, Relator does not "materially add" to the

*Sewell* allegations because she cannot do so; the Court thus should dismiss her FAC

with prejudice as to the MA Defendants.

### E.    The FAC Also Fails Under The Government Action Bar

The "government action bar" likewise dooms the FAC.  Relator cannot

pursue a *qui tam* suit based upon allegations "which are the subject of a civil suit or

an administrative civil money penalty proceeding in which the Government is

already a party."  § 3730(e)(3).  The hallmark of such a suit is the "parasitic"

relationship between the relator's allegations and the government's prior action,

wherein a relator's allegations feed off allegations previously addressed by the

government without providing "any useful or proper return."[21]  *Found. For Fair*

---

[21] The government action bar applies regardless of whether the relator is an "original source" of information, and does not require that the government action be "ongoing."  *See United States v. Biotronik, Inc.*, 876 F.3d 1011, 1016, 1019 (9th Cir. 2017).

*Contracting, Ltd. v. G&M E. Contracting, Inc.*, 259 F. Supp. 2d 329, 338 (D.N.J. 2003). Because Relator does not offer materially new allegations to those in *Sewell*—a case in which the government was a party, and in which the government entered a CIA that remains in effect against the MA Defendants for the alleged conduct at issue— the FAC must be dismissed.  *Cf. U.S. ex rel. Gillespie v. Kaplan Univ.*, 2012 WL 1852085, at *2 (S.D. Fla. May 21, 2012) (bar does not apply where relator seeks "to remedy a fraud that the government has not yet attempted to remedy").

## F.      The FAC's Dismissal Should Be With Prejudice

The Court previously recognized that it would be difficult for Relator to remedy the deficiencies in her first complaint, given her status as an outsider to the MA Defendants and "apparent lack of personal knowledge," Order at 13, 23.  The FAC has shown that the Court's skepticism was warranted; Relator cannot overcome her lack of knowledge about the MA Defendants' operations or the public disclosure bar, making further opportunities to amend futile.  *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019).

## CONCLUSION

For these reasons, the Court should grant this motion, and dismiss each count of the FAC as to MA Defendants with prejudice.

Dated:  January 14, 2022                Respectfully submitted,

                                        By:  */s/ David J. Leviss*
                                             David J. Leviss (Trial Counsel)*
                                             Benjamin D. Singer*

O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
(202) 383-5414 (fax)
dleviss@omm.com
bsinger@omm.com

David M. Deaton*
O'MELVENY & MYERS LLP
610 Newport Center Dr., 17th Floor
Newport Beach, CA 92660
(949) 823-6900
(949) 823-6994 (fax)
ddeaton@omm.com

Elizabeth M. Bock*
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
(213) 430-6000
(213) 430-6407 (fax)
ebock@omm.com

Ginger Boyd
Fla. Bar No. 294550
NELSON MULLINS RILEY &
SCARBOROUGH LLP
215 South Monroe Street, Suite 400
Tallahassee, FL 32301
(850) 205-3356
(850) 521-1472 (fax)
Ginger.Boyd@nelsonmullins.com

*Counsel for Defendants Freedom Health,
Inc. and Optimum HealthCare, Inc.*

*\*admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2022, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will provide electronic service to all counsel of record.  I further certify that copies of any associated documents not filed through CM/ECF system will be served electronically to all counsel of record.

By:  */s/ David J. Leviss*

David J. Leviss (Trial Counsel)*
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
(202) 383-5414 (fax)
dleviss@omm.com

*Counsel for Defendants Freedom Health, Inc. and Optimum HealthCare, Inc.*

*\*admitted pro hac vice*