UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* DR. CLARISSA ZAFIROV,<br><br>    Plaintiff/Relator,<br><br>v.<br><br>PHYSICIAN PARTNERS, LLC; FLORIDA MEDICAL ASSOCIATES, LLC, d/b/a VIPCARE; ANION TECHNOLOGIES, LLC; FREEDOM HEALTH, INC.; and OPTIMUM HEALTHCARE, INC.,<br><br>    Defendants. | Case No. 8:19-cv-01236-KKM-SPF |

**DEFENDANTS FREEDOM HEALTH, INC. AND OPTIMUM HEALTHCARE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS <u>AMENDED COMPLAINT</u>**

MA Defendants[1] submit this Reply in support of their Motion to Dismiss Relator's Amended Complaint to address new legal arguments and mischaracterizations of facts and law in Relator's Opposition (Doc. 107, "Opposition" or "Opp.").

## A.  Relator Fails To Satisfy Rule 9(b)'s Particularity Standard

Relator's Opposition twists both the FAC's allegations and the law to suggest that she has satisfied the demanding pleading standard. The FAC lacks any allegation that MA Defendants "actually submitted" false claims with the particularity this Circuit requires. *See U.S. ex rel. Clausen v. Lab'y Corp.*, 290 F.3d 1301, 1313 (11th Cir. 2002).

First, Relator asserts that because Provider Defendants submitted a claim to MA Defendants, and MA Defendants paid Provider Defendants, Freedom *must have* submitted a claim to CMS—an inference this Court has previously rejected, *see* Doc. 81 ("Dismissal Order"). *See* Opp. at 4. Relator could have alleged this fact in her FAC, but chose not to, presumably because she understands that is not how the MA system works.[2] Nor is there any basis in law to support it.[3]

---

[1] This Reply employs the same naming conventions and abbreviations as MA Defendants' Motion to Dismiss Relator's Amended Complaint (Doc. 97, "MTD" or "Motion").

[2] Contrary to the Opposition, the FAC does *not* allege that MA Organizations ("MAOs") submit every claim to CMS that they receive from a provider. *Cf. Opp.* at 4 (improperly characterizing "allegation that the MAO paid a provider" as "synonymous to an allegation that the MA Defendants submitted the claim to the United States"). Paragraph 49 of the FAC simply provides a high-level overview of the MA program's general billing process. There are many reasons an MAO would not submit a diagnosis code received from a provider, such as when that code is a less severe manifestation of a related code already submitted to CMS. CMS, *Report to Congress: Medicare Advantage Risk Adjustment*, at 20 (Dec. 2021), https://www.cms.gov/files/document/report-congress-risk-adjustment-medicare-advantage-december-2021.pdf.

[3] The Opposition improperly cites *United States ex rel. Silingo v. Wellpoint, Inc.*, 904 F.3d 667, 672–73

-1-

Next, Relator wrongly claims that the FAC's exhibits show certain claims were submitted to CMS and paid. *See* Opp. at 7–9. The document titles—"Freedom Member Health Profiles" and "Prospective Possible Conditions Reports"—and content confirm that these are not claims for payment or bills reflecting actual claims. And Relator's exhibits contain conflicting information about individual patients, further evidencing that these records—intended to assist physicians with evaluating possible prospective diagnoses—are not "record[s] of the submission of a claim for payment." *See* Opp. at 8–9.[4] Nor does Relator allege how Freedom reconciled these provider-facing records with actual CMS claims and payments because as an outsider, she has no idea. Dismissal Order, at 13. These documents are all Relator had access to as a provider—and thus outsider to MA Defendants—but Rule 9(b) affords her no "special leniency" from the requirement that she allege the actual submission of false claims with particularity. *See Clausen*, 290 F.3d at 1314.

The very cases Relator cites in the Opposition show why her outsider status to MA Defendants is an insurmountable hurdle.[5] For example, *Mastej* recognized that

---

(9th Cir. 2018), for the proposition that any claim paid to Provider Defendants must have been submitted to CMS. Opp. at 4. *Silingo* simply reiterates that MAOs (rather than medical providers) are the entities that submit claims to CMS; *Silingo* does not hold that MAOs submit a claim to CMS every time a medical provider submits a claim to the MAO, or that a MAO cannot, as a matter of law, pay a claim to a provider without having first received a payment from CMS. *See id.*

[4] For instance, while Exhibit 6-M3 shows that a diagnosis code of HCC 059 was "Paid" in 2019, Exhibit 6-M7 shows that no such claim was submitted in 2019. The exhibits themselves purport only to identify "medical conditions that have been reported to CMS in the past," with no reference to when any diagnosis codes were submitted, and further emphasize that "some of the conditions may have resolved and/or may not exist in [the] current year." *Id.* Exs.1-H8, 4-K9, 6-M7, and 3-J6. *See also* MTD at 8, 9–10.

[5] *See* Opp. 4–5 (citing *U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. App'x 693 (11th Cir. 2014); *Clausen*, 290 F.3d 1301; *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350 (11th Cir. 2006); *U.S. v. HPC Healthcare, Inc.*, 723 F. App'x 783 (11th Cir. 2018)).

someone "with direct, first-hand knowledge of the defendants' submission of false claims gained through her employment with the defendants" would have a sufficient basis for asserting the actual submission of a claim, while a relator "without first-hand knowledge of the defendants' billing practices" would not. 591 F. App'x at 704. There, the Circuit affirmed dismissal, recognizing that once relator's employment ended, he was an outsider, no longer privy to "critical billing and revenue information" and thus could not articulate a nonspeculative basis for his assertion that claims were submitted. *Id.* at 709. Similarly, in *Atkins* and in *HPC Healthcare*, the relators, a doctor and social worker, respectively, could not satisfy Rule 9(b) given their lack of firsthand knowledge of defendants' billing practices. *Atkins*, 470 F.3d at 1359; *HPC*, 723 F. App'x at 783. And in *Clausen*, the "dozens of pages of exhibits" accompanying relator's complaint could not overcome his outsider status. 290 F.3d at 1312 (no amounts charged were identified and not a single bill or payment was provided). As in each of these controlling cases, Relator's allegations lack the indicia of reliability that this Circuit demands.

Relator also impermissibly stretches Rule 9(b)'s requirement that she particularly allege "who" committed the alleged fraud. *See Clausen*, 290 F.3d at 1310 (requiring "details of the defendants' allegedly fraudulent acts, [including] *who engaged in them*") (emphasis added). Citing an unpublished case, Relator posits that she met her burden by simply naming "Defendants" as the relevant entity. Opp. at 7 n.2 (citing *U.S. ex rel. Fox Rx, Inc v. Omnicare, Inc.*, 2013 U.S. Dist. LEXIS 75696 (N.D. Ga. May 17, 2013)). Relator's reading saps all meaning from Rule 9(b)'s

mandate, defying not only Circuit precedent but common sense—after all, a relator will name a defendant in every case. *See, e.g.*, *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1326 (11th Cir. 2009) (affirming dismissal under Rule 9(b) under "who" prong despite identification of named defendant as perpetrator of fraud because complaint did not "identify a single physician who wrote a [fraudulent] prescription" or a "single pharmacist who filled such a prescription").

### B. Relator's Knowledge Allegations Are Implausible Under Rule 8(a)

Relator also mischaracterizes her obligation to *plausibly* allege that MA Defendants acted with knowledge. *See* Opp. at 14. Relator asserts that her conclusory statement to that effect, combined with her allegation that MA Defendants "knowingly participated" in the Provider Defendants' alleged fraud, is sufficient to meet her burden. Not so. Relator's own allegations render her claims implausible. The supposedly unsigned[6] or "unusual"[7] diagnosis codes she cites

---

[6] Relator infers that MA Defendants "knowingly participated" in the alleged fraud because certain "false diagnosis codes were not actually submitted by any physician or qualified provider." Opp. at 15. But the FAC alleges that the codes submitted to MA Defendants *did* reflect that they came from physicians, even when she claims they did not. *See, e.g.*, FAC ¶ 216 (Provider Defendants' records showed Relator as the submitting physician for a diagnosis code Relator did not submit); *see also* FAC ¶¶ 91, 202–71. Moreover, MAOs do not receive the underlying medical records for submitted codes, and have no obligation to obtain and review such records, *see* MTD at 18. Such supposedly "unsigned" records thus could not have plausibly put MA Defendants on notice of any impropriety.

[7] Relator similarly infers MA Defendants' "knowledge" from the prevalence of certain diagnosis codes within their patient population. But Relator discusses the prevalence of conditions within the general population, not within the Provider Defendants' patient population, *see* FAC ¶¶ 263–65, 284–88; the presence of a single condition for a single patient cannot plausibly constitute a "red flag" putting MA Defendants' on notice of the alleged wide-ranging fraud. For other conditions, the FAC cites only the prevalence of diagnosis codes generated by Provider Defendants, not the prevalence of the diagnosis codes that MA Defendants actually submitted to CMS, to which she has no access as an outsider. *See* FAC ¶¶ 145–46. MA Defendants' "knowledge" of diagnosis codes that they may have *rejected* before submitting any claims to CMS is irrelevant to their knowledge of the alleged fraud. These "knowledge" allegations thus suffer from the same omission that afflicts Relator's other allegations: Relator does not (and cannot) allege that her exhibits actually reflect MA

could not have put MA Defendants "on notice" of the alleged fraud, and Relator's assertion that MA Defendants' played a direct "role in the operation of Physician Partners" does not substantiate her conclusory allegations.[8] Relator fails to close the loop; even if MA Defendants played some role in Provider Defendants' operations or received certain diagnosis codes at higher-than-average rates, it would suggest no more than the *possibility* of misconduct. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). Such conclusory assertions fall short of the requirement that even "general" knowledge allegations must be plausible. *See* MTD at 16.

### C. Relator's Parasitic FAC Fails Under The Government Action Bar

In any case, this Court must dismiss the FAC based on the government action bar, as Relator's complaint is "parasitic" of the government's action in *United States ex rel. Sewell v. Freedom Health, et al.*, Civil Action No. 8:09 CV-01625 (M.D. Fla.), having benefitted from the facts disclosed in *Sewell* without providing "any useful or proper return to the government." *U.S. ex rel. Herman v. Coloplast Corp.*, 327 F. Supp. 3d 358, 362 (D. Mass. 2018); *see Found. For Fair Contracting, Ltd. v. G&M E. Contracting, Inc.*, 259 F. Supp. 2d 329, 335 (D.N.J. 2003) ("*FFFC*") (barring "parasitic

---

Defendants' claims submissions to CMS, let alone the prevalence of any diagnoses codes submitted to CMS—which could be derived only from an analysis of the actual claims data.

[8] This Court should likewise reject Relator's attempts to recast her allegations of MA Defendants' supposed direct role in the alleged fraud, or her characterizations of the documentary evidence she incorporated into her complaint. *See* Opp. at 17 n.12. First, the new facts and inferences Relator seeks to interpose based on her status as a "Board-certified family medicine physician" should be rejected outright. *See U.S. v. Advocate Law Grps.*, 413 F. Supp. 3d 1225, 1227 (M.D. Fla. 2019) (limiting motion to dismiss decision to "well-pleaded factual allegations"). Second, the documents she cites speak for themselves, *see* Doc. 97-1, Exs. A–B, and plainly show no evidence of potential impropriety. *See* Opp. at 19–20.

suits by opportunistic late-comers who add nothing to the exposure of the fraud").

First, the government's opposition to dismissal of the FAC under the public disclosure bar, Doc. 105 ("Notice"), is irrelevant to the government action bar's applicability. *See Herman*, 327 F. Supp. 3d at 364 (noting that government action bar "does not provide the government with veto power" over a motion to dismiss). Relator cites out-of-circuit cases with inapposite facts to argue otherwise. Opp. at 19 (*citing Berntsen v. Prime Healthcare Servs., Inc.*, 2014 U.S. Dist. LEXIS 188722 (C.D. Cal. Nov. 20, 2014); *Herman*, 327 F. Supp. 3d at 362). *Berntsen* nowhere discusses the government action bar. *See* 2014 U.S. Dist. LEXIS 188722, at *6–7 (assessing relevance of government's notice only to the public disclosure bar). And in *Herman*, the government's notice asserted its authority "to inform the court that it does not view a particular qui tam action as parasitic," a direct reference to the standard for dismissal under the government action bar. 327 F. Supp. 3d at 364. Moreover, even if the government did have a statutory right to oppose dismissal of a *qui tam* complaint based on the government action bar, it has not attempted to exercise such a right here. The Notice is far more limited than in *Herman*—relying only on the text of the public disclosure bar statute, *see* Doc. 105 at 1–2—and nowhere states that the government "supports the relator's action," as Relator intimates, *see* Opp. at 19. *Cf. Herman*, 327 F. Supp. 3d at 364 (noting "the government itself does not view this case as parasitic").

Second, the government action bar requires dismissal because the FAC alleges

the mere continuation of the same alleged fraud disclosed in *Sewell*—and the government's efforts to remediate those allegations remain ongoing, *see* Dismissal Order at 21. As in *Sewell*, Relator alleges that MA Defendants "defrauded CMS by knowingly submitting incorrect and/or unsubstantiated risk adjustment data to CMS" and failing to correct erroneously submitted diagnosis codes. *See* MTD at 21–22. And, crucially, Relator offers no "useful return" to the government because the conduct she alleges is covered by the CIA's enforcement mechanism. *See* Doc. 42-4 (CIA arising from *Sewell*).[9] The CIA requires, *inter alia*, yearly independent risk adjustment audits with random sampling and chart reviews, the implementation of a "Disclosure Program" to uncover potential violations, and detailed annual reporting to the government. *Id.* at 7–8, 15–16. And the government can impose sweeping penalties without even resorting to judicial process. *Id.* at 20–24 (*stipulated* penalties, up to and including daily penalties of $2,500 for retaining overpayments, $50,000 for submitting false certifications, and possible exclusion from federal health programs). As in *FFFC*, Relator "adds nothing" to the allegations already disclosed, or the extraordinary remedies already available through the CIA. 259 F. Supp. 2d at 338.

For the reasons described in the Motion and here, the Court should dismiss Relator's FAC as to MA Defendants with prejudice.

Dated: April 12, 2022                                       Respectfully submitted,

                                                                            By: /s/ David J. Leviss
                                                                                    David J. Leviss (Trial Counsel)*
                                                                                    Benjamin D. Singer*

---

[9] The Court has previously taken judicial notice of the CIA. Doc. 79.

O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
(202) 383-5414 (fax)
dleviss@omm.com
bsinger@omm.com

David M. Deaton*
O'MELVENY & MYERS LLP
610 Newport Center Dr., 17th Floor
Newport Beach, CA 92660
(949) 823-6900
(949) 823-6994 (fax)
ddeaton@omm.com

Elizabeth M. Bock*
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
(213) 430-6000
(213) 430-6407 (fax)
ebock@omm.com

Ginger Boyd
Fla. Bar No. 294550
NELSON MULLINS RILEY &
SCARBOROUGH LLP
215 South Monroe Street, Suite 400
Tallahassee, FL 32301
(850) 205-3356
(850) 521-1472 (fax)
Ginger.Boyd@nelsonmullins.com

*Counsel for Defendants Freedom Health, Inc. and Optimum HealthCare, Inc.*

*admitted pro hac vice

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2022, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will provide electronic service to all counsel of record.

By: */s/ David J. Leviss*

David J. Leviss (Trial Counsel)*
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
(202) 383-5414 (fax)
dleviss@omm.com

*Counsel for Defendants Freedom Health, Inc. and Optimum HealthCare, Inc.*

*admitted pro hac vice*