# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

United States *ex rel.* Clarissa Zafirov,

     *Plaintiff/Relator,*

v.                                    CASE NO. 8:19-cv-01236-KMM-SPF

Physician Partners, LLC;
Florida Medical Associates, LLC
d/b/a VIPcare;
Anion Technologies, LLC;
Freedom Health, Inc.; and
Optimum Healthcare, Inc.,

     *Defendants.*

_____/

## PHYSICIAN PARTNERS, LLC, FLORIDA MEDICAL ASSOCIATES, LLC, AND ANION TECHNOLOGIES, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS

Defendants Physician Partners, LLC, Florida Medical Associates, LLC, and Anion Technologies, LLC (the "Provider Defendants") file this reply in support of their motion to dismiss (Doc. 96) in accordance with the Court's order (Doc. 110).

<u>ARGUMENT</u>

Zafirov cannot meet the Eleventh Circuit's standard for pleading fraud with particularity. Her amended complaint does nothing to address the Court's concern that Zafirov "fails to provide the dates [diagnosis] codes were submitted, the name of the individual or individuals that submitted the codes, how these codes impacted the amount of money that the defendants received from the federal government (materiality), or copies of a single bill or payment." *U.S. ex rel. Zafirov v. Fla. Med. Assocs. LLC*, 2021 WL 4443119, at *4 (M.D. Fla. Sep. 28, 2021). All this information is still missing from the amended complaint, so it is due to be dismissed.

Unable to meet this Court's standard for pleading fraud, Zafirov attempts to rewrite the standard using out-of-circuit authority. Zafirov relies on *U.S. ex rel. Ormsby v. Sutter Health*, 444 F. Supp. 3d 1010 (N.D. Cal. 2020), for her argument that she meets the standard because she identifies patients, diagnosis codes, a year the code was submitted, and why the code was false. Doc. 106 at 8–9. But, unless Zafirov is a corporate insider with "direct, first-hand knowledge of fraud" (which she is not), the Eleventh Circuit requires her to provide "*exact* billing data—name, date, amount, and services rendered" or attach a "representative sample claim." *U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. App'x 693, 704 (11th Cir. 2014) (emphasis added). Zafirov

2

has not done so. There are no invoice numbers, claims forms, dates of submission to Freedom, dates of submission to the government, amounts of money Freedom received, or amounts of money the Provider Defendants received. This does not suffice under the Eleventh Circuit's stringent standard for pleading an FCA violation.

Zafirov's assertion that she sufficiently alleges false claims because she provides "claims-related details, with corresponding documentation" is wrong. Doc. 106 at 5. There is no claims data in her complaint. The Court should not be misled by Zafirov's suggestion that she has provided claims amounts by identifying the risk adjustment multiplier associated with certain diagnosis codes. Doc. 106, at 10 n.3. CMS makes this information public on an annual basis.[1] Zafirov has not revealed information only an insider would know. She has just shown her ability to search the internet.

Zafirov's references to diagnostic information she says shows patients and associated false diagnosis codes are also insufficient. The Eleventh Circuit has made clear that diagnostic information does not carry a relator's burden to provide claims data. *See U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350 (11th Cir. 2006). In *Atkins*, the relator identified "particular patients, dates and corresponding medical records for services" that "were not eligible for government reimbursement." *Id.* at 1359. But the complaint fell short of alleging "that the defendants *actually submitted* reimbursement claims for the [patients] [s]he describes" (*i.e.*, claims data). *Id.*

---

[1] *See, e.g.*, CMS, *Updated 2022 Benefit Year Final HHS Risk Adjustment Model Coefficients* (July 19, 2021), https://www.cms.gov/files/document/updated-2022-benefit-year-final-hhs-risk-adjustment-model-coefficients-clean-version-508.pdf.

In accord is *U.S. ex rel. Owsley v. Fazzi Associates, Inc.*, 16 F.4th 192 (6th Cir. 2021), which Zafirov fails also to distinguish. There, the relator identified patients and diagnoses made in a particular year she said were false. *Id.* at 197. But this "diagnostic information," lacking dates of claims for payment or amounts of those claims, did "not amount to an allegation of particular identified claims submitted pursuant to the fraudulent scheme." *Id.*

At best, Zafirov has provided internal documents showing that patients were diagnosed in a certain year with a condition she believes was incorrect. But without providing details about any claims to the government, her own subjective beliefs cannot carry her burden under Rule 9(b). *See McInteer*, 470 F.3d at 1359; *Owsley*, 16 F.4th at 197.

Mere diagnostic information cannot be enough to meet Zafirov's burden under Rule 9(b). If it were, every healthcare employee with access to medical records would be a potential *qui tam* relator, regardless of her knowledge of actual billing and claims submissions. Such a holding would be contrary to Eleventh Circuit law. *See McInteer*, 470 F.3d at 1359; *Est. of Helmly v. Bethany Hospice & Palliative Care of Coastal Ga., LLC*, 853 F. App'x 496, 501–02 (Mem) (11th Cir. 2021) (even "senior insider knowledge" is insufficient absent explanation of how such knowledge "translate[s] to knowledge of actual tainted claims submitted to the government" (quoting *Carrel v. AIDS Healthcare Found., Inc.*, 898 F.3d 1267, 1278 (11th Cir. 2018)). Zafirov's amended complaint fails to plead fraud with particularity and should be dismissed.

Zafirov's complaint also fails because there is no causal connection between raw diagnosis codes and finalized risk adjustment data. Zafirov must plausibly allege that the Provider Defendants' submission of allegedly unsubstantiated diagnosis codes to Freedom was (1) a substantial factor in inducing Freedom to submit claims for reimbursement, and (2) Freedom's submission of claims was reasonably foreseeable or anticipated as a natural consequence of the Provider Defendants' conduct. *See Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1107 (11th Cir. 2020). She cannot do so.

Raw diagnosis codes do not entitle the Provider Defendants or Freedom to money from the government. There is a multi-layered processing and review system that raw diagnosis codes must go through before they become finalized risk adjustment data. Doc. 98 at 15–17. Further, diagnosis codes are just one data factor in a complex calculus that determines the ultimate capitation rate. Doc. 98 at 17–18. These facts show the break in the chain of causation between the Provider Defendants' raw diagnosis codes, the finalized risk adjustment data Freedom submits to the government, and the ultimate capitation payment Freedom receives.

Zafirov's opposition does not address these points. Instead, she mischaracterizes the Provider Defendants' causation argument. She says that the Provider Defendants' motion to dismiss "is largely predicated on a representation that physician's [sic] diagnoses are 'meaningless' to the Medicare Advantage system." Doc. 106, at 113. That is wrong. The complete sentence from the motion is, "Moreover, *raw* diagnosis codes are meaningless for risk adjustment purposes." Doc.

98, at 15 (emphasis added). The Provider Defendants then spend two-and-a-half pages explaining why that is so under the controlling regulatory backdrop.

The Provider Defendants' causation argument is consistent with the statement from *Ormsby* that Zafirov highlights: "These diagnosis codes, as reported by medical providers, are the only factors that CMS uses to determine a beneficiary's *health status*." *Ormsby*, 444 F. Supp. 3d at 1025 (emphasis added). While diagnosis codes determine a beneficiary's health status, health status is just one input in the multi-dimensional calculus (including demographics, geography, the bid submitted to the insurer, the number of patients in the plan) that determines the ultimate *capitation payment*. Doc. 98 at 17–18. Zafirov ignores this regulatory backdrop and instead picks a fight with a straw man. The amended complaint is due to be dismissed for the independent reason that there is no proximate causation between raw diagnosis codes and the finalized risk adjustment data Freedom submits to the government. *See Ruckh*, 963 F.3d at 1107.

## CONCLUSION

For these reasons, as well as those in the Provider Defendants' motion to dismiss, Zafirov's amended complaint should be dismissed with prejudice. Dismissal with prejudice is appropriate because (1) Zafirov has amended once already and (2) Zafirov, as a doctor who never worked for either of the Medicare Advantage Defendants, lacks the knowledge of claims submissions necessary to support a FCA case. *See McInteer*, 470 F.3d at 1359. Further amendment would therefore be futile.

Respectfully submitted,


*/s/ A. Lee Bentley, III*
A. Lee Bentley III
Florida Bar No. 1002269
Jason P. Mehta
Florida Bar No. 106110
Kyle W. Robisch
Florida Bar No. 113089
BRADLEY ARANT BOULT CUMMINGS LLP
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5500
Facsimile: (813) 229-5946
Primary E-mail: lbentley@bradley.com
Primary E-mail: jmehta@bradley.com
Primary E-Mail: krobisch@bradley.com
Secondary E-Mail:  dmills@bradley.com

Counsel for Defendants Florida Medical
Associates, LLC, Physician Partners, LLC,
and Anion Technologies, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 12, 2022, I filed the foregoing with the Court's electronic filing system, which will cause a copy to be served upon all counsel of record.

*/s/ A. Lee Bentley, III*

A. Lee Bentley III

Florida Bar No. 1002269

BRADLEY ARANT BOULT CUMMINGS LLP

100 North Tampa Street, Suite 2200

Tampa, Florida 33602

Tel: (813) 559-5500

Facsimile: (813) 229-5946

Primary E-mail: lbentley@bradley.com

8