UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

United States *ex rel.* Clarissa Zafirov,

    *Plaintiff/Relator*,

v.                                    CASE NO. 8:19-cv-01236-KMM-SPF

Physician Partners, LLC;
Florida Medical Associates, LLC
d/b/a VIPcare;
Anion Technologies, LLC;
Freedom Health, Inc.; and
Optimum Healthcare, Inc.,

    *Defendants*.
_____/

## PROVIDER DEFENDANTS' RESPONSE TO THE GOVERNMENT'S STATEMENT OF INTEREST

Defendants Physician Partners, LLC, Florida Medical Associates, LLC, and Anion Technologies, LLC (the "Provider Defendants") respond to the Government's statement of interest (Doc. 120). The statement of interest only reinforces the Provider Defendants' description of the Medicare Advantage program (Doc. 96, at 12–17) and the conclusion that Zafirov fails to plead any false claims.

**I.**     **The Government's statement of interest reinforces that raw diagnosis codes are meaningless for risk-adjustment purposes.**

The Government fails to refute the Provider Defendants' argument that raw diagnosis codes, without more information, are meaningless for risk adjustment

purposes. In fact, its filing reinforces the Provider Defendants' argument. That argument contains two main points, both of which the Government agrees with.

First, the Government agrees with the Provider Defendants that the Medicare Advantage payment system is a complex calculus that does not turn on any single input. *Compare* Doc. 120, at 3 (stating that "the payment system in the Medicare Advantage program involves a complicated process utilizing the risk adjustment model developed by CMS" that relies on "a variety of factors," including a patient's demographic and health information) *and id.* at 6 (quoting the Provider Defendants' "correct characteriz[ation]" of the "multi-layered process" that involves a "complex multi-dimensional calculus that does not turn on any single input") *with* Doc. 96, at 17 ("The model also considers demographic information, like sex and age . . . . CMS takes into account geography, the bid submitted by the insurer, the number of patients, and other factors in deciding the capitation rate.").

Second, the Government agrees with the Provider Defendants that not all diagnosis codes affect a patient's risk score and therefore not all diagnosis codes affect payment. *Compare* Doc. 120, at 4 (stating that "only a small subset of these diagnosis codes, generally those representing chronic conditions that persist year over year, have an impact on a beneficiary's risk score, *i.e.*, are risk adjusting diagnosis codes") *with* Doc. 96, at 17 ("[A]n incorrect diagnosis code itself does not lead to increased payment. Diagnoses are classified according to severity so that a beneficiary's risk score includes only the most severe manifestation among related diseases. The CMS-

HCC also excludes diagnoses that are vague or nonspecific (like symptoms), discretionary, medically insignificant, and transitory or definitely treated." (quotation omitted)).

The Government offers nothing to contradict the Provider Defendants' statement that "raw diagnosis codes are meaningless for risk adjustment purposes." Doc. 96, at 15. The Provider Defendants' motion explains the multiple layers of processing and review that must occur before a raw diagnosis code becomes a finalized "diagnosis cluster" that meets CMS's formatting requirements and may be used for risk adjustment. Doc. 96, at 15–16. The Government ignores this critical context and instead picks a fight with a straw man.

The Government's own, heavily qualified position statement supports the Provider Defendants' argument. The Government's position is, "If a provider submits a risk adjusting diagnosis code that is unsupported by the medical records, that risk adjusting diagnosis code (assuming it was the only one submitted within that HCC) will increase the risk score for that beneficiary and result in an improperly inflated payment." Doc. 120, at 5. Thus, the Government admits that a diagnosis code has the potential to increase payment only if it is (1) risk adjusting, (2) unsupported by medical records, and (3) the only one submitted within that HCC. Stated differently, "raw diagnosis codes," without more information, "are meaningless for risk adjustment purposes." Doc. 96, at 15. And it is because Zafirov lacks information about what the MA Defendants submitted to CMS or how, if at all, CMS's payments to the MA

Page 3

Defendants (let alone the Provider Defendants) were affected that she cannot identify any false claims.

## II. The Government fails to refute the Provider Defendants' causation argument.

The Government also fails to refute the Provider Defendants' argument that the "multi-layered processing and review system breaks any causal link between the Provider Defendants' raw diagnosis codes and the finalized risk adjustment data the MA Defendants submit to CMS for payment." *Id.* at 16. The Government offers no response to the Provider Defendants' detailed discussion of this multi-layered processing and review system. *See id.* at 14–17. Instead, its filing reinforces why the MA Defendants are ultimately responsible for the submission of risk-adjustment data. The Government admits that "MAOs certify that the diagnosis codes they submit are accurate, complete and truthful" and that CMS "requires MAOs to have compliance programs in place to ensure diagnosis codes are accurate, complete and truthful." Doc. 120, at 5. The Government also admits that "the capitated payment from CMS does not go directly to a provider but rather goes to the MAO." *Id.* at 6.

The Government's only response to the causation argument is an out-of-circuit district court case, *U.S. ex rel. Ormsby v. Sutter Health*, 444 F. Supp. 3d 1010 (N.D. Cal. 2020). *Ormsby* found that the relator sufficiently pleaded a causal link between the providers' diagnosis codes and increased payment from CMS. *See id.* at 1086. But *Ormsby* did not discuss or apply the "proximate cause" test this Court must apply. *Compare id. with Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1107 (11th Cir. 2020). In

Page 4

fact, *Ormsby* held that the relator sufficiently pleaded causation without any analysis, devoting one conclusory sentence to the issue.[1] *See Ormsby*, 444 F. Supp. 3d at 1086. Moreover, the Government fails to distinguish *U.S. ex rel. Bane v. Breathe Easy Pulmonary Services, Inc.*, 597 F. Supp. 2d 1280, 1291–92 (M.D. Fla. 2009), which properly found no causation between a downstream entity's conduct and the apex entity's Medicare claims. *See* Doc. 96, at 16 (discussing *Bane*). Thus, the Government's statement of interest does not refute the Provider Defendants' argument that there is no proximate causation between its raw diagnosis codes and the finalized risk adjustment data the MA Defendants submit to the Government.

## **CONCLUSION**

The Government's statement of interest only reinforces why this case should be dismissed. Zafirov lacks any information about what the Provider Defendants submitted to the MA Defendants, let alone what the MA Defendants submitted to the Government. Zafirov's employment as a primary care doctor did not give her any insight into the relationship between the Provider Defendants and the MA Defendants or their business practices. Because Zafirov's amended complaint fails to plead with particularity any false claims, it should be dismissed with prejudice.

---

[1] Moreover, the Government misquotes *Ormsby*, which describes the "risk adjustment model" (with **all** its inputs, not just diagnosis codes) as "the key to calculation of capitation rates." *Ormsby*, 444 F. Supp. 3d at 1023.

Respectfully submitted,

*/s/ Jason P. Mehta*
A. Lee Bentley III
Florida Bar No. 1002269
Jason P. Mehta
Florida Bar No. 106110
Kyle W. Robisch
Florida Bar No. 113089
BRADLEY ARANT BOULT CUMMINGS LLP
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5500
Facsimile: (813) 229-5946
Primary E-mail: lbentley@bradley.com
Primary E-mail: jmehta@bradley.com
Primary E-Mail: krobisch@bradley.com
Secondary E-Mail: dmills@bradley.com

Counsel for Defendants Physician Partners, LLC, Florida Medical Associates, LLC, and Anion Technologies, LLC

## CERTIFICATE OF SERVICE

  I hereby certify that on June 29, 2022, I filed the foregoing with the Court's electronic filing system, which will cause a copy to be served upon all counsel of record.

             */s/ Jason P. Mehta*
             Jason P. Mehta
             Florida Bar No. 106110
             BRADLEY ARANT BOULT CUMMINGS LLP
             100 North Tampa Street, Suite 2200
             Tampa, Florida 33602
             Tel: (813) 559-5500
             Facsimile: (813) 229-5946
             Primary E-mail: jmehta@bradley.com

4860-0368-6950.2