## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

United States of America
*ex rel.* Dr. Clarissa Zafirov,

      Relator and Plaintiff,

v.                                                      CASE NO. 8:19-cv-01236-KKM-SPF

Physician Partners, LLC;
Florida Medical Associates, LLC
d/b/a VIPcare;
Anion Technologies, LLC;
Freedom Health, Inc.; and
Optimum Healthcare, Inc.,

      Defendants.

_____/

## PHYSICIAN PARTNERS, LLC, FLORIDA MEDICAL ASSOCIATES D/B/A VIPCARE AND ANION TECHNOLOGIES, LLC'S ANSWER AND DEFENSES TO THE FIRST AMENDED COMPLAINT AND DEMAND FOR A JURY TRIAL

Defendants Physician Partners, LLC ("Physician Partners"), Florida Medical Associates, LLC d/b/a VIPcare ("VIPcare"), and Anion Technologies, LLC ("Anion") (collectively the "Provider Defendants") submit the following Answers and Defenses to the First Amended Complaint, stating:

## I.    INTRODUCTION

1.    This paragraph sets forth legal conclusions and questions of law for which no response is required.  To the extent a further response is required, the allegations of this paragraph are denied.

2.     This paragraph sets forth legal conclusions and questions of law for which no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

3.     This paragraph sets forth legal conclusions and questions of law for which no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

4.     Admitted that Physician Partners is a provider organization which employs or contracts with more than 500 providers who treat Medicare beneficiaries throughout Florida. Admitted that Physician Partners and Anion provide management support services and other services to contracted private practices. To the extent a further response is required, the allegations of this paragraph are denied.

5.     Denied.

6.     Admitted that Freedom Health, Inc. ("Freedom") and Optimum Healthcare, Inc. ("Optimum") entered into a False Claims Act settlement. Admitted that Freedom and Optimum are referred to collectively as "Freedom" throughout the Amended Complaint. To the extent a further response is required, the allegations of this paragraph are denied.

7.     Denied.

8.     Admitted that Physician Partners physicians sometimes use a document called a 5 Star Checklist. To the extent a further response is required, the allegations of this paragraph are denied.

9.     Admitted that Dr. Clarissa Zafirov ("Zafirov") is Board certified in Family Medicine and was briefly employed as a VIPcare physician. To the extent a further response is required, the allegations of this paragraph are denied.

10.     Denied.

11.     This paragraph sets forth legal conclusions and questions of law for which no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

12.     This paragraph sets forth legal conclusions and questions of law for which no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

13.     Admitted that Zafirov had access to Q360 and Freedom's MRA/HEDIS physician portal. To the extent a further response is required, the Provider Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in this paragraph, and therefore deny the allegations.

14.     Denied.

15.     This paragraph sets forth legal conclusions and questions of law for which no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

16.     This paragraph sets forth legal conclusions and questions of law for which no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

3

17.     This paragraph sets forth legal conclusions and questions of law for which no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

## II.     PARTIES

18.     Admitted.

19.     Admitted.

20.     Admitted that from October 2018 through March 2020, Zafirov was employed as a primary care physician at VIPcare. Admitted that while employed with VIPcare, Zafirov interacted with Physician Partners and Anion staff and attended Physician Partners training sessions. To the extent a further response is required, the allegations of this paragraph are denied.

21.     Admitted that Zafirov was provided access credentials to Physician Partners' Q360 system, eClincial Works electronic medical records system, and Freedom's MRA/HEDIS physician portal. To the extent a further response is required, the allegations of this paragraph are denied.

22.     Admitted that Physician Partners is a Florida limited liability company with a principal address of 601 S. Harbour Island Blvd., Suite 200, Tampa, Florida. Admitted that Physician Partners holds itself out as at the intersection of patients, providers, and payors. To the extent a further response is required, the allegations of this paragraph are denied.

23.    Admitted that Physician Partners employs or contracts with more than 500 providers who serve over 143,000 patients nationwide. Admitted that VIPcare is affiliated with Physician Partners and that Physician Partners provides services to independent medical practices. Admitted that Physicians Partners' services include management support. To the extent a further response is required, the allegations of this paragraph are denied.

24.    Admitted that Anion also does business as Anion Healthcare Services and was previously located at 601 S. Harbour Island Blvd., Suite 200 Tampa, Florida. Admitted that SunLabs, Inc. facilitated payment of Zafirov's salary. Admitted that Anion employs individuals based in India and Florida and operates a facility in Ocala, Florida. To the extent a further response is required, the allegations of this paragraph are denied.

25.    Admitted that VIPcare operates in multiple Florida counties with multiple clinics, including Venice. Admitted that VIPcare's mailing address and principal address is 601 S. Harbour Island Blvd., Suite 200, Tampa, Florida. Admitted that VIPcare billing is performed by Anion. To the extent a further response is required, the allegations of this paragraph are denied.

26.    The allegations of this paragraph are not directed to the Provider Defendants; thus, no response is required. To the extent a further response is required, the Provider Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in this paragraph, and therefore deny the

allegations.

27.     The allegations of this paragraph are not directed to the Provider Defendants; thus, no response is required. To the extent a further response is required, the Provider Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in this paragraph, and therefore deny the allegations.

28.     Admitted that Sidd Pagidipati has an ownership interest in and is the former CEO of Physician Partners. To the extent a further response is required, the allegations are not directed to the Providers Defendants; thus, no response is required. Otherwise, the Provider Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in this paragraph, and therefore deny the allegations.

29.     The allegations of this paragraph are not directed to the Provider Defendants; thus, no response is required. To the extent a further response is required, the Provider Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in this paragraph, and therefore deny the allegations.

## III.   JURISDICTION AND VENUE

30.     Admitted for jurisdictional purposes only. To the extent a further response is required, the allegations of this paragraph are denied.

31.     Admitted for jurisdictional purposes only. To the extent a further response is required, the allegations of this paragraph are denied.

32.     Admitted for venue purposes only. To the extent a further response is required, the allegations of this paragraph are denied.

33.     Admitted that the Court entered an order on September 28, 2021 dismissing Zafirov's original complaint. To the extent a further response is required, the allegations in this paragraph characterize the Court's order dated September 28, 2021, which speaks for itself. Otherwise, the allegations of this paragraph are denied.

34.     Admitted that another case involving some of the same defendants was previously filed and dismissed. To the extent a further response is required, the allegations in this paragraph characterize filings in another lawsuit, which speak for themselves. Otherwise, the allegations of this paragraph are denied.

35.     The allegations in this paragraph characterize the *Sewell* Complaint, which speaks for itself, and otherwise set forth legal conclusions and questions of law for which no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

36.     The allegations in this paragraph characterize filings in the *Sewell* case, which speak for themselves, and otherwise set forth legal conclusions and questions of law for which no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

37.     The allegations in this paragraph characterize the Amended Complaint, which speaks for itself.  To the extent a further response is required, the allegations of this paragraph are denied.

38.     This paragraph sets forth legal conclusions and questions of law for which no response is required. To the extent a further response is required, the allegations of this paragraph are denied

## IV.   PROCEDURAL POSTURE

39.     Admitted.

40.     The allegations in this paragraph characterize filings in this and other litigation, which speak for themselves. To the extent a further response is required, the allegations of this paragraph are denied.

41.     Admitted that the Government investigated Zafirov's allegations and nonetheless elected not to intervene in this case. To the extent a further response is required, the allegations of this paragraph characterize filings in this litigation which speak for themselves. Otherwise, the allegations of this paragraph are denied.

42.     Admitted.

43.     Admitted that the Court dismissed Zafirov's original complaint, dismissed certain Defendants with prejudice, and granted Zafirov leave to file a narrower amended complaint. To the extent a further response is required, the allegations of this paragraph characterize filings in this litigation which speak for themselves. Otherwise, the allegations of this paragraph are denied.

8

## V.      THE FEDERAL FALSE CLAIMS ACT

44.      The allegations in this paragraph characterize the False Claims Act ("FCA"), which speaks for itself. To the extent a further response is required, the allegations of this paragraph are denied.

45.      The allegations in this paragraph characterize the FCA, which speaks for itself. To the extent a further response is required, the allegations of this paragraph are denied.

## VI.     MEDICARE AND THE MEDICARE ADVANTAGE PROGRAM

46.      Admitted that Medicare is a federal health insurance program operated by the Center for Medicaid Services ("CMS") for individuals 65 or older and certain disabled persons. To the extent a further response is required, the allegations in this paragraph characterize federal statutes, which speak for themselves. Otherwise, the allegations of this paragraph are denied.

47.      The allegations in this paragraph characterize federal statutes, which speak for themselves. To the extent a further response is required, the allegations of this paragraph are denied.

48.      The allegations in this paragraph characterize federal statutes and Medicare billing policies and guidelines, which speak for themselves. To the extent a further response is required, the allegations of this paragraph are denied.

49.      The allegations in this paragraph characterize a graphic, which speaks for itself. To the extent a further response is required, the allegations of this paragraph are

denied.

50.     The allegations in this paragraph characterize a graphic, which speaks for itself. To the extent a further response is required, the allegations of this paragraph are denied.

51.     The allegations in this paragraph characterize a Medicare Provider Manual, which speaks for itself.  To the extent a further response is required, the allegations of this paragraph are denied.

52.     The allegations in this paragraph characterize a judicial opinion, which speaks for itself.  To the extent a further response is required, the allegations of this paragraph are denied.

53.     The allegations in this paragraph characterize the Federal Register, which speaks for itself. To the extent a further response is required, the allegations of this paragraph are denied.

54.     The allegations in this paragraph characterize a judicial opinion, which speaks for itself. To the extent a further response is required, the allegations of this paragraph are denied.

55.     The allegations in this paragraph characterize Medicare Advantage policies and guidelines, which speak for themselves. To the extent a further response is required, the allegations of this paragraph are denied.

56.     The allegations in this paragraph characterize Medicare Advantage policies and guidelines and federal statutes and regulations, which speak for

themselves. To the extent a further response is required, the allegations of this paragraph are denied.

57.     The allegations in this paragraph characterize Medicare Advantage policies and guidelines and federal statutes and regulations, which speak for themselves. To the extent a further response is required, the allegations of this paragraph are denied.

58.     The allegations in this paragraph characterize Medicare Advantage policies and guidelines and federal statutes and regulations, which speak for themselves. To the extent a further response is required, the allegations of this paragraph are denied.

59.     The allegations in this paragraph characterize Medicare Advantage policies and guidelines and federal statutes and regulations, which speak for themselves. To the extent a further response is required, the allegations of this paragraph are denied.

60.     The allegations in this paragraph characterize a judicial opinion and the Federal Register, which speak for themselves. To the extent a further response is required, the allegations of this paragraph are denied.

61.     The allegations in this paragraph characterize Medicare Advantage policies and guidelines and federal statutes and regulations, which speak for themselves. To the extent a further response is required, the allegations of this paragraph are denied.

62.     The allegations in this paragraph characterize Medicare Advantage policies and guidelines and federal statutes and regulations, which speak for themselves. To the extent a further response is required, the allegations of this paragraph are denied.

63.     The allegations in this paragraph characterize Medicare Advantage policies and guidelines and federal statutes and regulations, which speak for themselves. To the extent a further response is required, the allegations of this paragraph are denied.

64.     The allegations in this paragraph characterize a judicial opinion, which speaks for itself. To the extent a further response is required, the allegations of this paragraph are denied.

65.     The allegations in this paragraph characterize Medicare Advantage policies and guidelines and federal statutes and regulations, which speak for themselves. To the extent a further response is required, the allegations of this paragraph are denied.

66.     The allegations in this paragraph characterize a judicial opinion and a federal document, which speak for themselves. To the extent a further response is required, the allegations of this paragraph are denied.

67.     Admitted.

68.     Admitted that Medicare Advantage organizations pay healthcare providers, including the Provider Defendants, through a variety of arrangements

including through arrangements than can align efficiency, quality, and financial outcomes. To the extent a further response is required, the allegations of this paragraph are denied.

69.     Admitted that Medicare Advantage organizations and provider organizations sometimes enter into agreements that can align their interests in providing efficient, effective healthcare. To the extent a further response is required, the allegations of this paragraph are denied.

70.     The allegations in this paragraph characterize the Code of Federal Regulations, which speaks for itself. To the extent a further response is required, the allegations of this paragraph are denied.

71.     The allegations in this paragraph characterize the Code of Federal Regulations, which speaks for itself. To the extent a further response is required, the allegations of this paragraph are denied.

72.     The allegations in this paragraph characterize the Code of Federal Regulations, which speaks for itself. To the extent a further response is required, the allegations of this paragraph are denied.

73.     The allegations in this paragraph characterize the Code of Federal Regulations, which speaks for itself.  To the extent a further response is required, the allegations of this paragraph are denied.

74.     The allegations in this paragraph characterize the Code of Federal Regulations, which speaks for itself.  To the extent a further response is required, the

allegations of this paragraph are denied.

75.     Admitted that Physician Partners and VIPcare provide healthcare services to Medicare Advantage patients by agreement with Medicare Advantage organizations including, but not limited to, Freedom and Optimum. To the extent a further response is required, the allegations of this paragraph set forth legal conclusions and questions of law for which no response is required. Otherwise, the allegations of this paragraph are denied.

76.     The allegations in this paragraph characterize a judicial opinion, which speaks for itself. To the extent a further response is required, the allegations of this paragraph are denied.

77.     The allegations in this paragraph characterize a judicial opinion, which speaks for itself. To the extent a further response is required, the allegations of this paragraph are denied.

78.     The allegations in this paragraph characterize the Code of Federal Regulations, which speaks for itself. To the extent a further response is required, the allegations of this paragraph are denied.

79.     The allegations in this paragraph characterize the FCA, which speaks for itself. To the extent a further response is required, the allegations of this paragraph are denied.

80.     The allegations in this paragraph characterize federal statutes, which speaks for themselves. To the extent a further response is required, the allegations of

14

this paragraph are denied.

81.     The allegations in this paragraph characterize federal statutes, which speaks for themselves. To the extent a further response is required, the allegations of this paragraph are denied.

82.     The allegations in this paragraph characterize federal statutes, which speak for themselves. To the extent a further response is required, the allegations of this paragraph are denied.

83.     The allegations in this paragraph characterize federal regulations, which speak for themselves. To the extent a further response is required, the allegations of this paragraph are denied.

84.     The allegations in this paragraph characterize the Federal Register, which speaks for itself. To the extent a further response is required, the allegations of this paragraph are denied.

85.     The allegations in this paragraph characterize federal statutes and regulations, which speak for themselves. To the extent a further response is required, the allegations of this paragraph are denied.

86.     The allegations in this paragraph characterize a Medicare Provider Manual, which speaks for itself. To the extent a further response is required, the allegations of this paragraph are denied.

## VII.   ALLEGATIONS OF DEFENDANTS' CONDUCT RESULTING IN THE SUBMISSION OF FALSE CLAIMS

87.   Denied.

88.   Admitted that the Court found that Zafirov's original complaint constituted an impermissible shotgun pleading which lumped allegations against multiple Defendants. To the extent a further response is required, this paragraph characterizes a Court order, which speaks for itself, and sets forth legal conclusions and questions of law for which no response is required. Otherwise, the allegations of this paragraph are denied.

89.   Denied.

90.   Admitted that Physician Partners and VIPcare provide healthcare services to individuals nationwide and in Florida, including many who receive care through the Medicare Advantage program. To the extent a further response is required, the allegations of this paragraph are denied.

91.   Denied.

92.   Denied.

93.   Denied.

94.   Denied.

95.   Denied.

96.   Denied.

97.     Admitted that Physician Partners holds itself out as at "the intersection of patients, providers, and payors" and that it serves more than 143,000 patients, offers more than 500 providers, and has relationships with 14 different payors. To the extent a further response is required, the allegations of this paragraph are denied.

98.     Admitted that Physician Partners contracts with VIPcare and other healthcare practices and offers management support services for those practices' Medicare Advantage patients and programs. To the extent a further response is required, the allegations of this paragraph are denied.

99.     Admitted that, through VIPcare, Physician Partners contracts with 45 clinic locations, each of which has one or more primary care physicians and other staff. Admitted that SunLabsUSA provided payroll services to Physician Partners and VIPcare. To the extent a further response is required, the allegations of this paragraph are denied.

100.    Admitted.

101.    Admitted that certain Physician Partners policies and procedures applied to VIPcare during Zafirov's employment with VIPcare. To the extent a further response is required, the allegations of this paragraph are denied.

102.    Admitted that Anion has employees located in Florida and India. Admitted that Anion provides certain services, including reviewing patients' medical records, to Physician Partners for some Physician Partners patients. To the extent a further response is required, the allegations of this paragraph are denied.

103.    Admitted that before certain patient visits, an Anion system downloads a "5 Star Checklist" from Q360 and uploads same to a Google Drive as a courtesy. To the extent a further response is required, the allegations of this paragraph are denied.

104.    Admitted that following certain patients' visits, an Anion representative reviews the physicians' notes, the physicians' diagnostic coding, and the 5 Star Checklist (if used). Admitted that Anion has access to certain patient records. To the extent a further response is required, the allegations of this paragraph are denied.

105.    Admitted that most business days, an Anion associate based in India, typically Ratnakar Mekala, sends an email to VIPcare clinics that the 5 Star Checklists for that day are available and loaded into a Google Docs drive. Admitted that VIPcare doctors and offices can go onto the drive and download or print 5 Star Checklists. To the extent a further response is required, the allegations of this paragraph are denied.

106.    Admitted that VIPcare Medical Director Dr. Sangeeta Hans provided guidance to Zafirov at the beginning of her employment that VIPcare physicians should complete a 5 Star Checklist for each patient at least once per year and later provided guidance that a 5 Star Checklist should ideally be completed for each patient twice a year. Admitted that a 5 Star Checklist is usually generated before patient visits. To the extent a further response is required, the allegations of this paragraph are denied. Otherwise, the allegations of this paragraph are denied.

107.    Admitted that Emily Gallman met with Zafirov multiple times in person and over Zoom and discussed a variety of topics. To the extent a further response is

18

required, the allegations of this paragraph allege that particular words and phrases were exchanged during one or more of those meetings, for which the Provider Defendants lack sufficient knowledge or information to form a belief as to the definitive truth or falsity of. To the extent those particular words and phrases were definitively used, they lack context and detail. Otherwise, the allegations of this paragraph are denied.

108.   Admitted that the image in paragraph 108, excepting the red text and "annotation key," is an example of a 5 Star Checklist from 2018. To the extent a further response is required, the "annotation key" characterizes the image in paragraph 108, which speaks for itself. Otherwise, the allegations of this paragraph are denied.

109.   Admitted that for new Physician Partners patients, the 5 Star Checklist is often a new template which includes a common conditions checklist drawn from the CMS-created HCC system. To the extent a further response is required, the allegations of this paragraph are denied.

110.   Admitted paragraph 110 excerpts an example of a new-patient 5 Star Checklist used when Zafirov was employed by VIPcare. The Provider Defendants lack knowledge or information to form a belief as to the truth or falsity of the remaining allegations in this paragraph, and therefore the remaining allegations of this paragraph are denied.

111.   Admitted that Physician Partners made a 2020 Quality Training Manual ("QTM") available to physicians, including Zafirov, in or about February 2020. The

remaining allegations in this paragraph characterize the QTM which speaks for itself. To the extent a further response is required, the allegations of this paragraph are denied.

112.   The allegations of this paragraph incorporate by reference 5 Star Checklists that were not attached to the Amended Complaint, and to the extent that such records exist, such records speak for themselves.  To the extent a further response is required, the allegations of this paragraph are denied.

113.   Admitted that information about common conditions is gathered from patient population data at-large. Admitted that information about potential patient-specific conditions is gathered from a patient's specific medical records and sometimes included on a 5 Star Checklist. Admitted that versions of the QTM contain a "Frequently Asked Questions" section. To the extent a further response is required, the allegations in this paragraph characterizes a version of the QTM which speaks for itself. Otherwise, the allegations of this paragraph are denied.

114.   Admitted that VIPcare includes patient-specific information grounded in a particular patient's medical records on many 5 Star Checklists and that VIPcare explained that fact to Zafirov. Admitted that Dr. Sangeeta Hans met with Zafirov multiple times in person and over Zoom and discussed a variety of topics including 5 Star Checklists. To the extent a further response is required, the allegations of this paragraph allege that particular words and phrases were exchanged during an August 9, 2019 meeting, for which the Provider Defendants lack sufficient knowledge or

information to form a belief as to the definitive truth or falsity of. To the extent those particular words and phrases were definitively used, they lack context and detail. Otherwise, the allegations of this paragraph are denied.

115.   Admitted that there were prior versions of the QTM which, among other things, described the 5 Star Checklist and how data is used. The allegations in this paragraph characterize a prior version of the QTM which speaks for itself. To the extent a further response is required, the allegations of this paragraph are denied.

116.   Admitted that certain data on some 5 Star Checklists is gathered from patient population data at-large. To the extent a further response is required, the allegations of this paragraph characterize a version of the QTM which speaks for itself. Otherwise, the allegations of this paragraph are denied.

117.   Denied.

118.   Admitted that the excerpted 5 Star Checklist displays "[c]omplete traumatic amputation of unspecified foot, level unspecified, initial encounter" as a condition previously reported by a different healthcare provider. To the extent a further response is required, the allegations of this paragraph incorporate by reference a 5 Star Checklist for Patient A (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) and associated medical chart that were not attached to the Amended Complaint, and to the extent that such records exist, such records speak for themselves. Otherwise, the allegations of this

paragraph are denied.[1]

119.   Admitted that after a patient visit, it was suggested that physicians submit completed 5 Star Checklists. Admitted that certain 5 Star Checklists contain language asking a provider to certify that they have reviewed and addressed all relevant medical conditions during their face-to-face encounter with a patient. To the extent a further response is required, the allegations of this paragraph characterize an unattached 5 Star Checklist which speaks for itself. Otherwise, the allegations of this paragraph are denied.

120.   Admitted that Anion staff review patient charts to identify potential care gaps, provide quality control, and support physician-driven care. To the extent a further response is required, the allegations of this paragraph are denied.

121.   Denied.

122.   Admitted.

123.   Denied.

124.   Admitted that Anion staff prioritize reviewing certain conditions, in a manner consistent with CMS' HCC guidelines, during chart reviews. To the extent a

---

[1] Paragraph 118 and others throughout the Amended Complaint contain Zafirov's description of her actions in preparing the Amended Complaint and her interpretations gleaned from same, which require no response. This paragraph and others throughout the Amended Complaint contain references to patient information that might eventually be provided upon entry of a qualified protective order under the Health Insurance Portability and Accountability Act. Such a protective order has not yet been submitted to the Court and entered in this matter, and the Provider Defendants have therefore not yet received the referenced complete patient information. To the extent any response is necessary to any such allegations, actions, and interpretations described throughout the Amended Complaint, the Provider Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, those allegations are denied.

further response is required, the allegations of this paragraph are denied.

125.     Admitted that Physician Partners requires its physicians to abide by certain care protocols, quality assurance programs, standard operating procedures, and managed care requirements designed to facilitate effective, efficient healthcare outcomes for patients. Admitted that Physician Partners asks that its physicians fill out and submit certain forms and undertake certain contractual terms of employment. To the extent a further response is required, the allegations of this paragraph characterize unattached documents which speak for themselves. Otherwise, the allegations of this paragraph are denied.

126.     Denied.

127.     Admitted that VIPcare's 2018 physician bonus program provided three categories of opportunities for physicians to achieve financial incentives beyond their base salary based on training, quality, and efficiency metrics. To the extent a further response is required, the allegations in this paragraph characterize VIPcare's 2018 Performance Bonus Program which speaks for itself.  Otherwise, the allegations of this paragraph are denied.

128.     Admitted that VIPcare's 2018 Performance Bonus Program provided for monthly training bonuses ($300 for each meeting attended, up to an annual limit of $3,600) and a quality performance bonus (up to an annual limit of $10,000). To the extent a further response is required, the allegations in this paragraph characterize VIPcare's 2018 Performance Bonus Program which speaks for itself.  Otherwise, the

allegations of this paragraph are denied.

129.   Denied.

130.   Admitted that Emily Gallman met with Zafirov multiple times in person and over Zoom and discussed a variety of topics including, but not limited to, physician compensation. To the extent a further response is required, the allegations of this paragraph allege that particular words and phrases were exchanged during one or more of those meetings, for which the Provider Defendants lack sufficient knowledge or information to form a belief as to the definitive truth or falsity of. To the extent those particular words and phrases were definitively used, they lack context and detail. Otherwise, the allegations of this paragraph are denied.

131.   Denied.

132.   Admitted that Emily Gallman and other VIPcare staff spoke to Zafirov and other physicians about a variety of topics including, but not limited to, compensation and bonus potential. To the extent a further response is required, the allegations of this paragraph allege that particular words and phrases were exchanged during an alleged May 2019 meeting, for which the Provider Defendants lack sufficient knowledge or information to form a belief as to the definitive truth or falsity of. To the extent those particular words and phrases were definitively used, they lack context and detail. Otherwise, the allegations of this paragraph are denied.

133.   Admitted that Dr. Sangeeta Hans, Alex Lavin, and other VIPcare staff spoke to Zafirov and other physicians about a variety of topics including, but not

limited to, physician compensation, coding, and hospital and emergency room admissions. Admitted that Alex Lavin sometimes discusses the basics of risk scores, including the importance of maintaining an accurate risk score, with new VIPcare providers. To the extent a further response is required, the allegations of this paragraph allege that particular words and phrases were exchanged during an alleged August 9, 2019 meeting, for which the Provider Defendants lack sufficient knowledge or information to form a belief as to the definitive truth or falsity of. To the extent those particular words and phrases were definitively used, they lack context and detail. Otherwise, the allegations of this paragraph are denied.

134.   Admitted that Dr. Sangeeta Hans, Emily Gallman, Alex Lavin, and other VIPcare staff spoke to Zafirov and other physicians about a variety of topics including, but not limited to, physician compensation and MRA scores. Admitted that a meeting took place between VIPcare staff and Zafirov on or about August 15, 2019. To the extent a further response is required, the allegations of this paragraph allege that particular words and phrases were exchanged during an alleged August 15, 2019 meeting, for which the Provider Defendants lack sufficient knowledge or information to form a belief as to the definitive truth or falsity of. To the extent those particular words and phrases were definitively used, they lack context and detail. Otherwise, the allegations of this paragraph are denied.

135.   Admitted that Dr. Sangeeta Hans sometimes participated in meetings with groups of VIPcare physicians. To the extent a further response is required, the

allegations of this paragraph allege that particular words and phrases were exchanged during an alleged November 13, 2019 meeting, for which the Provider Defendants lack sufficient knowledge or information to form a belief as to the definitive truth or falsity of. To the extent those particular words and phrases were definitively used, they lack context and detail. Otherwise, the allegations of this paragraph are denied.

136.   Admitted that Zafirov took over a patient panel that included patients who had been previously treated by other VIPcare or Physician Partner physicians. To the extent a further response is required, the allegations of this paragraph characterize medical records which speak for themselves and allege Zafirov's personal impressions which the Provider Defendants lack sufficient knowledge or information of to form a belief as to their truth or falsity and, therefore, the Provider Defendants deny the remaining allegations.

> a.   Admit that Patient B (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) was seen by Dr. David Hunt on September 4, 2018. Admit that Patient B was seen by Dr. Akhil Patel ("Dr. Patel") on October 25, 2018. To the extent a further response is required, the allegations of this paragraph characterize medical records which speak for themselves and allege Zafirov's personal impressions which the Provider Defendants lack sufficient knowledge or information of to form a belief as to their truth or falsity and, therefore, the Provider

Defendants deny the remaining allegations.

b. Admit that Patient C (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) was seen by Dr. Rick Simovitz on multiple occasions. To the extent a further response is required, the allegations of this paragraph characterize medical records which speak for themselves and allege Zafirov's personal impressions which Provider Defendants lack sufficient knowledge or information of to form a belief as to their truth or falsity and, therefore, the Provider Defendants deny the remaining allegations.

c. Admit that Patient D (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) was seen by Dr. Patel several times in 2018. To the extent a further response is required, the allegations of this paragraph characterize medical records which speak for themselves and allege Zafirov's personal impressions which Provider Defendants lack sufficient knowledge or information of to form a belief as to their truth or falsity and, therefore, the Provider Defendants deny the remaining allegations.

d. Admit that Patient E (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider

Defendants) was seen by Dr. Patel on September 6, 2018 and that a CT scan was obtained. To the extent a further response is required, the allegations of this paragraph characterize medical records which speak for themselves and allege Zafirov's personal impressions which Provider Defendants lack sufficient knowledge or information of to form a belief as to their truth or falsity and, therefore, the Provider Defendants deny the remaining allegations.

137.   The Provider Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in this paragraph, and therefore deny the allegations.

138.   Admitted that Physician Partners engages with physicians in person, in writing, through Zoom, and through recorded videos about a variety of topics including, but not limited to, coding and documentation guidelines. To the extent a further response is required, the allegations of this paragraph are denied.

139.   Admitted that Physician Partners educates and trains physicians about a variety of medical conditions. To the extent a further response is required, the allegations of this paragraph are denied.

140.   Admitted that 5 Star Checklists may contain medical conditions linked to a patient's medical records and medical history. To the extent a further response is required, the allegations of this paragraph incorporate by reference associated medical records and 5 Star Checklists that were not attached to the Amended Complaint, and

28

to the extent that such records exist, such records speak for themselves. Otherwise, the allegations of this paragraph are denied.

141.   Admitted that the graphic in paragraph 141 purports to be a 5 Star Checklist. Admitted that the 5 Star Checklist displays actual or potential risk scores of 1.671 and 3.193. To the extent a further response is required, the Provider Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in this paragraph, and therefore deny the allegations.

142.   The allegations of this paragraph incorporate by reference associated medical records and 5 Star Checklists that were not attached to the Amended Complaint, and to the extent that such records exist, such records speak for themselves. To the extent a further response is required, the allegations of this paragraph are denied.

143.   Admitted that in May 2019, a VIPcare training session discussed Major Depressive Disorder, which has numerous diagnostic criteria and potentially serious consequences for patient well-being and treatment. To the extent a further response is required, the allegations of this paragraph are denied.

144.   The allegations of this paragraph characterize "guidance" provided by PHQ-9 and an uncited "industry standard," which speaks for themselves. To the extent a further response is required, the allegations of this paragraph are denied.

145.   Admitted that Zafirov had access to Physician Partners' Q360 system. To the extent a further response is required, the allegations of this paragraph are

denied.

146.   The allegations of this paragraph characterize a medical article and uncited and unattached medical records, which speak for themselves. To the extent a further response is required, the allegations of this paragraph are denied.

147.   Admitted that physicians may use "problem lists" to track patient care. To the extent a further response is required, the allegations of this paragraph are denied.

148.   Admitted that when VIPcare physicians reference problem lists, the problem lists are housed in the eClinicalWorks system. Admitted that problem lists have nothing to do with billing. To the extent a further response is required, the allegations of this paragraph are denied.

149.   Admitted that codes entered into a problem list are not claims submitted for payment to an insurer or the United States, so the entrance of an unsupported code on a problem list is not a false claim. To the extent a further response is required, the allegations of this paragraph are denied.

150.   The allegations of this paragraph characterize medical records which speak for themselves and allege Zafirov's personal impressions which the Provider Defendants lack sufficient knowledge or information of to form a belief as to their truth or falsity and, therefore, the Provider Defendants deny the remaining allegations.

   a. Admit that Zafirov saw Patient F (a deidentified patient for which Zafirov has not yet provided complete patient information to the

30

Provider Defendants) on June 25, 2019. Admit that an Anion employee included certain ICD codes on the patient's problem list based on information derived from that patient's medical records and history. To the extent a further response is required, the allegations of this paragraph characterize medical records which speak for themselves and allege Zafirov's personal impressions which the Provider Defendants lack sufficient knowledge or information of to form a belief as to their truth or falsity and, therefore, the Provider Defendants deny the remaining allegations.

b. Admit that Zafirov had an appointment scheduled with Patient G (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) on June 19, 2019. Admit that an Anion employee included certain ICD codes on the patient's problem list based on information derived from that patient's medical records and history. To the extent a further response is required, the allegations of this paragraph characterize medical records which speak for themselves and allege Zafirov's personal impressions which the Provider Defendants lack sufficient knowledge or information of to form a belief as to their truth or falsity and, therefore, the Provider Defendants deny the remaining allegations.

151. Admitted that Physician Partners provides information to its physicians

31

through videos that are posted on their physician portal.  Admitted that those videos feature several presenters including Dr. Eric Haas, Dr. Ford Brewer, and Dr. Dennis Mihale. To the extent a further response is required, the allegations of this paragraph are denied.

152.   Admitted that the videos posted on Physician Partners' physician portal includes a video which references the QTM. To the extent a further response is required, the allegations characterize videos, which speak for themselves. Otherwise, the allegations of this paragraph are denied.

153.   Denied.

154.   Admitted that one or more videos posted on Physician Partners' physician portal discuss vascular disease. To the extent a further response is required, the allegations of this paragraph characterize an uncited video and uncited "clinical standards" which speak for themselves. Otherwise, the allegations of this paragraph are denied.

155.   Admitted that one or more videos posted on Physician Partners' physician portal discuss morbid obesity. To the extent a further response is required, the allegations of this paragraph characterize an uncited video and an uncited American Thoracic Society directive which speak for themselves. Otherwise, the allegations of this paragraph are denied.

156.   Admitted that one or more videos posted on Physician Partners' physician portal discuss drug dependence. To the extent a further response is required,

the allegations of this paragraph characterize an uncited video and uncited risk-adjustment system documents which speak for themselves. Otherwise, the allegations of this paragraph are denied.

157.    Admitted that one or more videos posted on Physician Partners' physician portal discuss relatively common medical conditions. To the extent a further response is required, the allegations of this paragraph characterize an uncited video and a medical article, which speak for themselves. Otherwise, the allegations of this paragraph are denied.

158.    Denied.

159.    Admitted that Zafirov participated in several meetings with Alex Lavin in which they discussed several topics including, but not limited to, coding and documentation guidelines and MRA scores. To the extent a further response is required, the allegations of this paragraph allege that particular words and phrases were exchanged during one or more meetings in or around August 2019, for which the Provider Defendants lack sufficient knowledge or information to form a belief as to the definitive truth or falsity of. To the extent those particular words and phrases were definitively used, they lack context and detail. Otherwise, the allegations of this paragraph are denied.

160.    Admitted that Zafirov participated in several meetings with Alex Lavin, Dr. Sangeeta Hans, Emily Gallman, Sajitha Johnson, and/or other individuals in which they discussed several topics including, but not limited to, billing practices and

coding and documentation guidelines. To the extent a further response is required, the allegations of this paragraph allege that particular words and phrases were exchanged during undefined meetings, for which the Provider Defendants lack sufficient knowledge or information to form a belief as to the definitive truth or falsity of. To the extent those particular words and phrases were definitively used, they lack context and detail. Otherwise, the allegations of this paragraph are denied.

161.    Admitted that Zafirov participated in several meetings with Alex Lavin, Dr. Sangeeta Hans, and/or other individuals in which they discussed several topics including, but not limited to, coding and documentation guidelines. To the extent a further response is required, the allegations of this paragraph allege that particular words and phrases were exchanged during an alleged August 21, 2019 meeting, for which the Provider Defendants lack sufficient knowledge or information to form a belief as to the definitive truth or falsity of. To the extent those particular words and phrases were definitively used, they lack context and detail. Otherwise, the allegations of this paragraph are denied.

162.    The Provider Defendants fully incorporate their response to paragraph 161 here.

163.    The Provider Defendants fully incorporate their response to paragraph 161 here. To the extent a further response is required, the allegations of this paragraph characterize CMS risk-adjustment guidance, a report, and alleged comments from Dr. Hans which lack context and detail and speak for themselves. Otherwise, the

allegations of this paragraph are denied.

164.    The Provider Defendants fully incorporate their response to paragraph 161 here. To the extent a further response is required, the allegations of this paragraph characterize uncited Medicare guidelines and alleged comments from Dr. Hans which lack context and detail and speak for themselves. Otherwise, the allegations of this paragraph are denied.

165.    The Provider Defendants fully incorporate their response to paragraph 161 here. To the extent a further response is required, the allegations of this paragraph characterize uncited Medicare guidelines and alleged comments from Dr. Hans which lack context and detail and speak for themselves. Otherwise, the allegations of this paragraph are denied.

166.    Admitted that Dr. Hans has met with other VIPcare physicians to discuss a variety of topics including, but not limited to, clinical best practices and billing, coding, and documentation guidelines. To the extent a further response is required, the allegations of this paragraph allege that particular words and phrases were exchanged during an alleged meeting on an unknown date, for which the Provider Defendants lack sufficient knowledge or information to form a belief as to the definitive truth or falsity of. To the extent those particular words and phrases were definitively used, they lack context and detail. Otherwise, the allegations of this paragraph are denied.

167.    Admitted that Alex Lavin met with Zafirov several times over Zoom and in person during which they discussed several topics including, but not limited to, clinical best practices, coding and documentation guidelines, and physician compensation. To the extent a further response is required, the allegations of this paragraph allege that particular words and phrases were exchanged during an alleged meeting on August 22, 2019, for which the Provider Defendants lack sufficient knowledge or information to form a belief as to the definitive truth or falsity of. To the extent those particular words and phrases were definitively used, they lack context and detail. Otherwise, the allegations of this paragraph are denied.

168.    Admitted that Zafirov had several meetings with Dr. Hans, Sajitha Johnson, Alex Lavin, Emily Gallman, Jan Morsey, and/or others. To the extent a further response is required, the allegations in this paragraph are denied.

169.    Admitted that Dr. Hans met with Zafirov several times during which they discussed several topics including, but not limited to, clinical best practices and patient charts and outcomes. To the extent a further response is required, the allegations of this paragraph allege that particular words and phrases were exchanged during an alleged meeting on September 12, 2019, for which the Provider Defendants lack sufficient knowledge or information to form a belief as to the definitive truth or falsity of. To the extent those particular words and phrases were definitively used, they lack context and detail. Otherwise, the allegations of this paragraph are denied.

170.    Admitted that Alex Lavin met with Zafirov several times in person during which they discussed several topics including, but not limited to, clinical best practices, coding and documentation guidelines, MRA scores, and Zafirov's performance. To the extent a further response is required, the allegations of this paragraph allege that particular words and phrases were exchanged during an alleged meeting on September 26, 2019, for which the Provider Defendants lack sufficient knowledge or information to form a belief as to the definitive truth or falsity of. To the extent those particular words and phrases were definitively used, they lack context and detail. Otherwise, the allegations of this paragraph are denied.

171.    The Provider Defendants fully incorporate their response to paragraph 170 here.

172.    Denied.

173.    Admitted that Zafirov attended a meeting on or about October 16, 2019 with several individuals including Sajitha Johnson, Cassidy Cooper, and Dr. Rajiv Patel. To the extent a further response is required, the allegations of this paragraph allege that particular words and phrases were exchanged during an alleged meeting on October 16, 2019, for which the Provider Defendants lack sufficient knowledge or information to form a belief as to the definitive truth or falsity of. To the extent those particular words and phrases were definitively used, they lack context and detail. Otherwise, the allegations of this paragraph are denied.

174.    The Provider Defendants fully incorporate their response to paragraph 173 here.

175.    The Provider Defendants fully incorporate their response to paragraph 173 here.

176.    Admitted that Zafirov met with Emily Gallman and Dr. Eric Haas on or about November 6, 2019. To the extent a further response is required, the allegations of this paragraph are denied.

177.    Admitted that Zafirov, Dr. Eric Haas, and Emily Gallman discussed several topics, including but not limited to, referrals and specialists, during a meeting on or about November 6, 2019. Admitted that on or about November 6, 2019, VIPcare staff provided Zafirov with a list of specialists recommended by Dr. Haas and others. To the extent a further response is required, the allegations of this paragraph allege that particular words and phrases were exchanged during a meeting on or about November 6, 2019, for which the Provider Defendants lack sufficient knowledge or information to form a belief as to the definitive truth or falsity of. To the extent those particular words and phrases were definitively used, they lack context and detail. Otherwise, the allegations of this paragraph are denied.

178.    The Provider Defendants fully incorporate their response to paragraph 177 here.

179.    Admitted that Dr. Haas, Emily Gallman, and Zafirov discussed a subset of Zafirov's patients to assess patient care and clinical best practices. To the extent a

further response is required, the Provider Defendants fully incorporate their response to paragraph 177 here.

180.   Denied.

181.   This paragraph sets forth legal conclusions and questions of law for which no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

182.   The allegations of this paragraph are not directed to the Provider Defendants; thus, no response is required. To the extent a further response is required, the allegations in this paragraph characterize a Medicare Provider Manual, which speaks for itself. Otherwise, the allegations of this paragraph are denied.

183.   Admitted that Sidd Pagidipati formerly served as Chief Operating Officer of Freedom and Optimum. Admitted that Sidd Pagidipati amicably settled False Claims Act allegations in 2017 without any finding or admission of wrongdoing. To the extent a further response is required, the allegations of this paragraph are denied.

184.   Admitted that Physician Partners works with Medicare Advantage organizations, including Freedom. Admitted that Freedom provided information to certain Physician Partners physicians on coding and documentation guidelines and provided certain Physician Partners' physicians access to certain Freedom online portals. To the extent a further response is required, the allegations of this paragraph are denied.

185.   Admitted that Dr. Dennis Mihale participated in videos posted on Physician Partners' physician portal. Admitted that Dr. Dennis Mihale independently served as Medical Director for Freedom. To the extent a further response is required, the allegations of this paragraph characterize uncited videos which speak for themselves. Otherwise, the allegations of this paragraph are denied.

186.   The allegations of this paragraph characterize an uncited video which speaks for itself. To the extent a further response is required, the allegations of this paragraph are denied.

187.   The allegations of this paragraph characterize an uncited video which speaks for itself. To the extent a further response is required, the allegations of this paragraph are denied.

188.   Admitted that Dr. Mihale participated in videos posted on Physician Partners' physician portal. To the extent a further response is required, the allegations of this paragraph characterize uncited videos which speak for themselves. Otherwise, the allegations of this paragraph are denied.

189.   Admitted that Freedom and other payors provide information about coding and documentation guidelines and other topics to Physician Partners physicians through mailers. To the extent a further response is required, the allegations of this paragraph characterize a "mailer" which speaks for itself. Otherwise, the allegations of this paragraph are denied.

190.   Admitted that Freedom and other payors provide Physician Partners physicians access to portions of certain online portals which contain coding and documentation guidelines and other information. To the extent a further response is required, the allegations of this paragraph characterize Freedom's online portal which speaks for itself. Otherwise, the allegations of this paragraph are denied.

191.   Admitted that Physician Partners worked with Freedom and other payors to offer tours to provide current and prospective patients information about Physician Partners physicians and practices. Admitted that Rand Hans was Regional Director of Operations for VIPcare in September 2019. To the extent a further response is required, the allegations of this paragraph allege that particular words and phrases were exchanged during a conversation sometime in 2018, for which the Provider Defendants lack sufficient knowledge or information to form a belief as to the definitive truth or falsity of. To the extent those particular words and phrases were definitively used, they lack context and detail. Otherwise, the allegations of this paragraph are denied.

192.   Admitted that Physician Partners never asked Zafirov to give patient information to a Medicare Advantage organization not already affiliated with a particular patient. To the extent a further response is required, the allegations of this paragraph are denied.

193.   The allegations of this paragraph are not directed to the Provider Defendants; thus, no response is required. To the extent a further response is required,

41

the Provider Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in this paragraph, and therefore deny the allegations.

194.    Admitted that Dr. Sangeeta Hans, Alex Lavin, and Emily Gallman met with Zafirov several times during which they discussed several topics including specialists and referrals. To the extent a further response is required, the allegations of this paragraph allege that particular words and phrases were exchanged during an alleged meeting on January 9, 2020 for which the Provider Defendants lack sufficient knowledge or information to form a belief as to the definitive truth or falsity of. To the extent those particular words and phrases were definitively used, they lack context and detail. Otherwise, the allegations of this paragraph are denied.

195.    This paragraph sets forth legal conclusions and questions of law for which no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

196.    This paragraph sets forth legal conclusions and questions of law for which no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

197.    Denied.

198.    This paragraph sets forth legal conclusions and questions of law for which no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

199.   Denied.

200.   Denied.

201.   Denied.

202.   Admitted that paragraphs 203–295 purport to characterize patient medical history and records for patients seen by Zafirov. Admitted that Zafirov was sometimes listed as "current PCP" on certain 5 Star Checklists. To the extent a further response is required, the Provider Defendants fully incorporate their responses to paragraphs 203–295 as if fully incorporated here. Otherwise, the allegations of this paragraph are denied.

203.   Admitted that Patient H (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) was a 73-year-old on Zafirov's patient panel. Admitted that Patient H received treatment by VIPcare pursuant to enrollment in the Freedom VIP Saving (HMO SNP) plan. Admitted that the exhibits identified in paragraph 203 appear to be excerpts of Patient H's medical and treatment records, although Provider Defendants cannot definitively confirm as much. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

204.   Admitted.

205.   Admitted that Zafirov saw Patient H (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants)

on March 25, 2019. Admitted that Zafirov marked "no" next to the suggested code for HCC 085, "unspecified diastolic (congestive) heart failure" on the 5 Star Checklist. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

206.   Admitted that the I50.30 code was displayed on the Q360 portal as associated with a February 25, 2019 visit. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

207.   Admitted that Zafirov saw Patient H (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) on April 17, 2019. Admitted that the I50.30 code appeared on the 5 Star Checklist for that visit with a date of service of February 25, 2019. Admitted that Zafirov marked "No and should be removed" on the 5 Star Checklist. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

208.   Admitted that an August 12, 2019 5 Star Checklist for Patient H (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) displayed the I50.30 code as reported on

March 12, 2019 by a physician other than Zafirov. Admitted that Zafirov did not see Patient H on March 12, 2019. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

209.   Admitted that Patient H (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) saw Dr. Barry Weckesser on March 12, 2019. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

210.   Admitted that the Freedom MRA/HEDIS portal showed the I50.30 code as reported with a date of service of March 12, 2019. Otherwise, the allegations of this paragraph are denied.

211.   Denied.

212.   Denied.

213.   Admitted Patient I (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) was an 81-year-old on Zafirov's patient panel who received treatment by VIPcare pursuant to enrollment in the Freedom VIP (HMO SNP) plan. Admitted that the exhibits identified in paragraph 213 appear to be excerpts of Patient I's medical and treatment

records, although the Provider Defendants cannot definitively confirm as much. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

214.   Admitted that Patient I (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) was seen by Zafirov multiple times in 2019. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

215.   Admitted that Zafirov saw Patient I (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) on January 31, 2019 at which time Dr. Akhil Patel was listed as the patient's then-current PCP. Admitted that the ICD C61 code appeared on Patient I's 5 Star Checklist for the January 31, 2019 visit and that Zafirov wrote "No in remission" on that 5 Star Checklist. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

216.   Admitted that Zafirov saw Patient I (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) on April 26, 2019. Admitted that a 5 Star Checklist associated with that visit displayed

an ICD C61 code associated with an April 2, 2019 date of service. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

217.   Admitted that Zafirov did not treat Patient I (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) on April 2, 2019. Admitted that Zafirov did not assign an ICD C61 diagnosis code to Patient I.  To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

218.   Admitted that the document identified in paragraph 218 displayed HCC012 under the "Paid" section. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents which speak for themselves. Otherwise, the allegations of this paragraph are denied.

219.   Admitted that the 5 Star Checklist identified in paragraph 219 contains an ICD10 C61 code associated with an April 2, 2019 date of service. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

220.   Denied.

221.    Denied.

222.    Admitted that Patient J (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) was a 72-year-old on Zafirov's patient panel who received treatment by VIPcare pursuant to enrollment in the Freedom VIP Savings (HMO SNP) plan. Admitted that the exhibits identified in paragraph 222 appear to be excerpts of Patient J's medical and treatment records, although the Provider Defendants cannot definitively confirm as much. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

223.    Admitted that Patient J (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) was a 72-year-old. Admitted that Patient J saw Dr. Andy Trotti on January 3, 2019. Admitted that Dr. Trotti wrote "no evidence of disease" and several other things on the exhibit identified in paragraph 223. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

224.    Admitted that Zafirov saw Patient J (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) on January 21, 2019. Admitted that several cancer-related ICD codes related to the

patient's medical record and history appeared on the 5 Star Checklist for Patient J's January 21, 2019 visit. Admitted that "No" and "No, now in remission" appear on the 5 Star Checklist identified in paragraph 224. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

225.   Admitted that the 5 Star Checklist identified in paragraph 225 shows the bubble for HCC 011 colored in and showed no specific ICD codes associated with the then-current year. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

226.   Admitted that the exhibit identified in paragraph 226 displayed "malignant neoplasm of tonsil, unspecified" as associated with service dates of January 3, 2019 and June 6, 2019. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

227.   Admitted that the exhibit identified in paragraph 227 appears to be a Q360 screenshot showing several cancer-related ICD codes. Admitted that the Q360 screenshot shows "Paid" near several cancer-related ICD codes. Admitted that the Freedom Health Member Health Profile shows an ICD for "malignant neoplasm of

tonslar fossa" associated with a January 13, 2020 date of service. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

228.   Denied.

229.   Denied.

230.   Admitted that Patient K (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) was an 80-year-old on Zafirov's patient panel who received treatment by VIPcare pursuant to enrollment in the Freedom VIP Savings (HMO SNP) plan. Admitted that the exhibits identified in paragraph 230 appear to be excerpts of Patient K's medical and treatment records, although the Provider Defendants cannot definitively confirm as much. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

231.   Admitted that Patient K (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) was an 80-year-old who had been a patient of Dr. Rick Simovitz and Dr. Akhil Patel. Admitted that Patient K became part of Zafirov's patient panel in February 2019. Admitted that Zafirov saw Patient K multiple times in 2019.  To the extent a further response is required, the allegations of this paragraph characterize medical and treatment

documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

232.   Admitted that three ICD codes related to vascular disease were displayed on the 5 Star Checklist identified in paragraph 232. Admitted that Zafirov wrote "no mention in cardiology notes, no u/s result" on Exhibit 4-K3. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

233.   Admitted that on February 25, 2019, Zafirov did not perform diagnostic tests on Patient K (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) and did not diagnose Patient K with peripheral vascular disease. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

234.   Admitted that the 5 Star Checklist identified in paragraph 234 displayed ICD I70.201 and ICD I70.209 codes. Admitted that the ICD I70.201 code listed "Current PCP" as a source and the ICD I70.209 code listed "Other Provider" as a source. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

235.   Admitted that the screenshot of the Q360 identified in paragraph 235 shows "Paid" near the two ICD codes identified in paragraph 234. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

236.   The allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

237.   The Provider Defendants fully incorporate their response to paragraph 236 here.

238.   Admitted that Zafirov had access to the Freedom MRA/HEDIS Portal. Admitted that the exhibit identified in paragraph 238 shows a vascular disease code with a date of service of February 25, 2019. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

239.   Denied.

240.   Denied.

241.   Denied.

242.   Admitted that Patient L (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) was an 81-

year-old on Zafirov's patient panel who received treatment by VIPcare pursuant to enrollment in the Optimum Diamond Rewards (HMO SNP) plan. Admitted that the exhibits identified in paragraph 242 appear to be excerpts of Patient L's medical and treatment records, although the Provider Defendants cannot definitively confirm as much. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

243.    Admitted that Patient L (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) was a patient of both Dr. Patel and Dr. Simovitz before being assigned to Zafirov's patient panel. Admitted that Zafirov saw Patient L on January 23, 2019. Admitted that Zafirov wrote "patient has a past diagnosis of diabetes however at the time of diagnosis in 16 hemoglobin A1C not seen above 6.5" and "question initial diagnosis since patient does not follow any particular diet, eats what he wants and maintains his blood sugars with minimal effort . . . Patient has never had a hemoglobin A1C greater than 6.5" in her notes associated with the January 23, 2019 visit. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

244.    Admitted that the 5 Star Checklist associated with Patient L's (a deidentified patient for which Zafirov has not yet provided complete patient

information to the Provider Defendants) January 2019 visit displayed three ICD codes associated with diabetes. Admitted that Zafirov wrote "no" near two of those ICD codes and "awaiting lab" near the other. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

245.    Admitted that ICD code E11.65 was reported based on medical records written by Zafirov. Admitted that information written on 5 Star Checklists is not used for billing purposes. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

246.    Admitted that Zafirov saw Patient L (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) on February 25, 2019. Admitted that Zafirov wrote "we did check a fasting glucose tolerance test with labs to confirm diabetes which patient showed to have a glucose level in the 200s at the 1 hour mark" and "type 2 diabetes mellitus without complication, without long-term use of insulin" and "well-controlled hemoglobin A1C in normal range" in notes associated with Patient L's February 25, 2019 visit. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

247.    Admitted that the 5 Star Checklist identified in paragraph 247 displayed the HCC 018 and HCC 019 codes as previously reported. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

248.    Admitted that Zafirov included both the HCC 018 and HCC 019 codes in notes associated with her assessment of Patient L (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants). Admitted that 5 Star Checklists associated with visits for Patient L displayed HCC 018 and HCC 019 codes. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

249.    Denied.

250.    Denied.

251.    Denied.

252.    Admitted that Patient M (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) was a 76-year-old on Zafirov's patient panel who received treatment by VIPcare pursuant to enrollment in the Freedom Medicare Plan Rx (HMO) plan. Admitted that the exhibits identified in paragraph 252 appear to be excerpts of Patient L's medical and treatment

records, although the Provider Defendants cannot definitively confirm as much. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

253.   Admitted that Patient M (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) was a 76-year-old who was previously a patient of Dr. Patel. Admitted that Zafirov saw Patient M on February 15, 2019. Admitted that the 5 Star Checklist identified in paragraph 253 displayed ICD F33.9 and ICD F32.4 codes each of which had been reported multiple times in the previous year. Admitted that Zafirov wrote "No" near the ICD F33.9 and ICD F32.4 codes on the 5 Star Checklist identified in paragraph 253. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

254.   Admitted that in the exhibit identified in paragraph 254, Zafirov indicated a PHQ-9 score of 0 and that she wrote "Celexa for anxiety and not depression." To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

255.   Admitted that Zafirov reported an ICD F32.4 code on or about February 15, 2019. Admitted that "paid" is written near the ICD F32.4 code on the exhibit

referenced in paragraph 255. Admitted that CMS modified HCC categorizations, moving several ICDs from HCC 058 to HCC 059, causing potential code overlap associated with those modifications. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

256.    The Provider Defendants fully incorporate their response to paragraph 255 here.

257.    The allegations in this paragraph characterize an alleged email which speaks for itself. To the extent a further response is required, the allegations of this paragraph are denied.

258.    Admitted that the 5 Star Checklist referenced in paragraph 258 displayed an ICD F32.4 code associated with a date of service of February 15, 2019. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

259.    Denied.

260.    The allegations of this paragraph characterize entries in the Freedom MRA/HEDIS Portal, which speak for themselves. To the extent a further response is required, the allegations of this paragraph are denied.

261.   This paragraph sets forth legal conclusions and questions of law for which no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

262.   This paragraph sets forth legal conclusions and questions of law for which no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

263.   Admitted that the 5 Star Checklist referenced in this paragraph displayed an HCC 072 code which was reported by a previous medical provider. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents, physician impressions, and websites which speak for themselves. Otherwise, the allegations of this paragraph are denied.

264.   The Provider Defendants fully incorporate their responses to paragraphs 262 and 263 here. To the extent a further response is required, this paragraph sets forth legal conclusions and questions of law for which no response is required and characterize medical and treatment documents which speak for themselves. Otherwise, the allegations of this paragraph are denied.

265.   The Provider Defendants fully incorporate their responses to paragraphs 262–64 here. To the extent a further response is required, this paragraph sets forth legal conclusions and questions of law for which no response is required and characterize medical and treatment documents which speak for themselves. Otherwise, the allegations of this paragraph are denied.

266.   The Provider Defendants fully incorporate their responses to paragraphs 262–65 here. To the extent a further response is required, this paragraph sets forth legal conclusions and questions of law for which no response is required, characterize medical and treatment documents which speak for themselves, and are not directed to the Provider Defendants such that no response is required. Otherwise, the allegations of this paragraph are denied.

267.   Admitted that Patient N (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) was a 70-year-old on Zafirov's patient panel who received treatment by VIPcare pursuant to enrollment in the Freedom VIP Savings (HMO SNP) plan. Admitted that the exhibits identified in paragraph 267 appear to be excerpts of Patient N's medical and treatment records, although the Provider Defendants cannot definitively confirm as much. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

268.   Admitted that Zafirov saw Patient N (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) on or about January 23, 2019. Admitted that Zafirov wrote "No – see below" on the exhibit identified in paragraph 268. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this

paragraph are denied.

269.   Admitted that Zafirov included "Type 2 diabetes mellitus with diabetic peripheral angiopathy without gangrene" in the treatment section of the exhibit identified in paragraph 269. Admitted that Zafirov wrote "Question completeness of initial diagnosis Patient may have been prediabetes but it does not seem the lab criteria quite matches the diagnosis . . . If it is a question later on, will repeat" in the treatment section of the exhibit identified in paragraph 269. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

270.   Admitted that the exhibit identified in paragraph 270 displayed language that "Below codes/conditions are already reported in the current year" and included diabetes "with diabetic peripheral angiopathy without gangrene" associated with a service date of January 22, 2019. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

271.   Denied.

272.   This paragraph sets forth legal conclusions and questions of law for which no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

273.   This paragraph sets forth legal conclusions and questions of law for which no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

274.   This paragraph sets forth legal conclusions and questions of law for which no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

275.   Admitted that Patient O (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) was a 69-year-old on Zafirov's patient panel who received treatment by VIPcare pursuant to enrollment in the Freedom VIP Savings (HMO SNP) plan. Admitted that the exhibits identified in paragraph 275 appear to be excerpts of Patient O's medical and treatment records, although the Provider Defendants cannot definitively confirm as much. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

276.   Admitted that Zafirov might have made mistakes on her patients' Five Star Checklists and other patient-related documents. To the extent a further response is required, the allegations of this paragraph are denied.

277.   Admitted that Patient O (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) was previously a patient of Dr. Patel. Admitted that Zafirov saw Patient O on January 3, 2019 and

wrote "OK yes" next to "HCC 085, ICD I50.30," "unspecific diastolic (congestive) heart failure" on the Exhibit 8-O1 identified in paragraph 277. Admitted that Exhibit 8-O2 identified in paragraph 277 shows an HCC 085 code as paid and associated with January 3, 2019. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

278.   Admitted that Exhibit 8-O3 identified in paragraph 278 shows HCC 085 as a previously submitted code based on Zafirov's previous documentation. Admitted that Zafirov wrote "HCC 085 – should be corrected. Patient does not have. Should be amended" and "Patient scheduled to see cardiology in the next few months . . . Patient has a grade 1 distolic dysfunction which is not abnormal for age on cardiac echo . . . Does not quality for congestive heart failure as previously on problem list" on Exhibit 8-O4 identified in paragraph 278. Admitted that information written on 5 Star Checklists is not used for billing purposes. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

279.   Admitted that Patient O (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) was seen by a cardiologist on May 13, 2019. Admitted that Zafirov wrote "Amendment to chart . . . No CHF . . . Should not be included in problem list" in Exhibit 8-O6 identified in

paragraph 279. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

280.   Admitted that Patient O (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) was on Dr. Patel's panel as of January 3, 2019. To the extent a further response is required, the Provider Defendants fully incorporate their responses to paragraphs 275–79 here.

281.   The Provider Defendants fully incorporate their responses to paragraphs 275–80 here.

282.   Denied.

283.   This paragraph sets forth legal conclusions and questions of law for which no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

284.   Admitted that Zafirov saw Patient P (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) on March 8, 2019. Admitted that Q360 displayed HCC 072 as "paid" once in 2017, before Patient P was eligible with or received treatment from the Provider Defendants. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

285.    The allegations of this paragraph characterize uncited CDC documents and patient medical records which speak for themselves. To the extent a further response is required, the allegations of this paragraph are denied.

286.    The Provider Defendants fully incorporate their responses to paragraphs 284–85. To the extent a further response is required, the Provider Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in this paragraph, and therefore deny the allegations.

287.    The Provider Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in this paragraph, and therefore deny the allegations.

288.    The Provider Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in this paragraph, and therefore deny the allegations.

289.    Admitted that a Physician Partners-associated provider appropriately documented a malignant neoplasm for Patient Q (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) and reported an associated billing code. To the extent a further response is required, the allegations of this paragraph characterize medical and treatment documents and physician impressions which speak for themselves. Otherwise, the allegations of this paragraph are denied.

290.    Denied.

291.   Denied.

292.   The Provider Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in this paragraph, and therefore deny the allegations.

293.   The Provider Defendants fully incorporate their response to paragraph 118 here.

294.   The Provider Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in this paragraph, and therefore deny the allegations.

295.   Admitted that Patient R (a deidentified patient for which Zafirov has not yet provided complete patient information to the Provider Defendants) was treated by Dr. Rick Simovitz. To the extent a further response is required, the Provider Defendants lack sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph, and therefore deny the allegations.

## FIRST CLAIM FOR RELIEF
### Violations of 31 U.S.C. § 3729(a)(1)(A)
### Against Physician Partners, LLC ("Physician Partners")

296.   Physician Partners incorporates by reference its response to paragraphs 1-295 as if fully set forth herein.

297.   Denied.

298.   Denied.

299.    Denied.

## SECOND CLAIM FOR RELIEF
### Violations of 31 U.S.C. § 3729(a)(1)(B)
### Against Physician Partners, LLC ("Physician Partners")

300.    Physician Partners incorporates by reference its response to paragraphs 1-295 as if fully set forth herein.

301.    Denied.

302.    Denied.

303.    Denied.

## THIRD CLAIM FOR RELIEF
### Violations of 31 U.S.C. § 3729(a)(1)(G)
### Against Physician Partners, LLC ("Physician Partners")

304.    Physician Partners incorporates by reference its response to paragraphs 1-295 as if fully set forth herein.

305.    Denied.

306.    Denied.

307.    Denied.

## FOURTH CLAIM FOR RELIEF
### Violations of 31 U.S.C. § 3729(a)(1)(A)
### Against Anion Technologies ("Anion")

308.    Anion incorporates by reference its response to paragraphs 1-295 as if fully set forth herein.

309.    Denied.

310.    Denied.

311.  Denied.

## FIFTH CLAIM FOR RELIEF
### Violations of 31 U.S.C. § 3729(a)(1)(B)
### Against Anion Technologies ("Anion")

312.  Anion incorporates by reference its response to paragraphs 1-295 as if fully set forth herein.

313.  Denied.

314.  Denied.

315.  Denied.

## SIXTH CLAIM FOR RELIEF
### Violations of 31 U.S.C. § 3729(a)(1)(G)
### Against Anion Technologies ("Anion")

316.  Anion incorporates by reference its response to paragraphs 1-295 as if fully set forth herein.

317.  Denied.

318.  Denied.

319.  Denied

## SEVENTH CLAIM FOR RELIEF
### Violations of 31 U.S.C. § 3729(a)(1)(A)
### Against Florida Medical Associates, LLC d/b/a VIPcare ("VIPcare")

320.  VIPcare incorporates by reference its response to paragraphs 1-295 as if fully set forth herein.

321.  Denied.

322.  Denied.

323.   Denied.

### EIGHTH CLAIM FOR RELIEF
### Violations of 31 U.S.C. § 3729(a)(1)(B)
### Against Florida Medical Associates, LLC d/b/a VIPcare ("VIPcare")

324.   VIPcare incorporates by reference its response to paragraphs 1-295 as if fully set forth herein.

325.   Denied.

326.   Denied.

327.   Denied.

### NINTH CLAIM FOR RELIEF
### Violations of 31 U.S.C. § 3729(a)(1)(G)
### Against Florida Medical Associates, LLC d/b/a VIPcare ("VIPcare")

328.   VIPcare incorporates by reference its response to paragraphs 1-295 as if fully set forth herein.

329.   Denied.

330.   Denied.

331.   Denied.

### TENTH CLAIM FOR RELIEF
### Violations of 31 U.S.C. § 3729(a)(1)(A)
### Against Freedom Health, Inc. and Optimum Healthcare, Inc.
### (Freedom and Optimum")

332.   The Provider Defendants incorporate by reference their response to paragraphs 1-295 as if fully set forth herein.

333.   The allegations contained in this paragraph are not directed to the Provider Defendants; thus, no response is required. To the extent a further response is

68

required, the allegations of this paragraph are denied.

334.    The allegations contained in this paragraph are not directed to the Provider Defendants; thus, no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

335.    The allegations contained in this paragraph are not directed to the Provider Defendants; thus, no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

336.    The allegations contained in this paragraph are not directed to the Provider Defendants; thus, no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

## ELEVENTH CLAIM FOR RELIEF
## Violations of 31 U.S.C. § 3729(a)(1)(B)
## Against Freedom Health, Inc. and Optimum Healthcare, Inc.
## (Freedom and Optimum")

337.    The Provider Defendants incorporate by reference their response to paragraphs 1-295 as if fully set forth herein.

338.    The allegations contained in this paragraph are not directed to the Provider Defendants; thus, no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

339.    The allegations contained in this paragraph are not directed to the Provider Defendants; thus, no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

340.   The allegations contained in this paragraph are not directed to the Provider Defendants; thus, no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

341.   The allegations contained in this paragraph are not directed to the Provider Defendants; thus, no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

**TWELFTH CLAIM FOR RELIEF**
**Violations of 31 U.S.C. § 3729(a)(1)(G)**
**Against Freedom Health, Inc. and Optimum Healthcare, Inc.**
**(Freedom and Optimum")**

342.   The Provider Defendants incorporate by reference their response to paragraphs 1-295 as if fully set forth herein.

343.   The allegations contained in this paragraph are not directed to the Provider Defendants; thus, no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

344.   The allegations contained in this paragraph are not directed to the Provider Defendants; thus, no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

345.   The allegations contained in this paragraph are not directed to the Provider Defendants; thus, no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

346.   The allegations contained in this paragraph are not directed to the Provider Defendants; thus, no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

## GENERAL DENIAL

Denied that Plaintiff is entitled to judgment or any relief requested in the Amended Complaint. To the extent any allegations in the Amended Complaint—including footnotes, headings, subheadings, diagrams, exhibits, or subparagraphs—have not been admitted or specifically responded to, the Provider Defendants deny such allegations.

## AFFIRMATIVE DEFENSES

The Provider Defendants assert the following affirmative defenses:

### First Affirmative Defense

The Amended Complaint fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

The Amended Complaint fails to state with particularity facts to support the fraud allegations against the Provider Defendants.

### Third Affirmative Defense

Plaintiff Relator's claims are barred, in whole or in part, by the applicable statute of limitations.

## Fourth Affirmative Defense

Plaintiff Relator's claims for damages are barred by the fact that the United States has suffered no actual damages.

## Fifth Affirmative Defense

Plaintiff Relator's claims are barred in whole or in part, as a result of set-off due to monies previously paid by the Provider Defendants.

## Sixth Affirmative Defense

Plaintiff Relator's claims are barred, in whole or in part, to the extent that they have been released, settled, resolved through an accord and satisfaction, waived, or otherwise compromised.

## Seventh Affirmative Defense

Plaintiff Relator's claims are barred, in whole or in part, under the doctrine of estoppel.

## Eighth Affirmative Defense

Plaintiff Relator's claims are barred by the Government's prior knowledge of the facts underlying the allegedly false claims.

## Ninth Affirmative Defense

The award of penalties and damages to the Government and/or Plaintiff Relator would be an unconstitutionally excessive fine under the Eighth Amendment to the United States Constitution because any award would be grossly disproportional to the gravity of the Provider Defendants' offense, if any.

**Tenth Affirmative Defense**

Plaintiff Relator's claim for penalties and treble damages cannot be upheld to the extent that it violates or contravenes the constitutional limitations on damages and fines.

**Eleventh Affirmative Defense**

Plaintiff Relator's claims are barred by the jurisdictional requirements of 31 U.S.C. § 3730.

**Twelfth Affirmative Defense**

Plaintiff Relator's claims are barred, in whole or in part, by the doctrine of waiver.

**Thirteenth Affirmative Defense**

Plaintiff Relator's claims are barred, in whole or in part, by the doctrine of laches.

**Fourteenth Affirmative Defense**

Plaintiff Relator's claims are barred, in whole or in part, by her failure to mitigate damages.

**Fifteenth Affirmative Defense**

Plaintiff Relator's claims, damages, and relief, to the extent Plaintiff Relator is entitled to any damages or relief, were caused or contributed to by the acts, errors, or omissions of third-parties and nonparties for which the Provider Defendants were not responsible or lacked control.

### Sixteenth Affirmative Defense

Plaintiff Relator's claims are governed by the doctrines of course of performance, course of dealing, and usage of trade, which govern the meaning of any contractual agreement or course of conduct between the United States and Defendants.

### Seventeenth Affirmative Defense

Plaintiff Relator's claims are barred, in whole or in part, by failure to disclose to the United States substantially all material evidence and information that she possessed in violation of 31 U.S.C. § 3730(b)(2).

### Eighteenth Affirmative Defense

Plaintiff Relator's claims and relief are barred, in whole or in part, because the United States ratified or otherwise consented to the transactions, occurrences, conduct, and submissions that are the subject of this action including by continuing to pay Medicare Advantage plans at a previously determined rate as long as the plans' and their providers' coding error rates did not exceed CMS's own error rate or some other error rate, despite CMS's knowledge that some diagnosis codes are, as a general matter, mistaken or otherwise unsupported.

***

The Provider Defendants have not waived any defenses and reserve their right to amend or supplement the above defenses or to delete and withdraw such defenses as may become necessary during the course of these proceedings. The Provider

Defendants incorporate any affirmative defenses pled by any co-defendants in this action.

## **JURY TRIAL DEMAND**

The Provider Defendants, pursuant to Federal Rule of Civil Procedure 38(b) and Local Rule 1.06(a), demand trial by jury of all issues so triable.

WHEREFORE, the Provider Defendants request that the Court deny the relief requested in the First Amended Complaint Alleging Violations of the Federal False Claims Act, award the Provider Defendants their attorneys' fees and costs incurred in defending this matter, and grant any further relief that the Court deems just and proper.

Dated: October 24, 2022.

Respectfully submitted,

*/s/ A. Lee Bentley III*
A. Lee Bentley III
Florida Bar No. 1002269
Jason P. Mehta
Florida Bar No. 106110
Kyle W. Robisch
Florida Bar No. 113089
BRADLEY ARANT BOULT CUMMINGS LLP
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5500
Facsimile: (813) 229-5946
Primary E-mail: lbentley@bradley.com
Primary E-mail: jmehta@bradley.com
Primary E-Mail: krobisch@bradley.com
Secondary E-Mail: dmills@bradley.com

Counsel for Defendants Florida Medical
Associates, LLC, Physician Partners, LLC,
and Anion Technologies, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 24, 2022, I filed the foregoing with the Court's electronic filing system, which will cause a copy to be served upon all counsel of record.

*/s/ A. Lee Bentley III*
Attorney for Provider Defendants

4893-5872-6971.1