EXHIBIT A1
RELATOR'S FIRST REQUESTS FOR PRODUCTION TO
ANION TECHNOLOGIES, LLC

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* DR. CLARISSA ZAFIROV,<br><br>    Plaintiff/Relator<br><br>v.<br><br>FLORIDA MEDICAL ASSOCIATES, LLC,<br>d/b/a VIPCARE; PHYSICIAN PARTNERS,<br>LLC; ANION TECHNOLOGIES, LLC;<br>FREEDOM HEALTH, INC.; and OPTIMUM<br>HEALTHCARE, INC.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) CASE NO. 8:19-cv-01236<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## RELATOR'S FIRST REQUESTS FOR PRODUCTION TO ANION TECHNOLOGIES, LLC

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff Clarissa Zafirov ("Relator" or "Dr. Zafirov"), through the undersigned counsel, hereby propounds and serves her first set of Requests for Production of Documents ("RFPs") on Defendant Anion Technologies, LLC ("Anion"). In accordance with Rules 26 and 34, Anion shall serve any written objections to these requests within 30 days after service and shall produce responsive documents within the time provided by the Rules, or as agreed upon by the parties. Anion shall produce responsive documents pursuant to an agreed-upon protocol for the production of electronically stored information and may produce responsive documents which are only available in hard copy to Relator's

counsel at Morgan Verkamp, LLC, 4410 Carver Woods Dr., Ste. 200, Cincinnati, OH 45242.

## DEFINITIONS

1.    "You," "your," or "Anion" means Anion Technologies, LLC, Anion Healthcare Services, and any and all of the current or former successors, predecessors, facilities, affiliates, divisions, groups, operations, units, and each of their present or former officers, directors, employees, consultants, contractors, agents, or other representatives or agents of each of the entities acting or purporting to act on behalf of any of the entities or under their control.

2.    The "Complaint" refers to the Amended Complaint filed in this matter on November 12, 2021 (Doc. 86). If any request intends to refer back to the original complaint filed in this matter on May 20, 2019 (Doc. 1), it will be referred to as the "Original Complaint" or by docket entry.

3.    "Document" or "documents" is used in the broadest sense permitted under the Federal Rules of Civil Procedure and includes electronically stored information and materials that are typed, printed, recorded, reproduced by mechanical process, written by hand, or reproduced by any other means. The term "document" specifically includes, but is not limited to: all drafts, correspondence, emails, communications, reports, studies, memoranda, directives, policies, agendas, minutes, amendments, modifications, changes, and notes, including all non-identical copies such as those that include marginalia or other printed, stamped, or handwritten revisions or notations.

4.      "Communication" or "communications" means the transmission of information between two or more persons (in the form of facts, ideas, inquiries, or otherwise) orally or in writing, and includes any conversation whether face-to-face or by telephone, facsimile, letter, notes of conversations, memorandum, or e-mail message of whatever type or description and on whatever electronic platform, including all handwritten, typed, printed, recorded, transcribed writing or record.

5.      "Including" means including but not limited to.

6.      "Relating to" or "concerning" means consisting of, referring to, describing, discussing, reflecting, citing, pertaining to, evidencing, concerning, summarizing, or analyzing, whether directly or indirectly, the matter in question, without limitation, unless specifically indicated.

7.      The terms "and" and "or" are to be construed both conjunctively and disjunctively. The word "all" includes "each and every." All words used in the singular also mean their plural and all words used in the plural also mean their singular. All words used in the masculine also include the feminine, and all words used in the feminine also include the masculine.

8.      "Government" means the United States of America and any agency, branch, or department of the United States government, including without limitation, the United States Department of Justice ("DOJ"), the Centers for Medicare and Medicaid Services ("CMS"), the Department of Health and Human Services ("HHS").

9.     "5 Star Checklist" (also called "5 Star Forms") means the form provided to Physician Partners physicians in advance of a patient visit with suggested diagnosis codes to be "evaluate[d], assess[ed], and treat[ed]" by the physician during the scheduled visit. A complete description of the referenced form is in the Complaint at Paragraphs 105-116.

10.     "Chart" or "patient chart" means a patient's medical record held by a provider.

11.     "Chart review" or "chart review program" means the process of reviewing a patient's chart with the purposes of identifying or abstracting diagnosis codes.

12.     "Coder" means an individual who reviews a chart to identify diagnosis codes, if any, supported by information about the patient's medical condition(s) documented in the patient's medical chart and/or who reviews a chart to determine if a diagnosis code is supported by the information in the chart.

13.     "Deleted code" or "deletion" means a diagnosis submitted to RAPS but subsequently identified for any reason to be unsupported by a chart as invalid or otherwise not accurate or truthful.

14.     "Diagnosis code" or "diagnosis coding" mean, as a noun, an ICD-9 or ICD-10 code identifying a specific disease, disease process, injury or other medical condition, and as a verb, the assignment or addition of an ICD-9 or ICD-10 diagnosis code to a patient's medical record or other documents associated with a patient encounter.

15.     "Employee" means any person, manager, officer, or director, including independent contractors, who have acted at your direction, on Your behalf, or has performed any service for You or under Your name (whether on a full-time, part-time, commission, or other basis, or whether paid or unpaid).

16.     "Risk Adjustment Database" means any database or other data submission systems or methods by which You either tracked risk adjustment data or submitted risk adjustment data to CMS, including but not limited to any proprietary or third-party risk adjustment tracking systems used by providers to submit claims and encounter data to You; any of Your databases used to record, analyze, process, prepare, or submit diagnosis codes and other diagnosis information to CMS; and/or any other of Your databases used to conduct any medical record review, including but not limited to chart reviews.

17.     "Patient" means any individual who has received medical care.

18.     "Physician Partners physician" means any physician who is either (1) employed by Physician Partners, or (2) who associated with Physician Partners through a practice management contract or any other similar relationship other than an employment contract. If any request intends to distinguish between the two groups of physicians described herein, it will so specify.

## **INSTRUCTIONS**

1.     If you assert that part of a document request is objectionable, respond to those remaining parts to which you do not object, state your objection clearly, and specifically identify which part of the request or the response it requires is objectionable

and why. Any objections must state whether any responsive materials are being withheld on the basis of that objection.

2.     Unless otherwise agreed upon by the parties, Electronically Stored Information ("ESI") shall be produced in its native format, unless the document cannot be viewed using software manufactured by Microsoft, in which case we request you notify us regarding any such document types. Production in native format should be accompanied by corresponding load files containing each document's extracted or OCR text and the respective metadata fields, and ESI created using spreadsheet software (e.g., Microsoft Excel) shall be produced in native format with its corresponding text and metadata provided in the load file (unless otherwise agreed to in writing by the parties). In addition, ESI shall be produced in a logically unitized format. Logical unitization of documents requires the producing party to ensure, among other things, that a particular document captures all of its respective pages and that document relationships, such as a "parent" document (e.g., a fax cover sheet) and "children" attachments (e.g., a faxed letter and attachment to the letter), are preserved. All ESI containing text shall be provided in a searchable format whenever possible. All ESI shall be produced with all associated metadata. To the extent that information is available in the form of both paper and ESI, the information shall be produced in ESI form, and the paper form shall be maintained during the pendency of the litigation.

3.     If responsive ESI is contained in an electronic data storage system (such as a database or other kind of electronic system for accumulating data), you shall provide a complete and accurate description of the information, such as a data

dictionary. This description shall include translation tables for all fields that contain coded values. You shall also provide a description of each file, specifying the scope and time period of the information contained therein. If the information is provided in a generic format, you shall provide a complete and accurate description of the data layout, the control-total information, including the number of records and sums for selected numeric variables, for each file transmitted. If information is transmitted in a proprietary format that is not accessible by publicly available software packages, the software to read the information shall be provided, and any license or other permission needed to use the software shall be assigned or granted for the duration of this litigation.

4.      To the extent that documents are found in file folders and other similar containers that have labels or other identifying information, the documents shall be produced with such file folder and label intact. To the extent that documents are found attached to other documents, by means of paperclips, staples, or other means of attachment, such documents shall be produced together in their condition when found.

5.      All text communications, including but not limited to instant messages, cell phone messages or social media messages regardless of platform, shall be produced in a manner that indicates the dates of the communications, all recipients of the communication, any attachments to the communications, and with any condensed texts expanded to show the full message. If the communication includes images or attachments, the communication must be produced with the images or attachments in the order that the communication was made.

6.      All responsive documents must be produced in a format that enables counsel to determine the request(s) to which the documents are responsive, including a cover letter which identifies the Bates numbers of the documents in any specific production and the request(s) to which each of those documents are responsive. Any documents produced in electronic format subject to the standards set forth above shall also include a field indicating the responsive request in the corresponding load file in a manner than enables the documents to be sorted by the request(s) to which each document is responsive.

7.      If you contend that a document is protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege, promptly produce a privilege log setting forth the basis of the asserted privilege and include on the log (1) the type of document; (2) the date of the document; (3) the author(s) of the document; (4) an identification of all persons that received a copy of the document; (5) a description of the subject matter of the document; and (6) the privilege being asserted and the basis for the assertion of that privilege. Documents that any party asserts to contain confidential business information or confidential patient health information shall be produced subject to the terms of a Protective Order and shall not be withheld from production on that basis.

8.      If any document requested herein has been lost, discarded, or destroyed, describe it separately, stating: (1) the date of its disposal, destruction or last known location; (2) the manner of its disposal or destruction; (3) all persons having knowledge of its disposal, destruction, or last known location; (4) the persons authorizing its

disposal or destruction; (5) the persons disposing of or destroying it; and (6) any document destruction policy pursuant to which the document was destroyed.

9.      Pursuant to Rule 26(e), these document requests are continuing in nature and must be supplemented promptly if you obtain or identify additional responsive documents.

10.     Except as otherwise expressly provided herein, the relevant time period for purposes of these document requests is January 1, 2014, to the present.

## DOCUMENT REQUESTS

**Request for Production No. 1:**  All documents received from or provided by you to the Government relating to any inquiry or investigation by the Government since the filing of the Original Complaint (Doc. 1) or relating to any of the allegations in the Original Complaint or the Complaint (Doc. 86). This request includes, but is not limited to, civil investigative demands ("CIDs"), correspondence pertaining to CIDs, and all responses to CIDs, including written interrogatory responses, all documents produced, and all transcripts of testimony obtained or provided. Responsive documents shall be produced in the same order and manner in which they were produced to the Government (and thus shall reflect any Bates numbers on such production to the Government).

RESPONSE:


**Request for Production No. 2:**  All documents identified in your Rule 26(a)(1) initial disclosures.

RESPONSE:


**Request for Production No. 3:**  All personnel files, performance evaluations or ratings, and materials related to the calculation of compensation (including bonuses) for any Anion employees identified in any party's original or amended Rule 26 disclosures.

RESPONSE:


**Request for Production No. 4:**  All documents which refer to or relate to each patient identified in the Complaint.

RESPONSE:


**Request for Production No. 5:**  All documents sufficient to identify the claims submitted, or caused to be submitted, by Anion to any Government health care program, whether the claims were submitted directly to the United States or to any other entity acting on behalf of or at the direction of the United States.

RESPONSE:


**Request for Production No. 6:** All documents sufficient to identify the payments received by Anion from any Government health care program.

RESPONSE:

**Request for Production No. 7:**  All documents sufficient to identify all claims which were submitted to the United States, or to a Medicare Advantage organization, and which were later resubmitted to correct a diagnosis code which had been appended to the earlier claim.

RESPONSE:


**Request for Production No. 8:**  All documents sufficient to identify all claims which include diagnosis codes that were added, deleted, or otherwise amended as part of a chart review after a medical record was submitted to Anion following a patient visit.

RESPONSE:


**Request for Production No. 9:**  All communications or writings sent by any Anion employee to Dr. Clarissa Zafirov, received by any Anion employee from Dr. Zafirov, or which relate in any way to Dr. Zafirov.

RESPONSE:


**Request for Production No. 10:** Documents sufficient to identify the officers, managers, employees, and contractors of Anion for each year of the relevant time frame, including without limitation directories, rosters, and organizational charts.

RESPONSE:

**Request for Production No. 11:** All contracts or agreements between Anion and (1) Florida Medical Associates, LLC d/b/a VIPcare; (2) Physician Partners, LLC; (3) Freedom Health, Inc.; (4) Optimum Health, Inc.; (5) any other Medicare Advantage Organization; and (6) any other entity for which Anion provides chart review, billing, payroll, or other financial services.

RESPONSE:


**Request for Production No. 12:** All communications regarding Medicare risk adjustment scores between Anion and any employee of (1) Florida Medical Associates, LLC d/b/a VIPcare; (2) Physician Partners, LLC; (3) Freedom Health, Inc.; (4) Optimum Health, Inc.; (5) any other Medicare Advantage Organization; and (6) any other entity which for Anion provides chart review, billing, payroll, or other financial services.

RESPONSE:


**Request for Production No. 13:** All documents relating to the compensation structure for all current and former Anion employees, including but not limited to base compensation rates and bonus structure. To the extent there are various compensation structures for different employees or across the time period, this request includes documents sufficient to identify each iteration of any compensation structure which has been employed for Anion employees.

RESPONSE:

**Request for Production No. 14:** All 5 Star Checklists provided to Dr. Zafirov or to any member of Dr. Zafirov's office staff, whether provided by email, fax, Google drive, or any other means of transmission. This request specifically includes but is not limited to all communications to Dr. Zafirov or any member of Dr. Zafirov's staff indicating that 5 Star Checklists are available to be downloaded or accessed from any online repository.

RESPONSE:

**Request for Production No. 15:** All documents related to Anion's review, tracking, or assessment of the total average Medicare Risk Adjustment Score of any patient or any physician's patient panel, including without limitation, any reports generated which identified a patient or patient panel's risk adjustment score, any communications between Anion and any physician about their patient or patient panel's risk adjustment score.

RESPONSE:

**Request for Production No. 16:** Any report, memorandum, review, audit, communication, or other document provided to any physician which relates to trends in the physician's usage of any diagnosis code.

RESPONSE:

13

**Request for Production No. 17:** All descriptions, rules, instructions, guidance, or other information provided to Anion employees regarding 5 Star Checklists, including without limitation how the 5 Star Checklists are made, how they are used, how often they must be used, and how they are to be processed and retained after a patient visit, including without limitation whether they are part of the patient's medical record.

RESPONSE:

**Request for Production No. 18:** All audio or audiovisual recordings of any Anion meeting, training or boot camp session which discussed, referenced, or related to Medicare risk adjustment scores, diagnosis codes, the Medicare risk adjustment system in general, or 5 Star Checklists.

RESPONSE:

**Request for Production No. 19:** All communications between each of the following persons or groups of people and any physician which discussed, referenced, or related to Medicare risk adjustment scores, diagnosis codes, "care gaps," 5 Star Checklists, or any variable compensation (including but not limited to bonus payments):

A. Ratnakar Mekala;

B. Syed Dastagir;

C. Sajitha Johnson;

14

D. Any Anion employee whose job title is Quality Analyst, or who works at the direction, instruction, or oversight of an employee whose job title is Quality Analyst;

E. Any Anion employee whose job title is Process Associate, or who works at the direction, instruction, or oversight of an employee whose job title is Process Associate;

F. Any Anion employee whose job description includes medical chart reviews;

G. Any Anion employee who is a member of the "review team" referenced in the Physician Partners *Quality Training Manual* as described in Paragraph 113 of the Complaint.

RESPONSE:


**Request for Production No. 20:** All documents related to your third affirmative defense that "Plaintiff Relator's claims are barred, in whole or in part, by the applicable statute of limitations."

RESPONSE:


**Request for Production No. 21:** All documents related to your fourth affirmative defense that "Plaintiff Relator's claims for damages are barred by the fact that the United States has suffered no actual damages."

RESPONSE:

**Request for Production No. 22:** All documents related to your fifth affirmative defense that "Plaintiff Relator's claims are barred, in whole or in part, as a result of set-off due to monies previously paid by the Provider Defendants."

RESPONSE:


**Request for Production No. 23:** All documents related to your sixth affirmative defense that "Plaintiff Relator's claims are barred, in whole or in part, to the extent that they have been released, settled, resolved through an accord and satisfaction, waived, or otherwise compromised."

RESPONSE:


**Request for Production No. 24:** All documents related to your seventh affirmative defense that "Plaintiff Relator's claims are barred, in whole or in part, under the doctrine of estoppel."

RESPONSE:


**Request for Production No. 25:** All documents related to your eighth affirmative defense that "Plaintiff Relator's claims are barred by the Government's prior knowledge of the facts underlying the allegedly false claims."

RESPONSE:

**Request for Production No. 26:** All documents related to your eleventh affirmative defense that "Plaintiff Relator's claims are barred by the jurisdictional requirements of 31 U.S.C. § 3730."

RESPONSE:


**Request for Production No. 27:** All documents related to your twelfth affirmative defense that "Plaintiff Relator's claims are barred, in whole or in part, by the doctrine of waiver."

RESPONSE:


**Request for Production No. 28:** All documents related to your thirteenth affirmative defense that "Plaintiff Relator's claims are barred, in whole or in part, by the doctrine of laches."

RESPONSE:


**Request for Production No. 29:** All documents related to your fourteenth affirmative defense that "Plaintiff Relator's claims are barred, in whole or in part, by her failure to mitigate damages."

RESPONSE:


**Request for Production No. 30:** All documents related to your fifteenth affirmative defense that "Plaintiff Relator's claims, damages, and relief, to the extent

Plaintiff Relator is entitled to any damages or relief, were caused or contributed to by the acts, errors, or omissions of third-parties and nonparties for which the Provider Defendants were not responsible or lacked control."

RESPONSE:


**Request for Production No. 31:** All documents related to your sixteenth affirmative defense that "Plaintiff Relator's claims are governed by the doctrines of course of performance, course of dealing, and usage of trade, which govern the meaning of any contractual agreement or course of conduct between the United States and Defendants."

RESPONSE:


**Request for Production No. 32:** All documents related to your seventeenth affirmative defense that "Plaintiff Relator's claims are barred, in whole or in part, by failure to disclose to the United States substantially all material evidence and information that she possessed in violation of 31 U.S.C. § 3730(b)(2)."

RESPONSE:


**Request for Production No. 33:** All documents related to your eighteenth affirmative defense that "Plaintiff Relator's claims and relief are barred, in whole or in part, because the United States ratified or otherwise consented to the transactions, occurrences, conduct, and submissions that are the subject of this action including by

continuing to pay Medicare Advantage plans at a previously determined rate as long as the plans' and their providers' coding error rates did not exceed CMS's own error rate or some other error rate, despite CMS's knowledge that some diagnosis codes are, as a general matter, mistaken or otherwise unsupported."

RESPONSE:


**Request for Production No. 34:** All documents establishing Your document retention policies, including Your policies for retaining electronic documents and emails, and Your policies for limiting or restricting access to documents after any set period of time (e.g. deleting or restricting user access to emails after a fixed period of months). This includes but is not limited to any Litigation Hold Notices or other changes in policies that were made related to this litigation.

RESPONSE:


Respectfully submitted,

 /s/ Jillian L. Estes

Frederick M. Morgan, Jr. (OH 0027687)
Jennifer M. Verkamp (OH 0067198)
Jillian L. Estes (FL 0055774)
MORGAN VERKAMP LLC
4410 Carver Woods Dr., Suite 200
Cincinnati, OH 45242
Telephone: (513) 651-4400
Fax: (513) 651-4405
Email: rmorgan@morganverkamp.com
jverkamp@morganverkamp.com
jillian.estes@morganverkamp.com

Kenneth J. Nolan (Fla. Bar No. 603406)
Marcella Auerbach (Fla. Bar No. 249335)
NOLAN, AUERBACH & WHITE, LLP
435 N. Andrews Ave., Suite 401
Fort Lauderdale, FL   33301
Phone: (954) 779-3943
Fax: (954) 779-3937
ken@whistleblowerfirm.com
marcellla@whistleblowerfirm.com

Adam T. Rabin (Fla. Bar No. 985635)
Havan M. Clark (Fla. Bar No. 1026390)
RABIN KAMMERER JOHNSON
1601 Forum Place, Suite 201
West Palm Beach, FL 33401
Phone: (561) 659-7878
Fax: (561) 242-4848
arabin@rkjlawgroup.com
hclark@rkjlawgroup.com
e-filing@rkjlawgroup.com

*Counsel for Relator Dr. Clarissa Zafirov, M.D.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Requests for Production was served via electronic mail on counsel for all parties of record on this 15th day of December, 2022.

　/s/ Jillian L. Estes　　　　　　　
Jillian L. Estes

EXHIBIT A2
RELATOR'S FIRST REQUESTS FOR PRODUCTION TO
FLORIDA MEDICAL ASSOCIATES, LLC d/b/a VIPCARE

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* DR. CLARISSA ZAFIROV,<br><br>     Plaintiff/Relator<br><br>v.<br><br>FLORIDA MEDICAL ASSOCIATES, LLC,<br>d/b/a VIPCARE; PHYSICIAN PARTNERS,<br>LLC; ANION TECHNOLOGIES, LLC;<br>FREEDOM HEALTH, INC.; and OPTIMUM<br>HEALTHCARE, INC.,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) CASE NO. 8:19-cv-01236<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## RELATOR'S FIRST REQUESTS FOR PRODUCTION TO
## FLORIDA MEDICAL ASSOCIATES, LLC d/b/a VIPCARE

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff Clarissa

Zafirov ("Relator" or "Dr. Zafirov"), through the undersigned counsel, hereby

propounds and serves her first set of Requests for Production of Documents ("RFPs")

on Defendant Florida Medical Associates, LLC d/b/a VIPcare ("VIPcare"). In

accordance with Rules 26 and 34, VIPcare shall serve any written objections to these

requests within 30 days after service and shall produce responsive documents within

the time provided by the Rules, or as agreed upon by the parties. VIPcare shall produce

responsive documents pursuant to an agreed-upon protocol for the production of

electronically stored information and may produce responsive documents which are

only available in hard copy to Relator's counsel at Morgan Verkamp, LLC, 4410 Carver Woods Dr., Ste. 200, Cincinnati, OH 45242.

## **DEFINITIONS**

1.     "You," "your," or "VIPcare" means Florida Medical Associates, LLC d/b/a VIPcare, including any and all of the current or former successors, predecessors, facilities, affiliates, divisions, groups, operations, units, and each of their present or former officers, directors, employees, consultants, contractors, agents, or other representatives or agents of each of the entities acting or purporting to act on behalf of any of the entities or under their control.

2.     The "Complaint" refers to the Amended Complaint filed in this matter on November 12, 2021 (Doc. 86). If any request intends to refer back to the original complaint filed in this matter on May 20, 2019 (Doc. 1), it will be referred to as the "Original Complaint" or by docket entry.

3.     "Document" or "documents" is used in the broadest sense permitted under the Federal Rules of Civil Procedure and includes electronically stored information and materials that are typed, printed, recorded, reproduced by mechanical process, written by hand, or reproduced by any other means. The term "document" specifically includes, but is not limited to: all drafts, correspondence, emails, communications, reports, studies, memoranda, directives, policies, agendas, minutes, amendments, modifications, changes, and notes, including all non-identical copies such as those that include marginalia or other printed, stamped, or handwritten revisions or notations.

4.      "Communication" or "communications" means the transmission of information between two or more persons (in the form of facts, ideas, inquiries, or otherwise) orally or in writing, and includes any conversation whether face-to-face or by telephone, facsimile, letter, notes of conversations, memorandum, or e-mail message of whatever type or description and on whatever electronic platform, including all handwritten, typed, printed, recorded, transcribed writing or record.

5.      "Including" means including but not limited to.

6.      "Relating to" or "concerning" means consisting of, referring to, describing, discussing, reflecting, citing, pertaining to, evidencing, concerning, summarizing, or analyzing, whether directly or indirectly, the matter in question, without limitation, unless specifically indicated.

7.      The terms "and" and "or" are to be construed both conjunctively and disjunctively. The word "all" includes "each and every." All words used in the singular also mean their plural and all words used in the plural also mean their singular. All words used in the masculine also include the feminine, and all words used in the feminine also include the masculine.

8.      "Government" means the United States of America and any agency, branch, or department of the United States government, including without limitation, the United States Department of Justice ("DOJ"), the Centers for Medicare and Medicaid Services ("CMS"), the Department of Health and Human Services ("HHS").

9.     "5 Star Checklist" (also called "5 Star Forms") means the form provided to Physician Partners physicians in advance of a patient visit with suggested diagnosis codes to be "evaluate[d], assess[ed], and treat[ed]" by the physician during the scheduled visit. A complete description of the referenced form is in the Complaint at Paragraphs 105-116.

10.     "Chart" or "patient chart" means a patient's medical record held by a provider.

11.     "Chart review" or "chart review program" means the process of reviewing a patient's chart with the purposes of identifying or abstracting diagnosis codes.

12.     "Coder" means an individual who reviews a chart to identify diagnosis codes, if any, supported by information about the patient's medical condition(s) documented in the patient's medical chart and/or who reviews a chart to determine if a diagnosis code is supported by the information in the chart.

13.     "Deleted code" or "deletion" means a diagnosis submitted to RAPS but subsequently identified for any reason to be unsupported by a chart as invalid or otherwise not accurate or truthful.

14.     "Diagnosis code" or "diagnosis coding" mean, as a noun, an ICD-9 or ICD-10 code identifying a specific disease, disease process, injury or other medical condition, and as a verb, the assignment or addition of an ICD-9 or ICD-10 diagnosis code to a patient's medical record or other documents associated with a patient encounter.

15.     "Employee" means any person, manager, officer, or director, including independent contractors, who have acted at your direction, on Your behalf, or has performed any service for You or under Your name (whether on a full-time, part-time, commission, or other basis, or whether paid or unpaid).

16.     "Risk Adjustment Database" means any database or other data submission systems or methods by which You either tracked risk adjustment data or submitted risk adjustment data to CMS, including but not limited to any proprietary or third-party risk adjustment tracking systems used by providers to submit claims and encounter data to You; any of Your databases used to record, analyze, process, prepare, or submit diagnosis codes and other diagnosis information to CMS; and/or any other of Your databases used to conduct any medical record review, including but not limited to chart reviews.

17.     "Patient" means any individual who has received medical care.

18.     "Physician Partners physician" means any physician who is either (1) employed by Physician Partners, or (2) who associated with Physician Partners through a practice management contract or any other similar relationship other than an employment contract. If any request intends to distinguish between the two groups of physicians described herein, it will so specify.

## **INSTRUCTIONS**

1.     If you assert that part of a document request is objectionable, respond to those remaining parts to which you do not object, state your objection clearly, and specifically identify which part of the request or the response it requires is objectionable

and why. Any objections must state whether any responsive materials are being withheld on the basis of that objection.

2.     Unless otherwise agreed upon by the parties, Electronically Stored Information ("ESI") shall be produced in its native format, unless the document cannot be viewed using software manufactured by Microsoft, in which case we request you notify us regarding any such document types. Production in native format should be accompanied by corresponding load files containing each document's extracted or OCR text and the respective metadata fields, and ESI created using spreadsheet software (e.g., Microsoft Excel) shall be produced in native format with its corresponding text and metadata provided in the load file (unless otherwise agreed to in writing by the parties). In addition, ESI shall be produced in a logically unitized format. Logical unitization of documents requires the producing party to ensure, among other things, that a particular document captures all of its respective pages and that document relationships, such as a "parent" document (e.g., a fax cover sheet) and "children" attachments (e.g., a faxed letter and attachment to the letter), are preserved. All ESI containing text shall be provided in a searchable format whenever possible. All ESI shall be produced with all associated metadata. To the extent that information is available in the form of both paper and ESI, the information shall be produced in ESI form, and the paper form shall be maintained during the pendency of the litigation.

3.     If responsive ESI is contained in an electronic data storage system (such as a database or other kind of electronic system for accumulating data), you shall provide a complete and accurate description of the information, such as a data

dictionary. This description shall include translation tables for all fields that contain coded values. You shall also provide a description of each file, specifying the scope and time period of the information contained therein. If the information is provided in a generic format, you shall provide a complete and accurate description of the data layout, the control-total information, including the number of records and sums for selected numeric variables, for each file transmitted. If information is transmitted in a proprietary format that is not accessible by publicly available software packages, the software to read the information shall be provided, and any license or other permission needed to use the software shall be assigned or granted for the duration of this litigation.

4.      To the extent that documents are found in file folders and other similar containers that have labels or other identifying information, the documents shall be produced with such file folder and label intact. To the extent that documents are found attached to other documents, by means of paperclips, staples, or other means of attachment, such documents shall be produced together in their condition when found.

5.      All text communications, including but not limited to instant messages, cell phone messages or social media messages regardless of platform, shall be produced in a manner that indicates the dates of the communications, all recipients of the communication, any attachments to the communications, and with any condensed texts expanded to show the full message. If the communication includes images or attachments, the communication must be produced with the images or attachments in the order that the communication was made.

6.     All responsive documents must be produced in a format that enables counsel to determine the request(s) to which the documents are responsive, including a cover letter which identifies the Bates numbers of the documents in any specific production and the request(s) to which each of those documents are responsive. Any documents produced in electronic format subject to the standards set forth above shall also include a field indicating the responsive request in the corresponding load file in a manner than enables the documents to be sorted by the request(s) to which each document is responsive.

7.     If you contend that a document is protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege, promptly produce a privilege log setting forth the basis of the asserted privilege and include on the log (1) the type of document; (2) the date of the document; (3) the author(s) of the document; (4) an identification of all persons that received a copy of the document; (5) a description of the subject matter of the document; and (6) the privilege being asserted and the basis for the assertion of that privilege. Documents that any party asserts to contain confidential business information or confidential patient health information shall be produced subject to the terms of a Protective Order and shall not be withheld from production on that basis.

8.     If any document requested herein has been lost, discarded, or destroyed, describe it separately, stating: (1) the date of its disposal, destruction or last known location; (2) the manner of its disposal or destruction; (3) all persons having knowledge of its disposal, destruction, or last known location; (4) the persons authorizing its

disposal or destruction; (5) the persons disposing of or destroying it; and (6) any document destruction policy pursuant to which the document was destroyed.

9.      Pursuant to Rule 26(e), these document requests are continuing in nature and must be supplemented promptly if you obtain or identify additional responsive documents.

10.     Except as otherwise expressly provided herein, the relevant time period for purposes of these document requests is January 1, 2014, to the present.

## DOCUMENT REQUESTS

**Request for Production No. 1:** All documents received from or provided by you to the Government relating to any inquiry or investigation by the Government since the filing of the Original Complaint (Doc. 1) or relating to any of the allegations in the Original Complaint or the Complaint (Doc. 86). This request includes, but is not limited to, civil investigative demands ("CIDs"), correspondence pertaining to CIDs, and all responses to CIDs, including written interrogatory responses, all documents produced, and all transcripts of testimony obtained or provided. Responsive documents shall be produced in the same order and manner in which they were produced to the Government (and thus shall reflect any Bates numbers on such production to the Government).

RESPONSE:

**Request for Production No. 2:**  All documents identified in your Rule 26(a)(1) initial disclosures.

RESPONSE:


**Request for Production No. 3:**  All personnel files, performance evaluations or ratings, and materials related to the calculation of compensation (including bonuses) for any VIPcare employees identified in any party's original or amended Rule 26 disclosures.

RESPONSE:


**Request for Production No. 4:**  All documents which refer to or relate to each VIPcare patient identified in the Complaint.

RESPONSE:


**Request for Production No. 5:**  All documents related to Dr. Clarissa Zafirov's employment as a VIPcare physician, including without limitation, her hiring, her job performance, bonuses and awards provided to Dr. Zafirov during her employment, any disciplinary measures issued to Dr. Zafirov during her employment, her complete personnel file, communications or writings of any sort sent by any VIPcare employee to Dr. Zafirov, received by any VIPcare employee from Dr. Zafirov, or which relate in any way to Dr. Zafirov, and the repayment of Dr. Zafirov's hiring bonus after her employment ended.

RESPONSE:

**Request for Production No. 6:**  Documents sufficient to identify the officers, managers, employees, and contractors of VIPcare for each year of the relevant time frame, including without limitation directories, rosters, and organizational charts.

RESPONSE:

**Request for Production No. 7:**  All contracts or agreements between You and (1) Physician Partners, LLC; (2) Anion Technologies, LLC; (3) Freedom Health, Inc.; (4) Optimum Health, Inc.; (5) any other entity which provides management, management support, chart review, billing, payroll, or other financial services to VIPcare; and (6) any other Medicare Advantage Organization.

RESPONSE:

**Request for Production No. 8:**  All communications regarding Medicare risk adjustment scores between You and any employee of (1) Physician Partners, LLC; (2) Anion Technologies, LLC; (3) Freedom Health, Inc.; (4) Optimum Health, Inc.; (5) any other entity which provides management, management support, chart review, billing, payroll, or other financial services to VIPcare; and (6) any other Medicare Advantage Organization.

RESPONSE:

**Request for Production No. 9:**  All documents relating to the compensation structure for all current and former VIPcare physicians, including but not limited to base compensation rates and bonus structure. To the extent there are various compensation structures for different physicians or across the time period, this request includes documents sufficient to identify each iteration of any compensation structure which has been employed for VIPcare physicians.

RESPONSE:


**Request for Production No. 10:** All documents related to VIPcare's review, tracking, or assessment of the total average Medicare Risk Adjustment Score of any VIPcare physician's patient or patient panel, including without limitation any reports generated for any VIPcare physician which identified their patient panel's risk adjustment score, any communications between VIPcare and any VIPcare physician about their patient panel's risk adjustment score, any bonuses or other incentives of any kind offered or distributed as a result of a VIPcare physician's patient panel's risk adjustment score, and any disciplinary measures contemplated or taken as a result of a VIPcare physician's patient panel's risk adjustment score.

RESPONSE:


**Request for Production No. 11:** All documents provided to VIPcare physicians or staff which provide guidance on coding of diagnosis codes for Medicare

patients, including without limitation email communications, published documents, or audio or visual presentations which provide coding advice or instruction.

RESPONSE:

**Request for Production No. 12:** All descriptions, rules, instructions, guidance, or other information provided to VIPcare physicians regarding 5 Star Checklists, including without limitation how the 5 Star Checklists are made, how they are used, how often they must be used, and how they are to be processed and retained after a patient visit, including without limitation whether they are part of the patient's medical record.

RESPONSE:

**Request for Production No. 13:** All 5 Star Checklists provided to VIPcare physicians in advance of a patient visit.

RESPONSE:

**Request for Production No. 14:** All 5 Star Checklists received by You from any VIPcare physicians after a patient visit.

RESPONSE:

**Request for Production No. 15:** All documents related to monthly, annual or other regularly occurring meetings held for VIPcare physicians, including without

limitation meeting minutes, meeting agendas, documents handed out at any such meeting, slide decks or other presentations made during any such meeting, and any video or audio recording made of any such meeting.

RESPONSE:


**Request for Production No. 16:** All documents relating to any complaints made to VIPcare by, on behalf of, or regarding care or services received by a patient. This request includes, but is not limited to, complaints relating to both patient care issues and billing or scheduling issues.

RESPONSE:


**Request for Production No. 17:** All documents sufficient to identify the claims submitted, or caused to be submitted, by VIPcare to any Government health care program, whether the claims were submitted directly to the United States or to any other entity acting on behalf of or at the direction of the United States.

RESPONSE:


**Request for Production No. 18:** All documents sufficient to identify the payments received by VIPcare from any Government health care program.

RESPONSE:

**Request for Production No. 19:** All documents sufficient to identify any repayments made by VIPcare to any Government health care program.

RESPONSE:


**Request for Production No. 20:** All documents related to your third affirmative defense that "Plaintiff Relator's claims are barred, in whole or in part, by the applicable statute of limitations."

RESPONSE:


**Request for Production No. 21:** All documents related to your fourth affirmative defense that "Plaintiff Relator's claims for damages are barred by the fact that the United States has suffered no actual damages."

RESPONSE:


**Request for Production No. 22:** All documents related to your fifth affirmative defense that "Plaintiff Relator's claims are barred, in whole or in part, as a result of set-off due to monies previously paid by the Provider Defendants."

RESPONSE:


**Request for Production No. 23:** All documents related to your sixth affirmative defense that "Plaintiff Relator's claims are barred, in whole or in part, to

the extent that they have been released, settled, resolved through an accord and satisfaction, waived, or otherwise compromised."

RESPONSE:


**Request for Production No. 24:** All documents related to your seventh affirmative defense that "Plaintiff Relator's claims are barred, in whole or in part, under the doctrine of estoppel."

RESPONSE:


**Request for Production No. 25:** All documents related to your eighth affirmative defense that "Plaintiff Relator's claims are barred by the Government's prior knowledge of the facts underlying the allegedly false claims."

RESPONSE:


**Request for Production No. 26:** All documents related to your eleventh affirmative defense that "Plaintiff Relator's claims are barred by the jurisdictional requirements of 31 U.S.C. § 3730."

RESPONSE:


**Request for Production No. 27:** All documents related to your twelfth affirmative defense that "Plaintiff Relator's claims are barred, in whole or in part, by the doctrine of waiver."

RESPONSE:


**Request for Production No. 28:** All documents related to your thirteenth affirmative defense that "Plaintiff Relator's claims are barred, in whole or in part, by the doctrine of laches."

RESPONSE:


**Request for Production No. 29:** All documents related to your fourteenth affirmative defense that "Plaintiff Relator's claims are barred, in whole or in part, by her failure to mitigate damages."

RESPONSE:


**Request for Production No. 30:** All documents related to your fifteenth affirmative defense that "Plaintiff Relator's claims, damages, and relief, to the extent Plaintiff Relator is entitled to any damages or relief, were caused or contributed to by the acts, errors, or omissions of third-parties and nonparties for which the Provider Defendants were not responsible or lacked control."

RESPONSE:


**Request for Production No. 31:** All documents related to your sixteenth affirmative defense that "Plaintiff Relator's claims are governed by the doctrines of course of performance, course of dealing, and usage of trade, which govern the

meaning of any contractual agreement or course of conduct between the United States and Defendants."

RESPONSE:


**Request for Production No. 32:** All documents related to your seventeenth affirmative defense that "Plaintiff Relator's claims are barred, in whole or in part, by failure to disclose to the United States substantially all material evidence and information that she possessed in violation of 31 U.S.C. § 3730(b)(2)."

RESPONSE:


**Request for Production No. 33:** All documents related to your eighteenth affirmative defense that "Plaintiff Relator's claims and relief are barred, in whole or in part, because the United States ratified or otherwise consented to the transactions, occurrences, conduct, and submissions that are the subject of this action including by continuing to pay Medicare Advantage plans at a previously determined rate as long as the plans' and their providers' coding error rates did not exceed CMS's own error rate or some other error rate, despite CMS's knowledge that some diagnosis codes are, as a general matter, mistaken or otherwise unsupported."

RESPONSE:


**Request for Production No. 34:** All documents establishing Your document retention policies, including Your policies for retaining electronic documents and

emails, and Your policies for limiting or restricting access to documents after any set period of time (e.g. deleting or restricting user access to emails after a fixed period of months). This includes but is not limited to any Litigation Hold Notices or other changes in policies that were made related to this litigation.

RESPONSE:


Respectfully submitted,

 /s/ Jillian L. Estes

Frederick M. Morgan, Jr. (OH 0027687)
Jennifer M. Verkamp (OH 0067198)
Jillian L. Estes (FL 0055774)
MORGAN VERKAMP LLC
4410 Carver Woods Dr., Suite 200
Cincinnati, OH 45242
Telephone: (513) 651-4400
Fax: (513) 651-4405
Email: rmorgan@morganverkamp.com
jverkamp@morganverkamp.com
jillian.estes@morganverkamp.com

Kenneth J. Nolan (Fla. Bar No. 603406)
Marcella Auerbach (Fla. Bar No. 249335)
NOLAN, AUERBACH & WHITE, LLP
435 N. Andrews Ave., Suite 401
Fort Lauderdale, FL   33301
Phone: (954) 779-3943
Fax: (954) 779-3937
ken@whistleblowerfirm.com
marcellla@whistleblowerfirm.com

Adam T. Rabin (Fla. Bar No. 985635)
Havan M. Clark (Fla. Bar No. 1026390)
RABIN KAMMERER JOHNSON
1601 Forum Place, Suite 201
West Palm Beach, FL 33401

19

Phone: (561) 659-7878
Fax: (561) 242-4848
arabin@rkjlawgroup.com
hclark@rkjlawgroup.com
e-filing@rkjlawgroup.com

*Counsel for Relator Dr. Clarissa Zafirov, M.D.*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the foregoing Requests for Production was served via electronic mail on counsel for all parties of record on this 15th day of December, 2022.

   /s/ Jillian L. Estes
Jillian L. Estes

EXHIBIT A3
RELATOR'S FIRST REQUESTS FOR PRODUCTION TO
FREEDOM HEALTH, INC. and OPTIMUM HEALTHCARE, INC.

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* DR. CLARISSA ZAFIROV, | )<br>)<br>) |
| Plaintiff/Relator | )<br>) |
| v. | )<br>) |
| | ) CASE NO. 8:19-cv-01236 |
| FLORIDA MEDICAL ASSOCIATES, LLC,<br>d/b/a VIPCARE; PHYSICIAN PARTNERS,<br>LLC; ANION TECHNOLOGIES, LLC;<br>FREEDOM HEALTH, INC.; and OPTIMUM<br>HEALTHCARE, INC., | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |
| _____ | ) |

## RELATOR'S FIRST REQUESTS FOR PRODUCTION TO
## FREEDOM HEALTH, INC. and OPTIMUM HEALTHCARE, INC.

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff Clarissa

Zafirov ("Relator" or "Dr. Zafirov"), through the undersigned counsel, hereby

propounds and serves her first set of Requests for Production of Documents ("RFPs")

on Defendants Freedom Health, Inc. and Optimum Healthcare, Inc. (collectively "the

Freedom Defendants"). In accordance with Rules 26 and 34, the Freedom Defendants

shall serve any written objections to these requests within 30 days after service and

shall produce responsive documents within the time provided by the Rules, or as

agreed upon by the parties. The Freedom Defendants shall produce responsive

documents pursuant to any agreed-upon protocol for the production of electronically

stored information and may produce responsive documents which are only available in hard copy to Relator's counsel at Morgan Verkamp, LLC, 4410 Carver Woods Dr., Ste. 200, Cincinnati, OH 45242.

## DEFINITIONS

1.      "You," "your," or "the Freedom Defendants" means Freedom Health, Inc., Optimum Healthcare, Inc., and any and all of the current or former successors, predecessors, facilities, affiliates, divisions, groups, operations, units, and each of their present or former officers, directors, employees, consultants, contractors, agents, or other representatives or agents of each of the entities acting or purporting to act on behalf of any of the entities or under their control.

2.      "Freedom" or "Freedom Health" individually means Freedom Health, Inc., and any and all of the current or former successors, predecessors, facilities, affiliates, divisions, groups, operations, units, and each of their present or former officers, directors, employees, consultants, contractors, agents, or other representatives or agents of each of the entities acting or purporting to act on behalf of any of the entities or under their control.

3.      "Optimum" or "Optimum Healthcare" individually means Optimum Health, Inc., and any and all of the current or former successors, predecessors, facilities, affiliates, divisions, groups, operations, units, and each of their present or former officers, directors, employees, consultants, contractors, agents, or other representatives or agents of each of the entities acting or purporting to act on behalf of any of the entities or under their control.

2

4.      The "Complaint" refers to the Amended Complaint filed in this matter on November 12, 2021 (Doc. 86). If any request intends to refer back to the original complaint filed in this matter on May 20, 2019 (Doc. 1), it will be referred to as the "Original Complaint" or by docket entry.

5.      "Document" or "documents" is used in the broadest sense permitted under the Federal Rules of Civil Procedure and includes electronically stored information and materials that are typed, printed, recorded, reproduced by mechanical process, written by hand, or reproduced by any other means. The term "document" specifically includes, but is not limited to: all drafts, correspondence, emails, communications, reports, studies, memoranda, directives, policies, agendas, minutes, amendments, modifications, changes, and notes, including all non-identical copies such as those that include marginalia or other printed, stamped, or handwritten revisions or notations.

6.      "Communication" or "communications" means the transmission of information between two or more persons (in the form of facts, ideas, inquiries, or otherwise) orally or in writing, and includes any conversation whether face-to-face or by telephone, facsimile, letter, notes of conversations, memorandum, or e-mail message of whatever type or description and on whatever electronic platform, including all handwritten, typed, printed, recorded, transcribed writing or record.

7.      "Including" means including but not limited to.

8.      "Relating to" or "concerning" means consisting of, referring to, describing, discussing, reflecting, citing, pertaining to, evidencing, concerning,

summarizing, or analyzing, whether directly or indirectly, the matter in question, without limitation, unless specifically indicated.

9.     The terms "and" and "or" are to be construed both conjunctively and disjunctively. The word "all" includes "each and every." All words used in the singular also mean their plural and all words used in the plural also mean their singular. All words used in the masculine also include the feminine, and all words used in the feminine also include the masculine.

10.    "Government" means the United States of America and any agency, branch, or department of the United States government, including without limitation, the United States Department of Justice ("DOJ"), the Centers for Medicare and Medicaid Services ("CMS"), the Department of Health and Human Services ("HHS").

11.    "5 Star Checklist" (also called "5 Star Forms") means the form provided to Physician Partners physicians in advance of a patient visit with suggested diagnosis codes to be "evaluate[d], assess[ed], and treat[ed]" by the physician during the scheduled visit. A complete description of the referenced form is in the Complaint at Paragraphs 105-116.

12.    "Chart" or "patient chart" means a patient's medical record held by a provider.

13.    "Chart review" or "chart review program" means the process of reviewing a patient's chart with the purposes of identifying or abstracting diagnosis codes.

14.    "Coder" means an individual who reviews a chart to identify diagnosis codes, if any, supported by information about the patient's medical condition(s) documented in the patient's medical chart and/or who reviews a chart to determine if a diagnosis code is supported by the information in the chart.

15.    "Deleted code" or "deletion" means a diagnosis submitted to RAPS but subsequently identified for any reason to be unsupported by a chart as invalid or otherwise not accurate or truthful.

16.    "Diagnosis code" or "diagnosis coding" mean, as a noun, an ICD-9 or ICD-10 code identifying a specific disease, disease process, injury or other medical condition, and as a verb, the assignment or addition of an ICD-9 or ICD-10 diagnosis code to a patient's medical record or other documents associated with a patient encounter.

17.    "Employee" means any person, manager, officer, or director, including independent contractors, who have acted at your direction, on Your behalf, or has performed any service for You or under Your name (whether on a full-time, part-time, commission, or other basis, or whether paid or unpaid).

18.    "Risk Adjustment Database" means any database or other data submission systems or methods by which You either tracked risk adjustment data or submitted risk adjustment data to CMS, including but not limited to any proprietary or third-party risk adjustment tracking systems used by providers to submit claims and encounter data to You; any of Your databases used to record, analyze, process, prepare, or submit diagnosis codes and other diagnosis information to CMS; and/or

any other of Your databases used to conduct any medical record review, including but not limited to chart reviews.

19.     "Patient," "Beneficiary," or "Member" means an individual enrolled in a Medicare Advantage Plan that You own, control, operate or manage.

## INSTRUCTIONS

1.      If Freedom Health or Optimum Healthcare have different responses to any request, both defendants should respond and state clearly which response pertains to which defendant. Unless otherwise indicated in a response, any response from the Freedom Defendants will be presumed to be responded to by both defendants.

2.      If you assert that part of a document request is objectionable, respond to those remaining parts to which you do not object, state your objection clearly, and specifically identify which part of the request or the response it requires is objectionable and why. Any objections must state whether any responsive materials are being withheld on the basis of that objection.

3.      Unless otherwise agreed upon by the parties, Electronically Stored Information ("ESI") shall be produced in its native format, unless the document cannot be viewed using software manufactured by Microsoft, in which case we request you notify us regarding any such document types. Production in native format should be accompanied by corresponding load files containing each document's extracted or OCR text and the respective metadata fields, and ESI created using spreadsheet software (e.g., Microsoft Excel) shall be produced in native format with its corresponding text and metadata provided in the load file (unless otherwise agreed to

in writing by the parties). In addition, ESI shall be produced in a logically unitized format. Logical unitization of documents requires the producing party to ensure, among other things, that a particular document captures all of its respective pages and that document relationships, such as a "parent" document (e.g., a fax cover sheet) and "children" attachments (e.g., a faxed letter and attachment to the letter), are preserved. All ESI containing text shall be provided in a searchable format whenever possible. All ESI containing images shall be provided with the images in the text in the order in the final form of the document. All ESI shall be produced with all associated metadata. To the extent that information is available in the form of both paper and ESI, the information shall be produced in ESI form, and the paper form shall be maintained during the pendency of the litigation.

4.      If responsive ESI is contained in an electronic data storage system (such as a database or other kind of electronic system for accumulating data), you shall provide a complete and accurate description of the information, such as a data dictionary. This description shall include translation tables for all fields that contain coded values. You shall also provide a description of each file, specifying the scope and time period of the information contained therein. If the information is provided in a generic format, you shall provide a complete and accurate description of the data layout, the control-total information, including the number of records and sums for selected numeric variables, for each file transmitted. If information is transmitted in a proprietary format that is not accessible by publicly available software packages, the software to read the information shall be provided, and any license or other permission

needed to use the software shall be assigned or granted for the duration of this litigation.

5.      To the extent that documents are found in file folders and other similar containers that have labels or other identifying information, the documents shall be produced with such file folder and label intact. To the extent that documents are found attached to other documents, by means of paperclips, staples, or other means of attachment, such documents shall be produced together in their condition when found.

6.      All text communications, including but not limited to instant messages, cell phone messages or social media messages regardless of platform, shall be produced in a manner that indicates the dates of the communications, all recipients of the communication, any attachments to the communications, and with any condensed texts expanded to show the full message. If the communication includes images or attachments, the communication must be produced with the images or attachments in the order that the communication was made.

7.      All responsive documents must be produced in a format that enables counsel to determine the request(s) to which the documents are responsive, including a cover letter which identifies the Bates numbers of the documents in any specific production and the request(s) to which each of those documents are responsive. Any documents produced in electronic format subject to the standards set forth above shall also include a field indicating the responsive request in the corresponding load file in a manner than enables the documents to be sorted by the request(s) to which each document is responsive.

8.      If you contend that a document is protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege, promptly produce a privilege log setting forth the basis of the asserted privilege and include on the log (1) the type of document; (2) the date of the document; (3) the author(s) of the document; (4) an identification of all persons that received a copy of the document; (5) a description of the subject matter of the document; and (6) the privilege being asserted and the basis for the assertion of that privilege. Documents that any party asserts to contain confidential business information or confidential patient health information shall be produced subject to the terms of a Protective Order and shall not be withheld from production on that basis.

9.      If any document requested herein has been lost, discarded, or destroyed, describe it separately, stating: (1) the date of its disposal, destruction or last known location; (2) the manner of its disposal or destruction; (3) all persons having knowledge of its disposal, destruction, or last known location; (4) the persons authorizing its disposal or destruction; (5) the persons disposing of or destroying it; and (6) any document destruction policy pursuant to which the document was destroyed.

10.     Pursuant to Rule 26(e), these document requests are continuing in nature and must be supplemented promptly if you obtain or identify additional responsive documents.

11.     Except as otherwise expressly provided herein, the relevant time period for purposes of these document requests is January 1, 2014, to the present.

## DOCUMENT REQUESTS

**Request for Production No. 1:**  All documents received from or provided by You to the Government relating to any inquiry or investigation by the Government since the filing of the Original Complaint (Doc. 1) or relating to any of the allegations in the Original Complaint or the Complaint (Doc. 86). This request includes, but is not limited to, civil investigative demands ("CIDs"), correspondence pertaining to CIDs, and all responses to CIDs, including written interrogatory responses, all documents produced, and all transcripts of testimony obtained or provided. Responsive documents shall be produced in the same order and manner in which they were produced to the Government (and thus shall reflect any Bates numbers on such production to the Government).

RESPONSE:


**Request for Production No. 2:**  All documents identified in your Rule 26(a)(1) initial disclosures.

RESPONSE:


**Request for Production No. 3:**  All personnel files, performance evaluations or ratings, and materials related to the calculation of compensation (including bonuses) for any of the Freedom Defendants' employees identified in any party's original or amended Rule 26 disclosures.

RESPONSE:

**Request for Production No. 4:**  All documents which refer to or relate to each patient identified in the Complaint.

RESPONSE:


**Request for Production No. 5:**  All contracts between You and the United States of America pursuant to which You act as Medicare Advantage Organizations.

RESPONSE:


**Request for Production No. 6:**  All contracts between You and any provider organizations pursuant to which you act as a Medicare Advantage Organization to provide insurance coverage to the provider's patients. This request specifically includes, but is not limited to, agreements which are referred to as Group Participation Agreements as set forth in Paragraphs 180 and 183 of your Answer to the Complaint (Doc. 130).

RESPONSE:


**Request for Production No. 7:**  All contracts between You and any entity pursuant to which You and the entity exchange remuneration for services related to Your obligations as a Medicare Advantage Organization. This request specifically includes, but is not limited to, agreements which are referred to as Business Associate

Agreements, as set forth in Paragraph 180 of your Answer to the Complaint (Doc. 130).

RESPONSE:

**Request for Production No. 8:** All documents related to requirements, guidelines, rules, or standards for Your risk adjustment program and the submission of claims to the United States pursuant to Medicare Part C, or the Medicare Advantage Program. This request includes but is not limited to medical standards for the usage of specific diagnosis codes; training or educational materials about how and under what circumstances any diagnosis codes can be submitted to CMS, including what support must be identified in a patient's chart for such a submission; and/or any documents related to the consequences of failure to adhere to any guidelines, rules, or standards related to risk adjustment and submissions to the United States.

RESPONSE:

**Request for Production No. 9:** All documents sufficient to identify every payment that You have received from the United States of America for enrolled Medicare Advantage beneficiaries (often known as a capitation payment), including without limitation the monthly payments referenced in Paragraph 181 of your Answer to the Complaint (Doc. 130).

RESPONSE:

**<u>Request for Production No. 10:</u>** All documents sufficient to identify every claim which resulted in any payments produced in response to Request for Production No. 9.

RESPONSE:


**<u>Request for Production No. 11:</u>** All documents sufficient to identify all claims which were submitted to the United States which were later resubmitted with a deletion to remove a diagnosis code which had been appended to the earlier claim.

RESPONSE:


**<u>Request for Production No. 12:</u>** All documents sufficient to identify all diagnosis codes submitted to You by any provider. Any response to this request should provide information sufficient to identify, at least, the patient, the date of service on which the diagnosis was rendered, the date that the code was submitted to You, and the provider who is identified as having submitted the diagnosis code, and any unique code identifier by which the code can be traced throughout Your risk management database.

RESPONSE:


**<u>Request for Production No. 13:</u>** All documents sufficient to identify any claims identified in Request for Production No. 12 which You rejected, deleted,

returned to the provider, or denied payment for any reason, including the basis for any such rejection, deletion, return, or denial.

RESPONSE:

**Request for Production No. 14:** All documents sufficient to identify all diagnosis codes submitted by You to the United States. Any response to this request shall provide information sufficient to identify, at least, the patient, the date on which the code was submitted by You to the United States, and any unique identifier by which the code can be traced throughout Your risk management database.

RESPONSE:

**Request for Production No. 15:** All documents sufficient to identify any claims identified in Request for Production No. 14 which the United States rejected, deleted, returned to You, or denied payment for any reason, including the basis for any such rejection, deletion, return, or denial.

RESPONSE:

**Request for Production No. 16:** All documents related to any report, review, audit, or other document evaluating your Medicare risk adjustment program. This request includes but is not limited to any corrective action plans that resulted from any such report, review, audit, or document.

RESPONSE:

**Request for Production No. 17:** All documents related to any report, review, audit, or other document evaluating the financial impact of increasing or attempting to increase Your average risk adjustment scores for Medicare Advantage beneficiaries.

RESPONSE:

**Request for Production No. 18:** All documents related to risk adjustment goals establishing minimum or target risk adjustment scores for Your beneficiaries, either individually, categorically, or in entirety. This request includes, but is not limited to, risk adjustment score cards, employee bonus structures which include or contemplate risk adjustment scores, training materials, compliance policies, and/or employee improvement plans related to risk scores.

RESPONSE:

**Request for Production No. 19:** All documents related to remuneration or incentives (including, but not limited to bonuses, monetary payments, gift cards, salary adjustments, or in-kind services) made available or paid to Your providers based on the number, rate, or other quality metric of diagnoses the provider enters into patients' medical records.

RESPONSE:

**Request for Production No. 20:** All documents related to the production of all "Five Star University" videos published on the Physician Partners intranet, including without limitation, any contracts to produce such videos, documents reflecting payments made for any persons involved in the production of such videos, scripts (including drafts), documents used or referenced in the videos, and copies of all videos which have, at any time, been published online or shown to providers during any meeting, training, or boot camp session held, sponsored, co-sponsored, endorsed or attended by the Freedom Defendants.

RESPONSE:

**Request for Production No. 21:** All documents related to the *Quality Training Manual* ("QTM") provided to Physician Partners physicians, including without limitation, any contracts to produce and publish such manual, a complete copy of each final version which has been produced and distributed, all drafts and revisions of all versions of the QTM, and all communications relating to the content, publication, or distribution of the QTM.

RESPONSE:

**Request for Production No. 22:** All documents related to the *Medicare Provider Manual* available on Your websites, including without limitation, any contracts to produce and publish such manual, a complete copy of each final version which has been produced and distributed, all drafts and revisions of all versions of the Medicare

16

Provider Manual, and all communications relating to the content, publication, or distribution of the Medicare Provider Manual.

RESPONSE:

**Request for Production No. 23:** All communications sent by any employee of the Freedom Defendants to Dr. Clarissa Zafirov, received by any employee of the Freedom Defendants from Dr. Zafirov, or which relate in any way to Dr. Zafirov.

RESPONSE:

**Request for Production No. 24:** Documents sufficient to identify the officers, managers, employees, and contractors of the Freedom Defendants for each year of the relevant time frame, including without limitation, directories, rosters, and organizational charts.

RESPONSE:

**Request for Production No. 25:** All contracts or agreements between You and (1) Florida Medical Associates, LLC d/b/a VIPcare; (2) Physician Partners, LLC; and (3) Anion Technologies, LLC.

RESPONSE:

**Request for Production No. 26:** All communications regarding Medicare risk adjustment scores, diagnosis codes, the Medicare risk adjustment system in general,

or 5 Star Checklists between You and any employee of (1) Florida Medical Associates, LLC d/b/a VIPcare; (2) Physician Partners, LLC; and (3) Anion Technologies, LLC.

RESPONSE:


**Request for Production No. 27:** All documents related to Your review, tracking, or assessment of the total average Medicare Risk Adjustment Score of any patient or any physician's patient panel, including without limitation, any reports generated which identified a patient or patient panel's risk adjustment score, any communications between You and any physician about their patient or patient panel's risk adjustment score.

RESPONSE:


**Request for Production No. 28:** All documents related to any report, review, audit, or other document provided to any physician which relates to trends in the physician's usage of any diagnosis code. This request includes but is not limited to any corrective action plans that resulted from any such report, review, audit, or document.

RESPONSE:

**Request for Production No. 29:** All audio or audiovisual recordings of any of Your meetings, training or boot camp sessions which discussed, referenced, or related to Medicare risk adjustment scores, diagnosis codes, the Medicare risk adjustment system in general, or 5 Star Checklists.

RESPONSE:


**Request for Production No. 30:** All documents related to Your affirmative defense that "Relator's claims are barred, in whole or in part, by the applicable statute of limitations."

RESPONSE:


**Request for Production No. 31:** All documents related to Your affirmative defense that "Relator's claims are barred, in whole or in part, by the doctrine of laches."

RESPONSE:


**Request for Production No. 32:** All documents related to Your affirmative defense that "Relator's claims are barred, in whole or in part, by the doctrine of waiver."

RESPONSE:

**Request for Production No. 33:** All documents related to Your affirmative defense that "Relator's claims are barred, in whole or in part, by the doctrine of estoppel."

RESPONSE:


**Request for Production No. 34:** All documents related to Your affirmative defense that "Relator's claims are barred, in whole or in part, by her failure to mitigate damages."

RESPONSE:


**Request for Production No. 35:** All documents related to your affirmative defense that "Relator's claims are barred, in whole or in part, by the doctrines of course of performance, course of dealing, and usage of trade, which govern the meaning of any contractual agreement under which Freedom Defendants received payment by the United States."

RESPONSE:


**Request for Production No. 36:** All documents related to your affirmative defense that "Relator's claims are barred, in whole or in part, by failure to disclose to the United States 'substantially all material evidence and information' that she possessed in violation of 31 U.S.C. § 3730(b)(2)."

RESPONSE:

**Request for Production No. 37:** All documents related to your affirmative defense that "Damages and claims for which Relator seeks relief in the FAC, if any, were caused and/or contributed to by the acts, errors, or omissions or otherwise the fault of third parties, for whose conduct Freedom Defendants are not responsible."

RESPONSE:


**Request for Production No. 38:** All documents related to your affirmative defense that "The United States did not suffer actual injury as it ratified, or otherwise consented to, the transactions and occurrences that are the subject of this action, by continuing to pay MA Plans as a previously determined rate as long as the plans' diagnosis coding error rates did not exceed CMS's own error rate, despite CMS's knowledge that some diagnosis codes were unsupported."

RESPONSE:


**Request for Production No. 39:** All documents establishing Your document retention policies, including Your policies for retaining electronic documents and emails, and Your policies for limiting or restricting access to documents after any set period of time (e.g. deleting or restricting user access to emails after a fixed period of months). This includes but is not limited to any Litigation Hold Notices or other changes in policies that were made related to this litigation.

RESPONSE:

Respectfully submitted,

 /s/ Jillian L. Estes

Frederick M. Morgan, Jr. (OH 0027687)
Jennifer M. Verkamp (OH 0067198)
Jillian L. Estes (FL 0055774)
MORGAN VERKAMP LLC
4410 Carver Woods Dr., Suite 200
Cincinnati, OH 45242
Telephone: (513) 651-4400
Fax: (513) 651-4405
Email: rmorgan@morganverkamp.com
jverkamp@morganverkamp.com
jillian.estes@morganverkamp.com

Kenneth J. Nolan (Fla. Bar No. 603406)
Marcella Auerbach (Fla. Bar No. 249335)
NOLAN, AUERBACH & WHITE, LLP
435 N. Andrews Ave., Suite 401
Fort Lauderdale, FL   33301
Phone: (954) 779-3943
Fax: (954) 779-3937
ken@whistleblowerfirm.com
marcellla@whistleblowerfirm.com

Adam T. Rabin (Fla. Bar No. 985635)
Havan M. Clark (Fla. Bar No. 1026390)
RABIN KAMMERER JOHNSON
1601 Forum Place, Suite 201
West Palm Beach, FL 33401
Phone: (561) 659-7878
Fax: (561) 242-4848
arabin@rkjlawgroup.com
hclark@rkjlawgroup.com
e-filing@rkjlawgroup.com

*Counsel for Relator Dr. Clarissa Zafirov, M.D.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Requests for Production was served via electronic mail on counsel for all parties of record on this 15th day of December, 2022.

 /s/ Jillian L. Estes
Jillian L. Estes

EXHIBIT A4
RELATOR'S FIRST REQUESTS FOR PRODUCTION TO
PHYSICIAN PARTNERS, LLC

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* DR. CLARISSA ZAFIROV,<br><br>    Plaintiff/Relator<br><br>v.<br><br>FLORIDA MEDICAL ASSOCIATES, LLC,<br>d/b/a VIPCARE; PHYSICIAN PARTNERS,<br>LLC; ANION TECHNOLOGIES, LLC;<br>FREEDOM HEALTH, INC.; and OPTIMUM<br>HEALTHCARE, INC.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) CASE NO. 8:19-cv-01236<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## RELATOR'S FIRST REQUESTS FOR PRODUCTION TO PHYSICIAN PARTNERS, LLC

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff Clarissa Zafirov ("Relator" or "Dr. Zafirov"), through the undersigned counsel, hereby propounds and serves her first set of Requests for Production of Documents ("RFPs") on Defendant Physician Partners, LLC ("Physician Partners"). In accordance with Rules 26 and 34, Physician Partners shall serve any written objections to these requests within 30 days after service and shall produce responsive documents within the time provided by the Rules, or as agreed upon by the parties. Physician Partners shall produce responsive documents pursuant to an agreed-upon protocol for the production of electronically stored information and may produce responsive documents which are

only available in hard copy to Relator's counsel at Morgan Verkamp, LLC, 4410 Carver Woods Dr., Ste. 200, Cincinnati, OH 45242.

## DEFINITIONS

1.      "You," "your," or "Physician Partners" means Physician Partners, LLC, including any and all of the current or former successors, predecessors, facilities, affiliates, divisions, groups, operations, units, and each of their present or former officers, directors, employees, consultants, contractors, agents, or other representatives or agents of each of the entities acting or purporting to act on behalf of any of the entities or under their control.

2.      The "Complaint" refers to the Amended Complaint filed in this matter on November 12, 2021 (Doc. 86). If any request intends to refer back to the original complaint filed in this matter on May 20, 2019 (Doc. 1), it will be referred to as the "Original Complaint" or by docket entry.

3.      "Document" or "documents" is used in the broadest sense permitted under the Federal Rules of Civil Procedure and includes electronically stored information and materials that are typed, printed, recorded, reproduced by mechanical process, written by hand, or reproduced by any other means. The term "document" specifically includes, but is not limited to: all drafts, correspondence, emails, communications, reports, studies, memoranda, directives, policies, agendas, minutes, amendments, modifications, changes, and notes, including all non-identical copies such as those that include marginalia or other printed, stamped, or handwritten revisions or notations.

4.      "Communication" or "communications" means the transmission of information between two or more persons (in the form of facts, ideas, inquiries, or otherwise) orally or in writing, and includes any conversation whether face-to-face or by telephone, facsimile, letter, notes of conversations, memorandum, or e-mail message of whatever type or description and on whatever electronic platform, including all handwritten, typed, printed, recorded, transcribed writing or record.

5.      "Including" means including but not limited to.

6.      "Relating to" or "concerning" means consisting of, referring to, describing, discussing, reflecting, citing, pertaining to, evidencing, concerning, summarizing, or analyzing, whether directly or indirectly, the matter in question, without limitation, unless specifically indicated.

7.      The terms "and" and "or" are to be construed both conjunctively and disjunctively. The word "all" includes "each and every." All words used in the singular also mean their plural and all words used in the plural also mean their singular. All words used in the masculine also include the feminine, and all words used in the feminine also include the masculine.

8.      "Government" means the United States of America and any agency, branch, or department of the United States government, including without limitation, the United States Department of Justice ("DOJ"), the Centers for Medicare and Medicaid Services ("CMS"), the Department of Health and Human Services ("HHS").

9.      "5 Star Checklist" (also called "5 Star Forms") means the form provided to Physician Partners physicians in advance of a patient visit with suggested diagnosis codes to be "evaluate[d], assess[ed], and treat[ed]" by the physician during the scheduled visit. A complete description of the referenced form is in the Complaint at Paragraphs 105-116.

10.      "Chart" or "patient chart" means a patient's medical record held by a provider.

11.      "Chart review" or "chart review program" means the process of reviewing a patient's chart with the purposes of identifying or abstracting diagnosis codes.

12.      "Coder" means an individual who reviews a chart to identify diagnosis codes, if any, supported by information about the patient's medical condition(s) documented in the patient's medical chart and/or who reviews a chart to determine if a diagnosis code is supported by the information in the chart.

13.      "Deleted code" or "deletion" means a diagnosis submitted to RAPS but subsequently identified for any reason to be unsupported by a chart as invalid or otherwise not accurate or truthful.

14.      "Diagnosis code" or "diagnosis coding" mean, as a noun, an ICD-9 or ICD-10 code identifying a specific disease, disease process, injury or other medical condition, and as a verb, the assignment or addition of an ICD-9 or ICD-10 diagnosis code to a patient's medical record or other documents associated with a patient encounter.

15.     "Employee" means any person, manager, officer, or director, including independent contractors, who have acted at your direction, on Your behalf, or has performed any service for You or under Your name (whether on a full-time, part-time, commission, or other basis, or whether paid or unpaid).

16.     "Risk Adjustment Database" means any database or other data submission systems or methods by which You either tracked risk adjustment data or submitted risk adjustment data to CMS, including but not limited to any proprietary or third-party risk adjustment tracking systems used by providers to submit claims and encounter data to You; any of Your databases used to record, analyze, process, prepare, or submit diagnosis codes and other diagnosis information to CMS; and/or any other of Your databases used to conduct any medical record review, including but not limited to chart reviews.

17.     "Patient" means any individual who has received medical care.

18.     "Physician Partners physician" means any physician who is either (1) employed by Physician Partners, or (2) who associated with Physician Partners through a practice management contract or any other similar relationship other than an employment contract. If any request intends to distinguish between the two groups of physicians described herein, it will so specify.

## INSTRUCTIONS

1.     If you assert that part of a document request is objectionable, respond to those remaining parts to which you do not object, state your objection clearly, and specifically identify which part of the request or the response it requires is objectionable

and why. Any objections must state whether any responsive materials are being withheld on the basis of that objection.

2.      Unless otherwise agreed upon by the parties, Electronically Stored Information ("ESI") shall be produced in its native format, unless the document cannot be viewed using software manufactured by Microsoft, in which case we request you notify us regarding any such document types. Production in native format should be accompanied by corresponding load files containing each document's extracted or OCR text and the respective metadata fields, and ESI created using spreadsheet software (e.g., Microsoft Excel) shall be produced in native format with its corresponding text and metadata provided in the load file (unless otherwise agreed to in writing by the parties). In addition, ESI shall be produced in a logically unitized format. Logical unitization of documents requires the producing party to ensure, among other things, that a particular document captures all of its respective pages and that document relationships, such as a "parent" document (e.g., a fax cover sheet) and "children" attachments (e.g., a faxed letter and attachment to the letter), are preserved. All ESI containing text shall be provided in a searchable format whenever possible. All ESI shall be produced with all associated metadata. To the extent that information is available in the form of both paper and ESI, the information shall be produced in ESI form, and the paper form shall be maintained during the pendency of the litigation.

3.      If responsive ESI is contained in an electronic data storage system (such as a database or other kind of electronic system for accumulating data), you shall provide a complete and accurate description of the information, such as a data

dictionary. This description shall include translation tables for all fields that contain coded values. You shall also provide a description of each file, specifying the scope and time period of the information contained therein. If the information is provided in a generic format, you shall provide a complete and accurate description of the data layout, the control-total information, including the number of records and sums for selected numeric variables, for each file transmitted. If information is transmitted in a proprietary format that is not accessible by publicly available software packages, the software to read the information shall be provided, and any license or other permission needed to use the software shall be assigned or granted for the duration of this litigation.

4.      To the extent that documents are found in file folders and other similar containers that have labels or other identifying information, the documents shall be produced with such file folder and label intact. To the extent that documents are found attached to other documents, by means of paperclips, staples, or other means of attachment, such documents shall be produced together in their condition when found.

5.      All text communications, including but not limited to instant messages, cell phone messages or social media messages regardless of platform, shall be produced in a manner that indicates the dates of the communications, all recipients of the communication, any attachments to the communications, and with any condensed texts expanded to show the full message. If the communication includes images or attachments, the communication must be produced with the images or attachments in the order that the communication was made.

6.     All responsive documents must be produced in a format that enables counsel to determine the request(s) to which the documents are responsive, including a cover letter which identifies the Bates numbers of the documents in any specific production and the request(s) to which each of those documents are responsive. Any documents produced in electronic format subject to the standards set forth above shall also include a field indicating the responsive request in the corresponding load file in a manner than enables the documents to be sorted by the request(s) to which each document is responsive.

7.     If you contend that a document is protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege, promptly produce a privilege log setting forth the basis of the asserted privilege and include on the log (1) the type of document; (2) the date of the document; (3) the author(s) of the document; (4) an identification of all persons that received a copy of the document; (5) a description of the subject matter of the document; and (6) the privilege being asserted and the basis for the assertion of that privilege. Documents that any party asserts to contain confidential business information or confidential patient health information shall be produced subject to the terms of a Protective Order and shall not be withheld from production on that basis.

8.     If any document requested herein has been lost, discarded, or destroyed, describe it separately, stating: (1) the date of its disposal, destruction or last known location; (2) the manner of its disposal or destruction; (3) all persons having knowledge of its disposal, destruction, or last known location; (4) the persons authorizing its

disposal or destruction; (5) the persons disposing of or destroying it; and (6) any document destruction policy pursuant to which the document was destroyed.

9.      Pursuant to Rule 26(e), these document requests are continuing in nature and must be supplemented promptly if you obtain or identify additional responsive documents.

10.      Except as otherwise expressly provided herein, the relevant time period for purposes of these document requests is January 1, 2014, to the present.

## DOCUMENT REQUESTS

**Request for Production No. 1:**  All documents received from or provided by you to the Government relating to any inquiry or investigation by the Government since the filing of the Original Complaint (Doc. 1) or relating to any of the allegations in the Original Complaint or the Complaint (Doc. 86). This request includes, but is not limited to, civil investigative demands ("CIDs"), correspondence pertaining to CIDs, and all responses to CIDs, including written interrogatory responses, all documents produced, and all transcripts of testimony obtained or provided. Responsive documents shall be produced in the same order and manner in which they were produced to the Government (and thus shall reflect any Bates numbers on such production to the Government).

RESPONSE:


**Request for Production No. 2:**  All documents identified in your Rule 26(a)(1) initial disclosures.

RESPONSE:


**Request for Production No. 3:**   All personnel files, performance evaluations or ratings, and materials related to the calculation of compensation (including bonuses) for any Physician Partners employees identified in any party's original or amended Rule 26 disclosures.

RESPONSE:


**Request for Production No. 4:**   All documents which refer to or relate to each Physician Partner's patient identified in the Complaint.

RESPONSE:


**Request for Production No. 5:**   All contracts or agreements pursuant to which Physician Partners receives a capitated payment related to any Government health care program.

RESPONSE:


**Request for Production No. 6:**   All documents sufficient to identify the claims submitted, or caused to be submitted, by Physician Partners related to any Government health care program, whether the claims were submitted directly to the United States or to any other entity acting on behalf of or at the direction of the United States, including any Medicare Advantage organizations.

RESPONSE:


**Request for Production No. 7:** All documents sufficient to identify the payments received by Physician Partners related to any Government health care program, whether the payments were received directly from the United States or to any other entity acting on behalf of or at the direction of the United States, including any Medicare Advantage organization.

RESPONSE:


**Request for Production No. 8:** All documents sufficient to identify all repayments made to any Government health care program for the return of any payments, in whole or in part, identified in Request for Production No. 7.

RESPONSE:


**Request for Production No. 9:** All documents related to Dr. Clarissa Zafirov's employment as a Physician Partners physician, including without limitation, her hiring, her job performance, bonuses and awards provided to Dr. Zafirov during her employment, any disciplinary measures issued to Dr. Zafirov during her employment, her complete personnel file, communications or writings of any sort sent by any Physician Partners employee to Dr. Zafirov, received by any Physician Partners employee from Dr. Zafirov, or which relate in any way to Dr. Zafirov, and the repayment of Dr. Zafirov's hiring bonus after her employment ended.

RESPONSE:


**Request for Production No. 10:** Documents sufficient to identify the officers, managers, employees, and contractors of Physician Partners for each year of the relevant time frame, including without limitation directories, rosters, and organizational charts.

RESPONSE:


**Request for Production No. 11:** All documents provided to Kinderhook Industries, or any entity acting on behalf of or for the benefit of Kinderhook Industries, related to Kinderhook's investment in Physician Partners in or around February 1, 2022.

RESPONSE:


**Request for Production No. 12:** All contracts or agreements between Physician Partners and (1) Florida Medical Associates, LLC d/b/a VIPcare; (2) Anion Technologies, LLC.; (3) Freedom Health, Inc.; (4) Optimum Health, Inc.; (5) any other entity which provides management, management support, chart review, billing, payroll, or other financial services to Physician Partners; and (6) any other Medicare Advantage Organization.

RESPONSE:

**Request for Production No. 13:** All communications regarding Medicare risk adjustment scores between Physician Partners and any employee of (1) Florida Medical Associates, LLC d/b/a VIPcare; (2) Anion Technologies, LLC; (3) Freedom Health, Inc.; (4) Optimum Health, Inc.; (5) any other entity which provides management, management support, chart review, billing, payroll, or other financial services to Physician Partners; and (6) any other Medicare Advantage Organization.

RESPONSE:


**Request for Production No. 14:** All communications regarding Medicare risk adjustment scores between Physician Partners and the United States of America or the State of Florida.

RESPONSE:


**Request for Production No. 15:** All documents in which Physician Partners, or any entity acting on behalf of or at the direction of Physician Partners, audited, examined, or evaluated the monetary impact of diagnosis code revisions, changes or additions resulting from the use of 5 Star Checklists.

RESPONSE:


**Request for Production No. 16:** All documents in which Physician Partners, or any entity acting on behalf of or at the direction of Physician Partners, audited, examined, or evaluated the monetary impact of diagnosis code revisions, changes or

additions resulting from the use of chart reviews after the providing physician has submitted initial diagnosis codes related to a patient visit.

RESPONSE:


**Request for Production No. 17:** All documents in which Physician Partners, or any entity acting on behalf of or at the direction of Physician Partners, audited, examined, or evaluated any policies, practices or procedures which relate to or involve claims submitted to the Medicare Advantage system.

RESPONSE:


**Request for Production No. 18:** All documents relating to the compensation structure for all current and former Physician Partner's employed physicians, including but not limited to base compensation rates and bonus structure. To the extent there are various compensation structures for different physicians or across the time period, this request specifically includes documents sufficient to identify each iteration of any compensation structure which has been employed for Physician Partners' employed physicians.

RESPONSE:


**Request for Production No. 19:** All documents relating to the compensation structure for physicians currently or formerly associated with Physician Partners through a practice management contract or any other similar relationship other than

an employment contract, including but not limited to base compensation rates and bonus structure. To the extent there are various compensation structures for different physicians or across the time period, this request specifically includes documents sufficient to identify each iteration of any compensation structure which has been employed for physicians associated with Physician Partners through a practice management contract or any other similar relationship other than an employment contract.

RESPONSE:

**Request for Production No. 20:** All documents related to Physician Partner's review, tracking, or assessment of the total average Medicare Risk Adjustment Score of any Physician Partners physician's patient or patient panel, including without limitation, any reports generated for any Physician Partners physician which identified their patient panel's risk adjustment score, any communications between Physician Partners and any Physician Partners physician about their patient panel's risk adjustment score, any bonuses or other incentives of any kind offered or distributed as a result of a Physician Partners physician's patient panel's risk adjustment score, and any disciplinary measures contemplated or taken as a result of a Physician Partners physician's patient panel's risk adjustment score.

RESPONSE:

**Request for Production No. 21:** Any report, memorandum, review, audit, communication, or other document which relates to trends in Physician Partners' usage of any diagnosis code.

RESPONSE:


**Request for Production No. 22:** All documents related to the production of all "Five Star University" videos, including without limitation, any contracts to produce such videos, documents reflecting payments made for any persons involved in the production of such videos, scripts (including drafts), documents used or referenced in the videos, and copies of all videos which have, at any time, been published online or shown to providers during a Physician Partners meeting, training, or boot camp session.

RESPONSE:


**Request for Production No. 23:** All documents related to the *Quality Training Manual* ("QTM") provided to Physician Partners physicians, including without limitation, any contracts to produce and publish such manual, a complete copy of each final version which has been produced and distributed, all drafts and revisions of all versions of the QTM, and all communications relating to the content, publication, or distribution of the QTM.

RESPONSE:

16

**Request for Production No. 24:** All descriptions, rules, instructions, guidance, or other information provided to VIPcare physicians regarding 5 Star Checklists, including without limitation how the 5 Star Checklists are made, how they are used, how often they must be used, and how they are to be processed and retained after a patient visit, including without limitation whether they are part of the patient's medical record.

RESPONSE:

**Request for Production No. 25:** All audio or audiovisual recordings of any Physician Partners meeting, training or boot camp session which discussed, referenced, or related to Medicare risk adjustment scores, diagnosis codes, the Medicare risk adjustment system in general, or 5 Star Checklists.

RESPONSE:

**Request for Production No. 26:** All communications between each of the following persons or groups of people and any Physician Partners physician which discussed, referenced, or related to Medicare risk adjustment scores, diagnosis codes, "care gaps," 5 Star Checklists, or any variable compensation (including but not limited to bonus payments):

A. Siddhartha Pagidipati;

B. Sangeeta Hans;

C. Emily Gallman;

17

D. Dan Kolefrath;

E. Alex Lavin;

F. Sajitha Johnson;

G. Any Physician Partners employee whose job title is Quality Analyst, or who works at the direction, instruction, or oversight of an employee whose job title is Quality Analyst;

H. Any Anion employee who is a member of the "review team" referenced in the Physician Partners *Quality Training Manual* as described in Paragraph 113 of the Complaint.

RESPONSE:


**Request for Production No. 27:** All documents related to your third affirmative defense that "Plaintiff Relator's claims are barred, in whole or in part, by the applicable statute of limitations."

RESPONSE:


**Request for Production No. 28:** All documents related to your fourth affirmative defense that "Plaintiff Relator's claims for damages are barred by the fact that the United States has suffered no actual damages."

RESPONSE:

18

**Request for Production No. 29:** All documents related to your fifth affirmative defense that "Plaintiff Relator's claims are barred, in whole or in part, as a result of set-off due to monies previously paid by the Provider Defendants."

RESPONSE:


**Request for Production No. 30:** All documents related to your sixth affirmative defense that "Plaintiff Relator's claims are barred, in whole or in part, to the extent that they have been released, settled, resolved through an accord and satisfaction, waived, or otherwise compromised."

RESPONSE:


**Request for Production No. 31:** All documents related to your seventh affirmative defense that "Plaintiff Relator's claims are barred, in whole or in part, under the doctrine of estoppel."

RESPONSE:


**Request for Production No. 32:** All documents related to your eighth affirmative defense that "Plaintiff Relator's claims are barred by the Government's prior knowledge of the facts underlying the allegedly false claims."

RESPONSE:

19

**Request for Production No. 33:** All documents related to your eleventh affirmative defense that "Plaintiff Relator's claims are barred by the jurisdictional requirements of 31 U.S.C. § 3730."

RESPONSE:


**Request for Production No. 34:** All documents related to your twelfth affirmative defense that "Plaintiff Relator's claims are barred, in whole or in part, by the doctrine of waiver."

RESPONSE:


**Request for Production No. 35:** All documents related to your thirteenth affirmative defense that "Plaintiff Relator's claims are barred, in whole or in part, by the doctrine of laches."

RESPONSE:


**Request for Production No. 36:** All documents related to your fourteenth affirmative defense that "Plaintiff Relator's claims are barred, in whole or in part, by her failure to mitigate damages."

RESPONSE:


**Request for Production No. 37:** All documents related to your fifteenth affirmative defense that "Plaintiff Relator's claims, damages, and relief, to the extent

Plaintiff Relator is entitled to any damages or relief, were caused or contributed to by the acts, errors, or omissions of third-parties and nonparties for which the Provider Defendants were not responsible or lacked control."

RESPONSE:


**Request for Production No. 38:** All documents related to your sixteenth affirmative defense that "Plaintiff Relator's claims are governed by the doctrines of course of performance, course of dealing, and usage of trade, which govern the meaning of any contractual agreement or course of conduct between the United States and Defendants."

RESPONSE:


**Request for Production No. 39:** All documents related to your seventeenth affirmative defense that "Plaintiff Relator's claims are barred, in whole or in part, by failure to disclose to the United States substantially all material evidence and information that she possessed in violation of 31 U.S.C. § 3730(b)(2)."

RESPONSE:


**Request for Production No. 40:** All documents related to your eighteenth affirmative defense that "Plaintiff Relator's claims and relief are barred, in whole or in part, because the United States ratified or otherwise consented to the transactions, occurrences, conduct, and submissions that are the subject of this action including by

continuing to pay Medicare Advantage plans at a previously determined rate as long as the plans' and their providers' coding error rates did not exceed CMS's own error rate or some other error rate, despite CMS's knowledge that some diagnosis codes are, as a general matter, mistaken or otherwise unsupported."

RESPONSE:


**Request for Production No. 41:** All documents establishing Your document retention policies, including Your policies for retaining electronic documents and emails, and Your policies for limiting or restricting access to documents after any set period of time (e.g. deleting or restricting user access to emails after a fixed period of months). This includes but is not limited to any Litigation Hold Notices or other changes in policies that were made related to this litigation.

RESPONSE:


Respectfully submitted,

 /s/ Jillian L. Estes

Frederick M. Morgan, Jr. (OH 0027687)
Jennifer M. Verkamp (OH 0067198)
Jillian L. Estes (FL 0055774)
MORGAN VERKAMP LLC
4410 Carver Woods Dr., Suite 200
Cincinnati, OH 45242
Telephone: (513) 651-4400
Fax: (513) 651-4405
Email: rmorgan@morganverkamp.com
jverkamp@morganverkamp.com
jillian.estes@morganverkamp.com

Kenneth J. Nolan (Fla. Bar No. 603406)
Marcella Auerbach (Fla. Bar No. 249335)
NOLAN, AUERBACH & WHITE, LLP
435 N. Andrews Ave., Suite 401
Fort Lauderdale, FL   33301
Phone: (954) 779-3943
Fax: (954) 779-3937
ken@whistleblowerfirm.com
marcellla@whistleblowerfirm.com

Adam T. Rabin (Fla. Bar No. 985635)
Havan M. Clark (Fla. Bar No. 1026390)
RABIN KAMMERER JOHNSON
1601 Forum Place, Suite 201
West Palm Beach, FL 33401
Phone: (561) 659-7878
Fax: (561) 242-4848
arabin@rkjlawgroup.com
hclark@rkjlawgroup.com
e-filing@rkjlawgroup.com

*Counsel for Relator Dr. Clarissa Zafirov, M.D.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Requests for Production was served via electronic mail on counsel for all parties of record on this 15th day of December, 2022.

 /s/ Jillian L. Estes
Jillian L. Estes

23