UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

United States of America
*ex rel.* Clarissa Zafirov,

    Relator/Plaintiff,

v.                                             CASE NO. 8:19-cv-01236-KKM-SPF

Physician Partners, LLC;
Florida Medical Associates, LLC
d/b/a VIPcare;
Anion Technologies, LLC;
Freedom Health, Inc.; and
Optimum Healthcare, Inc.,

    Defendants.
_____/

**DEFENDANTS' OPPOSITION TO MOTION TO COMPEL**

    Physician Partners, LLC, Florida Medical Associates, LLC d/b/a VIPcare, and Anion Technologies, LLC ("Provider Defendants"), along with Freedom Health, Inc. and Optimum Healthcare, Inc. ("Freedom Defendants") (altogether, "Defendants") oppose Relator Clarissa Zafirov's motion to compel the production of materials spanning an almost nine-year period. The motion is based on inapposite out-of-circuit precedent that contradicts multiple decisions from this Court.

    Zafirov's proposed discovery period is untethered to the substantive allegations in the Amended Complaint. It commences shortly after the statute of limitations and reaches all the way to September 2022, an end date that is based entirely on Zafirov's

failure to properly state a claim in her first complaint. Zafirov—who worked for Physician Partners for approximately 18 months—seeks almost nine years' worth of communications and business records, including materials potentially relating to over *4 million* diagnosis codes. Compelling production in accordance with Zafirov's demand would disproportionally and unduly burden Defendants.

Defendants ask the Court to impose a discovery period beginning no earlier than January 1, 2017 and ending no later than December 31, 2020. Defendants' proposed discovery period adds a full year on either side of the earliest and latest allegedly false diagnosis codes submitted by Provider Defendants on behalf of Freedom Defendants' members. Defendants' proposed discovery period is consistent with the Federal Rules, which instruct that the resolution of disputes be just, speedy, and inexpensive, and that discovery demands be proportional. *See* FED. R. CIV. P. 1, 26(b)(1).

## BACKGROUND

The crux of Zafirov's claims is that Freedom Defendants and Provider Defendants "worked in tandem to bilk the United States out of millions of dollars in artificially-increased capitation payments." (Doc. 86 ¶ 1.) She alleges that Provider Defendants "submitted unsupported diagnosis codes to Freedom and Optimum, who encouraged and accepted the inflated codes, and then paid Physician Partners with the United States' money." (*Id.*) Given these allegations, the only diagnosis codes relevant to Relator's claims are those diagnosis codes that were sent from Provider Defendants to Freedom Defendants and thereafter submitted to the United States.

2

Zafirov alleges that she learned of this purported scheme when she worked for Defendant Florida Medical Associates, LLC d/b/a VIPcare ("VIPcare")[1] from October 2018 through March 2020. During that time, she alleges, she had full access to Provider Defendants' billing system, which housed the diagnosis codes that Provider Defendants submitted to Freedom Defendants "including which codes were paid, the source of those codes, and the date of service the code was entered." (Doc. 86 ¶ 13.) Additionally, during her employment, Relator alleges she "was provided credentials to Freedom's MRA/HEDIS portal" which allowed her to access reports "identify[ing] the codes that were submitted from [Freedom Defendants] to CMS for each patient, including the dates of service and the source for the submitted codes." *Id.* Relator alleges that this access allowed her to "trace the false claims alleged in this case from 'cradle to grave.'" (*Id.* ¶ 15.) Moreover, Relator claims in her motion to compel that she "was in a position to review medical records which included billing and coding information *from years prior*." (Doc. 143 at 9) (emphasis added).

Despite her claimed access to billing records going back years before her employment, the Amended Complaint alleges no submission of any false diagnosis codes by Provider Defendants to Freedom Defendants before January 24, 2018 (Doc. 86 at ¶ 264), or after January 13, 2020 (*id.* ¶ 227).

---

[1] VIPcare is a provider group that is operated by Physician Partners, LLC. Zafirov was employed by VIPcare to provide medical services to VIPcare's patients.

4862-1056-7290.1

In her Motion, Zafirov cites to allegations relating to Patients A and R to support her demand for a 2014 start date. (Doc. 143 at 9-10.) However, these allegations do not describe submissions from Provider Defendants to Freedom Defendants and thus are wholly irrelevant to this litigation. (Doc. 86 at ¶ 292). While the allegations relating to Patient A vaguely state that "Physician Partners listed the HCC [for foot amputation] in its 2016 paid claims," (*id.* ¶ 293) Zafirov does not allege that any physician affiliated with Physician Partners submitted that claim, nor could she, as Provider Defendants' billing and claims records show that no physician affiliated with Provider Defendants submitted this diagnosis. (Gallman Decl., Ex. 1). Because the crux of Zafirov's claims is the purported scheme between Provider Defendants and Freedom Defendants, Zafirov cannot rely on two random and isolated allegations against one defendant to justify expanding the scope of discovery a full four years prior to the first alleged false diagnosis code submitted by Provider Defendants to Freedom Defendants.

The only other allegations in the Amended Complaint that Provider Defendants submitted false diagnosis codes to Freedom Defendants prior to 2018 are those relating to Patient P and Patient Q. (Doc. 86 at ¶¶ 284-291). With respect to Patient P, Zafirov alleges that "Physician Partners was paid in 2017 for risk-adjusting HCC072 (spinal cord disorders/injuries) for the ICD-9 code Q00.0, anencephaly." (*id.* ¶ 284). With respect to Patient Q, Zafirov alleges that "Physician Partners also submitted diagnosis codes for malignant neoplasm of the prostate (prostate cancer) during five encounters in 2017, although there is no record in his medical chart for receiving any treatment

for prostate cancer." (*id.* ¶ 289). However, Provider Defendants' records reveal that no physician associated with Provider Defendants submitted either of these diagnosis codes for Patients P and Q in 2017. (Gallman Decl., Ex. 1). Relator's conclusory allegations that her complaint "alleges violations beginning January 2014 through the present" are insufficient to support her demand for discovery spanning seven years more than the claims at issue.

## ARGUMENT

### I. Discovery Periods in FCA Cases are Limited by Facts Pleaded with Particularity.

Discovery is proper only if it is both "relevant to any party's claim and proportional to the needs of the case." Fed. R. Civ. P. 1, 26(b)(1). Parties "have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." Fed. R. Civ. P. 26(b)(1) advisory committee comments to 2000 amendments. "The party seeking discovery has the threshold burden of demonstrating that the discovery requested is relevant and proportional." *U.S. ex rel. Holland v. DaVita, Inc.*, 6:17-cv-1592-Orl-37GJK, 2020 WL 10700153, at *4 (M.D. Fla. Dec. 11, 2020) (denying relators' motion to compel and shortening discovery timeframe sought).

In FCA actions, the discovery timeframe must be "guided … by the principles behind Rule 9(b)," especially in declined *qui tams* like this one, because "the right of action granted to private citizens to bring *qui tam* actions on behalf of the United States is quite limited." *U.S. ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.*, 8:06-cv-40-T-

5

24MAP, 2008 WL 4057549, at *1 (M.D. Fla. Aug. 27, 2008) ("discovery in *qui tam* actions must be limited and tailored to the specificity of the complaint"); *accord U.S. ex rel. Rosen v. Exact Sci. Corp.*, 8:19-cv-1526-MSS-AAS, 2023 WL 1798258, at *2 (M.D. Fla. Feb. 7, 2023) (same); *Holland*, 6:17-cv-1592-Orl-37GJK, 2020 WL 10700153, at *3 (same). As the Honorable Mark A. Pizzo explained in *Bane*—in rejecting the relator's argument that an expansive discovery period was warranted based on the fact that his claims "survived Defendants' motion to dismiss," what Zafirov argues here (Doc. 104 at 5-7)[2]—the Court "must still be guided by Rule 9(b)'s parameters and discovery should still be limited to the constraints of the Relator's allegations." *Bane*, 8:06-CV-40-T-24MAP, 2008 WL 4057549, at *1.

---

[2] In addition to the case law making clear that denials of motions to dismiss are irrelevant in this context, Zafirov's characterizations of the motion to dismiss decision (Doc. 124) as addressing and rejecting Defendants' proposed discovery timeframe find no support whatsoever in that decision. Zafirov's assertions that the Court "gave no credence to Defendants' assertion that allowing discovery on seven years of false claims would be unduly burdensome" and rejected Defendants' argument that "discovery would be unduly burdensome" (Mot. at 6-7) are made up out of whole cloth – that decision does not even mention the words "discovery" or "burdensome," much less reject Defendants' proposed discovery timeframe.  In fact, the only claims mentioned in that decision have dates of service between an "initial submission" on "March 12, 2019" and "most recently" on "Jan. 13, 2020" (Doc. 124 at 12), well within Defendants' proposed discovery timeframe. And, while an early *ex parte* order denying an unsupported request to further extend the *qui tam* seal period made an offhand reference to an allegation of "ongoing" conduct "[i]f true" (Doc. 11), that order—which was issued on January 28, 2020 while Zafirov was still at VIPcare and well within Defendants' proposed discovery timeframe—does not address or support that Zafirov pleaded that allegation with sufficient particularity to justify wide-ranging discovery more than two and half years after that, as Zafirov now seeks.

6

Consistent with *Bane*, the Honorable Gregory J. Kelly in *Holland* denied the relator's motion to compel an expansive discovery period spanning to the present, holding that the relator's allegation of continued fraud "through the present" was merely a "cursory allegation of ongoing conduct" made "'without any of the specificity mandated by Federal Rule of Civil Procedure 9(b)—[which] does not automatically entitle Plaintiff to obtain expansive discovery to the present of all of Defendants' practices in order to uncover new false claims.'" *Holland*, 6:17-cv-1592-Orl-37GJ, 2020 WL 10700153, at *3 (citing *U.S. ex rel. Spay v. CVS Caremark Corp.*, 09–4672, 2013 U.S. Dist. LEXIS 121554, at *2-3 (E.D. Pa. Aug. 27, 2013) (holding that relator's "cursory allegations" were "unquestionably insufficient to open the door" to discovery beyond two-year time period alleged in complaint)). Instead, Judge Kelly limited the end date of discovery to the last date that the relator alleged the submission of "specific fraudulent claims." *Id.* at *3. Judge Kelly also rejected the relators' demand to start the discovery timeframe just after the statute of limitations—a demand Zafirov echoes (Doc. 104 at 8)—because it was four years before any "specific facts" were pleaded. *Id.*[3]

---

[3] The court in *Holland* distinguished *U.S. ex rel. Walker v. R&F Properties of Lake County, Inc.* (which Zafirov cites but also criticizes as decided "without explanation" (Doc. 104 at 12)), observing that unlike the relator in *Holland*, the relator in *Walker* had alleged "specific facts" supporting the submission of false claims "after her employment." *Holland*, 6:17-cv-1592-Orl-37GJ, 2020 WL 10700153 at *3. Walker alleged that "***[s]ince [Walker's] employment with***" the defendant, the defendant hired two nurse practitioners and two physician's assistants who were "never" billed independently to Medicare but rather were always billed incident to physicians whether the physicians were present at the clinic or not. *Walker* , 433 F.3d 1349, 1359 (11th Cir. 2005). Zafirov pleads no such allegations here; in fact, she does not even

7

The Honorable Amanda A. Sansone, in her recent decision in an FCA action, consistent with *Bane* and *Holland*, denied the relator's motion to compel, holding that the "particularity requirement of *qui tam* actions under the FCA trumps the plaintiffs' request that the court compel" discovery demands supported by "no detailed allegations, such as who, what, when, where, and how fraudulent practices occurred," as such demands were "not … proportional." *Rosen,* 8:19-cv-1526-MSS-AAS, 2023 WL 1798258, at *2-3.

Even the out-of-district and out-of-circuit case law relied upon by Zafirov demonstrates that the discovery timeframe must be limited to the "particular allegations" pleaded in the case. *See* Doc. 104 at 12 (quoting *U.S. ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F.Supp.3d 1340, 1354 n.15 (N.D. Ga. Nov. 25, 2015)). For example, Zafirov's citation to the Sixth Circuit's decision in *U.S. ex rel. Bledsoe v.*

---

generically plead anything at all that occurred after she left Defendant VIPcare's employment in March 2020 (Doc. 86 ¶ 20), other than court events. (*Id.* ¶¶ 12, 33, 42, 43.) Moreover, the *Walker* court rejected the relator's urging to extend the discovery period past the date of the filing of the original complaint. *Walker*, 433 F.3d at 1359. Although one decision extended the end of discovery through the court's denial of a motion to dismiss – on no basis other than that it is "not manageable" to allow discovery up through trial and citing a single case admitting such a cutoff is "somewhat arbitrary" – the effect of that decision was to extend discovery only six months after the date the defendants were served with the complaint. *Girling v. Specialist Doctors' Grp., LLC*, No. 8:17-cv-2647-T-24JSS, 2021 U.S. Dist. LEXIS 258848, at Dkt. 26, 57 (M.D. Fla. Feb. 3, 2021) (citing *U.S. ex rel. Conroy v. Select Med. Corp.*, 307 F. Supp. 3d 896, 907 (S.D. Ind. 2018) (acknowledging that ending discovery at denial of motion to dismiss was "somewhat arbitrary")). That case law does not support that the discovery end date should be extended over 17 months after Defendants were served and over two and a half years after the filing of the original complaint as Zafirov seeks, particularly absent any facts pleaded after February 2020.

*Community Health Systems, Inc.*, supports the Defendants' position, not Zafirov's. 501 F.3d 493, 510 (6th Cir. 2007). In the *Bledsoe* decision (which decided a motion to dismiss, not a discovery dispute), the court allowed a relator to take discovery limited to the same "general time frame" as the representative specific false claims pleaded. *Id.* at 511; *see Rosen*, 8:19-cv-1526-MSS-AAS, 2023 WL 1798258, at *2 (stating that *Bledsoe* "comports" with Judge Sansone's decision limiting the scope of discovery to matters pleaded with particularity under Rule 9(b)). The case law is clear that the discovery timeframe in an FCA case must be defined by the specific false claims pleaded by the relator.

II. **The Discovery Timeframe in This Case Should Commence No Earlier Than January 1, 2017.**

The earliest alleged false diagnosis code submitted by a Provider Defendant physician for a Freedom Defendant member identified in the Amended Complaint is January 24, 2018. (Doc. 86 ¶ 264.) As such, a discovery commencement date of January 1, 2017—over a year prior—is more than reasonable for this case. Relator fails to identify any reason tethered to her allegations to extend the discovery window further.

Zafirov admits she asks for a discovery window that sweeps broader than the specific allegations but argues she is entitled to do so. For support, she cites *Holland*'s allowance of discovery "beginning in 2011 . . . even though the specific examples in the complaint began in 2015" in that case. Doc. 104 at 8.

9

Her reliance is misplaced. In *Holland*, the *Defendants* proposed starting discovery in 2011 and in fact "Defendants produced documents dating back to 2011," whereas the relator proposed starting the discovery timeframe in 2007 on the basis of the statute of limitations, and lost. *Holland*, 6:17-cv-1592-Orl-37GJK, 2020 WL 10700153, at *2-3.

Zafirov also cites *Baklid-Kunz v. Halifax Hospital Medical Center* for the purported proposition that discovery could commence in 2002 despite the alleged false claims starting in 2007, Doc. 104 at 8-9, but the court in that ruling (which resolved a motion for summary judgment, not a motion to compel) rejected the premise that the false claims were alleged to have started in 2007, stating such a characterization "does not hold water," because the complaint had alleged "improperly inflated Medicare claims . . . 'since at least 2000'" and relators identified "thousands" of "false claims dating back to 2002." 2014 WL 2968251, at *6 (M.D. Fla. July 1, 2014). These cases simply do not support imposing a discovery period commencing years before any false claim is alleged, as Zafirov demands here. Because Zafirov bears the burden to support her requested discovery timeframe with "specific facts demonstrating the relevancy of discovery during a particular time period," *Holland*, 2020 WL 10700153, at *2-3, Zafirov's assertions of absence of evidence, such as her unsupported argument that "there is no indication that Defendants' conduct has changed over time" (Mot. at 9), do not warrant a discovery timeframe without logical limits.

As in *Holland*, this Court should reject Zafirov's argument that the discovery period should begin shortly after the statute of limitations or should, for any reason,

10

begin many years before "specific facts" pleading false claims with particularity. *Holland*, 6:17-cv-1592-Orl-37GJK, 2020 WL 10700153, at *3. To hold otherwise would give Zafirov a ticket to discovery for conduct she has not alleged with particularity, in violation of Rule 9(b)'s gatekeeping requirement, which continues to limit the timeframe of permissible discovery. *Bane*, 8:06-CV-40-T-24MAP, 2008 WL 4057549, at *1. Zafirov is entitled to discovery only within the timeframe of the specific allegations of false diagnosis codes in the complaint. Because Zafirov only specifically identifies allegedly false diagnosis codes sent by Provider Defendants to Freedom Defendants between January 24, 2018 and January 13, 2020, she is not entitled to discovery on millions of diagnosis codes ranging far beyond that timeframe.

### III. The Discovery Timeframe In This Case Should End No Later Than December 31, 2020.

The latest alleged false diagnosis code submitted by a Provider Defendant physician for a Freedom Defendant member identified in the Amended Complaint is January 13, 2020. (Doc. 86 ¶ 227.) As with the commencement date, Zafirov identifies no compelling reason to extend the discovery window more than a year beyond this date. And so the discovery window should end on December 31, 2020.

Zafirov nevertheless seeks an end date of September 12, 2022, based on the date that the Court denied the Defendants' Motions to Dismiss Zafirov's Amended Complaint. But Zafirov pleads no specific false diagnosis codes after January 2020. In fact, she pleads no facts at all occurring after February 2020, other than those relating to litigation events.

11

Successive pleadings cannot expand a plaintiff's discovery rights. Under Zafirov's theory, a plaintiff who files deficient pleadings (as she did on May 20, 2019 (Docs. 1, 81)) should be rewarded by the widening of her discovery period. Zafirov's theory would reward relators who file deficient complaints—to toll a statute of limitations, or to be the first to file, for example—knowing they can later bolster their allegations in amended complaints and extend their discovery access to boot. However, pleading failures do not expand the universe of materials "relevant to any party's claim or defense," nor do they change the proportional needs of the parties. Tethering the relevant discovery period to poor pleading, rather than to the particularized allegations in the pending case, would contradict policy and precedent.

In contrast, closing the discovery timeframe at the end of 2020—nearly a year after the last allegedly false claim was submitted, and nine months after Zafirov left the Provider Defendants—provides a boundary that is appropriately "limited and tailored to the specificity of the complaint." *Bane*, 2008 WL 4057549, at *1.

As set forth above, FCA case law does not permit expanding discovery based on bare allegations of "continuing" conduct, in the absence of supporting facts pleaded with particularity. *Holland*, 2020 WL 10700153, at *3. In fact, Zafirov does not actually plead anywhere in her Amended Complaint that the alleged fraud is "continuing" even in generic terms, nor does she plead any facts at all to justify her proposed 2014–2022 discovery timeframe. She instead relies solely on five factually unsupported words in her Amended Complaint: "January 2014 through the present." Doc. 86 ¶¶ 1, 34. But the case law is clear that bald assertions of alleged fraud continuing "through the

12

present" do not entitle relators to expand discovery. *Holland*, 2020 WL 10700153, at *3. Rather, allegations of false claims pleaded with particularized facts set the temporal scope of discovery. *See, e.g., Holland*, 2020 WL 10700153, at *3; *Bane*, 2008 WL 4057549, at *1.

Accordingly, in this case, the discovery period should extend no later than December 31, 2020, nearly a year after the last false claim Zafirov alleges Defendants submitted.

### IV. Relator's Nearly Nine-Year Proposed Discovery Timeframe is Disproportional to the Needs of This Case and Would Unduly Burden Defendants.

The nine-year discovery window that Zafirov demands could implicate tens of millions of diagnosis codes, lines of data submitted to CMS, and other related data and documents. Zafirov has requested expansive swaths of data from both Provider Defendants and Freedom Defendants: diagnosis codes submitted from Provider Defendants to Freedom Defendants, data showing payments from Freedom Defendants to Provider Defendants, data showing rejected diagnosis codes, data submitted from Freedom Defendants to the Centers for Medicare & Medicaid Services ("CMS"), and data showing payments from CMS to Freedom Defendants. (Doc. 143-1, pages 1-90.)

Zafirov alleges that "Physician Partners employs or manages more than 500 physicians providing services to approximately 130,000 patients" and that Freedom Defendants cover "approximately 90% of the Providers' enrolled patients." (Doc. 86 ¶¶ 23, 180.) In other words, based on Relator's allegations, 117,000 patients could be

13

covered by the scheme described in the Amended Complaint. From January 1, 2014 through September 12, 2022, claims data reflects the submission of over *4 million* claims from Provider Defendants to Freedom Defendants. (Gallman Decl., Ex. 1).[4] Every additional year included in the discovery timeframe arguably puts an average of *450,000* additional claims within Zafirov's overbroad discovery requests. (*Id.*) Each of these claims can contain multiple diagnosis codes such that Zafirov's proposed date range encompasses over well over *4 million* diagnosis codes. And those diagnosis codes are backed up by voluminous medical records, payment records, and risk adjustment records, in addition to the many other types of documents requested in Zafirov's 148 document requests to date. (Doc. 143-1, pages 1-90.) Relator has requested that this voluminous data be collected, reviewed and produced for every single year covered by the date range.

      Given the wide swath of discovery requested by Zafirov, the significant burden associated with those requests, her mere eighteen-month tenure with Provider Defendants, and the narrow temporal scope of her allegations described above, a nine-year discovery period is disproportional to the needs of this case. Even in cases where there is an articulated need for discovery, courts emphasize that the scope of discovery must recognize "the cost and time associated with producing the documents." *McPherson v. Fla. Dep't of Corr.*, No. 4:19cv156-MW/CAS, 2020 WL

---

[4] The word "claims" is used here as a term-of-art to refer to submissions from Provider Defendants to Freedom Defendants and is not synonymous with the term "claims" as used in the context of the False Claims Act.

7020373, at *2 (N.D. Fla. Apr. 2, 2020) (ordering the parties to "narrow the scope of Plaintiff's requests" to "reduce the expense and time required to produce responsive documents"). In fact, "giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry," is at the heart of Rule 26(b)(1). Fed. R. Civ. P. 26(b)(1) advisory committee comments to 1983 amendments. And so in cases, such as this one, where significant collection, review, and production burdens are implicated by each additional year of discovery, "discovery must hew closely to matters specifically described in the complaint lest discovery, because of its burden and expense, become the centerpiece of litigation strategy." *United States ex rel. McCartor v. Rolls-Royce Corp.*, No. 1:08-cv-00133-WTL-DML, 2013 WL 5348536, at *6–7 (S.D. Ind. Sep. 24, 2013).

Zafirov's request for nine years of discovery directly conflicts with bounding principles regarding the scope of discovery. First, Zafirov demands years of discovery for which she alleges no specific claim. And, second, Zafirov's demand for additional years will impose extraordinary expenses on the producing parties. This is exactly what the Eleventh Circuit warned against: if relators are given a "ticket to the discovery process" unbounded by their particularized allegations of false diagnosis code submissions, they "will request production of every claim submitted by the Defendant during the time period corresponding to Plaintiff's claims." *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006). That is in fact exactly what Zafirov seeks here. In her document requests 6 and 7 to Physician Partners, for example, she seeks discovery of all "claims submitted" to and all "payments received" from "any

15

Government health care program." (Doc. 143-1 at pp. 76-78.) Allowing such unduly expansive and expensive discovery would impose a serious burden on Defendants, far outweighing any of Zafirov's tenuous arguments for nearly a nine-year discovery timeframe.

## CONCLUSION

For the reasons set forth above, Zafirov's motion to compel should be denied, and the Court should order a discovery period beginning no earlier than January 1, 2017 and ending no later than December 31, 2020.

Dated: August 22, 2023.

        Respectfully submitted,

        */s/ Natalie Hirt Adams*
        Natalie Hirt Adams (FBN: 1030877)
        Primary Email: nhadams@foley.com
        Secondary Email: dmills@foley.com
        Jason Mehta (FBN: 106110)
        Primary Email: jmehta@foley.com
        Secondary Email: dmills@foley.com
        Foley & Lardner LLP
        100 North Tampa Street, Suite 2700
        Tampa, Florida 33602-5810
        Telephone: (813) 229-2300
        Facsimile: (813) 221-4210
        *Attorneys for Defendants Florida Medical*
        *Associates, LLC, Physician Partners, LLC, Anion*

*/s/ A. Lee Bentley III*
A. Lee Bentley III (FBN: 1002269)
Primary E-Mail: lbentley@bradley.com
Secondary E-Mail: kmilliken@bradley.com
**BRADLEY ARANT BOULT CUMMINGS LLP**
100 N. Tampa Street, Suite 2200
Tampa, Florida 33602
Telephone: (813) 559-5524
Facsimile: (813) 229-5946


*/s/ Cara Colleen Rice*
Cara Colleen Rice (FBN: 1026046)
Primary E-Mail: crice@bradley.com
Secondary E-Mail: kmilliken@bradley.com
**BRADLEY ARANT BOULT CUMMINGS LLP**
100 N. Tampa Street, Suite 2200
Tampa, Florida 33602
Telephone: (813) 559-5500
Facsimile: (813) 229-5946

*Attorneys for Defendants Florida Medical Associates, LLC, Physician Partners, LLC, Anion*


*/s/ Scott Drake*
Scott Drake*
O'MELVENY & MYERS LLP
2501 North Harwood Street, Ste. 1700
Dallas, TX 75201
(972) 360-1900
(972) 360-1900 (fax)
sdrake@omm.com

17

Benjamin D. Singer*
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
(202) 383-5414 (fax)
bsinger@omm.com

Elizabeth M. Bock*
Elizabeth Arias*
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
(213) 430-6000
(213) 430-6407 (fax)
ebock@omm.com
earias@omm.com

Ginger Boyd
Fla. Bar No. 294550
NELSON MULLINS RILEY &
SCARBOROUGH LLP
215 South Monroe Street, Suite 400
Tallahassee, FL 32301
(850) 205-3356
(850) 521-1472 (fax)
Ginger.Boyd@nelsonmullins.com

*Attorneys for Defendant Freedom Health, Inc.*
*\* pro hac vice*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 22, 2023, I filed the foregoing with the Court's electronic filing system, which will cause a copy to be served upon all counsel of record.

*/s/ Natalie Hirt Adams*
Natalie Hirt Adams

4862-1056-7290.1