UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

United States of America
*ex rel.* Clarissa Zafirov,

      Relator,               Case No. 8:19-cv-01236-KKM-SPF

v.

Physician Partners, LLC; Florida Medical
Associates, LLC d/b/a VIPcare; Anion
Technologies, LLC; Freedom Health, Inc.; and
Optimum Healthcare, Inc.,

      Defendants.

_____/

**PHYSICIAN PARTNERS, LLC'S, FLORIDA MEDICAL ASSOCIATES
D/B/A VIPCARE'S, AND ANION TECHNOLOGIES, LLC'S OPPOSITION
TO RELATOR'S MOTION TO QUASH DEFENDANTS' NON-PARTY
<u>SUBPOENAS AND MOTION FOR PROTECTIVE ORDER</u>**

Dr. Clarissa Zafirov, the Relator and main witness in support of her claims in this declined *qui tam* case – including medical opinion testimony – asserts that her medical training, experience, and clinical judgment and even her credibility are "wholly irrelevant" to this litigation, and that exploration of those topics "invade Relator's privacy and harass her," and cannot be subject to discovery in any way. (Dkt. 164 at 3.) But Relator has put her medical training, judgment, experience, and credibility front and center in this case by alleging, for example, that Defendants' "risk-

adjusting diagnoses" were false because they were "*inconsistent with Relator's medical training*." First Amended Complaint ("FAC"), Dkt. 86, ¶ 162.[1]

False Claims Act case law provides that when "Relator alleged that she witnessed fraudulent" activity that she recognized  based on her "knowledge of … protocols and methodology," then Defendants must be permitted to subpoena documents from that relator's other employers, because "they are *relevant to Relator's ability to evaluate* [defendant's] allegedly improper methodology and falsified" records. *See, e.g., U.S. ex rel. Wlochowski v. Merck & Co.*, Civil Action No. 10-4374 (CDJ), 2016 U.S. Dist. LEXIS 188970, at *7-8 (E.D. Pa. Feb. 5, 2016) (denying relator's motion for protective order and allowing defendant's subpoena to relator's other employer). "Likewise, *Relator's performance reviews* at [her other employer] may be *relevant to assess her credibility* of any testimony she might provide about *her knowledge and abilities* regarding … methodology, … protocols, and quality assurance." *Id.; see also, e.g., Baptiste v. Ctrs., Inc.,* No. 5:13-CV-71-Oc-22PRL, 2013 U.S. Dist. LEXIS 87550, at *6-7 (M.D. Fla. June 21, 2013) (denying motion to quash, stating that "performance reviews … could bear on the credibility of Plaintiff's allegations relating to … [her] qualifications") (citations omitted).

Moreover, none of the former employers subpoenaed have moved to quash or raised any objection to producing the subpoenaed documents. In fact, one of the employers produced documents even prior to Relator's motion to quash, which were

---

[1] Except as otherwise noted, all emphasis in this brief is supplied.

shared with Relator. Relator does not even have standing to challenge the requests that have nothing to do with her purported privacy rights, such as requests for her former employers' coding policies or guidance. In the meantime, Relator is moving to compel Defendants to produce nearly five years' worth of voluminous data and documents from before she joined VIPcare in October 2018 (starting January 1, 2014, *see* Dkt. 143), but she wants no discovery allowed into anything she learned or did before she joined. Relator's motion to quash non-party subpoenas to her former employers and motion for protective order should be denied.

## BACKGROUND

Relator's False Claims Act ("FCA") claims against Defendants Physician Partners, LLC, Florida Medical Associates, LLC, and Anion Technologies, LLC (collectively "Provider Defendants") are based on "***Dr. Zafirov's medical judgment***," "***medical training***," knowledge, and work experience. FAC ¶¶ 10, 138, 162, 168. Relator's core claim in this case is her allegation of false coding "inconsistent with or unsupported by the physician's ***medical training***." *Id.* ¶ 138. Virtually all of her claims rest on her opinions that "the code was incorrect" in various records (*id.* ¶ 212) because Defendants "persuade[d] physicians to set aside their ***medical judgment*** in favor of diagnosing inflated, serious conditions." *Id.* ¶ 7. Relator alleges, for example, that she was given access to Five Star Checklists suggesting diagnosis codes that, in her medical judgment, had "***no clinical support***," were "no longer applicable," or were only

"tangentially related to the notes in the patient's chart but are ***not supported by clinical evidence***." *Id.* ¶ 117.

Relator expresses her medical opinions throughout her complaint as support for her allegations of "false diagnosis codes to make [Defendants'] beneficiaries look sicker" than she believes they actually were. *Id.* ¶ 3. For example, Relator alleges her belief that "minor depression may be very common, but Major Depressive Disorder is not" by diagnosing according to "industry standard" she purportedly learned somewhere (*id.* ¶¶ 144, 157), that vascular disease can only be diagnosed by a "clinical standard of doppler imaging" she purportedly learned somewhere (*id.* ¶ 154), that "Procrit should always be administered under the supervision of a nephrologist for end-stage renal disease patients" (*id.* ¶ 178), and that coding of various patients' conditions "was not supported by clinical findings" (*id.* ¶ 94) or was "unsupported by clinical evidence," drawing on "***Dr. Zafirov's experience***." *Id.* ¶¶ 147-150. Notably, Relator expresses her disagreement with other physicians' opinions about specialist areas of medicine, such as Dr. Sangeeta Hans' opinion about a cancer patient that Relator disparages as being "based on *her* opinion (as a primary care doctor)" – though Relator herself is likewise simply a "primary care physician," who worked in a walk-in clinic. *Id.* ¶¶ 135 (emphasis in original), 100.

Relator also claims that Provider Defendants violated the FCA by providing medical care to their patients that Relator opines was inadequate (FAC ¶¶ 135-36), and that Provider Defendants pressured her and other physicians to improperly

4

diagnose, code, and care for patients "*inconsistent with Relator's medical training*." *Id.* ¶¶ 158-179. And she claims that Provider Defendants gave their physicians a "financial performance bonus" based on "50% of the surplus associated with those patients" as long as a physician saw 600 or more Freedom patients a year, which Relator contends incentivized and "pressured" physicians to increase capitated payments by reporting inaccurate diagnosis codes to "maximize risk scores" and decrease expenses by "avoiding hospital admissions, writing generic prescriptions instead of brand names, referring patients to use VIPcare's in-house imaging resources, or withholding specialist referrals." *Id.* ¶¶ 129-131. These alleged financial incentives resulted in various episodes of what she opines are "rationed care" (*id.* ¶ 136) and instances when "medical services that *were* actually needed were withheld," in Relator's medical opinion. *Id.* ¶ 96 (emphasis in original). Relator does not divulge whether her prior employers paid her similar incentives or whether she complained about them, which is part of what the Provider Defendants seek to discover by their non-party subpoenas.

Relator further alleges that Defendants' training, guidance, and policies provided to physicians regarding coding was "medically inaccurate" in her opinion (*id.* ¶ 162), "contrary to standards of medical care" (*id.* ¶ 187), only "loosely connected to actual medical science or medical standards" (*id.* ¶ 153), and "tacitly implies that coding supersedes *medical education and training*, stating, 'In medical school, we will say, 'history of' because *we weren't trained in coding*." *Id.* ¶ 186. As far as the Provider Defendants currently know, Relator has only ever worked as a generalist family

medicine primary care practitioner (*id.* ¶ 9) and does not claim to have any certifications in coding or other specialized training or education in coding, unlike the Provider Defendants' "coding specialists" whose views she contests. *Id.* ¶ 20. Relator admits that the Provider Defendants told Relator that her coding was inconsistent with other providers' coding (*id.* ¶ 161), but she offers nothing other than her opinion based on her past medical experience, training, and education to support that Provider Defendants' coding was wrong and her coding was right. Relator claims that Defendants' coding guidance was fraudulent, yet she now moves to quash discovery of any and all coding guidance she was ever given by her prior employers.

More troublingly, Relator is also now arguing that the entire foundation of her case—her opinions of false diagnoses or inadequate care as informed by her medical education, training, and experience—is off limits in discovery. But Provider Defendants are entitled to discover what Relator bases her opinions on, which is why they served third-party subpoenas to Relator's previous employers to better understand her experience, training, and medical acumen. Regardless of whether Relator ultimately designates additional testifying experts to support her medical opinions in her pleadings, Provider Defendants are entitled to seek specific categories of documents relevant to Relator's work experience, training, education, and guidance on coding of patient diagnoses, all of which underlie her medical judgment and credibility that are critical to a fact-finder's determination of the core issues at stake in this case.

# ARGUMENT

## I.   Provider Defendants' Subpoenas Seek Relevant Materials.

Relator bases her motion to quash and for a protective order on purported absence of relevance. "Relevance for discovery 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Taylor v. Farm Credit Fla. Aca,* No. 21-13807, 2022 U.S. App. LEXIS 27172, at *9 (11th Cir. Sep. 28, 2022). Although as set forth above, Relator's First Amended Complaint demonstrates the relevance of the discovery sought in any event, "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Goulet v. Mederi Caretenders VS of SW FL, LLC,* No. 2:10-CV-215, 2011 WL 652851, at *1 (M.D. Fla. Feb. 14, 2011) (denying plaintiff's motion to quash and motion for protective order regarding defendant's subpoena on her new employer for her employment application, resume, and representations about pay and job responsibilities). Even if Relator had some personal right in records subpoenaed from her other employers, "that personal right is outweighed in this case by the relevance and proportionality of these records to the needs of the case." *Giambrone v. Kearney & Co., P.C.*, No. 8:16-CV-2083-T-30AAS, 2017 WL 2538705, at *3 (M.D. Fla. June 12, 2017) (denying plaintiff's motion to quash subpoena on plaintiff's other employer for "performance-related documents").

The documents sought by Provider Defendants directly relate to the claims and defenses in this action. Requests 2-10 in the subpoenas seek documents related to

7

Relator's prior experience, training, education, guidance, and performance as a physician, all of which underlie her medical judgment that is at the core of her claims of false diagnosis coding and allegedly inadequate medical care, as set forth above. Documents regarding Relator's performance in prior jobs (Requests 2-4, 7-10) and any training, guidance, policies, protocols, or education she received regarding the documentation or coding of patient diagnoses (Requests 5-6) relate directly to the veracity of these claims and are necessary to Relator's attempt to prove the falsity element of her FCA claims. Request 1 seeks employment agreements with Relator which will show whether her former employers paid her financial incentives similar to Provider Defendants' financial performance bonus that she claims resulted in rationed or withheld care, while Request 9 will show whether she ever complained about such incentives or other policies or practices of her former employers.

The *Wlochowski* case is particularly instructive here. 2016 U.S. Dist. LEXIS 188970, at *7. In *Wlochowski*, the relator claimed that defendant violated the FCA by implementing improper protocols regarding a vaccine, concealing those protocols, and falsifying test results. *Id*. at *3-4. The defendant served a subpoena on another employer of the relator, seeking documents relating to each of the relator's positions, her responsibilities associated with each position, the qualifications necessary for each position, her application materials, self-assessments, and performance reviews, as well as documents from relator relating to the vaccine at issue. *Id*. at *3-5. The relator moved for a protective order, arguing just as Relator does in this case that "the request is harassing and the information sought [is] irrelevant to the claims and defenses in

8

this case." *Id.* at *4. In denying the relator's motion, the court explained how the documents sought from her other employer were relevant to the case and why the relator's motion for protective order must be denied:

> Documents pertaining to Relator's employment with [her other employer], including descriptions of her positions and evaluations, are relevant to this case. In her Complaint, Relator alleged that she witnessed fraudulent efficacy testing when she was employed as a virologist at Defendant's laboratory. … To the extent Relator's quality assurance positions at [her other employer] involve knowledge of testing protocols and methodology of therapies developed from a laboratory, they are ***relevant to Relator's ability to evaluate*** [the defendant]'s allegedly improper methodology and falsified testing of its mumps vaccine. Likewise, Relator's ***performance reviews*** at [her other employer] may be ***relevant to assess her credibility*** of any testimony she might provide about ***her knowledge and abilities*** regarding testing methodology, testing protocols, and quality assurance. Additionally, the performance reviews are relevant as to defenses Defendants may raise regarding Relator's performance as [Defendant's] employee. Accordingly, the requests in the subpoena are relevant to the parties' claims and/or defenses.

*Id.* at *8 (internal record citations omitted).

Similarly, in this case, Relator's experience, training, and performance reviews at her other employers are relevant to her knowledge and abilities to evaluate Provider Defendants' guidance, diagnoses, and treatments, as well as to assessing her credibility. In an FCA case, the defendant may "raise to the jury any challenges to [the relator's] credibility." *U.S. ex rel. Kiro v. Jiaherb, Inc.*, No. CV 14-2484-RSWL-PLAx, 2019 U.S. Dist. LEXIS 111680, at *11 (C.D. Cal. July 3, 2019) (alteration in original); *Wlochowski*, 2016 U.S. Dist. LEXIS 188970, at *8. Here, the requested documents are potentially relevant to Relator's credibility on multiple grounds. Whether Relator coded at her prior jobs the same way as at Provider Defendants but without complaint

9

to her prior employers would impact her credibility in now claiming such coding as fraudulent. Also, Relator's skills and knowledge as a physician, including performance evaluations and any complaints or concerns raised about her or by her in her prior positions, bear on her ability to credibly testify to her opinions about the propriety of various diagnoses that she or Provider Defendants selected and treatments performed or not performed. *See EEOC v. Autozone, Inc.*, No. CA 06-0607-KD-C, 2007 U.S. Dist. LEXIS 105168, at *13 n.7 (S.D. Ala. Aug. 2, 2007) (denying motion to quash subpoena for performance evaluations and disciplinary records "since both could impact [the witness's] credibility"). Further, whether Relator has previously complained of other employers' practices as deviating from her views of proper medical care or coding could bear on her assertions about purported medical industry standards. *See Baptiste,* 2013 U.S. Dist. LEXIS 87550, at *7 (denying motion to quash and finding prior employment records relevant, holding that "information regarding any prior complaints … by Plaintiff could bear on her credibility").

In addition, Relator ignores that she seeks to prove the elements of her claims by testifying about her medical opinions and actions as a treating physician of the patients she describes as having treated in her First Amended Complaint. *See* FAC ¶¶ 150, 202-295. "Treating physicians are now recognized as expert witnesses, even though they are not technically 'retained experts.'" *Crespo v. Home Depot U.S.A., Inc.*, No. 16-60086-CIV-COHN/SELTZER, 2016 U.S. Dist. LEXIS 92147, at *4 (S.D. Fla. July 15, 2016). In *Crespo*, for example, the court denied a motion for protective order and motion to quash a subpoena served on the employer of a treating physician,

permitting discovery relating to "a treating physician's possible bias or the reasonableness of the charges at issue in the litigation" and other matters potentially bearing on credibility, *despite* "the medical providers' *privacy interests*." *Id.* at *5, 9-10; *see also Sheets v. Villas*, No. 8:15-cv-1674-T-30JSS, 2016 U.S. Dist. LEXIS 201427, at *14-16 (M.D. Fla. May 9, 2016) (denying in part plaintiffs' motion for protective order or to quash subpoenas served on treating physicians, holding that "Defendants are entitled to conduct discovery" of the physicians' education and backgrounds as set forth in each physician's curriculum vitae, among other discoverable information). In this case, it is undoubtedly relevant that Relator's medical opinion testimony at the core of her case would be undercut by complaints or grievances against Relator, poor job performance, or lack of relevant expertise, training, or education, just as it would be for any other treating physician testifying to her medical opinions.

The case law Relator cites is inapposite. Incredibly, Relator claims that her credibility is irrelevant and "far outside the bounds" of permissible discovery (Dkt. 164 at 8-9), citing the case of *United States v. Handrup*, No. 13 C 7733, 2016 U.S. Dist. LEXIS 188443 (N.D. Ill. July 11, 2016). In *Handrup*, the defendants subpoenaed nine of relator's prior employers seeking the relator's "[c]omplete employment records … and *any other records regarding*" the Plaintiff, *id.* at *2, but only "state[d] generally that they [we]re seeking information 'regarding Plaintiff's reputation for truthfulness or untruthfulness in her business community." *Id.* at *4. The court ruled that the defendants failed to provide any explanation or argument to link that goal to any "relevant information in Plaintiff's employment records," which the court found

11

would "likely be inadmissible" under Federal Rule of Evidence 404. *Id.* at *5; *see also*

*U.S. ex rel. Heesch v. Diagnostic Phys. Grp., P.C.*, 2014 WL 2568891, at *5, 8 (S.D. Ala.

June 9, 2014) (quashing subpoenas as overbroad because they were "seeking any and

all communications and documents relating or pertaining to [the relator]" in attempt

to find prior bad "behavior" by relator). In this case, in contrast, Provider Defendants

are seeking the same specific information allowed to be subpoenaed in *Wlochowski* for

the same reasons; that is, not a broad request for "any" records regarding Relator in a

generalized search for possible reputation for truthfulness or bad behavior evidence as

in *Handrup* and *Heesch*, but information "relevant to assess her credibility of any

testimony she might provide about her knowledge and abilities regarding" assessing

allegedly improper protocols, 2016 U.S. Dist. LEXIS 188970, at *7-8, specifically

relating to "documentation or coding of patient diagnoses." Dkt. 164-1, -2, and -3 at

5-6.

In *Handrup*, *Heesch*, and every other case Relator relies on, the document

requests were far broader than Provider Defendants' requests and were not relevant to

assessing the relator's or plaintiff's knowledge and abilities to evaluate the allegedly

improper protocols at the heart of the case. The defendants in *Maxwell* sought "[a]ny

and all Documents in Your possession related to" the plaintiff. *Maxwell v. Climate First

Bank*, No. 8:23-cv-457-JSM-UAM, 2023 U.S. Dist. LEXIS 166767, at *1-2 (M.D. Fla.

Sep. 19, 2023). Similarly, the defendant in *Premer* sought "any and all notes,

memoranda, records, and documentation of any nature whatsoever (with the

exception of medical records) which regard or reference" the plaintiff. *Premer v.*

*Corestaff Servs.*, L.P., 232 F.R.D. 692, 692 (M.D. Fla. 2005). The request in *Gonzalez*
sought "[a]ny and all records relating to employment … regarding" the plaintiff.
*Gonzalez v. Springs of Lady Lake Alf, L.L.C.*, No. 8:10-cv-1693-T-17AEP, 2011 U.S. Dist.
LEXIS 172999, at *3 (M.D. Fla. Mar. 10, 2011). The request in *Paxton* sought "[a]ll
documents related to your employment of" the plaintiff. *Paxton v. Landesk Software,
Inc.*, 332 F.R.D. 368, 369 (M.D. Fla. 2019). Finally, the defendants in *Alvarez* sought
plaintiff's "complete personnel file" and voluminous other materials and again, failed
to connect that to anything other than generalized interest in unidentified potential
credibility evidence and "failed to establish how the records sought pertain to
Plaintiff's non-pecuniary losses" for emotional distress. *Alvarez v. Lakeland Area Mass
Transit Dist.*, No. 8:19-cv-1044-T-33SPF, 2020 U.S. Dist. LEXIS 262384, at *3-4
(M.D. Fla. Feb. 24, 2020).

Provider Defendants do not seek all documents relating to Relator, nor do they
seek documents unconnected to matters Relator has put at issue in the case. Unlike in
the cases Relator relies on, Provider Defendants seek specific categories of documents
relevant to the issues in this case, narrowly focused on "documentation or coding of
patient diagnoses," job performance, concerns or complaints about patient care or
coding, and employment agreements and termination thereof (Dkt. 164-1, -2, and -3
at 5-6). Moreover, *Maxwell*, *Premer*, *Gonzalez*, *Paxton*, and *Alvarez* are all employment
discrimination cases, not FCA cases involving physician relators opining on medical
issues as in this case, and they are therefore inapposite here.

13

In addition, the Court may not quash the subpoenas based on Relator's unsupported assertion that Provider Defendants could obtain all the documents sought directly from Relator (Dkt. 164 at 9-10). All the case law Relator cites on this point notes that *current* employment information may be obtainable from the plaintiffs, not documents from *former* employers in years past as Provider Defendants' subpoenas seek. *Maxwell*, 2023 U.S. Dist. LEXIS 166767, at *1 (subpoena to plaintiff's current employer); *Paxton*, 332 F.R.D. at 369 (plaintiff's current compensation can be obtained from plaintiff). It makes sense that individuals would be in possession of their current employment information, but it is less likely that they retained copies of documents from all their former employers many years earlier. Nor has Relator provided any support for contending that she has copies of all the documents Provider Defendants seek, including former employers' internal communications about her job performance and concerns or complaints about her coding and patient care.

Moreover, even where documents are sought from a relator's current employer, which might run a risk of disruption to relator's current employment that is absent when former employers are subpoenaed as in this case, a relator's representation that she can produce the documents sought "does not foreclose Defendant from pursuing other avenues in discovery" and "the responses from [the relator's current employer] may serve as a supplement to Relator's discovery production." *Wlochowski*, 2016 U.S. Dist. LEXIS 188970, at *10. The court in *Wlochowski* also stated that "Defendant's need for information is greater than the possible injury that might result if the subpoena is issued" even to a relator's current employer, whereas a relator's alleged privacy

14

interest in preventing subpoenas to her former employers, as in this case, would be entitled to even less weight. *Id.* at *11-12 (holding that "Relator's generalized allegation that the subpoena may harm her relationship with her current employer does not constitute the requisite good cause" for a protective order).

Relator simply has not carried her heavy burden of showing irrelevance of the materials sought to this case. Provider Defendants should not be handcuffed in cross-examining Relator about her prior work experience, training, education, knowledge, and other relevant information about her background regarding the basis and support for her medical opinions in this case. It is particularly unfair and one-sided for Relator to move to compel Provider Defendants to produce nearly five years' worth of voluminous documents from before she joined VIPcare while not agreeing to discovery into anything Relator learned or did before she joined.

## II.    Moreover, Relator Does Not Even Have Standing to Challenge Several Requests in the Subpoenas.

In addition, Relator does not have standing to move to quash at least Requests 5 and 6 in the subpoenas, which seek policies, guidance, protocols, or guidelines of her former employers and their training or education relating to documentation or coding of patient diagnoses. A party normally has no standing to quash a third-party subpoena. *See Martin v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, No. 8:13-cv-00285-T-27MAP, 2013 U.S. Dist. LEXIS 203007, at *3 (M.D. Fla. July 1, 2013). A party only has standing to move to quash a third-party subpoena "where the party demonstrates a personal privacy right or privilege" in the information sought. *Id.* Employees and

former employees "lack any legitimate or personal interest in their employers' policies that would grant them standing." *See Kyner v. Loveridge*, No. 2:17-cv-00373-JPH-MJD, 2019 U.S. Dist. LEXIS 68500, at *5 (S.D. Ind. Apr. 23, 2019). Because Requests 5 and 6 seek only policies, training, and guidance from Relator's former employers, Relator has no personal privacy right in them and lacks standing to move to quash them.

## CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court deny Plaintiff's Motion to Quash and for a Protective Order.

Dated: October 13, 2023          Respectfully submitted,

*/s/ Jason P. Mehta*

Jason P. Mehta (Fl. Bar No. 106110)
*Primary email:* jmehta@foley.com
*Secondary email:* dmills@foley.com
Natalie Hirt Adams (Fl. Bar No. 1030877)
*Primary email:* nhadams@foley.com
*Secondary email:* dmills@foley.com
Lauren L. Valiente (Fl. Bar No. 034775)
*Primary email:* lvaliente@foley.com
*Secondary email:* dguillen@foley.com
**Foley & Lardner LLP**
100 N. Tampa Street, Suite 2700
Tampa, FL 33602
Telephone:  (813) 229-2300
Facsimile:  (813) 221-4210

*Counsel for Defendants Physician Partners, LLC, Florida Medical Associates, LLC, and Anion Technologies, LLC*