# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UNITED STATES OF AMERICA
*ex rel.* DR. CLARISSA ZAFIROV,

      Plaintiff/Relator,

v.

PHYSICIAN PARTNERS, LLC;
FLORIDA MEDICAL ASSOCIATES,
LLC, d/b/a VIPCARE; ANION
TECHNOLOGIES, LLC; FREEDOM
HEALTH, INC.; and OPTIMUM
HEALTHCARE, INC.,

      Defendants.

Case No. 8:19-cv-01236-KMM-SPF

## DEFENDANTS FREEDOM HEALTH, INC. AND OPTIMUM HEALTHCARE, INC.'S MOTION TO COMPEL RESPONSES TO REQUESTS FOR PRODUCTION NOS. 4–7

Under Federal Rule of Civil Procedure 37, Defendants Freedom Health, Inc. and Optimum Healthcare, Inc. (collectively, "Freedom Defendants") move to compel Relator Dr. Clarissa Zafirov ("Relator") to produce: (1) a privilege log describing each document or communication responsive to Freedom Defendants' Requests for Production (RFPs) that she is withholding from production with sufficient detail to permit Freedom Defendants to assess the viability of her claims of privilege or other protection and (2) all responsive nonprivileged communications and documents that Relator cannot justify withholding.[1]  Relator has repeatedly refused to comply with the most basic discovery obligation that she describe the specific responsive documents

---

[1] Unless otherwise specified all internal quotations and citations are omitted.

she is withholding.  Instead, Relator asserts a blanket claim of privilege over plainly relevant communications with the government.  Relator's position that the allegedly privileged nature of these documents absolves her from producing a privilege log has the obligation exactly backwards.  Moreover, Relator's blanket refusal to log these documents obscures the fact that many of her privilege claims over specific documents are likely weak: discovery has already confirmed that some of the relevant communications *are not* privileged, and Relator's refusal to provide any justification for withholding particular documents means that Freedom Defendants cannot assess or challenge the viability of Relator's privilege claims.  The Court should compel Relator to comply with well-established principles enshrined in the Federal Rules and binding precedents.

## I.   INTRODUCTION AND STATEMENT OF FACTS

### A.   Relator's Communications with the Government and the Role of Those Communications in the Amended Complaint

Relator filed this False Claim Act ("FCA") action under seal against Freedom Defendants in May 2019.  Doc. 1–3.  In June 2020, the Court unsealed the complaint, Doc. 17, and the government declined to intervene in September 2020, Doc. 40.  After dismissing Relator's initial complaint, Doc. 81, the Court permitted Relator to file an Amended Complaint, which Relator filed in November 2021, Doc. 86 ("Am. Compl.").  The Amended Complaint alleged the same scheme, but cited additional conversations Relator purportedly had with employees of the defendants.  *See, e.g.*, Am. Compl. at ¶¶ 114, 133, 176–79, 194.

These conversations between Relator and Defendants' employees play a central role in Relator's Amended Complaint.   Through Defendants' discovery efforts, including *Touhy* requests to the Department of Justice and the Department of Health and Human Services, Freedom Defendants confirmed that many of the conversations quoted or referenced in the Amended Complaint were captured in recordings made by Relator as part of the government's investigation of her claims.   Relator and the government have since produced numerous recordings, and Freedom Defendants' review of those recordings has identified material contradictions between the recordings and the allegations in the Amended Complaint purportedly describing those conversations.  The recordings also confirm the existence of additional relevant communications between Relator and government agents that were *not* captured by the recordings.

For example, the first audio recording by Relator on August 14, 2019, reveals that Relator and Health and Human Services Office of the Inspector General Special Agent Raquel Garrido communicated by text message.   The recording captures the following exchange:

> **Relator Zafirov**: "Oh, quick question before you… Okay."
> **Agent Garrido**: "It started recording."
> **Relator Zafirov**: "I'll ask you after—after all."
> **Agent Garrido**: "This is Special Agent Raquel Garrido with the Office of Investigation, Office of Inspector General, United States Department of Health and Human Services, beginning a consensual monitoring recording on August 14, 2019, OI File Number M19001749.  Present with me is Dr. Clarissa Zafirov.  The recording device will be provided

> to Dr. Zafirov, the consenting part—party.  Dr. Zafirov will now state her name for voice identification purposes."
> **Relator Zafirov**: "Dr. Clarissa Zafirov."
> **Agent Garrido**: "I will now hand the recording device to the doctor. Okay.  Here you go."
> **Relator Zafirov**: "Alright.  **I will text you**, then."
> **Agent Garrido**: "**Text me the questions** . . ."
> **Relator Zafirov**: "Perfect."
> **Agent Garrido**: "And I will address those."

Quinn Decl. at 7 (emphasis added).  This is only one of many references to text messaging in the recorded conversations between Relator and Agent Garrido; the recordings from August 15, August 30, September 11, September 12, September 18, and October 2, 2019 contain similar references.  *Id.* at 9.

Beyond these text messages, Relator and Agent Garrido also had oral conversations off the record.  Such discussions are evidenced by the final audio file from October 9, 2019.  The last minutes of the recording captured a conversation between Relator and Agent Garrido in the distant background.  The conversation is difficult to hear, but Relator and Agent Garrido can be heard having the following exchange:

> **Relator Zafirov**: "They're watching me very closely."
> **Agent Garrido**: "Hmm, I haven't gotten that, but maybe it's a different chat."
> **Relator Zafirov**: "What's the date on that one?"
> **Agent Garrido**: "September 26.  [Indiscernible]  I can turn it [Indiscernible]."
> **Agent Garrido**: "This is Special Agent Raquel Garrido.  It is October 9, 2019, 7:33pm.  I have received the device."
> **Relator Zafirov**: "I'll tell you right now— [Indiscernible]"
> **Agent Garrido**: "[Indiscernible]—and turn it off as well."

*Id.* at 8.

Given the centrality of the recordings in Relator's Amended Complaint—and Freedom Defendants' major disputes with Relator's retelling of the conversations they capture—nonprivileged communications concerning those recordings and the underlying events will be critical facets of Freedom Defendants' defense of this action. These documents will likely reveal key contextual information about the recorded conversations, or reveal the existence of conversations that were not recorded at all. They could reveal the content of those unrecorded conversations with the defendants, or show Relator's contemporary understanding of the interactions alleged in the Amended Complaint.

More broadly, Relator's communications with the government will be key evidence in assessing her credibility. Freedom Defendants anticipate that Relator will be a central witness at trial, and given the identified discrepancies between the recordings and Relator's allegations, Relator's credibility is assured to be a fundamental issue at trial.[2] Relator's statements to the government—likely made in the hopes of securing the government's intervention in this case—may provide further evidence of her lack of credibility, and therefore are relevant and important evidence in this case.

---

[2] Courts have repeatedly recognized the relevance of a relator's credibility as a witness. *See, e.g.*, *Graves v. Plaza Medical Centers, Corp.*, 2017 WL 3895438 (S.D. Fla. Sept. 6, 2017) (denying a motion in limine to exclude certain evidence because the evidence was "relevant to the issue of the relator's credibility."); *Jones ex rel. U.S. v. Massachusetts General Hosp.*, 780 F.3d 479 (1st Cir. 2015) (upholding district court admission of certain evidence because it went "to the heart of [relator's] credibility" and noting that "relator's testimony and credibility were critical to the FCA claim.").

Given Relator's refusal to individually list the items she claims are privileged, Freedom Defendants are unaware of the full universe of documents and communications exchanged with the government.  For example, in addition to communications regarding the recordings and conversations captured thereon, there may be documents describing Relator's investigations preceding her complaint, or communications with the government disclosing the facts underlying her allegations (or acknowledging the *absence* of those underlying facts).  All of these materials would be plainly relevant to the veracity of Relator's allegations and her future testimony. And, as shown below, *many* of these relevant documents will not be subject to any viable privilege claim.

### B.    Discovery Requests at Issue

On December 23, 2022, Freedom Defendants served their first set of RFPs on Relator, which included four requests encompassing Relator's communications with and documents given to or received from the government:

- **RFP 4**: All Documents You provided to the Government Concerning any of the allegations in the Amended Complaint.
- **RFP 5**: All Documents the Government provided to You Concerning any of the allegations in the Amended Complaint.
- **RFP 6**: All Communications between You and the Government Concerning any of the allegations in the Amended Complaint.
- **RFP 7**: All Documents the Government provided to You through any Communication with the Government related to this matter, including, without limitation, in response to Your Communication with the

United States Attorney's Office described in Jillian Estes's December 16, 2022 email to Elizabeth Bock.

Quinn Decl., Ex. A at 8–9.  Relator responded on February 21, 2023, objecting to all four requests and refusing to "provide her disclosure statements, or any of her communications with the Government" on the grounds that they are protected by "the attorney-client privilege, joint prosecution privilege, common interest privilege, the attorney work-product doctrine, and other applicable privilege or protection."  Quinn Decl., Ex. B at 5–7.

Over the next nine months, Freedom Defendants and Relator held meet-and-confers and exchanged correspondence in which Freedom Defendants outlined the relevant law and Relator's obligations to produce nonprivileged communications as well as a privilege log with details sufficient to enable the Court and Freedom Defendants to evaluate Relator's privilege claims.  *See, e.g.*, Quinn Decl., Ex. C at 5–6.  Relator continually refused to produce any communications with the government, instead finally offering to:

> (1) provide a privilege log which categorically logs all common interest privileged communications, by identifying the date range of such communications, the date that the prefiling disclosure was made to the Government, and the date that any written disclosure statement was provided to the Government; (2) produce the non-work product documents provided to the Government; and (3) produce any records we received in response to our *Touhy* request.

Quinn Decl., Ex. D at 1.  As discussed in detail below, Relator's proposal fails to meet her discovery obligations, disregards the basic requirements for a privilege log, and misapprehends the common-interest doctrine.  *See infra*, Parts III.A–C.  Relator

must describe *each* responsive communication and document she is withholding with adequate detail; and what Relator cannot justify withholding, she must produce. This Court should accordingly compel Relator to produce (1) a privilege log of withheld responsive communications and documents with sufficient detail for the Court and Freedom Defendants to evaluate her claims of privilege or protection and (2) all nonprivileged and unprotected communications and documents exchanged with the government.

## II.   LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A party cannot simply declare an item privileged and, thereby, prevent discovery or further inquiry. Instead, the Federal Rules require that the party (1) "expressly make the claim" of privilege and (2) "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A); *Gazzara v. Pulte Home Corp.*, No. 6:16-cv-657-Orl-31TBS, 2016 WL 7335479, at *4 (M.D. Fla. Dec. 16, 2016) (The party asserting a privilege "bears the burden to provide a factual basis for its assertions.").

## III.   ARGUMENT

Relator has failed to meet even the most fundamental discovery requirement that a party withholding responsive communications or documents provide a privilege

log with the requisite information about each of the purportedly privileged items. Instead, misapplying the common-interest doctrine, Relator declared that any communication with the government is protected by "categorical privilege" and, therefore, exempted from both discovery and privilege-log requirements. Quinn Decl., Ex. D at 2–3. Relator's refusal to comply with her discovery obligations is unwarranted and turns on a misapprehension of the law. As the following sections explain: (1) Relator is obligated under the Federal Rules, Eleventh Circuit precedent, and the Middle District's Civil Discovery Handbook to provide an adequate privilege log; (2) the common-interest doctrine does not create an independent privilege, and so Relator must show that each document or communication was independently privileged for the common-interest doctrine to apply; and (3) Relator's blanket categorical-privilege theory is untenable as there are at least two categories of communications and documents requested in the relevant RFPs that are not "categorically" privileged.

### A.   Relator Must Provide a Sufficient Privilege Log.

That some, or even many, responsive communications and documents are privileged does not relieve Relator of the burden to produce a detailed privilege log individually listing the purportedly privileged communications and documents along with information sufficient for the Court and Freedom Defendants to evaluate any claimed privileges. *See* Fed. R. Civ. P. 26(b)(5)(A).

Relator cannot dispute that she bears the burden of demonstrating that the documents and communications she claims are privileged are in fact privileged.

*Republic of Ecuador v. Hinchee,* 741 F.3d 1185, 1189 (11th Cir. 2013); *In re Grand Jury Subpoena,* 831 F.2d 225, 227 (11th Cir. 1987).   Relator asserts she can meet that burden merely by producing a "categorical privilege log[]," which provides a single "date range of [the purportedly privileged] communications."   Quinn Decl., Ex. D at 3. Relator's offered "categorical privilege log[]" falls well short of the specific, individualized log that the Federal Rules and this Circuit require.

The Federal Rules are unambiguous: if a party withholds information on the grounds of privilege or other protection, it must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."   Fed. R. Civ. Pro. 26(b)(5)(A); *see* Middle District of Florida's Civil Discovery Handbook Section VI.A.1 (requiring the asserting party to provide a description that "will enable other parties to assess the applicability of the privilege or protection").   The Rules require much more than the resisting party's categorical claim that all communications within a certain date range are privileged.[3]

---

[3] Specifically, the Middle District of Florida's Civil Discovery Handbook requires that the party asserting a privilege provide "A description of the document, e.g., letter or memorandum"; "Its date"; "The name, address and employer of the author(s) of the document, or the person giving, recording and/or transcribing a statement"; "Purpose for which the document was created and transmitted"; "Subject of the document"; "Persons to whom the document is addressed"; "Persons indicated thereon as having received copies"; "Name, address, job title and employer of any person known or believed to have received or seen the document or any copy or summary thereof"; "The relationship to each other of the author, addressee, and any other recipient"; "Degree of confidentiality with which it was treated at the time of its creation and transmission, and since"; "Other information sufficient to identify the document for a subpoena duces tecum, including, if available, Bates numbers assigned to the document"; and "Any other facts relevant to the elements

The decisions of the Eleventh Circuit and courts in the Middle District are unambiguous on this point. As a court in this District recently explained, "[t]he standard for testing the adequacy of a privilege log is whether, *as to each document*, it sets forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." *W. Wyvern Cap. Invs., LLC v. Bank of Am., N.A.*, No. 8:22-cv-191-WFJ-SPF, 2023 WL 3751995, at *1 (M.D. Fla. May 3, 2023) (Flynn, J.) (emphasis added); *Gazzara*, 2016 WL 7335479, at *4 (holding a party's "burden is met when the party produces a *detailed privilege log stating the basis of the claimed privilege for each document in question*" (emphasis added)). This is because "[f]or the adversarial system to function properly, each message needs to be identified and described in a manner that fairly permits the opposing side to assess whether the claim of privilege is valid." *U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.*, No. 6:09-cv-1002-Lrl-31TBS, 2012 WL 5415108, at *5 (M.D. Fla. Nov. 6, 2012). Without a detailed privilege log, the court and other parties are forced to rely on "merely conclusory or ipse dixit assertions" of privilege by a party, meaning "spurious claims could never be exposed." *Montes v. Liberty Mut. Fire Ins. Co.*, No. 6:22-cv-920-WWB-LHP, 2023 WL 2743210, at *2 (M.D. Fla. Mar. 31, 2023). And, so, in cases where the party asserting privilege "did not describe the nature of the undisclosed communications in a manner that allowed the [other party] and the district court to

---

of the particular privilege or protection asserted." Middle District of Florida's Civil Discovery Handbook Sections IV.A.2, III.B.9.

evaluate his claimed privilege," the Eleventh Circuit has upheld motions to compel. *See, e.g.*, *Johnson v. Gross*, 611 F. App'x 544, 547 (11th Cir. 2015).

The privileges Relator asserts further underscore the necessity of a privilege log as the test for each asserted privilege is fact intensive. Without an adequate privilege log, it is impossible to determine whether a specific communication or document satisfies the requirements laid out by the Eleventh Circuit for each of the privileges Relator invokes. The common-interest doctrine that Relator cites to justify her total refusal to log the relevant documents is not an independent privilege, but rather a doctrine that prevents waiver of a *separate* underlying privilege; it does not confer privilege where none previously existed. *See infra* Part III.B. As for the underlying privileges Relator has generally identified—the attorney-client privilege and work-product protection—both privileges are highly fact specific, and neither are absolute. For example, determining whether attorney-client privilege attaches involves application of a four-prong test, *Butterworth v. Lab'y Corp. of Am. Holdings*, No. 3:08-cv-411-J-34JRK, 2010 WL 11470894, at *5 (M.D. Fla. June 15, 2010), and the work-product protection analysis requires the fact-specific determination of whether "the primary motivating purpose behind the creation of the document [is] to help in ongoing litigation or possible future litigation," *Schuller v. Geovera Specialty Ins. Co.*, No. 8:16-cv-2606-T-35AAS, 2018 WL 11344857, at *2 (M.D. Fla. Dec. 6, 2018). Furthermore, work-product protection, in particular, can be overcome as to "factual work product" on a showing of "substantial need" and "undue hardship." *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1335 (11th Cir. 2018). It is impossible

to determine whether either protection is properly invoked, let alone whether any exceptions apply, when Relator simply lists a "date range" and declares the communications to be "withheld under the common interest privilege." Quinn Decl., Ex. D at 3.

Relator's correspondence with Freedom Defendants indicates that her theory of "categorical privilege logs" relies on *Teledyne Instruments, Inc. v. Cairns*, No. 6:12–cv–854–Orl–28TBS, 2013 WL 5781274, at *16 (M.D. Fla. Oct. 25, 2013). *See* Quinn Decl., Ex. D at 3 (citing *Teledyne*). However, as Freedom Defendants explained to Relator, that decision is inapposite. *See* Quin Decl., Ex. E at 3. In *Teledyne*, the court noted that "an itemized privilege log is not always necessary to assess whether a communication is protected," and so it permitted the withholding party to list categories of documents, rather than each document individually. 2013 WL 5781274, at *15. However, this was because "the categories of information are sufficiently articulated to permit the opposing party to assess the claims of privilege or work product protection." *Id.* at *16. The court made clear that such categorical listings are only appropriate where "the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the claim is well-grounded." *Id.* That is not the case here.

It cannot be said that "the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the claim is well-grounded," *Teledyne Instruments, Inc.*, 2013 WL 5781274, at *16, so Relator's reliance on *Teledyne* is misplaced. *See Johnson*, 611 F. App'x at 547

-13-

("Blanket assertions of privilege before a district court are usually unacceptable . . . Instead, [an attorney] must present himself with his records for questioning, and as to . . . *each* record elect to raise or not to raise the defense." (quoting *Grand Jury Subpoena*, 831 F.2d 225, 227 (11th Cir. 1987) (emphasis in the original))).  Among other things, any privilege challenges will likely turn on particularized facts like the dates on which specific communications took place; the identification of the parties to the communications (including whether any communications were made by or in the presence of attorneys); the purpose of the communications (including whether the communications involved legal advice); or the description of the content of the communications (including whether the communications involved protected work product).  Quinn Decl., Ex. D at 3.  Relator must produce an individualized privilege log that is adequate for the Court and Freedom Defendants to evaluate the claimed privileges and protections.

### B.  Relator Must Produce Nonprivileged Responsive Documents and Communications.

Relator's blanket application of the common-interest doctrine to each and every communication with the government is unsupported by the law.

### 1.  The Common-Interest Doctrine Does Not Confer Privilege Where None Previously Existed.

Relator's theory of privilege is based on a fundamental misapprehension of the common-interest doctrine, which she believes allows her to withhold all communications and documents exchanged with the government.  Relator's misunderstanding of privilege law further underscores the need for an adequate

privilege log that will allow the Court and Freedom Defendants to meaningfully assess her privilege claims.

"The common interest doctrine is not an independent source of privilege, but rather acts as an exception to the general rule that a voluntary disclosure of privileged material to a third party waives the attorney-client privilege." *Lane Constr. Corp. v. Skanska USA Civ. Se., Inc.*, No. 6:21-cv-164-RBD-DCI, 2022 WL 18773723, at *1 (M.D. Fla. Nov. 7, 2022). The common-interest doctrine exists to permit a party to "share its work product with another party without waiving" the underlying work-product or attorney-client privilege where, among other things, there is "a common legal interest among" the sharing parties. *Id.*; *see also United States v. Almeida*, 341 F.3d 1318, 1324 (11th Cir. 2003) (explaining that "the attorney-client privilege gives rise to a concomitant 'joint defense privilege' which serves to protect the confidentiality of communications passing from one party to the attorney for another party."); 98 C.J.S. Witnesses § 340 ("The common-interest privilege is not an independent privilege, but merely an exception to the general rule that no privilege attaches to communications that are made in the presence of or disclosed to a third party."). And, so, "[i]t is axiomatic that the common interest doctrine presumes a valid underlying privilege." *In re Photochromic Lens Antitrust Litigation*, No. 8:10-MD-2173-T-27EAJ, 2013 WL 12316874, at *2 (M.D. Fla. June 11, 2013). Put differently, "[i]f a communication or document is not otherwise protected by the attorney-client privilege or work product doctrine, the common interest doctrine has no application." *In re Commercial Money Ctr., Inc. Equip. Lease Litig.*, 248 F.R.D. 532, 536 (N.D. Ohio 2008).

Courts have thus rejected attempts by relators to invoke the common-interest doctrine to confer privilege on previously unprivileged communications or documents exchanged with the government.  For example, the court in *United States ex rel. Minge v. TECT Aero., Inc.*, rejected the relator's attempted "expansion of the" common-interest doctrine, holding that the doctrine did not protect otherwise unprivileged communications or documents, and, so, the relator could withhold neither "the communications from Relator Minge to government counsel" nor a non-privileged memorandum prepared by relator for the government.  No. 07-1212-MLB, 2011 WL 3651363, at *1 (D. Kan. Aug. 18, 2011).  Similarly, in *United States ex rel. Scott v. Humana Inc.*, the court held that the relator "greatly overstate[d] the scope of the common interest rule," explaining that it "is not an independent source of privilege or confidentiality."  No. 3:18-CV-00061-GNS-CHL, 2021 WL 3909906, at *4, *7 (W.D. Ky. Aug. 31, 2021) (ordering the relator to produce a privilege log detailing withheld communications with the government).

Relator's assertion of "categorical privilege" based on the theory that "once the unity of interest has been established, the common interest doctrine attaches and subsequent communications are protected," Quinn Decl., Ex. D at 2–3, is wholly indefensible.  As is Relator's unsupported assertion that she will not provide an individualized privilege log because "[i]nformation about the nature and pace of Relator's protected communications with the United States is not necessary to enable Defendants to evaluate the privilege, but conversely would significantly invade it."  *Id.* at 2.  Taking Relator's theory to its logical conclusion would mean that *all* privilege

logs divulge privileged information about the timing of communications, since litigants must generally disclose the dates of any allegedly privileged communications in any privilege log.  *See* Middle District of Florida's Civil Discovery Handbook Sections III.B.9, VI.A.2.

The Court should compel Relator to apply the familiar principles governing privilege claims, which require Relator to assert privilege claims on a compliant privilege log and produce all responsive, nonprivileged documents.

### C.   Relator's Categorical Privilege Claim Ignores At Least Two Categories of Requested Communications and Documents That Are Not Privileged.

Relator's assertion of a "categorical privilege" also ignores categories of communications and documents that are not protected by attorney-client privilege, work-product privilege, or the common interest doctrine.  The following sections are just two examples of the communications and documents that Relator cannot show to be privileged.  That Relator's claim of "categorical privilege" extends over these documents demonstrates the need for a compliant privilege log, at the very least.

### 1.   Communications with the Government Pre-Dating Relator's Disclosure Statement.

The common-interest doctrine does not extend to Relator's communications, including her counsel's communications, with the government pre-dating her filing of the disclosure statement; she waived privilege as to those communications and all documents exchanged through those communications.

-17-

To fall within the scope of the common-interest doctrine, the privileged communication or document must have been shared with a party with whom the sharing party had a "substantially similar" "common legal interest." *Lane Construction Corp.*, 2022 WL 18773723 at *1–2. If there was not a common legal interest among the sharing parties, the doctrine does not apply and any privilege is waived as to the communications or documents shared. *See id.*; *U.S. v. Patel*, 509 F. Supp. 3d 1334, 1340 (S.D. Fla. Dec. 23, 2020).

No common interest existed between Relator and the government before she filed her disclosure statement. The False Claims Act requires a would-be relator to provide a "copy of the complaint and written disclosure of substantially all material evidence and information the person possesses" to the government. 31 U.S.C. § 3730(b)(2). The would-be relator's relationship with the government only begins with the filing of the complaint and disclosure statement as before that "any other potential relator could have filed a complaint and effectively ended [the would-be relator's] ability to bring a claim under the FCA." *Hamilton v. Yavapai Cmty. Coll. Dist.*, No. CV-12-08193-PCT-GMS, 2016 WL 8199307, at *3 (D. Ariz. Nov. 2, 2016).

Following the Act's text, numerous courts have held that "any common interest privilege is properly asserted ***only once*** [the relator] made his pre-filing disclosure to the Government." *United States v. Cameron-Ehlen Grp., Inc.*, No. 13-cv-3003 (WMW/DTS), 2019 WL 6875354, at *1 (D. Minn. Dec. 17, 2019) (emphasis added); *see also Miller v. Holzman*, 240 F.R.D. 20, 21 (D.D.C. 2007) (finding common interest only after relator filed the disclosure statement and complaint because, at that point,

"the United States and the relator had a common interest in the prosecution of common defendants in an *existing* civil or criminal case" (emphasis added)). As the court in *Hamilton* explained, prior to disclosure, the would-be relator is "just an independent citizen" with "no more common interest in bringing this claim than any individual who wishes to see the law upheld." 2016 WL 8199307, at *3. It is not until that disclosure that the "independent citizen" becomes a relator and gains a common legal interest in the prosecution of the FCA action with the government. *Id.*

Relator must produce any communications, whether from Dr. Zafirov or her counsel, or documents shared with the government before she filed her complaint and disclosure statement. Regardless of whether these communications were otherwise privileged, Relator waived that privilege by voluntarily communicating or sharing documents with the government before she made her False Claims Act disclosure to the government. *See Cameron-Ehlen Grp., Inc.*, 2019 WL 6875354, at *1 ("The very nature of the pre-filing disclosure makes the date it occurred a clear point of demarcation."); *Hamilton*, 2016 WL 8199307, at *4 (holding that any privileges were waived when the relator "voluntarily gave the government" the document before submitting the pre-filing disclosure).

### 2. Relator's Direct Communications with Government Agents.

Another example that undermines Relator's categorical-privilege theory is her own communications with non-attorney government agents. It is not clear how these direct communications could be privileged. In order for the Court and the parties to

assess and address these issues, Relator must at least produce a privilege log justifying her withholding or produce communications between herself and government agents.

The attorney-client privilege protects confidential communications between an attorney and a client or prospective client made for the purposes of soliciting or providing legal advice or services, *see In re Grand Jury Proceedings*, 899 F.2d 1039, 1042 (11th Cir. 1990), but Dr. Zafirov is not a client of the government, and government attorneys are not "her" attorneys. The "interests of the Relator and the Government are not always and necessarily aligned," and, at points, those interest may be "well at odds." *Cameron-Ehlen Grp., Inc.*, 2019 WL 6875354, at *2 (noting that "the statute authorizing *qui tam* lawsuits gives the Government the power effectively to sideline a relator"). There is no plausible argument that the government is or was Dr. Zafirov's attorney, and so the attorney-client privilege is inapplicable to communications between herself and government agents. *U.S. ex rel. Minge v. TECT Aerospace, Inc.*, No. 07-1212-MLB, 2011 WL 1885934, at *7 (D. Kan. May 18, 2011) (explaining that the common-interest doctrine does not "create an attorney-client privilege between Government counsel and Relators").

Relator has not even attempted to meet her burden of showing how Dr. Zafirov's direct communications with government agents could be entitled to work-product protection. *United States ex rel. Scott v. Humana, Inc.*, No. 3:18-CV-00061-GNS-CHL, 2023 WL 3470893, at *2 (W.D. Ky. May 15, 2023) (explaining that a "[relator's] communications with the government are only protected to the extent that they

include work product created on Relator's behalf by a nonexpert representative, such as Relator's counsel").[4]

## IV.    CONCLUSION

Relator's duties to produce an adequate privilege log and produce nonprivileged documents are indisputable.  Yet, Relator has repeatedly claimed that she need only produce a "categorical privilege log" and can avoid production of all communications and documents exchanged with the government under the common-interest doctrine. Neither claim holds water.

For the foregoing reasons, the Court should compel Relator to produce a privilege log in compliance with the Federal Rules and binding precedent and to produce all nonprivileged communications and documents responsive to Freedom Defendants' RFPs.

---

[4] Even if certain communications are protected by the attorney work-product doctrine, that does not end the inquiry or absolve Relator of the duty to provide a privilege log.  The work-product doctrine is not absolute.  Rather, "[d]iscovery may be had into factual work product upon a party showing 'substantial need for the materials to prepare its case' and that it 'cannot, without undue hardship, obtain their substantial equivalent by other means.'"  *Drummond Co., Inc.*, 885 F.3d at 1335 (quoting Fed. R. Civ. P. 26(b)(3)(A)).  As a "critical witness[] in this case," Dr. Zafirov's prior statements to the government "are evidence for which the defense has a substantial need and which cannot be obtained by other sources."  *See U.S. ex rel. Minge*, No. 07-1212-MLB, 2011 WL 1885934, at *8 (D. Kan. May 18, 2011) (ordering production of communications between the individual relator and government agents and attorneys); *see also United States ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 419, 425–26 (D.D.C. 2014) ("Particularly in *qui tam* actions, fairness dictates that both sides have equal access to relevant witness statements developed by law enforcement.").  Relator must produce a privilege log adequate for Freedom Defendants and the Court to assess her privilege claims and, if applicable, Freedom Defendants' substantial need.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Freedom Defendants conferred with counsel for Relator via teleconference regarding the relief requested in this Motion, and Relator does not agree to produce the requested, nonprivileged documents and communications or produce an adequate privilege log.

Dated:  February 20, 2024

Respectfully submitted,

By: _/s/ Scott Drake_

Scott Drake (Lead Counsel)*
O'MELVENY & MYERS LLP
2801 North Harwood Street, Suite 1600
Dallas, TX 75201
(972) 360-1915
(972) 360-1901 (fax)
sdrake@omm.com

Benjamin D. Singer*
Amanda M. Santella*
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
(202) 383-5414 (fax)
bsinger@omm.com
asantella@omm.com

Elizabeth M. Bock*
Elizabeth A. Arias*
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
(213) 430-6000
(213) 430-6407 (fax)
ebock@omm.com
earias@omm.com

Ginger Boyd
Fla. Bar No. 294550
NELSON MULLINS RILEY &
SCARBOROUGH LLP
215 South Monroe Street, Suite 400
Tallahassee, FL 32301
(850) 205-3356
(850) 521-1472 (fax)
Ginger.Boyd@nelsonmullins.com

*Counsel for Defendants Freedom Health, Inc.
and Optimum Healthcare, Inc.*

*\* admitted pro hac vice*

-23-

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2024, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will provide electronic service to all counsel of record.

By: */s/ Scott Drake*

Scott Drake (Lead Counsel)*

*Counsel for Defendants Freedom Health, Inc. and Optimum Healthcare, Inc.*

*\* admitted pro hac vice*