# EXHIBIT C



O'Melveny & Myers LLP  
1625 Eye Street, NW  
Washington, DC 20006-4061

T: +1 202 383 5300  
F: +1 202 383 5414  
omm.com

April 17, 2023

**Benjamin D. Singer**  
D: +1 202 383 5201  
bsinger@omm.com

**SENT VIA EMAIL**

Jillian L. Estes  
Frederick M. Morgan, Jr.  
Chandra Napora  
Jonathan Lischak  
Morgan Verkamp LLC  
4410 Carver Woods Drive, Suite 200  
Cincinnati, OH 45242

Kenneth J. Nolan  
Marcella Auerbach  
Nolan, Auerbach, & White, LLP  
435 N. Andrews Ave., Suite 401  
Fort Lauderdale, FL 33301

Adam T. Rabin  
Havan M. Clark  
Rabin Kammerer Johnson  
1601 Forum Place, Suite 201  
West Palm Beach, FL 33401

> Re: *United States ex rel. Zafirov v. Florida Medical Associates, LLC, et al.*
> Case No. 8:19-cv-01236-KKM-SPF (M.D. Fla.)

Counsel,

We write regarding the parties' meet-and-confer conversation on April 4, 2023 (referred to here as the "April 4 Meet and Confer") in the above-captioned matter, concerning Freedom Defendants' First Set of Requests for Production (the "Requests") and Relator's Responses and Objections to the same. We believe that our conversation resolved or substantially narrowed many of the issues in dispute, which we raised in our letter on March 24, 2023 (the "March 24 Letter"). This letter is intended to memorialize points of agreement reached on the April 4 Meet and Confer and provide additional responses and proposals on the issues that remained outstanding after that discussion.

**I.      Definitions and Requests that the Parties Have Resolved**

   **1.   Definition of "Clinical Diagnosis" or "Clinical Diagnoses"**

In response to Relator's objection to Freedom Defendants' proposed definition of "Clinical Diagnosis or Clinical Diagnoses," Freedom Defendants proposed a potential compromise position in the March 24 Letter, defining "Clinical Diagnosis or Clinical Diagnoses" as "medical conditions determined by a licensed medical practitioner based on signs, symptoms, health records, or other relevant information Concerning a patient's health," without reference to



Stedman's Medical Dictionary 474 (28th Ed. 2005).  During the April 4 Meet and Confer, you agreed that Relator will respond to the Requests using the compromise definition of "Clinical Diagnosis or Clinical Diagnoses" proffered by Freedom Defendants in the March 24 Letter.

 2. **Definition of "You" or "Your"**

In our March 24 Letter, we also proposed a revised definition of "You" or "Your" to respond to Relator's objection to the original definition of "You" or "Your" included in the Requests.  This new definition defines "You" or "Your" as "Dr. Clarissa Zafirov, the relator in the above-captioned action, and any representatives, employees, agents, consultants, contractors, or other Persons when acting or purporting to act on her behalf or in furtherance of her allegations."

On the April 4 Meet and Confer, the parties agreed that this revised definition would not include Relator's counsel when communicating with individuals with respect to separate and independent representation of those individuals.  The parties also agreed that the revised definition would include Relator's counsel (and others), for example, when communicating with witnesses on behalf of Relator or in furtherance of this litigation.  Based on the April 4 Meet and Confer, we understand that Relator has no objection to this new definition and Relator will respond to the Requests using the revised definition of "You" or "Your" proffered by Freedom Defendants in the March 24 Letter.

 3. **Request for Production ("RFP") 1**

Relator previously objected to this request for "All Documents that support, evidence, or otherwise establish the allegations in the Amended Complaint" as overly broad and unduly burdensome, premature, and duplicative.  On the April 4 Meet and Confer, we explained that this Request seeks documents that Relator compiled, reviewed or otherwise accessed in forming or bolstering the allegations in her Amended Complaint.  We acknowledge that the scope of this Request is broader than other, more specific requests that Freedom Defendants have propounded and so may in part be duplicative of those more specific requests, but our view is that this broader request is necessary because we do not know each relevant document that Relator has in her possession.

We understand that the parties reached an agreement on the scope of this request during the April 4 Meet and Confer.  You represented in that discussion that Relator intends to produce all documents in Relator's possession that are related to the Amended Complaint, even if the documents are not technically responsive to one of Freedom Defendants' more targeted Requests. We agree that such a production would satisfy Relator's discovery obligations with respect to RFP 1.

 4. **RFP 47 and RFP 48**

Relator initially objected to RFPs 47 and 48 in full, claiming that Relator "cannot respond" to these requests for documents concerning clinical diagnosis of (RFP 47) or consultations with or health examinations of (RFP 48) any PO Defendant Member.  On the April 4 Meet and Confer, you explained that Relator's broad objections were based on your interpretation of the Requests as calling for every piece of material that Relator might have used to formulate clinical diagnoses of PO Defendant Members, including treatises or similar academic information.  We agreed that Freedom Defendants were not requesting treatises or similar academic information.  Freedom Defendants intended to request only documents specifically relating to a PO



Defendant Member. As intended, this request would include patients' medical records as well as other documents including, without limitation, communications with other doctors, notes, diary entries, and other documentation related to a patient's clinical file.

We believe that the parties reached agreement on the scope of RFPs 47 and 48 on the April 4 Meet and Confer. We therefore expect that Relator will produce documents responsive to these requests as clarified during the April 4 Meet and Confer.

   5. **RFP 2**

Relator initially objected to the portion of RFP 2 calling for all documents concerning Relator's training and experience prior to October 1, 2018 as vague, undefined, calling for non-material documents, and not proportional to the needs of the case, but Relator agreed to produce the specific documents listed in RFP 2 ("transcript from Your medical school, records of any post-medical school training that You received, and records of any of Your employment as a physician, or as an intern, fellow, or resident physician"). In our March 24 Letter, Freedom Defendants proposed an amended Request attempting to respond to Relator's concerns about the remaining more general portion of RFP 2 ("All Documents Concerning Your training and experience as a physician prior to October 1, 2018"). In this letter, Freedom Defendants modified RFP 2 to request "Documents sufficient to show Your training and experience as a physician prior to October 1, 2018, including, without limitation, all copies of Your curriculum vitae, a transcript from Your medical school, records of any post-medical school training that You received, and records of any of Your employment as a physician, or as an intern, fellow, or resident physician." During the April 4 Meet and Confer, we clarified that "all copies of Your curriculum vitae" referred to all versions of Relator's curriculum vitae.

During the April 4 Meet and Confer, you reiterated your concern that the modified definition arguably still calls for information regarding every patient or condition that Relator has treated in her career as it contributed to Relator's "experience as a physician," and collection of information sufficient to show every patient or condition that Relator has treated in her career was overly cumbersome. In response, we clarified that Freedom Defendants are not requesting a list of all patients Relator has treated in her career. The specific documents listed in RFP 2 are representative of the types of documents RFP 2 is intended to capture, but Freedom Defendants don't know what documents Relator has in order to identify each of the specific document types. You agreed that Relator would produce any documents similar to the types of documents specifically identified in RFP 2 as modified in our March 24 Letter.

We believe we have reached agreement on this request and Relator will produce documents in response to RFP 2 in full, as modified in our March 24 Letter and clarified during the April 4 Meet and Confer.

   II.   **Requests Still Under Discussion**

   1. **RFP 3**

Relator previously objected to RFP 3, calling for documents pertaining to Relator's allegations that the United States "suffered damages," claiming it was premature, duplicative, overly broad and unduly burdensome, and seeking privileged documents, and on that basis Relator "cannot respond to this Request." In the April 4 Meet and Confer, we explained that Freedom Defendants were requesting documents pertaining Relator's *damages* claims, such as the



quantification of damages alleged to have been suffered by the United States, as opposed to Relator's *liability* claims.

You represented that you understood what Freedom Defendants were requesting based on our clarification but took no position on the April 4 Meet and Confer as to whether this clarification of the request sufficiently resolved Relator's objections, such that Relator would agree to produce documents responsive to the request.  Please let us know whether Relator agrees to produce documents responsive to RFP 3 as clarified by our discussion on the April 4 Meet and Confer; if not, we are willing to further meet and confer on this request.

2. RFP 45

You explained during the April 4 Meet and Confer that Relator objected to RFP 45, requesting documents concerning Freedom and Optimum, as overly broad and unduly burdensome because any document "Concerning" a Freedom or Optimum member would "Concern" Freedom and/or Optimum and thus be responsive to the request.  Following the April 4 Meet and Confer, we now understand Relator's objection, and Freedom Defendants agree to modify RFP 45 to: "All Documents **created by, distributed by, or referencing** Freedom and Optimum."

During the April 4 Meet and Confer, you represented that Relator would have no objection to responding to a request calling for all documents "produced by" or "referencing" Freedom Defendants, so we believe this modified request will be unobjectionable.  Please confirm whether Relator agrees to produce documents responsive to RFP 45 as modified in this letter; if not, we are willing to further meet and confer on this request.

3. RFP 46

Relator initially objected to RFP 46, which, as originally propounded called for "All Communications with any Person employed by, associated with or affiliated with Freedom or Optimum."  Relator's position was that "affiliated with" was overly broad because, for example, it could encompass persons "affiliated with" Freedom and/or Optimum without Relator's knowledge.  Relator further objected to this request as potentially including communications entirely irrelevant to this litigation—such as communications with Relator's neighbor to the extent that person was somehow affiliated with Freedom and Optimum.

As we offered on the April 4 Meet and Confer, Freedom Defendants are willing to compromise and modify RFP 46 such that only persons who Relator knows or believes are associated or affiliated with Freedom or Optimum would be deemed "associated with or affiliated with" Freedom or Optimum.  Furthermore, Freedom Defendants are willing to further narrow the request to only call for communications with such individuals pertaining to Freedom's or Optimum's business.  With these modifications, RFP 46 now requests: "All Communications with any Person employed by **or known or believed by You to be** associated with or affiliated with Freedom or Optimum **concerning Freedom's or Optimum's business or any conduct related to Relator's allegations in the First Amended Complaint**."

We believe this compromise should resolve Relator's concerns regarding RFP 46.  We reiterate that we believe the pool of documents in Relator's possession responsive to this request is rather limited because Relator was never an employee of Freedom or Optimum and was only an employee of an affiliate of a provider group contracted with Freedom and Optimum for less

4



than two years. Please let us know if Relator agrees with this compromise; if not, we are willing to further meet and confer on this request.

### 4. RFP 8

Relator initially objected to the general portion of this request calling for documents concerning Relator's investigation, research, or development of the allegations in the Amended Complaint as overly broad and unduly burdensome (among other objections), but Relator agreed to produce the specific documents identified in RFP 8. In the interest of compromise, in our March 24 Letter we agreed to amend the Request to seek: "All Documents created or reviewed by You After October 1, 2018 Concerning Your investigation, research, or development of the allegations included in the Amended Complaint, including but not limited to notes, journals, summaries, analyses, reports, or any other similar Documents, and all Documents pertaining to Freedom or Optimum." On the April 4 Meet and Confer, we explained that this Request was intended to seek documents that Relator reviewed, compiled, or drafted in investigating, formulating, drafting, or expressing the allegations in the Amended Complaint.

On the April 4 Meet and Confer, you stated your concerns that the vast majority of documents responsive to this request are privileged to the extent Relator was acting at the direction of counsel. We understand that you are concerned that certain privileged documents may fall within this request, but we feel that the scope of privilege is irrelevant to Relator's Responses because the process of determining whether to withhold documents based on privilege or work-product doctrines necessarily happens *after* determining the universe of *responsive* documents; privilege concerns are not prohibitive to responding to a document request.

Relator also objected to the proposed modified language of RFP 8 with respect to the final clause calling for the production of "all Documents pertaining to Freedom or Optimum," which you stated could be overly broad. In the interest of compromise, Freedom Defendants propose modifying that clause further so that RFP 8 seeks: "All Documents created or reviewed by You After October 1, 2018 Concerning Your investigation, research, or development of the allegations included in the Amended Complaint, including but not limited to notes, journals, summaries, analyses, reports, or any other similar Documents, and all Documents **created by, distributed by, or referencing** Freedom or Optimum."

Please let us know whether Relator will respond to this request, as modified herein, and produce responsive documents.

### III.     Issues Concerning RFP 4–7 and a Privilege Log

The remaining issues all concern, in some way, the parties' negotiations over the scope of the privilege logs that will be required in this litigation. You initially represented on the April 4 Meet and Confer that you would not log *any* communications with the government over which Relator intended to assert privilege (other than by providing the date of the pre-filing disclosure statement).

We reiterate our position that the Federal Rules require the production of a privilege log identifying all documents that are responsive to our Requests that Relator withholds on the basis of privilege.  *See* Fed. R. Civ. P. 26(b)(5) ("When a party withholds information otherwise discoverable by claiming that the information is privileged . . . , the party must . . . describe the nature of the documents, communications, or tangible things not produced or disclosed—and do

so in a manner that . . . will enable other parties to assess the claim."). This rule is echoed by the Middle District of Florida's Civil Discovery Handbook Section VI.A.1 ("A party who responds to or objects to discovery requests and who withholds information otherwise discoverable, asserting that the information is privileged or subject to other protection from discovery, must assert the claim expressly and must describe the nature of the documents, communications, or things not produced or disclosed, such that, without revealing the privileged or protected information itself, the description will enable other parties to assess the applicability of the privilege or protection.").

The Federal Rules of Civil Procedure do not categorically exempt any documents from such a privilege log. We recognize that it is common professional courtesy to exempt communications between a client and outside counsel from inclusion on the privilege log, and we agree to that exemption in this matter but, as we discussed (and you agreed) during the April 4 Meet and Confer, the government is not your client and communications between Relator (including her counsel acting on her behalf) and the government are not such attorney-client communications. We see no basis for exempting such communications and documents shared outside of the attorney-client relationship and purportedly covered by common interest privilege from inclusion on a privilege log.

We think we made some substantial progress during the April 4 Meet and Confer concerning the purpose and scope of the privilege logs to be required in this action as we discussed various situations in which we would contend the privilege would not apply (for example, communications directly between Relator and the government). Federal courts have recognized that the common interest privilege between a relator and the government does not blanket every document and communication shared between the relator and the government with privilege. *See United States ex rel. Minge v. TECT Aero., Inc.*, 2011 U.S. Dist. LEXIS 92243, at *4–5 (D. Kan. Aug. 18, 2011) (declining to "expand[]" the application of the common interest privilege to "protect the communications from Relator Minge to government counsel, or empower Relators to assert the government's work-product privilege," and holding non-privileged a memorandum prepared by relator for the government commenting on certain documents). Given that there are some areas that may not be covered by privilege, Freedom Defendants restate their position that Relator must log all communications and documents purportedly covered by the common interest privilege so that Freedom Defendants can properly assess Relator's privilege claims.

To be clear, at this stage, we are not seeking to come to a resolution on the scope of privilege over specific documents or the scope of privilege or the common interest doctrine in general in this litigation. The creation of a privilege log is merely the first step that will allow the parties to understand each other's positions, and to seek to resolve any disputes that may arise.

We ask that Relator confirm that she will log all responsive documents (including, but not limited to, documents responsive to RFPs 4–7) allegedly covered by the common interest privilege.

Sincerely,


*/s/ Benjamin D. Singer*
Benjamin D. Singer
O'Melveny & Myers LLP

O'Melveny

CC (*via Electronic Mail*):

    Arthur Lee Bentley, III, Bradley Arant Boult Cummings LLP, Provider Defendants' Counsel

    Kyle W. Robisch, Bradley Arant Boult Cummings LLP, Provider Defendants' Counsel

    Jason Paul Mehta, Foley & Lardner LLP, Provider Defendants' Counsel

    Natalie Hirt Adams, Foley & Lardner LLP, Provider Defendants' Counsel

    Jessica Joseph, Foley & Lardner LLP, Provider Defendants' Counsel

    Ginger Barry Boyd, Nelson Mullins Riley & Scarborough LLP, Freedom Defendants' Counsel