
ATTORNEYS AT LAW

100 NORTH TAMPA STREET, SUITE 2700
TAMPA, FL 33602
813.229.2300 TEL
WWW.FOLEY.COM

WRITER'S DIRECT LINE
813.225.5424
jmehta@foley.com

January 31, 2024

**VIA ELECTRONIC MAIL**

Jillian Estes
Morgan Verkamp LLC
4410 Carver Woods Drive, Suite 200
Cincinnati, Ohio 45242

   Re: Scope of Discovery in *U.S. ex rel Zafirov v. Physician Partners, et. al.*

Dear Jill,

  We write this letter on behalf of our client, Physician Partners, LLC ("Physician Partners"). This letter responds to your December 22, 2023 request for an explanation regarding the distinctions between physicians employed by Florida Medical Associates, LLC, d/b/a VIPcare ("VIPcare") (which has a management services agreement with Physician Partners), and physicians who are affiliates of Physician Partners. As explained below, Physician Partners' relationship with each of those constituencies differs significantly. Those significant differences justify our position in this litigation that Dr. Clarissa Zafirov, who was employed by VIPcare and never affiliated or provided services as an affiliate with Physician Partners, is not entitled to discovery involving affiliated physicians.

  Employed physicians, such as Dr. Zafirov, are W-2 employees who work exclusively for VIPcare. As employees, those physicians receive most, if not all, of their income and benefits from VIPcare. Employed physicians have an employment agreement with VIPcare, and their compensation is comprised mostly of a base salary, with the possibility of additional incentives. All of the employed physicians have insurance contracts through VIPcare as a group entity.

  In contrast to VIPcare, affiliated physicians are independent business owners and operators of their respective practices. These affiliated providers have no employer-employee relationship with VIPCare and VIPCare exercises no direct control over affiliates' activities. In general, affiliated physicians' income derives from several sources, only one of which is Physician Partners. That is because those physicians typically have contractual relationships with insurance plans for a variety of insurance programs, including but not limited to, commercial, traditional Medicare, health care exchange, Tri-care, workers compensation and many other such programs. Further, many of those physicians also may contract with other Medicare Advantage plans directly or through other independent physician associations competitive to Physician Partners. Physician Partners' contracts with affiliates also vary whereby some affiliates are paid on a fee-for-service basis, while others have chosen a capitation payment model (with varying capitation payments across affiliates), for services rendered to Members. Affiliates have different bonus programs including HEDIS bonuses usually paid directly by the health plan to the affiliates, quality program bonuses paid for comprehensively

| | | | | | |
|---|---|---|---|---|---|
| AUSTIN | DETROIT | MEXICO CITY | SACRAMENTO | TALLAHASSEE | |
| BOSTON | HOUSTON | MIAMI | SALT LAKE CITY | TAMPA | |
| CHICAGO | JACKSONVILLE | MILWAUKEE | SAN DIEGO | WASHINGTON, D.C. | |
| DALLAS | LOS ANGELES | NEW YORK | SAN FRANCISCO | BRUSSELS | |
| DENVER | MADISON | ORLANDO | SILICON VALLEY | TOKYO | |

4889-3696-1178.3



**FOLEY & LARDNER LLP**

January 31, 2024

Page 2

evaluating and treating members, and a performance bonus as defined in their agreements. In other words, there may be stark differences even among Physician Partners' affiliated physicians.

Moreover, as independent business owners, affiliated physicians have full and complete ownership and responsibility over every aspect of their practice, including their facilities and patient scheduling. Employed physicians, such as Dr. Zafirov, do not. Rather, VIPcare takes complete ownership of the facilities, and employed physicians' selection of insurance programs, patient scheduling and other practice operational aspects are determined by VIPcare. In addition, affiliated physicians hire and manage their own staff; employed physicians do not.

Affiliated physicians select their own EMR or use paper charts, but employed physicians must use the eClinicalWorks EMR provided by VIPcare. Further, affiliated physicians typically manage their own coding, billing, referrals, etc. Employed physicians, on the other hand, have their billing, referrals, and similar services processed by VIPcare, with support from Anion Technologies, LLC ("Anion").

Although Physician Partners may have the ability to remotely view medical records in certain affiliated physician EMRs, affiliated physicians control, oversee and administer their own separate EMR systems (which are as numerous and varied as publicly available EMRs), which would greatly increase the burden on the parties in having to deal with multiple different EMR systems on all these issues if affiliated physicians were included in discovery. Physician Partners does not edit or alter an affiliated physicians EMR medical record information or other data.

The bottom line is that there are significant differences between employed physicians on the one hand and affiliated physicians on the other. Also, there are significant variations between different affiliated physicians, such as how they are paid by Physician Partners and how those affiliated physicians manage their practices. These differences make discovery regarding affiliated physicians not relevant to Dr. Zafirov's claims. For these reasons, along with the other objections noted in Physician Partners' written objections to Dr. Zafirov's discovery requests in this matter, Physician Partners will not provide discovery regarding affiliated physicians.

Sincerely,

Jason Mehta