UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA
*ex rel.* CLARISSA ZAFIROV,

    Relator/Plaintiff,

v.　　　　　　　　　　　　　　　　　　　CASE NO. 8:19-cv-1236-KKM-SPF

PHYSICIAN PARTNERS, LLC;
FLORIDA MEDICAL ASSOCIATES,
LLC d/b/a VIPCARE; ANION
TECHNOLOGIES, LLC; FREEDOM
HEALTH, INC.; and OPTIMUM
HEALTHCARE, INC.,

    Defendants.
_____/

## ORDER

Before the Court is Relator's Motion to Quash Non-Party Subpoenas and to Issue a Protective Order (Doc. 164). Defendants Physician Partners, LLC, Florida Medical Associates, LLC d/b/a VIPcare, and Anion Technologies, LLC ("Provider Defendants") filed a response in opposition to the Motion (Doc. 165). Upon review of the Motion and the Provider Defendants' response, the Court finds that Relator's Motion should be DENIED.

## BACKGROUND

On May 20, 2019, Relator/Plaintiff Clarissa Zafirov ("Relator"), a board-certified family care physician, brought this *qui tam* action under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, against Defendants (Doc. 1). Relator was employed as a primary care physician by Defendant Florida Medical Associates, LLC d/b/a VIPcare from October 2018 through March 2020. In her Amended Complaint (Doc. 86), Relator alleges that, beginning in at least January 2014, Defendants acted in concert to falsely increase the risk adjustment

scores of thousands of Medicare Advantage patients for the purpose of obtaining more funding from the United States than was rightfully owed.

On September 19, 2023, the Provider Defendants notified Relator of their intent to serve Rule 45 subpoenas (the "Subpoenas") on three of her former employers: SMH Physician Service d/b/a First Physicians Group of Sarasota Memorial Health Care System ("First Physician Group"), Catholic Health Initiatives – Iowa, Corp. d/b/a Mercy Medical Center ("Mercy"), and Sarasota County Public Hospital District d/b/a Sarasota Memorial Hospital ("Sarasota Memorial"). The Subpoenas each contain the following ten substantively identical document requests:

1. All contracts, agreements, or offers of contract or agreement between You and Dr. Zafirov.

2. All documents and communications relating to Dr. Zafirov's job performance including, without limitation, performance evaluations, disciplinary records, commendations, complaints, and grievances.

3. All documents and communications with any government agency referring or relating to Dr. Zafirov's coding or billing practices or the quality of Dr. Zafirov's patient care.

4. All documents and communications referring or relating to any review or audit of Dr. Zafirov's coding or billing practices or patient care.

5. All documents and communications reflecting, referring, or relating to any policy, guidance, protocol, or guideline provided to Dr. Zafirov relating to the documentation or coding of patient diagnoses.

6. All documents and communications reflecting, referring, or relating to any training or education programs attended by Dr. Zafirov relating to the documentation or coding of patient diagnoses.

7. All documents and communications referring or relating to any concerns or complaints regarding Dr. Zafirov's documentation or coding of patient diagnoses.

8. All documents and communications referring or relating to concerns or complaints regarding Dr. Zafirov's patient care.

9. All documents and communications referring or relating to any concerns or complaints raised by Dr. Zafirov about any of Your policies or practices.

10. All documents and communications referring or relating to Dr. Zafirov's termination or resignation, including but not limited to any investigations, proceedings, or reasons for such termination or resignation.

(Docs. 164-1, 164-2, 164-3).

On September 22, 2023, counsel for Relator contacted counsel for the Provider Defendants to express Relator's intent to challenge the Subpoenas. The parties conferred on September 25, 2023, and, despite conferring in good faith, were unable to resolve their dispute. Relator then filed this Motion to Quash and for Protective Order, arguing that the Subpoenas should be quashed and a protective order should be entered because the Subpoenas seek personal employment information that is wholly unrelated to the claims and defenses in this action. Relator further argues that the Subpoenas are designed to harass Relator by unnecessarily involving her former employers in this matter. The Provider Defendants respond that Relator's Motion should be denied because the Subpoenas seek relevant information and Relator does not have standing to challenge the Subpoenas. For the reasons explained below, the Court finds that the Motion should be denied.

## ANALYSIS

### I. Motion to Quash

District courts have broad discretion in handling discovery matters. *See Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1188 (11th Cir. 2013). Unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Information within this

scope of discovery need not be admissible in evidence to be discoverable. *See* Fed. R. Civ. P. 26(b)(1). Accordingly, "[t]he Federal Rules of Civil Procedure strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). Thus, the party resisting discovery has a heavy burden of showing why the requested discovery should not be permitted. *See Safranek by & through Safranek v. Wal-Mart Stores, Inc.*, No. 07-61533-CIV, 2010 WL 11505263, at *2 (S.D. Fla. June 1, 2010) (citations omitted).

Rule 45(d)(3)(A) provides, in part, that upon timely motion, the court must quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. The court may also quash or modify a subpoena if it requires the disclosure of a trade secret or other confidential information. Fed. R. Civ. P. 45(d)(3)(B)(i). The party seeking to quash a subpoena bears the burden of establishing at least one of the requirements articulated under Rule 45(d)(3). *Indep. Mktg. Grp., Inc. v. Keen*, No. 3:11-cv-447-J-25MCR, 2012 WL 512948, at *2 (M.D. Fla. Feb. 16, 2012); *Malibu Media, LLC v. Doe*, No. 13 C 8484, 2014 WL 1228383, at *1 (N.D. Ill. Mar. 24, 2014) (citations omitted).

First, the Court must address the issue of whether Relator has standing to challenge the Subpoenas. Ordinarily, a party has no standing to challenge a third-party subpoena unless that party can claim some personal right or privilege in the documents sought. Courts in this district have found that "an individual possesses a personal right with respect to information contained in employment records and, thus, has standing to challenge such a subpoena." *Antoine v. Sch. Bd. of Collier Cty., Fla.*, No. 2:16-cv-379-FtM-38MRM, 2018 WL 9617329, at *2 (M.D. Fla. Sept. 27, 2018) (quotations and citations omitted); *Gonzalez v. Springs of Lady Lake*

4

*Alf, L.L.C.*, No. 8:10-cv-1693-T-17AEP, 2011 WL 13302410, at *1 (M.D. Fla. Mar. 10, 2011) ("In considering whether a party has standing to move to quash a subpoena duces tecum, courts have repeatedly found that an individual possesses a personal right with respect to information contained in employment records and, thus, had standing to challenge such a subpoena.") (citations and quotations omitted).  As a result, the Court finds that Relator has standing to challenge the Subpoenas.

Relator argues that the Subpoenas should be quashed because the requests seek information that is not relevant to any claim or defense in this action, and thus "serve no purpose other than to improperly invade Relator's privacy and harass her while engaging in a fishing expedition unmoored from the claims and defenses in this case" (Doc. 164 at 3).  In particular, Relator argues that this is not a personal, employment-based matter, and the operative complaint contains no allegations regarding her past employers, their claims submissions, their contracts or bonuses, or their representations to the government.  Relator then states that there is nothing she "could have done or not done, learned or not learned, or otherwise experienced with *other* provider groups [that would have] any bearing on whether *these* Defendants improperly billed federal health-payors" (*Id.* at 8).  The Provider Defendants respond that Relator has put her medical training, judgment, experience, and credibility at issue because the Amended Complaint alleges that the Provider Defendants' billing practices are inconsistent with her medical training and her medical judgment.  (*See, e.g.*, Doc. 86 at ¶ 10 ("Physician Partners, through Anion, routinely overruled Dr. Zafirov's medical judgment, submitting risk-adjusting codes which Dr. Zafirov expressly rejected."); *Id.* at ¶ 162 ("In the same meeting, Dr. Hans then proceeded to walk Dr. Zafirov step-by-step through risk-adjusting diagnoses which she believed Dr. Zafirov should adopt, including medical advice

5

that was either inconsistent with Relator's medical training or blatantly wrong.")).

In support of her argument, Relator cites several cases in which courts have found third-party subpoenas served on a plaintiff's former employer to be overly broad. *See, e.g.*, *Premer v. Corestaff Servs., L.P.*, 232 F.R.D. 692, 693 (M.D. Fla. 2005) ("Defendant's requests to obtain Plaintiff's entire personnel and benefit files, records relating to her hiring, termination, performance, any disciplinary action received by her in the course of her employment, compensation, and benefits, on its face, are overbroad and not reasonably calculated to lead to the discovery of admissible evidence."); *Gonzalez v. Springs of Lady Lake ALF, L.L.C.*, No. 8:10-cv-1693-T-17AEP, 2011 WL 13302410, at *2 (M.D. Fla. Mar. 10, 2011) ("Defendant is not justified in conducting such an expansive search into Plaintiff's employment history without providing the Court with a more substantial reason for its need."). These cases are not entirely persuasive as they are employment discrimination cases, not FCA cases involving physician relators opining on medical issues. Moreover, these cases involve sweeping discovery requests not analogous to the requests at issue here.

Relator and the Provider Defendants each cite one FCA case in support of their respective positions. Relator relies on *United States ex rel. Sibley v. Handrup*, No. 13 C 7733, 2016 WL 8738943 (N.D. Ill. July 11, 2016). In *Handrup*, the defendants issued Rule 45 subpoenas to nine of the relator's former employers. *Id.* at *1. The subpoenas sought "complete employment records including, but not limited to, [the] employment application, personnel file, correspondence, time cards or attendance sheets and any other records regarding" the relator. The relator objected on relevance grounds and also on the basis that the defendants failed to use less burdensome means of discovering the information, namely, by asking the relator herself. The defendants responded that the records were relevant to

6

"attacking Plaintiff's credibility" and that the discovery was permissible because they sought to discover reputation or opinion evidence as to the relator's character and reputation for truthfulness. *Id.* The defendants further justified their requests by referring to the relator's alleged bad acts, including a criminal background. *Id.* at *2. The court found that the information sought was not relevant and any benefit would be minimal compared to the potential reputational damage to the relator that would arise from broad subpoenas directed at her former employers. Finally, the court noted that the defendants did not use less intrusive means of obtaining the information (i.e., by deposing the relator). *Id.* at *2–3.

The Provider Defendants, on the other hand, rely on *United States ex rel. Krahling v. Merck & Co., Inc.*, No. 10-4374 (CDJ), 2016 WL 7042203 (E.D. Pa. Feb. 5, 2016). In *Krahling*, the relator, who was a former virologist in the defendant's laboratory, brought a *qui tam* action alleging that the defendant "fraudulently misled the Government and omitted, concealed, and adulterated material information regarding the efficacy of its mumps vaccine in violation of the False Claims Act." *Id.* at *1. In the course of the litigation, the defendant gave notice that it intended to serve a Rule 45 subpoena on the relator's current employer. *Id.* at *2. The relator objected on the grounds of relevance, and the defendant responded that the "information about Relator's job description and performance at [Alexion, her current employer] may be relevant to any testimony she might provide in the case about her understanding of testing protocols and quality assurance" and that "evaluations at Alexion may be relevant to the extent Defendant may raise Relator's performance as a Merck employee as a defense." The Court held that, "[t]o the extent Relator's quality assurance positions at Alexion involve knowledge of testing protocols and methodology of therapies developed from a laboratory, they are relevant to Relator's ability to evaluate Merck's

7

allegedly improper methodology and falsified testing of its mumps vaccine." *Id.* at *3.

The Court finds the reasoning of the *Krahling* decision to be more persuasive and applicable in this case. First, in *Handrup*, the defendants attempted to subpoena *nine* different former employers seeking information entirely unrelated to the cause of action. 2016 WL 8738943, at *1. In addition, the only justification the defendants provided for the subpoenas was that they were relevant to Plaintiff's character and reputation for truthfulness. As the court noted, the implicit argument in such a request is that the defendants should be given access to the records of Plaintiff's past employers for the purpose of locating sources which *potentially* would then provide them with reputation evidence, resulting in an improper fishing expedition. *Id.* at *3. In *Krahling*, however, the defendant only attempted to subpoena the relator's current employer. 2016 WL 7042203, at *1. Moreover, the defendant also justified its request by arguing that the relator's skills were relevant to her ability to assess its testing protocols and quality assurance.

Similarly here, the Provider Defendants have only attempted to subpoena three of Relator's former employers, all of whom are medical providers. Furthermore, the Provider Defendants have justified their requests by explaining that information relating to Plaintiff's medical training is relevant to her ability to assess their billing practices, as outlined throughout the Amended Complaint (Doc. 86). As a result, the Court finds that the Subpoenas seek relevant information, and should not be quashed.

Finally, Relator also argues that the Subpoenas should be quashed because the information sought in the Subpoenas could be obtained directly through the Relator. *See, e.g.*, *Maxwell v. Climate First Bank*, No. 8:23-cv-457-JSM-UAM, 2023 WL 6123518, at *2 (M.D. Fla. Sept. 19, 2023) (granting motion to quash subpoena where "the defendants fail[ed] to

8

adequately explain why they cannot obtain the relevant information requested in the non-party subpoena directly from [the plaintiff]"). The Provider Defendants respond that the cases cited by Relator involve subpoenas directed at a plaintiff's current employer, not past employers, and Relator has not provided any support for her contention that the documents sought in the Subpoenas are in Relator's possession, including her former employers' communications regarding her job performance and concerns or complaints about her coding and patient care. The Provider Defendants further argue that even if Relator has relevant documents in her possession, that does not foreclose them from pursuing other avenues of discovery. The Court agrees. *See Krahling*, 2016 WL 7042203, at *3 ("Relator's argument that she has already responded to the requests in the subpoena does not foreclose Defendant from pursuing other avenues of discovery. Relator had searched only her personal files and emails. Thus, the responses from Alexion may serve as a supplement to Relator's discovery production.") (citations omitted).

## II. Motion for Protective Order

Relator also moves for a protective order, arguing that for the same reasons set forth above, there is no nexus between Relator's prior employment and this action. Upon a showing of good cause, a court may issue an order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed R. Civ. P. 26(c)(1). The party seeking a protective order bears the burden of demonstrating good cause. Although difficult to define, good cause typically signifies a sound basis or legitimate need for judicial action. *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987). To establish good cause, the moving party must make a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Ekokotu v. Fed. Exp.*

9

*Corp.*, 408 F. App'x 331, 336 (11th Cir. 2011) (internal quotation marks and citation omitted); *see also Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 430 (M.D. Fla. 2005). Moreover, courts have broad discretion in dealing with discovery matters. *Perez v. Miami-Dade Cty.*, 297 F.3d 1255, 1263 (11th Cir. 2002).

Here, Relator has not established that good cause exists for issuance of a protective order. As discussed above, information regarding Relator's medical training and medical experience is relevant to the allegations in the Amended Complaint, namely, to Relator's ability to assess what she alleges to be false diagnosis codes that are unsupported by clinical findings. As a result, Relator's motion for a protective order is denied.

## CONCLUSION

Accordingly, for the reasons stated above, it is ORDERED that Relator's Motion to Quash Non-Party Subpoenas and to Issue a Protective Order (Doc. 164) is DENIED.

**ORDERED** in Tampa, Florida, on February 27, 2024.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE