## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* DR. CLARISSA ZAFIROV, | )<br>)<br>) |
| Plaintiff and Relator, | )<br>) |
| v. | ) NO. 8:19-cv-01236-KMM-SPF |
| | ) |
| FLORIDA MEDICAL ASSOCIATES,<br>LLC, d/b/a VIPCARE; PHYSICIAN<br>PARTNERS, LLC; ANION<br>TECHNOLOGIES, LLC; FREEDOM<br>HEALTH, INC.; and OPTIMUM<br>HEALTHCARE, INC.; | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## RELATOR'S RESPONSE TO DEFENDANTS FREEDOM HEALTH, INC. AND OPTIMUM HEALTHCARE, INC.'S MOTION TO COMPEL

The federal False Claims Act ("FCA"), the nation's preeminent fraud-fighting statute, relies on a public-private partnership established by Congress and protected by courts around the country. The statute uniquely contemplates, indeed demands, that an individual bringing an FCA case disclose "all material evidence and information the person possesses" to the Government and ultimately allocates a share of a successful resolution based on "the significance of the information provided to the government by the *qui tam* plaintiff" and "the contribution of the *qui tam* plaintiff to the result." 31 U.S.C. § 3730; S. Rep. No. 99-345, at 28 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5293 (the "Senate factors"). The statute contemplates a "working

partnership" between the United States and relators. 132 Cong. Rec. H9382-83 (October 7, 1986).  As part of that relationship, the statute also provides for, and the Government encourages, pre-filing disclosure to the United States of the allegations anticipated to be filed. *E.g.*, § 3730(e)(4)(B).

It is entirely within the confines of the FCA that the relationship between Relator and the United States developed nearly four years ago. Case law firmly establishes that communications between Relator and the Government made pursuant to this joint effort are privileged; Defendants do not make a genuine effort to dispute that. Rather, Defendants move this court to compel the production of communications with the Government between the pre-filing disclosure and service of the written disclosure statement, and communications between Relator and the Government's agent after the filing of the complaint and during the investigation of this matter, neither of which is supported by law. Similarly, Defendants attempt an end-around the privilege by seeking access to detailed information about those communications and disregarding the portions of both the Federal Rules and the Middle District of Florida's Civil Discovery Handbook which exempt logging of certain information when the log itself would disclose privileged information.

To be unequivocal: Relator has produced the non-privileged documents in her possession (including all business records and other non-privileged documents provided in support of their disclosures to the Government) and has agreed to provide a privilege log categorically describing the withheld communications with the Government, including enough information for Defendants to assess the assertion of

2

privilege.[1] For the reasons set forth herein, the Court should reject Defendants' request to compel the production of a privilege log disclosing details that are themselves privileged, and should deny Defendants' motion.

## I.    **Relevant Factual Background.**

### A.    **Dates Relevant to Common Interest Relationship.**

On May 16, 2019, counsel for Relator made a pre-filing disclosure to the United States Attorneys' Office for the Middle District of Florida setting forth the information known to Relator related to the allegations of the complaint. Exhibit A, Declaration of Jillian L. Estes at ¶2. Relator then filed this *qui tam* action on May 20, 2019. ECF No. 86. Pursuant to the requirements of the FCA, Relator filed this action under seal. 31 U.S.C. § 3730(b)(2); ECF Nos. 2, 3. Also as required by 31 U.S.C. §3730(b)(2), Relator served a written disclosure statement on the United States on July 10, 2019, setting forth material evidence supporting Relator's complaint. Exhibit A at ¶4.

Following a relator's interview between the United States and Relator on August 5, 2019, Relator began conducting consensual monitoring activities at the request of the Government. The first monitoring occurred August 8, 2019, and continued through January 31, 2020. Exhibit A at ¶6. As would be expected, these activities necessitated communications between Relator, her counsel, and the Government teams responsible for conducting the Government's investigation. Exhibit A at ¶7. Specifically, at issue in this motion, text messages between Relator

---

[1] No party has produced a log yet; they are due no later than March 30, 2024 by agreement.

and the HHS-OIG agent involved with the consensual monitoring began on August 14, 2019, and ended on March 14, 2020. Exhibit A at ¶7. Relevant dates are as follows, and indicate that all communications in question occurred during the Government's investigation of this case:

| Date | Event |
|------|-------|
| May 16, 2019 | Initial, pre-filing disclosure of case allegations |
| May 20, 2019 | Filing of complaint (under seal) |
| July 10, 2019 | Service of written disclosure statement |
| August 5, 2019 | Relator's interview by the United States |
| August 8, 2019 | First consensual monitoring activity |
| August 14, 2019 | First text message between Relator and HHS-OIG agent |
| January 31, 2020 | Last consensual monitoring activity |
| March 14, 2020 | Last text message between Relator and HHS-OIG agent |
| April 1, 2020 | Case is unsealed |

B.   **Relator's Responses to Discovery Requests at Issue.**

Following this Court's denial of Defendants' motions to dismiss (ECF No. 124), discovery practice commenced. Defendants Freedom and Optimum served Requests for Production ("RFPs") on Relator, seeking all communications between Relator and the Government, RFP Nos. 4-7, *cited in* ECF No. 184 at 6-7.

Relator agreed to – and has – produced "non-privileged records that Relator provided to the Government concerning allegations in the Amended Complaint." ECF 184-3.[2] The only non-produced documents responsive to these requests are Relator's written disclosure statement and communications with the Government.

---

[2] Relator also informed Defendants that recordings she made pursuant to her joint efforts with the U.S. Department of Health and Human Services – Office of the Inspector General ("HHS-OIG") were not in her custody, possession, or control, but she would submit a *Touhy* request to the United States to obtain copies. *Id.* Relator made the *Touhy* request, received the recordings, and produced them to Defendants.

Moreover, Relator has expressly agreed – as described in Defendants' motion – to provide Defendants with the information that they need to assess the asserted privileges: "a privilege log which categorically logs all common interest privileged communications, by identifying the date range of such communications, the date that the prefiling disclosure was made to the Government, and the date that any written disclosure statement as provided to the Government." ECF No. 184 at 7. Although Defendants assert that such a log is insufficient, they do not ever establish with clarity *why*. That is because there is no reason why; the log offered by Relator would provide all that is needed to assess the applicable privileges.

## II.    Legal Standards.

"The attorney-client privilege attaches to all 'communications made in confidence by a client to an attorney for the purposes of securing legal advice or assistance.'" *U.S. v. Vazquez*, No. 8:18-cr-597, 2023 U.S. Dist. LEXIS 179603, at *13 (M.D. Fla. Oct. 3, 2023), *citing In re Grand Jury Subpoena,* 2 F. 4th 1339, 1345 (11th Cir. 2021). "If one of the primary purposes of the communication is to convey legal advice, then the attorney-client privilege generally attaches." *Bartholomew v. Lowe's Home Ctrs., LLC*, No. 2:19-cv-695, 2022 U.S. Dist. LEXIS 129856, at *4 (M.D. Fla. July 22, 2022).

"[T]he work-product doctrine protects from disclosure 'documents and tangible things that are prepared in anticipation of litigation or for trial *by* or for *another party* or its representative." *Christoff v. Inglese,* No. 2:20-cv-546, 2022 U.S. Dist. LEXIS 233506,

at *5-6 (M.D. Fla. Nov. 1, 2022)(emphasis in original), *citing* Fed. R. Civ. P. 26(b)(3)(A). "It is equally clear that documents prepared by counsel, or parties or their representatives…are protected." *Id.* at *6 (citations omitted).

Work product can be divided into two categories. Fact work product protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative," while opinion work product protects "material that reflects the [attorney's] mental impressions, conclusions, opinions, or legal theories." *Primeaux v. Progressive Am. Ins. Co.*, No. 2:20-cv-941, 2022 U.S. Dist. LEXIS 240353, at *2 (M.D. Fla. Nov. 15, 2022)(citations omitted). To invade the work product doctrine as to fact work product, the party moving to compel must show there is a "substantial need" that it cannot satisfy without "undue hardship." *Id.* Conversely, opinion work product "enjoys a nearly absolute immunity" from discovery. *Id., citing Cox v. Adm'r U.S. Steel & Carnegie,* 17 F. 3d 1386, 1422 (11th Cir. 1994).

The FCA establishes a "common legal interest" between a relator and agents of the United States. 31 U.S.C. § 3730 (providing for the sharing of information in advance of the complaint); *U.S. ex rel. Purcell v. MWI Corp.*, 209 F.R.D. 21, 27 (D.D.C. 2002) (recognizing that the unique relationship of the Government and the relator in *qui tam* cases requires the sharing of the work product generated between the relator and her attorney with the Government in order for the case to proceed). The common interest doctrine is not predicated on a shared formal party status (as would happen with intervention), the procedural posture of the matter, or other formalities like a written agreement, but rather on whether there is a unity of interest. *U.S. v. BDO*

*Seidman, LLP*, 492 F. 3d 806, 815-21 (7th Cir. 2007). Indeed, the fact that the United States did not intervene in this matter is irrelevant. *U.S. ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 685-87 (S.D. Cal. 1996) (joint prosecution privilege not waived in non-intervened case).

Pursuant to the common interest doctrine, a party may share privileged information or work product "with another party without waiving the right to assert the privilege when the parties have a shared interest in actual or potential litigation against a common adversary." *Lane Constr. Corp. v. Skanska USA Civil Se., Inc.*, No. 6:21-cv-164-RBD-DCI, 2022 U.S. Dist. LEXIS 238518, at *11 (M.D. Fla. Nov. 7, 2022). Specifically, when "work product is produced to a governmental entity that is an ally in litigation or has a common interest with the producing party . . . This production does not result in waiver." *Absolute Activist Value Master Fund Ltd. v. Devine*, No. 2:15-cv-328, 2017 U.S. Dist. LEXIS 69710, at *6 (M.D. Fla. May 8, 2017); *Bingham v. Baycare Health Sys.*, No. 8:14-cv-73, 2016 U.S. Dist. LEXIS 50940, at *12 (M.D. Fla. Apr. 15, 2016) ("[T]he majority of courts have found that the written disclosure statement provided in compliance with the FCA falls under the work-product doctrine as a document prepared in anticipation of litigation, or have applied the principles of ordinary work product when analyzing whether the disclosure statement is discoverable").

As to privilege logs, both the Federal Rules and the Middle District of Florida's Civil Discovery Handbook contemplate disclosure of certain document descriptors, *so long as the descriptors would not disclose privileged information*. Fed. R. Civ. P. 26(b)(5)(A)

(directing the description of withheld documents be made in a manner that can be accomplished "without revealing information itself privileged or protected"); MDFL Civ. Disc. Handbook Sec. VI(A)(2)(b) (directing the disclosure of certain categories of information "[u]nless doing so would result in disclosure of protected information").

## III.   Arguments.

Defendants' motion is two-part: (1) It seeks the production of communications with the Government that pre-date the disclosure statement, and communications between Relator and Government agents during the investigation; and (2) It seeks the production of a privilege log which Defendants insist should contain detailed information on communications with the United States. Relator addresses each argument below.

### A.   Relator Has Produced All Non-Privileged Material.

Defendants' request that Relator be compelled to produce non-privileged materials hinges on the assertion that certain documents and communications are "non-privileged," a position which stands in stark contradiction to caselaw on the issues. Simply, Relator has met her production obligations for non-privileged materials, and the discrete categories of documents and communications that Defendants now seek are protected from disclosure by the attorney-client privilege, work product doctrine, and common interest doctrine.

#### i.   Communications between Relator, Her Counsel, and the Government are Protected After Unity of Interest was Established.

Defendants do not challenge that communications between Relator and her

counsel, or documents drafted by Relator's counsel for purposes of this litigation, are privileged. Nor do they challenge that the disclosure statement required by the FCA to be served on the United States (not filed, as the Defendants suggest) is protected by the common interest doctrine.  Rather, they appear to assert that there is a discrete period in the relationship with the United States regarding an anticipated or filed *qui tam* matter that is not protected by the common interest privilege, and that Relator waived privilege when sharing information with the United States during that period. (ECF No. 184 at 17-18). Defendants' arguments are unsupported by the law.

Fundamentally, Defendants appear to confuse a pre-filing disclosure with the written disclosure statement, and the timing of such disclosures in the context of a *qui tam* filing. The statute anticipates that a relator will start providing information prior to the filing of the complaint, and this is a strongly encouraged part of the working partnership between a relator and the Government.[3] The statute does not specify a specific timing for service of the written disclosure statement. Disclosures are often made in parts, starting with a pre-filing contact to the Department of Justice. All privileged and work product materials shared in any of these contexts are shared

---

[3] The pre-fling disclosure is often the first step in making your disclosure of all material information -- and it allows government attorneys to anticipate a sealed filing and also to start a deliberative process of communicating with relator's counsel regarding the allegations. In addition, because the FCA provides that an "original" source may move forward in the face of a later-raised public disclosure challenge if, among other things, the relator has voluntarily provided information to the Government prior to filing, relator's counsel routinely make pre-filing disclosures. 31 U.S.C. § 3730(e)( )(4). This requirement, in fact, is designed to "encourage[ ] private individuals to come forward with their information of fraud at the earliest possible time…" *United States ex rel. King v. Hillcrest Health Ctr., Inc.*, 264 F.3d 1271, 1280-81 (10th Cir. 2001) (internal quotations omitted).

Conversely, the "written disclosure of substantially all material evidence and information the person possesses" is required under the separate provision of the FCA. § 3730(b)(2). This can be served at the time of the pre-filing disclosure, at the time of filing, or after filing the complaint.

pursuant to the unity of interest created by the FCA and the common interest protection that obtains. The common interest doctrine applies to communication about both anticipated and filed litigation just as the underlying privileges and protections do.

Defendants do not dispute that a *qui tam* relator and the United States share a common interest in the prosecution of a relator's FCA case. Nor can they. In a False Claims Act case, the unity of interest is plain:[4] Relator brought this action on behalf of "[herself] and the United States Government" (31 U.S.C. § 3730(b)); the Government maintains an active role in the strategic decisions made throughout the case[5]; and because the harm at issue is a result of Defendants' fraud upon the United States, the Government will receive any monies recouped from Defendants, and then pay a percentage to Relator (31 U.S.C. § 3730(d)).[6]

In addition, courts have consistently held that a relator and the United States have a clear common interest, such that if documents were created or communications occurred in anticipation of the *qui tam* litigation, then disclosure to the Government in

---

[4] A common interest may be "legal[,] factual or strategic in character." *City of Rome v. Hotels.com L.P.*, No. 4:05-CV-249-HLM, 2012 U.S. Dist. LEXIS 198875, at *16 (N.D. Ga. Feb. 3, 2012). All three exist here.

[5] Of note, the United States has exercised its interest in this case, *inter alia*, by exercising its right to veto the dismissal of the case based on the public disclosure arguments raised by Defendants (ECF No. 105) and by filing statements of interest on key factual issues at issue in the case (ECF No. 120).

[6] Defendants attempt to cast doubt on the common interest doctrine by arguing that at some amorphous point in the future, the interests of Relator and the Government may diverge. ECF No. 184 at 20. However, "[t]he [common interest] privilege does not require a complete unity of interests," but rather requires "strong common interests." *City of Rome v. Hotels.com L.P.*, No. 4:05-CV-249-HLM, 2012 U.S. Dist. LEXIS 198875, at *7-8 (N.D. Ga. Feb. 3, 2012). This is readily satisfied here.

furtherance of the litigation does not constitute a waiver of either the attorney-client privilege or work product privilege. *U.S. ex rel. Simms v. Austin Radiological Assoc.*, No. A-10-CV-914, 2013 U.S. Dist. LEXIS 37196, at *40 (W.D. Tex. Mar. 18, 2013) (even in non-intervened cases, the "relator and the government share sufficient common interests" to assert shared privileges and protections); *Miller v. Holzmann*, 240 F.R.D. 20 (D.D.C. 2007); *U.S. ex. rel. Redacted v. Redacted*, 209 F.R.D. 475 (D. Utah 2001); *Leader v. U.S. DOJ*, No. CV 11-540, 2012 U.S. Dist. LEXIS 198827, at *16 (D. Ariz. Aug. 8, 2002); *Burroughs*, 167 F.R.D. 680.

Indeed, the common interest between the United States and a relator is foundational to the operation of the False Claims Act. "[T]he unique relationship of the government and the relator in *qui tam* cases requires the sharing of the work product generated between the relator and his attorney with the government in order for the case to proceed." *U.S. ex rel. Purcell*, 209 F.R.D. at 27. That process effectuates "the congressional desire that the relator apprise the government of all he or she knows as a condition of bringing a *qui tam* action." *Miller*, 240 F.R.D. at 23.

While Defendants concede that there exists a time in which the common interest doctrine would apply such that work-product or attorney-client privileged information would remain privileged when shared with the Government, the contention that a common interest rigidly begins at the date of the written disclosure statement, rather than relator's first disclosure of an anticipated *qui tam* to the Government, misapprehends the law regarding the common interest doctrine. The common interest is not created by a legal formality, but rather by the general

cooperation requirements of the FCA. Indeed, "'no written agreement is required;' a common interest agreement 'may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who [have] or potentially may . . . have common interests in litigation.'" *Nelson v. Millennium Labs., Inc.*, No. 2:12-cv-01301, 2013 U.S. Dist. LEXIS 191155, at *8 (D. Ariz. May 17, 2013) *citing U.S. v. Gonzalez*, 669 F. 3d 974, 979 (9th Cir. 2012). Accordingly, the position of the relator vis-à-vis the United States in bringing the action and sharing information establishes the commonality of interest as soon as a relator begins engaging with the Government in pursuit of a *qui tam* action. *BDO Seidman, LLP*, 492 F. 3d at 815 ("litigation need not be pending for the communication to be made in connection to the provision of legal services"); *Planned Parenthood Fed'n of Am., Inc.*, 2022 U.S. Dist. LEXIS 239974, at *15.

In recognition thereof, courts have routinely found that precisely the sort of pre-suit communications sought by Defendants are protected from disclosure by the common interest doctrine: "there is no dispute that the Relator and the United States share a common interest in this FCA action; thus, their counsel's pre-suit communications in furtherance of this litigation are entitled to protection." *U.S. ex rel. Heesch v. Diagnostic Physicians Grp., P.C.,* No. 11-00364-KD-B, 2014 U.S. Dist. LEXIS 196006, at *11 (S.D. Ala. June 4, 2014), *citing U.S. ex rel. Minge v. TECT Aero., Inc.*, 2011 U.S. Dist. LEXIS 53516, at *17-18 (D. Kan. May 18, 2011); *Planned Parenthood Fed'n of Am., Inc.*, 2022 U.S. Dist. LEXIS 239974, at *14-15 (applying the common interest doctrine to protect communications nearly seven years before the filing of

complaint because that is when the relator provided government actors with "information and evidence concerning the material facts and allegations set forth in [the] Complaint" and "[t]he rationale underlying the [common interest] privilege focuses not on when documents were generated, but on the circumstances surrounding the disclosure . . . to a jointly interested . . . party"), *citing In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129 (Under Seal),* 902 F. 2d 244, 249 (4th Cir. 1990)(denying motion to compel regarding documents and communications protected by common interest doctrine).

Defendants' citation to *U.S. ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.* as supportive of their point reflects their fundamental misunderstanding of this privilege, as *Fesenmaier* squarely supports Relator's assertion that the materials Defendants seek are protected. In that matter, the court held that the pre-filing disclosure for the *qui tam* action established the unity of interest for the common interest doctrine to apply to all communications occurring thereafter. 2019 U.S. Dist. LEXIS 217621, *4 (D. Minn. Dec. 17, 2019). In *Fesenmaier*, that pre-filing disclosure occurred prior to the date of the filing of the sealed *qui tam. Id.* at 6-7; Doc. 1, No. 13-cv-3003 (Nov. 1, 2013 complaint).[7] Just so here: The pre-filing disclosure occurred on May 16, 2019 and was the first communication between Relator and the United States, and the complaint

---

[7] A distinct issue in that matter, not present here, was that the relator had been communicating with agents of the criminal division related to a criminal investigation for many years, long before contemplating or making any efforts to file a False Claims Act case. In that matter, there were communications that did not relate to the filing of the *qui tam* matter, and so the court has to identify a "point of demarcation" for the common interest privilege to apply and did so at the date of the prefiling disclosure of the *qui tam* complaint. *Id.* at *4.

was subsequently filed. Exhibit A at ¶2. The prefiling communication itself and all communications following the date of the prefiling disclosure are privileged. There are no communications prior to that date.

### ii. Communications Between Relator and Government Agents are Privileged.

Defendants also seek the disclosure of communications between Relator and Government agents directly. These communications all occurred after the filing of the *qui tam* matter, as part of the Government's investigation of the matter. These communications are protected by the common interest doctrine.

Federal Rule 26(b)(3)(A) specifically extends to documents prepared by a party, not just counsel, so it follows that communications between represented individuals – even in the absence of their attorneys – made pursuant to this shared interest are privileged. *Christoff*, 2022 U.S. Dist. LEXIS 233506, at *5-6. Further, it is axiomatic that the "the Federal Government 'can act only through its officers and agents.'" *Georgia v. Westlake*, 929 F. Supp. 1516, 1519-20 (M.D. Ga. 1996), *citing Tennessee v. Davis*, 100 U.S. 257, 263, 25 L. Ed. 648 (1879). And investigators – such as the HHS-OIG agent with whom Relator communicated regarding the consensual monitoring – are "agents" of the United States. *U.S. v. Planned Parenthood Fed'n of Am.*, No. 2:21-CV-022, 2022 U.S. Dist. LEXIS 246724, at *9-10 (N.D. Tex. Nov. 7, 2022), *citing U.S. v. Nobles*, 422 U.S. 225, 238 (1975). Communications between these agents and a relator are precisely the type of communications protected by the common interest doctrine. *Id.* at *11-12 (denying motion to compel communications made between a

relator and law enforcement officer made during the period in which a common interest attached because "the rationale for the common-interest privilege is that persons who share a common interest . . . should be able to communicate with their . . . attorneys . . . and with each other to more effectively prosecute . . . their claims."); *see also U.S. v. Cameron-Ehlen Grp.,* 2019 U.S. Dist. LEXIS 217621, at *6-7 (protecting communications, including communications with agents, after the date of the pre-filing disclosure).

### iii. Defendants Fail to Articulate Substantial Need or Undue Hardship.

Some, though not all, types of privilege may still be invaded in favor of production if there is "substantial need for the materials" and would require "undue hardship [to] obtain their substantial equivalent by other means." *Primeaux,* 2022 U.S. Dist. LEXIS 240353, at *2. Neither exists here. Defendants' sole argument regarding substantial need or undue hardship is that "Relator's communications with the government will be key evidence in assessing her credibility." ECF No. 184 at 5. However, "'mere credibility or impeachment' [is] insufficient to pierce . . . privilege." *United States ex rel. Everest Principals, LLC v. Abbott Labs.,* No. 20cv286, 2023 U.S. Dist. LEXIS 207948 at *23-24 (S.D. Cal. Nov. 20, 2023)(finding no substantial need to piece privilege), *citing U.S. ex rel. Carter v. Halliburton,* 266 F.R.D. 130, 133 (E.D. Va. 2010)("the mere surmise that production might reveal impeaching matter [is] not sufficient to justify production" and the seeking "party must present more than speculative or conclusory statements").

Additionally, while Defendants posit that they are entitled to evaluate certain information about the communications between Relator and the Government (directly or through her counsel) because they "will likely reveal key contextual information about the recorded conversations, or reveal the existence of conversations that were not recorded at all," this is simply not accurate. Defendants' citations for the recordings do not establish this supposition, nor have they yet deposed Relator to ask for any contextual information regarding the recordings. Should the Court find that the outcome of this motion is impacted by reviewing the context of the communications, Relator can provide the text message communications between Relator and the HHS-OIG to the Court for an *in-camera* assessment. Defendants offer no support, however, for their contention that they are categorically entitled to privileged information because they believe it *might* contain relevant information that they have not attempted to obtain any other way.

**B.    A Categorical Privilege Log is Appropriate.**

It is important to note that Relator has never taken the position that she will not provide any privilege log in this case. Indeed, the parties have agreed to exchange logs by March 30, 2024. Rather, Relator maintains that any documents withheld on the basis of privilege can be categorically logged to provide Defendants with the information needed to assess privilege without disclosing information which itself is privileged. This is consistent with both the Federal Rules and the MDFL Civil Discovery Handbook (as discussed *supra,* Section II), which require logging of descriptive information only to the extent that the logged information itself would not

disclose privileged information.

Courts have the discretion to allow the use of a categorical privilege log, as opposed to an itemized privilege log. "A categorical log may be used where (a) a document-by-document listing would be unduly burdensome and (b) the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the claim is well-grounded." *Teledyne Instruments, Inc.*, 2013 U.S. Dist. LEXIS 153497, at *53-54 ("[d]etails concerning time, persons, general subject matter, etc. . . . may be unduly burdensome . . . particularly if the items can be described by categories"), *citing In re Rivastigmine Patent Litigation,* 237 F.R.D. 69, 87 (S.D.N.Y. 2006); *SEC v. Thrasher*, No. 92 CIV 6987, 1996 U.S. Dist. LEXIS 3327, at *1 (S.D.N.Y. Mar. 19, 1996); *U.S. v. Gericare Med. Supply, Inc.*, No. 99-0366, 2000 U.S. Dist. LEXIS 19662, at *12-14 (S.D. Ala. Dec. 11, 2000) (Federal Rules "do[] not require a party to sacrifice work product protection in order to assert it" and a "category-by-category log was appropriate" where an itemized log "would have revealed . . . plaintiff's strategy and mental processes")*.

Rather than seeking the information necessary to assess the sufficiency of the assertion of privilege, Defendants seek the sort of detail that would directly invade privilege by detailing the pace and tenor of the Government's investigation. The vast majority of the documents which Defendants want individually logged are documents about which they do not dispute privilege. Thus, it is apparent that rather than assess Relator's assertion of privilege, Defendants seek to invade it. For example, Relator has offered to Defendants to disclose the salient dates on which the unity of privilege first

attached (*see* Section I, *supra*) and to identify documents as before or after that date. Defendants need not know with which specific Government agents Relator was communicating, because the application of privilege will not turn on such facts as, communications with *any* Government agent in furtherance of this litigation remain protected. And the content can be categorically described as well to make clear that the communications were made in relation to and in furtherance of this litigation.

Requiring more – for example the exact dates of certain discussions, the timing of various investigative and litigation decisions, etc. - would disclose privileged information. For example, patterns of increase or decrease in communications, or the exchange of documents after communications between Relator and the United States, could reveal things that Government attorneys considered more or less significant, but a party's opinion as to the significance of specific facts is core opinion work product. *Bingham*, 2016 U.S. Dist. LEXIS 50940, at *17 (holding that information revealing which facts an attorney "selected" as important would reveal "the relator and counsel's mental impressions"); *U.S. ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 563-64 (C.D. Cal. 2003) ("the selection of documents does convey information about an attorney's mental impressions or strategy pertaining to a case, and therefore constitutes opinion work product" and this principle extends to "the selection, organization, and characterization of the facts marshaled in support of relator's claims"). An opposing partly is simply not entitled to the mental impressions of their adversary or their counsel. *Primeaux*, 2022 U.S. Dist. LEXIS 240353, at *2.

The cases to which Defendants cite are not instructive. Defendants rely on *W.*

*Wyvern Capital Invs., LLC v. Bank of Am., N.A.,* No. 8:22-cv-191, 2023 U.S. Dist. LEXIS 97363, at *3 (M.D. Fla. May 3, 2023) for the prospect that each document must be logged separately, but *Wyvern* acknowledges that a privilege log must not "reveal[] information itself privileged or protected." *Id.* Defendants' additional citations are similarly inapposite: The courts found that the privilege logs in question were inadequate not because they logged documents categorically, but because the logs provided no relevant information at all. *Gazzara v. Pulte Home Corp.*, No. 6:16-cv-657, 2016 U.S. Dist. LEXIS 173970, at *10, 15 (M.D. Fla. Dec. 16, 2016) (the privilege log had entries like "spreadsheet – work product related to consulting engagement" and "reports and checklists"); *Montes v. Liberty Mut. Fire Ins. Co.,* No. 6:22-cv-920, 2023 U.S. Dist. LEXIS 56898, at *7 (M.D. Fla. Mar. 31, 2023) (the party failed to produce any privilege log whatsoever); *Johnson v. Gross*, 611 F. App'x 544, 548 (11th Cir. 2015) ("he never submitted a privilege log").[8] This is not what Relator has proposed: Relator proposed a categorical log which would provide sufficient information to assess the applicability of the relevant privileges.

In sum, while Defendants may correctly assert that Relator bears the burden of

---

[8] *U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.,* No. 6:09-cv-1002-Orl-31TBS, 2012 U.S. Dist. LEXIS 158944 (M.D. Fla. Nov. 6, 2012) does not speak to categorical privilege logs as a whole. Rather, the court considered whether threaded emails could be listed by "string" or whether each message had to be logged separately. *Id.* at *13-16. Here, Relator does not seek to categorize privileged communications because of a technological distinction but to maintain the confidentiality of the privileged material. The other cases cited by Defendants - *Schuller v. Geovera Specialty Ins. Co.,* No. 8:16-cv-2606-, 2018 U.S. Dist. LEXIS 244199 (M.D. Fla. Dec. 6, 2018), *Butterworth v. Lab'y Corp. of Am. Holdings,* No. 3:08-cv-411, 2010 WL 11470894 (M.D. Fla. June 15, 2010), and *Drummond Co., Inc. v. Conrad & Scherer, LLP,* 885 F.3d 1324, 1335 (11th Cir. 2018) – do not address the adequacy of privilege logs.

supporting her claims of privilege, Defendants fail to support their summary conclusion that a categorical privilege log falls short. *Gericare Med. Supply, Inc.*, 2000 U.S. Dist. LEXIS 19662, at *12-14 (denying motion to compel where "defendants have not explained how a categorical privilege log impaired their ability to test the plaintiff's claim of work product protection, which rises or falls as a unit"); *Teledyne Instruments, Inc.*, 2013 U.S. Dist. LEXIS 153497, at *55. Defendants' claim that specific, itemized entries are needed because the "privilege challenges will likely turn on . . . the dates [of] specific communications . . . the parties to the communications . . . the purpose of the communications . . . or the . . . content of the communications" (ECF No. 184 at 14) is simply incorrect. Privilege will turn on categorized dates (before or after common interest), categories of participants (relator and her counsel, an agent or officer of the United States), and categories of purpose (related to or in furtherance of the *qui tam* or not). A categorical logging of such communications provides all of the "detail" needed without invading the privilege in the log itself.

## IV.   Conclusion.

For the reasons stated herein, Defendants' motion to compel should be denied. Respectfully submitted, this 5th day of March 2024,

/s/ Jillian L. Estes
Jillian L. Estes (Fla Bar No. 0055774)
Frederick Morgan, Jr.*
Jonathan M. Lischak*
Morgan Verkamp LLC
4410 Carver Woods Dr., Suite 200
Cincinnati, Ohio 45242
Telephone: (513) 651-4400
Fax: (513) 651-4405

Email: jillian.estes@morganverkamp.com
rmorgan@morganverkamp.com
jonathan.lischak@morganverkamp.com

Kenneth J. Nolan (Fla. Bar No. 603406)
Marcella Auerbach (Fla. Bar No. 249335)
NOLAN, AUERBACH & WHITE, LLP
435 N. Andrews Ave., Suite 401
Fort Lauderdale, FL 33301
Phone: (954) 779-3943
Fax: (954) 779-3937
ken@whistleblowerfirm.com
marcella@whistleblowerfirm.com

Adam T. Rabin (Fla. Bar No. 985635)
Havan M. Clark (Fla. Bar No. 1026390)
RABIN KAMMERER JOHNSON
1601 Forum Place, Suite 201
West Palm Beach, FL 33401
Phone: (561) 659-7878
Fax: (561) 242-4848
arabin@rkjlawgroup.com
hclark@rkjlawgroup.com
e-filing@rkjlawgroup.com

***Counsel for Relator Dr. Clarissa Zafirov***

*admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I, Jillian Estes, hereby certify that the foregoing was served on March 5, 2024, to all parties of record via the CM-ECF electronic filing system.

*/s/ Jillian L. Estes*
Jillian L. Estes (Fla Bar No. 0055774)