# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* DR. CLARISSA ZAFIROV, | ) ) ) |
| Plaintiff and Relator, | ) ) |
| v. | ) No. 8:19-cv-01236-KKM-SPF ) |
| PHYSICIAN PARTNERS, LLC; FLORIDA MEDICAL ASSOCIATES, LLC, d/b/a VIPCARE; ANION TECHNOLOGIES, LLC; FREEDOM HEALTH, INC.; and OPTIMUM HEALTHCARE, INC., | ) ) ) ) ) ) |
| Defendants. | ) ) |

## RELATOR'S REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY FROM PROVIDER DEFENDANTS REGARDING AFFILIATE PROVIDERS

A year ago, Provider Defendants defined "Physician Partners physician" to "mean a physician either directly employed by Physician Partners or associated with Physician Partners through a practice management contract." ECF 178 at 2-3. When it came time to respond to interrogatories, however, Provider Defendants recanted on their own definition, now refusing all discovery related to those "associated" physicians. Defendants' response (ECF 193) to Relator's motion to compel (ECF 178) ignores their own representations and instead draws artificial and unsupported lines between employed and affiliate physicians as a means to avoid their discovery obligations. The purported differences are not only immaterial to Defendants' submission of false claims, but are inconsistent with the facts of this case. Further, Defendants' incantation of burden is also inconsistent with representations previously made to this Court and fails to provide the requisite specificity, and their response inaccurately represents the scope of the relief sought in Relator's motion.

**I.  Defendants' *Post Hoc* Distinctions Between Employed and Affiliate Providers are Inconsistent with the Facts of the Case.**

Defendants assert that Relator's discovery requests are "untethered to the specific allegations set forth in her Amended Complaint." ECF 193 at 13. Not so: The Amended Complaint specifically alleges, for example, that "Physician Partners engages with its physicians – *both employed and contracted* – in person, in writing, via Zoom, and through pre-recorded training videos to convey and enforce its expected coding protocols" through publications and guidance published on the Physician Partners portal (a platform available to all Physician Partners physicians, not just

1

employed physicians). ECF 86 at ¶¶138 (emphasis added)[1]; 151-158. Defendants also assert that Relator does not allege conduct by affiliate providers, but this is overly myopic: Patients were often transferred between Physician Partners physicians, so enrollment with an employed physician at the time of the Amended Complaint does not reflect whether that patient had previously been assigned to an affiliate provider.[2]

Defendants' assertion of disparate treatment between employed and affiliate providers is also inconsistent with the limited production made so far in this case. First, Relator previously identified that the contract between Physician Partners and Optimum expressly applies to both employed and contracted providers, refuting Defendants' notion that affiliate providers operate entirely on their own accord or interface with Physician Partners in materially different ways from employed physicians. ECF 178 at 11-12.[3] For example, the contract requires ███████████████████████████████████████████████████████████████████████████████

---

[1] In their Answer, the Provider Defendants "[a]dmitted that Physician Partners engages with physicians in person, in writing, through Zoom, and through recorded videos about a variety of topics including, but not limited to, coding and documentation guidelines" without drawing any distinctions between the employed and affiliate providers. ECF 129 at ¶ 138.

[2] For example, Patient A in the Amended Complaint was previously assigned to affiliate provider Dr. George Mansour and then became part of Relator's patient panel as an employed physician. When Dr. Mansour was terminated from his affiliation agreement, his Freedom patient panel was largely transferred to Dr. Anit Ford, an employed Physician Partners physician, and Dr. Nadia Hanna, an affiliate physician. See *Mansour v. Freedom Health, et al.*, No. 8:22-cv-595-WFJ-AEP (M.D.Fla.), ECF 110 at ¶¶ 118, 127, 146 and 110-6.

[3] ███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

Ex. A at -422, -423, -427.

Second, the Physician Affiliate Agreement ("PAA") – the contract through which Physician Partners contacted with affiliate providers – made clear that Physician Partners had far more than a passive oversight role in the affiliate practices. For example, the PAA between affiliate provider Dr. George Mansour and Physician Partners stated, "Physician agrees that [Physician Partners] may properly submit on behalf of Physician applicable additional or alternative diagnosis codes (i.e., ICD-9 or their successor codes) …." Exhibit B, Dr. George Mansour PAA, No. 8:22-cv-00595 (M.D. Fla.), ECF 110-1.[4]

Finally, Defendants suggest that they are so divorced from affiliate providers that they "may not be able to get access to such medical records, particularly regarding former affiliated providers with whom they no longer have contractual relationships." ECF 193 at 5. However, in August 2023, Defendants submitted a declaration in this case by Emily Gallman, Vice President of Healthcare Operations and Practice Administrator for VIPcare. ECF 145-1. Gallman based her declaration on "personal

---

[4] Defendants suggest that Dr. George Mansour is the *only* one of 241 affiliate providers who had a similar relationship as the employed providers. Documents suggest that it is unlikely that his relationship was so unique. For example, the bottom of his PAA includes a version stamp reading "Physician Partners_PCP_2013_07." Ex. B at 1. The version code suggests it to be a template form which had been in place since at least July 2013, almost four years before Physician Partners used it with Dr. Mansour.

3

knowledge" and "personal review of Physician Partners' and VIPcare's billing and claims records." *Id.* at ¶2. Based on that information, Gallman represented that "no physician employed by VIPcare *or otherwise affiliated with Physician Partners* submitted the diagnosis codes referenced in the Amended Complaint for Patients A, P, or Q." *Id.* at ¶3 (emphasis added). Thus, either Gallman misrepresented the scope of her review to the Court, or Physician Partners' "billing and claims records" are sufficient to identify the specific codes submitted for patients of affiliate physicians.

## II.     Provider Defendants Do Not Articulate an Undue Burden.

Defendants cannot avoid relevant, responsive discovery with a generalized statement that compliance might cost "hundreds of thousands of dollars." ECF 193 at 13-14. Rather, to avoid discovery obligations, courts have routinely held that "a mere showing of burden and expense is not enough." *Radcliffe v. Darcy Hall Med. Inv'rs, LLC*, No. 09-81063, 2010 U.S. Dist. LEXIS 152792, at *10 (S.D. Fla. Mar. 22, 2010). Defendants represent that *McPherson v. Fla. Dep't Corr.* stands for the proposition that the scope of a case should be narrowed to account for "the expense and time associated with producing the documents," but *McPherson* did *not* narrow the scope of discovery simply because compliance would be costly; indeed, *McPherson* did not narrow the scope of discovery at all. Rather, it allowed requested production and directed the parties to confer on search terms and custodians (*id.*) – exercises the parties here have already undertaken at length.[5]

---

[5] Defendants similarly overstate the holding of *U.S. ex rel. McCartor v. Rolls-Royce Corp.*, No. 1:08-cv-00133, 2013 U.S. Dist. LEXIS 136387, at *17-23 (S.D. Ind. Sept. 24, 2013). While the court was

4

The only detailed information before the Court actually negates Defendants' bare assertion of burden. Gallman's declaration (*supra*) can only mean either Physician Partners has always been in possession of claims data related to the affiliate providers or the claims data has already been collected and is in a searchable repository. Either option forestalls Kollefrath's assertion that gathering records would be a considerable expense to Physician Partners. *See Son Gon Kang v. Credit Bureau Connection, Inc.*, No. 1:18-cv-01359, 2020 U.S. Dist. LEXIS 61229, at *13 (E.D. Cal. Apr. 7, 2020) (defendant's prior search of records at issue suggested no undue burden).

### III. Provider Defendants Attempt to Narrow Relator's Motion.

Defendants pull a single clause out of a footnote to assert that Relator is only seeking discovery into "the subset of the affiliated provider [who] do not manage their own coding, billing, and referrals." ECF 193 at 3, misquoting ECF 178 at 13, n. 12. The footnote merely points out the internal inconsistencies in the Provider Defendants' letter and the purported distinctions which have no relevance to Relator' complaint. The relief sought in Relator's motion is clear: Provider Defendants must respond "to all discovery requests as to all Physician Partners physicians, both employed and affiliated." ECF 178 at 2.

Respectfully submitted this 8th day of March, 2024,

---

mindful that expensive discovery not become a litigation strategy, it did not narrow the scope of the claims at issue. To the contrary, the court opined, "It is unreasonable, in this judge's view, to impose a limit on discovery and recovery in *qui tam* cases to specific examples of fraudulent behavior that relators were able to describe in their complaint when—as in this case—the complaint describes a general fact pattern of alleged fraudulent behavior supported by specific examples of that behavior. The court sees no good reason to prevent a relator from discovering other examples of behavior substantially similar to those described in the complaint and that similarly fit the pattern of conduct on which the complaint is focused." *Id.* at *19.

        /s/ Jillian L. Estes
Jillian L. Estes (Fla Bar No. 0055774)
Frederick Morgan, Jr.*
Jonathan M. Lischak*
Morgan Verkamp LLC
4410 Carver Woods Dr., Suite 200
Cincinnati, Ohio 45242
Telephone: (513) 651-4400
Fax: (513) 651-4405
Email: jillian.estes@morganverkamp.com
rmorgan@morganverkamp.com
jonathan.lischak@morganverkamp.com

Kenneth J. Nolan (Fla. Bar No. 603406)
Marcella Auerbach (Fla. Bar No. 249335)
NOLAN, AUERBACH & WHITE, LLP
435 N. Andrews Ave., Suite 401
Fort Lauderdale, FL 33301
Phone: (954) 779-3943
Fax: (954) 779-3937
ken@whistleblowerfirm.com
marcellla@whistleblowerfirm.com

Adam T. Rabin (Fla. Bar No. 985635)
Havan M. Clark (Fla. Bar No. 1026390)
RABIN KAMMERER JOHNSON
1601 Forum Place, Suite 201
West Palm Beach, FL 33401
Phone: (561) 659-7878
Fax: (561) 242-4848
arabin@rkjlawgroup.com
hclark@rkjlawgroup.com
e-filing@rkjlawgroup.com

***Counsel for Relator Dr. Clarissa Zafirov***

*admitted pro hac vice

6

## CERTIFICATE OF SERVICE

    I, Jillian Estes, hereby certify that the foregoing reply was served on March 8th, 2024, to all parties of record via the CM/ECF electronic filing system.

                                         /s/ Jillian L. Estes
                                         Jillian L. Estes (Fla. Bar No. 0055774)