**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA *ex rel.* DR. CLARISSA ZAFIROV,

Plaintiff/Relator,

v.

PHYSICIAN PARTNERS, LLC; FLORIDA MEDICAL ASSOCIATES, LLC, d/b/a VIPCARE; ANION TECHNOLOGIES, LLC; FREEDOM HEALTH, INC.; and OPTIMUM HEALTHCARE, INC.,

Defendants.

Case No. 8:19-cv-01236-KKM-SPF

**DEFENDANTS FREEDOM HEALTH, INC. AND OPTIMUM HEALTHCARE, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL RESPONSES TO REQUESTS FOR PRODUCTION NOS. 4–7**

Relator's Opposition (ECF 202, the "Opposition" or "Opp.") mischaracterizes the law and the relief sought in Freedom Defendants' Motion, and introduces new factual assertions that confirm the necessity of compelling Relator to produce a privilege log that will be adequate for Freedom Defendants and the Court to assess the propriety of Relator's overbroad privilege claims.[1]

### A. The Common-Interest Doctrine Does Not Independently Confer Privilege.

At points in the Opposition, Relator recognizes (as she must) that the common-interest doctrine is not an independent source of privilege, and serves only to permit the sharing of otherwise privileged information or work product with another party "without waiving the right to assert the privilege." Opp. 7 (internal quotation omitted). Elsewhere in the Opposition, though, Relator overstates the role of the common-interest doctrine. For instance, in a section purporting to establish that all of Relator's direct communications with the government are "[p]rivileged," Relator argues only (1) that the common-interest doctrine would apply to those communications (all of which post-date the filing of this suit), and (2) that the work-product doctrine (embodied in Federal Rule 26(b)(3)(A)) can apply to documents prepared by a party. Opp. 14-15 (noting also that such communications between a relator and a government agent are "precisely the type of communications protected by the common interest doctrine").

[1] This Motion employs the same naming conventions and abbreviations employed in Freedom Defendants' Motion to Compel Responses to Requests for Production Nos. 4-7 (ECF 184, "Motion," or "Mot").

To be clear: The common-interest doctrine does not "protect" *any* documents from disclosure unless they are *otherwise* privileged or subject to the work-product doctrine. *See* Mot. 15; *In re Commercial Money Ctr., Inc. Equip. Lease Litig.*, 248 F.R.D. 532, 536 (N.D. Ohio 2008). To the extent Relator's argument relies on a blanket assertion of "privilege" arising from the simple fact that a "common interest" existed while Relator was communicating with the government, her argument finds no support in the law.[2]

**B. Relator's Proposed "Categorical" Privilege Log Is Inadequate to Test Relator's Assertions of Privilege and Work-Product Protection.**

Relator's arguments rest on the proposition that *every single one* of her direct communications with any agent of the government is privileged or subject to work-product protection. *See* Opp. 8 (asserting that Relator has already "met her production obligations for non-privileged materials," and that the "discrete categories of documents and communications that Defendants now seek are protected from disclosure"). Indeed, the Opposition goes a step further—asserting that every

[2] Relator devotes much attention in the Opposition establishing that her common interest with the government was established before any of her direct communications with the government. *See* Opp. 8-13. Before filing the Opposition, Relator had not disclosed whether she had had any direct communications with the government that pre-dated her pre-filing disclosure. Relator now represents that "all communications in question occurred during the Government's investigation of this case." Opp. 4.; *see also* Decl. of Jillian L. Estes, ECF 202-2 (the "Estes Declaration" or "Decl."). Contrary to Relator's assertion (Opp. 9) that Freedom Defendants "confuse[d]" or otherwise misrepresented the requirements of the FCA, the Motion discussed communications "pre-dating [Relator's] filing of the disclosure statement" (Opp. 17) only because Freedom Defendants were uncertain as to whether such communications existed (and whether Relator would improperly withhold those communications as privileged and protected by the common interest doctrine). Assuming the truth of these new factual assertions—which Freedom Defendants currently have no basis to question—Freedom Defendants still vehemently dispute the *impact* of Relator's claimed common interest after the date of her pre-filing disclosure, including whether all of the responsive documents are truly subject to some underlying privilege or protection, as outlined in the Motion and in this Reply.

communication is *so obviously* protected that the Court need not analyze the particular facts surrounding those communications in order to determine that the communications have been properly withheld. *See* Opp. 18-20. Each assertion misapprehends the law, which (1) makes plain that privilege and the work-product doctrine often turn on the sorts of particular facts that Relator deems irrelevant, and (2) requires privilege logs to disclose information sufficient to "enable other parties to assess the claim," Fed. R. Civ. Pro. 26(b)(5)(A).

*1. Attorney-Client Privilege and the Work-Product Doctrine Do Not Extend to All Communications Between a Relator and Government Agents.*

Analysis of claims of privilege and work-product protection is highly fact-specific. *See* Mot. 12-13. Relator's Opposition papers over the complications inherent in this analysis to conclude (apparently) that *all of* Relator's communications with the government are subject to the work-product doctrine. Opp. 14-15.[3]

But a relator's communications with government agents are *not* necessarily immune from disclosure under the work-product doctrine. *See, e.g.*, *U.S. ex rel. Minge v. TECT Aerospace, Inc.*, 2011 WL 1885934, at *8 (D. Kan. May 18, 2011) (compelling production of relators' communications to government agents and attorneys because they "[were] not shown to be within the protection of Rule 26(b)(3)(A)," which defines the scope of attorney-work-product doctrine); *U.S. ex rel. Jacobs v. Advanced Dermatology*

[3] Notably, Relator does not argue in this section that all of her communications with the government (or any of them, for that matter) are subject to attorney-client privilege. This may be because some of Relator's direct communications with agents of the government were directed at non-attorneys, such that attorney-client privilege would not apply; this supposition is necessarily speculative, since Relator has not disclosed any details about any specific communications.

*& Skin Cancer Specialists, P.C.*, 2023 WL 9005630, at *12 (C.D. Cal. Dec. 18, 2023) (requiring production of a privilege log, and noting that it was "not clear that all communications with the Government in a *qui tam* suit, pre-or post-filing of the complaint, are work product, or if they are, whether they constitute fact (discoverable) or opinion (virtually undiscoverable) work product"). Some of Relator's communications may well contain work product, but that can only be established with reference to specific facts pertaining to those communications.[4]

*2. The Estes Declaration Demonstrates the Inadequacy of Relator's Proposed "Categorical" Privilege Log*

Relator's proposed categorical log provides none of the factual information that Freedom Defendants (and the Court) will need to assess Relator's privilege and work-product assertions. Although Relator avoids saying so explicitly, Relator has now disclosed *all* of the information that Relator is willing to disclose about her withheld communications.[5]

That information is woefully insufficient. Relator's refusal to specify the ground on which any specific communication is being withheld means Freedom Defendants

[4] Indeed, Relator's position that *all* of her written communications with government agents are immune from disclosure is inconsistent with her decision to produce all of her *recorded* conversations with government agents in this litigation, *see* Mot. 3-6 (characterizing recordings). Relator has thus already implicitly recognized that some of her communications with government agents may *not* be properly withheld under the work-product doctrine.

[5] Relator's proposed privilege log would do no more than "identify[] the date range" of Relator's communications with the government, and disclose the dates on which Relator made her prefiling and written disclosures to the government. ECF 184-5; *see also* Opp. 20. Relator's Opposition, along with the Estes Declaration, discloses every detail that Relator is willing to provide. *See* Opp. 4, 18 (disclosing the date range of Relator's communications with government personnel, the dates of Relator's disclosures to the government, and asserting that all communications were "made in relation to and in furtherance of this litigation").

must guess *why* the communications are being withheld—as privileged? As "fact" work-product? "Opinion" work-product? As merely "subject to common-interest privilege" (which confers no independent privilege, *see supra*, Section A)? And Relator's blanket assertion that all communications "relat[e] to" the *qui tam* (Opp. 18) provides "no relevant information at all" (*see* Opp. 19, collecting cases) about the true nature of the communications, or the viability of Relator's assertions.

### C. Defendants Cannot Litigate Forthcoming Work-Product Disputes Without an Adequate Privilege Log

Finally, the Court should reject Relator's attempt to litigate an issue that Freedom Defendants never raised—whether Freedom Defendants have demonstrated a "substantial need" for certain materials subject to the work-product doctrine, or incurred "undue hardship" for their non-disclosure. Opp. 15-16. These issues cannot be decided on this record—not least because Relator has not specified whether any specific documents are being withheld as "fact" work-product (which may be discoverable) as opposed to "opinion" work-product (which generally is not).

Freedom Defendants recited the "substantial need" and "undue hardship" standards (Mot. 12-13) only to argue that Freedom Defendants needed an adequate privilege log in order to even *assess* whether to challenge Relator's attempts to withhold documents. Freedom Defendants did not, as Relator charges (Opp. 15-16), attempt to *establish* that these exceptions existed. Indeed, that's the whole point—Freedom Defendants *cannot* establish "substantial need" and "undue hardship" in the absence of any substantial information on Relator's privilege and work-product assertions.

Dated: March 25, 2024

Respectfully submitted,

By: */s/ Amanda M. Santella*

Amanda M. Santella*
Benjamin D. Singer*
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
(202) 383-5414 (fax)
asantella@omm.com
bsinger@omm.com

Scott Drake (Lead Counsel)*
O'MELVENY & MYERS LLP
2801 North Harwood Street, Suite 1600
Dallas, TX 75201
(972) 360-1915
(972) 360-1901 (fax)
sdrake@omm.com

Elizabeth M. Bock*
Elizabeth A. Arias*
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
(213) 430-6000
(213) 430-6407 (fax)
ebock@omm.com
earias@omm.com

Ginger Boyd
Fla. Bar No. 294550
NELSON MULLINS RILEY & SCARBOROUGH LLP
215 South Monroe Street, Suite 400
Tallahassee, FL 32301
(850) 205-3356
(850) 521-1472 (fax)
Ginger.Boyd@nelsonmullins.com

*Counsel for Freedom Defendants*
** admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2024, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will provide electronic service to all counsel of record.

By: */s/ Amanda M. Santella*

Amanda M. Santella*

*Counsel for Freedom Defendants*
** admitted pro hac vice*