## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA
*ex rel.* DR. CLARISSA ZAFIROV,

      Plaintiff/Relator,

v.

PHYSICIAN PARTNERS, LLC;
FLORIDA MEDICAL ASSOCIATES,
LLC, d/b/a VIPCARE; ANION
TECHNOLOGIES, LLC; FREEDOM
HEALTH, INC.; and OPTIMUM
HEALTHCARE, INC.,

      Defendants.

Case No. 8:19-cv-01236-KMM-SPF

## RELATOR'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

## **TABLE OF CONTENTS**

Introduction .............................................................................................................1

Facts and Procedural History...................................................................................2

Legal Argument .......................................................................................................3

    I.      Defendants Seek the Extraordinary Relief of Invalidating the False Claims Act, Counter to Every Court to Consider Such Challenges. ......................3

    II.    The False Claims Act Does Not Violate Article II of the Constitution. ......5

      A.   The False Claims Act's Partial Assignment to Relator Rests Solidly in the Property Clause of the Constitution and Maintains Executive Controls Under Article II..........................................................................5

      B.   The False Claims Act Does Not Violate the Vesting and Take Care Clauses.....................................................................................................9

      C.   The False Claims Act Does Not Violate the Appointments Clause. .........13

      D.   The History of the False Claims Act Confirms Its Constitutionality.........17

    III.   Relator has Article III Standing. .........................................................20

Conclusion ...........................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                      page(s)

*Auffmordt v. Hedden,*
    137 U.S. 310  (1890) ........................................................................................16

*Bowsher v. Synar,*
    478 U.S. 714 (1986) ......................................................................................3

*Buckley v. Valeo ,*
    424 U.S. 1 (1976) .................................................................................. 14, 15

*Cochise Consultancy, Inc. v. United States ex rel. Hunt,*
    139 S. Ct. 1507 (2019) ..............................................................................13

*Eagle R&R LLC v. Louisiana,* No. 1:20-00417, 2021 U.S. Dist.
    LEXIS 245462 (S.D. Ala. Sept. 23, 2021) ............................................4

*Friedman v. Rite Aid Corp.,*
    152 F. Supp. 2d 766 (E.D. Pa. 2001) ....................................11, 14, 16

*Logan v. Zimmerman Brusch Co.,*
    455 U.S. 422 (1982) ......................................................................................6

*Lucia v. SEC,*
    138 S. Ct. 2044 (2018) ..............................................................................15

*Mistretta v. United States,*
    488 U.S. 361 (1989) ................................................................................ 3, 11

*Morrison v. Olson,*
    487 U.S. 654 (1988) ..........................................................11, 12, 15

*Riley v. St. Luke's Episcopal Hosp.,*
    252 F.3d 749 (5th Cir. 2001)...................................................*passim*

*Seila L. LLC v. Consumer Financial Protection Bureau,*
    140 S. Ct. 2183 (2020) ..............................................................................11

*Stalley v. Orlando Reg'l Healthcare Sys.,*
    524 F.3d 1229 (11th Cir. 2008) ..............................................................6

*Things Remembered, Inc. v. Petrarca,*
    516 U.S. 124 (1995) ....................................................................................4

*United States ex rel. Truong v. Northrop Corp.,*
    728 F.Supp. 615 (C.D.Cal. 1989) ...........................................................17

*United States ex rel. Vt. Nat'l Tel. Co. v. Northstar Wireless LLC,*
    No. 15-0728, 2023 U.S. Dist. LEXIS 201259 (D.D.C. Nov. 9, 2023) ...................2

*United States ex rel. Wallace v. Exactech, Inc.*, No. 7:18-cv-01010, 2023
    U.S. Dist. LEXIS 207881 (N.D. Ala. Nov. 20, 2023) ...................................*passim*

*United States v. Perkins,*
    116 U.S. 483 (1886) .................................................................................11

*United States by Dep't of Hous. & Urban Dev. ex rel. Givler v. Smith,*
    775 F. Supp. 172 (E.D. Pa. 1991) ...........................................................3

*United States ex rel. Amin v. George Washington Univ.,*
    26 F. Supp. 2d 162 (D.D.C. 1998) .........................................................14

*United States ex rel. Burch v. Piqua Engineering, Inc.*,
    803 F. Supp. 115 (S.D. Ohio 1992)........................................................16

*United States ex rel. Butler v. Magellan Health Servs.*,
    74 F.Supp.2d 1201 (M.D. Fla. 1999) .............................................. 1, 5, 17

*United States ex rel. CIMZNHCA, LLC v. UCB, Inc.*,
    970 F.3d 835 (7th Cir. 2020)..................................................................13

*United States ex rel. Chandler v. Hektoen Inst. for Med. Research,*
    35 F. Supp. 2d 1078 (N.D. Ill. 1999)......................................................16

*United States ex rel. Eisenstein v. City of New York,*
    556 U.S. 928 (2009) ...............................................................................7, 8

*United States ex rel. Gublo v. Novacare, Inc.*,
    62 F. Supp. 2d 347 (Mass. 1999)...........................................................11

*United States ex rel. Kelly v. Boeing Co.*,
    9 F.3d 743 (9th Cir. 1993) ..............................................................*passim*

*United States ex rel. Killingsworth v. Northrop Corp.*,
   25 F.3d 715 (9th Cir. 1994)...................................................................8

*United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*,
   985 F. 2d 1148 (2d Cir. 1993) ..........................................................5, 10

*United States ex rel. Fallon v. Accudyne Corp.*,
   921 F. Supp. 611 (W.D. Wis. 1995)......................................................16

*United States ex rel. Lujan v. Hughes Aircraft Co.*,
   67 F.3d 242 (9th Cir. 1995)..................................................................7

*United States ex rel. Marcus v. Hess*,
   317 U.S. 537 (1943) .............................................................................6

*United States ex rel. Milam v. University of Texas M.D. Anderson Cancer Ctr.*,
   961 F.2d 46 (4th Cir. 1992)...................................................................8

*United States ex rel. Miller v. ManPow, LLC*, 2023 U.S. Dist. LEXIS 179199
   (C.D. Cal. 2:21-cv-05418, Aug. 30, 2023) ...........................................14

*United States ex rel. Phillips v. Pediatric Servs. of Am., Inc.*,
   123 F. Supp. 2d 990 (W.D.N.C. 2000) ..................................................9

*United States ex rel. Polansky*,
   599 U.S. 419 S. Ct. 1720 (2023).....................................................*passim*

*United States ex rel. Rigsby*,
   580 U.S. 26 (2016) ..............................................................................6

*United States ex rel. Robinson v. Northrop Corp.*,
   824 F. Supp. 830 (N.D. Ill. 1993) .........................................................9

*United States ex rel. St. John LaCorte v. SmithKline Beacham Clinical Labs., Inc.*,
   No. 96-1380 C/W 97-942, 1999 U.S. Dist.
   LEXIS 13036 (E.D. La. Aug. 19, 1999) ................................................9

*United States ex rel. Stone v. Rockwell Int'l Corp.*,
   282 F. 3d 787 (10th Cir. 2002) ....................................................5, 13, 14

*United States ex rel. Taxpayers Against Fraud v. GE*,
   41 F.3d 1032 (6th Cir. 1994)...................................................5, 9, 13, 16

*United States v. Donzinger*,
    38 F.4th 290 (2022) ...................................................................................... 15

*United States v. Germaine*,
    99 U.S. 508 (1878) .................................................................................. 16, 17

*United States v. Halifax Hosp. Med. Ctr.*,
    997 F. Supp. 2d 1272 (M.D.Fla. 2014) ....................................................... 5, 17

*United States v. Hibbs*,
    568 F.2d 347 (1977) ...................................................................................... 6

*Vermont Agency of Nat. Res. v. United States ex rel. Stevens*,
    529 U.S. 765 (2000) ........................................................................... 4, 6, 18, 20

*Yates v. Pinellas Hematology & Oncology, P.A.*,
    21 F. 4th 1288 (11th Cir. 2021) ........................................................ 6, 7, 8, 12

## Statutes

28 U.S.C. § 517 .................................................................................................. 8

31 U.S.C. § 3730(b)(2) ...................................................................................... 7

31 U.S.C. § 3730(b)(3) ...................................................................................... 7

31 U.S.C. § 3730(c)(3) ....................................................................................... 8

31 U.S.C. § 3730(c)(4) ....................................................................................... 8

U.S.C. § 3730(d)(2)-(3)................................................................................. 8, 9

## Other Authorities

S. Rep. 99-345, 1986 U.S.S.C.A.N. ................................................................ 19

*The Organization and Administration of the Union Army 1861-1865*,
    (Peter Smith Press 1965) .......................................................................... 18

## Constitutional Provisions

U.S. Const. Art. II, § 1, cl. 1, 3....................................................................9

U.S. Const. Art. II, § 2, cl. 2 .....................................................................13

U.S. Const. Art. IV, § 3, cl.2 .......................................................................6

## INTRODUCTION

Defendants Freedom Health, Inc., Optimum Healthcare, Inc., Physician Partners, LLC, Florida Medical Associates, LLC d/b/a VIPcare, and Anion Technologies, LLC (jointly, "Defendants") filed a joint motion for judgment on the pleadings or to dismiss for lack of subject matter jurisdiction (Doc. 180) asking this Court to become the sole court in the United States to find that the *qui tam* provisions of the False Claims Act are facially unconstitutional. Despite not identifying a single court that agrees with their proposed constitutional interpretation, and legions of caselaw (both historical and immediately recent) which recognize the well-established constitutionality of the nation's leading tool to remedy fraudulent misconduct against the United States, Defendants assert for the first time in this litigation that the False Claims Act ("FCA") violates Article II of the Constitution, specifically the Take Care Clause and the Appointments Clause. Defendants arguments are neither supportable nor novel; courts around the county have considered and rejected both angles time and again.

For the reasons set forth herein, and for the reasons articulated by every court to reach the same conclusions on the same arguments, Defendants' motion is due to be denied in its entirety. *United States ex rel. Butler v. Magellan Health Servs.*, 74 F.Supp.2d 1201, 1212 (M.D. Fla. 1999) ("A standard defense is an attack on the constitutionality of the FCA. Defendant[s] argue[ ] that the qui tam provisions of the FCA violate (1) the separation of power clause of the Constitution, [and] (2) the appointments clause…. Each of these arguments has been brought repeatedly by defendants in qui

1

tam cases, and each has been rejected resoundingly by the District and Circuit courts….").

## FACTS AND PROCEDURAL HISTORY

Defendants' recitation of the procedural history of this case and the summary of Relator's allegations are generally accurate. (Doc. 180 at 3-4.) However, Defendants' representations that "Zafirov has continued to press this litigation on her own" and that "Zafirov has prosecuted and controlled the Government's claims" gloss over realities of the litigation which are critical to this motion. (Doc. 180 at 4.) And while "the facts and procedural history of this case are not crucial to the resolution" of a facial constitutional challenge, "a brief summary illustrates the control that the Government retains in FCA actions" generally, and has exercised in this action in particular. *United State ex rel. Wallace v. Exactech, Inc.*, No. 7:18-cv-01010, 2023 U.S. Dist. LEXIS 207881, at *4-5 (N.D. Ala. Nov. 20, 2023).

Following the Government's declination, Zafirov has "conduct[ed] the action," but has far from done so in a silo. Relator conferred with the United States regarding the dismissal of four defendants in advance of filing her Amended Complaint, and the United States consented to the dismissal. (Docs. 85, 87.) In response to Defendants' motions to dismiss Relator's Amended Complaint, the United States exercised its authority to object to dismissal on the basis of the public disclosure bar. (Doc. 105.)[1]

---

[1] This interjection by the United States was particularly significant because of the Court's prior assessment that "the public disclosure bar prohibited Relator from bringing her claims." (Doc. 81 at 1.) But, the Government's ability to veto a public disclosure dismissal is absolute, so dismissal on those grounds was foreclosed here. *United States ex rel. Vt. Nat'l Tel. Co. v. Northstar Wireless LLC*, No. 15-

Also in response to Defendants' motions to dismiss, and with the Court's consent, the United States filed a Statement of Interest to provide its position on two critical issues in this case: "whether diagnosis codes are material to payments under the False Claims Act" and "whether diagnosis codes directly impact the amount of capitated payments received by a managed care provider." (Docs. 115, 117, 120.) Similarly, the Court has granted permission for the United States to submit a response to Defendants' constitutional challenge (Doc. 203) and, as the real-party-in-interest, the United States will share time with Relator during oral arguments as.

## LEGAL ARGUMENT

I.   **DEFENDANTS SEEK THE EXTRAORDINARY RELIEF OF INVALIDATING THE FALSE CLAIMS ACT, COUNTER TO EVERY COURT TO CONSIDER SUCH CHALLENGES.**

Challenges to the constitutionality of a statute are requests for extraordinary relief that require an extraordinary showing. A court should invalidate an act of Congress only "for the most compelling constitutional reasons." *Mistretta v. United States*, 488 U.S. 361, 384 (1989), *quoting Bowsher v. Synar*, 478 U.S. 714, 736 (1986). Such constitutional caution is particularly necessary where, as here, the statute in question reflects a "considered scheme for resolving [an] intractable dilemma." *Mistretta*, 488 U.S. at 384; *see also United States by Dep't of Hous. & Urban Dev. ex rel. Givler v. Smith*, 775 F. Supp. 172, 175 (E.D. Pa. 1991)(upholding FCA against constitutional challenge, recognizing it addresses a "deeply vexing national problem").

---

0728, 2023 U.S. Dist. LEXIS 201259, at *30 (D.D.C. Nov. 9, 2023)("Court must permit a claim to proceed where dismissal is opposed by the United States").

3

Defendants assert that they are entitled to judgment on the pleadings, or alternatively for dismissal for lack of subject matter jurisdiction based on lack of standing if the *qui tam* provisions of the False Claims Act are found to be unconstitutional. Defendants admit that this claim is not timely brought within their pleadings (Doc. 180 at 4), and they make no showing of good cause for their untimeliness. The defect can no longer be remedied by amendment, as the deadline to amend pleadings expired nearly a year ago on April 3, 2023.[2]

Defendants also admit that the question of whether a *qui tam* relator has standing has already been conclusively established by the Supreme Court, which held that the law "leaves no room for doubt that a *qui tam* relator under the FCA has Article III standing." *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 778 (2000) ("*Stevens*").[3] Given this controlling precedent, Defendants' inability to draw a straight line between their Article II constitutional challenges and a lack of subject matter jurisdiction or standing is unsurprising. Indeed, over the history of the False

---

[2] *See Eagle R&R LLC v. Louisiana*, No. 1:20-00417, 2021 U.S. Dist. LEXIS 245462, at *5-6 (S.D. Ala. Sept. 23, 2021) (failure to assert a claim or timely amend establishes lack of diligence, and lack of good cause to amend to pursue claim). Here, Defendants are represented by more than a dozen experienced *qui tam* attorneys, and have established no good cause why this claim was not raised years ago.

[3] Although *Stevens* did not engage in an Article II analysis, Defendants are incorrect that the Supreme Court "expressly left open" whether the FCA violated Article II. (Doc. 180 at 24). If the Court interpreted the *qui tam* provisions to be a jurisdictional bar to the case, it would necessarily have resolved that before rendering the remainder of its decision, irrespective of the issues raised by the petitioner. *See, Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 132 n.1 (1995) (Ginsburg, J., concurring) ("Of course, every federal court, whether trial or appellate, is obliged to notice want of subject matter jurisdiction on its own motion"). And, as Justice Stevens in his dissent put more directly: "The historical evidence summarized by the Court…is obviously sufficient to demonstrate that *qui tam* actions are 'cases' or 'controversies' within the meaning of Article III. That evidence, together with the evidence that private prosecutions were commonplace in the 19th century, is also sufficient to resolve the Article II question…." 529 U.S. at 801 (Stevens, J. dissenting).

4

Claims Act, the Supreme Court, and every court of appeal and district court to address the Article II challenges raised by Defendants has universally rejected them.[4]

Most recently, an Eleventh Circuit sister court—the Northern District of Alabama—assessed arguments virtually identical to those set forth by Defendants and found that "Defendant's constitutional arguments lack merit." *Wallace*, 2023 U.S. Dist. LEXIS 207881, at *3, 10 (noting, like here, "much of Defendant's arguments stem from dissenting opinions from the Supreme Court and other circuits"). In sum, "every circuit court to consider the issue has concluded that the FCA does not violate Article II" and Defendants offer no basis for this Court to depart from those conclusions. *Id.*

## II.   THE FALSE CLAIMS ACT DOES NOT VIOLATE ARTICLE II OF THE CONSTITUTION.

### A.   The False Claims Act's Partial Assignment to Relator Rests Solidly in the Property Clause of the Constitution and Maintains Executive Controls Under Article II.

While Defendants focus their constitutional arguments on the scope of the executive powers set forth in Article II, it is useful to begin any constitutional analysis of the FCA with recognition of the constitutional source for the FCA itself. The

---

[4] *See, e.g.*, *United States ex rel. Kelly v. Boeing Corp*, 9 F.3d 743,757 (9th Cir. 1993) (*qui tam* provisions of the FCA do not "impermissibly interfere" with executive or "disrupt the 'proper balance'" between branches); *United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F. 2d 1148, 1154-55 (2d Cir. 1993) (*qui tam* suits "do not constitute an intrusion into areas committed to other governmental branches, for the courts are specifically engaged in the implementation of legislative policy"); *United States ex rel. Taxpayers Against Fraud v. GE*, 41 F.3d 1032 (6th Cir. 1994); *Riley v. St. Luke's Episcopal Hospital*, 252 F.3d 749 (5th Cir. 2001); *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787 (10th Cir. 2002); *United States v. Halifax Hosp. Med. Ctr.*, 997 F. Supp. 2d 1272 (M.D. Fla. 2014); *Butler*, 74 F. Supp. 2d at 1212.

Property Clause of the United States Constitution vests Congress with the "Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. Art. IV, § 3, cl.2. The broad purpose of the FCA was "stopping the massive frauds perpetrated by contractors supplying goods and services" to the government. *United States v. Hibbs*, 568 F.2d 347, 350 (1977). Because the United States' claims in litigation resulting from contractors' fraudulent conduct are a form of property, *Logan v. Zimmerman Brusch Co.*, 455 U.S. 422, 428 (1982), and the Constitution expressly empowers Congress to dispose of that property as it sees fit, the FCA and its *qui tam* provisions are authorized by the Property Clause. *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 542 (1943)("Congress has power to choose this method [*qui tam*] to protect the government from burdens fraudulently imposed upon it….").

Through the *qui tam* provisions of the FCA, the United States "effect[s] a partial assignment of the Government's damages claim." *Stevens*, 529 U.S. at 773. The FCA provides comprehensive rules regarding that assignment such that a *qui tam* plaintiff under the FCA is unlike any other plaintiff. "Because the relator is no ordinary civil plaintiff, he is immediately subject to special restrictions." *United States ex rel. Polansky*, 599 U.S. 419, 143 S. Ct. 1720, 1727 (2023)("*Polansky*").[5] In fact, "in non-intervened

---

[5] *See also United States ex rel. Rigsby*, 580 U.S. 26, 29 (2016)("The FCA places a number of restrictions on suits by relators."); *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F. 4th 1288, 1310-11 (11th Cir. 2021); *Stalley v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1234 (11th Cir. 2008) (comparing FCA to Medicare Secondary Payer Act, holding that "FCA vests the government with several significant procedural controls, including the rights to dismiss the action without the consent of the relator, to review the complaint *in camera* before it is served, and the right to veto or approve a settlement").

*qui tam* actions, the relator has primary responsibility to assert the rights of the United States only because the United States allows it to do so by declining to intervene." *Yates v. Pinellas Hematology & Oncology*, 21 F. 4th 1288, 1310 (11th Cir. 2021). Thus, contrary to Defendants' arguments, which exaggerate both the power that the FCA bestows on relators and the limitations it places on the Department of Justice, the *qui tam* provisions confer only discrete authority so limited as to not infringe upon the powers bestowed upon the executive branch by Article II of the Constitution.

For example, a relator must file the complaint "in camera," and the complaint "shall remain under seal for at least 60 days," during which time a *qui tam* plaintiff cannot publicly discuss the case. 31 U.S.C. § 3730(b)(2); *United States ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 245 (9th Cir. 1995). During the seal period, the Government conducts an investigation of the matter. § 3730(b)(3). The Government determines if it will seek extensions of the seal period to complete its investigation, and supports those requests with sealed memoranda, as it did in this matter. (*See* Doc. 17, maintaining seal of Government's briefs in support of extension of intervention deadline.)

After the investigation, if the government decides not to intervene and the relator conducts the action, the government retains "continuing rights" throughout the case as it is still the "real party in interest." *Polansky*, 143 S. Ct. at 1728, *citing United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 930 (2009). As the Supreme Court recognized in *Eisenstein*, the federal government is at least "minimally involved

in every FCA action," even if it is not a party. 556 U.S. at 931. The government is entitled to be served with all pleadings and discovery on request, 31 U.S.C. § 3730(c)(3); it may stay specified discovery, 31 U.S.C. § 3730(c)(4); it regularly files Statements of Interest in non-intervened litigation, 28 U.S.C. § 517; and it has the right to appeal orders entered in non-intervened *qui tam* litigation, 556 U.S. at 931, n.2.

In addition, the government retains the right to "intervene at a later date upon a showing of good cause," § 3730(c)(3). This right was interpreted broadly in *Polansky*, with the Supreme Court blessing late intervention when the government "decided that the varied burdens of the suit outweighed its potential value." *Polansky*, 143 S. Ct. at 1724 and 1733 (consistent with the "[g]overnment-centered purposes" of the FCA, "Congress enabled the Government, in the protection of its own interests, to reassess *qui tam* actions and change its mind"). Notably, the converse is not true: the relator cannot settle or voluntarily dismiss the action without the government's consent. *United States ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 720 (9th Cir. 1994); *United States ex rel. Milam v. University of Texas M.D. Anderson Cancer Ctr.*, 961 F.2d 46, 48-49 (4th Cir. 1992).

And, of course, the government retains the right to the "lion's share" of any recovery in the action. *Polansky*, 143 S. Ct. at 1728; 31 U.S.C. 3730(d)(2). The relator's judgment is subject to limitation under the Eighth Amendment on the grounds that the judgment "is imposed by, and attributable to, the United States," even in a non-intervened case. *Yates*, 21 F. 4th at 1309. In addition, the relator's share of the recovery

is subject to court approval, and may be reduced based on specific findings by the court. 31 U.S.C. §3730(d)(2)-(3).

**B.     The False Claims Act Does Not Violate the Vesting and Take Care Clauses.**

The Constitution's Vesting and Take Care Clauses together provide that "the executive power shall be vested in a President of the United States" and the President "shall take Care that the Laws be faithfully executed." U.S. Const. Art. II, § 1, cl. 1, 3. Defendants contend that Congress, in enacting the FCA's *qui tam* provisions, has impermissibly diffused executive authority in violation of separation-of-powers principles. However, courts have consistently recognized that the Department of Justice's ultimate authority over *qui tam* actions permits the public-private partnership authorized by the FCA. *Wallace*, 2023 U.S. Dist. LEXIS 207881 at *13-16, *citing United States ex rel. Taxpayers Against Fraud v. GE*, 41 F.3d 1032, 1041 (6th Cir. 1994); *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 752 (9th Cir. 1993); *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 756 (5th Cir. 2001). No courts have found the opposite to be true.[6]

Defendants' arguments are predicated on complete disregard for the reality that in all FCA litigation, it is the executive branch that decides whether the case proceeds,

---

[6] *See also*, *United States ex rel. Phillips v. Pediatric Servs. of Am., Inc.*, 123 F. Supp. 2d 990, 993 (W.D.N.C. 2000) ("authority to intervene and manage the suit clearly gives the government sufficient control"); *United States ex rel. Robinson v. Northrop Corp.*, 824 F. Supp. 830, 837 (N.D. Ill. 1993) ("the Executive Branch has considerably more power over the *qui tam* plaintiffs than it had over the independent counsels"); *United States ex rel. St. John LaCorte v. SmithKline Beacham Clinical Labs., Inc.*, No. 96-1380 C/W 97-942, 1999 U.S. Dist. LEXIS 13036, at *18 (E.D. La. Aug. 19, 1999)(FCA "does not impermissibly interfere with the constitutional functions of the Executive branch").

whether it settles, and whether it is dismissed voluntarily, with only modest procedural limitations. See Section II.A, *supra*. For want of supportive case law, Defendants rely only on dissenting opinions which depart from the actual law of the cases. For example, they cite to the *Riley* dissent for the proposition that the government "cannot 'control the breadth of the [qui tam] matter.'" (Doc. 180 at 10, *citing* 252 F.3d at 763 (Smith, J., dissenting).) The *Riley* majority, by contrast, held that the qui tam relator's powers were "slim indeed." 252 F.3d at 756. The *Riley* court went on to explicitly reject Defendants' position,

> Any intrusion by the qui tam relator in the Executive's Article II power is comparatively modest, especially given the control mechanisms inherent in the FCA to mitigate such an intrusion and the civil context in which qui tam suits are pursued. Hence, the qui tam portions of the FCA do not violate the constitutional separation of powers by impinging upon the Executive's constitutional duty to take care that the laws are faithfully executed under Article II of the constitution.

252 F.3d at 757.

In considering whether the FCA is consistent with the Constitution's requirement for the separation of powers, the inquiry into whether the FCA impermissibly undermines the executive authority should not focus on a complete lack of overlap. *See, e.g., United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F. 2d 1148, 1154 (2d. Cir. 1993). "The Supreme Court has noted that the Framers of the Constitution 'did not require—and indeed rejected—the notion that the three Branches must be entirely separate and distinct.'[ ] Where the functions of two coordinate branches of Government overlap without intrusion, there is no constitutional violation. [ ] Since that is the situation here, we reject [defendants]

10

contention that the [FCA] violates the separation of powers doctrine." *Friedman v. Rite Aid Corp.*, 152 F. Supp. 2d 766, 772 (E.D. Pa. 2001), *quoting Mistretta*, 488 U.S. at 380; *see also*, *United States ex rel. Gublo v. Novacare, Inc.*, 62 F. Supp. 2d 347, 353 (Mass. 1999) (There is "no delegation by Congress of the Executive power, merely a conferral of discretion on Executive Branch officials to decide whether, when, and how to intervene").

Defendants assert that "only once" has the Supreme Court "upheld limited restrictions on the President's ability to remove and supervise those who conduct litigation on behalf of the United States." (Doc. 180 at 8, citing *Morrison v. Olson*, 487 U.S. 654, 696 (1988)). In *Morrison*, the Supreme Court rejected a separation of powers challenge to the office of the independent counsel created by the Ethics in Government Act. The Court concluded that the act gave the executive branch—specifically, the Attorney General—"several means of supervising or controlling the prosecutorial powers that may be wielded by an independent counsel" and therefore the law did not impermissibly undermine executive authority. 487 U.S. at 696. Here, as in other recent cases, Defendants assert "that the four mechanisms that limited the independent counsel's power in [*Morrison*] must be present in the FCA to save it from violating the Constitution." *Wallace*, 2023 U.S. Dist. LEXIS 207881, at *13 (rejecting identical arguments raised by defendants).[7]

---

[7] Defendants' reliance on *Seila L. LLC v. Consumer Financial Protection Bureau* to say that *Morrison* alone represents the outer limits of constitutional bounds is both misplaced and misquoted. (Doc. 180 at 8, citing 140 S. Ct. 2183, 2200 (2020)). *Seila L.* actually said that *Morrison* and *United States v. Perkins*, 116 U.S. 483 (1886), *together* "represent what up to now has been the outermost constitutional limits of

However, time and again, courts faced with constitutional separation of powers challenges to the FCA have evaluated *Morrison* and have found that the FCA "accord[s] the Executive Branch 'sufficient control' over the conduct of relators to 'ensure that the President is able to perform his constitutionally assigned duties.'" *Kelly*, 9 F.3d at 751; *Riley*, 252 F.3d at 765; *Wallace*, 2023 U.S. Dist. LEXIS 207881, at *13. "Subject to such 'substantial control,'" as articulated herein at Section II.A, *supra*, "a relator's power falls well short of the 'quite broad' powers of the independent counsel in *Morrison*." *Wallace*, 2023 U.S. Dist. LEXIS 207881, at *15, *citing Yates*, 21 F.4th at 1311.

Defendants' reliance on Justice Thomas' dissent in *Polansky* does not move the needle on their Article II arguments. While Justice Thomas theorized about "constitutional questions" based on his view that the Government *lacked* the power to dismiss a declined *qui tam* case, his interpretation was, plainly, in the minority. 599 U.S. at 449 (Thomas, J., dissenting). The *actual* holding of the Supreme Court found that the FCA requires "substantial deference" to a government request for dismissal, stating that "a district court should think several times over before denying a [government] motion to dismiss…even if the relator presents a credible assessment to

permissible congressional restrictions on the President's removal power." 140 S. Ct. at 2198-2200 restriction on President's ability to remove the Director of the Consumer Financial Protection Bureau to be an unconstitutional where it would be "impossible for the President … to take care that the laws be faithfully executed"). Removal, however, does not present the same conundrum in FCA cases because the Government retains control and can dismiss the case, even over the relator's objection. *See generally, Polansky,* 143 S. Ct. at 1720; *Kelly*, 9 F. 3d at 755 ("[T]he concept of removal does not make sense in the *qui tam* context, in which there is no 'office' from which to remove the relator and subsequently fill with someone else.").

the contrary." *Id.* at 1734. Whether setting the bar any higher *could* create constitutional concerns by usurping executive power is not something that this court needs to decide: the Supreme Court has held that the bar is low. *See also United States ex rel. CIMZNHCA, LLC v. UCB, Inc.*, 970 F.3d 835, 848 (7th Cir. 2020)("good cause" restrictions on government right to dismissal did not raise Article II concerns).

### C.   The False Claims Act Does Not Violate the Appointments Clause.

As with the Take Care Clause, the entire body of caselaw assessing whether the FCA violates the Appointments Clause squarely holds that it does not. In sum, Relators do not exercise the powers of "officers" under Article II's Appointments Clause, and so they do not need to be appointed pursuant to that clause. U.S. Const. Art. II, § 2, cl. 2. Numerous courts, including the Supreme Court, have recognized that *qui tam* plaintiffs are not "officers." In *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, Justice Thomas wrote for a unanimous court that:

> [A] private relator is not an "official of the United States," in the ordinary sense of that phrase. A relator is **neither appointed as an officer of the United States, nor employed by the United States**. Indeed, the provision that authorizes *qui tam* suits is entitled "Actions by Private Persons." Although that provision explains that the action is brought "for the person and for the United States Government" and "in the name of the Government," it does not make the relator anything other than a private person . . . .

139 S. Ct. 1507, 1514 (2019) (internal citations omitted, emphasis added); *see also Taxpayers Against Fraud,* 41 F. 3d at 1041 (holding FCA does not violate Appointments Clause; "[a]lthough a relator may sue in the government's name, the relator is not vested with governmental power."); *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282

13

F. 3d 787, 805 (10th Cir. 2002) ("*[Q]ui tam* relators do not serve in any office of the United States"); *United States ex rel. Miller v. ManPow, LLC*, 2023 U.S. Dist. LEXIS 179199 at *10 (C.D. Cal. 2:21-cv-05418, Aug. 30, 2023); *Friedman*, 152 F. Supp. 2d at 771; *United States ex rel. Amin v. George Washington Univ.*, 26 F. Supp. 2d 162, 170 (D.D.C. 1998) ("It is clear that the relators enjoy limited powers and benefits and are not 'officers' within the meaning of the Appointments Clause.").

It is well settled that litigation conducted in the name of the United States can be performed by those who are not Article II "officers." Defendants claim that *Buckley v. Valeo*, 424 U.S. 1 (1976), creates a requirement that all litigation be conducted by a duly-appointed officer. Here again, Defendants' arguments mirror those made in and rejected in *Wallace*: "Contrary to Defendant's assertion, *Buckley* … does not govern this case." 2023 U.S. Dist. LEXIS 207881, at *11-12. This is because the facts in *Buckley* are wholly different, and, therefore, inapplicable to an analysis of the FCA. *Buckley* involved the creation of the Federal Election Commission ("FEC") and the grant of "broad administrative powers" to be "exercised free from day-to-day supervision of either Congress or the Executive Branch," including the "primary responsibility for conducting civil litigation in the courts of the United States for vindicating public rights." 424 U.S. at 140. *Buckley* examined the powers granted to "any appointee," not any person; relators are simply not appointees. *Wallace*, 2023 U.S. Dist. LEXIS 207881, at *12. Thus, "Defendant[s] read *Buckley* too broadly." *Id.; see also Stone*, 282 F. 3d at 805 (applying the *Buckley* holding to the FCA "construes *Buckley* too broadly").

14

The Ninth Circuit, in *Kelly*, 9 F. 3d at 758, further dispensed with the flawed application of *Buckley* to a False Claims Act case:

> The *qui tam* provisions do not contravene *Buckley's* rule. The fact that relators sue in the name of the government does not vest them with any governmental powers; they conduct litigation under the FCA with only the resources of private plaintiffs. Furthermore, relators have no greater authority to enforce the FCA than does the Attorney General, and under the terms of the statute must yield do the government's assumption of 'primary responsibility' when it elects to intervene in a qui tam action. 31 U.S.C. 3730(c)(1). When the government does not intervene, a relator retains primary responsibility for the litigation, thus presenting what may seem a close question under *Buckley;* but even in that situation, the relator's responsibility only extends to a single case, and the relator's activities can still be limited by the court upon the request of either the government or the defendant. Thus, the qui tam scheme does not threaten the interest in preventing the exercise of unchecked or unbalanced government power which underlies the Appointments Clause.

Defendants also seek refuge in *Morrison* and related cases to assert that "a person who litigates on the United States' behalf holds a continuing position" (Doc. 180 at 14), although continuity alone would still not implicate the Appointments Clause.[8] But unlike the appointed officers at issue in the cases on which Defendants rely, the limited assignment of interests granted to a relator is temporary (lasting only as long as the case itself) and discrete, conveying authority for the relator's case alone, not to the regular operation of the government.[9] This difference is determinative: "[o]ver a

---

[8] For an individual to be considered a federal officer, the person must *both* hold a "'continuing' office established by law" *and* "'exercis[e] significant authority pursuant to the laws of the United States.'" *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018) (citations omitted). The lack of "significant authority" has been addressed herein at length. *See generally*, *Polansky*, 143 S. Ct. 1720 at 1733 (the government's interest, controlled through the Attorney General remains "the predominant one").

[9] *Contra United States v. Donziger*, 38 F.4th 290, 297 (2022) (finding a special prosecutor to be an officer where he "wields 'the power to employ the full machinery of the state' including "executing search

century ago, the Supreme Court distinguished an officer from a relator, whose 'position is without tenure, duration, continuing emolument, or continuous duties.'" *Friedman*, 152 F. Supp. 2d at 771, *quoting Auffmordt v. Hedden*, 137 U.S. 310, 327 (1890); *see also United States v. Germaine*, 99 U.S. 508, 511-12 (1878) (an officer must have duties that are "permanent, not occasional or temporary").

Although Defendants attempt to distance the role of a relator from the positions evaluated in *Auffmordt* and *Germaine,* courts have repeatedly applied the standards therein to current-day False Claims Act relators. *Id.*; *Riley*, 252 F.3d at 757 (recognizing *Auffmordt* and *Germaine*, and holding "[t]here is no such relationship with regard to qui tam relators"); *Taxpayers Against Fraud*, 41 F.3d at 1041 (quoting *Auffmordt* and finding "the relator is not an 'officer' within the meaning of the Appointments Clause"). Despite the myriad cases which have evaluated the False Claims Act in relation to the Appointments Clause, none has considered the limited, single-case, removable power assigned to a relator and found that such a role shares the hallmarks of an officer required to be appointed by the President. *United States ex rel. Burch v. Piqua Engineering, Inc.*, 803 F. Supp. 115, 119 (S.D. Ohio 1992) ("*[Q]ui tam* plaintiffs are not officers of the United States. *Qui tam* plaintiffs are not appointed by Congress, they do not receive a federal salary, and they serve for no specified term"); *United States ex rel. Fallon v. Accudyne Corp.*, 921 F. Supp. 611, 623 (W.D. Wis.

---

warrants, issuing subpoenas, granting immunity, entering into plea bargains, and representing the government in court both at trial and on appeal"). Relators have no similar authority. *Kelly*, 9 F. 3d at 758; *see also United States ex rel. Chandler v. Hektoen Inst. for Med. Research*, 35 F. Supp. 2d 1078, 1082 (N.D. Ill. 1999) (relators unlike prosecutors).

1995)("clear that the authority of the Executive Branch to appoint officers and execute laws has not been improperly delegated through the *qui tam* provision").

This Court has considered similar Appointments Clause challenge to the FCA, and disposed of the notion summarily. *Butler*, 74 F. Supp. 2d at 1212, *citing United States ex rel. Truong v. Northrop Corp.,* 728 F.Supp. 615, 620 (C.D.Cal. 1989) ("relators 'enjoy limited powers, have no formal duties, hold no established office, have no prescribed tenure, and receive no federal emoluments. As such, they are more appropriately classified as 'agents' for Appointment Clause purposes.' A relator is not attached to Congress or the judiciary as to make the executive branch's 'responsibility to execute the laws faithfully' threatened"); *United States v. Halifax Hosp. Med. Ctr.*, 997 F. Supp. 2d 1272, 1278 (M.D.Fla. 2014) (Appointments Clause challenge is "easily disposed of" because "relators meet none of [the *Germaine*] requirements" and were therefore not "'officers'" within the meaning of Article II). Defendants offer no basis for which the Court should now depart from those well-settled holdings.[10]

### D.   The History of the False Claims Act Confirms Its Constitutionality.

Defendants argue that the long history of *qui tam* suits in America does not point toward the FCA's constitutionality. (Doc. 180 at 18).[11] Here, Defendants are simply

---

[10] Defendants attempt to distance from *Butler* and *Halifax* by noting that they "predated Justice Thomas' dissent in *Polansky*." Justice Thomas' dissent did not change any law, let alone the myriad cases which underpin the *Butler, Halifax* and similar holdings around the country.

[11] Defendants also argue that the Court should not consider the history of the FCA because history should be considered "only when the Constitution's text is ambiguous." (Doc. 180 at 18). But "historical evidence illuminates how the Constitution's drafters intended for it to interact with *qui tam* statutes." *Wallace*, 2023 U.S. Dist. LEXIS 207881, at *16 ("Together with the reasons stated above, this historical evidence confirms the FCA's constitutionality").

wrong in asserting that historical context cannot be applied to the modern False Claims Act; the *Stevens* Court analyzed the historical context of *qui tam* statutes in its consideration of the modern False Claims Act, finding that the history was "well nigh conclusive" to the question of Article III standing. 529 U.S. at 774-78.

Defendants endeavor to carve a wide gap between the original FCA and the modern statute as amended in 1986. (Doc. 180 at 22-24.) But, the differences are inconsequential to this analysis. Empowering relators to address fraud with the tools equal in scope and sophistication to the tools used by fraudsters to bilk the government is what the early *qui tam* statutes did, and exactly what the modern False Claims Act does now. Frauds leading to the first iteration of the False Claims Act were simple, yet devastating to the nation: "For sugar, [the Army] often got sand; for coffee, rye; for leather, something no better than brown paper; for sound horses and mules, spavined beasts and dying donkeys; and for serviceable muskets and pistols, the experimental failures of sanguine inventors, or the refuse of shops and foreign armories." F. Shannon, *The Organization and Administration of the Union Army 1861-1865*, at 54-56 (Peter Smith Press 1965). In response, the combatting legislation was equally simple, yet devastating to the fraudsters: Sen. Jacob Howard of Michigan, one of the sponsors of the original legislation, acknowledged that providing a reward to whistleblowers "is the safest and most expeditious way I have ever discovered of bringing rogues to justice."

But, in the years when the False Claims Act was essentially gutted and fell into disuse, simple schemes of the Civil War era transformed into complex operations, and

18

fraud permeated every corner of government contracting because "the sad truth [was] that crime against the Government often [did] pay." S. Rep. 99-345, 1986 U.S.S.C.A.N. 5266, 5268. It was "in the face of [this] sophisticated and widespread fraud" that Congress sought "a coordinated effort of both the Government and citizenry [to] decrease this wave of defrauding public funds." *Id.* at 5267. As it had done more than 120 years earlier, Congress again sought to "allow and encourage assistance from the private citizenry [to] make a significant impact on bolstering the Government's fraud enforcement efforts." *Id.* at 5273. Importantly, the 1986 Congress recognized that the modernized statute followed in the same steps as its predecessor: "The idea of private citizen aid in false claims actions is, of course, not a new one, but dates back to the original enactment of the False Claims Act in 1863." *Id.*

It is in that lens that Defendants' revisionist argument fails. The 1986 Amendments were specifically contemplated to bolster the Government's ability to recover defrauded funds in *qui tam* suits in the manner of the original enactment. *Id.* Far from creating anew any categories of claims, the drafters recognized that the most common types of false claims were not just factually false claims but false claims provided "in violation of contract terms, specification, statute, or *regulation*." *Id.* at 5274 (emphasis supplied).

Thus, despite Defendants' red herrings, it matters not whether the drafters of the Constitution could have envisioned the complex regulatory structure necessary to implement a roughly $4 trillion annual budget, the limitless ways in which government contractors would manipulate that structure to bilk the federal fisc, or even the

complex litigation required to protect the former from the latter. The question is simply whether there is a role for the long history of the False Claims Act in evaluating the Article II Take Care Clause and Appointments Clause questions presented here. And there is: "it is logically inescapable that the same history that was conclusive on the Article III question in *Stevens* with respect to qui tam lawsuits initiated under the FCA is similarly conclusive with respect to the Article II question concerning this statute." *Riley*, 252 F.3d at 752. "[H]istory, although not the sole definitive argument supporting the view that the FCA's qui tam provisions do not violate Article II, is certainly a 'touchstone illuminating' their constitutionality." *Id.* at 753 (internal quotations omitted).

## III.   RELATOR HAS ARTICLE III STANDING.

Defendants admit that their assertion that Relator lacks standing prevails only "if the Court agrees that the *qui* tam provisions are unconstitutional." (Doc. 180 at 25.) For the reasons set forth above, which wholly refute Defendants' assertion that the FCA violates the Take Care Clause or the Appointments Clause of the Constitution, Defendants' challenge to standing fails as well.

**<u>CONCLUSION</u>**

For the foregoing reasons, Relator asks this Court to enter an order denying Defendants' Motion to Dismiss and Motion for Judgment on the Pleadings.

Respectfully submitted this 29th day of March, 2024,

*/s/ Jillian L. Estes*
Jillian L. Estes (Fla Bar No. 0055774)

Frederick Morgan, Jr.*
Jonathan M. Lischak*
Morgan Verkamp LLC
4410 Carver Woods Dr., Suite 200
Cincinnati, Ohio 45242
Telephone: (513) 651-4400
Fax: (513) 651-4405
Email:
jillian.estes@morganverkamp.com
rmorgan@morganverkamp.com
jonathan.lischak@morganverkamp.com

Kenneth J. Nolan (Fla. Bar No. 603406)
Marcella Auerbach (Fla. Bar No. 249335)
NOLAN, AUERBACH & WHITE, LLP
435 N. Andrews Ave., Suite 401
Fort Lauderdale, FL 33301
Phone: (954) 779-3943
Fax: (954) 779-3937
ken@whistleblowerfirm.com
marcellla@whistleblowerfirm.com

Adam T. Rabin (Fla. Bar No. 985635)
Havan M. Clark (Fla. Bar No. 1026390)
RABIN KAMMERER JOHNSON
1601 Forum Place, Suite 201
West Palm Beach, FL 33401
Phone: (561) 659-7878
Fax: (561) 242-4848
arabin@rkjlawgroup.com
hclark@rkjlawgroup.com
e-filing@rkjlawgroup.com

*Counsel for Relator Dr. Clarissa Zafirov*

*\* admitted pro hac vice*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 29, 2024, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will provide electronic service to all counsel of record.

By: */s/ Jillian L. Estes*
Jillian L. Estes (Lead Counsel)

*Counsel for Relator Dr. Clarissa Zafirov*

22