# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* DR. CLARISSA ZAFIROV,<br><br>Plaintiff/Relator,<br><br>v.<br><br>PHYSICIAN PARTNERS, LLC; FLORIDA MEDICAL ASSOCIATES, LLC, d/b/a VIPCARE; ANION TECHNOLOGIES, LLC; FREEDOM HEALTH, INC.; and OPTIMUM HEALTHCARE, INC.,<br><br>Defendants. | Case No. 8:19-cv-01236-KKM-SPF |

## FREEDOM DEFENDANTS' OPPOSITION TO RELATOR'S TIME-SENSITIVE MOTION TO STAY DISCOVERY PENDING RESOLUTION OF DISPOSITIVE MOTION

Defendants Freedom Health, Inc., and Optimum Healthcare, Inc. (collectively, "Freedom Defendants") hereby oppose Relator's Time-Sensitive Motion to Stay Discovery Pending Resolution of Dispositive Motion ("Motion," or "Mot.," ECF 242).

Freedom Defendants appreciate the Court's desire to ensure that the parties avoid "unnecessary discovery expenses," ECF 243, but disagree with Relator that a stay would be the best means of achieving that worthy goal. While Freedom Defendants maintain that the Court should grant their motion to dismiss this action, Freedom Defendants wish to highlight certain benefits of bringing the fact discovery period to its timely conclusion. Relator's requested stay comes when the parties are on the verge of completing fact discovery that has spanned years and after Freedom Defendants have expended enormous resources to comply with the operative discovery schedule. Entry of a stay would negate substantial fact discovery work that Freedom Defendants have already completed and unduly prejudice Freedom Defendants' ability to litigate this case.

Freedom Defendants recognize that the Court has insight into the dispositive motion's likely outcome that the parties lack, which will bear heavily on the propriety of a stay. But Freedom Defendants maintain that the costs and burdens of staying discovery ought to be considered alongside the Court's analysis of the short-term cost savings of a stay. Freedom Defendants thus request that the Court deny Relator's Motion, but consider a more limited stay of case deadlines *other than* the upcoming fact discovery deadline.

## I. FACTUAL AND PROCEDURAL HISTORY

Relator filed this *qui tam* case in May 2019, nearly five years ago. ECF 1. After "assembl[ing] an investigative team to examine the merits of the relator's allegations," *see* ECF 5, at 3, including by opening parallel civil and criminal investigations into the allegations, ECF 10, at 3, the United States closed its investigations, and declined to intervene. *See* ECF 14, 40. After the United States declined to intervene, this litigation continued with Relator at the helm. Defendants filed successful motions to dismiss, *see* ECF 81, Relator filed her Amended Complaint, ECF 86, and discovery proceeded following this Court's denial of Defendants' renewed motions to dismiss, *see* ECF 124.

That discovery has been wide-ranging,[1] *see, e.g.*, ECF 143-1, 145 (discussing breadth of Relator's discovery requests), and has already generated two motions to compel from Relator seeking even *broader* discovery, *see* ECF 143, 178. Completing this broad discovery has already necessitated one revision to the operative Case Management and Scheduling Order, *see* ECF 170 (Relator's Unopposed Motion for Modification of Case Management Order), and just before Relator filed this Motion, the parties had been negotiating (at Relator's request) another possible modification, *see* Mot. at 5 n.2.

After Freedom Defendants worked for many months to satisfy Relator's broad discovery requests, the parties are now on the cusp of completing fact discovery, which is currently scheduled to close on May 29, 2024. For instance, Freedom Defendants

---

[1] For instance, Relator has sought discovery on *millions* of diagnosis code submissions, including medical and payment records associated with those codes. *See* ECF 145, at 13-14; ECF 143-1.

substantially completed document productions responsive to Relator's requests for production on March 15, 2024, and have already responded to all pending written discovery requests. Freedom Defendants have also worked diligently to produce and prepare the fact witnesses that Relator has requested to depose. This process has also involved educating Freedom Defendants' corporate representatives for depositions to be taken pursuant to Federal Rule of Civil Procedure 30(b)(6).

While Freedom Defendants have been hard at work for months complying with Relator's discovery requests in anticipation of the close of fact discovery on May 29, 2024, Relator's Motion comes just as many of *her* obligations are coming due. For instance, Relator's responses to two sets of discovery requests are due April 29, 2024, the very day by which Relator asks the Court to rule on this Motion. Following a lengthy meet-and-confer process, Relator has also promised to provide certain discovery responses to which she initially objected, and amend other responses before the close of fact discovery.

## II.  ARGUMENT

Relator's requested stay would impede the interest of judicial economy and prejudice Freedom Defendants' ability to litigate this case. While a stay pending the resolution of a dispositive motion may be proper when (as here) the dispositive motion "appears to be clearly meritorious and truly case dispositive," in deciding a motion to stay, a court must still "balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery," including by "weighing the likely costs and burdens of proceeding with

discovery." *McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006) (quoting *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997)); *see also* Mot. 3-4 (outlining relevant legal standard).

While a stay here—on the eve of the completion of fact discovery—would spare some costs in the short term, those limited potential savings could be overwhelmed if the parties were required to resume fact discovery at a later date. Freedom Defendants have diligently worked to set the stage for the final act in fact discovery—the negotiation of the parties' remaining disputes on fact discovery, and the taking of the necessary fact depositions. Those depositions have been scheduled, calendars have been cleared, and final preparations are now well underway. Freedom Defendants wish to proceed with that final act, but have no objection to staying expert discovery and the other facets of this litigation that are not yet fully underway.

### A.   Likelihood of Success of Dispositive Motion

Freedom Defendants are confident in the argument that the False Claims Act's *qui tam* provisions are unconstitutional, which should dispose of this litigation. But even if the Court agrees, Freedom Defendants recognize that any grant of the dispositive motion would almost certainly be appealed, and would likely be appealed from there to the full Eleventh Circuit and to the Supreme Court regardless of who wins before an Eleventh Circuit panel. The outcome of this protracted appeal process is, as always, uncertain enough that there is at least ***some chance*** the case comes back to the trial court; what *is* certain is that these proceedings would take time. And if this Court were to deny the dispositive motion, or if appellate proceedings resulted in

remand to this Court, this case would pick up where it left off—potentially months or *years* later—but the allegations would still not extend beyond 2020.

The inquiry now before the Court thus depends on whether *all* of these proceedings will likely resolve this case without further fact development, and the question is whether it would be preferable to (a) leave this case with a fully developed factual record in case the proceedings continue, or (b) stay fact discovery at the eleventh hour, and after significant costs have already been incurred. As precedents in this Circuit and District have affirmed, even courts faced with plainly meritorious and case-dispositive motions must weigh the benefits and burdens of a stay, *McCabe*, 233 F.R.D. at 685. Here, as detailed below, those benefits and burdens point in only one direction.

### B. The Harms and Burdens of the Requested Stay Outweigh the Potential Benefits.

A stay under these circumstances could cause, rather than avoid, the "unnecessary costs to the litigants and to the court system" that Relator claims to fear. *See* Mot. 4 (quoting *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367-68 (11th Cir. 1997)). A stay would also prejudice Freedom Defendants, given the asymmetric nature of the discovery completed to date, and the substantial risk that fading memories and corporate turnover could impact Freedom Defendants' ability to defend this case. *See Nat'l Med. Imaging, LLC v. United States Bank, N.A.*, 2022 U.S. Dist. LEXIS 203924, at *4 (E.D. Pa. Nov. 9, 2022) (recognizing that "[h]uman recollection is not infinite" and declining to delay resolution of fact questions that stretched back

"a decade"); *see also Whitaker v. Miami-Dade Cty.*, 2014 U.S. Dist. LEXIS 189246, at *9 (S.D. Fla. Apr. 23, 2014) (recognizing that memories could begin to fade after just "fifteen months"); *Feldman*, 176 F.R.D. at 652 (acknowledging "case management problems" arising from indefinite delays, "which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems").

*Costs.* Relator's requested stay would negate the substantial efforts that Freedom Defendants have already undertaken to complete fact discovery before the cut-off date, thereby causing Freedom Defendants to incur duplicative costs to re-do fact discovery work they have already completed. And given that the parties' supplemental briefing on the dispositive motion is due on May 21, fact witness depositions will be substantially complete before the Court is likely to issue its ruling on the motion.

Freedom Defendants dispute that the "time and expenses already incurred in discovery and deposition preparation will be equally as valuable several weeks or months from now as they are today." Mot. 7. If Relator's stay is granted, all currently scheduled depositions would be removed from the calendar, regardless of the expenditures already incurred in anticipation of those depositions. While forgoing these depositions would preserve resources indefinitely if the case is dismissed and affirmed through the appeals process, forgoing the depositions now would serve only to delay and ultimately *increase* these expenditures if the Court decides not to dismiss the case (or in the event of a remand from any appeal of a dismissal order). If discovery proceeds as scheduled, Freedom Defendants would not need to impose again on witnesses' calendars, counsel would not need to re-make arrangements necessary to

-6-

conduct the depositions, and corporate representatives would not need to be educated anew on information within the knowledge of the corporation. *See id.*

*Prejudice*. An indefinite stay in this litigation could cause significant delays, *see supra*, Section II.A, which could impact witness recollections and Freedom Defendants' ability to obtain documents and testimony necessary to defend against Relator's allegations. *See Nat'l Med. Imaging*, 2022 U.S. Dist. LEXIS 203924, at *4; *see also Whitaker*, 2014 U.S. Dist. LEXIS 189246, at *9; *Feldman*, 176 F.R.D. at 652 (recognizing ways in which stays can *cause* "unnecessary litigation expenses and problems" rather than avoid them). For instance, Relator has sought discovery into allegations concerning the propriety of certain medical diagnoses as far back as 2015, and the sufficiency of documentation in patient medical records concerning the same. As Relator's Motion makes plain, Relator has yet to even *identify* the claims that would be at issue in a "subsequent medical chart review" supposedly involving the "production and analysis of medical records for [an] identified sample" of claims. Mot. 5 n.3.[2] Collecting the evidence necessary to rebut Relator's assertions will only become more difficult as time passes. At some point, it may well become impossible.

---

[2] To be clear, Freedom Defendants fundamentally reject Relator's apparent assertion that this process could take place *after* the close of the fact discovery period. By acknowledging in the same breath that this process would "involve production and analysis of medical records from [a] sample" that has not yet been identified, Mot. 5 n.3, Relator all but concedes that this is a *fact* discovery issue rather than an *expert* discovery issue. Before the parties' experts can analyze the relevant records, they must be identified, collected, produced, and subjected to the other fact-gathering processes available to the parties only while the fact discovery period remains open.

Lastly, this prejudice is heightened by the asymmetric nature of the discovery completed to date.[3] During the pendency of any stay, Relator will have substantially received the benefit of the fact discovery she has requested of Freedom Defendants, while Freedom Defendants will lack the means to progress on *their* further assessments of Relator's claims, because some critical discovery sought of Relator is still pending. A stay would indefinitely cement this present asymmetry for the foreseeable future. Permitting fact discovery to run its course, would address this concern and bring the parties back into fair alignment.

### III. CONCLUSION

While Freedom Defendants maintain that the Court should grant their motion to dismiss this action, fact discovery should proceed such that it can be completed in the coming weeks. Fact discovery has taken years already. In Freedom Defendants' view, the short-term benefits of a stay are outweighed by the potential long-term benefits of finishing that intensive process under the current schedule, and the potential prejudice that a lengthy stay could inflict.

---

[3] To some extent, this asymmetry is typical in False Claims Act cases, where a relator must often prove her claims largely by reference to evidence in the control of large, corporate defendants, and where early discovery from defendants generally sets the parameters of the parties' overall discovery. Freedom Defendants here have largely already completed their discovery obligations. But while Freedom Defendants have already incurred many of the costs necessary to complete discovery, Relator's remaining discovery obligations are somewhat more substantial. For instance, Relator still owes certain discovery responses—both on discovery requests served within the past month, and on requests served more than a year ago, to which Relator only recently promised to provide substantive responses.

Respectfully submitted, this 29th day of April, 2024,

*/s/ Scott Drake*
Scott Drake (Lead Counsel)*
O'MELVENY & MYERS LLP
2801 North Harwood Street
Suite 1600
Dallas, TX 75201
(972) 360-1900
(972) 360-1901 (fax)
sdrake@omm.com

Benjamin D. Singer*
Amanda M. Santella*
William Buffaloe*
Kelly McDonnell*
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
(202) 383-5414 (fax)
bsinger@omm.com
asantella@omm.com
wbuffaloe@omm.com
kmcdonnell@omm.com

Elizabeth M. Bock*
Elizabeth A. Arias*
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
(213) 430-6000
(213) 430-6407 (fax)
ebock@omm.com
earias@omm.com

Catherine Nagle*
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
(212) 326-2000
(212) 326-2061 (fax)
cnagle@omm.com

Ginger Boyd
Fla. Bar No. 294550
NELSON MULLINS RILEY &
SCARBOROUGH LLP
215 South Monroe Street, Suite 400
Tallahassee, FL 32301
(850) 205-3356
(850) 521-1472 (fax)
ginger.boyd@nelsonmullins.com

*Counsel for Defendants Freedom Health, Inc. and Optimum Healthcare, Inc.*

*\* admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2024, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will provide electronic service to all counsel of record.

By: /s/ Scott Drake

Scott Drake*

*Counsel for Freedom Defendants*
* admitted pro hac vice