# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA
ex rel. DR. CLARISSA ZAFIROV,

                Plaintiff/Relator,

v.

PHYSICIAN PARTNERS, LLC;
FLORIDA MEDICAL ASSOCIATES,
LLC, d/b/a VIPCARE; ANION
TECHNOLOGIES, LLC; FREEDOM
HEALTH, INC.; and OPTIMUM
HEALTHCARE, INC.,

                Defendants.

Case No. 8:19-cv-01236-KMM-SPF

# FREEDOM HEALTH, INC. AND OPTIMUM HEALTHCARE, INC.'S MOTION TO COMPEL NONPARTY—THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, OFFICE OF INSPECTOR GENERAL—TO COMPLY WITH SUBPOENA

Pursuant to Federal Rule of Civil Procedure 45, Defendants Freedom Health, Inc. and Optimum Healthcare, Inc. ("Freedom Defendants") move this Court to compel the United States Department of Health and Human Services, Office of Inspector General ("HHS-OIG") to comply with Freedom Defendants' subpoena for testimony issued in connection with this action.  As set forth below, Freedom Defendants require testimony from HHS-OIG to defend themselves in this action.

For months, Freedom Defendants have sought critical evidence from HHS-OIG and been rebuffed at every turn.  HHS-OIG initially refused to permit a deposition of the case agent based on two factual assertions, neither of which turned out to be true.  First, HHS-OIG claimed that deposition testimony would be duplicative of documents that HHS-OIG agreed to produce, but now claim that no non-privileged responsive documents exist—in part because it failed to preserve the agent's communications.  Second, HHS-OIG pointed to the agent's "lack of recollection" of the events, and the resulting burden of preparing her for a deposition. But HHS-OIG now concedes that this language came from a "form letter," that the agent does, in fact, remember some of the "many conversations" in question, and that it cannot foreclose the possibility that the agent's recollection could be further refreshed.  HHS-OIG's rationales have shifted, but their bottom line has not—they have refused to permit the deposition, which seeks highly relevant information for which there is no adequate substitute.  Despite extensive negotiations, the parties have reached an impasse.  With the fact discovery deadline fast approaching, the Court should compel HHS-OIG's compliance.

# I.   BACKGROUND

## A. The Underlying Action

Relator Dr. Clarissa Zafirov ("Relator") filed this *qui tam* action under seal on May 20, 2019.  *See* ECF 1.  Relator alleges that Freedom Defendants worked "in tandem" with other co-defendants[1] to submit "false claims" to the government in connection with the Medicare Advantage ("MA") program.  ECF 86 (the Amended Complaint, or "AC"), ¶ 1. Freedom Defendants have previously had occasion to summarize Relator's allegations, *see, e.g.*, ECF 97; ECF 184, and do not repeat that discussion here.

After Relator filed her complaint on May 20, 2019, the government "assembled an investigative team to examine the merits of the relator's allegations," *see* ECF 5, at 3, scheduled an interview with Relator in August 2019, *id.*, and eventually opened parallel civil and criminal investigations into the allegations, ECF 10, at 3.  Those investigations included the use of "covert information gathering techniques" involving Relator, resulting in the production of "numerous videos and recordings, some of considerable length."   ECF 10, at 3-4;  *see also infra*, Section I.B (describing investigation).  On February 21, 2020, after months of investigation, the United States filed a notice with the Court that it was not intervening at that time, but continuing its investigation.  ECF 14, at 1.  On June 25, 2020, Relator's complaint was unsealed and the defendants were notified of the pending *qui tam* action.  ECF 21.   Then, on

---

[1] Namely, Physician Partners, LLC, Anion Technologies, LLC, and (3) Florida Medical Associates, LLC (d/b/a VIPcare), referenced herein collectively as the "Provider Defendants."

September 21, 2020—more than one year after the beginning of the government's investigations—the United States notified the Court that it had decided not to intervene. ECF 40, at 1. In this Notice, the United States did not note that either of the two parallel investigations was "continuing" in nature, *see generally id.*, and Freedom Defendants understand that the United States' active investigations were complete as of June 29, 2020.

Relator continued to press the action after the United States' non-intervention and the parties eventually entered discovery. To prevail on her False Claims Act ("FCA") claims at trial, Relator would have to show that the defendants (1) submitted false claims for payment, made false statements, or unlawfully retained overpayments (2) with either actual knowledge, deliberate ignorance, or recklessness, and that (3) the defendants' actions were "material" and (4) caused the government to make a payment. *See United States v. AseraCare, Inc.*, 938 F.3d 1278, 1284 (11th Cir. 2019). With respect to several of these elements, such as whether specific diagnosis codes were "false," or whether the defendants acted "knowingly," Relator's credibility will be directly at issue. The government's contemporaneous knowledge of relevant facts would also bear on several elements on which Relator bears the burden of proof, including materiality and causation. The defendants sought discovery on these and other issues in the case, both of Relator and of relevant third parties, including HHS-OIG, *see infra*, Section I.C (describing discovery efforts relevant to this Motion).

The fact discovery period is currently scheduled to end on May 29, 2024. ECF 172. While there is also a pending dispositive motion jointly filed by Defendants

3

seeking dismissal or judgment on the pleadings, *see* ECF 180, fact discovery is proceeding and expected to finish before the Court decides the dispositive motion. *See* ECF 245 (denying motion to stay all discovery pending outcome of dispositive motion); ECF 252 (moving for a stay of expert discovery and a "limited" fact discovery extension to permit the taking of certain agreed-to depositions).

### B. Relator's Communications with HHS-OIG and Agent Garrido

This Motion principally concerns communications between Relator and an HHS-OIG agent, Special Agent Raquel Garrido ("Agent Garrido"). Relator and the government have each produced various audio and video recordings that Relator created during the course of the government's investigations, and Agent Garrido features prominently in these recordings. *See* Decl. of Benjamin D. Singer ISO Mot. To Compel ("Singer Decl"), Ex. D, at 2-4. These recordings, and Relator's other conversations with Agent Garrido, are central to Defendants' defense in this FCA action. For instance, twenty-two paragraphs in Relator's Amended Complaint relate to conversations captured on the recordings, Singer Decl., Ex. D, at 2, and Relator has relied on these captured conversations to support her allegations that Provider Defendants caused the submission of false claims, *see* ECF 106, at 10, 15-16.

While certain conversations between Relator and Agent Garrido were captured in the recordings, the recordings make plain that other conversations, including the conversations that led to the recordings in the first place (like Agent Garrido's interview with Relator), *were not* captured. For instance, the very first recording, from August 14, 2019, contains an exchange where Relator and Agent Garrido promise to

text each other.  Singer Decl., Ex. C, at 3.  Agent Garrido and Relator also referenced their text conversations in recordings on August 15, 2019, August 30, 2019, September 11, 2019, September 12, 2019, September 18, 2019, and October 2, 2019.  *Id.*, Ex. D, at 3.  Other recordings show that Relator and Agent Garrido had oral conversations off the record, too.  *Id.* (transcript of recording suggesting that Agent Garrido and Relator turned off recording device to keep a substantive conversation off the record).  Without information concerning these unrecorded interactions, Defendants may be unable to properly contextualize recorded conversations central to Relator's allegations, and her credibility.  Discovery could reveal, for instance, important information about what sorts of conversations were recorded (and which were not), or reveal Relator's initial impressions of the conversations she recorded.

Looking beyond the issue of uncaptured conversations, Relator also *misrepresented* certain recorded interactions in her Amended Complaint.  *See id.*, Ex. C, at 3-4.  Agent Garrido's testimony will be critical to understanding and confirming these mischaracterizations, too, since Relator has a clear bias in bolstering her *qui tam* case, which she claims is worth hundreds of millions of dollars.  Relator's testimony, in sum, is no adequate substitute for Agent Garrido's.

### C. Freedom Defendants' *Touhy* Requests

Given the centrality of this evidence to the case, Defendants jointly sought discovery from both HHS-OIG and the Department of Justice ("DOJ") through each agency's applicable *Touhy* regulations.  On February 10, 2023, Defendants filed a *Touhy* request with HHS-OIG seeking, *inter alia*, documents including recordings,

communications with Relator, notes reflecting those communications, and documents provided by Relator to HHS-OIG.  *See* Singer Decl., Ex. A.[2]  In that *Touhy* request, Defendants explained the relevance of the materials sought, and demonstrated why production of the materials promoted the objectives of the Department, in accordance with HHS's *Touhy* regulations (45 C.F.R. § 2.1 *et seq.*).  Singer Decl., Ex. A., at 2-4.[3] HHS-OIG did not substantively respond to five of these requests, agreeing only to produce non-duplicative recordings.  Singer Decl. ¶ 6, Ex. B.  Defendants continued to meet and confer with HHS-OIG (and DOJ) to attempt to obtain documents responsive to the other document requests issued to HHS-OIG (*i.e.*, those related to Relator's unrecorded communications with Agent Garrido).

On January 18, 2024, Defendants issued a subpoena to HHS-OIG for testimony from Agent Garrido.  Singer Decl., Ex. C.[4]  In general, the subpoena sought testimony regarding Agent Garrido's "communications with Relator regarding Relator's allegations against Defendants and the audio and video recordings made by Relator, including with respect to Agent Garrido's communications with Relator on how to make the recordings or what should be recorded and Relator's statements about what was captured on the recordings."  *Id.* at 2.  Defendants also explained that obtaining

---

[2] This Motion focuses on Freedom Defendants' request for Agent Garrido's deposition testimony. Freedom Defendants do not currently seek to compel HHS-OIG's compliance with the document requests, based on HHS-OIG's current representations about the sufficiency of their search, which HHS-OIG represents has failed to uncover any responsive non-privileged documents.

[3] Freedom Defendants separately sought documents from HHS-OIG concerning Freedom Defendants' compliance with a Corporate Integrity Agreement, *see* Singer Decl. ¶ 18 n.1.  On April 26, 2024, HHS-OIG produced 22 documents in response to that request; that request is not a subject of this Motion either.  *Id.*

[4] This is the subpoena Freedom Defendants seek to enforce through this Motion to Compel.

Agent Garrido's testimony was "the only way Defendants can obtain an unbiased account of Relator's initial descriptions of her allegations against Defendants and the conversations she recorded," since Relator would have a "vested interest" in depicting her interactions with the defendants as consistent with the allegations in her Amended Complaint. *Id.* at 3. Defendants noted their "concerns about Relator's credibility based on a comparison of the recordings Relator made … and her allegations regarding those same conversations in the First Amended Complaint." *Id.* at 4.

The parties continued to meet and confer concerning Defendants' subpoenas for documents and testimony. Through this process, on March 7, 2024, Freedom Defendants agreed to narrow their requests for documents and testimony to the following four topics, focusing more directly on the factual content of relevant communications as a means of avoiding any potential privilege issues:

1.  Garrido's communications with Relator that include (a) factual information – including any alleged facts – that Relator conveyed to SA Garrido, and (b) any instructions SA Garrido gave to Relator about her conduct and obligations with respect to the government's investigation, including her obligation to tell the truth, to be complete and accurate, whether to withhold any information, and how and when to make recordings.

2.  Garrido's communications with Relator's counsel to the extent these communications reflect or memorialize (a) factual information from Relator or (b) instructions SA Garrido gave to Relator about her conduct and obligations with respect to the government's investigation, including her obligation to tell the truth, to be complete and accurate, whether to withhold any information, and how and when to make recordings.

3.  Garrido's communications to the Office of Counsel for Inspector General for the U.S. Department of Health and Human Services, or federal agents from the U.S. Department of Health and

Human Services, Office of Inspector General or Federal Bureau of Investigation, United States Attorneys' Office for the Middle District of Florida, United States Department of Justice, Civil Division, Fraud Section, to the extent these communications (a) reflect or memorialize factual information from Relator or (b) instructions SA Garrido gave to Relator about her conduct and obligations with respect to the government's investigation, including her obligation to tell the truth, to be complete and accurate, whether to withhold any information, and how and when to make recordings.

4. Garrido's reports or notes to the extent they reflect or memorialize (a) factual information from Relator or (b) instructions SA Garrido gave to Relator about her conduct and obligations with respect to the government's investigation, including her obligation to tell the truth, to be complete and accurate, whether to withhold any information, and how and when to make recordings.

*See* Singer Decl., Ex. E (March 7, 2024 email).

On April 1, 2024, HHS-OIG finally responded to the subpoena for Agent Garrido's testimony. *Id.*, Ex. F. HHS-OIG concluded that compliance with the requests would not be "in the best interest of the Department." *Id.* HHS-OIG did not argue that Agent Garrido's deposition testimony would not be relevant, and did not assert any privilege held by HHS-OIG. *Id.* But HHS-OIG nonetheless declined to permit the deposition. Citing Agent Garrido's "lack of recollection of these old events," HHS-OIG claimed it would represent a "significant burden on OIG [based on] the time and effort necessary to prepare for a deposition." *Id.* HHS-OIG further "disagree[d]" that "the requested testimony is unavailable by any other means." *Id.* But in denying the request for deposition testimony, HHS-OIG explained that it had "spent considerable time to search for and produce documents responsive to your revised *Touhy* request received on March 7, 2024," and promised to "produce

responsive nonprivileged documents in its possession" in the near future.  *Id.*  HHS-
OIG used this representation to bolster its decision to withhold Agent Garrido's
deposition testimony, arguing that because the "contents of any responsive documents
are admissible in the underlying litigation," production of the responsive documents
would "undermin[e] the usefulness of the deposition testimony."  *Id.*  Counsel for
HHS-OIG later confirmed that the documents would be produced on April 22, 2024.
*Id.*, Ex. E.  Freedom Defendants refrained from seeking to enforce the subpoena for
Agent Garrido's testimony, based on HHS-OIG's representations regarding the
forthcoming production and its representation that she could not recall anything
relevant.  Singer Decl. ¶ 16.

On April 22, 2024, counsel for HHS-OIG requested a one-day extension of time
in order to finalize their production.  Singer Decl. ¶ 17.  Freedom Defendants
consented.  Singer Decl., Ex. E.  The next day, on April 23, 2024, HHS-OIG
responded to Defendants' subpoena for documents, but did *not* produce any
documents.  *Id.*, Ex. G.  Without asserting any privilege, HHS-OIG responded to each
of the four outstanding document requests by simply stating either that "[n]o
documents were found," or that "[n]o non-privileged documents were found."  *Id.*

HHS-OIG also explained that a key repository of likely responsive documents
could *not* be searched, since Agent Garrido had failed to preserve her text messages:

> With regard to SA Garrido's text messages during the time of her
> investigation, OIG no longer has those text messages. SA Garrido
> received a new phone in or around June 2020. Further, consistent with
> HHG-OIG policy, SA Garrido asserts that she did not discuss substantive
> case matters via text with Relator.

*Id.* HHS-OIG did not explain why these communications were not preserved or whether any attempts had been made to recover these missing communications. *Id.*

On May 10, 2024 the parties met-and-conferred regarding HHS-OIG's objections. Singer Decl. ¶¶ 21-25. Counsel for HHS-OIG conceded that their prior assertion that Agent Garrido "lack[ed] … recollection" of the events in question was "form language" the agency used, and representatives from the government declined to say whether they had even spoken to Agent Garrido before HHS-OIG sent the letter denying the request. *Id.* ¶ 23. HHS-OIG's counsel further stated that the "other sources" that could supposedly substitute for Agent Garrido's testimony were, in fact, limited solely to Relator, but did not explain how Relator herself was an adequate substitute for testimony about her own credibility, especially given videotaped evidence that she was not credible. *Id.* ¶ 24. Counsel for HHS-OIG also refused to commit that HHS-OIG would object if a request was made for Agent Garrido to testify at trial as a witness for Relator, even if she were never deposed. *Id.* ¶ 25.

In a subsequent meet-and-confer, counsel for HHS-OIG also notified Defendants that Agent Garrido could not sign a declaration attesting to her inability to recall specific conversations with Relator and attesting that her memory could not be refreshed by materials generated during the relevant time period. [5] Singer Decl. ¶ 30. HHS-OIG instead offered a declaration in which Agent Garrido acknowledged

---

[5] Freedom Defendants and HHS-OIG had explored whether a declaration in lieu of testimony could provide the necessary discovery while reducing the burden on the agency, but to date HHS-OIG has not provided a declaration that would be an adequate substitute for a deposition. Singer Decl. ¶ 30.

having many conversations with Relator, but purported not to recall anything Relator said to her regarding the substance of the recordings.  Singer Decl. ¶ 30.

Freedom Defendants now respectfully move the Court to compel Agent Garrido's deposition.[6]

## II.    LEGAL STANDARD

Under the federal housekeeping statute, 5 U.S.C. § 301, a federal agency may adopt procedures—known as *Touhy* regulations—for responding to requests for testimony or documents.  HHS-OIG is subject to the *Touhy* regulations promulgated by the Department of Health & Human Services ("HHS").  *See* 45 C.F.R. §§ 2.1–2.6. When reviewing a *Touhy* request, HHS-OIG looks to whether "compliance with the request would promote the objectives of the Department[,]" 45 C.F.R. § 2.3, although HHS's amorphous regulations provide no criteria or factors for the agency to consider when evaluating whether a request would promote these objectives.  *See In re 3M Combat Arms Earplug Prods. Liab. Litig. ("In re 3M I"),* 2020 WL 6438614, at *4 (N.D. Fla. Nov. 2, 2020) (describing HHS' *Touhy* regulations as "exceedingly broad compared to the Touhy regulations of other federal agencies").

In the Eleventh Circuit, an agency's denial of a *Touhy* request is considered an

---

[6] Freedom Defendants' subpoena for documents demands compliance in Washington, D.C., such that any dispute over that subpoena will be litigated there.  *See, e.g., In re Boeing Co. Aircraft Sec. Litig.*, 344 F.R.D. 281, 282 (D.D.C. 2023)  Given HHS-OIG's representations to date, *see infra* n.2, Freedom Defendants have not sought to compel production.

"agency action" subject to review under the APA.[7]  5 U.S.C. § 706(2)(A); *see Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991).  Courts reviewing an agency's denial of a *Touhy* request under this APA standard will overturn the agency action where the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not contrary to law." *Moore*, 927 F.2d at 1197 (citing 5 U.S.C. § 706(2)(A)).  Agency actions are "arbitrary and capricious" when they fail to consider relevant factors or make clear errors of judgment.  *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996) (internal quotation omitted).  The "focal point" of this APA review is "the administrative record already in existence, not some new record made initially in the reviewing court."  *Camp v. Pitts*, 411 U.S. 138 (1973); *see also Rhoads v. United States Dep't of Veterans Affs.*, 242 F. Supp. 3d 985, 995 (E.D. Cal. 2017) ("The after-the-fact averments in Defendant's reply brief cannot compensate for the fact that it did not properly consider and apply its own *Touhy* regulation factors in response to Plaintiffs' request.").[8]

Applying this standard, courts routinely overturn an agency's determination

---

[7] The D.C. Circuit and Ninth Circuit disagree and hold that federal courts should assess the discovery obligations of federal agencies under the Federal Rules.  *See Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007); *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 778-79 (9th Cir. 1994).

[8] Although reviewed as an "agency action," a motion to compel is still the procedurally appropriate and most efficient means of challenging a federal agency's *Touhy* denials.  Courts in the Eleventh Circuit and elsewhere have routinely agreed.  *See e.g.*, *Lewis*, 2009 WL 2611522, at *2 ("[T]he Court sees no reason why it cannot decide [the dispute] as part of the presently pending … action."); *Forgione v. HCA Inc.*, 954 F. Supp. 2d 1349, 1352-53 (N.D. Fla. 2013) ("Significant delay and inconvenience will be avoided simply by construing the instant action as arising under the APA."); *Barnett v. Ill. State Bd. of Elecs.*, 2002 WL 1560013, at *1 (N.D. Ill. July 2, 2002) ("[A] motion to compel directed against the Department does the job of bringing the APA action before the court equally as well as, if not better than, a separate APA claim…." (internal citation and quotations omitted)).

where the agency has failed to provide a coherent rationale for the denial. *See e.g., In re 3M Combat Arms Earplug Prods. Liab. Litig. ("In re 3M II")*, 2020 WL 5994266, at *5 (N.D. Fla. Oct. 9, 2020) (rejecting HHS' refusal to allow witness to testify where agency failed to articulate a "rational connection between the facts and its decision"); *United States ex rel. Lewis v. Walker*, 2009 WL 2611522, at *4 (M.D. Ga. Aug. 21, 2009) (overturning an agency's denial of a *Touhy* deposition request as arbitrary and capricious because it ran counter to the evidence before the agency). This is especially true where an agency's denial is based on "generalized assertions" of burden that fail to consider the relevance of the requested evidence, or accommodations that may lessen the claimed burden. *In re 3M I,* 2020 WL 6438614, at *4.

## III.    ARGUMENT

Freedom Defendants have sought relevant and proportional testimony from HHS-OIG through a subpoena properly served under Rule 45 and HHS' *Touhy* regulations, 45 C.F.R. §§ 2.1—2.6., to which the agency is legally required to respond. Notwithstanding Freedom Defendants' good-faith efforts to obtain this discovery without judicial intervention, HHS-OIG has refused to comply with the subpoena, which seeks information essential to their defenses. The Court should compel HHS-OIG to permit Freedom Defendants to depose Agent Garrido.

### A. HHS-OIG's Refusal to Make Agent Garrido Available for Deposition is Arbitrary and Capricious

HHS-OIG's explanation for its denial of Freedom Defendants' *Touhy* request is unreasonable under any standard. Here, HHS-OIG points to just two factors in

denying the request—(1) burden and (2) the availability of the evidence through other means.[9]  *See* Singer Decl., Ex. F.

On "burden," HHS-OIG rests on its *ipse dixit* that the deposition would "disrupt the official functions of the agency" because of the "time and effort necessary to prepare" Agent Garrido for her deposition, a concern purportedly heightened by her "lack of recollection of these old events."  *Id.*  The agency offered no facts to support the assertion that a fact deposition of a single employee would pose such a formidable task.  *Id.*  Weeks later, of course, the agency clarified that it *did not actually know* whether Agent Garrido lacked recollection because the assertion in the April 1 letter was adapted from "form language" used in HHS-OIG's other *Touhy* responses, and then declined to confirm whether anyone at HHS-OIG had *even talked to Agent Garrido* about her recollection before sending its denial letter.  Singer Decl. ¶ 23.

On "availability through other means," HHS-OIG has to date refused to produce any documents responsive to Freedom Defendants' at-issue requests, undercutting their initial argument that document discovery could "undermin[e] the need for deposition testimony."  *Id.*, Ex. F.  And HHS-OIG continues to assert that

---

[9] HHS-OIG does not object to Agent Garrido's testimony on privilege grounds.  *See* Singer Decl., Ex. E.  Nor could they.  HHS-OIG cannot lawfully refuse to allow Agent Garrido's testimony based on speculation that some questions may implicate privileged information, as those objections can be raised at the deposition.  *See Brush v. Sears Holding Corp.,* 2010 WL 11558010 at *2 (S.D. Fla. Sept. 2, 2010) ("EEOC's speculation that Defendant will seek information protected by the deliberative process privilege is no basis for blocking Defendant's deposition of its investigator.... Defendant seeks testimony regarding the facts uncovered during the EEOC's investigation and the facts underlying its LOD in this case. Further, to the extent the EEOC believes the privilege is being invaded, the appropriate time for it to protect that information is during the deposition if and when the issue presents itself." (emphasis omitted)).

the discovery could be obtained from Relator, without explaining how Defendants could hope to obtain evidence attacking Relator's credibility from Relator herself. *Id.* ¶ 24.

HHS-OIG's cursory denial of Freedom Defendants' request is exactly the type of arbitrary decision-making courts have repeatedly warned against. *See e.g., Sentinel Cap. Orlando, LLC v. Centennial Bank*, 2013 WL 12156678, at *6 (M.D. Fla. Apr. 2, 2013) (government may not "refuse to comply with a subpoena by generally asserting there is a national crisis or that it cannot perform essential government functions"); *In re 3M Combat Arms Earplug Prods. Liab. Litig.* (*"In re 3M III"*), 2020 WL 6065076, at *4 (N.D. Fla. Oct. 14, 2020); *In re Vioxx Prods. Liab. Litig.*, 235 F.R.D. 334, 345 (E.D. La. 2006). Under HHS-OIG's proffered standard, nearly any request for discovery would pose a burden sufficient to deny the request—effectively giving HHS-OIG a hall pass against all non-party requests. *In re Vioxx,* 235 F.R.D. at 345 ("[I]f this Court were to make such an unsound ruling, it would in effect allow the FDA to implement a practice of denying all deposition requests under the guise of possible, although presently nonexistent consequences.").

Freedom Defendants' subpoena seeks testimony on a narrow set of topics that are highly relevant to Relator's Amended Complaint. *See* Fed. R. Civ. P. 26(b). The requested testimony is critically important to understanding and evaluating Relator's allegations against Defendants and should be allowed.

### 1. HHS-OIG's "Burden" Objection Is Unavailing

HHS-OIG has not shown that compliance with Freedom Defendants' subpoena

actually imposes an undue burden on the agency. The claimed burden of having to devote resources to prepare a single witness for a deposition is insufficient to justify HHS-OIG's refusal to permit Agent Garrido's deposition. In reviewing agency denials of *Touhy* requests, courts routinely reject boilerplate or form objections based purely on speculative harm and general inconvenience. *See e.g., In re 3M I,* 2020 WL 6438614, at *4 (finding CDC's objection to employee deposition based on "generalized assertions" of burden, including preparation time, scare resources, and the interruption of agency duties was arbitrary and capricious); *Ceroni v. 4Front Engineered Sols., Inc.,* 793 F. Supp. 2d 1268, 1278-79 (D. Colo. 2011) (rejecting USPS's "boilerplate objections" to requests for deposition testimony of several employees and inspections of premises as arbitrary and capricious where information sought was relevant, efforts were made to minimize disruption, and agency's assertion that evidence was available from other sources was "unsupported and obviously incorrect").

This is especially true in declined *qui tams*, like this one, where the government remains the "real party in interest." *Williams v. C. Martin Co.*, 2014 WL 3095161, at *4-5 (E.D. La. July 7, 2014) (finding agency's non-compliance with subpoena in declined *qui tam* arbitrary and capricious, and noting that agency was "not a disinterested third party"). If the government believed this action was too burdensome to pursue, it could have sought to intervene and dismiss under the provisions of the FCA—it chose not to. It cannot now skirt its discovery obligations by claiming burden in a case brought on its own behalf.

Preparing even a single witness for deposition always requires some expenditure

16

of resources.  That is why courts have frequently refused to view that "burden" as an "undue" one—if it were otherwise, agencies could effectively impose a "blanket ban" on all deposition requests, "which is tantamount to an evidentiary privilege that the Government does not enjoy." *In re 3M II,* 2020 WL 5994266, at *6 (finding VA's claim that a doctor was too busy to participate in a deposition arbitrary and capricious) (internal citation omitted); *Moore,* 927 F.2d at 1198 ("HHS cannot put a blanket ban on all requests for testimony").  There is simply no rational basis to expect that the process of preparing Agent Garrido for this deposition will impose the "significant burden" that HHS-OIG imagines.[10]

Agent Garrido's purported inability to recall this investigation also should not be considered in evaluating HHS-OIG's purported burden.  The agency has already admitted that the "lack of recollection" language it relied upon in its letter denying this request was "form language," and that Agent Garrido recalls some of the events in question.  *See* Singer Decl. ¶¶ 23, 30.  Even on its face, HHS-OIG's initial position that Agent Garrido "lack[ed] … recollection" was belied by their suggestion that Agent Garrido *did remember* "that she did not discuss  substantive case matters via text with Relator."  *See* Singer Decl. Exs. F, G.

And to the extent HHS-OIG argues that the proffered declaration from Agent Garrido is an adequate substitute for her deposition testimony, HHS-OIG's own representations prove that it is not.  HHS-OIG's proffered declaration makes clear that

---

[10] Freedom Defendants also indicated that they are willing to depose Agent Garrido at a time or place of her choosing, including evenings or weekends.  Singer Decl. ¶ 22.

Agent Garrido *does* in fact recall at least some of her "many conversations" with Relator, *see* Singer Decl. ¶ 30, which establishes Freedom Defendants' need to question her about those recollections.  That is particularly true here, where the agency has stated that they cannot foreclose the possibility that Agent Garrido's recollection could be refreshed—a practice common in depositions.  *See* Singer Decl. ¶¶ 27, 30. Freedom Defendants are entitled to depose her regarding these events and to "independently determine" whether Agent Garrido has "at least some recollection of key facts and events, either with or without the use of documents, statements, or other things to jog or refresh her recollection." *Brush,* 2010 WL 11558010, at *3.[11]

Given the agency's inconsistent and evolving representations, the Court should not credit the agency's assertions regarding Agent Garrido's memory.  While the Court must afford some deference to an agency's *rational* conclusions, the Court is not required to accept an agency's proffered explanation for its denial, where such explanation "runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

Finally, as Freedom Defendants' explained in their *Touhy* request, Agent Garrido's testimony *would* be in the interest of the government, where both HHS and the United States have a vested "interest in ensuring that litigation pertaining to the administration of the [Medicare Advantage] program reaches a fair, just, and correct

---

[11] And to the extent there is some additional burden associated with refreshing Agent Garrido's recollection of key events, that is no doubt in part the result of HHS-OIG's own failure to preserve relevant text messages between Agent Garrido and Relator.  *See* Singer Decl., Ex. G.

result." *See* Singer Decl., Ex. C at 4.   Freedom Defendants' request for Agent Garrido's testimony on this narrow subject matter will "help the Court and jury understand key issues in this case"—a case that Relator is bringing on the government's behalf. *Id.*   HHS-OIG does not address these interests in its response, relying solely on speculative and generic burden objections to support its conclusion that the testimony would not be in the agency's interest. *See* Singer Decl., Ex. F.

HHS-OIG's stated basis for rejecting the request makes clear that the agency did not consider or address key factors relevant to the request or engage in any "individualized factual analysis." *Ceroni*, 793 F. Supp. 2d at 1278.   Because the agency has "failed to 'examine[ ] the relevant data' or articulate 'a rational connection between the facts found and the choice made,'" its decision to deny Freedom Defendants' request is arbitrary and capricious and must be overturned. *In re 3M I,* 2020 WL 6438614, at *3 (citing *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2569 (2019)); *In re Vioxx,* 235 F.R.D. at 346.

2. *The Relevance of the Requested Testimony Outweighs Any Purported Burden to HHS-OIG, and is Unavailable Through Other Means*

Any burden to HHS-OIG in responding to this request is also clearly outweighed by the relevance of this information to Freedom's defenses. *Williams,* 2014 WL 3095161, at *5 (applying arbitrary and capricious standard and finding "any burden on [the agency] is significantly outweighed by the importance of this evidence to the litigation").   HHS-OIG does not challenge the relevance of Agent Garrido's testimony *per se*, arguing instead that it would be duplicative.   HHS-OIG is wrong.

This critical evidence is unavailable from any other source, and HHS-OIG's refusal to acknowledge the indispensability of Agent Garrido's testimony is arbitrary and capricious.

Among other things, Agent Garrido's testimony is relevant to understanding how Relator has previously presented her allegations or the evidence, including her interpretation of various statements, documents, and practices at the core of her allegations. Agent Garrido's testimony could also show whether Relator's representations have changed over time, reveal key contextual information about the recorded conversations, or even reveal the existence of unrecorded conversations.

Courts across the country have consistently recognized that a relator's credibility can be a critical component of discovery in FCA cases. In *King*, for instance, the court deemed a relator's contemporaneous "video diaries" so critical to the action that the court dismissed the action as a sanction for spoliation upon discovering that the videos had disappeared. *See United States ex rel. King v. DSE, Inc.*, 2013 WL 610531, at *11 (M.D. Fla. Jan. 17, 2013). The court recognized that the contemporaneous recordings were not "merely cumulative" of the relator's characterization of the recordings in his amended complaint, since the videos themselves were "critical to his credibility," and their absence meant that some key evidence in the case would be "based on Relator's testimony alone." *Id.*; *see also Graves v. Plaza Med. Centers, Corp.,* 2017 WL 3895438, at *2 (S.D. Fla. Sept. 6, 2017) (permitting introduction of evidence "relevant to the issue of the relator's credibility"); *United States ex rel. Harman v. Trinity Indus., Inc.,* 2014 WL 12603247, at *2 (E.D. Tex.

July 11, 2014), *order amended on denial of reconsideration*, 2014 WL 12603897 (E.D. Tex. Oct. 10, 2014) (permitting discovery into relator's purported deletion of "communications with state and federal government officials" as it was "relevant to the Relator's credibility").

Indeed, discovery into relators' contemporaneous statements can be of such critical importance that party opponents can often overcome attorney work-product objections by demonstrating a "substantial need" for historical statements made by relators. *See, e.g., United States ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 419, 425-26 (D.D.C. 2014) (finding "substantial need" sufficient to pierce work product protection over interview notes because information on "witnesses' initial, unadorned testimony on … key issues" was highly relevant, and could "reveal how the witnesses' testimony and recollections may have changed over time"); *United States ex rel. Minge v. TECT Aerospace, Inc.,* 2011 WL 1885934, at *8 (D. Kan. May 18, 2011) (describing relators as "critical witnesses," and compelling production of their prior statements to the government notwithstanding work-product objections because their statements constituted "evidence for which the defense has a substantial need" that could not be "obtained by other sources").

Here, discovery into Relator's contemporaneous statements to HHS-OIG's lead investigator would constitute a "unique source[] of both affirmative evidence and impeachment material for which there is no substitute." *Landis*, 303 F.R.D. at 426 ("Particularly in *qui tam* actions, fairness dictates that both sides have equal access to relevant witness statements developed by law enforcement in prior or parallel criminal

investigations."). Relator will be a central witness in this case, so any inconsistencies between the statements she makes as a *qui tam* relator in this litigation and those she made previously are highly relevant. Notably, such inconsistencies are not merely hypothetical—even the limited discovery that Freedom Defendants have obtained from the government to date establishes that Relator misrepresented material aspects of certain recorded conversations in her Amended Complaint. *See* Singer Decl., Ex. C at 4. Freedom Defendants are entitled to explore whether similar discrepancies are present in Relator's *unrecorded* statements to the government—which were made in the hopes of securing the government's intervention in this case, and which Relator could have expected would remain private in a way her recordings would not.

Relator herself has also identified Agent Garrido as "an individual likely to have discoverable information Relator may use to support her claims." *See* Ex. H (Relator's amended Fed. R. Civ. P. 26(a) initial disclosures). In addition to being an independent source of critical evidence, if Relator decides to call Agent Garrido as a witness at trial, Freedom Defendants would be prejudiced if they have no opportunity to depose her prior to trial. *See Beets v. Rozier*, 5:06-CV-192, 2010 WL 1050352, at *3 (M.D. Ga. Mar. 18, 2010) (refusing to permit witness to testify at trial in part because of the prejudice defendant would face without having had "the opportunity to depose [the witness] prior to trial," which "would put Defendant at a disadvantage when attempting to cross-examine any witness"). This concern is heightened here by HHS-OIG's refusal, to date, to commit to objecting if Relator seeks Agent Garrido's testimony at trial, notwithstanding its denial of Freedom Defendants' request. *See*

22

Singer Decl. ¶ 25.

The requested testimony is also relevant to other issues in this case, such as materiality and causation. The government's contemporaneous knowledge of Defendants' practices and the allegedly "false" claims at issue bear directly on these two elements, which Relator must prove to succeed on her FCA claims. First, Relator must prove that any allegedly false statements were "material" to the government's decision to pay the at-issue claims. *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192-95 (2016). That analysis turns in part on whether the government pays claims "despite its actual knowledge that certain requirements were violated," *id.* at 195. The government's (and Agent Garrido's) knowledge of alleged violations is thus relevant to whether Relator can satisfy her burden on materiality. Second, Relator must prove that Freedom Defendants' conduct *caused* the government to pay the allegedly false claims. *See AseraCare*, 938 F.3d at 1284. As with materiality, Agent Garrido's communications with Relator could reveal evidence that, for instance, the government would have paid the allegedly "false" claims regardless, such that Freedom Defendants' conduct did not "cause" any loss to the government.

Contrary to HHS-OIG's suggestion, Freedom Defendants have no other means to pursue the discovery sought through a deposition of Agent Garrido. Given HHS-OIG's refusal to locate and produce documents relevant to Agent Garrido's communications with Relator—and its apparent inability to do so with respect to text messages that were lost or destroyed "in or around June 2020," the very same month that *Zafirov* was unsealed, and during the pendency of the investigation—Agent

Garrido's testimony will be irreplaceable.  *See Chang v. United States,* 2012 WL 28257, at *4 (D.D.C. Jan. 5, 2012) (finding deposition testimony was necessary where the physical evidence was deleted, leaving no other way to obtain the information).  HHS-OIG implicitly recognized as much when it took the position that its then-forthcoming document productions would "undermin[e]" the need for testimony from Agent Garrido.  Singer Decl., Ex. F.  But despite the foundation of that argument having been uprooted after HHS-OIG made clear (three weeks later) that it would not produce any documents, *id.*, Ex. G, HHS-OIG has refused to revisit its prior denial which was based, in part, on the production of documents that were never produced.  The Court owes no deference to the agency's irrational decisionmaking here.  *In re 3M II*, 2020 WL 5994266 at *7 (VA's decision to not comply with subpoena for doctor's testimony was arbitrary and capricious where VA "ignored relevant, undisputed facts in the administrative record and failed to offer a rational connection between other facts and its decision to not authorize" the deposition).

Only Agent Garrido can provide an unbiased view into the nature of Relator's representations to Agent Garrido, Relator's contemporaneous understanding of key facts, and the government's contemporaneous knowledge of material allegations in this case.  Agent Garrido's "more objective perspective" may "fill in … gaps" or "differ in some respects" from Relator's recollections, and those gaps and differences could be critical to Freedom Defendants' defense. *See Beckett v. Serpas*, 2013 WL 796067, at *10 (E.D. La. Mar. 4, 2013).  In the current litigation posture, Relator's testimony is simply "not a reasonable alternative available source of information or substitute" for

24

Agent Garrido's testimony.  *Id.*  HHS-OIG's conclusion to the contrary was arbitrary and capricious.

## IV.   CONCLUSION

Freedom Defendants seek limited relief—the deposition of a single witness, on narrow topics cutting to the heart of its defense.  Although the government declined to intervene, that does not absolve it of its duty to respond to requests for discovery in its possession.  *See, e.g., Williams,* 2014 WL 3095161, at *3 (applying arbitrary and capricious standard and compelling *Touhy* deposition in non-intervened *qui tam*); *Lewis,* 2009 WL 2611522, at *4 (same); *United States v. Cognizant Tech. Sols. Corp.*, 2023 WL 2759075, at *6 (D.N.J. Apr. 3, 2023) (same).  After months of delay, inaccurate representations, and dubious rationales, HHS-OIG's refusal to produce ***any evidence*** on these critical issues—testimonial or otherwise—is arbitrary and capricious.

Freedom Defendants respectfully request that the Court compel HHS-OIG to comply with Defendants' subpoena for Agent Garrido's testimony.

Dated:  May 15, 2024                    Respectfully submitted,

By:   */s/ Benjamin D. Singer*

    Benjamin D. Singer*
    Amanda M. Santella*
    William Buffaloe*
    Kelly McDonnell*
    O'MELVENY & MYERS LLP
    1625 Eye Street NW
    Washington, DC 20006
    (202) 383-5300
    bsinger@omm.com
    asantella@omm.com
    wbuffaloe@omm.com
    kmcdonnell@omm.com

    Scott Drake (Lead Counsel)*
    O'MELVENY & MYERS LLP
    2801 North Harwood Street, Suite 1600
    Dallas, TX 75201
    (972) 360-1915
    sdrake@omm.com

    Catherine Nagle*
    O'MELVENY & MYERS LLP
    7 Times Square
    New York, NY 10036
    (212) 326-2000
    cnagle@omm.com

    Ginger Boyd
    Fla. Bar No. 294550
    NELSON MULLINS RILEY &
    SCARBOROUGH LLP
    215 South Monroe Street, Suite 400
    Tallahassee, FL 32301
    (850) 205-3356
    Ginger.Boyd@nelsonmullins.com

    *Counsel for Defendants Freedom Health, Inc.
    and Optimum Healthcare, Inc.*

    * admitted pro hac vice

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Freedom Defendants conferred with counsel for HHS-OIG via teleconference regarding the relief requested in this Motion, and counsel for HHS-OIG opposes the relief sought.

By: */s/ Benjamin D. Singer*

Benjamin D. Singer*

*Counsel for Defendants Freedom Health, Inc. and Optimum Healthcare, Inc.*

*\* admitted pro hac vice*

27

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2024, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will provide electronic service to all counsel of record.  I also certify that I caused the foregoing document, along with all attachments, to be served via USPS and electronic mail on:

> Candace Ashford
> Senior Counsel
> Office of Counsel to the Inspector General
> United States Department of Health and Human Services
> Cohen Building, Room 5527
> 330 Independence Avenue, S.W.
> Washington, D.C. 20201
> Candace.Ashford@oig.hhs.gov

By: */s/ Benjamin D. Singer*

Benjamin D. Singer*

*Counsel for Defendants Freedom Health, Inc. and Optimum Healthcare, Inc.*

*\* admitted pro hac vice*

28