# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. DR. CLARISSA ZAFIROV, <br><br> Plaintiff/Relator, <br><br> v. <br><br> PHYSICIAN PARTNERS, LLC; FLORIDA MEDICAL ASSOCIATES, LLC, d/b/a VIPCARE; ANION TECHNOLOGIES, LLC; FREEDOM HEALTH, INC.; and OPTIMUM HEALTHCARE, INC., <br><br> Defendants. | Case No. 8:19-cv-01236-KMM-SPF |

**DECLARATION OF BENJAMIN D. SINGER IN SUPPORT OF FREEDOM HEALTH, INC. AND OPTIMUM HEALTHCARE, INC.'S MOTION TO COMPEL NONPARTY—THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, OFFICE OF INSPECTOR GENERAL— TO COMPLY WITH SUBPOENA**

In accordance with 28 U.S.C. § 1746, I, Benjamin D. Singer, hereby state and declare as follows:

1. I am a partner of O'Melveny & Myers LLP ("O'Melveny"). I am licensed and authorized to practice law in the District of Columbia. I am over the age of 18, am capable of making this Declaration, know all of the following facts of my own personal knowledge, and, if called and sworn as a witness, could and would testify competently thereto. I declare under the penalty of perjury that the foregoing is true

1

and correct.

2. I represent Defendants Freedom Health, Inc. and Optimum Healthcare, Inc. ("Freedom Defendants") in the above captioned case, *United States ex rel. Clarissa Zafirov*, Case No. 8:19-cv-01236 (*"Zafirov"*). This is a *qui tam* case, brought by Relator Dr. Clarissa Zafirov ("Relator").

3. On February 10, 2023, the defendants in this case (collectively, "Defendants") issued a subpoena for documents from the Office of Inspector General of the United States Department of Health and Human Services ("HHS-OIG"). In general, this subpoena (the "First HHS-OIG Subpoena") requested documents related to HHS-OIG's investigation of the allegations in Relator's Amended Complaint, including recordings of Relator's consensual monitoring of Defendants, HHS communications with Relator and notes reflecting those communications, and documents provided by Relator to HHS. These requests complied with 45 C.F.R. §§ 2.1–2.6, which contain the operative *Touhy* regulations for the Department of Health and Human Services, of which HHS-OIG is a component.

4. Attached as **Exhibit A** is a true and correct copy of the First HHS-OIG Subpoena for documents, along with all attachments, which Defendants served on HHS-OIG on February 10, 2023. The First HHS-OIG Subpoena demanded compliance in Washington, D.C.

5. Also on February 10, 2023, Defendants served a subpoena for documents on the Department of Justice ("DOJ") and the United States Attorney for the Middle

District of Florida.  This subpoena (the "DOJ Subpoena") sought similar items.

6. Attached as **Exhibit B** is a true and correct copy of email communications related to the First HHS-OIG Subpoena, which I sent and received between March 7, 2023 and March 31, 2023.  On March 31, 2023, Candace Ashford—Senior Counsel for HHS-OIG—responded to the First HHS-OIG Subpoena via email.  In substance, counsel for HHS-OIG agreed to produce only non-duplicative recordings (i.e., only those recordings that DOJ would not already be producing).

7. Between March 31, 2023 and February 20, 2024, O'Melveny attorneys worked with representatives from HHS-OIG and DOJ to ensure that the agencies had produced all of the recordings subject to the First HHS-OIG Subpoena and the DOJ Subpoena.  Undersigned counsel understands that DOJ has now completed their productions of the recordings requested in the relevant subpoenas.

8. On January 18, 2024, counsel for Defendants issued a subpoena for testimony from HHS-OIG, namely from Special Agent Raquel Garrido ("Agent Garrido").  This subpoena (the "Second HHS-OIG Subpoena") sought testimony from Agent Garrido, which would concern the same sorts of topics for which Defendants had previously sought documents from HHS-OIG.  These requests complied with 45 C.F.R. §§ 2.1–2.6, which contain the operative *Touhy* regulations for the Department of Health and Human Services, of which HHS-OIG is a component.

9. Attached as **Exhibit C** is a true and correct copy of the Second HHS-OIG Subpoena, along with all attachments, which Defendants served on HHS-OIG on

January 18, 2024. The Second HHS-OIG Subpoena demanded compliance in Tampa, Florida.

10. Also on January 18, 2024, Defendants sent a letter to DOJ concerning the document requests still pending in relation to the DOJ Subpoena.

11. Attached as **Exhibit D** is a true and correct copy of the January 18, 2024 Letter to DOJ, with copy to counsel for HHS-OIG.

12. Following service of the Second HHS-OIG Subpoena, counsel for Defendants, counsel for HHS-OIG, and counsel for DOJ continued to discuss the agencies' compliance with the pending subpoenas. On March 7, 2024, counsel for Freedom Defendants proposed revisions to both the First HHS-OIG Subpoena and the Second HHS-OIG Subpoena, which functionally narrowed the discovery sought by Defendants from HHS-OIG.

13. Attached as **Exhibit E** is a true and correct copy of email communications related to the First and Second HHS-OIG Subpoenas, which I sent and received between December 15, 2023 and May 15, 2024.

14. On April 1, 2024, the Acting Chief Counsel to the Inspector General ("Acting Chief Counsel") sent me an undated letter responding to the First and Second HHS-OIG Subpoenas. In the letter, the Acting Chief Counsel concluded that permitting the deposition of Agent Garrido would not "promote[] the objectives" of HHS-OIG, but noted that "OIG will produce responsive nonprivileged documents in its possession." In the letter, the Acting Chief Counsel requested an "additional 3

4

weeks" to "search and process" the request for documents, which was included in the First HHS-OIG Subpoena, served on February 10, 2023. Finally, the Acting Chief Counsel noted that the "contents of any responsive documents are admissible in the underlying litigation, undermining the usefulness of the deposition testimony." The Acting Chief Counsel did not assert that Agent Garrido's deposition testimony would not be relevant, or claim that any privilege would render the deposition inappropriate.

15. Attached as **Exhibit F** is a true and correct copy of the undated letter sent by the Acting Chief Counsel on April 1, 2024.

16. Freedom Defendants refrained from seeking to enforce the subpoena for Agent Garrido's testimony at this time, based on HHS-OIG's representations regarding the forthcoming production.

17. Freedom Defendants also subsequently agreed to extensions to HHS-OIG's deadline to produce documents based, in part, on representations that HHS-OIG would, in fact, be producing documents. On April 1, 2024, HHS-OIG's Candace Ashford requested an extension because of time needed to *produce* documents. *See* Ex. E. ("As you will see in the letter, we are working on the document production but need additional time."). Freedom Defendants agreed to a three-week extension of the production deadline based on HHS-OIG representation that it would "complete production by 4/22." *See* Ex. E. On April 22, 2024—three weeks after HHS-OIG's promise to produce the responsive nonprivileged documents in its possession—I understand that counsel for HHS-OIG Candace Ashford called my colleague at

5

O'Melveny, Alex Trabolsi, to request an additional day to produce the documents. Counsel for Freedom Defendants again agreed to extend the deadline for the production one day, to April 23, 2024. *See* Ex. E.

    18.    On April 23, 2024, counsel for HHS-OIG sent me an undated letter responding to the First HHS-OIG Subpoena. In response to each of the substantive requests in the First HHS-OIG Subpoena, counsel for HHS-OIG represented either that "[n]o documents were found," or that "[n]o non-privileged documents were found." The letter included a description of HHS-OIG's "efforts" to locate responsive documents. But counsel for HHS-OIG concluded that "[u]pon review of the documents that were potentially responsive to your request, there were no non-privileged or otherwise protected documents." Finally, counsel for HHS-OIG explained that "OIG no longer has" Agent Garrido's "text messages during the time of her investigation." Counsel for HHS-OIG represented that Agent Garrido "received a new phone in or around June 2020." *Zafirov* was unsealed and disclosed to Freedom Defendants on June 25, 2020. Counsel for HHS-OIG further stated that "consistent with HHG-OIG policy, [Agent Garrido] asserts that she did not discuss substantive case matters via text with Relator." HHS-OIG produced no documents.[1]

    19.    Attached as **Exhibit G** is a true and correct copy of the undated letter

---

[1] On April 26, 2022, counsel for HHS-OIG produced 22 documents in response to a separate *Touhy* request, which concerned documents and communications related to Freedom Defendants' compliance with a Corporate Integrity Agreement overseen by HHS-OIG. That *Touhy* request is not at issue in the instant Motion to Compel.

sent by the counsel for HHS-OIG on April 23, 2024.

20. On May 5, 2024, I sent an email to counsel for HHS-OIG. *See* Ex. E. That email raised various deficiencies in HHS-OIG's responses to the First and Second HHS-OIG Subpoenas, including questioning the reasonableness of HHS-OIG's search for documents, and reiterating the propriety of Defendants' request to depose Agent Garrido.

21. On May 10, 2024, I met and conferred with counsel for HHS-OIG.

22. During this discussion, counsel for HHS-OIG reiterated that the agency would not consent to Agent Garrido's deposition for the reasons stated in HHS-OIG's April 1 letter. *See* Ex. F. I offered to depose Agent Garrido at a place or time of her choosing, in an effort to accommodate HHS-OIG's burden concerns, but counsel for HHS-OIG still declined to make Agent Garrido available for a deposition.

23. Counsel for HHS-OIG conceded that the agency's prior assertion that Agent Garrido "lack[ed] … recollection" of the events in question was "form language" the agency used. When asked if the agency had spoken to Agent Garrido before the April 1 letter was prepared, representatives from the government on the call either affirmatively stated that they had not spoken to Agent Garrido before or declined to answer the question.

24. I also asked the agency to identify the other "sources" from which the agency believed Freedom Defendants could obtain this testimony and HHS-OIG's counsel confirmed that the only other source of the requested testimony would be

7

Relator, but did not explain how Relator would be an adequate source for testimony regarding her own credibility.

25.    Counsel for HHS-OIG refused to commit that HHS-OIG would object if a request was made for Agent Garrido to testify at trial as a witness for Relator, even if Agent Garrido had not been deposed.

26.    On May 13, 2024, I sent a draft declaration for Agent Garrido to counsel for HHS-OIG, as a potential alternative to Agent Garrido's testimony. The draft declaration stated, among other things, that Agent Garrido had no recollection of specific conversations with Relator and that Agent Garrido's recollection could not be refreshed by reviewing documents or materials maintained during the relevant time period.

27.    On May 13, 2024, I again met and conferred with counsel for HHS-OIG regarding Freedom Defendants' request for Agent Garrido's deposition. Counsel for HHS-OIG indicated that the declaration, as drafted, was unacceptable to the agency because the agency did not know the extent of Agent Garrido's recollection, what materials she had or had not reviewed, and if there were materials that could refresh her recollection.

28.    Counsel for HHS-OIG subsequently sent a revised declaration on May 15, 2024. *See* Ex. E.

29.    HHS-OIG marked their draft declaration from Agent Garrido as privileged, confidential, and attorney work product. In an abundance of caution,

Freedom Defendants do not attach HHS-OIG's draft declaration hereto, despite their disagreement that any of those bases would restrict Freedom Defendants from disclosing the draft declaration in its entirety.

30. On May 15, 2024, shortly after receiving HHS-OIG's proposed declaration, I met and conferred with counsel for the government. During this discussion, I explained Freedom Defendants' position that the declaration, as drafted, was not an adequate substitute for Agent Garrido's deposition testimony. The draft declaration posited that Agent Garrido had many conversations with Relator, but did not recall anything Relator had said about the content of the recordings. The draft declaration thus made clear that Agent Garrido had some recollection of the events in question, and did not foreclose the possibility that her recollection could be even further refreshed during a deposition. I also stated that Freedom Defendants intended to move to compel compliance with the request for Agent Garrido's deposition.

31. As of the filing of this Motion to Compel, HHS-OIG still has produced no documents in response to any of the four narrowed document requests.

32. On December 5, 2022, counsel for Relator served Relator's amended Fed. R. Civ. P. 26(a) initial disclosures on Defendants.

33. Attached as **Exhibit H** is a true and correct copy of Relator's amended Fed. R. Civ. P. 26(a) initial disclosures.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 15th day of May, 2024, in Washington, D.C.

*/s/ Benjamin* D. Singer
Benjamin D. Singer
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, D.C. 20006
(202) 383-5300
