# Exhibit D



O'Melveny & Myers LLP  
1625 Eye Street, NW  
Washington, DC 20006-4061

T: +1 202 383 5300  
F: +1 202 383 5414  
omm.com

January 18, 2024

**Benjamin D. Singer**  
D: +1 202 383 5201  
bsinger@omm.com

<u>VIA E-MAIL</u>

Sean P. Keefe  
Assistant United States Attorney  
United States Attorney's Office for the Middle District of Florida  
400 North Tampa Street  
Suite 3200  
Tampa, FL 33602

Candace Ashford  
Senior Counsel  
Office of Counsel to the Inspector General  
United States Department of Health and Human Services  
Cohen Building, Room 5527  
330 Independence Avenue, S.W.  
Washington, D.C. 20201

Re: <u>**Defendants' Joint Requests for Documents Pursuant to 28 C.F.R. §§ 16.21–16.29**</u>  
<u>***United States ex rel. Zafirov*, No. 8:19-cv-01236–KKM-SPF (M.D. Fla.)**</u>

Dear Mr. Keefe and Ms. Ashford:

We write on behalf of all Defendants in the civil action *United States ex rel. Zafirov*, No. 8:19-cv-01236-KKM-SPF, in the U.S. District Court for the Middle District of Florida, including Defendants Freedom Health, Inc. and Optimum Healthcare, Inc. (collectively, "Freedom Defendants") and Defendants Florida Medical Associates LLC d/b/a VIPCare, Physician Partners, LLC, and Anion Technologies, LLC (collectively, the "Provider Defendants") (altogether, "Defendants") to respond to the Department of Justice's ("DOJ") and the Department of Health and Human Services ("DHHS") Office of the Inspector General's ("DHHS-OIG") responses and objections ("Objections") to Defendants' joint requests for documents submitted pursuant to the DOJ's and DHHS' *Touhy* regulations ("Defendants' Requests").

### I. Defendants' Outstanding Document Requests

Defendants propounded six requests for documents in their February 2023 joint requests for documents. DOJ and DHHS-OIG objected to and did not produce any documents in response to Requests 2, 3, 4, and 5.[1]

**Request 2**: All Documents, including, without limitation, audio or video recordings or notes, Concerning interviews with Relator.

**Request 3**: All Communications between You and Relator

**Request 4**: All Documents, including, without limitation, notes, Reflecting Your Communications with Relator

**Request 5**: All Documents provided by Relator to You.

DOJ claimed that each of these requests calls for documents that are privileged or otherwise protected by the law enforcement investigatory files privilege, common-interest doctrine, the attorney-client privilege, work product doctrine, and as to Requests 2 and 4, the deliberative process privilege. Objections at 7–8. DOJ also objected to Requests 2, 4, and 5 based on Federal Rule of Civil Procedure 26(b)(1) because the requested documents are allegedly irrelevant and the requests are not proportional to the needs of the case and unduly burdensome. *Id*.

Through these requests, Defendants are specifically seeking documents reflecting discussions with Relator regarding the audio and video recordings Relator made, including communications with Relator on how to make the recordings or what should be recorded, as well as Relator's statements about what was captured on the recordings. These audio and video recordings will be central evidence in the case. Twenty-two paragraphs in Relator's Amended Complaint relate to conversations captured on the recordings, and Relator specifically cited these conversations as support for her allegations that the Provider Defendants caused the submission of false claims in her Opposition to Provider Defendants' Motion to Dismiss, *see* Opp'n to Provider Defs.' Mot. to Dismiss First Am. Compl. 10, 15-16, Doc. 106.

The outstanding requested materials are critically important pieces of evidence to understand and evaluate the recordings that Relator generated and clearly intends to rely on in litigation. These documents could reveal important information about which conversations were recorded—and which were not. This information would also reveal how Relator initially

---

[1] On March 31, 2023, DHHS-OIG responded to Defendants' Requests without providing formal responses and objections but rather simply stating that DHHS-OIG was "unable to obtain authorization to permit the production of all documents or materials you have requested," but would provide audio and/or visual recordings responsive to Document Request 1 "that are unique from those produced by DOJ." Although DOJ and DHHS-OIG refused to produce documents in response to the same requests (Defendants' Requests 2–5), only DOJ provided objections and explanations for this refusal, so this letter responds to the substance of DOJ's objections.



understood or described the conversations she recorded, which will be important in evaluating her current testimony and allegations regarding these same conversations.

Defendants know that there were communications between Relator and DHHS-OIG Agent Raquel Garrido based on the recordings produced by DOJ. The first audio recording on August 14, 2019 reveals that Relator and Agent Garrido communicated by text message. In the first minute and twenty seconds of this recording, the recording captures the following exchange:

> **Relator Zafirov**: "Oh, quick question before you… Okay."
> **Agent Garrido**: "It started recording."
> **Relator Zafirov**: "I'll ask you after—after all."
> **Agent Garrido**: "This is Special Agent Raquel Garrido with the Office of Investigation, Office of Inspector General, United States Department of Health and Human Services, beginning a consensual monitoring recording on August 14, 2019, OI File Number M19001749. Present with me is Dr. Clarissa Zafirov. The recording device will be provided to Dr. Zafirov, the consenting part--party. Dr. Zafirov will now state her name for voice identification purposes."
> **Relator Zafirov**: "Dr. Clarissa Zafirov."
> **Agent Garrido**: "I will now hand the recording device to the doctor. Okay. Here you go."
> **Relator Zafirov**: "Alright. I will text you, then."
> **Agent Garrido**: "Text me the questions . . ."
> **Relator Zafirov**: "Perfect."
> **Agent Garrido**: "And I will address those."

This is only one of many references to text messaging in the conversations between Relator and Agent Garrido. Other references are included on the recordings from August 15, 2019, August 30, 2019, September 11, 2019, September 12, 2019, September 18, 2019, and October 2, 2019. In addition to communicating by text message, Relator and Agent Garrido also had oral conversations off the record. Such discussions are evidenced by the final audio file from October 9, 2019. The last few minutes of the recording captured a conversation between Relator and Agent Garrido in the distant background. The conversation is difficult to hear, but Relator and Agent Garrido can be heard having the following exchange:

> **Relator Zafirov**: "They're watching me pretty closely"
> **Agent Garrido**: "Hmm. I haven't gotten that, but maybe it's a different chat."
> **Relator Zafirov**: "What's the date on that one?"
> **Agent Garrido**: "September 26. [Indiscernible] I can turn it [indiscernible]."
> **Agent Garrido**: "This is Special Agent Raquel Garrido. It is October 9, 2019, 7:33pm. I have received the device."
> **Relator Zafirov**: "I'll tell you right now—[indiscernible]"
> **Agent Garrido**: "[Indiscernible]—and turn it off as well."

Presumably, the agent took notes of her oral conversations with Relator or prepared investigative reports capturing the substance of those communications. For the avoidance of doubt, Defendants note that Request 3 encompasses the text messages between Relator and Agent Garrido, and Requests 2 and 4 encompass any notes, reports or communications Agent



Garrido made reflecting her oral conversations with Relator. While Defendants also intend to submit another *Touhy* request to DHHS-OIG for testimony from Agent Garrido regarding her communications with Relator, Agent Garrido's communications relating to this matter and documents reflecting such communications may be contained in or relate to other materials (*i.e.*, the recordings) contained in the DOJ files. Moreover, just as with any criminal investigation, the United States Attorney's Office understood from the time it opened this matter that it would be responsible for producing all of the information Defendants now seek as part of discovery in any future criminal case, and Agent Garrido understood the same. Agent Garrido was trained to preserve her investigative file in the event of such discovery.

## II.  Blanket Privilege Objections are Insufficient

As an initial matter, DOJ's Objections are insufficient as it refuses to produce entire categories of responsive documents on the basis of blanket claims of privilege without the support of a privilege log. It is the duty of the government—as it would be for any entity objecting to a subpoena—to "comply with its obligations under the Federal Rule of Civil Procedure 45(d)(2) and produce a privilege log that allows [the Defendants] and the Court to assess the validity of the claimed privileges."  *In re Apollo Grp., Inc. Sec. Litig.*, 2007 WL 778653, at *8 (D.D.C. Mar. 12, 2007) (A government agency "is a 'person' for all purposes of Federal Rule of Civil Procedure 45 and, as such, is subject to the duties that devolve upon a person served with a subpoena under that Rule, including a duty to substantiate claims of privilege pursuant to Rule 45(d)(2)."); *see Gischel v. Univ. of Cincinnati*, 2018 WL 9945170, at *6 (S.D. Ohio June 26, 2018) ("The [agency] has asserted these concerns only in an abstract way without providing a privilege log to Gischel or the Court," and so "the Court lacks sufficient information to make a definitive ruling.").  In *Franchitti v. Cognizant Tech. Sols. Corp.*, 2023 U.S. Dist. LEXIS 58007, at *19 (D.N.J. Mar. 31, 2023), the court found the government's blanket assertion of privilege "arbitrary and capricious" when it was unsupported by a privilege log or any specific document-by-document privilege claim.

As noted further below, each of the privileges asserted by DOJ is fact-specific and requires a document-by-document analysis. Without a privilege log with such specific privilege assertions and analysis, DOJ has not provided Defendants and the Court sufficient information to assess which documents are properly covered by the protections invoked by DOJ. Defendants request that DOJ satisfy its obligation to provide a privilege log documenting withheld documents and communications responsive to Defendants' requests.

## III.  DOJ's Objections are Overbroad

Defendants do not doubt that some of the documents responsive to Defendants requests may be immune from disclosure, but DOJ's assertion that every document responsive to Defendants' Requests 2–5 is privileged or protected is unsupported and unreasonable. DOJ's cited privileges and protections have inherent limitations, which DOJ fails to acknowledge with its blanket assertions and withholding.

### A.  *Common Interest Privilege*

DOJ's assertion of common interest privilege cannot support a refusal to produce each and every document responsive to Defendants' requests.



The common interest privilege "does not confer an additional layer of privilege" over common-interest documents, but rather simply "protects the transmission of *otherwise* privileged material" between parties in a common interest relationship. *United States ex rel. Scott v. Humana Inc.*, 2021 U.S. Dist. LEXIS 165776, at *11 (W.D. Ky. Aug. 31, 2021) (emphasis added). The limitations of the common interest privilege clearly identify categories of communications and materials exchanged between Relator and the government that are not protected from disclosure.

First, the common interest privilege does not protect documents and information shared between parties before the common interest relationship is established, which was established here with Relator's pre-filing disclosure. *See United States v. Cameron-Ehlen Grp.*, 2019 WL 6875354, at *1 (D. Minn. Dec. 17, 2019) (finding the relator's pre-filing communications not protected because "any common interest privilege is properly asserted only once" the relator makes their pre-filing disclosure); *see also Miller v. Holzman*, 240 F.R.D. 20, 22 (D.D.C. 2007) (finding common interest after relator had made pre-litigation disclosure and filed qui tam suit because, at that point, "the United States and the relator had a common interest in the prosecution of common defendants in an *existing* civil or criminal case") (emphasis added). Therefore, any communications or documents exchanged between Relator and the government, including any interview of Relator and any memorialization of the interview, before Relator's pre-filing disclosure are properly discoverable as any applicable privileges were waived when exchanged with a third party without an established common interest.

Second, the common interest privilege does not support withholding responsive materials when the subject materials are not otherwise privileged before they were shared. Federal courts have recognized that the common interest privilege between a relator and the government does not blanket every document and communication shared between them with privilege. *See United States ex rel. Minge v. TECT Aero., Inc.*, 2011 U.S. Dist. LEXIS 92243, at *4–5 (D. Kan. Aug. 18, 2011) (declining to "expand[]" the application of the common interest privilege to "protect the communications from Relator Minge to government counsel," and holding nonprivileged a memorandum prepared by relator for the government commenting on certain documents). Any responsive materials not covered by another privilege or protection, which are evaluated individually below, cannot be shielded from disclosure by the common interest privilege.

      B. *Attorney-Client Privilege*

Once again, DOJ's assertion of attorney-client privilege, even in combination with the common interest privilege, is overbroad and cannot support a refusal to produce each and every document responsive to Defendants' requests.

The attorney-client privilege protects confidential communications between an attorney and a client or prospective client made for the purposes of soliciting or providing legal advice or services. *See In re Grand Jury Proceedings*, 899 F.2d 1039, 1042 (11th Cir. 1990). At the heart of each of the outstanding requests is a communication or information exchange between Relator and the government. As there is no attorney-client relationship between Relator and the government, those communications and exchanges themselves do not enjoy attorney-client privilege. Furthermore, documents do not become privileged by virtue of giving them to attorneys. *See Fisher v. United States*, 425 U.S. 391 (1976). So otherwise non-privileged documents Relator gave to her attorneys who then transferred them to the government did not become privileged by virtue of having been delivered to attorneys.

5



Defendants understand that to the extent that communications responsive to Requests 3 ("All Communications between You and Relator") or 5 ("All Documents provided by Relator to You") exchanged after the start of the common interest relationship contain attorney-client-privileged information, those portions of the documents are protected from disclosure, but the attorney-client privilege in combination with the common-interest doctrine cannot extend to protect the entirety of such communications or documents.

Similarly, Defendants understand that some documents responsive to Requests 2 ("All Documents, including, without limitation, audio or video recordings or notes, Concerning interviews with Relator") or 4 ("All Documents, including, without limitation, notes, Reflecting Your Communications with Relator") may be protected by the attorney-client privilege but only to the extent the communications satisfy each of the elements required to establish attorney-client privilege.  *See In re Grand Jury Proceedings*, 899 F.2d 1039, 1042 (11th Cir. 1990).  Simply stating that DOJ's investigative files "typically contain" attorney-client privilege protected communications and documents is a far cry from meeting the test "require[d]" by the Eleventh Circuit for establishing attorney-client privilege.  *See id*.  DOJ's vague and overbroad privilege claims underscore the critical need for a privilege log indicating what materials the government claims are privileged or protected and under which doctrines so that Defendants can properly evaluate and respond to these abstract objections.

       C.  *Attorney Work Product Doctrine*

Likewise, DOJ cannot simply assert a general blanket claim that all documents responsive to Defendants' requests are protected by the attorney work product doctrine and withhold them from production.  The attorney work product doctrine protects documents "prepared in anticipation of litigation or trial," Fed. R. Civ. Pro. 26(b)(3)(A), but this protection is not absolute.  *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1335 (11th Cir. 2018).  "Work product protection prevents *most* inquiries into an attorney's work files and mental impressions," but "[d]iscovery may be had into factual work product upon a party showing 'substantial need for the materials to prepare its case' and that it 'cannot, without undue hardship, obtain their substantial equivalent by other means.'"  *Id.*  (quoting Fed. R. Civ. P. 26(b)(3)(A) (emphasis added)).  DOJ has not provided a privilege log that would enable Defendants to assess whether any of the documents purportedly protected by the work product doctrine are in fact properly considered work product, and if so, whether they contain fact work product or the more protected opinion work product.  However, an assessment of known documents in this case suggests that there are at least some categories of documents that do not enjoy the protection of the work product doctrine, or if they do, are merely fact work product discoverable in the event of substantial need.

The first such category is Relator's direct communications with the government, especially non-lawyer agents of the government, such as Agent Garrido, which are responsive to Defendants' Request 3.  For example, Relator discussed with Agent Garrido the content of her conversations captured on audio and video recordings.  *See* Section I.  The government, which has the burden to establish that the work product doctrine applies, has not explained how such communications enjoy work product protection, but even if they did, such communications are no more than fact work product.  As a "critical witness[] in this case," Relator's prior statements to the government "are evidence for which the defense has a substantial need and which cannot be obtained by other sources."  *United States ex rel. Minge v. TECT Aero., Inc.*, 2011 U.S. Dist. LEXIS 53516, at *21 (D. Kan. May 18, 2011) (ordering production of "[c]ommunications from the individual Relators to Government agents or attorneys").

The second such category includes documents reflecting the content of communications or interviews with Relator (as called for by Defendants' Requests 2 and 4).  As an initial matter, to the extent these documents were prepared by non-attorney government personnel *not* acting as agents of the criminal prosecutors or civil lawyers involved in the case, the documents are not entitled to work-product protection *at all*.  *United States ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 419, 424 (D.D.C. 2014) (noting that "it is not necessarily the case that when a law enforcement agent conducts a witness interview as part of a criminal investigation, he does so as an agent of a Government attorney.")  Even if the documents rise to the level of work product, they likely constitute fact work product, discoverable upon showing of substantial need.  *See id*.  Documents reflecting factual material, such as "substantially verbatim witness statements" that has not been "sharply focused or weeded" by the lawyers on the case are fact work product.  *See Landis*, 303 F.R.D. at 425; *In re Sealed Case*, 124 F.3d 230, 236 (D.C. Cir. 1997), overruled on other grounds.  As noted, fact work product is discoverable upon showing of substantial need.  Here, Defendants have a substantial need for these materials because Relator is a key witness in this case whose testimony and interpretation of key events will be central to the litigation, and Defendants cannot obtain contemporaneous documentation of her historical statements regarding the same events from any other source.  The court in *Landis* similarly recognized the substantial need for such materials, noting:

> The civil lawyers litigating this *qui tam* action have received a substantial advantage from having access to the fruits of the prior criminal investigation…. [Previous witness statements] can be expected to identify the principal witnesses in the case, both inculpatory and exculpatory; to provide the witnesses' initial, unadorned testimony on the key issues; and to reveal how the witnesses' testimony and recollections may have changed over time.  For those reasons, they are unique sources of both affirmative evidence and impeachment material for which there is no substitute.  Particularly in *qui tam* actions, fairness dictates that both sides have equal access to relevant witness statements developed by law enforcement in prior or parallel criminal investigations.

*Landis*, 303 F.R.D. at 425–26.  For these reasons, DOJ's assertion of attorney work product protection does not permit it to refuse to produce all responsive documents, and at a minimum, a privilege log is necessary to properly assess DOJ's claim of protection.

### D.  *Law Enforcement or Investigatory Files Privilege*

The law enforcement or investigatory files privilege and its *Touhy* regulation counterparts similarly are not appropriate bases to blankly withhold all documents responsive to Defendants' Requests 2–5.  As DOJ acknowledged, this privilege prevents disclosure of "[d]ocuments that would 'disclose law enforcement techniques and procedures' and undermine 'the confidentiality of sources [or the protection of] witnesses and law enforcement personnel.'"  Objections at 5.  Again, while Defendants do not dispute that such a privilege *can* apply, DOJ has provided no specific reasons to believe it applies here.

First, assessing application of this privilege is a deeply fact-bound determination dependent on a 10-factor test, as outlined in *Tuite v. Henry*, 98 F.3d 1411, 1417 (D.C. Cir. 1996):

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have

given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case.

98 F.3d 1411, 1417 (D.C. Cir. 1996); *see also In re Polypropylene Carpet Antitrust Litigation*, 181 F.R.D. 680, 688–89 (N.D. Ga. 1998) (analyzing claim of law enforcement investigative privilege by applying *Tuite* factors).

In this case, each of the *Tuite* factors weighs in favor of disclosure of the requested documents. As the Defendants identified in the initial request, both Relator and the government have referenced Relator's cooperation with the investigation and the existence of various materials provided by Relator in now-public filings, including the government's interview of Relator as part of its investigation in August 2019, *see* Attachment 5 to Defendants' Joint February 2023 *Touhy* Request at 3; Attachment 6 to Defendants' Joint February 2023 *Touhy* Request (noting that "the United States Attorney's Office in Tampa [had] opened a criminal investigation into the alleged misconduct, supported by the United States Department of Health and Human Services ("HHS"), Office of Inspector General, and is currently using a variety of law enforcement tools, including covert information gathering techniques").

Relator's identity is already known, the investigatory techniques have been disclosed, the information sought is from an investigation completed over two years ago, the documents may significantly impact the parties' litigation, and many documents cannot be obtained except from the government.  *See, e.g.*, *SEC v. Chakrapani*, 2010 WL 2605819, at *6 (S.D.N.Y. June 29, 2010) (finding the government's privilege invocation "unpersuasive" because, among other facts, the cooperator's identity was already known); *In re Packaged Ice*, 2011 WL1790189, at *6–7 (ordering in camera review where government had not met its burden to show that disclosure of recordings would reveal the DOJ's investigation strategy).

Furthermore, the privilege is not absolute.  *In re Polypropylene Carpet Antitrust Litigation*, 181 F.R.D. 680, 688–89 (N.D. Ga. 1998) (privilege "can be overridden in appropriate cases by the need for the privileged materials").  When evaluating application of the law enforcement or investigatory files privilege, courts generally employ a "balancing approach" "to evaluate the need for the requested materials against the governmental interest in secrecy."  *In re Packaged Ice Antitrust Litig.*, 2011 WL 1790189, at *7 (E.D. Mich. May 10, 2011).

Recent case law makes clear that the investigation-related documents Defendants have requested are not shielded from production by the investigatory files privilege.  In the ongoing *Poehling* litigation in the Central District of California, the court ordered DOJ to produce voluminous investigation documents and witness interviews related to the investigation of the MAO-defendant *and* unrelated closed investigations, specifically rejecting DOJ's claim that the documents were protected by the law enforcement privilege.  Special Master's Order Re United's Motion to Compel Documents Withheld Pursuant to Law Enforcement Privilege at 9-11, *United States ex rel. Poehling v. United Health Group*, No. CV 16-8697 FMO (SSx) (C.D. Cal.

8



Dec. 19, 2022), ECF No. 550.  The law enforcement privilege should similarly not block access to the investigation-related documents in this matter.

DOJ's *Touhy* regulations similarly fail to provide support for a blanket protection from production in response to Defendants' requests.  First, 28 C.F.R. § 16.26(b)(4), covers situations in which "[d]isclosure would reveal a confidential source or informant, unless the investigative agency and the source or informant have no objection."  Relator's identity has already been revealed in open court, so this concern is not implicated.  *See In re Packaged Ice Antitrust Litig.*, 2011 WL 1790189, at *6 ("Because the cooperating witnesses have waived any objection . . . by voluntarily publicly disclosing their cooperation in a pleading filed with the Court, subsection (b)(4) is not a valid ground for objection.")

Second, 28 C.F.R. § 16.26(b)(5) applies to situations in which "[d]isclosure would reveal investigatory records compiled for law enforcement purposes, **and** would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." (emphasis added).  While the Requests seek investigatory records, there is no indication that disclosure would "interfere with enforcement proceedings" or "disclose investigative techniques" that would be impaired by the fact of disclosure.  The Requests seek documents connected with investigations that took place over three years ago, before the government declined to intervene in September 2020.  Moreover, Relator's cooperation with DOJ's investigation, including submitting to interviews and making recordings, is already a matter of public record, as are Relator's allegations and the general nature of the government's investigation of those allegations.  *See In re Packaged Ice*, 2011 WL 1790189, at *6–7.

       E.  *Deliberative Process Privilege*

DOJ additionally asserted that documents responsive to Requests 2 and 4 are protected by the deliberative process privilege.  Objections at 6–8.  This privilege protects "documents and other materials that would reveal advisory opinions, recommendations, and deliberations comprising part of the process by which governmental decisions and policies are formulated."  *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997).  For the privilege to apply, DOJ must establish that the material at issue is both "predecisional" and "deliberative" in nature.  *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975).  "Deliberative" documents are those that "make[] recommendations or express[] opinions on legal or policy matters."  *See Nadler v. U.S. Dept. of J.*, 955 F.2d 1479, 1490–91 (11th Cir. 1992).  It seems highly improbable that direct communications with Relator or her counsel, such as Relator's direct communications with Agent Garrido regarding the recordings, reflect such recommendations or opinions necessary to qualify the documents as "deliberative" to warrant protection under the deliberative process privilege.

Furthermore, even a legitimate claim of deliberative process privilege is not absolute: if a document can be redacted to resolve the concerns implicated by the privilege, then the court may still order production.  *In re Polypropylene Carpet Antitrust Litigation*, 181 F.R.D. 680, 688–89 (N.D. Ga. 1998) (ordering production because "minor redactions to many of the documents could eliminate th[e] problem").

In any event, agencies cannot assert this privilege in the abstract as "the deliberative process privilege is so dependent on the individual document and the role it plays in the administrative process."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980)*.*



Yet, that is exactly what DOJ has done here, generally claiming the privilege over "certain of these [responsive] materials." Objections at 7. Defendants need sufficient information regarding the documents withheld pursuant to this privilege in order to assess the propriety of the privilege claim.

### F.  *Federal Rule of Civil Procedure 26(b)(1)*

DOJ generally objected to Requests 2 and 4 under Federal Rule of Civil Procedure 26(b)(1) as calling for irrelevant documents, not proportional to the needs of the case, and unduly burdensome (Objections at 7–8), but DOJ's objections ignore the clear importance of Relator as a witness and actor in this matter. The requested materials—all relating to Relator's previous statements—are not only relevant but critically important to understanding and evaluating Relator's allegations against Defendants. Although Defendants can depose Relator now, Defendants do not have access to information regarding how Relator has previously presented her allegations or the evidence, including her interpretation of various statements, documents, and processes that are at the core of her allegations, and whether Relator has made any changes in her representations over time. Many courts have recognized the critical importance of previous statements made by relators and witnesses when finding "substantial need" for party opponents to have access to fact work product regarding historical statements of relators and other witnesses. *See, e.g.*, *Landis*, 303 F.R.D. at 425–26; *United States ex rel. Minge v. TECT Aero., Inc.*, 2011 U.S. Dist. LEXIS 53516, at *21 (D. Kan. May 18, 2011). This importance also attaches to Relator's previous statements in written and oral communications and documents exchanged with the government in this matter. Given this heavy importance, these requests, which call for a limited set of documents, all relating to Relator, cannot be unduly burdensome or disproportional to the needs of the case.

### G.  *Ability to Obtain Documents from Relator*

DOJ generally objects that many responsive documents can be obtained from Relator. Objections at 3–4, 8. At a minimum, this objection only applies to documents responsive to Requests 3 (for communications between Relator and the government) and 5 (for documents provided by Relator to the government). However, DOJ's objection makes two false assumptions: (1) that Defendants will be able to obtain responsive non-privileged documents from Relator, and (2) that Relator has all responsive documents in her possession.

First, Relator has categorically refused to produce to Defendants *any* communications between her and/or her counsel and the government, claiming that each and every such document is privileged or otherwise protected from disclosure. Beyond this withholding, Relator has also refused to individually describe all such communications on a privilege log as required by Federal Rule of Civil Procedure 26(b)(5). While Defendants are continuing to negotiate with Relator on this issue, it appears that Defendants likely will need to litigate this issue before the Court, but given Relator's actions thus far, Defendants have reason to doubt Relator's candor and ability to satisfy her obligations under the Federal Rules.

Second, even if Relator ultimately produces or logs documents responsive to these requests, Relator may not be in possession of all responsive documents. For example, depending on the preservation efforts of Relator and her counsel, it is possible that Relator and/or her counsel no longer have all communications between Relator and/or her counsel and the government to produce and/or log. Similarly, if Relator provided her only copy of a particular document to the government, then the government would now be the only source for such documents.



Defendants cannot know whether there are any such responsive documents without an understanding of the responsive documents in the government's possession.

For these reasons, DOJ and DHHS-OIG must produce non-privileged documents in response to Defendants' requests and provide a log of documents withheld on the basis of privilege or other protection in order to ensure Defendants receive all documents to which they are legally entitled, preserving the integrity of this litigation being conducted on the government's behalf.

\* \* \*

Defendants are available to meet and confer regarding Defendants' outstanding requests and DOJ's and DHHS-OIG's responses thereto.

Sincerely,

*/s/ Benjamin D. Singer*
Benjamin D. Singer
Partner
of O'MELVENY & MYERS LLP

CC (*via Electronic Mail*):

    Arthur Lee Bentley, III, Bradley Arant Boult Cummings LLP, Provider Defendants' Counsel

    Jason Paul Mehta, Foley & Lardner LLP, Provider Defendants' Counsel

    Lauren Valiente, Foley & Lardner LLP, Provider Defendants' Counsel

    Ginger Barry Boyd, Nelson Mullins Riley & Scarborough LLP, Freedom Defendants' Counsel