# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

---

UNITED STATES OF AMERICA
*ex rel.* DR. CLARISSA ZAFIROV,

       Plaintiff/Relator,

v.

PHYSICIAN PARTNERS, LLC;
FLORIDA MEDICAL ASSOCIATES,
LLC, d/b/a VIPCARE; ANION
TECHNOLOGIES, LLC; FREEDOM
HEALTH, INC.; and OPTIMUM
HEALTHCARE, INC.,

       Defendants.

---

Case No. 8:19-cv-01236-KKM-SPF

## FREEDOM DEFENDANTS' OPPOSITION TO RELATOR'S TIME-SENSITIVE MOTION FOR STATUS CONFERENCE

Defendants Freedom Health, Inc., and Optimum Healthcare, Inc. (collectively, "Freedom Defendants") hereby oppose Relator's Time-Sensitive Motion for Status Conference ("Motion," or "Mot.," ECF 255). Relator's request is not an emergency, rather it is based on documents that Relator's counsel has had for months. Relator does not identify any colorable discovery deficiency in her motion, let alone one that would warrant an emergency hearing. Relator's request is nothing more than another attempt to end-run the discovery deadline and drag out this case even further.

**Relator's Request for Emergency Relief Under Local Rule 3.01(e) Is Unwarranted:** Relator seeks emergency relief alleging that there are "numerous" discovery disputes necessitating a time-sensitive status conference. Mot. at 2 n.1. Yet, just days ago, on May 14, Relator filed a joint motion to stay all aspects of the case other than fact discovery. ECF 252. Relator represented that a stay was warranted because the Parties had "agreed to complete fact discovery by the May 29, 2024 deadline, with a limited exception to allow an additional 16 days to complete certain agreed-to depositions." *Id.* at 2. Relator cited no reason that fact discovery could not be completed on that timeline, either to the Court or to Defendants, whom she urged to join in the motion.

The only change in circumstance Relator cites between the filing of the motion to stay on May 14 and Relator's May 17 email notifying Defendants of her intention to seek emergency relief is the production of two documents—one letter from Dr. Mansour to Mr. Kollefrath and one letter in response from Mr. Kollefrath, which were transmitted via email. Dr. Mansour is a former *qui tam* relator who has also brought

claims against the Defendants.  *See Mansour v. Freedom Health, Inc.*, 8:22-CV-00595-WFJ-SPF (M.D. Fla.).  Relator and Dr. Mansour share a common interest agreement in this litigation, and they also share a financial interest in the outcome of this case. Lead counsel for Dr. Mansour in his litigation against the Defendants simultaneously represents Relator in this case. **In other words, Relator's emergency is based on two letters that one set of her lawyers (Adam Rabin and Havan Clark) produced to *themselves* and a second set of Relator's lawyers (the Morgan Verkamp firm) on May 17.**  And Dr. Mansour produced these letters in this litigation because of discovery requests Freedom Defendants served on Dr. Mansour.  What is more, Relator's counsel had the two letters in the first place precisely because Freedom Defendants produced the documents in response to discovery requests in the *Mansour* case on February 23, 2024.[1]  Declaration of Lucile H. Cohen ("Cohen Decl.") at ¶ 9.

Relator argues that "counsel acting for Dr. Mansour is not under an obligation to review records related to one case for possible relation to facts at issue in another case."  Mot. at 3 n.2.  That argument sidesteps the fact that it was Freedom

---

[1] As explained in more detail below, the reason that Freedom Defendants produced the documents in the *Mansour* litigation and not this litigation is that the sole Freedom custodian for those documents, Nancy Gareau (a former employee at the time of this litigation) was an ESI custodian in *Mansour* but not in this matter.  Gareau was logically a custodian in *Mansour* because she was, among things, referenced in the *Mansour* complaint.  As the person formerly responsible for provider relations, she was likely to have unique, responsive documents in *Mansour* (which generally concerned Dr. Mansour's termination as a provider from Provider Defendants' network), but not in *this* litigation (which generally concerns Defendants' risk adjustment activities and Freedom Defendants' diagnosis code submissions to the government).  Relator's counsel knew that Gareau was not an ESI custodian in this matter, but was in *Mansour*.  Relator also clearly believed Gareau had relevant information in this litigation, as evidenced by the fact that Relator has sought her deposition, which is scheduled for May 31.  Despite this knowledge and belief, Relator has never suggested that Gareau be added as a custodian in this case.

Defendants' diligence in producing the emails to Dr. Mansour, and Freedom Defendants' discovery served upon Dr. Mansour in this litigation in June 2023 (and many subsequent follow-ups with Mr. Rabin and Ms. Clark to comply with those discovery requests) that caused the production of the letters in this case before the discovery cutoff, and that the only cause for the delay in that production of those emails was attributable to Dr. Mansour.  More importantly, Mr. Rabin and Ms. Clark have been aware of these letters for months and did not challenge the sufficiency of Freedom Defendants' document collections, searches, or productions in this litigation.[2]  Instead, they signed the joint motion to the Court last week that represented that fact discovery would be completed on time.

**Freedom's Discovery Efforts Have Been Robust, Transparent and Consistent:**  The selection of ESI custodians in this case was the result of extensive diligence and negotiation with Relator.  After more than three months of negotiation and multiple exchanges of drafts, the Parties signed the ESI Protocol in this litigation on March 27, 2023.  As to custodians, the ESI Protocol provided that the Parties would produce initial lists of custodians and "[t]he Parties shall meet and confer if any Party reasonably believes that there are additional custodians likely to have unique, relevant information."  ESI Protocol at 2.  Pursuant to these provisions, Freedom Defendants

---

[2] Relator does not argue that the operative protective order in *Mansour* barred Relator's counsel from using their knowledge of documents produced in the *Mansour* litigation in this litigation.  Nor could she.  *Mansour*'s protective order prohibits the "use" of confidential materials in other proceedings, but notes that for purposes of the agreement, "use" means more than the mere use of one's knowledge that documents exist and instead requires the reliance on or utilization of the content within the documents themselves."  *See Mansour*, 8:22-CV-00595, ECF 97-1 (Protective Order); *see also id.*, ECF 98 (entering Protective Order).

provided Relator with a list of their ESI custodians on May 18, 2023.  In a response email on May 25, 2023, Relator asked Freedom Defendants to add custodians addressing certain topics, none of which implicated Ms. Gareau's role at Freedom. Freedom Defendants agreed to add two MRA auditors as custodians on June 6, 2023. Relator confirmed her understanding of Freedom Defendants' custodians on June 13, 2023.  At no point following that email exchange did Relator suggest other custodians or state a belief that the list was incomplete.  At no point did Relator suggest that Ms. Gareau would be an appropriate custodian, even though Relator's counsel, Mr. Rabin and Ms. Clark, were familiar with Ms. Gareau and her role at Freedom Defendants due to the ongoing *Mansour* litigation, and even though Relator sought Gareau's deposition in this litigation beginning in early April.

**Relator's Failure to Meet and Confer Meaningfully Has Resulted in Needless Motion Practice Burdening the Court and Defendants:**  At 4:28 PM ET on Friday, May 17, 2024, just hours after Dr. Mansour, through the Rabin firm, produced the two letters at issue, Relator's counsel emailed counsel for Defendants requesting a meet-and-confer to discuss an "emergency status conference."  Counsel for Freedom Defendants responded at 8:13 PM ET that they were not available for a meet-and-confer that night because "[Relator] ha[s] newly raised these issues that we need to review" and offered to meet and confer the next business day, Monday, May 20. Instead of conferring with Freedom Defendants on Monday, Relator instead filed her Motion at 9:41 AM ET.  Relator's entire motion rests on the premise that the recent third-party production of two letters insinuates that Freedom has wrongfully withheld

*other* documents that are necessary for the upcoming depositions of Nancy Gareau and Dan Kollefrath.

Had Relator given Freedom even a single business day to investigate Relator's contentions, this whole exercise could have been avoided since ***there are no additional substantive documents in Ms. Gareau's custodial file discussing 5 Star Checklists***.  Despite having no obligation to do so—given Relator's agreement to not include Ms. Gareau as an ESI custodian in this case—Freedom Defendants spent the weekend searching Ms. Gareau's ESI file for additional emails referring to 5 Star Checklists.  Cohen Decl. at ¶ 5–7.[3]  It found nothing new, but rather the same documents it already produced in the Mansour litigation, which were already in Relator's counsel's possession.  Cohen Decl. at ¶ 9.[4]

**Relator Has Not Been Prejudiced by Any of Freedom's Deposition Testimony:**  Relator's Motion also argues that Freedom Defendants have provided sworn testimony which is "directly controverted by the unproduced records."  Mot. at 4.  Relator has deposed two corporate representatives for Freedom Defendants, Radha Rai and Michelle Molina, on over two dozen noticed topics and subtopics.  In response

---

[3] While Freedom Defendants do not believe they were obligated to have their e-discovery counsel perform the searches of the Gareau emails described in the Cohen Declaration, they did so given the seriousness of the allegations made in Relator's Motion.

[4] The letters at issue were attached to two emails produced by Dr. Mansour in this litigation on May 17.  In its search over the weekend, Freedom Defendants found two additional emails that attached the same letters, which Freedom Defendants had also previously produced in the *Mansour* litigation.  Cohen Decl. at ¶ 8.  The additional emails do not contain new substance, and Freedom Defendants do not know why Relator's counsel chose not to produce them in this litigation.  Regardless, Freedom Defendants will re-produced those two additional emails today to Relator's counsel in an abundance of caution.  *Id.*

to Relator's discovery requests and for deposition preparation, Freedom Defendants diligently searched for documents evidencing Freedom's involvement in, or knowledge of, Physician Partners' 5 Star Checklist.  But Relator now claims that that their testimony is "directly controverted" by a single email exchange—to which neither Ms. Rai nor Ms. Molina was a party—between Mr. Kollefrath, a Physician Partners employee, and Dr. Mansour, a former-Physician Partners affiliate provider, in which the 5 Star Checklist was mentioned offhand in the context of a larger dispute over Dr. Mansour's termination from Physician Partners.  Freedom Defendants' role in this communication is even more circumscribed—Ms. Gareau was merely cc'ed on this communication.  The record belies Relator's attempts to characterize this email exchange as "directly controvert[ing]" Ms. Rai's or Ms. Molina's testimony about the extent to which Freedom Defendants had knowledge about the Physician Partners' tool.  The fact that Freedom Defendants' witnesses did not testify that a single former Freedom employee—who was not an ESI custodian—was copied into a single conversation in which the tool was mentioned does not suggest that Freedom Defendants somehow engaged in discovery abuse.  And Relator's case for prejudice is even thinner:  If Relator believes Ms. Gareau has extensive knowledge about the 5 Star Checklists, Relator can, and no doubt will, fully probe Ms. Gareau's knowledge when she deposes her on May 31.

In short, the documents complained of by Relator were produced as a result of Freedom Defendants' discovery efforts, and Freedom Defendants' investigation into whether Ms. Gareau's custodial documents would likely contain additional relevant

documents referencing 5 Star Checklists has turned up nothing new.   Relator represented to the Court in her May 14, 2024 Joint Motion to Stay Discovery just *one week ago* that she agreed to complete fact discovery by May 29, 2024, ECF 252 at 2, and Relator should be held to that representation.   The Court should deny Relator's most recent attempt to extend discovery in this long-pending case.

Respectfully submitted, this 21st day of May, 2024,

*/s/ Scott Drake*
Scott Drake (Lead Counsel)*
O'MELVENY & MYERS LLP
2801 North Harwood Street
Suite 1600
Dallas, TX 75201
(972) 360-1900
(972) 360-1901 (fax)
sdrake@omm.com

Benjamin D. Singer*
Amanda M. Santella*
William Buffaloe*
Kelly McDonnell*
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
(202) 383-5414 (fax)
bsinger@omm.com
asantella@omm.com
wbuffaloe@omm.com
kmcdonnell@omm.com

Catherine Nagle*
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
(212) 326-2000
(212) 326-2061 (fax)
cnagle@omm.com

Ginger Boyd
Fla. Bar No. 294550
NELSON MULLINS RILEY &
SCARBOROUGH LLP
215 South Monroe Street, Suite 400
Tallahassee, FL 32301
(850) 205-3356
(850) 521-1472 (fax)

ginger.boyd@nelsonmullins.com

*Counsel for Defendants Freedom Health, Inc. and Optimum Healthcare, Inc.*

*\* admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2024, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will provide electronic service to all counsel of record.

By: _/s/ Scott Drake_

Scott Drake*

_Counsel for Freedom Defendants_
_* admitted pro hac vice_

-10-