# OPINIONS

OF

## FELIX GRUNDY, OF TENNESSEE:

APPOINTED SEPTEMBER 1, 1838.

---

### PENSIONS FOR WOUNDS RECEIVED IN THE NAVAL SERVICE.

The act of 23d April, 1800, does not authorize pensions for wounds received in the line of duty prior to the passage of the act; nor can the act of 3d March, 1837, be construed to embrace such cases.

ATTORNEY GENERAL'S OFFICE,
*September 3, 1838.*

SIR: You state in your letter of the 31st of August last, that Commodore David Porter claims a pension for wounds received in the line of his duty in the naval service prior to the 23d of April, 1800, (the date of the law which established the navy pension fund;) and my opinion is requested whether your department has authority to grant pensions for deaths or disabilities which occurred before the pension fund was established.

My opinion is, that no such authority exists. Upon an examination of the act of 23d April, 1800, no expression is found indicating an intention on the part of Congress that the fund then provided should be subject to cases which had occurred before that time. The second section of the act the 3d of March, 1837, it is believed, cannot be so construed as to embrace a class of persons not included in former laws. The only object of that section is to make the pensions more ample in behalf of those entitled under pre-existing laws.

Yours, very respectfully,

FELIX GRUNDY.

To the SECRETARY OF THE NAVY.

---

### DUTIES ON MILLINERY, HOSIERY, AND READY-MADE CLOTHING.

The act of 2d March, 1833, to modify the act of July 14, 1832, and other acts admitting silks, did not repeal the act of 14th July, 1832, and former acts, which impose duties on millinery, hosiery, and ready-made clothing; and those articles, of whatever material composed, are subject to duties.

The operation of the revenue laws cannot be legally suspended by the Comptroller, even though goods may have been ordered in view of an erroneous practice, and the importers wish to countermand their orders from abroad.

ATTORNEY GENERAL'S OFFICE,
*September 8, 1838.*

SIR: I have examined the two questions submitted for my opinion in your letter of the 4th instant. The first is, "Has the act of the 2d of

## COMPENSATION OF DISTRICT ATTORNEY OF PENNSYLVANIA.

Where the district attorney of Pennsylvania had, by the direction of the Postmaster General, instituted several suits against toll-gate keepers and others, to enforce the penalties prescribed by the 9th section of the act of 3d March, 1825, for sundry interruptions of the transit of the United States mails, by exacting tolls upon passengers conveyed in the mail coaches, and a *nolle prosequi* was subsequently entered by direction of a subsequent Postmaster General in every case—DECIDED, that the said district attorney is fairly entitled to compensation from the United States for the services rendered.

The judgments in the matter, however, are not binding upon the treasury.

ATTORNEY GENERAL'S OFFICE,
*November* 13, 1849.

SIR: The claim of Mr. Cornelius Darragh, which you have submitted to this office, presents two questions: 1st. Is it to be considered as established by decision of the court in the case of the United States against him, in the circuit court of the United States for the western district of Pennsylvania? and, 2d. Whether, independent of that decision, and upon the facts otherwise appearing, it is established? First, the judgment of the courts. If there ever could have been a doubt on this question, none exists now. The settled question is, that such a verdict or judgment, as evidence of a claim against the United States, is a mere nullity. It neither warrants its payment by the treasury, nor can be used as a set-off, either at law or in equity, against any demand the United States may have against the claimant. In the case of the United States *vs.* James Johnson, an opinion to this effect was given by Mr. Wirt, in January, 1823, and a like opinion by Mr. Legaré, on the 2d April, 1842, in the case of Pearson Cogswell, marshal of New Hampshire. The verdict in such a case extinguishes the particular demand for which the United States sues; but in its excess, and as evidence of a debt due the defendant by the United States, it has no operation whatever. Mr. Darragh's claim, therefore, must rest upon evidence *aliunde*—the judgment to be allowed.

Is there, then, secondly, such evidence? I think there is. The facts appearing by the papers before me are these: The Post Office Department had made a contract with Lucius Stockton to carry the mail over that part of the national road running through Pennsylvania, and that State imposed a toll tax upon passengers travelling in the mail stage. The authority of this tax the then Postmaster General (Wickliffe) denied. Writing in reference to it, he, in his letter to Harwood Kennedy, the agent of the department, dated the 17th April, 1843, in reply to a letter from Kennedy, of the 15th, says: "My own opinion has been often and decidedly expressed, that the whole vehicle and its contents, which conveys the United States mail, is exempt from taxation or the payment of tolls. In this I may be mistaken. If I understand your letter, the agent of the State now claims toll for passengers in the stage which conveys the mail; they do not claim the right to tax the vehicle or horses. Is this not whipping the devil round the stump? to use an old but not unmeaning adage. Does the State exact the same tax upon all persons who travel upon the road in other carriages, public or private? I have no particular directions to give. If the authorities of the State of Pennsylvania choose to stop the mail, they must do so; and when it is done, the question will be fairly met by a presentment against those who hinder or obstruct its lawful transit. I can enter into no obligation, express or implied, conditional or otherwise, to pay the tolls upon passengers in the mail stage."

Under the authority of this letter, Kennedy afterwards instructed Darragh, then the district attorney of the United States, to institute suits, and he did institute one hundred and seventy separate actions to enforce the penalty prescribed by the 9th section of the act of Congress of 3d March, 1825, (4 *Stat. at Large*, 104,) against toll-keepers and others on the road, who, as the agents of Pennsylvania, and for the purpose of enforcing the payment of tolls under her act, had interrupted the passing of the mail stages over the road.

On the 16th of September, 1844, the then district attorney, Mr. W. H. H. Robinson, wrote to the Auditor of the department as follows: "I beg leave to call the attention of the Post Office Department to over one hundred and sixty-nine *qui tam* actions, instituted at the last October term, at the instance of the late Mr. Stockton, of Uniontown, to recover penalties for stopping the mail by toll-collectors on the national road. I have understood that these suits were authorized by the Post Office Department. If so, and there is any determination to press them, it would be of importance that I should know, since the attorneys for the defence may press the court for a judgment of abatement on account of the death of Stockton, at the next court." On this letter the Postmaster General made this endorsement: "Dr. Kennedy will take this letter, and try and make some arrangement by which these suits can be disposed of without costs to the United States. If this cannot be done, they must be prosecuted."

No such arrangement having been made as to costs, the district attorney afterwards, on the 10th March, 1845, obtained a rule for the trial of the cases at the following May term, evidently acting under the contingent direction of Mr. Wickliffe, that they were in that event to be prosecuted. But before the trial could be had, Mr. Cave Johnson, the then Postmaster General, directed the district attorney to enter a *nolle prosequi* in each case, and it was done in these words: "The United States disclaims having authorized the institution of this suit, and refuses to prosecute it." Upon these facts, I am clear in the opinion that Mr. Darragh is entitled to the fees he claims over and beyond the amount already allowed him as a set-off in the case of the United States against him, in which the judgment referred to was found.

The acts of Kennedy, the admitted agent of the department, in relation to the suits, were not only fully authorized by the letter of the Postmaster General of the 17th April, 1843, but were in substance imperatively ordered. There was no discretion given him. The point in dispute between the department and Pennsylvania was "to be fairly met by a prosecution against those who hinder or obstruct its (the mail's) lawful transit;" and this could only be done by such proceedings as Kennedy resorted to—suits to recover the penalties imposed by the act of 3d March, 1825. But if there could be a doubt as to this, it was removed by the endorsement of the Postmaster General on Robinson's letter of the 16th September, 1844, after the suits had been institued and were pending. The letter virtually inquired whether suits had been authorized by the department; and if so, asked for instructions. The endorsement referred the matter to Kennedy, still the agent of the department, with instructions to try and make some arrangement by which these suits could be "disposed of without costs to the United States;" and added, that "if this cannot be done, they must be prosecuted."

Here was a full recognition of what had been before done. The suits were considered as having been authorized by the department, and unless an arrangement as to costs could be made, they were directed by the department to be prosecuted.

It was now, if not from the first, too late for the department to deny its authority to bring the suits. The attorney had acted upon the faith of such authority; and was not only justified in so doing, but was bound to do so. His acts were afterwards adopted by the department, and it was not in the power of the department then to repudiate what it had done under its sanction, or to defeat the attorney of the compensation due him for what was done.

My opinion, therefore, is, that Mr. Darragh's claim is a fair and legal one, and binding upon the United States.

I have the honor to be, very respectfully, sir, your obedient servant,

REVERDY JOHNSON.

Hon. JACOB COLLAMER,
    *Postmaster General*.

---

### THE CLAIM OF CHARLES F. SIBBALD.

The award of the 3d of June, 1847, for an amount in addition to the sum formerly allowed upon the claim of Charles F. Sibbald, must be regarded as a full and final execution of the act of 1842 and the resolution of 1846; and if it were not, the claimant is concluded by his receipt of the award.

The claim having been thus disposed of, it is not competent for the present Secretary to re-examine it, to correct errors, nor to receive other evidence in relation to it.

The whole matter is *res judicata* and terminated, and can never be reviewed, except under some future act or resolution of Congress.

ATTORNEY GENERAL'S OFFICE,
*November* 14, 1849.

SIR: The additional questions, which, at the instance of the claimant, you have submitted to this office, in the case of Charles F. Sibbald, for my opinion, I have considered. They are: First, admitting the act of the 3d of August, 1842, (5 *Stat.*, 864,) and the joint resolution of the 10th August, 1846, to have been executed, has the present Secretary of the Treasury the right, and is it not his duty, to review the action of his predecessor, so far as to ascertain whether there be not in it errors of facts which ought to be rectified? And second, whether there be not new evidence exhibited, which would materially change the result?

In the opinion I had the honor to give upon your former reference of this case to me, I advised you, first, that the award of Mr. Secretary Walker of the 3d June, 1847, allowing the claimant $26,029 70 in addition to the sum formerly allowed him by Mr. Attorney General Nelson, under the act of 1842, of $27,132 06, was of itself a full and final execution of that act and of the resolution of the 10th August, 1846; and secondly, that if it was not of itself such an execution, the receipt by the claimant, or his attorney, of the amount awarded, estopped the claimant from questioning its conclusiveness. I have again examined the former questions, as well as those now before me, and am strengthened in my former conclusions. For the reasons upon which they rest, without adding others, which could readily be done, I refer to that opinion.