Reported for the Commercial Advertiser.

[UNITED STATES DISTRICT COURT.]

Edmund M. Blunt, qui tam, &c. vs. Richard Patten. } Present—Justices Thompson and Betts.

This action was brought for a breach of copyright. It appeared, in evidence, that the plaintiff, in 1821, caused a survey to be made of the South Shoal of Nantucket, and that it was then ascertained, that the said Shoal had been laid down in all the charts previously in use, twenty miles too far to the southward; it being in latitude 41 deg. 4 min., instead of 40 deg. 44 min., as in the old charts.

It was also proved, that the same year, the plaintiff projected a survey of George's Shoal, and sent a vessel, with competent surveyors for that purpose, to Boston to join a vessel which Capt. Hull, the commander on that station, permitted to assist in said survey: That the said survey was made chiefly at the expense of the plaintiff, and that it was expressly understood by Capt. Hull, that it was for the private benefit of the plaintiff. The results of the survey were placed on a chart, drawn by Mr. Edmund Blunt, and copies of the same were given to an officer of the United States, to be transmitted to the Navy Department, for the use of the Government, and to preserve the information among the public archives.

The plaintiff published these surveys on his chart, of the North Eastern Coast of the United States, in October, 1821, and the copy-right was duly secured.

In May, 1827, the defendant published his chart of the North Eastern Coast, with these Shoals substantially copied in form, position, and bearings, from the chart of the plaintiff. The plaintiff then rested, and the defendant, in his defence shewed that he had obtained a copy of the chart lodged in the Navy Department by permission of one of the Navy Commissioners, and that by being placed there it became a public document which he had a right to copy. He also attempted to shew that he had obtained the true position of the south shoal of Nantucket from a survey taken by a British officer in 1805. It did not appear however that, that survey had ever been published, or that any person except the witness produced by the defendant had ever heard of it. He produced the draftsman and the engraver of his chart, but on cross-examination, it appeared that the former was directed to ox . in the draft of Nantucket Shoal, and that the engraver copied it from a separate paper furnished by the defendant, and drawn by some person unknown.

The defendant also proved that the soundings near Nantucket Shoal on his chart were different from those on the plaintiff's, being taken from Desbarre's survey published in 1776. The defendant's counsel then contended that there could be no copyright in the location of a Shoal, that it was a thing which by nature could only be placed in one position, and that it was obviously here taken from other authorities than from the plaintiff's chart. He also contended that the chart in the Navy Department was a public document, and open to all the world, and that the plaintiff had no right to make a monopoly of either that or of the true position of Nantucket Shoal.

Many respectable shipmasters were produced, who testified that they always regarded the discovery of the error in the position of Nantucket Shoal, as having been made entirely by the plaintiff, whom the mariners of the U. States, had been indebted to for most of the information now obtained concerning their own coast, and had been in the habit of relying upon as the publisher of the charts; and nautical works now in general use. They also testified that the surveys of Nantucket and George's Shoals were highly important, and that they appeared to be substantially copied on the defendant's chart from the plaintiff's.

After the testimony had been commented upon by the counsel for the parties, Judge Thompson charged the jury that the privilege of an author to the exclusive sale of his works for a limited term of years, although a monopoly, was not so in the odious meaning of the term. It was but a proper reward for his labor provided by law, and to which he was as much entitled, as to the exclusive enjoyment of any other kind of property. That the plaintiffs could not, it was true, obtain a copy right in the Shoal itself, nor in the original elements of his charts; but that he had an exclusive right to the results of his labors and surveys. The defendant might resort to the original materials of the chart and survey for himself, but he could not avail himself either in whole or in part of the surveys of plaintiff. The law was intended to secure to authors the benefits of their skill, labor and genius, for a limited time, and if in this instance the defendant had availed himself of the surveys of plaintiff in compilling his chart, the plaintiff was entitled to a verdict. In the case of Nantucket Shoal, the defendant produced a witness who stated that he had communicated to the defendant its true position, and it was a question for the jury to decide whether the defendant had copied it from the plaintiff's survey or not,—As to Georges Shoal, no doubt existed that it was copied from his survey, deposited in the Navy department, and the pretence that it became a public document from being deposited there, was entirely untenable. The survey was made chiefly at the Plaintiff's expense, and according to the understanding, it was to be for his benefit. It was of great use to the navigating community, and Capt. Hull was justified in aiding him in it, upon such terms.

The jury retired, and in less than five minutes, brought in a verdict for the Plaintiff.

Counsel for Plaintiff, D. B. Ogden and J. Blunt —for Defendant, J. Anthon.