UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,
*ex rel.* DR. CLARISSA ZAFIROV,

    Plaintiffs,

    v.   Case No.: 8:19-cv-01236-KMM-SPF

FLORIDA MEDICAL ASSOCIATES, LLC, *et al.*,

    Defendants.
_____/

# NON-PARTY[1] UNITED STATES OF AMERICA'S OPPOSITION TO DEFENDANTS FREEDOM HEALTH, INC. AND OPTIMUM HEALTHCARE, INC.'S MOTION TO COMPEL THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, OFFICE OF INSPECTOR GENERAL TO COMPLY WITH SUBPOENA

---

[1] The United States intervened pursuant to 28 U.S. Code § 2403 (Doc. 259), however, such intervention is solely for the purposes of defending the constitutionality of the False Claims Act's *qui tam* provisions and does not make it a party for discovery not related to defending the constitutionality of the False Claims Act.

The United States, on behalf of its agency, the Department of Health and Human Services ("HHS") files its response in opposition to Defendants Freedom Health, Inc. and Optimum Healthcare, Inc.'s ("Freedom Defendants") motion to compel the deposition testimony of an employee of the United States Department of Health and Human Services, Office of Inspector General ("HHS-OIG").  (Doc. 253) ("Motion to Compel").

The Freedom Defendants seek testimony from HHS-OIG Special Agent Raquel Garrido ("Agent Garrido") regarding communications from and to Relator Clarissa Zafirov ("Relator").  The administrative record establishes that at the time HHS-OIG issued its denial letter[2], the Freedom Defendants had yet to even notice the deposition of the Relator.  Rather than deposing Relator—a party to this action—to ask her about her own communications, the Freedom Defendants first sought to depose Agent Garrido—not a party to this action—to learn about the Relator's communications.  Notably, the Freedom Defendants did notice Relator's deposition after HSS-OIG's denial and at the close of the discovery period.

The Eleventh Circuit case of *Westchester Gen. Hosp., Inc. v. Dep't of Health & Human Servs.*, 443 Fed. Appx. 407 (11th Cir. 2011) (per curiam) is instructive.  This precedent—which the Motion to Compel ignores—affirmed the lower court's finding that HHS's denial of a deficient request for testimony is not arbitrary and capricious

---

[2] "[I]n reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019).

2

when the agency determines that: (1) the requested testimony can be obtained through other means; and (2) the requesting party failed to establish how the testimony would promote the objectives of HHS. *See also Westchester Gen. Hosp., Inc. v. Dep't of Health & Human Servs.*, 770 F.Supp.2d 1286, 1298-99 (S.D. Fla. 2011)  This is exactly the situation here.

In accordance with this precedent, and in light of the exceedingly deferential Administrative Procedures Act ("APA") standard of review, the Motion to Compel should be denied because the Freedom Defendants fail to demonstrate that HHS-OIG's denial of the deposition testimony was arbitrary and capricious. The record establishes that HHS-OIG considered the relevant factors and arrived at a rational conclusion that the information was available from another source (the Relator) and that the requested testimony would not "promote the objectives of the Department." 45 C.F.R. § 2.1.

## RELEVANT BACKGROUND

The Defendants have served the United States with numerous *Touhy*[3] requests during the pendency of this litigation, including requests made to the Department of Justice ("DOJ"); the Centers for Medicare and Medicaid Services ("CMS"); and HHS-OIG. On February 10, 2023, the Defendants served DOJ and HHS-OIG

---

[3] A *Touhy* request seeks any official information for litigation purposes, including witnesses and documents, when the Government is not a party to the litigation. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951).

*Touhy* requests seeking six categories of materials, including "[a]ll audio and/or visual recordings made using the Relator." *See* Declaration of Candace Ashford at ¶ 2, filed contemporaneously ("Ashford Decl"). The United States produced all responsive recordings in its possession but objected to the remaining requests. *Id*. at ¶ 3.

It was not until January 18, 2024, nearly a year later, that the Defendants served HHS-OIG with a *Touhy* request and subpoena seeking testimony of Agent Garrido. *Id*. at ¶ 4. In the request, the Defendants acknowledged that the "Department of Justice and HHS-OIG previously agreed to produce and produced recordings made by Relator as part of the government's investigation of Relator's allegations" and that they were now seeking "testimony from Garrido regarding her communications with Relator regarding Relator's allegations against Defendants and the audio and video recordings made by Relator, including with respect to Garrido's communications with Relator on how to make the recordings or what should be recorded and Relator's statements about what was captured on the recordings." *Id*. HHS-OIG reviewed the request, conducted a phone conference with the Defendants regarding the requests, and ultimately determined that the *Touhy* request was deficient. *Id*. at ¶¶ 5-8.

On April 1, 2024, HHS-OIG issued a letter denying the request. *Id*. at ¶ 7. In its denial letter, it cited to the applicable *Touhy* regulations and noted that they "prohibit any Department employee from providing testimony concerning

4

information acquired in the course of performing official duties, unless the Agency head, after consultation with the Office of the General Counsel, determines 'that compliance with the request would promote the objectives of the Department.'" *citing* 45 C.F.R. § 2.3. *Id*. at ¶ 9.   The letter further stated:

> We do not believe that compliance with your deposition request would be in the best interest of the Department, and you have provided no convincing evidence to the contrary. The deposition request would be a significant burden on OIG and would disrupt the official functions of the agency because of the time and effort necessary to prepare for a deposition concerning events that occurred nearly 5 years ago. Given the witness's lack of recollection of these old events, SA Garrido would have to substantially reduce her official duties to spend a significant amount of time preparing for the deposition. Further, we disagree with your assessment that the requested testimony is unavailable by any other means. Therefore, we have concluded authorizing SA Garrido's testimony would substantially disrupt her official duties and thus her deposition neither promotes the objectives nor is in the interest of the Department or OIG.

*Id*. at ¶ 10.

## ARGUMENT

The Motion to Compel should be denied for two reasons.  First, HHS-OIG's decision to deny the deposition testimony of Agent Garrido was neither arbitrary nor capricious but was based on application of the *Touhy* regulations to the Freedom Defendants' request.  Second, under the Rules 26 and 45 analyses, the request is not proportionate to the needs of the case because the information sought can be obtained from the Relator.

5

### I. HHS-OIG's Denial of the Freedom Defendants' Request for Deposition Testimony Was Not Arbitrary and Capricious.

The federal "housekeeping statute," 5 U.S.C.S. § 301, allows executive agencies to promulgate regulations concerning testimony by agency employees. Regulations promulgated pursuant to that statute are referred to as an agency's "Touhy" regulations. HHS' *Touhy* regulations are found at 45 C.F.R. Part 2. They control when and if HHS will authorize the testimony of one its employees acting in their official capacity.

Pursuant to 45 C.F.R. § 2.1, the availability of HHS employees, including Agent Garrido, to "testify in litigation not involving federal parties is governed by the Department's policy to maintain strict impartiality with respect to private litigants and to minimize the disruption of official duties."

HHS's *Touhy* regulations also require that:

> No Department of Health and Human Services employee may provide testimony or produce documents in any proceedings to which this part applies concerning information acquired in the course of performing official duties or because of the employee's official relationship with the Department of Health and Human Services unless authorized by the agency head pursuant to this part based on a determination by the agency head, after consultation with the Office of the General Counsel, that **compliance with the request would promote the objectives of the Department of Health and Human Services**.

45 C.F.R. § 2.3 (emphasis added).

In addition to the above, HHS's *Touhy* regulations require that all requests for testimony must state "why the information sought is unavailable by any other

6

means, and the reasons why the testimony would be in the interest of the DHHS or the federal government." 45 C.F.R. § 2.4.

In accordance with 5 U.S.C. § 706(2)(A), the Court can only overturn HHS's denial if such action was "arbitrary, capricious, an abuse of discretion, or otherwise not contrary to law." *See also Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991) (finding that HHS did not abuse its discretion in refusing to allow deposition of its employee). "[A]n agency's 'choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources.'" *Puerto Rico v. United States*, 490 F.3d 50, 61 (1st Cir. 2007) (quoting *COMSAT Corp. v. National Science Foundation*, 190 F.3d 269, 278 (4th Cir. 1999). The agency may deny the request if it properly considers the *Touhy* factors and concludes that the request fails to meet those factors. *See, e.g., COMSAT Corp.*, 190 F.3d at 277-78; *Davis Enters. v. United States Envtl. Protection Agency*, 877 F.2d 1181, 1186 (3d Cir.1989); *Liberty Nat'l Life Ins. v. Soc. Sec. Admin.*, 216 F.R.D. 681, 688 (S.D. Ala. Aug. 12, 2003).

This "exceedingly deferential" standard examines "'whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgement.'" *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996) (quoting *N. Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533, 1538 (11th Cir. 1990)).

"To determine whether an agency decision was arbitrary and capricious, the reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment." *Fund for Animals*, 85F.3d at 541 (internal quotations and citations omitted). "The court's role is to ensure that the agency came to a rational conclusion, 'not to conduct its own investigation and substitute its own judgment for the administrative agency's decision.'" *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1360 (11th Cir. 2008) (quoting *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996)).

As such, this Court's review is limited to the administrative record as it existed at the time of HHS-OIG's April 1, 2024 denial letter. *See, e.g., Preserve Endangered Areas of Cobb's History, Inc.*, 87 F.3d at 1246 ("The focal point for judicial review of an administrative agency's action should be the administrative record."); *Edwards v. U.S. Dep't of Justice*, 43 F.3d 312, 316 (7th Cir. 1994) ("In applying this standard, we focus on "the administrative record already in existence, not some new record made initially in the reviewing court.'") (quoting *Camp v. Pitts*, 411 U.S. 138, 142, 93 S. Ct. 1241, 36 L.Ed. 2d 106 (1973)). "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44, 105 S. Ct. 1598, 84 L.Ed. 2d 643 (1985).

As shown below, HHS-OIG's denial is appropriate in light of the Freedom Defendants' deficient *Touhy* request. Counsel for HHS-OIG reviewed the request, applied the agency's controlling regulations, determined the request should be denied, and provided a response letter explaining the reasoning.

**A. Eleventh Circuit precedent supports affirming HHS-OIG's denial.**

Notably, the Motion to Compel fails to cite to *Westchester Gen. Hosp., Inc. v. Dep't of Health & Human Servs.*, 443 Fed. Appx. 407 (11th Cir. 2011) (per curiam), a case that closely resembles the instant matter. In *Westchester*, HHS denied a hospital's request to depose, in a state court action, a Department employee regarding her role in an audit. In accordance with its own *Touhy* regulations, HHS stated that it "disagree[d] that the information sought is unavailable by any other means" because the parties themselves would be best able to testify regarding these communications. *Id.* at 410.

In affirming HHS's decision, the Eleventh Circuit held that its denial "demonstrate[s] it considered the relevant factors, as presented in [the plaintiff]'s letter, and arrived at a rational conclusion that the information was available from other sources." *Id.* at 410. Crucially, the court stated that while the plaintiff "might prefer to depose [the employee], DHHS's regulations make no exceptions for party preferences. **The regulations inquire only whether the information is otherwise unavailable**." *Id.* at 411 (emphasis added).

9

The trial court in *Westchester* also noted that, among the *Touhy* request's deficiencies, it "identified no specific reason why it was in the Department's interest to grant the request" but merely stated that "the testimony is in the interest of DHHS and the Federal Government because it involves the proper administration of the Medicare program." *Westchester Gen. Hosp., Inc. v. Dep't of Health & Human Servs.*, 770 F.Supp.2d 1286, 1298-99 (S.D. Fla. 2011). As shown below, the *Westchester* case is remarkably similar to the instant matter and the Court should adopt its reasoning.

**B. The Freedom Defendants' request fails to show how the requested information can not be obtained from the Relator.**

HHS's *Touhy* regulations state all requests for testimony must demonstrate "why the information sought is unavailable by any other means, and the reasons why the testimony would be in the interest of the DHHS or the federal government." 45 C.F.R. § 2.4. In their attempt to comply with this requirement, the Freedom Defendants offered the following explanation as to why the information sought is not available by any other means:

> Obtaining Garrido's testimony is the only way Defendants can obtain an unbiased account of Relator's initial descriptions of her allegations against Defendants and the conversations she recorded. Although Defendants can depose Relator and ask her about the same communications with Garrido, Relator has a vested interest in recounting those conversations in alignment with her allegations in the First Amended Complaint. Defendants have concerns about Relator's credibility based on a comparison of the recordings Relator made as part of the government investigation and her allegations regarding those same conversations in the First Amended Complaint. These discrepancies demonstrate the need

10

>for a separate accounting of the key conversations between Relator
>and Garrido regarding those recordings.

This explanation is insufficient on its face. Notably, the Freedom Defendants do not assert that the information they seek—communications with the Relator—cannot be obtained from the Relator. Rather, they assert that they *prefer* to ask Agent Garrido about the Relator's communications, because the Relator is biased and "has a vested interest[.]" But *all parties to a litigation are biased and have a vested interest*, and following the Freedom Defendants' flawed reasoning, litigants could simply burden non-parties with deposition testimony to avoid obtaining the desired information from one of the parties.

Just as in *Westchester*, the information the Freedom Defendants seek is otherwise available from the Relator. That they may prefer to seek this information from someone who is not an adverse party is not relevant to the Court's analysis. "While [Freedom Defendants] might prefer to depose [Agent Garrido], DHHS's regulations make no exceptions for party preferences." *Westchester* at 410; see also 45 C.F.R. § 2.1 ("The availability of Department employees to testify in litigation not involving federal parties is governed by the Department's policy to maintain strict impartiality with respect to private litigants and to minimize the disruption of official duties.").

More importantly, the Freedom Defendants' letter elides this critical fact: the best evidence of what happened and what was said in the meetings that Relator

recorded are the recordings themselves, which the United States already produced in response to the Defendants' February 2023 *Touhy* request. Whatever the Relator said to Agent Garrido about those meetings is extraneous to the captured communications of the actual parties named in this action. The Freedom Defendants' desire to obtain information from a non-adversarial witness does not relieve them of their obligations to comply with HHS' *Touhy* requirements. *See Town of Sw. Ranches v. U.S. Dep't of Homeland Sec., Immigration & Customs Enf't*, 2016 WL 4264049, at *9 (S.D. Fla. Aug. 12, 2016) (applying *Westchester* in affirming agency decision to deny *Touhy* request when information was otherwise available).

### C. The Freedom Defendants' request fails to show how the testimony will promote the objectives of HHS.

The Freedom Defendants also fail the second prong of the *Touhy* analysis. Pursuant to HHS' valid *Touhy* regulations, the agency will not authorize employee testimony unless the requesting party demonstrates how the proposed testimony will promote the objectives of HHS. 45 C.F.R. § 2.3. The Freedom Defendants failed to satisfy this requirement.

In their *Touhy* letter requesting Agent Garrido's testimony, the Freedom Defendants stated:

> DHHS and the federal government have an interest in ensuring that litigation pertaining to the administration of the MA (Part C) program reaches a fair, just, and correct result. Defendants have plainly and specifically described the narrow subject matter of the requested testimony, and the requested testimony will help the Court and jury understand key issues in this case. The audio and

12

video recordings Relator made and discussed with Garrido will be central evidence in the case. Twenty-two paragraphs in Relator's Amended Complaint relate to conversations captured on the recordings, and Relator specifically cited these conversations as support for her allegations that the Provider Defendants caused the submission of false claims in her Opposition to Provider Defendants' Motion to Dismiss, see Attachment 6. The requested testimony is critically important evidence to understand and evaluate the recordings that Relator generated and clearly intends to rely on in litigation. The testimony could reveal important information about which conversations were recorded—and which were not, as well as how Relator initially understood or described the conversations she recorded, which will be important in evaluating her current testimony and allegations regarding these same conversations.

This vague and conclusory explanation is insufficient under the applicable *Touhy* regulation. The request offers no information as to how or why the requested testimony ensures that the "administration of the MA (Part C) program reaches a fair, just, and correct result." It merely pleads why Agent Garrido's testimony would help their litigation strategy of discrediting the Relator. Specifically, the request states the testimony "is critically important evidence to understand and evaluate the recordings that Relator generated" and "could reveal important information about which conversations were recorded—and which were not, as well as how Relator initially understood or described the conversations she recorded, which will be important in evaluating her current testimony and allegations regarding these same conversations."

None of these reasons explain how Agent Garrido's testimony will promote HHS objectives. The Freedom Defendants provided no specific reason why HHS

has an interest in allowing the testimony or how the deposition will promote HHS's objectives. Under the APA's extremely deferential standard, the Court cannot find HHS's decision to deny to be arbitrary and capricious, or contrary to law, when the Freedom Defendants' request fails to identify how it would promote the objectives of the Department, a prerequisite to disclosure. The Freedom Defendants merely offer the vague and conclusory statement that "DHHS and the federal government have an interest in ensuring that litigation pertaining to the administration of the MA (Part C) program reaches a fair, just, and correct result."

> As the lower court in *Westchester* observed:
>
> The same could be said about a request for testimony implicating **any** government program run by **any** agency. By arguing that this un-detailed, conclusory statement so satisfies 45 C.F.R. § 2.4(a) that the Department could not reasonably conclude allowing its employee to testify is not in the Department's interest, [Westchester] is in effect making the following argument: where the regulations says "in the interest of the DHHS," it actually means "related in any possible way to the DHHS." That is simply not what the regulation says.

*Westchester Gen. Hosp., Inc. v. Dep't of Health & Human Servs.*, 770 F.Supp.2d 1286, 1298-99 (S.D. Fla. 2011) (emphasis in original).

Moreover, the Freedom Defendants offers no information as to how or why the requested testimony involves a "fair, just and correct" administration of the Medicare Advantage Program. Their argument that they need the testimony to understand and evaluate the recordings, again, is an argument why they need the testimony to build their case but says nothing as to how this testimony would

14

promote a correct administration of the Medicare Advantage Program. Defendants appear to be making a case to discredit Relator's allegations by discrediting Relator's truthfulness. Although that may be an appropriate litigation strategy they may choose to take in this case, that does not implicate the proper administration of the Medicare Advantage Program. Once again, the *Westchester* court made this point succinctly: the requesting party "provided no specific reason why the Department had an interest in allowing this testimony and the Department had no obligation to think of one[.]" *Id.* at 1299.

HHS considered the Freedom Defendants' request for testimony pursuant to its controlling *Touhy* regulations. The Freedom Defendants' letter on its face did not meet its burden under HHS's valid *Touhy* regulations. It failed to demonstrate how the deposition would promote HHS' objectives and did not explain why the Freedom Defendants could not obtain the information from the Relator.

After determining that the request failed to satisfy its *Touhy* requirements, HHS denied the request. This decision should be affirmed. HHS followed its own controlling *Touhy* regulations in this case–even referencing the language from the *Touhy* regulations in the denial letter. HHS's decision included a determination that the request for information was not in accord with HHS's policies or otherwise in the agency's interest, and this determination is supported by the record.

This is all that is required under the APA. APA review does not require a reviewing court to conduct a *de novo* determination regarding the burden the request

15

would place on the agency nor does it require the reviewing court to balance the agency's burden against the requesting party's need. As such, HHS-OIG correctly determined the request fails to satisfy the applicable *Touhy* regulations. The Freedom Defendants' arguments to the contrary are unavailing and its Motion to Compel should be denied.

## II. The Request is not Proportionate to the Needs of the Case Because the Information can be Obtained from the Relator.

Federal Rule of Civil Procedure 45 governs the issuance of subpoenas in federal civil actions. In pertinent part, a party may issue subpoenas to nonparties to attend a deposition. Fed. R. Civ. P. 45(a)(1)(B). The breadth and limits of discovery set forth in Rule 26 are applicable to nonparty discovery under Rule 45.

As such, courts must limit discovery when: "(i) the discovery sought is unreasonably cumulative or duplicative, or **can be obtained from some other source that is more convenient**, less burdensome, or less expensive; (ii) **the party seeking discovery has had ample opportunity to obtain the information by discovery in the action**; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). (emphasis added).

As of the date of this filing, the Freedom Defendants have not yet deposed the Relator[4]. Rather than asking the Relator—a Party to this action—what she told

---

[4] Defendants originally set the deposition of Relator for May 28, 2024. It is now scheduled for May 30, 2024, which is after the discovery cutoff in this action. *See* Ashford Decl. at ¶ 12.

Agent Garrido, the Freedom Defendants want to depose Agent Garrido to learn what the Relator told her and essentially argue that Agent Garrido's testimony is potentially relevant to the Relator's credibility and can provide context to the interactions captured on the recordings.

This is an improper use of non-party discovery. If the Freedom Defendants want to learn what the Relator communicated, they should ask the Relator, not Agent Garrido. For reasons unknown to the United States, the Freedom Defendants chose not to seek this information from the Relator. Requiring Special Agent Garrido to testify at deposition would be disproportionate to the needs of the case because what the Relator may (or may not) have communicated to her does not have any bearing on, or relevance to, the allegations or claims in this action.

## CONCLUSION

Under the APA, this court may overturn HHS's decision not to make Agent Garrido available for deposition only if that decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The administrative record reflects that HHS considered the Freedom Defendants' request and reached a conclusion that is not arbitrary and capricious. The agency appropriately considered the relevant factors as set forth in its *Touhy* regulations and its letter denying the request expressly enumerated the reasons why allowing Agent Garrido to testify would not be consistent with its regulations. Based on this record, this court should conclude that HHS adequately considered the relevant factors, and

17

its decision contains no clear error of judgment. The Motion to Compel should be denied.

>
> Respectfully submitted,
>
> **BRIAN M. BOYNTON**
> Principal Deputy Assistant Attorney General
> **ROGER B. HANDBERG**
> United States Attorney
> JAMIE A. YAVELBERG
> PATRICIA L. HANOWER
> J. JENNIFER KOH
> Attorneys, Civil Division
> United States Department of Justice

Dated: May 29, 2024         By:    *s/ Sean P. Keefe*
SEAN P. KEEFE
Assistant United States Attorney
Florida Bar No. 0413828
400 North Tampa Street, Suite 3200
Tampa, FL 33602
Telephone: (813) 274-6000
Facsimile: (813) 274-6200
E-mail: sean.keefe@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will provide electronic service to all counsel of record.

 */s/ Sean P. Keefe*
SEAN P. KEEFE
Assistant United States Attorney