UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* DR. CLARISSA ZAFIROV, <br><br>　　Plaintiff and Relator, <br><br>v. <br><br>PHYSICIAN PARTNERS, LLC; FLORIDA MEDICAL ASSOCIATES, LLC, d/b/a VIPCARE; ANION TECHNOLOGIES, LLC; FREEDOM HEALTH, INC.; and OPTIMUM HEALTHCARE, INC., <br><br>　　Defendants. | No. 8:19-cv-01236-KKM-SPF |

**RELATOR'S MOTION TO COMPEL DISCOVERY FROM FREEDOM DEFENDANTS AND REQUEST FOR ORAL ARGUMENT**

## I.  INTRODUCTION

Relator Dr. Clarissa Zafirov alleges that Defendants Freedom Health, Inc. and Optimum Healthcare, Inc (collectively, "Freedom Defendants") acted in concert with Defendants Physician Partners, LLC, Florida Medical Associates LLC d/b/a VIPcare and Anion Technologies, LLC to falsely increase the risk adjustment scores of thousands of Medicare Advantage patients for the purpose of obtaining more funding from the United States than was rightfully owed. ECF No. 86, "Amended Complaint."

Consistent with the Court's Amended Case Management and Scheduling Order, Dkt. 172, this motion arises because Freedom Defendants refuse to produce relevant and responsive records. First, Relator has sought medical records related to

1

the full patient population at issue—and has narrowed that request to a statistician-generated sample—so that Relator can evaluate the full scope of the harm caused by Defendants' conduct. Freedom Defendants have flatly refused production of any of the responsive medical records, taking the position that Freedom Defendants will only produce medical records once Relator establishes the falsity of the underlying claims—a cart-before-the-horse demand which is contradictory to Fed. R. Civ. P. 26 and all claims-based case law.

Further, Relator brings this motion to compel production of responsive, relevant records which Relator has only learned about from recent depositions in which Freedom Defendants' witnesses identified multiple tranches/repositories of records which were not disclosed or produced. The documents, primarily related to Freedom Defendants' auditing, tracking, and identification of unsupported claims as set forth in detail below, are responsive to at least Relator's Requests for Production of Documents (RFPs) 2, 8, 16, 17, 18, 26, 27, 28, and 41.

For the reasons set forth herein, Relator respectfully moves this Court to compel the Freedom Defendants to respond to all discovery responses as to medical records for all patients between January 1, 2015 and December 31, 2020,[1] as well as those documents or those documents within repositories identified by Freedom Defendants' deponents including Ms. Radha Rai and Ms. Dianne Kortsch, as set forth in detail in Section IV.B, *infra*.

---

[1] *See* Dkt. 169 at 6 setting the relevant temporal scope for Freedom Defendants.

Due to the importance of these issues, especially the production of medical records, and Defendants' lack of engagement with Relator towards resolution, Relator respectfully requests oral argument and/or a status conference with the Court prior to a ruling on this motion.

## II.   RELEVANT DISCOVERY BACKGROUND

In 2022, following this Court's denial of Defendants' motions to dismiss Relator's Amended Complaint (ECF No. 124), the parties began the discovery process. Relator served RFPs to the Freedom Defendants on December 15, 2022. Freedom Defendants served responses and objections to the RFPs on February 16, 2023. Freedom's first production was made in July 2023, but substantive ESI production did not begin until January 2024. Pursuant to an agreement based on concerns raised by Relator of having document production complete in time to conduct meaningful depositions, the Freedom Defendants represented to Relator on March 15, 2024 that their document production with respect to Relator's RFPs was substantially complete. Notwithstanding that statement, and notwithstanding the planning done in reliance on that statement and the previous meet-and-confer discussions, Freedom Defendants have made six substantive productions since then (in addition to various other reproductions of past productions).

Relator served her Second Set of RFP's on Freedom Defendants on February 19, 2024, to which Freedom responded on March 20, 2024. Relator served a Third Set

of RFPs on Freedom Defendants on April 29, 2024, responses to which are due today.[2]

### III. DISCOVERY REQUESTS AT ISSUE

With respect to the medical records, Relator's Second RFPs to Freedom Defendants included RFP No. 41, which requested:

> All medical and billing records related to any Physician Partners patient whose services were paid in whole or in part by any Government health insurance program. This request specifically includes, but is not limited to, all 5 Star Checklists provided to and/or completed by a provider, primary care and specialist provider notes, diagnostic test results, medication lists, problem lists, and all diagnosis codes associated with that patient whether by a provider, as a result of a chart review, or by any other source.

Defendants objected to the request and refused to produce any responsive records. In response to the unsubstantiated burden claim, Relator proposed a sample, drawn from claims data submitted by Freedom Defendants to the United States, married with claims data submitted by Provider Defendants to Freedom Defendants, which reflected 189,000-member years.[3][4] This sample reduced Relator's request to records pertaining to 1,200 patients, where each patient represents the codes submitted for that patient for a specified calendar year. After proposing this compromise to Defendants, Relator met-and-conferred with both Freedom and Provider Defendants on May 24, 2024 to ascertain Freedom Defendants' continuing objection to producing

---

[2] Given the production deficiencies descripted *infra*, Relator must anticipate further deficiencies in Freedom Defendants' responses and productions subject to her Third Set of RFPs. As discovery motions are due today (Dkt. 172), Relator likewise, in an abundance of caution, moves the Court to compel production of all responsive, non-privileged, documents contemplated by her Third Set of RFPs.
[3] "Member years" refers to the number of patients reflected in the claims data for each year, irrespective of whether a patient appears in claims data for multiple years.
[4] Both sets of claims data were produced by Defendants in this matter.

4

*any* medical records. Freedom Defendants have not responded with any changed position since that conference, and the parties are therefore at loggerheads on this issue.

Additionally, Relator and Freedom Defendants have met-and-conferred extensively regarding Relator's First RFPs. As part of that meet-and-confer process, search terms and custodians were identified for narrowing the universe of potentially responsive ESI. Relator agreed to this process with Defendants based on Defendants' representations that it had identified custodians likely to be in possession of the relevant, responsive records, and had selected search terms intended to yield responsive documents. However, it was not until the depositions of Freedom Defendants' witnesses that substantial tranches of plainly responsive documents which were neither disclosed nor produced were discovered. As such, it was not until these depositions that Relator had any basis to challenge Freedom Defendants' representations regarding search terms and custodians.

Once Relator identified these production deficiencies, Relator provided a letter to Freedom Defendants on May 26, 2024 identifying the specific deficiencies and inviting a meet-and-confer on these topics. These deficiencies include:

 1. Excel files prepared monthly which include the underlying data regarding error rates, stored on a shared drive controlled by Freedom

      Defendants, and related documents including data files and correspondence;

2. A list of every provider who has ever been subject to Freedom's "QIP2" audits;
3. Medical records located in a system call DMS controlled by Freedom Defendants, and any related audit reports derived from information contained in the DMS system;
4. Records of the results of Freedom Defendants' "QIP" audits of providers, which a witness has testified is available in Freedom's "QIP app," including approvals and denials, and any related audit reports derived from information contained in the QIP app;
5. Reports prepared on a regular basis that show the IPA, the number of members, and their current risk score;
6. Reports that show Medicare Advantage revenue broken out between providers groups, and related documents including data files and correspondence;
7. All responsive communications from the Freedom Defendants' Microsoft Teams messaging platform;
8. All minutes and PowerPoint presentations for quarterly Medicare Compliance Committee meetings and for the delegation oversight committee meetings; and
9. All yearly risk registers and quarterly updates related to the risk registers, including all documents reflecting the regular preparation and revision of such a risk register.

Relator's counsel (again) invited meet-and-confer on those topics on May 28, 2024. Although Freedom Defendants have responded to other inquiries since that time, they have not responded to the May 26, 2024 letter nor offered availability for meet-and-confer. While it is possible other RFPs are implicated by the withheld documents, Relator believe the requests at issue are at least Relator's RFPs 2, 8, 16, 17, 18, 26, 27, 28, and 41. Those requests and Freedom Defendants' responses are attached as Exhibit A.

Given Freedom Defendants' failure to respond to multiple requests to engage in a meet-and-confer on these issues, Relator presumes the Parties to be at an impasse as to the categories of documents identified above.

## IV. ARGUMENT

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Relevance, for purposes of discovery, is construed broadly to include any matter that "bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Gov't Emples. Ins. Co. v. Martineau*, No. 8:19-cv-1382-T-35SPF, 2020 U.S. Dist. LEXIS 78816, at *2-3 (M.D. Fla. May 5, 2020), *quoting Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). For the proportionality inquiry, the court considers factors enumerated by Rule 26(b)(1), Fed. R. Civ. P.: "the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

The trial court "is give[n] wide discretion in setting the limits of discovery" and "[t]he Federal Rules of Civil Procedure strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). When a discovery request has been propounded, "[t]he party resisting discovery has the burden to show that the requested discovery is not relevant and that the production

7

of such discovery would be unduly burdensome." *Benavides v. Velocity IQ, Inc.*, No. 8:05-cv-1536-T-30MSS, 2006 U.S. Dist. LEXIS 14777, at *6 (M.D. Fla. Mar. 15, 2006).

### A. Relator is Entitled to All Medical Records.[5]

#### 1. Relator's Amended Complaint alleges a fraudulent scheme implicating patients beyond those identified in the Amended Complaint.

Relator's Amended Complaint alleges "manipulation of the Medicare Advantage program from January 2014 through the present by one of Florida's largest healthcare providers . . . and two insurance companies, Defendants Freedom Health, Inc. ('Freedom') and Optimum Healthcare, Inc. ('Optimum')." Dkt. 86 at ¶ 1. Defendants responded with motions to dismiss, both of which acknowledged the scope of Relator's allegations. The Court denied Defendants' motions to dismiss in full and gave no credence to Defendants' assertion that allowing discovery on seven years of false claims—clearly encompassing patients beyond those identified in the Amended Complaint—would be unduly burdensome.[6] Dkt. 124. Indeed, the Court found that Relator's allegations readily satisfied Rule 9(b):

> [Relator's] patient-specific allegations – and the others in the Amended Complaint – go far beyond a simple 'portrayal of the scheme' and a

---

[5] To the extent Freedom Defendants would argue they do not physically possess all medical records, this misses the mark. "Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand." *River Cross Land Co., LLC v. Seminole Cty.*, No. 6:18-cv-1646-ACC-LHP, 2023 U.S. Dist. LEXIS 142721, at *4 (M.D. Fla. Aug. 15, 2023) *citing Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984). Pursuant to the Provider Agreement between Freedom Defendants and Physician Partners, the Freedom Defendants have this legal right to obtain medical records for any covered service provided by a Physician Partners physician.

[6] Dkt. 97 at 12; Dkt. 98 at 26. The Court has since narrowed the *temporal* scope of discovery, but not the substantive scope of discovery. Dkt. 169 at 6.

8

> 'summary conclusion that the defendants submitted false claims to the government for reimbursement. Far from relying on bald statements, rumors or conjectures, Zafirov's detailed allegations derived from her personal knowledge of the Provider Defendants' medical records and her access to the MA Defendants online portal for physicians provide the requisite 'indicia of reliability.'

*Id.* at 13 (internal citations omitted). The Court also found that Dr. Zafirov pled reverse false claims allegations with specificity, noting, "the Amended Complaint also provides multiple specific patient examples, along with the surrounding factual context and documentation, where the Provider Defendants, the MA Defendants, or both 'had knowledge of the falsity of their codes and failed to submit correct codes pursuant to their overpayment obligations.'" *Id.* at 16.

Additionally, the Court found "that the proper temporal scope of discovery in this action should be January 1, 2015 through December 31, 2020 for the Freedom Defendants." Dkt. 169, at 6. The Court went further stating that "a party cannot unilaterally fact check allegations in a complaint to justify narrowing the scope of discovery." *Id.* at 4.

### 2. Having pled her allegations with specificity, Relator is entitled to discovery on the entire fraudulent scheme.

Where, as here, "a relator pleads a complex and far-reaching fraudulent scheme with particularity, and provides examples of specific false claims submitted to the government pursuant to that scheme, a relator may proceed to discovery on the entire fraudulent scheme." *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 510 (6th Cir. 2007). This is precisely the posture of this case: Defendants raised arguments in their respective motions to dismiss that the Amended Complaint was not sufficiently

9

pled and that discovery would be unduly burdensome; the Court denied those motions *in toto.* Thus, Relator is entitled to conduct discovery which spans the full scope of the allegations of the complaint. *United States ex rel. McCartor v. Rolls-Royce Corp.*, No. 1:08-cv-00133-WTL-DML, 2013 U.S. Dist. LEXIS 136387, at *19 (S.D. Ind. Sept. 24, 2013) ("It is unreasonable…to impose a limit on discovery and recovery in *qui tam* cases to specific examples of fraudulent behavior that relators were able to describe in their complaint when – as in this case – the complaint describes a general fact pattern of alleged fraudulent behavior supported by specific examples of that behavior. The court sees no good reason to prevent a relator from discovering other examples of behavior substantially similar to those described in the complaint and that similarly fit the pattern of conduct on which the complaint is focused"); *United States ex rel. Walker v. R & F Props. of Lake Cty., Inc.*, 433 F.3d 1349, 1359 (11th Cir. 2005) (citing Fed. R. Civ. P. 26(b)(1) to affirm a relator is permitted to "discovery of all information relevant to her claims."); *United States ex rel. Brooks v. Stevens-Henager Coll., Inc.*, No. 2:15-cv-00119-JNP-EJF, 2018 U.S. Dist. LEXIS 2329, at *18 (D. Utah Jan. 4, 2018) ("The Court also agrees with the principle that the specific examples of fraudulent behavior pled in the Complaint do not strictly limit discovery to those acts.")[7]

---

[7] *See also Uchytil v. Avande, Inc.*, No. C12-2091-JCC, 2018 U.S. Dist. LEXIS 31737, at *6 (W.D. Wash. Feb. 27, 2018) ("Defendants were well aware before Relator's December 2017 request for production of her position that 'example' contracts named in the complaint were not intended to limit the scope of her claims . . . That Defendants relied on their own view of the proper scope of discovery does not make Relator's motion to compel untimely or prejudicial"); *United States ex rel. Polukoff v. Sorensen*, No. 2:16-cv-00304-TS-DAO, 2020 U.S. Dist. LEXIS 152196, at *23 (D. Utah Aug. 20, 2020) ("To the extent the Relator seeks patient billing and medical records related to PFO/ASD closures and related medical procedures performed by Dr. Sorensen between 2002 and 2011, the court finds these records relevant to the claims asserted by the Relator"); *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*,

10

### 3. Freedom Defendants fail to demonstrate any undue burden or lack of relevance.

Freedom Defendants have not made, and cannot make, a good faith argument regarding relevance or burden of providing discovery responses for all patient records during the relevant timeframe. *Craig v. Kropp, No. 2:17-cv-180-FtM-99CM,* 2018 U.S. Dist. LEXIS 33412, at *6 (M.D. Fla. Mar. 1, 2018) (citations omitted) ("A party resisting discovery must establish 'lack of relevancy or undue burden in supplying the requested information."); *Girling v. Specialist Doctors' Grp.*, LLC, No. 8:17-cv-2647-T-24JSS, 2021 U.S. Dist. LEXIS 258848, at *4 (M.D. Fla. Feb. 3, 2021) ("The party resisting discovery has the burden to show that the requested discovery is not relevant and that the production of such discovery would be unduly burdensome.")

Rather, through 37 pages of boilerplate objections untethered to any actual request, Freedom Defendants ignore the universality of the conduct alleged in Relator's Amended Complaint to be at the heart of the fraudulent scheme, including the use of the 5 Star Checklists as a steering tool for increasing risk adjustment scores, corporate-wide training materials and programs which push the use of high-value risk-adjusting codes, chart reviews to increase coding after a patient visit, and high-pressure tactics aimed at getting providers to participate in Physician Partners' financial model.

Rather than "establish facts justifying its objections by demonstrating that the requested discovery . . . does not come within the scope of relevance as defined under

---

794 F.3d 457, 467 (5th Cir. 2015) ("[O]ne cannot forget that Rule 9(b) is not meant to supplant discovery" (citation omitted)).

11

Fed. R. Civ. P. 26(b)(1).," as it is obligated to do (*Gov't Emples. Ins. Co.*, 2020 U.S. Dist. LEXIS 78816, at *2-3), Freedom Defendants summarily conclude that medical records related to Physician Partners' patients whose services were paid in whole or in party by any Government health insurance program are not relevant to a case which is expressly about Physician Partners' patients whose services were paid in whole or in part by a Government health insurance program. In fact, even with the unsupported narrowing of the request to only the patients identified in the Amended Complaint, Defendants still refuse to produce any responsive records. See Exhibit B at 31.

Defendants assert, without elaboration, a burden of producing the medical records sought in Relator's RFP No. 41. In response, Relator agreed to reduce the request to a sample identified by a statistician to a smaller subset of records which would garner a statistically relevant sample from which the number of false claims and resulting damages could be extrapolated. By email on May 15, 2024, Relator's counsel Chandra Napora wrote to all Defendants' counsel, *inter alia*,

> Each defendant objected to the production of the requested records and unilaterally narrowed the request to records related only to the patients identified in Relator's complaint. Such unilateral narrowing is of course not appropriate. That said, to the extent Defendants objected on the basis of burden or proportionality, and as part of ongoing meet-and-confer, we advised that we retained an expert to assist in creating a sample of patient records to ensure that the necessary request for medical records is proportional to the needs of the case. To that end, we will be sending via secured file transfer a spreadsheet identifying 1,200 patients for whom we require the records requested in the referenced requests for production. You will note that the spreadsheet contains 1,800 identified patients. To the extent any of the first 1,200 patient's records is unavailable after reasonable search, the next patient's records should be pulled as a replacement, and so on, such that we receive a total of 1,200 patients' records.

12

Relator's counsel transmitted the 1,800-name list – from which the 1,200-patient sample would be drawn – by secure file transfer the same day. Defendants did not respond to the sample size nor acknowledge how the reduction from all medical records to the sample would ameliorate burden concerns; Defendants simply did not respond at all until prompted by Relator's counsel to schedule a meet-and-confer which was held on May 24, 2024. To date, Freedom Defendants have not articulated any burden associated with the revised sample.

A party objecting to discovery on burdensomeness grounds must "specifically articulate any burden that they would face by producing such information." *Fla. Virtual Sch. v. K12, Inc.*, No. 6:20-cv-2354-GAP-EJK, 2022 U.S. Dist. LEXIS 131191, at *10 (M.D. Fla. Apr. 1, 2022). Because Freedom Defendants make no effort to explain how the requested discovery creates any burden, let alone an undue burden, or what that burden is. As such, their argument should be rejected. *Legion Sys., Ltd. Liab. Co. v. Valiant Glob. Def. Servs., Inc.*, No. 8:20-cv-2321-KKM-MRM, 2022 U.S. Dist. LEXIS 236899, at *16-17 (M.D. Fla. Dec. 22, 2022) ("reject[ing] and overrul[ing] [the defendant's] unsubstantiated objections based on burden and expense" where the defendant "ma[de] no meaningful effort to calculate or quantify the burden or expense associated with full compliance, nor d[id] Defendant support its conclusory assertions of burden and expense with evidence (*e.g.*, a supporting affidavit or declaration attesting to the volume of documents involved and the number of personnel hours to be expended)").

13

### B. Deposition Testimony Has Identified Responsive Documents that the Freedom Defendants Have Not Produced.

Separate from the medical records, Freedom Defendants have failed to sufficiently identify and produce records responsive to Relator's first RFPs which are critical to the evaluation and resolution of this case. The failure to provide plainly responsive documents in a timely manner or at all is highly prejudicial.[8] S*unrise of Coral Gables Propco, LLC v. Current Builders, Inc.*, No. 1:22-CV-21456-MORE, 2023 U.S. Dist. LEXIS 183512, at *25 (S.D. Fla. Oct. 12, 2023) ("Prejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question"), *citing Bowe v. Pub. Storage*, 106 F. Supp. 3d 1252, 1260 (S.D. Fla. 2015); *Debose v. Broward Health*, No. 08-61411-CIV-MOORE/SIMONTON, 2009 U.S. Dist. LEXIS 45546, at *14 (S.D. Fla. May 20, 2009) (holding "Defendant may not use the withheld documents objected to by Plaintiffs").

Specifically, On May 15, 2024, the Rule 30(b)(6) deposition testimony of Ms. Radha Rai as the corporate representative of Freedom Health made clear that there

---

[8] Freedom Defendants stated their document production was substantially complete on March 15, 2024. Notwithstanding that statement, and notwithstanding the planning done in reliance on that statement and the previous meet-and-confer discussions, Defendants have made six substantive productions since then (in addition to various other reproductions of past productions). While Relator's counsel have endeavored to review these documents to be able to ascertain their value for scheduled depositions, Relator has been prejudiced by this tactic and requires redress. Relator asked on May 9 for identification of exactly how many other documents remain in Freedom Defendants possession which are responsive to RFPs 1-39 and have not yet been produced. To date, Freedom Defendants have not responded to that inquiry.

14

are many additional tranches of responsive documents that Defendants have not produced. Specifically, Ms. Rai testified that:

- Freedom stores underlying data regarding provider diagnosis error rates found during Freedom's internal audit work, including as monthly Excel files, on a shared drive. Relator can find no indication this shared drive was searched at all, and can find no audit summaries or underlying data which appear to reflect the sort of reports that Ms. Rai described
- Freedom has a source that can be queried to generate a list of every provider who has ever been subject to Freedom's internal audit process QIP2. Relator can find no indication that any such source was queried for all such providers related to Physician Partners, nor was any responsive list or report produced;
- Freedom stores retrieved medical records that Freedom has retrieved from provider for the purposes of its audits of providers in a system call DMS. Relator can find no indication that such medical records were searched for records related to any Physician Partners physician, which would have been responsive to Relator's requests. Further, the fact of this storage greatly undermines any assertion of burden associated with producing medical record;
- Freedom records the results of its audits of providers in its "QIP app," from which Freedom runs reports to see what has been approved and denied and that Freedom uses that as an informational tool for its auditors. Relator can find no indication that this "QIP app" was queried for response to any of Relator's requests, nor did Relator receive any reports reflecting the audit results for any Physician Partners physician;
- Freedom regularly posts reports that show the IPA, the number of members, and their current risk score (Ms. Rai specifically referenced the MRA 004 and the MODD files, which come from CMS); and runs reports that show Medicare Advantage revenue broken out between providers groups. Relator can find no indication that the reports relative to Physician Partners physicians were produced.

Each of these reports or repositories is responsive to outstanding requests, including without limitation RFPs 2 (with respect to "Freedom and Optimum compliance documents for the relevant time period"), 16, 26, 27 and 28. They are overdue and must be produced forthwith.

Further, Diane Kortsch, Freedom's compliance officer during the relevant time period, likewise gave testimony making clear that Freedom had improperly failed to produce responsive documents. Ms. Kortsch testified that:

- Freedom uses the Microsoft Teams messaging platform to communicate and was unsure what messaging platform was used prior to Teams. Relator has not identified any records which appear to be produced from the Microsoft Teams platform, including any communications relative to any Physician Partners physician or patient;
- Freedom keeps minutes and PowerPoint presentations for quarterly Medicare compliance meetings and for the delegation oversight committee. Relator received a small selection of PowerPoint presentations but not a comprehensive production of minutes and presentations for the meetings extending across the temporal scope;
- Freedom produces a yearly risk register, including an identification and assessment of risks posed by provider groups (which would presumably include an identification and assessment of the risks posed by the Provider Defendants) and other contractors (which would presumably include an identification and assessment of the risks posed by defendant Anion), which is maintained as an Excel document and is updated quarterly through a process that includes discussion within the Compliance Group and others at Freedom. Relator has received no production related to this risk register at all. Given the immediate relationship between such a risk register and the relationship between Freedom and the Provider Defendants, the failure to identify or produce this register in any manner appears to be either a deliberate withholding of relevant documents or a lack of diligence in identifying relevant, responsive records.

Freedom's productions are incomplete as to these categories of documents, which would be response to, at least, RFP 2, 8, 16, 17, 18, 26, 27 and 28.

Finally, third-party Dr. George Mansour made a production on May 17, 2024, in response to a subpoena served by Freedom Defendants. That third-party production revealed, for the first time, a communication between Freedom's then-CEO Nancy Gareau and Physician Partner's CEO Dan Kollefrath discussing Physician Partners' 5

Star Checklist at length, a very significant communication given Freedom's stated position that it had no knowledge of the 5 Star Checklists prior to this litigation. The disclosure of this immediately relevant document, which flatly contradicts sworn testimony offered multiple times by Freedom, only from a third-party, raises extraordinary concern that the production to date is woefully incomplete. In meet-and-confers on this issue, Freedom took the position that Ms. Gareau was not a custodian, and thus her repositories need not have been searched. This misses the mark: as this late production makes plain, she should have been. Relator reasonably acted in reliance on representations by the Freedom Defendants that the search terms and custodians they had proposed were identified in good faith and pursuant to a diligent inquiry to ascertain sources or responsive, relevant documents.[9] And even now, there is no indication that all of the search terms in this case were run across Ms. Gareau's mailbox or the mailboxes of any other individuals with whom she corresponded on relevant topics.

Accordingly, Relator requests that the Court compel fulsome production of Ms. Gareau's mailbox, all other repositories where Ms. Gareau stored information, and all mailboxes or storage sites for individuals with whom Ms. Gareau corresponded in any communications. Such repositories must be thoroughly reviewed for all relevant, responsive records. To the extent any documents are revealed during that search,

---

[9] Indeed, the Declaration of Lucie Cohen submitted in this matter conceded that searching of Ms. Gareau's email box was only conducted following the May 17, 2024 production – not at the time when search terms and custodians were being negotiated. No explanation for this deficiency has been provided.

17

Relator seeks the opportunity to conduct depositions relating to those records as necessary.

## V. CONCLUSION

For the reasons set forth above, Relator respectfully requests that this Court compel Defendants to (1) respond to all discovery requests 2, 8, 16, 17, 18, 26, 27, and 28, specifically including the records described above as identified in Ms. Rai and Ms. Kortsch's depositions, (2) respond to discovery request 41 in its entirety or as narrowed by the sample parameters provided by in email from Relator's counsel on May 15, 2024, and (3) complete a detailed review of Ms. Gareau's email box and document repositories, and the email box and document repositories of anyone with whom Ms. Gareau communicated, and permit depositions relating to such records as needed.

Respectfully submitted this 29th day of May, 2024,

    /s/ Jillian L. Estes
Jillian L. Estes (Fla Bar No. 0055774)
Jonathan M. Lischak (OH Bar No. 0097669)
Morgan Verkamp LLC
4410 Carver Woods Dr., Suite 200
Cincinnati, Ohio 45242
Telephone: (513) 651-4400
Fax: (513) 651-4405
Email: jillian.estes@morganverkamp.com
jonathan.lischak@morganverkamp.com

Adam T. Rabin (Fla. Bar No. 985635)
Havan M. Clark (Fla. Bar No. 1026390)
RABIN KAMMERER JOHNSON
1601 Forum Place, Suite 201
West Palm Beach, FL 33401
Phone: (561) 659-7878

Fax: (561) 242-4848  
arabin@rkjlawgroup.com  
hclark@rkjlawgroup.com  
e-filing@rkjlawgroup.com  

***Counsel for Relator Dr. Clarissa Zafirov***

*\* admitted pro hac vice*

## LOCAL RULE 3.01(g) CERTIFICATION

I, Jillian Estes, hereby certify that, consistent with Local Rule 3.01(g), Relator has conferred with Defendants as described herein. Relator sought to meet-and-confer with Freedom Defendants as to the production deficiencies described in Section IV(B) by letter on May 26, 2024 and again by email on May 28, 2024; Freedom Defendants did not respond to either request. Despite Relator's best efforts, the parties were unable to reach a resolution on the relief sought herein.

/s/ Jillian L. Estes  
Jillian L. Estes

## CERTIFICATE OF SERVICE

I, Jillian Estes, hereby certify that foregoing motion was served on May 29, 2024, to all parties of record via the CM/ECF electronic filing system.

/s/ Jillian L. Estes  
Jillian L. Estes