# EXHIBIT B

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* DR. CLARISSA ZAFIROV,<br><br>        Plaintiff/Relator,<br><br>v.<br><br>PHYSICIAN PARTNERS, LLC; FLORIDA MEDICAL ASSOCIATES, LLC, d/b/a VIPCARE; ANION TECHNOLOGIES, LLC; FREEDOM HEALTH, INC.; and OPTIMUM HEALTHCARE, INC.,<br><br>        Defendants. | Case No. 8:19-cv-01236-KKM-SPF |

### DEFENDANTS FREEDOM HEALTH, INC. AND OPTIMUM HEALTHCARE, INC.'S RESPONSES AND OBJECTIONS TO RELATOR'S SECOND SET OF REQUESTS FOR PRODUCTION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Section III.A of the Handbook on Civil Discovery Practice of the United States District Court for the Middle District of Florida ("Handbook on Civil Discovery Practice"), Defendants Freedom Health, Inc. and Optimum Healthcare, Inc. (collectively, "Freedom Defendants"), by and through their undersigned counsel, hereby provide these Responses and Objections ("Responses") to Relator Dr. Clarissa Zafirov's ("Relator") Second Set of Requests For Production to Freedom Defendants ("Requests").

### PRELIMINARY STATEMENT

Freedom Defendants' Responses are made in good faith and based on the information and documents reasonably available to their counsel at this time. Freedom Defendants do not assume the obligation to preserve, collect, or produce

documents that are not reasonably available. These Responses do not prejudice Freedom Defendants' rights to conduct further investigation, nor do they waive Freedom Defendants' rights to change, amend, or supplement these Responses pursuant to the Federal Rules of Civil Procedure, the Handbook on Civil Discovery Practice, and any scheduling or case management order that has been or may be entered in this litigation by the Court. In addition, Freedom Defendants reserve the right to later use documents now known but whose relevance, significance, or applicability has not yet been ascertained in the context of responding to the Requests.

Where Freedom Defendants have provided information obtained from a third party in order to respond to the Requests, Freedom Defendants do not admit or represent that the third party is Freedom Defendants' agent, predecessor, successor, affiliate, or other representative, or that Freedom Defendants exercise control over that third party. Nor do Freedom Defendants assume any obligation to produce information or documents that are not in their possession, custody, or control. Freedom Defendants reserve the right to change, amend, or supplement these Responses if they learn that information or documents from third parties provided in their Responses or document productions is incorrect or if they learn that information or documents from these third parties has relevance, significance, or applicability that has not yet been ascertained.

Freedom Defendants reserve the right to assert any and all applicable privileges, doctrines, and protections and hereby expressly reserve their right to withhold responsive information on the basis of any and all applicable privileges, doctrines, and protections, including, but not limited to, information that (1) is protected from disclosure under any confidentiality agreement, order, or stipulation, (2) contains confidential or proprietary trade secret information, (3) constitutes

protected health information ("PHI") under federal law ("HIPAA"), (4) was prepared for or in anticipation of litigation, (5) contains or reflects the analysis, mental impressions, or work of counsel, (6) contains or reflects attorney-client communications, (7) is protected by common interest privilege, or (8) is otherwise privileged or protected.  No Response nor any inadvertent production of privileged or protected information shall constitute a waiver, in whole or in part, of any such privilege or protection in this or any other federal or state proceeding.  Freedom Defendants request that any produced information subject to a privilege or protection immediately be returned by Relator to Freedom Defendants.  Freedom Defendants further request that Relator not use any information derived from any produced privileged or protected information and provide Freedom Defendants with immediate notice if produced information appears to be privileged or protected, either on its face or in light of facts known to Relator.

Freedom Defendants reserve any additional rights without waiver, including: (1) the right to question or object on the basis of authenticity, foundation, relevance, materiality, privilege, and admissibility of any documents produced in response to the Requests in any subsequent proceeding in this or any action; (2) the right to object to the use of documents produced in response to the Requests in any subsequent proceeding in this or any other action on any grounds; (3) the right to object to the introduction of these Responses into evidence; and (4) the right to object on any ground at any time to other discovery involving the subject matter of the Requests or these Responses.

## GENERAL OBJECTIONS

The following General Objections apply to all Definitions, Instructions, and Requests, irrespective of whether they are specifically referenced in response to any particular Definition, Instruction, or Request.  The Specific Objections and

Responses to Definitions, Instructions, and Requests set forth below neither limit the applicability of any of the General Objections nor waive any additional objections which may apply to the individual Definitions, Instructions, or Requests.

1.      Freedom Defendants object to each and every Definition, Instruction, and Request to the extent it seeks to impose obligations beyond those set forth in the Federal Rules of Civil Procedure, the Handbook on Civil Discovery Practice, or any case management order that has been or may be entered in this litigation.

2.      Freedom Defendants object to each and every Definition and Instruction to the extent that it purports to enlarge, expand, or alter in any way the plain meaning or scope of any specific Request, as well as where such enlargement, expansion, or alteration renders any specific Request vague, ambiguous, subject to varying interpretations, overly broad, unduly burdensome, or not relevant or proportional to the allegations at issue in this case.

3.      Freedom Defendants object to each and every Request to the extent it seeks information protected from disclosure under any confidentiality agreement, order, or stipulation entered in any past or present litigation or administrative proceeding, any other pre-existing prohibitions against disclosure, or any forthcoming orders or stipulations.

4.      Freedom Defendants object to each and every Request to the extent it seeks information reflecting, containing, or deriving from non-public, confidential, trade secret, proprietary, or commercially sensitive business information, including, but not limited to, proprietary information.

5.      Freedom Defendants object to each and every Request to the extent it seeks information that constitutes PHI, which is guaranteed confidentiality under federal law (HIPAA) and related state laws.

6.     Freedom Defendants object to each and every Request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the settlement privilege, the common interest doctrine, or any other applicable privilege, including, but not limited to, documents that (1) were prepared for or in anticipation of litigation; (2) contain or reflect the analysis, mental impressions, or work of counsel; (3) contain or reflect attorney-client communications; (4) are protected by common interest privilege; or (5) are otherwise privileged.

7.     Freedom Defendants object to each and every Request to the extent it requires Freedom Defendants do more than use reasonable diligence to locate responsive information and documents based on an examination of those files that reasonably may be expected to yield responsive information and an inquiry of those persons who reasonably may be expected to know the location of responsive documents.

8.     Freedom Defendants object to each and every Request to the extent it calls for the production of information or documents that are not retained or archived in the ordinary course of business, or that are otherwise not within Freedom Defendants' possession, custody, or control.

9.     Freedom Defendants object to each and every Request to the extent it calls for the production of information and documents (1) in Relator's possession, custody, or control; (2) to which Relator has access; (3) that are publicly available; or (4) that are more conveniently available from Florida Medical Associates, LLC d/b/a VIPcare ("VIPcare"), Physician Partners, LLC, ("Physician Partners") or Anion Technologies, LLC ("Anion") (collectively, "Provider Defendants").

10.     Freedom Defendants object to each and every Request to the extent it requires the production of information and documents in the possession, custody, or

control of entities or individuals who are not parties to this action. If Freedom Defendants do produce any information or documents that are in the possession, custody, or control of an entity or individual other than Freedom Defendants, Freedom Defendants hereby give notice that they do not intend to imply that the entity or individual is an agent, predecessor, successor, affiliate, or other representative of Freedom Defendants or that Freedom Defendants exercise control over that entity or individual. Nor do Freedom Defendants intend to assume an obligation to produce documents not in their possession, custody, or control.

11.      Freedom Defendants object to each and every Definition, Instruction, or Request to the extent it mischaracterizes or improperly assumes that all Defendants or any subset of Defendants are effectively the same entity or otherwise related beyond what is supported by the facts in this case. Freedom Defendants further object to each and every Request to the extent it seeks information or documents from Provider Defendants, Elevance Health, Inc., or any other entity or individual that is irrelevant to Relator's allegations against Freedom Defendants.

12.      Freedom Defendants object to each and every Request to the extent it seeks information that is either irrelevant to the claims or defenses of any party to this action or not proportional to the allegations at issue in this case.

13.      Freedom Defendants object to each and every Request to the extent that it is vague, ambiguous, subject to varying interpretations, overly broad, unduly burdensome, or seeks information or documents outside the scope of the relevant time period, defined as January 1, 2015 to December 31, 2020. Where Freedom Defendants object to particular terms or phrases as vague, ambiguous, and subject to varying interpretations, Freedom Defendants will interpret Relator's Requests reasonably and in good faith in accordance with common English usage.

14.     Freedom Defendants object to each and every Request to the extent it assumes disputed facts or legal conclusions.  Accordingly, Freedom Defendants' production of information or documents pursuant to a Request does not constitute a waiver of any objection to disputed facts or legal conclusions.

15.     By stating in these Responses that Freedom Defendants will produce information or documents, are searching for information or documents, or will not produce information or documents, Freedom Defendants do not represent that any information or documents do or do not actually exist, but rather that Freedom Defendants will make a good-faith search and attempt to ascertain whether documents responsive to the Requests do exist.

## SPECIFIC OBJECTIONS AND RESPONSES TO DEFINITIONS

1.     Freedom Defendants object to Relator's Definition of "You," "Your," and "the Freedom Defendants" because the terms "facilities," "divisions," "groups," "operations," and "units" are not defined and subject to varying interpretations.  For example, it is not clear what individuals or entities constitute Freedom Defendants' "facilities," "divisions," "groups," "operations," or "units."  This Definition is therefore vague and ambiguous.  Freedom Defendants further object to this Definition because the terms "successors," "predecessors," "facilities," "affiliates," "divisions," "groups," "operations," "units," "officers," "directors," "consultants," "contractors," "agents," "other representatives," and "entities" are overly broad and seek information not relevant or proportional to the allegations at issue in this case.  These undefined entities have no bearing on the allegations by Relator in the Complaint related to the practices of Freedom Defendants and therefore on this litigation and are additionally outside Freedom Defendants' custody and control.  Freedom Defendants further object to this Definition as overly broad and not relevant or proportional to the allegations at issue in this case.  For example, by

requesting Documents from an undefined group of "contractors" or "consultants," this Definition could be read to request Documents and information from any entity or individual with which Freedom Defendants have ever conducted business, which are not reasonably calculated to lead to admissible evidence. This Definition is further overly broad because it includes information that is not in the possession, custody, or control of Freedom Defendants. Freedom Defendants further object to this Definition because it seeks information that is protected from disclosure by the attorney-client privilege, work product doctrine, settlement privilege, common interest doctrine, or any other rule of privilege, confidentiality, or immunity provided by law. For the purpose of responding to the Requests and interpreting any Definitions or Instructions that incorporate these terms, Freedom Defendants interpret "You," "Your," and "the Freedom Defendants" to mean Freedom Health, Inc. and Optimum Healthcare, Inc. and any of their Employees acting or purporting to act on their behalf.

2.      Freedom Defendants object to Relator's Definition of "Freedom" and "Freedom Health" because the terms "facilities," "divisions," "groups," "operations," and "units" are not defined and subject to varying interpretations. For example, it is not clear what individuals or entities constitute Freedom Health, Inc.'s "facilities," "divisions," "groups," "operations," or "units." This Definition is therefore vague and ambiguous. Freedom Defendants further object to this Definition because the terms "successors," "predecessors," "facilities," "affiliates," "divisions," "groups," "operations," "units," "consultants," 'agents," "other representatives," and "entities" are overly broad and seek information not relevant or proportional to the allegations at issue in this case. These undefined entities have no bearing on the allegations by Relator in the Complaint related to the practices of Freedom Defendants and therefore on this litigation and are additionally outside

Freedom Defendants' custody and control. Freedom Defendants further object to this Definition as overly broad and not relevant or proportional to the allegations at issue in this case. For example, by requesting Documents from an undefined group of "contractors" or "consultants," this Definition could be read to request Documents and information from any entity or individual with which Freedom Defendants have ever conducted business, which are not reasonably calculated to lead to admissible evidence. This Definition is further overly broad because it includes information that is not in the possession, custody, or control of Freedom Defendants. Freedom Defendants further object to this Definition because it seeks information that is protected from disclosure by the attorney-client privilege, work product doctrine, settlement privilege, common interest doctrine, or any other rule of privilege, confidentiality, or immunity provided by law. For the purpose of responding to the Requests and interpreting any Definitions or Instructions that incorporate these terms, Freedom Defendants interpret "Freedom" and "Freedom Health" to mean Freedom Health, Inc. and any of its Employees acting or purporting to act on its behalf.

3.     Freedom Defendants object to Relator's Definition of "Optimum" and "Optimum Healthcare" because the terms "facilities," "divisions," "groups," "operations," and "units" are not defined and subject to varying interpretations. For example, it is not clear what individuals or entities constitute Optimum Healthcare, Inc.'s "facilities," "divisions," "groups," "operations," or "units." This Definition is therefore vague and ambiguous. Freedom Defendants further object to this Definition because the terms "successors," "predecessors," "facilities," "affiliates," "divisions," "groups," "operations," "units," "consultants," 'agents," "other representatives," and "entities" are overly broad and seek information not relevant or proportional to the allegations at issue in this case. These undefined entities have no

bearing on the allegations by Relator in the Complaint related to the practices of Freedom Defendants and therefore on this litigation and are additionally outside Freedom Defendants' custody and control.  Freedom Defendants further object to this Definition as overly broad and not relevant or proportional to the allegations at issue in this case.  For example, by requesting Documents from an undefined group of "contractors" or "consultants," this Definition could be read to request Documents and information from any entity or individual with which Freedom Defendants have ever conducted business, which are not reasonably calculated to lead to admissible evidence.  This Definition is further overly broad because it includes information that is not in the possession, custody, or control of Freedom Defendants.  Freedom Defendants further object to this Definition because it seeks information that is protected from disclosure by the attorney-client privilege, work product doctrine, settlement privilege, common interest doctrine, or any other rule of privilege, confidentiality, or immunity provided by law.  For the purpose of responding to the Requests and interpreting any Definitions or Instructions that incorporate these terms, Freedom Defendants interpret "Optimum" and "Optimum Healthcare" to mean Optimum Healthcare, Inc. and any of its Employees acting or purporting to act on its behalf.

4.      Freedom Defendants object to Relator's Definition of "Original Complaint" to the extent that it includes allegations that are no longer operative in this matter.  For the purpose of responding to the Requests and interpreting any Definitions or Instructions that incorporate this term, Freedom Defendants interpret "Original Complaint" to mean the Complaint filed on May 20, 2019 (Doc. 1), as limited by the Court's September 28, 2021 Order (Doc. 81) and the Complaint (Doc. 86).

5.      Freedom Defendants object to Relator's Definition of "Document" and "Documents" to the extent it is not synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A).  Freedom Defendants further object to this Definition because it would require Freedom Defendants to produce both physical and electronically stored versions containing duplicative information, which is overly broad and unduly burdensome.  For the purpose of responding to the Requests and interpreting any Definitions or Instructions that incorporate these terms, Freedom Defendants interpret "Document," "Documents," and "Electronically Stored Information" as the terms are defined in Federal Rule of Civil Procedure 34(a)(1)(A).

6.      Freedom Defendants object to Relator's Definition of "Communication" and "Communications" because the terms "transmission," "conversation," "letter," and "e-mail message" are not defined and subject to varying interpretations.  For example, it is unclear whether "transmission," "conversation," "letter," and "e-mail message" include individual statements that do not receive a response or exchanges of information that occur over an extended rather than discrete period of time.  This Definition is therefore vague and ambiguous.  Freedom Defendants further object to this Definition because it would require Freedom Defendants to produce both physical and electronically stored versions containing duplicative information, which is overly broad and unduly burdensome.  For the purpose of responding to the Requests and interpreting any Definitions or Instructions that incorporate these terms, Freedom Defendants interpret "Communication" and "Communications" to mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise) and refer to every manner or means of disclosure, transfer, or exchange of information orally or in writing, and to both actual and attempted Communications of any kind.

7.      Freedom Defendants object to Relator's Definition of "all" as "each and every," because it is overly broad, unduly burdensome, and would needlessly increase the cost of inquiry in violation of Federal Rule of Civil Procedure 26(b)(1) to the extent it requires Freedom Defendants to identify and produce multiple sets of identical Documents containing duplicative information.  Freedom Defendants are large companies with many Employees and entities that generate a significant number of identical Documents, the identification and production of which does not benefit Relator and significantly burdens Freedom Defendants.  For the purpose of responding to the Requests and interpreting any Definitions or Instructions that incorporate this term, Freedom Defendants interpret "all" to mean those Documents that were located using reasonable diligence and judgment concerning the location of such Documents and efforts proportional to the allegations at issue in this case.

8.      Freedom Defendants incorporate by reference the Specific Objections to the Definitions of "Complaint" and "Diagnosis Codes" as if fully set forth within their objections to Relator's Definition of "5 Star Checklist" and "5 Star Forms." Freedom Defendants object to Relator's Definition of "5 Star Checklist" and "5 Star Forms" to the extent that this Definition assumes that Freedom Defendants in fact provided Physician Partners forms "with suggested diagnoses codes."  Freedom Defendants further object to this Definition as overly broad and unduly burdensome to the extent it seeks information that is not in the possession, custody, or control of Freedom Defendants.  For example, by requesting 5 Star Checklists "provided to Physician Partner physicians," this Definition could be read to request Documents that only Physician Partners created and controls.  Freedom Defendants further object to this Definition because the phrase "in advance of" is not defined and subject to varying interpretations.  For example, "in advance of" could be defined to mean any time prior and therefore would encompass Documents from outside of the

relevant time period.  This Definition is therefore vague and ambiguous.  Freedom Defendants further object to this Definition as overly broad and not relevant or proportional to the allegations at issue in this case to the extent it requests Documents for individuals treated or otherwise seen by Physician Partners physicians who are not Beneficiaries of Freedom Defendants.  For the purpose of responding to the Requests and interpreting any Definitions or Instructions that incorporate these terms, Freedom Defendants interpret "5 Star Checklist" and "5 Star Forms" as "5 Star Check List(s)" as described in Paragraphs 105–24 of the Amended Complaint.

9.     Freedom Defendants object to Relator's Definition of "Chart" and "Patient Chart" because the term and phrase "patient's medical record" and "provider" are not defined and subject to varying interpretations.  For example, a "patient's medical record" could refer to the patient's entire medical history extending to years before and after the relevant time period for Relator's Requests. Additionally, "provider" could refer to any form or kind of health care professional or entity, including individuals who are not physicians or who are not contracted with Freedom Defendants.  This Definition is therefore vague and ambiguous. Freedom Defendants further object to this Definition as overly broad and unduly burdensome to the extent it seeks information that is not in the possession, custody, or control of Freedom Defendants. For example, this Definition could be interpreted to include Documents concerning individuals not insured by Freedom Defendants and health care providers not contracted with or otherwise relating to Freedom Defendants.  For the purpose of responding to the Requests and interpreting any Definitions or Instructions that incorporate these terms, Freedom Defendants interpret "Chart" and "Patient Chart" as any medical record in the possession, custody, or control of Freedom Defendants reflecting the provision of services on a

particular date of service by a healthcare provider contracted by Freedom Defendants to a Beneficiary receiving insurance under the Medicare Advantage program from Freedom Defendants.

10.     Freedom Defendants incorporate by reference the Specific Objection to the term "Diagnosis Code" as if fully set forth within their objections to Relator's Definition of "Chart Review" and "Chart Review Program."  Because the defined terms "Chart Review" and "Chart Review Program" are used only in Relator's Definition of "Risk Adjustment Database," which is itself used nowhere else in Relator's Requests, Freedom Defendants object to Relator's Definition of "Chart Review" and "Chart Review Program" and their inclusion as defined terms. Freedom Defendants further object to Relator's Definition of "Chart Review" and "Chart Review Program" because the phrase "the process of reviewing a patient's chart with the purposes of identifying or abstracting diagnosis codes" is not defined and subject to varying interpretations.  For example, it is not clear whether "the process of reviewing a patient's chart with the purposes of identifying or abstracting diagnosis codes" refers to a healthcare provider's review of a Patient Chart to understand medical history and inform care, an audit of a Patient Chart, or something else.  This definition is therefore vague and ambiguous.

11.     Freedom Defendants incorporate by reference the Specific Objections to the terms "Chart" and "Diagnosis Code" as if fully set forth within their objections to Relator's Definition of "Coder."  Because the defined term "Coder" is used nowhere else in Relator's Requests, Freedom Defendants object to Relator's Definition of "Coder" and its inclusion as a defined term.  Freedom Defendants further object to this Definition because the terms and phrase "an individual who reviews," "identify," "supported," "condition," and "determine" are not defined and subject to varying interpretations.  For example, it is not clear whether an "individual

who reviews a chart" should be read to include healthcare providers or even Beneficiaries themselves.  It is also unclear if "an individual who . . . reviews a chart to determine if a diagnosis code is supported" would include any individual who does so in the context of an audit, Diagnosis Coding education, or something else.  It also is unclear if the term "condition" refers to a specific diagnosis documented by a healthcare provider, the state of a patient's diagnosis, such as stable, or to any general assessment of a patient's health.  This Definition is therefore vague and ambiguous.  Freedom Defendants further object to this Definition because it includes "any individual who reviews a chart to identify diagnosis codes," which is overly broad and seeks information not relevant or proportional to the allegations at issue in this case.  For example, this Definition would include individuals who review Charts for patients not insured by or otherwise relating to Freedom Defendants.

12.    Freedom Defendants incorporate by reference the Specific Objection to the term "Chart" as if fully set forth within their objections to Relator's Definition of "Deleted Code" and "Deletion."  Freedom Defendants object to Relator's Definition of "Deleted Code" and "Deletion" because the terms "identified," "unsupported," "invalid," and "not accurate or truthful" are not defined and subject to varying interpretations.  For example, it is not clear whether "identified" refers to determinations made by Freedom Defendants or determinations made by the Government.  It is also unclear what "unsupported," "invalid," and "not accurate or truthful" mean, as there can be—and are—disputes about the evidence sufficient for submitting a Diagnosis Code.  This Definition is therefore vague and ambiguous.  Freedom Defendants further object to this Definition because the terms "unsupported," "invalid," and "otherwise not accurate or truthful" assume disputed factual and legal conclusions.  For the purpose of responding to the Requests and interpreting any Definitions or Instructions that incorporate these terms, Freedom

Defendants interpret "Deleted Code" and "Deletion" to mean a CMS Risk Adjustment Processing System ("RAPS") cluster (i.e., a Health Insurance Claim Number ("HICN") or Medicare Beneficiary Identifier ("MBI"), diagnosis code, date of service from, date of service to, and provider type combination) that is marked with a "D" in the delete indicator field, as reflected in RAPS returns data transmitted to Freedom Defendants by CMS.

     13.    Freedom Defendants object to Relator's Definition of "Diagnosis Code" and "Diagnosis Coding" because the terms "ICD-9," "ICD-10," "other documents associated with a patient encounter," "encounter," "assignment," and "addition" are not defined and subject to varying interpretations.  For example, it is unclear to what "other document associated with a patient encounter" a Diagnosis Code would be "assign[ed] or "add[ed]."  It is also unclear whether "encounter" refers to an inpatient medical visit only or also includes an outpatient medical visit. This Definition is therefore vague and ambiguous. Freedom Defendants further object to this Definition because "other documents associated with a patient encounter" is overly broad and seeks information not relevant or proportional to the allegations at issue in this case.  For example, it is not clear whether "other documents associated with a patient encounter" includes all Documents relating to billing the Beneficiary or otherwise informing the Beneficiary of the results of a medical visit, which are not relevant to the case and not reasonably calculated to lead to admissible evidence.  For the purpose of responding to the Requests and interpreting any Definitions or Instructions that incorporate these terms, Freedom Defendants interpret "ICD-9" to mean the International Classification of Diseases, 9th Revision, Clinical Modification; "ICD-10" to mean the International Classification of Diseases, 10th Revision, Clinical Modification; and "Diagnosis Code" and "Diagnosis Coding" to mean, as a noun, an ICD-9-CM or ICD-10-CM

diagnosis code, and as a verb, the assignment of an ICD-9-CM or ICD-10-CM diagnosis code.

14.     Freedom Defendants object to Relator's Definition of "Employee" because the term "independent contractor" is not defined and subject to varying interpretations.  For example, "independent contractors" could be read to include any individual or entity that Freedom Defendants have done business with.  This Definition is therefore vague and ambiguous.  Freedom Defendants further object to this Definition because the phrase "who have acted at your direction, on Your behalf, or has performed any service for You or under Your name" is not defined and subject to varying interpretations.  For example, "any person . . . [who] has performed any service for You" could include services not solicited by Freedom Defendants performed by persons not relevant to the allegations in Relator's Complaint.  This Definition is therefore vague and ambiguous.  Freedom Defendants further object to this Definition as overly broad and not relevant or proportional to the allegations at issue in this case.  For example, by including an undefined group of "independent contractors," this Definition could be read to request Documents and information from any entity or individual with which Freedom Defendants have ever conducted business, which are not reasonably calculated to lead to admissible evidence.  This Definition is further overly broad because it includes information that is not in the possession, custody, or control of Freedom Defendants. Freedom Defendants further object to this Definition because it seeks information that is protected from disclosure by the attorney-client privilege, work product doctrine, settlement privilege, common interest doctrine, or any other rule of privilege, confidentiality, or immunity provided by law.  For the purpose of responding to the Requests and interpreting any Definitions or Instructions that incorporate this term,

Freedom Defendants interpret "Employee" to mean an individual directly employed by Freedom Defendants.

15.     Freedom Defendants incorporate by reference each of the above-stated Specific Objections to "Diagnosis Codes" and "Chart Review" as if fully set forth within their objections to Relator's Definition of "Risk Adjustment Database." Because the defined term "Risk Adjustment Database" is used nowhere else in Relator's Requests, Freedom Defendants object to Relator's Definition of "Risk Adjustment Database" and its inclusion as a defined term.  Freedom Defendants further object to this Definition because the terms and phrases "database or other data submission systems or methods," "third-party risk adjustment tracking systems," "tracked," "claims and encounter data," "record," "analyze," "process," "prepare," and "other diagnosis information" are not defined and subject to varying interpretations.  For example, it is unclear whether "database or other data submission systems or methods" refers to computer-based applications or something else.  It is also unclear what "tracked," "record," "analyze," "process," and "prepare" mean as they could refer to a provider or patient merely reviewing a Chart or they could refer to a formal audit process.  It is also unclear whether "other diagnosis information" includes only information relating to the submission of a Diagnosis Code to CMS or something else.  This Definition is therefore vague and ambiguous.  Freedom Defendants further object to this Definition as overly broad and not proportional to the allegations at issue in this case to the extent it includes non-Medicare Advantage risk adjustment, which would yield information irrelevant to the case. Freedom Defendants further object to this Definition as overly broad and not relevant or proportional to the allegations at issue in this case to the extent it includes "third-party risk adjustment tracking systems used by providers" and

therefore seeks information that is not in the possession, custody, or control of Freedom Defendants.

16.     Freedom Defendants object to Relator's Definition of "Patient," "Beneficiary," and "Member" because "operate" and "manage" are not defined and subject to varying interpretations.  For example, it is unclear whether the terms "operate" and "manage" refer to the provision of health insurance via a Medicare Advantage health plan or the provision of medical services under a Medicare Advantage health plan.  This Definition is therefore vague and ambiguous. For the purpose of responding to the Requests and interpreting any Definitions or Instructions that incorporate these terms, Freedom Defendants interpret "Patient," "Beneficiary," and "Member" to mean "beneficiary" or "beneficiaries" as those terms are used in Part C of Title XVIII of the Social Security Act, 42 U.S.C. § 1395w-21 et seq. as limited to those beneficiaries enrolled with Freedom Defendants.

## SPECIFIC OBJECTIONS AND RESPONSES TO INSTRUCTIONS

1.     Freedom Defendants incorporate by reference the above-stated Specific Objections to the Definitions of "Freedom Health" and "Optimum Healthcare" as if fully set forth within their objections to Instruction 1.  Freedom Defendants object to Instruction 1 because the phrase "otherwise indicated" is not defined and subject to varying interpretations.  Specifically, it is unclear what language is sufficient for any difference in responses between Freedom Health and Optimum Healthcare to be "otherwise indicated."  This Instruction is therefore vague and ambiguous.  For the purpose of this Instruction, Freedom Defendants interpret "otherwise indicated" as indicated in any part of Freedom Defendants' Responses to Relator's Requests. Freedom Defendants further object to this Instruction to the extent it improperly mischaracterizes or improperly assumes that Freedom Defendants are effectively the same entity or otherwise related beyond what is supported by the facts.  For the

purpose of responding to the Requests, Freedom Defendants will respond collectively unless otherwise noted in the Response.

2.      Freedom Defendants incorporate by reference the above-stated Specific Objections to the Definition of "You" as if fully set forth within their objections to Instruction 2.  Freedom Defendants object to Instruction 2 to the extent it seeks to impose obligations beyond those set forth in the Federal Rules of Civil Procedure, the Handbook on Civil Discovery Practice, any case management order that has been or may be entered in this litigation, or any other law.  In particular, this Instruction's requirement that "[a]ny objections must state whether any responsive materials are being withheld on the basis of that objection" creates an unduly burdensome obligation to search for documents in response to objectionable requests that is not mandated by any of the previously listed sources.  Freedom Defendants further object to this Instruction as overly broad and not relevant or proportional to the allegations at issue in this case because it requires the identification of "responsive materials . . . being withheld on the basis of [an] objection" even where Freedom Defendants' Response otherwise notes or is premised upon uncertainty as to the scope of a particular Request or the responsiveness of particular Documents. For the purpose of responding to the Requests, Freedom Defendants will search for Documents in response to Requests to which they do not object, in whole or in part. Where Freedom Defendants object in part, they will specify what documents they agree to search for.  Further, for the purpose of responding to the Requests, Freedom Defendants agree to comply with the requirements of Rule 34(b).

3.      Freedom Defendants incorporate by reference the above-stated Specific Objections to the Definitions of "You" and "Document" as if fully set forth within their objections to Instruction 3.  Freedom Defendants object to Instruction 3 to the extent it seeks to impose obligations beyond those set forth in the Federal Rules of

Civil Procedure, the Handbook on Civil Discovery Practice, or any case management order that has been or may be entered in this litigation, or any other law.  Freedom Defendants further object to this Instruction because "Electronically Stored Information ('ESI') shall be produced in its native format" is not defined and subject to varying interpretations.  Specifically, it is unclear whether "Electronically Stored Information" includes emails, which can be forwarded, replied to, and altered when produced in native format.  This Instruction is therefore vague and ambiguous.  For the purpose of this Instruction, Freedom Defendants interpret "Electronically Stored Information ('ESI') shall be produced in its native format" as "Microsoft PowerPoint files, Microsoft Excel files, and media files shall be produced in their native format, and, consistent with industry practice, all other files shall be produced as single-page Tag Image File Format ('TIFF') files."   Freedom Defendants further object to this Instruction because it requires that "[a]ll ESI shall be produced with all associated metadata," which is overly broad and seeks information not relevant or proportional to the allegations at issue in this case.  For example, "all associated metadata" could include metadata that is not automatically generated in the regular course of Freedom Defendants' business, which is not relevant to the case and not reasonably calculated to lead to admissible evidence.  Freedom Defendants further object to this Instruction because it requires that "information . . . available in the form of both paper and ESI . . . shall be produced in ESI form, and the paper form shall be maintained during the pendency of the litigation," which is overly broad and unduly burdensome to the extent that it requires Freedom Defendants to maintain exact paper form duplicates of Documents produced in ESI form.  For the purpose of responding to the Requests, where Freedom Defendants produce ESI, Freedom Defendants will do so in accordance with any agreed-upon ESI Protocol once it is entered.  Absent an ESI Protocol, Freedom Defendants agree to the following: (1)

Freedom Defendants will produce Microsoft PowerPoint files, Microsoft Excel files, and media files in native format, and all other files in TIFF format; (2) Freedom Defendants will produce only metadata automatically generated in the regular course of Freedom Defendants' business; and (3) to the extent that the information is available in both paper and ESI form, Freedom Defendants will produce the information in ESI form and will separately retain paper and ESI materials during the pendency of this litigation consistent with their preservation obligations.

4.      Freedom Defendants incorporate by reference the above-stated Specific Objections to the Definition of "You" as if fully set forth within their objections to Instruction 4.  Freedom Defendants object to Instruction 4 as unreasonably burdensome because it imposes obligations beyond those set forth in the Federal Rules of Civil Procedure.  Freedom Defendants further object to this Instruction because it requires that "[i]f responsive ESI is contained in an electronic data storage system . . . you shall provide a complete and accurate description of the information . . . [and] a description of each file, specifying the scope and time period of the information contained therein."  This Instruction is therefore overly broad and seeks information not relevant or proportional to the allegations at issue in this case. Specifically, as written, it requires a description of each and every file pulled from a database, which is unreasonably burdensome and not reasonably calculated to lead to admissible evidence.  Freedom Defendants further object to this Instruction because "a complete and accurate description of the information . . . [and] a description of each file" is not defined and subject to varying interpretations.  This Instruction is therefore vague and ambiguous.  For the purpose of this Instruction, Freedom Defendants interpret "a complete and accurate description of the information . . . [and] a description of each file" as a description of any non-common fields for which the values are not publicly available or readily apparent.   Freedom

Defendants further object to this Instruction because it requires Freedom Defendants to "assign[] or grant[]" Relator "any license," which is overly broad and unduly burdensome and may be inconsistent with Freedom Defendants' own software agreements.  For the purpose of responding to the Requests, if responsive ESI is contained in an electronic data storage system, Freedom Defendants will produce relevant structured data exports in accordance with any agreed-upon ESI Protocol once it is entered.  Absent an ESI Protocol, Freedom Defendants will produce such information in a reasonably usable format such as a delimited text file and will provide a description of any non-common fields for which the values are not publicly available or readily apparent.  Freedom Defendants agree to meet and confer regarding any additional information requested from relevant databases.

5.     Freedom Defendants incorporate by reference the above-stated Specific Objections to the Definitions of "You" and "Document" as if fully set forth within their objections to Instruction 5.  Freedom Defendants object to Instruction 5 because the phrases "other similar containers" and "other identifying information" are not defined and subject to varying interpretations.  For example, it is unclear whether "similar containers" includes immobile or unwieldy containers, and it is further unclear what must be identified by "other identifying information."  This Instruction is therefore vague and ambiguous.  For the purpose of this Instruction, Freedom Defendants interpret "other similar containers that have labels or other identifying information" as other portable containers that have labels identifying or otherwise identify the current contents of the container.  Freedom Defendants further object to this Instruction because "other means of attachment" is not defined and subject to varying interpretations.  For example, "other means of attachment" could countenance Documents that are stuck or folded together without apparent purpose. This Instruction is therefore vague and ambiguous.  For the purpose of this

Instruction, Freedom Defendants interpret "other means of attachment" as other conventional mechanisms for the grouping of similar documents. For the purpose of responding to the Requests, Freedom Defendants will produce any responsive Documents to which this Instruction applies consistent with Freedom Defendants' above objections. Further, Freedom Defendants agree to comply with the requirements of the Federal Rules of Civil Procedure and the Handbook on Civil Discovery Practice.

6.      Freedom Defendants incorporate by reference the above-stated Specific Objections to the Definition of "Communications" as if fully set forth within their objections to Instruction 6. Freedom Defendants object to Instruction 6 because it requires that "[a]ll text communications . . . be produced in a manner that indicates the dates of the communications, all recipients of the communication, any attachments to the communications, and with any condensed texts expanded to show the full message," which is overly broad and seeks information not relevant or proportional to the allegations at issue in this case. Specifically, "[a]ll text communications" includes those text communications for which dates, recipients, attachments, and expanded messages may not be reasonably available to Freedom Defendants. To the extent that such information is not reasonably available to Freedom Defendants, this Instruction is unreasonably burdensome and not reasonably calculated to lead to admissible evidence. Freedom Defendants further object to this Instruction as overly broad and not relevant or proportional to the allegations at issue in this case to the extent it does not contain any modifier that Freedom Defendants produce the requested information "as completely as possible." For the purpose of responding to the Requests, Freedom Defendants will state the information requested in this Instruction as completely as possible. For the purpose of responding to the Requests, Freedom Defendants will produce any text

communications in a manner that indicates dates, recipients, and attachments to the extent such information is reasonably available to Freedom Defendants.

7.     Freedom Defendants incorporate by reference the above-stated Specific Objections to the Definition of "Document" as if fully set forth within their objections to Instruction 7.  Freedom Defendants object to Instruction 7 because it requires that "a field indicating the responsive request in the corresponding load file in a manner than enables the documents to be sorted by the request(s) to which each document is responsive," which imposes obligations beyond those set forth in the Federal Rules of Civil Procedure, the Handbook on Civil Discovery Practice, any case management order that has been or may be entered in this litigation, or any other law.  For the purpose of responding to the Requests, Freedom Defendants will produce Documents in a format consistent with Freedom Defendants' obligations under the Federal Rules of Civil Procedure, in particular Rule 34(b)(2)(E), and the Handbook on Civil Discovery Practice.

8.     Freedom Defendants incorporate by reference the above-stated Specific Objections to the Definitions of "You" and "Document" as if fully set forth within their objections to Instruction 8.  Freedom Defendants object to Instruction 8 to the extent it seeks to impose obligations beyond those set forth in the Federal Rules of Civil Procedure, the Handbook on Civil Discovery Practice, any case management order that has been or may be entered in this litigation, or any other law.  Freedom Defendants further object to this Instruction because the terms "description," "subject matter of the document," and "promptly" are not defined and subject to varying interpretations.  For example, the "subject matter of the document" can— and often does—mean different things to different readers.  Further, "promptly" could be interpreted to mean within hours, days, or weeks. This Instruction is therefore vague and ambiguous.  For the purpose of responding to this Instruction,

Freedom Defendants interpret "description of the subject matter of the document" as Freedom Defendants' understanding of the Document's contents, and "promptly" as within a reasonable time after completing Freedom Defendants' Responses and Document productions. Freedom Defendants further object to this Instruction as overly broad and not relevant or proportional to the allegations at issue in this case to the extent that it purports to require Freedom Defendants to log any privileged or protected Document, information, or Communication and requires Freedom Defendants to produce a privilege log before they complete their Responses or Document production in response to the Requests. Freedom Defendants further object to this Instruction as overly broad and not relevant or proportional to the allegations at issue in this case to the to the extent that it requires Freedom Defendants to list on a privilege log (1) communications between a Party and its outside counsel, an agent of outside counsel other than the Party, any non-testifying experts, or testifying experts, or (2) privileged materials or work product, including attachments thereto, created or received by its outside counsel, an agent of outside counsel other than the Party, any non-testifying experts, or testifying experts. For the purpose of responding to the Requests, to the extent Freedom Defendants withhold any otherwise responsive Documents in response to the Requests on the basis of an applicable privilege or other protection, Freedom Defendants will produce a privilege log within a reasonable time after completing their Responses and Document productions. Further, Freedom Defendants agree to comply with the requirements of Rule 26(b).

9.      Freedom Defendants incorporate by reference the above-stated Specific Objections to the Definition of "Document" as if fully set forth within their objections to Instruction 9. Freedom Defendants object to Instruction 9 to the extent it seeks to impose obligations beyond those set forth in the Federal Rules of Civil

Procedure, the Handbook on Civil Discovery Practice, any case management order that has been or may be entered in this litigation, or any other law.  Freedom Defendants further object to this Instruction as overly broad and not relevant or proportional to the allegations at issue in this case to the extent it does not contain any modifier that Freedom Defendants state the requested information "as completely as possible."  For the purpose of responding to the Requests, Freedom Defendants will state the information requested in this Instruction as completely as possible.  Freedom Defendants further object to this Instruction because the terms "having knowledge of" and "last known location" are not defined and subject to varying interpretations.  In particular, it is unclear whose knowledge these terms encompass.  This Instruction is therefore vague and ambiguous.  For the purpose of this Instruction, Freedom Defendants interpret "having knowledge of" a Document's "last known location" as actually knowing both that a Document was destroyed and where the Document was stored immediately prior to destruction.  Freedom Defendants further object to this Instruction because the term "document destruction policy" is not defined and subject to varying interpretations.  For example, "document destruction policy" could refer to an entity's guidelines for the type of paper shredder to use for Documents containing protected health information.  For the purpose of this Instruction, Freedom Defendants interpret "document destruction policy" as a written policy that details rules and processes for destroying Documents. For the purpose of responding to the Requests, Freedom Defendants state that they have complied with their preservation obligations and will produce responsive, non-privileged Documents consistent with their responses to Relator's requests.

10.    For the purpose of responding to the Requests, Freedom Defendants will treat the relevant time period as January 1, 2015 to December 31, 2020, consistent with the Court's November 29, 2023 Order (Doc. 169).

## SPECIFIC OBJECTIONS AND RESPONSES TO REQUESTS

**Request No. 40:**

All documents reviewed, analyzed, consulted, discussed, or used in any manner to prepare for deposition by any witness designated by Freedom Defendants to respond to Relator's 30(b)(6) deposition notice.

**Objections and Response to Request No. 40:**

Freedom Defendants incorporate by reference each of the above-stated General Objections and Specific Objections to the Definitions and Instructions as if fully set forth herein.

Freedom Defendants object to Request 40 because the phrase "reviewed, analyzed, consulted, discussed, or used in any manner to prepare for deposition" contains terms that are not defined and are subject to varying interpretations in the context of the Request.  For example, as written, this Request would require the production of attorney work product, including attorney mental impressions, as such information may be "discussed" with Freedom Defendants' corporate representatives during their testimony preparation and as such is also "used by" the corporate representatives.  Furthermore, the catchall phrase "used in any manner to prepare for deposition" is so vague and potentially so broad that Freedom Defendants cannot determine what Relator contemplates with its inclusion.

Freedom Defendants further object to this Request to the extent it seeks information that is protected from disclosure by the attorney-client privilege, work product doctrine, common interest protection, or any other rule of privilege,

confidentiality, or immunity provided by law.  The selection of documents for deposition preparation, even for a Rule 30(b)(6) witness, constitutes attorney work product because it reflects attorneys' mental impressions and thought processes.  *See Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.*, 2013 WL 1776433, at *3 (S.D. Ill. Apr. 25, 2013) ("Opposing counsel, therefore, should not be permitted to inquire as to which, if any, of the documents a witness reviewed were selected by his or her counsel."); *In re Managed Care Litig.*, 415 F. Supp. 2d 1378 (S.D. Fla. 2006) (denying a motion to compel a document reviewed by a Rule 30(b)(6) witness).

Freedom Defendants further object that this request is premature as Freedom Defendants' Rule 30(b)(6) deposition has not yet occurred and Relator has not made the required showing for discovery of such documents.  *See Medtronic Xomed, Inc. v. Gyrus ENT LLC*, 2006 WL 786425 (M.D. Fla. Mar. 27, 2006) (holding that "simply looking at a document is not sufficient to trigger Rule 612," which "requires Plaintiff to meet three conditions before it is entitled to production of the contested document: (1) the witness must have used the writing to refresh his memory; (2) the witness must have used the writing for the purpose of testifying; and (3) the court must determine that production is necessary in the interests of justice"); *Dugas v. 3M Co.*, 2015 WL 12839759 (M.D. Fla. June 22, 2015).  Freedom Defendants do not waive and hereby assert and preserve all such applicable privileges and protections.

Subject to and without waiving any of these objections, Freedom Defendants respond as follows: Freedom Defendants will not produce Documents responsive to this Request.

**Request No. 41:**

All medical and billing records related to any Physician Partners patient whose services were paid in whole or in part by any Government health insurance program. This request specifically includes, but is not limited to, all 5 Star Checklists provided to and/or completed by a provider, primary care and specialist provider notes, diagnostic test results, medication lists, problem lists, and all diagnosis codes associated with that patient whether by a provider, as a result of a chart review, or by any other source.

**Objections and Response to Request No. 41:**

Freedom Defendants incorporate by reference each of the above-stated General Objections and Specific Objections to the Definitions and Instructions as if fully set forth herein.

Freedom Defendants object to Request 41 because it is overly broad, unduly burdensome, not relevant to the case, and not reasonably likely to lead to the discovery of admissible evidence to the extent it requests "services [] paid in whole or in part by any Government health insurance program" beyond the Medicare Advantage program at issue in this litigation. For example, "any Government health insurance program" would also include Medicaid, TRICARE, and other government health insurance programs that are wholly unrelated to Realtor's allegations. Because government programs other than Medicare Advantage are not implicated by the Complaint, medical and billing records for individuals who are not Medicare Advantage Beneficiaries are not relevant to the case and are not reasonably calculated to lead to admissible evidence. Freedom Defendants will interpret this request to be

limited to the Medicare Advantage program.

Likewise, Freedom Defendants further object to the Request as overly broad and unduly burdensome to the extent it seeks "all" medical and billing records related to "any Physician Partners patient" and does not limit the records to those patients Relator's allegations have placed at issue in the litigation. This Request therefore does not provide reasonable criteria to determine the responsiveness of particular Documents. For the purpose of this Request, Freedom Defendants interpret "any Physician Partners patient" to mean the twenty Freedom Defendant Beneficiaries named in the crosswalk provided by Relator as an attachment to a January 10, 2023 email from Jillian Estes at Morgan Verkamp, LLP.

Furthermore, Defendants object that the terms "medical and billing records" are not defined and subject to varying interpretations as to which types of records would constitute "medical" or "billing" records beyond those specifically listed in Relator's request. For example, "medical" records "related to any Physician Partners patient" could be read to include Documents relating to services performed decades before the individual became a Beneficiary with Freedom Defendants. Similarly, "billing records related to any Physician Partners patient" could be read to include invoices sent to Freedom Defendants for the cost of mailing and electronically storing a patient's medical records. Additionally, the phrase "problem lists" is not defined and subject to varying interpretations. For example, "problem lists" could be read to include records showing that the provider had problems obtaining records from the prior provider. Furthermore, the phrase "specifically

includes, but is not limited to" creates a limitless scope for the Request that further obfuscates what Documents Relator seeks.  Additionally, Freedom Defendants further object to the Request because it assumes the disputed factual and legal conclusions that the listed documents, such as 5 Star Checklists, are part of a patient's "medical and billings records."  This Request is therefore vague and ambiguous and does not provide reasonable criteria to determine the responsiveness of particular Documents.

Freedom Defendants further object to this Request as unduly burdensome and not proportional to the needs of the case because it calls for Freedom Defendants to produce the medical records of Provider Defendants' patients, which are more conveniently and comprehensively available from Provider Defendants, who were served with an identical request.  (*See* Request No. 43, Relator's Second Request for Production to Physician Partners, LLC, February 19, 2024.)  For example, provider notes, diagnostic test results, and medication lists are all Documents that would be in Provider Defendants' possession, custody, or control, and which Provider Defendants' employees or contractors—not Freedom Defendants' employees or contractors—would have authored or been otherwise involved in procuring for any given patient's medical records.  Indeed, Freedom Defendants are not in possession of "[a]ll medical and billing records related to any Physician Partners patient whose services were paid in whole or in part by" the government as part of the Medicare Advantage program, as such records are not collected by Freedom Defendants for every patient and are not reviewed for every

patient.  Freedom Defendants collect and review a subset of medical records in the ordinary course of business that are specific to the needs of their compliance and auditing programs.  Because Relator has not identified the specific, allegedly false diagnosis codes at issue beyond those listed in her operative complaint, Freedom Defendants cannot determine what records in their possession, if any, are relevant to this litigation.

Subject to and without waiving any of these objections, Freedom Defendants respond as follows: To the extent Freedom Defendants have not already produced the responsive Documents, Freedom Defendants will not produce Documents responsive to this Request.  Freedom Defendants refer Relator to Provider Defendants' productions in response to the identical request propounded on them.

Dated:  March 20, 2024          Respectfully submitted,

By:  _/s/ Scott Drake_

      Scott Drake (Lead Counsel)*
      O'MELVENY & MYERS LLP
      2801 North Harwood Street, Suite 1600
      Dallas, TX 75201
      (972) 360-1915
      (972) 360-1901 (fax)
      sdrake@omm.com

      Benjamin D. Singer*
      Amanda M. Santella*
      O'MELVENY & MYERS LLP
      1625 Eye Street NW
      Washington, DC 20006
      (202) 383-5300
      (202) 383-5414 (fax)
      bsinger@omm.com
      asantella@omm.com

      Elizabeth M. Bock*
      Elizabeth A. Arias*
      O'MELVENY & MYERS LLP
      400 South Hope Street, 18th Floor
      Los Angeles, CA 90071
      (213) 430-6000
      (213) 430-6407 (fax)
      ebock@omm.com
      earias@omm.com

      Ginger Boyd
      Fla. Bar No. 294550
      NELSON MULLINS RILEY &
      SCARBOROUGH LLP
      215 South Monroe Street, Suite 400
      Tallahassee, FL 32301
      (850) 205-3356
      (850) 521-1472 (fax)
      Ginger.Boyd@nelsonmullins.com

      *Counsel for Defendants Freedom Health, Inc. and Optimum Healthcare, Inc.*

      * *admitted pro hac vice*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 20, 2024, I electronically caused a true and correct copy of the foregoing to be served by electronic mail to all counsel of record on the service list below.

By: */s/ Nathan Tschepik*

Nathan Tschepik
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
(202) 383-5414 (fax)
ntschepik@omm.com

*Counsel for Defendants Freedom Health, Inc. and Optimum Healthcare, Inc.*

Service List:

| | |
|---|---|
| A. Lee Bentley III<br>Kyle W. Robisch<br>Giovanni P. Giarratana<br>BRADLEY ARANT BOULT<br>CUMMINGS LLP<br>100 North Tampa Street, Suite 2200<br>Tampa, Florida 33602<br>Phone: (813) 559-5500<br>lbentley@bradley.com<br>krobisch@bradley.com<br>ggiarratana@bradley.com | Counsel for Defendants Florida Medical<br>Associates, LLC, Physician Partners,<br>LLC, and Anion Technologies, LLC |
| Jason P. Mehta<br>Joseph Warren Swanson<br>Lauren Lisette Valiente<br>Michael P. Matthews<br>FOLEY & LARDNER LLP<br>100 N. Tampa Street, Suite 2700<br>Tampa, FL 33602<br>Phone: (813) 225-5424<br>jmehta@foley.com<br>nhadams@foley.com<br>jjoseph@foley.com<br>joe.swanson@foley.com<br>lvaliente@foley.com<br>mmatthews@foley.com | Counsel for Defendants Florida Medical<br>Associates, LLC, Physician Partners,<br>LLC, and Anion Technologies, LLC |
| Jillian L. Estes<br>Frederick M. Morgan, Jr.<br>Chandra Napora<br>Jonathan Lischak<br>Jennifer M. Verkamp<br>MORGAN VERKAMP LLC<br>4410 Carver Woods Drive, Suite 200<br>Cincinnati, OH 45242<br>Phone: (513) 651-4400<br>jillian.estes@morganverkamp.com<br>rmorgan@morganverkamp.com<br>chandra.napora@morganverkamp.com<br>jonathan.lischak@morganverkamp.com<br>jverkamp@morganverkamp.com | Counsel for Relator Dr. Clarissa Zafirov |

FREEDOM DEFS.' RESPS. AND OBJS. TO RELATOR'S SECOND
SET OF REQS. FOR PRODUC. OF DOCS.
CASE NO. 8:19-CV-01236-KKM-SPF

Adam T. Rabin                                   Counsel for Relator Dr. Clarissa Zafirov
Havan M. Clark
RABIN KAMMERER JOHNSON
1601 Forum Place, Suite 201
West Palm Beach, FL 33401
Phone: (561) 659-7878
arabin@rkjlawgroup.com
hclark@rkjlawgroup.com

Kenneth J. Nolan                                Counsel for Relator Dr. Clarissa Zafirov
Marcella Auerbach
NOLAN & AUERBACH, PA
435 N Andrews Ave, Suite 401
Ft Lauderdale, FL 33301
Phone: (954) 779-3943
ken@whistleblowerfirm.com
marcella@whistleblowerfirm.com