# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

UNITED STATES OF AMERICA *ex rel.* DR. CLARISSA ZAFIROV,

    Plaintiff/Relator,

v.

PHYSICIAN PARTNERS, LLC; FLORIDA MEDICAL ASSOCIATES, LLC, d/b/a VIPCARE; ANION TECHNOLOGIES, LLC; FREEDOM HEALTH, INC.; and OPTIMUM HEALTHCARE, INC.,

    Defendants.

Case No. 8:19-cv-01236-KKM-SPF

**DEFENDANTS FREEDOM HEALTH, INC. AND OPTIMUM HEALTHCARE, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO REQUEST FOR PRODUCTION NO. 11**

## I.   INTRODUCTION

Under Federal Rule of Civil Procedure 37, Defendants Freedom Health, Inc. and Optimum Healthcare, Inc. (collectively, "Freedom Defendants") move to compel Relator Dr. Clarissa Zafirov ("Relator") to produce a single document in response to one request for production: "All Agreements between Relator and Dr. George Mansour."

Dr. Mansour and Relator are both physicians who contracted with co-defendant Physician Partners, LLC ("Physician Partners"), and both filed *qui tam* actions against Physician Partners and Freedom Defendants. Dr. Mansour filed, voluntarily dropped, refiled, and voluntarily re-dropped his *qui tam* claims. Dr. Mansour is a critical witness in this case, and Relator has admitted in discovery responses that she and Dr. Mansour have a financial agreement that requires Relator to share 30% of any money she recovers from this litigation. Relator has thus acknowledged that an award-sharing agreement exists, **but refuses to produce it**. Instead, Relator purports to have satisfied her discovery obligations by describing one provision of the agreement: the fee-sharing provision.

Disclosing only that provision establishes that *other* facets of the agreement are both highly relevant and non-privileged. The fee-sharing agreement is plainly relevant because Relator's agreement to share a substantial portion of any award must be supported by some consideration. The nature of that consideration offered to Relator may be critical for purposes of impeaching two key witnesses in this case—Relator and Dr. Mansour. Disclosure of the agreement may reveal, for instance, that Dr. Mansour

agreed to give favorable testimony in this case, or to provide documents to Relator, or to dismiss his own *qui tam* claims; whatever the agreement reveals, Freedom Defendants are entitled to know. Relator's privilege objections are similarly unavailing. While Relator has refused to include the agreement on her privilege log, Relator has asserted privilege over the entire agreement because it purportedly also contains a common interest agreement drafted in anticipation of litigation. Even if certain provisions of the agreement are properly privileged, Relator has not explained how provisions relating to a *business arrangement* between her and Dr. Mansour can possibly be privileged. Nor can she—Relator has already disclosed her side of her bargain with Dr. Mansour (implicitly recognizing that no relevant privilege exists), and Freedom Defendants are entitled to discover what Dr. Mansour offered in return. Freedom Defendants request that the Court compel Relator to produce the agreement.

## II. STATEMENT OF FACTS

Freedom Defendants first requested the award-sharing agreement at issue on December 23, 2022.[1] Relator responded on February 21, 2023 that she "will produce non-privileged documents responsive to this Request."[2] On February 26, 2024, in her supplemental response to interrogatories served by co-defendant Physician Partners, asking Relator to "Describe in detail every fact concerning the nature of your relationship with Dr. George Mansour, including, without limitation, any agreements

---

[1] Freedom Defendants' First Requests for Production, Request for Production No. 11, at 9. Drake Decl., **Ex. A**, at 9 (requesting "All Agreements between [Relator] and Dr. George Mansour.").
[2] Relator's Response to Freedom Defendants' First Requests for Production, Drake Decl., **Ex. B**, at 8.

or contracts between you and Dr. George Mansour related to the Amended Complaint or this litigation," Relator responded that she and Dr. Mansour "have an agreement that establishes the division of any relator's share resulting from the instant matter. Specifically, should a relator's share result from this action, Relator shall retain 70% of such share, and Dr. Mansour shall receive 30%."[3]

Freedom Defendants received Relator's privilege log on April 1, 2024. Relator's Privilege Log, Drake Decl., **Ex. C**. Relator did not include the agreement on the log. Given that the agreement was *not* produced during discovery, nor included on the privilege log, Freedom Defendants contacted counsel for Relator on May 6 to request production of the agreement in response to Request for Production No. 11, which was served on Relator almost a year and a half prior. 5/6/24 Email thread from C. Nagle to J. Estes, Drake Decl., **Ex. D**.

Ms. Estes, counsel for Relator, responded on May 21 with vague claims that the award-sharing agreement in general is not "relevant," that she believed the "relevant" parts of it had been provided in response to interrogatories, and that "the remainder of the agreement is not produced **or** logged based on relevance objections." *Id.* at 2 (emphasis added). Ms. Estes further claimed that "even if the whole of the agreement were to be relevant, it is well protected by attorney work product" and cited two cases referencing the common interest privilege.

---

[3] Relator's First Supplemental Response to Defendant Physician Partners, LLC's First Set of Interrogatories, Drake Decl. **Ex. E**, at 1-3.

On May 6, Freedom Defendants renewed their request that Relator produce documents in response to Request for Production No. 11, and noted that "Freedom Defendants reserve the right to seek relief from the Court regarding the deficiencies in Relator's log." 5/6/24 Email thread from C. Nagle to J. Estes, Drake Decl., **Ex. D** at 4. Freedom Defendants further noted that "the fact that you have claimed privilege over this document, but failed to include it in Relator's log causes us to question what other documents Relator may be withholding without disclosing them." *Id.* at 5.

Relator submitted an amended privilege log on May 28, and still did not include the agreement on her log. ECF No. 275-1. Freedom Defendants then emailed counsel for Relator on the same day to reiterate that the parties have met-and-conferred extensively regarding the production of this document since December 2022, when Freedom Defendants first requested it, and that Relator has neither produced it nor logged it in her Amended Privilege Log. Freedom Defendants then informed Relator that they would seek appropriate relief after 12:00 pm on May 29 if Relator continued to maintain that the document need not be produced. 5/28/24 Email thread from C. Nagle to J. Estes, Drake Decl., **Ex. F** at 2-3. Relator responded on May 29 "Relator will serve a supplemental interrogatory response today." *Id.* at 1.

Relator produced the supplemental interrogatory response on the afternoon of May 29, noting that the document at issue is actually a single document that "was drafted by counsel in the anticipation of litigation, and was executed by Relator, Dr. Mansour, and by counsel of record in this matter. The agreement was entered into solely for the purposes of litigation and is a protected communication under the

attorney client privilege and the attorney work product doctrine . . . The agreement between Relator, Dr. Mansour, and counsel to jointly litigate this matter also reflects an agreement on the division of any relator's share resulting from the instant matter." Relator's Second Supplemental Response to Defendant Physician Partners, LLC's First Set of Interrogatories, Drake Decl., **Ex. G**, at 5-6.

### III.  LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*  A party cannot simply declare an item privileged and, thereby, prevent discovery or further inquiry.  Instead, the Federal Rules require that the party (1) "expressly make the claim" of privilege and (2) "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A); *League of Women Voters of Fla., Inc. v. Lee*, 340 F.R.D. 446, 453 (N.D. Fla. 2021) (citing *In re Grand Jury Investigation*, 842 F.2d 1223, 1225 (11th Cir. 1987)); *Gazzara v. Pulte Home Corp.*, No. 6:16-cv-657-Orl-31TBS, 2016 WL 7335479, at *4 (M.D. Fla. Dec. 16, 2016) (The party asserting a privilege "bears the burden to provide a factual basis for its assertions.") (quotation omitted).

The relevancy requirement of Rule 26 is construed broadly, and material is deemed relevant if it bears upon or reasonably could bear upon an issue that is or may

be involved in the litigation. *See Roseman Profit Sharing Plan v. Sports & Recreation*, 165 F.R.D. 108, 110 (M.D. Fla. 1996) (citing *Nat'l Serv. Ind., Inv. v. Vafla Corp.*, 694 F.2d 246, 250 (11th Cir. 1982)).

## IV.   ARGUMENT

### A.   The Award-Sharing Agreement Between Dr. Mansour and Relator is Relevant.

The requested agreement between Dr. Mansour and Relator is relevant to Freedom Defendants' defenses for two main reasons.

*First*, the agreement is important to assessing Relator's credibility. Courts across the country have consistently recognized that a relator's credibility can be a critical component of discovery in False Claims Act cases. *See, e.g., United States ex rel. Harman v. Trinity Indus.*, No. 2:12-CV-00089-JRG, 2014 U.S. Dist. LEXIS 191815, at *8 (E.D. Tex. July 11, 2014) (permitting discovery "relevant to the Relator's credibility"); *Graves v. Plaza Med. Ctrs., Corp.*, No. 10-23382-CIV-MORENO/O'SULLIVAN, 2017 U.S. Dist. LEXIS 143563, at *7 (S.D. Fla. Sep. 6, 2017) (permitting introduction of evidence "relevant to the issue of the relator's credibility"). And parties are entitled to discovery of information which may relate solely to the credibility of a witness. *See Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 603 (C.D. Cal. 1995). Any agreement to share an award may shed light on Relator's motivation for bringing her *qui tam* case, and the agreement may be used to impeach her at trial regarding her motivations, her relationship with Dr. Mansour, and how she gathered any evidence in support of her claims and the veracity of that

evidence.

*Second*, the agreement is important to Freedom Defendants' ability to defend against any evidence provided by Dr. Mansour or originating from Dr. Mansour's involvement in the case. "Even if the information is only useful for purposes of impeachment or corroboration, it may still be discoverable whether or not it will ultimately be admissible in evidence at trial." *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, No. 07-22988-CIV, 2008 WL 2645680, at *2 (S.D. Fla. June 26, 2008) (citing *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)); *Jeld-Wen, Inc. v. Nebula Glass Int'l, Inc.*, No. 05-60860-CIV, 2007 WL 1526649, *2 (S.D. Fla. May 22, 2007). "Thus evidence that may demonstrate bias, an interest in the outcome of the litigation, or a motive to testify in a certain way can be discoverable prior to trial." *Buckley*, 2008 WL 2645680, at *2.

Like all contracts, Dr. Mansour must have offered something in return for a share of any relator award, but Relator is refusing to permit Freedom Defendants to evaluate what he offered. It is possible that the agreement required Dr. Mansour to drop his own *qui tam* claims, to provide testimony in support of Relator's claims, or to provide Relator with information or other evidence in support of her claims. But due to Relator's refusal to produce the document, Freedom Defendants have no way of knowing what was offered, and in turn, are unable to defend adequately against any evidence that Dr. Mansour may provide in this case—evidence that he may provide or has provided after he had already voluntarily dropped his own *qui tam* claims yet remained financially motivated by the *Zafirov* matter.

### B. Relator Fails to Satisfy Her Burden to Show that any Privilege Applies.

Relator fails to satisfy her burden of establishing that any privilege applies to the entire agreement. "The party asserting a privilege bears the burden to show that the privilege applies." *See*, *e.g.*, *League of Women Voters of Fla.,* 340 F.R.D. at 453. This is true whether the claim of privilege asserted is one of work product or common interest.[4] Based on Relator's supplemental discovery responses served on May 29, it appears that Relator's counsel combined what she claims is a common interest agreement with a business agreement to share awards. This is a transparent attempt to conceal non-privileged facts in a document in order to prevent its details from being discovered in litigation.

Given what Relator has revealed about her agreement with Dr. Mansour, the award-sharing agreement involves details about the arrangement to share any financial award resulting from this litigation, at best akin to a fee agreement or settlement agreement. These sorts of agreements are more likely to present privilege issues because of the tighter relation to attorney-client relationships, but courts have held that even these types of agreements are not typically privileged. Fee agreements are generally not privileged because the agreements typically contain factual information rather than privileged communications. *See Universal City Department Partners, Ltd. v.*

---

[4] *Smith v. USAA Cas. Ins. Co.*, 658 F. Supp. 3d 1054, 1060 (N.D. Fla. 2023) ("The party asserting the protection of the work product doctrine bears the burden of showing it applies to a particular item(s) sought in discovery.") (citing *Rep. of Ecuador v. Hinchee*, 741 F.3d 1185, 1189 (11th Cir. 2013)); *United States v. Patel*, 509 F. Supp. 3d 1334, 1340 (S.D. Fla. Dec. 23, 2020) ("The burden of establishing the common interest privilege is on the party asserting it.").

-8-

*Ride & Show Engineering, Inc.*, 230 F.R.D. 688, 691 (M.D. Fla. 2005). Similarly, "a confidential settlement agreement is not privileged and the mere fact that parties agree to maintain the confidentiality of their agreement does not serve to shield the information from discovery," especially to establish bias on the part of those entities subject to any agreement. *Navigators Ins. Co. v. Elton Porter Maine Ins. Co.*, 8:10-cv-266-T-26TBM, 2010 WL 11629259, at *1 (M.D. Fla. July 27, 2010). There is no indication that the award-sharing portion and details of the agreement is anything more than a desire to see the same outcome in a legal matter, which is not sufficient to show that the award-sharing agreement is subject to a claim of privilege.

Whether privilege exists is a fact-intensive analysis that depends on the specific type of privilege claimed, and even with the additional details shared by Relator at the last possible moment, it is impossible to determine whether the agreement satisfies the requirements laid out by the Eleventh Circuit for any potential claim of privilege. Although Relator stated that the agreement was entered into "solely for the purposes of litigation" and "in anticipation of litigation," Drake Decl., **Ex. G**, at 5-6, she has provided *no information* regarding the date on which the agreement was entered, when any communications about the agreement first began, with whom the agreement was shared, whether the agreement actually contains any legal advice from any party's attorney, or any counsel's thoughts or mental impressions, or any information that would enable Freedom Defendants assess the validity of Relator's claim of privilege.[5]

---

[5] The work-product protection analysis requires the fact-specific determination of whether "the primary motivating purpose behind the creation of the document [is] to help in ongoing litigation or

-9-

The cases Relator's counsel referenced in her email and in her supplemental response also do not support her position that the agreement need not be logged and is necessarily subject to a claim of privilege. In *Adp v. Ultimate Software Group, Inc.*, the court found that a common interest agreement—not a fee sharing agreement—prepared in anticipation of litigation was protectable as work product. No. 17-cv-61274-MIDDLEBROOKS, 2017 WL 7794226, at *5 (S.D. Fla. Dec. 15, 2017). Before reaching that conclusion, the court found that indemnity and joint defense agreements "may be relevant" to the litigation and should be produced unless they are withheld on the basis of privilege, as reflected on a privilege log. *Id.* at *1 (quotation omitted). In the second case Relator referenced, the court found that a privilege objection to the production of common interest agreement *may* be well-taken, but that a privilege log must be produced in response to the extent the party requesting objects on the grounds of privilege. *Axon Enter. Inc. v. Venjuris PC*, No. 6:22-mc-36-PGB-LHP, 2023 WL 1796436, at *15 (M.D. Fla. Feb. 7, 2023). Contrary to Relator's claim, nowhere did the court state that privilege objections are only logged when there is no attendant relevance objection. *See generally id.*

It is also not clear that the common interest doctrine necessarily applies. Common interest agreements are created so that parties or entities may share privileged information to advance a common *legal* interest, as opposed to a common

---

possible future litigation." *Schuller v. Geovera Specialty Ins. Co.*, No. 8:16-cv-2606-T-35AAS, 2018 WL 11344857, at *2 (M.D. Fla. Dec. 6, 2018) (quotation omitted). Furthermore, work-product protection, in particular, can be overcome as to "factual work product" on a showing of "substantial need" and "undue hardship." *Drummond Co. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1335 (11th Cir. 2018).

commercial or financial interest. *See Spencer v. Taco-Bell, Corp.*, 8:12-cv-387-T-23TBM, 2013 WL 12156093, at *3 (M.D. Fla. Apr. 23, 2013); *Infinite Energy, Inc. v. Econnergy Energy Co.*, No. 1:06-CV-124-SPM/AK, 2008 WL 2856719, at *2 (N.D. Fla. July 23, 2008) (privilege is not intended to bar discovery of communications "when the primary common interest is a joint business strategy that happens to include a concern about litigation"). "The common interest doctrine is not an independent source of privilege, but rather acts as an exception to the general rule that a voluntary disclosure of privileged material to a third party waives the attorney-client privilege." *Lane Constr. Corp. v. Skanska USA Civ. Se., Inc.*, No. 6:21-cv-164-RBD-DCI, 2022 WL 18773723, at *1 (M.D. Fla. Nov. 7, 2022) (quotation omitted). And, so, "[i]t is axiomatic that the common interest doctrine presumes a valid underlying privilege." *In re Photochromic Lens Antitrust Litig.*, No. 8:10-MD-2173-T-27EAJ, 2013 WL 12316874, at *2 (M.D. Fla. June 11, 2013) (quotation omitted). Relator has provided no information about what portion of the document focuses on any elements related to Relator's and Dr. Mansour's "joint prosecution" of the matter such that portions of the agreement involve attorney-client communications or work product, or whether those elements are incidental to the agreement to share awards. Indeed, it may well be the case that Relator's and Dr. Mansour's *legal* interests were diametrically opposed, at least before Dr. Mansour agreed to drop his *qui tam* claims against the defendants. Only one *qui tam* relator may pursue particular *qui tam* claims at any given time under the FCA's "first-to-file" provision, *see* 31 U.S.C. § 3730(b)(5). This rule put Relator and Dr.

Mansour at odds, at least before Dr. Mansour dropped his *qui tam* claims, and the first-to-file rule may well have been the precipitating factor underpinning the agreement. Relator's vague assertion of a "common interest" with Dr. Mansour falls to pieces under any examination of the relevant facts.

Further, even if a portion or portions of the agreement *were* protected by privilege, courts routinely order that redacted versions of agreements be produced, rather than permit a complete withholding of the document. *See Arthrex, Inc. v. Parcus Med.*, LLC, Case No: 2:11-cv-694-FtM-29SPC, 2012 WL 3778981, at *6 (M.D. Fla. Aug. 31, 2012); *Jeld-Wen, Inc.*, 2008 WL 756455, at *4. Relator has not satisfied her burden to show that the agreement is privileged.

## V.  CONCLUSION

For the foregoing reasons, the Court should grant Freedom Defendants' narrow request for relief and compel Relator to produce the agreement to share awards in this case that exists between Relator and Dr. Mansour.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Freedom Defendants conferred with counsel for Relator regarding the relief requested in this Motion, and Relator does not agree to produce the requested document.

Respectfully submitted, this 29th day of May, 2024,

/s/ Scott Drake
Scott Drake (Lead Counsel)*
O'MELVENY & MYERS LLP
2801 North Harwood Street
Suite 1600
Dallas, TX 75201
(972) 360-1900
sdrake@omm.com

Benjamin D. Singer*
Amanda M. Santella*
William Buffaloe*
Kelly McDonnell*
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
bsinger@omm.com
asantella@omm.com
wbuffaloe@omm.com
kmcdonnell@omm.com

Catherine Nagle*
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
(212) 326-2000
cnagle@omm.com

Ginger Boyd
Fla. Bar No. 294550
NELSON MULLINS RILEY &

SCARBOROUGH LLP
215 South Monroe Street, Suite 400
Tallahassee, FL 32301
(850) 205-3356
ginger.boyd@nelsonmullins.com
*Counsel for Defendants Freedom Health, Inc. and Optimum Healthcare, Inc.*

\* *admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2024, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will provide electronic service to all counsel of record.

By: /s/ Scott Drake

Scott Drake*

*Counsel for Freedom Defendants*
* *admitted pro hac vice*