# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* DR. CLARISSA ZAFIROV, | ) ) ) |
| Plaintiff and Relator, | ) ) ) |
| v. | ) No. 8:19-cv-01236-KKM-SPF ) |
| PHYSICIAN PARTNERS, LLC; FLORIDA MEDICAL ASSOCIATES, LLC, d/b/a VIPCARE; ANION TECHNOLOGIES, LLC; FREEDOM HEALTH, INC.; and OPTIMUM HEALTHCARE, INC., | ) ) ) ) ) ) |
| Defendants. | ) ) |

## RELATOR'S MOTION TO COMPEL DISCOVERY FROM PROVIDER DEFENDANTS AND MOTION FOR SANCTIONS AND REQUEST FOR ORAL ARGUMENT

## I.     INTRODUCTION

Relator Dr. Clarissa Zafirov alleges that Defendant Physician Partners, LLC and its affiliate organizations Defendants Freedom Medical Associates, LLC d/b/a VIPcare and Anion Technologies, LLC, (collectively, "Provider Defendants") acted in concert with Defendants Freedom Health, Inc. and Optimum Healthcare, Inc (collectively, "Freedom Defendants") to falsely increase the risk adjustment scores of thousands of Medicare Advantage patients for the purpose of obtaining more funding from the United States than was rightfully owed. ECF No. 86, "Amended Complaint."

1

This motion arises, consistent with the Court's Amended Case Management and Scheduling Order, Dkt. 172, because the Provider Defendants refuse to produce relevant and responsive records requested by Relator that address Relator's allegations. First, Relator seeks the medical records for a statistician-generated sample of the patient population at issue, substantially narrowing her original request for medical records for the entire patient population. The medical records are material to Relator's claim that the diagnosis codes submitted by defendants for payment by CMS are not supported by the underlying medical records, as required by applicable contracts, regulations, and law. Provider Defendants have flatly refused production of any of the responsive medical records, taking the position that Provider Defendants will only produce medical records once Relator establishes the falsity of the underlying claims—a cart-before-the-horse demand which is contradictory to Fed. R. Civ. P. 26 and all claims-based case law.

Second, Relator brings this motion to compel production of responsive, relevant records which Relator has only learned about through recent depositions in which Provider Defendant witnesses identified multiple tranches/repositories of records and specific documents which were not disclosed or produced. The documents, which primarily relate to Provider Defendants' training materials, documentation of diagnosis code-related concerns, and surplus reports detailing bonuses paid to physicians relative to costs and spending on their Medicare Advantage panels, are described in detail below.

Further, Provider Defendants' production includes emails which reference videos or documents transmitted though links; Provider Defendants refuse to produce the documents that are linked to in the responsive emails. Through recent deposition testimony, Relator understands that these materials typically related to a Google Drive utilized by Provider Defendants, with the links either to specific documents or to folders containing responsive documents. Despite producing approximately 2,000 such emails containing links, Provider Defendants have refused to produce the embedded materials.

Lastly, Relator seeks sanctions against Defendants for the spoliation of responsive materials. On or about May 6, 2024, Defendants informed Relator that at least fifteen recordings of Zoom meetings directly involving Relator and the subject matter of her allegations were destroyed in August 2023 – nine months before Relator was notified of the destruction and roughly 10 months after Relator requested those precise recordings in her first Requests for Production. Provider Defendants' failure to produce these materials, and to timely inform Relator of their destruction, are grounds for sanctions.

For the reasons set forth herein, Relator respectfully moves this Court to compel the Provider Defendants to produce medical records for the claims data at issue, either *in toto* or based on the sample devised by Relator's statistician; to produce the linked documents or content referenced in produced emails; to fully produce documents identified by Provider Defendants' witnesses that were not yet disclosed or produced during the discovery period, as set forth in detail below; and issue all such sanctions

the Court deems appropriate given Provider Defendants' destruction of critical, responsive documents after such documents had been requested by Relator.

Due to the importance of these issues, especially the production of medical records, Relator respectfully requests oral argument and/or a status conference with the Court prior to a ruling on this motion.

## II.   RELEVANT DISCOVERY BACKGROUND

In 2022, following this Court's denial of Defendants' motions to dismiss Relator's Amended Complaint (ECF No. 124), the parties began the discovery process. Relator served separate Requests for Production to each of the three Provider Defendants on December 15, 2022. The Provider Defendants served collective Responses and Objections on February 17, 2023. On March 23, 2024, the Provider Defendants represented to Relator that their document production with respect to Relator's RFPs was substantially complete. Notwithstanding that statement, and notwithstanding the planning done in reliance on that statement and the previous meet-and-confer discussions, Provider Defendants have made four more substantive productions since then, including several which had production errors requiring (and still needing) revised productions so as to be accessible by Relator, and including roughly 15,000 pages of patient records related to patients in the Amended Complaint just one week before the close of fact discovery.

Relator served her Second Set of RFPs on Provider Defendants on February 19, 2024, to which Provider Defendants responded on March 20, 2024. Relator served a

Third Set of RFPs on Provider Defendants on April 29, 2024, responses to which are due today.[1]

## III.   DISCOVERY REQUESTS AT ISSUE

With respect to medical records, Relator's Second RFPs to Provider Defendants included RFP No. 43 to Physician Partners, RFP No. 30 to VIPcare, and RFP No. 36 to Anion, all of which identically requested:

> All medical and billing records related to any Physician Partners patient whose services were paid in whole or in part by any Government health insurance program. This request specifically includes, but is not limited to, all 5 Star Checklists provided to and/or completed by a provider, primary care and specialist provider notes, diagnostic test results, medication lists, problem lists, and all diagnosis codes associated with that patient whether by a provider, as a result of a chart review, or by any other source.

Defendants objected to the request and refused to produce any responsive records. In response to Defendants' unsubstantiated burden claim, Relator proposed a sample, drawn from claims data submitted by Freedom Defendants to the United States, married with claims data submitted by Provider Defendants to Freedom Defendants, which reflected 189,000-member years.[23] This sample reduced Relator's request to records pertaining to 1,200 patients, where each patient represents the codes submitted for that patient for a specified calendar year. After proposing this

---

[1] Given the production deficiencies described *infra*, Relator must anticipate further deficiencies in Provider Defendants' responses and productions subject to her Third Set of RFPs. As discovery motions are due today (Dkt. 172), Relator likewise, in an abundance of caution, moves the Court to compel production of all responsive, non-privileged, documents contemplated by her Third Set of RFPs.

[2] "Member years" refers to the number of patients reflected in the claims data for each year, irrespective of whether a patient appears in claims data for multiple years.

[3] Both sets of claims data were produced by Defendants in this matter.

compromise to Defendants, Relator met-and-conferred with both Freedom and Provider Defendants on May 24, 2024 to ascertain Provider Defendants' continuing objection to producing *any* medical records. Provider Defendants have not responded with any changed position since that conference, and the parties are therefore at loggerheads on this issue. *See* Exhibit A, Physician Partners' Response and Objections to Relator's Second RFP; Exhibit B, VIPcare's Response and Objections to Relator's Second RFP; and Exhibit C, Anion Technologies Response and Objections to Relator's Second RFP.

With respect to the non-medical record document production, the Parties have met-and-conferred at length on the Provider Defendants' responses and objections, including, most critically, in reaching agreement on search terms and custodians to narrow the search for responsive ESI. Particularly pertinent to this request, the Parties agreed that the responding party was best positioned to identify custodians (both individuals and repositories) in the first instance and to provide search terms which were tailored to internally-used terminology to identify responsive records and not pull in large quantities of nonresponsive materials. Relator relied on the representations that Provider Defendants' completed these tasks with due diligence and in good faith, and relied on their representations regarding the most responsive and relevant custodians and search terms.

However, in reviewing these late productions, and in recent deposition testimony of witnesses employed by or affiliated with Provider Defendants, Relator has learned of several significant documents and tranches of documents which have

never been disclosed to Relator and have not been produced in any form. Most significantly among those is a spreadsheet disclosed by former employee Sajitha Johnson in which Ms. Johnson testified the Provider Defendant-employees would track concerns regarding diagnosis codes being submitted that were not supported by the medical record – an issue so foundationally related to the allegations raised by Dr. Zafirov that its exclusion calls into question all prior representations of completeness of production. Relator detailed the outstanding production deficiencies in a letter to Provider Defendants on May 26, 2024.

In a telephonic meet-and-confer on May 29, 2024, the Provider Defendants would not commit to resolving the production deficiencies identified by Relator. For example, Provider Defendants could not provide a response as to the spreadsheet identified by Sajitha Johnson, would not commit to producing linked documents (despite the ESI protocol requiring the production of attachments to emails, of which the links serve as an alternative means of attachment) and had no solution for the recordings they had destroyed. Relator proposed an agreement for additional time to file motions to compel if Provider Defendants felt they could make meaningful headway on the identified deficiencies—Provider Defendants rejected that proposal. Thus, Relator files this motion based on the failures to produce as of the time of filing for deficiencies related to Relator's RFPs 2, 3, 4, 9, 13, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, and 26 to Physician Partners, and the respective corollary requests to VIPcare

and Anion.[4] *See* Exhibit D, Physician Partners' Response and Objections to Relator's

First RFP; Exhibit E, VIPcare's Response and Objections to Relator's First RFP; and

Exhibit F, Anion Technologies Response and Objections to Relator's First RFP.

## IV.   ARGUMENT

Parties may obtain discovery regarding any matter, not privileged, that is

relevant to the claim or defense of any party and proportional to the needs of the case.

Fed. R. Civ. P. 26(b)(1). Relevance, for purposes of discovery, is construed broadly to

include any matter that "bears on, or that reasonably could lead to other matter that

could bear on, any issue that is or may be in the case." *Gov't Emples. Ins. Co. v.*

*Martineau*, No. 8:19-cv-1382-T-35SPF, 2020 U.S. Dist. LEXIS 78816, at *2-3 (M.D.

Fla. May 5, 2020), *quoting Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

For the proportionality inquiry, the court considers factors enumerated by Rule

26(b)(1), Fed. R. Civ. P.: "the needs of the case, considering the importance of the

issues at stake in the action, the amount in controversy, the parties' relative access to

relevant information, the parties' resources, the importance of the discovery in

resolving the issues, and whether the burden or expense of the proposed discovery

outweighs its likely benefit."

The trial court "is give[n] wide discretion in setting the limits of discovery" and

"[t]he Federal Rules of Civil Procedure strongly favor full discovery whenever

---

[4] Relator likewise moves to compel the production of all non-privileged documents responsive to RFP Nos. 37-58 to Physician Partners, VIPCare, and Anion (Relator's Third Set of Requests for Production).

possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985).

When a discovery request has been propounded, "[t]he party resisting discovery has

the burden to show that the requested discovery is not relevant and that the production

of such discovery would be unduly burdensome." *Benavides v. Velocity IQ, Inc.*, No.

8:05-cv-1536-T-30MSS, 2006 U.S. Dist. LEXIS 14777, at *6 (M.D. Fla. Mar. 15,

2006).

### A. Relator is Entitled to All Medical Records.

#### 1. Relator's Amended Complaint alleges a fraudulent scheme implicating patients beyond those identified in the Amended Complaint.

Relator's Amended Complaint alleges "manipulation of the Medicare

Advantage program from January 2014 through the present by one of Florida's largest

healthcare providers . . . and two insurance companies, Defendants Freedom Health,

Inc. ('Freedom') and Optimum Healthcare, Inc. ('Optimum')." Dkt. 86 at ¶ 1.

Defendants responded with motions to dismiss, both of which acknowledged the scope

of Relator's allegations. The Court denied Defendants' motions to dismiss in full and

gave no credence to Defendants' assertion that allowing discovery on seven years of

false claims—clearly encompassing patients beyond those identified in the Amended

Complaint—would be unduly burdensome.[5] Dkt. 124. Indeed, the Court found that

Relator's allegations readily satisfied Rule 9(b):

> [Relator's] patient-specific allegations – and the others in the Amended
> Complaint – go far beyond a simple 'portrayal of the scheme' and a

---

[5] Dkt. 97 at 12; Dkt. 98 at 26. The Court has since narrowed the *temporal* scope of discovery, but not the substantive scope of discovery. Dkt. 169 at 6.

'summary conclusion that the defendants submitted false claims to the government for reimbursement. Far from relying on bald statements, rumors or conjectures, Zafirov's detailed allegations derived from her personal knowledge of the Provider Defendants' medical records and her access to the MA Defendants online portal for physicians provide the requisite 'indicia of reliability.'

*Id.* at 13 (internal citations omitted). The Court also found that Dr. Zafirov pled reverse false claims allegations with specificity, noting, "the Amended Complaint also provides multiple specific patient examples, along with the surrounding factual context and documentation, where the Provider Defendants, the MA Defendants, or both 'had knowledge of the falsity of their codes and failed to submit correct codes pursuant to their overpayment obligations.'" *Id.* at 16.

Additionally, the Court found "that the proper temporal scope of discovery in this action should be January 1, 2017 through December 31, 2020 for the Provider Defendants." Dkt. 169, at 6. The Court went further stating that "a party cannot unilaterally fact check allegations in a complaint to justify narrowing the scope of discovery." *Id.* at 4.

### 2. Having pled her allegations with specificity, Relator is entitled to discovery on the entire fraudulent scheme.

Where, as here, "a relator pleads a complex and far-reaching fraudulent scheme with particularity, and provides examples of specific false claims submitted to the government pursuant to that scheme, a relator may proceed to discovery on the entire fraudulent scheme." *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 510 (6th Cir. 2007). This is precisely the posture of this case: Defendants raised arguments in their respective motions to dismiss that the Amended Complaint was not

sufficiently pled and that discovery would be unduly burdensome; the Court denied those motions *in toto.* Thus, Relator is entitled to conduct discovery which spans the full scope of the allegations of the complaint. *United States ex rel. McCartor v. Rolls-Royce Corp.*, No. 1:08-cv-00133-WTL-DML, 2013 U.S. Dist. LEXIS 136387, at *19 (S.D. Ind. Sept. 24, 2013) ("It is unreasonable…to impose a limit on discovery and recovery in *qui tam* cases to specific examples of fraudulent behavior that relators were able to describe in their complaint when – as in this case – the complaint describes a general fact pattern of alleged fraudulent behavior supported by specific examples of that behavior. The court sees no good reason to prevent a relator from discovering other examples of behavior substantially similar to those described in the complaint and that similarly fit the pattern of conduct on which the complaint is focused"); *United States ex rel. Walker v. R & F Props. of Lake Cty., Inc.*, 433 F.3d 1349, 1359 (11th Cir. 2005) (citing Fed. R. Civ. P. 26(b)(1) to affirm a relator is permitted to "discovery of all information relevant to her claims.").

### 3. Provider Defendants fail to demonstrate any undue burden or lack of relevance.

Provider Defendants have not made, and cannot make, a good faith argument regarding relevance or burden of providing discovery responses for all patient records during the relevant time frame. *Craig v. Kropp, No. 2:17-cv-180-FtM-99CM,* 2018 U.S. Dist. LEXIS 33412, at *6 (M.D. Fla. Mar. 1, 2018) (citations omitted) ("A party resisting discovery must establish 'lack of relevancy or undue burden in supplying the requested information."); *Girling v. Specialist Doctors' Grp.*, LLC, No. 8:17-cv-2647-T-

24JSS, 2021 U.S. Dist. LEXIS 258848, at *4 (M.D. Fla. Feb. 3, 2021) ("The party resisting discovery has the burden to show that the requested discovery is not relevant and that the production of such discovery would be unduly burdensome.")

Rather, through boilerplate objections untethered to any actual request, Provider Defendants ignore the universality of the conduct alleged in Relator's Amended Complaint to be at the heart of the fraudulent scheme, including the use of the 5 Star Checklists as a steering tool for increasing risk adjustment scores, corporate-wide training materials and programs which push the use of high-value risk-adjusting codes, chart reviews to increase coding after a patient visit, and high-pressure tactics aimed at getting providers to participate in Physician Partners' financial model.

Thus, rather than "establish facts justifying its objections by demonstrating that the requested discovery . . . does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1)," as they are obligated to do (*Gov't Emples. Ins. Co.*, 2020 U.S. Dist. LEXIS 78816, at *2-3), Provider Defendants refuse to produce medical records beyond those related to the exemplars in the Amended Complaint unless Relator provides specific examples of false claims – which reside in the exact records which Relator is seeking to evaluate. By Provider Defendants' argument, Relator cannot have access to the records to prove her case unless she has already proven her case. That is simply not how Rule 26 operates. *See*, e.g. Exhibit A at 12-13.

Provider Defendants further assert, without elaboration, a burden of producing the medical records sought in Relator's request for medical records. In response, Relator agreed to reduce the request to a sample identified by a statistician to a smaller

subset of records which would garner a statistically relevant sample from which the number of false claims and resulting damages could be extrapolated. By email on May 15, 2024, Relator's counsel Chandra Napora wrote to all Defendants' counsel, *inter alia*,

> Each defendant objected to the production of the requested records and unilaterally narrowed the request to records related only to the patients identified in Relator's complaint. Such unilateral narrowing is of course not appropriate. That said, to the extent Defendants objected on the basis of burden or proportionality, and as part of ongoing meet-and-confer, we advised that we retained an expert to assist in creating a sample of patient records to ensure that the necessary request for medical records is proportional to the needs of the case. To that end, we will be sending via secured file transfer a spreadsheet identifying 1,200 patients for whom we require the records requested in the referenced requests for production. You will note that the spreadsheet contains 1,800 identified patients. To the extent any of the first 1,200 patient's records is unavailable after reasonable search, the next patient's records should be pulled as a replacement, and so on, such that we receive a total of 1,200 patients' records.

Relator's counsel transmitted the 1,800-name list – from which the 1,200-patient sample would be drawn – by secure file transfer the same day. Defendants did not respond to the sample size nor acknowledge how the reduction from all medical records to the sample would ameliorate burden concerns; Defendants simply did not respond at all until prompted by Relator's counsel to schedule a meet-and-confer which was held on May 24, 2024. To date, Provider Defendants have not articulated any burden associated with the revised sample.

A party objecting to discovery on burdensomeness grounds must "specifically articulate any burden that they would face by producing such information." *Fla. Virtual Sch. v. K12, Inc.*, No. 6:20-cv-2354-GAP-EJK, 2022 U.S. Dist. LEXIS 131191, at *10

(M.D. Fla. Apr. 1, 2022). Provider Defendants make no effort to explain how the requested discovery creates any burden, let alone an undue burden, or what that burden is. As such, their argument should be rejected. *Legion Sys., Ltd. Liab. Co. v. Valiant Glob. Def. Servs., Inc.*, No. 8:20-cv-2321-KKM-MRM, 2022 U.S. Dist. LEXIS 236899, at *16-17 (M.D. Fla. Dec. 22, 2022) ("reject[ing] and overrul[ing] [the defendant's] unsubstantiated objections based on burden and expense" where the defendant "ma[de] no meaningful effort to calculate or quantify the burden or expense associated with full compliance, nor d[id] Defendant support its conclusory assertions of burden and expense with evidence (*e.g.*, a supporting affidavit or declaration attesting to the volume of documents involved and the number of personnel hours to be expended)").

Here, Relator is entitled to the discovery related to patient records writ large. *Girling v. Specialist Doctors' Grp., LLC*, No. 8:17-cv-2647-T-24JSS, 2021 U.S. Dist. LEXIS 258848, at *13 (M.D. Fla. Feb. 3, 2021) (overruling defendant's objections to production of all medical records in the relevant time frame); *United States ex rel. Ruckh v. CMC II, LLC, No. 8:11-cv-1303-T-23TBM, 2015 U.S. Dist. LEXIS 184294 (M.D. Fla. May 19, 2015)* (noting rejection of limitations sought by defendants that production should come from only the two facilities in Florida at which relator worked and that the temporal scope should be the five-month period in which relator worked at the facilities); *United States ex rel. Brooks v. Stevens-Henager Coll., Inc.*, No. 2:15-cv-00119-JNP-EJF, 2018 U.S. Dist. LEXIS 2329, at *18 (D. Utah Jan. 4, 2018) ("The Court also agrees with the principle that the specific examples of fraudulent behavior pled in

the Complaint do not strictly limit discovery to those acts").[6] Thus, Relator's agreement to limit the production to the sample size is already a concession beyond that which is required by caselaw. That concession ameliorates any actual concern of burden, particularly given Defendants' inability to articulate any burden associated with the proposed sample.

Given the potential complexity of the issues at stake with respect to production of the medical records, their centrality to the underlying allegations, and the dearth of evidence from defendants about the alleged burden they face, Relator requests that the Court hold a discovery conference or oral argument on this issue.

### B. Deposition Testimony Has Identified Responsive Documents that the Provider Defendants Have Not Produced.

Separate from the medical records, Provider Defendants have failed to sufficiently identify and produce records responsive to Relator's first RFPs which are critical to the evaluation and resolution of this case. The failure to provide plainly responsive documents in a timely manner or at all is highly prejudicial. S*unrise of Coral Gables Propco, LLC v. Current Builders, Inc.*, No. 1:22-CV-21456-MORE, 2023 U.S. Dist. LEXIS 183512, at *25 (S.D. Fla. Oct. 12, 2023) ("Prejudice generally occurs when late

---

[6] *See also Uchytil v. Avande, Inc.*, No. C12-2091-JCC, 2018 U.S. Dist. LEXIS 31737, at *6 (W.D. Wash. Feb. 27, 2018) ("Defendants were well aware before Relator's December 2017 request for production of her position that 'example' contracts named in the complaint were not intended to limit the scope of her claims. …That Defendants relied on their own view of the proper scope of discovery does not make Relator's motion to compel untimely or prejudicial"); *United States ex rel. Polukoff v. Sorensen*, No. 2:16-cv-00304-TS-DAO, 2020 U.S. Dist. LEXIS 152196, at *23 (D. Utah Aug. 20, 2020) ("To the extent the Relator seeks patient billing and medical records related to PFO/ASD closures and related medical procedures performed by Dr. Sorensen between 2002 and 2011, the court finds these records relevant to the claims asserted by the Relator"); *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 467 (5th Cir. 2015) ("[O]ne cannot forget that Rule 9(b) is not meant to supplant discovery" (citation omitted)).

disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question."), *citing Bowe v. Pub. Storage*, 106 F. Supp. 3d 1252, 1260 (S.D. Fla. 2015); *Debose v. Broward Health*, No. 08-61411-CIV-MOORE/SIMONTON, 2009 U.S. Dist. LEXIS 45546, at *14 (S.D. Fla. May 20, 2009) (holding "Defendant may not use the withheld documents objected to by Plaintiffs").

Specifically, on April 15, 2024, the deposition testimony of Ms. Gallman, Vice President of Healthcare Operations for VIPCare, made clear that there are many additional responsive documents that Provider Defendants have not produced. Ms. Gallman testified that Provider Defendants:

- created templates that were utilized for documentation concerns;
- maintain a Google Drive repository of previously-used slide decks in monthly training meetings;
- created a monthly surplus report for a physician's full-risk Medicare Advantage panel. Ms. Gallman testified that she received that report via email for VIPcare providers.

All of these materials are responsive to outstanding requests, including without limitation RFPs 2, 3, 9, 13, 15, 17, 18, 19, 20, 21, 23 and 24.

Dr. Mihale, Provider Defendants' Consulting Medical Director for Freedom and independent contractor for Physician Partners during the relevant time period, likewise gave testimony making clear that Provider Defendants were improperly withholding responsive documents. Specifically, Dr. Mihale testified that Provider Defendants utilized scripts from Physician Partners for the bootcamps. Physician Partners produced one such script (PHYSPART_0029650), but Dr. Mihale testified

16

that there would have been others. Provider Defendants' productions do not show complete sets of these records, notwithstanding that these documents are or may be responsive to, at least, RFP 22 to Physician Partners.

Ms. Johnson, Provider Defendants' Quality Analyst and Senior Provider Educator during the relevant time period, also gave testimony making clear that Provider Defendants were improperly withholding responsive documents. Specifically, Ms. Johnson testified that Provider Defendants utilized a spreadsheet (potentially through Google Drive) on which a Physician Partners employee would enter information when the employee was concerned that a diagnosis code was being submitted that was not supported by the medical record. Ms. Johnson testified that this was the mechanism to report concerns about conditions that should not have been reported to her management. The importance of this document to this litigation is plainly apparent, yet no version of it appears to have been referenced or produced in any discovery, even though it would have been responsive to, at a minimum, RFPs 2, potentially 4, 6, 13, 15, 16, 17, 21, and 26.

Additionally, document production shows that Provider Defendants have withheld responsive materials found in emails which reference videos or documents transmitted though links. Based on recent deposition testimony, Relator understands that the Google Drive system was used to convey information among parties in lieu of email attachments, making the links veritable stand-ins for attached documents. Provider Defendants have an obligation to produce emails with their attendant attachments and cannot avoid that obligation because they used a system for

17

attachments through links instead. Indeed, it was incumbent on Provider Defendants to describe this method of email transmissions and to make production agreements which accounted for it, rather than to agree only to the production of attachments and use the links as a method to avoid providing responsive documents. In a meet and confer on May 29, 2024, Provider Defendants asserted that they would not produce the linked materials, making only a vague objection as to burden without articulation of the specific burden or the reason that the linked emails were not accounted for in the original ESI agreements. Without any articulation of burden, their refusal should be rejected. *Legion Sys., Ltd. Liab. Co.*, 2022 U.S. Dist. LEXIS 236899, at *16-17; *See also Shenwick v. Twitter, Inc.*, Case No. 4:16-cv-05314, 2018 U.S. Dist. LEXIS 189263, 2018 WL 5735176, at *1 (N.D. Cal. Sept. 17, 2018) (requiring defendants to conduct manual searches after defendants articulated a specific time period and cost that would be incurred from the production).

Further, Relator is entitled to responsive discovery, even if that discovery is obtained from a hyperlink in an email. *See Shenwick v. Twitter, Inc.*, No. 16-cv-05314-JST (SK), 2018 U.S. Dist. LEXIS 189263, at *6 (N.D. Cal. Sep. 17, 2018) ("Plaintiffs have a right to determine if an electronic message refers to a document, then Plaintiffs should be able to access that document."); *In re Uber Techs., Inc., No. 23-md-03084-CRB (LJC)*, 2024 U.S. Dist. LEXIS 73945, at *38 (N.D. Cal. Apr. 23, 2024) ("hyperlinked documents can support an inference regarding 'who knew what, when.'")

The is no dispute that the linked documents are responsive, and Provider Defendants did not object to the production of these materials on relevancy grounds.

In *IQVIA, Inc. v. Veeva Sys.*, there was no dispute that the documents were relevant and the Special Master did not find relinking 2,200 documents to be unduly burdensome. No. 2:17-CV-00177-CCC-MF, 2019 U.S. Dist. LEXIS 115894, at *16 (D.N.J. July 10, 2019. Notably, the defendants in *IQVIA, Inc.* had produced both the emails and the documents linked to Google Drive—clearly demonstrating that the production of those materials can readily be done. *See also, In re Uber Techs., Inc.*, No. 23-md-03084-CRB (LJC), 2024 U.S. Dist. LEXIS 73945, at *37 (N.D. Cal. Apr. 23, 2024) (noting that defendants' email collection vendor could "retrieve active Google Email and contemporaneous versions of linked Google Drive documents"). The Special Master in *IQVIA, Inc.* went further, requiring the defendant to "provide information with respect to when the [Google Drive] documents were deleted and the steps it took to determine this information." 2019 U.S. Dist. LEXIS 115894 at *16-17.

While the Parties' ESI protocol does not specifically reference links to Google Drive documents, it does require that "Emails containing unique attachments not otherwise contained in the inclusive email shall also be produced along with their parent email." "Litigants should live up to their agreements, especially when they are embodied in court orders, as the ESI Protocol is here." *In re Stubhub Refund Litig.*, No. 20-md-02951-HSG (TSH), 2023 U.S. Dist. LEXIS 74007, at *6-8 (N.D. Cal. Apr. 25, 2023). Just as in *Stubhub,* Provider Defendants' document production is in violation of the parties' ESI protocol, Provider Defendants have made no apparent effort to produce the linked documents, and Provider Defendants have not moved for relief

from their obligations under the heavily-negotiated ESI protocol. *Id.* (articulating the same considerations.).

### C. Provider Defendants Destroyed Relevant, Responsive Recordings in Bad Faith.

On May 2, 2024 Relator identified a deficiency in Provider Defendants document production regarding dozens of emails that referenced an attached "cloud recording" pertaining to Zoom Quality Huddles, along with exemplary bates numbers. On May 6, 2024, only after Relator's deficiency concerns, Provider Defendants informed Relator that they had destroyed 15 Zoom "Quality Huddle" recordings, all of which directly involved Relator. Relator immediately requested that Defendants identify the dates the destroyed recordings occurred and a copy of Provider Defendants litigation hold. Provider Defendants did not respond until May 23, 2024, providing dates of the destroyed recordings[7] and informing Relator that they had destroyed these recordings in August 2023. Although Defendants own litigation hold, in place since 2020, indicates that recordings should be preserved beginning in May 20, 2013 and ongoing into the future, it is apparent no effort was taken to maintain that obligation. Rather, the destruction of relevant records was not only three years after the litigation hold for *any* relevant documents, but it is eight months after Relator requested these exact material in her RFP No. 25 to Provider Defendants on December 15, 2022, and ten months before Provider Defendants disclosed the destruction to Relator.

---

[7] Counsel for Defendants represented that recordings from the following dates were destroyed: 1/8/2019, 1/16/2019, 1/29/2019, 8/25/2019, 8/25/2019, 9/6/2019, 9/9/2019, 9/16/2019, 9/19/2019, 9/26/2019, 10/17/2019, 11/19/2019, and 12/3/2019.

Spoliation is "the destruction of evidence or the significant and meaningful alteration of a document or instrument." *Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003) (quotations omitted). Spoliation is established when the party seeking sanctions proves: (1) the existence of a potential civil action; (2) a legal or contractual duty to preserve evidence which is relevant to the potential civil action; (3) destruction of that evidence; (4) significant impairment in the ability to prove the lawsuit; (5) a causal relationship between the evidence destruction and the inability to prove the lawsuit; and (6) damages. *Id.* Spoliation sanctions include, but are not limited to, the entry of a default judgment, the striking of pleadings, an adverse inference or rebuttable presumption instruction to the trier of fact, or the assignment of fees and costs stemming from the spoliation. *Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1280 (M.D. Fla. 2009).

Here, the first three elements are beyond dispute. Defendants destroyed the evidence in August of 2023. This matter was unsealed on June 11, 2020 (Dkt. 17), a litigation hold was issued in 2020, and Relator served her RFPs – to which these recordings were plainly responsive – on December 15, 2020. Nevertheless, Defendants destroyed the evidence in August 2023, and did not disclose this destruction until prompted by Relator. As to elements four and five, Defendants concede these are met. Defendants continually argue that Relator "is the most important witness in this case" and that her knowledge is key. Each of the recordings in questions involved Relator, and training she would have received from Defendants regarding the conduct at the heart of this matter – risk adjustment coding. The training Relator received with

regards to risk adjustment coding would be a critical indicator as to the policies and practices of Defendants with regards to how they directed, pressured, and coerced providers to base their documentation and coding practices not on medical need, but the financial value of certain codes. And damages are clear – Relator is left without a body of evidence that all Parties agree may be critical in her proving her case.

In determining whether a spoliating party acted in bad faith, the Court weighs "the degree of the spoliator's culpability against the prejudice to the opposing party." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 946 (11th Cir. 2005) (citations omitted); accord Fed. R. Civ. P. 37(e) (stating that if a court finds that "the party acted with the intent to deprive another party of the information's use in the litigation," the Court may "presume that the lost information was unfavorable to the party" or "instruct the jury that it may or must presume the information was unfavorable to the party"). Defendants culpability is clear. "It is not sufficient to notify employees of a litigation hold and expect that the [employee] will then retain and produce all relevant information. Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched [and in this case, preserved.]" *Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1281 (M.D. Fla. 2009) (citation omitted). This is precisely what occurred here—a litigation hold was issued, and no more oversight occurred. In fact, it was more than oversight that failed – had Defendants collected the responsive records in the eight months between Relator's request and the destruction, there would be no issue. The dilatory discovery response,

which has been a hallmark of Provider Defendants' response to Relator in this case, is the cause of the spoliation.

This Court will grant sanctions where, as here, Defendants "knowing[ly] and willful[ly] disregard[ed] [] the clear obligation to preserve evidence that was solely within the possession and control of the Defendants and whose contents have no other source than that which has now been spoliated." *Id.* at 1282. Indeed, the spoliating party need not have acted with malice when spoliating the evidence in order for the court to draw an adverse inference. *See Graff v. Baja Marine Corp.*, 310 Fed. App'x 298 (11th Cir. 2009) (citing *Flury*, 427 F.3d at 946).

Defendants' bad faith is made amply clear by their failure to inform Relator of this spoliation until Relator inquired of the records. *United States ex rel. King v. Dse, Inc.*, No. 8:08-CV-2416-T-23EAJ, 2013 U.S. Dist. LEXIS 22245, at *23-26 (M.D. Fla. Jan. 17, 2013) ("Even assuming that Relator discovered that the video diaries were missing in mid-June (and not mid-May as suggested in his affidavit), Relator failed to disclose this to the Court or opposing counsel . . . Relator intentionally withheld the video diaries . . . willfully disregarded his obligation to preserve or back-up this evidence . . . . Relator could have, and should have, produced this evidence to Defendants long before the events of [spoliation]. He alone is responsible for his alleged inability to produce this evidence"). The same is true here—Defendants could have, and should, produce these recording months prior to their destruction, and their failure to do so in

light of the spoliation is grounds for sanctions. *Id.* at 34-35 (granting sanctions due to "a flagrant disregard for the discovery process").[8]

## V.    CONCLUSION

For the reasons set forth above, Relator respectfully requests that this Court compel Defendants to (1) produce medical records responsive to RFP No. 43 to Physician Partners, RFP No. 30 to VIPcare, and RFP No. 36 to Anion; (2) produce complete records in response to Relator's requests for production 2, 3, 4, 9, 13, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, and 26 to Physician Partners and the corresponding requests to VIPcare and Anion specifically including the records described by Ms. Gallman , Dr. Mihale, and Ms. Johnson's deposition testimony,[9] and (3) produce all hyperlinked materials contained in produced emails. Further, the Court should grant Relator's request for sanctions against Provider Defendants for the spoliation of evidence.

Respectfully submitted this 29th day of May, 2024,

/s/ *Jillian L. Estes*
Jillian L. Estes (Fla Bar No. 0055774)
Jennifer M. Verkamp*
Chandra Napora*

---

[8] In meet and confer on May 29, 2024, Defendants argued that Relator would not be prejudiced as to the spoliation of this evidence because she was party to these destroyed-recordings, and could testify as to their contents. This, of course, flies in the face of Defendants' discovery obligations. Should the Court be disinclined to grant an adverse inference or default judgment for Relator, Relator respectfully requests that Defendants be precluded from adducing evidence, or advancing argument, that conflicts with Relator's recollection of the recorded meetings. *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 133 (S.D. Fla. 1987) (noting that "the bad-faith destruction of a relevant document, by itself, gives rise to a strong inference that production of the document would have been unfavorable to the party responsible for its destruction." (internal quotation marks omitted)).
[9] Relator likewise moves to compel the production of all non-privileged documents responsive to RFP Nos. 37-58 to Physician Partners, VIPCare, and Anion (Relator's Third Set of Requests for Production).

Anne Hayes Hartman*
Jonathan M. Lischak*
Morgan Verkamp LLC
4410 Carver Woods Dr., Suite 200
Cincinnati, Ohio 45242
Telephone: (513) 651-4400
Fax: (513) 651-4405
Email: jverkamp@morganverkamp.com
jillian.estes@morganverkamp.com
cnapora@morganverkamp.com
ahartman@morganverkamp.com
jonathan.lischak@morganverkamp.com

Adam T. Rabin (Fla. Bar No. 985635)
Havan M. Clark (Fla. Bar No. 1026390)
RABIN KAMMERER JOHNSON
1601 Forum Place, Suite 201
West Palm Beach, FL 33401
Phone: (561) 659-7878
Fax: (561) 242-4848
arabin@rkjlawgroup.com
hclark@rkjlawgroup.com
e-filing@rkjlawgroup.com

*Counsel for Relator Dr. Clarissa Zafirov*

*\* admitted pro hac vice*

## LOCAL RULE 3.01(g) CERTIFICATION

I, Jillian Estes, hereby certify that, as described herein and consistent with Local Rule 3.01(g), Relator has conferred with Defendants telephonically and in written position papers in an effort to resolve this motion. The parties were unable to reach a resolution on the relief sought herein.

/s/ *Jillian L. Estes*
Jillian L. Estes

## <u>CERTIFICATE OF SERVICE</u>

I, Jillian L. Estes, hereby certify that foregoing motion was served on May 29,

2024, to all parties of record via the CM/ECF electronic filing system.

<u>*/s/ Jillian L. Estes*</u>
Jillian L. Estes

26