# Exhibit A
# Physician Partners' Response and Objections to Relator's Second RFP

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* DR. CLARISSA ZAFIROV, | ) ) ) |
| Plaintiff/Relator, | ) ) |
| v. | ) ) ) |
| FLORIDA MEDICAL ASSOCIATES, LLC, d/b/a VIPCARE; PHYSICIAN PARTNERS, LLC; ANION TECHNOLOGIES, LLC; FREEDOM HEALTH, INC.; and OPTIMUM HEALTHCARE, INC., | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

CASE NO. 8:19-cv-01236

### DEFENDANT PHYSICIAN PARTNERS, LLC'S RESPONSES TO RELATOR'S SECOND SET OF REQUESTS FOR PRODUCTION

Pursuant to Federal Rules of Civil Procedure 26 and 34 and Section III.A of the Handbook on Civil Discovery Practice in the United States District Court for the Middle District of Florida (the "Handbook on Civil Discovery Practice"), Defendant Physician Partners, LLC ("Physician Partners") by and through its undersigned counsel, hereby serves its objections and responses to Relator's ("Relator" or "Zafirov") Second Set of Requests for Production to Physician Partners, LLC (the "Requests").

### PRELIMINARY STATEMENT

This response represents Physician Partners' diligent and best efforts to respond to discovery based upon the investigation which thus far has been carried out.

1

Therefore, this response is given without prejudice to Physician Partners' right to produce evidence of any additional or subsequently discovered facts, or otherwise assert factual and legal contentions as further facts are ascertained, analyses are made, and legal research is completed. The following is based solely upon such information and documents as are presently available and specifically known to Physician Partners. They disclose or set forth documents and information based upon Physician Partners' current contemplation, information, and understanding of the issues involved in this matter. Any production of documents by Physician Partners in response to Relator's Requests is subject to Physician Partners' right to object to the admission in evidence of any and all such documents on grounds, including but not limited to, that they are not relevant to any claim or defense in this action, are otherwise inadmissible, or were produced inadvertently, any and all of which objections Physician Partners reserves and does not waive.

## GENERAL OBJECTIONS

1. Physician Partners incorporates the following objections into each of the responses and objections to each request for documents ("Request") as though fully set forth therein. The assertion of the same, similar, or additional objections or the provision of partial answers and/or individual responses to individual requests does not waive any of Physician Partners' objections as set forth below. Physician Partners expressly reserves the right to amend or supplement their objections and responses for any reason.

2. Physician Partners objects to the Requests to the extent that they purport to impose obligations that are in excess of, and/or inconsistent with, the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Middle District of Florida (the "Local Rules"), the Handbook on Civil Discovery Practice, or any other applicable law, statute, rule or decision. Physician Partners will produce documents and assert objections consistent with their obligations under these rules and applicable law and expressly decline to undertake any broader obligations.

3. Physician Partners' responses herein are based on a reasonably diligent and good faith inquiry and represent Physician Partners' current knowledge as of the date these responses and objections are made. Further investigation may reveal additional facts, information, or documents that could lead to additions to, changes in, and/or variations from the production or responses herein. Accordingly, Physician Partners reserves the right, but does not assume any obligation, except as required by law, to supplement, amend, correct, clarify, or modify their production, or the responses or objections herein, as further information becomes available.

4. Physician Partners objects to the instructions contained in the Requests (the "Instructions") to the extent they are overly broad and unduly burdensome, and disproportional to the needs of the case.

5. Physician Partners objects to the Requests and Instructions to the extent they purport to impose an obligation on Physician Partners to conduct anything beyond a reasonable and diligent search of readily accessible files (including electronic files) where responsive documents reasonably would be expected to be found. Subject

to the objections stated, Physician Partners will conduct a search of its reasonably accessible hard-copy and active-system electronic files. Any requests that seek to require Physician Partners to go beyond such a search are overbroad, unduly burdensome, disproportionate to the needs of this case, and therefore objectionable. Further, by indicating that it will produce non-privileged, responsive documents, Physician Partners does not make a representation that such documents exist or are in Physician Partners' possession, but only that Physician Partners will conduct the reasonable searches indicated for the documents or information sought.

6. Physician Partners' production of documents is not a waiver of any of the objections set forth herein or an admission or acknowledgment that such material is relevant to the subject matter of this action or admissible in evidence, nor shall such production be construed as adopting a legal position. Further, the production and these responses are without prejudice to and not a waiver of (i) Physician Partners' right to contend at trial or any other proceeding in this action that such material is inadmissible, irrelevant, immaterial, or not a proper basis for discovery; and (ii) any objection by Physician Partners to future use of such documents that Relator may attempt to make. In addition, the production and these responses are made solely for the purposes of this action.

7. Physician Partners objects to the Requests to the extent that they seek information that is confidential, proprietary, commercially sensitive or that constitutes private, personal or financial information of Physician Partners' employees, partners, clients, or patients; protected health information ("PHI") under the Health Insurance

4

Portability and Accountability Act of 1996 ("HIPAA"); information protected under Federal Rule of Civil Procedure 26(c), the attorney-client privilege, the attorney work-product doctrine, or other applicable law; and information that has been provided to Physician Partners on a confidential basis or that is subject to the terms of any confidentiality order or agreement ("Confidential Information"). The inadvertent production of any document subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity shall not constitute a waiver of the privilege or immunity. Physician Partners will produce non-privileged Confidential Information responsive to otherwise non-objectionable requests pursuant to the Stipulated Protective Order.

8. To the extent that the Requests seek production of electronically stored documents ("ESI"), Physician Partners states that, if it is in possession, custody, or control of any non-privileged responsive ESI, to which it does not otherwise object to producing, Physician Partners will produce the ESI at a mutually agreeable time consistent with the ESI protocol.

9. Physician Partners objects to the Requests as unreasonable, unduly burdensome, overly broad and contrary to the rules applicable to this proceeding to the extent they call for the production of documents that cannot be obtained through a reasonable search of Physician Partners' files possessed by relevant custodians and within Physician Partners' custody or control.

10. Physician Partners objects to the Requests to the extent they seek information and documents that are (a) not in Physician Partners' possession, custody,

or control; (b) in Relator's possession; (c) publicly available or otherwise equally available to Relator; or (d) more appropriately obtained from sources other than Physician Partners.

11. Physician Partners objects to the Requests to the extent they purport to require Physician Partners to produce both physical and electronically stored versions containing duplicative information, which is overly broad and unduly burdensome.

12. Physician Partners reserves the right to produce documents on a rolling basis.

13. Physician Partners objects to each Request to the extent that it seeks "any," "all," or "each and every" document(s) on a subject as overbroad, unduly burdensome, and not proportional to the needs of this case in that the collection of potentially responsive documents would require a burdensome search for documents in numerous different places and files, including potentially the files of several hundred people. In responding to these Requests, Physician Partners will conduct searches that are reasonable in scope, of reasonably accessible sources, reasonably designed to locate responsive documents, if any.

14. In response to Zafirov's incorporation of definitions from her First Request for Production served on December 15, 2022, Physician Partners objects to such definitions and hereby incorporates its objections and definitions from its February 17, 2023 objections and responses to Zafirov's First Request for Production.

15. Physician Partners further objects to the definition of "Physician Partners physician" to the extent it purports to include physicians who were not employed by

Florida Medical Associates, LLC d/b/a VIPcare ("VIPcare") or any other Defendant or related entity but were only affiliates. Employed physicians, such as Dr. Zafirov, are W-2 employees who work exclusively for VIPcare. As employees, those physicians receive most, if not all, of their income and benefits from VIPcare. Employed physicians have an employment agreement with VIPcare, and their compensation is comprised mostly of a base salary, with the possibility of various additional incentive payments. By contrast, affiliated physicians are independent owners and operators of their own practices at multiple different locations around Florida. In general, affiliated physicians' income derives from several sources, only one of which is Physician Partners. That is because those physicians typically have contractual relationships with other Medicare Advantage plans, as well as other independent physician associations. Physician Partners' contracts with affiliates also vary whereby some affiliates are paid on a fee-for-service basis, while others have chosen a capitation payment model. In other words, there may be stark differences even among Physician Partners' affiliated physicians. Moreover, as independent business owners, affiliated physicians have ownership and responsibility over their own practices, including their facilities, the selection of insurance programs, patient scheduling, staff hiring and management, and their own EMR systems on which the affiliated providers – not the Provider Defendants – select diagnosis codes. For employed physicians, such as Dr. Zafirov, VIPcare takes ownership of the facilities, the selection of insurance programs, patient scheduling, staff hiring and management, and VIPcare's single unified EMR system. In addition, affiliated physicians hire and manage their own staff; employed physicians

7

do not. Affiliated physicians select their own EMR, but employed physicians must use the eClinicalWorks EMR. Affiliated physicians use over 20 different EMRs, each one of which has its own unique formatting, organization, processes and procedures for selecting diagnosis codes and multiple other data elements, and some affiliates were still using paper charts during 2017-2020. Affiliated physicians select their own diagnosis codes on their respective EMRs. Anion Technologies, LLC ("Anion") processed all billing to Freedom and Optimum for VIPcare physicians and for one of the 241 affiliated physicians, Dr. George Mansour, who did not have his own EMR or billing system, based on providers' documentation.  Affiliate physicians are documenting and adding or deleting diagnoses and diagnosis codes, creating and managing medical records, and doing coding and billing of claims to health plans in all kinds of different EMR systems than the eClinicalWorks EMR system used by VIPcare physicians, which would greatly increase the burden on the parties in having to deal with multiple different EMR systems on all these issues if affiliate physicians were included in discovery. Physician Partners contracted with 241 affiliate physicians between January 1, 2017 and December 31, 2020. During that period, those physicians along with specialists, hospitals, pharmacies and other providers collectively serviced more than 56,000 patients.  These affiliate physicians performed approximately 970,000 visits with Freedom and Optimum members from 2017-2020. That number does not include medical records of visits with other types of providers that would also be in these providers' possession, such as specialists, hospitals, pharmacies, and other providers. VIPcare employed physicians performed approximately 450,000 visits with

8

Freedom and Optimum members in 2017-2020. Discovery related to the 240 affiliate physicians at issue will implicate millions of pages of documents, which would likely cost at least hundreds of thousands of dollars and perhaps more to gather, review, and produce, including numerous providers for whom people would need to be sent in person to the provider's office to gather the documents, not to mention providers who are no longer affiliated and from whom Provider Defendants may no longer be able to retrieve records pursuant to contractual arrangements that have ended. There are significant differences between employed physicians on the one hand and affiliated physicians on the other. Also, there are significant variations among the affiliated physicians, such as how they are paid and how those affiliated physicians manage their practices. These differences make discovery regarding affiliated physicians not relevant to Zafirov's claims, especially where Zafirov failed to plead a single representative example of an alleged false claim submitted to Freedom or Optimum by Provider Defendants. For these reasons, along with the other objections noted in Physician Partners' written objections to Zafirov's discovery requests in this matter, Physician Partners will respond to these Requests only with regard to VIPcare employed physicians, and only in relation to Medicare Advantage beneficiaries of Freedom and Optimum, not other patients or plans.

**RESPONSES**

**Request for Production No. 42:** All documents reviewed, analyzed, consulted, discussed, or used in any manner to prepare for deposition by any witness designated by Physician Partners to respond to Relator's 30(b)(6) deposition notice.

**RESPONSE:** Physician Partners objects to this Request as the terms "reviewed," "analyzed," "consulted," "discussed," and "used" are vague and ambiguous and susceptible to multiple interpretations. Physician Partners further objects to this Request to the extent it seeks documents that reflect attorney mental impressions, contain attorney work product, and/or are protected by the attorney-client privilege. Which documents were selected for preparation for a 30(b)(6) deposition implicates the work product doctrine because they may reveal an attorney's view of what is relevant to a case. *See In re Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.*, No. 3:12-MD-02385-DRH, 2013 WL 1776433, at *3 (S.D. Ill. Apr. 25, 2013) (work-product doctrine protects an attorney's selection and compilation of records in preparation for a deposition because "disclosure of such material could reveal an attorney's thought processes and therefore should be afforded work-product protection. Opposing counsel, therefore, should not be permitted to inquire as to which, if any, of the documents a witness reviewed were selected by his or her counsel."). Physician Partners also objects to this request as premature because no 30(b)(6) deposition has occurred in this case, nor has Zafirov made the required predicate showing for discovery of such documents even if she could overcome the attorney work product doctrine and attorney-client privilege. *See In re Managed Care Litig.*, 415 F. Supp. 2d 1378 (S.D. Fla. 2006) (denying motion to compel document reviewed by 30(b)(6) witness because witness "reviewed the privileged document along with other materials in preparation for his deposition. None of his testimony during the deposition can be construed as constituting a waiver of the privilege."); *Medtronic*

10

*Xomed, Inc. v. Gyrus ENT LLC,* No. 304CV400J32MCR, 2006 WL 786425 (M.D. Fla. Mar. 27, 2006) (rejecting motion to compel production of document reviewed by 30(b)(6) witness because "simply looking at a document is not sufficient to trigger Rule 612," which "requires Plaintiff to meet three conditions before it is entitled to production of the contested document: (1) the witness must have used the writing to refresh his memory; (2) the witness must have used the writing for the purpose of testifying; and (3) the court must determine that production is necessary in the interests of justice"); *see also Dugas v. 3M Co.*, No. 3:14-CV-1096-J-39JBT, 2015 WL 12839759, at *5 (M.D. Fla. June 22, 2015) ("for Rule 612 to apply, [the party seeking discovery] must prove that the contested document had an impact upon the testimony of the witness"). Subject to and without waiving the foregoing objections and its General Objections, Physicians Partners will not produce documents in response to this request at this time.

**Request for Production No. 43:** All medical and billing records related to any Physician Partners patient whose services were paid in whole or in part by any Government health insurance program. This request specifically includes, but is not limited to, all 5 Star Checklists provided to and/or completed by a provider, primary care and specialist provider notes, diagnostic test results, medication lists, problem lists, and all diagnosis codes associated with that patient whether by a provider, as a result of a chart review, or by any other source.

**RESPONSE:** Physician Partners objects to this Request as overly broad and seeking information that is not relevant or proportional to the needs of this case for

11

multiple reasons. First, it purports to include documents relating to non-Medicare Advantage and non-Freedom/non-Optimum beneficiaries, which are irrelevant in this case, which involves only Freedom and Optimum Medicare Advantage members. Physician Partners further objects to this Request as overly broad and unduly burdensome to the extent it seeks "all 5 Star Checklists provided to and/or completed by a provider, primary care and specialist provider notes, diagnostic test results, medication lists, problem lists, and all diagnosis codes" associated with each VIPcare employed physician's visit with each patient over a four-year period. During that time period, VIPcare employed physicians performed approximately 450,000 visits with Freedom and Optimum members, each one of which generated multiple pages of medical and billing records. Gathering, reviewing, and producing documents responsive to this Request would cost hundreds of thousands of dollars, if not more. In Zafirov's responses to interrogatories, Zafirov refused to identify any of the false claims or false records she alleges in this case beyond the twenty patients referenced in her Amended Complaint, based on her objection that this is "a case involving sampling" and that claims data produced by Defendants "will be sampled, specific false claims or false records in that sample will be identified, and extrapolation will be used to determine the number of false claims at issue in this case" based on that claims data being produced by Defendants. (Zafirov's Responses and Objections to Physician Partners' Interrogatories 1 and 2.) Although Physician Partners does not agree with Zafirov's position on that, Zafirov cannot refuse to identify alleged false claims or false records and assert that she will only do so after sampling claims data and identifying

purported false claims or records within that sample, yet request hundreds of thousands of records having nothing to do with the purported false claims in any such sample (which Zafirov has not identified) or with the twenty patients referenced in the Amended Complaint. *See, e.g., United States v. Cameron-Ehlen Group, Inc.*, 2019 WL 1453063, at *3 (D. Minn. Apr. 2, 2019) ("Identification of specific claims allows Defendants to conduct third-party discovery on only those claims actually at issue without wasting resources on potentially hundreds or thousands of irrelevant claims"). Zafirov cannot assert that she needs such discovery first before she can identify false claims or records, because "relator-plaintiffs must possess this information *before* discovery has taken place." *United States ex rel. Phalp v. Lincare Holdings, Inc.*, No. 10-CV-21094-KMW, 2016 WL 3961840, at *10 (S.D. Fla. Jan. 11, 2016) (emphasis in original), *aff'd, United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148 (11th Cir. 2017). Physician Partners further objects to disputed factual assertions in this Request, such as that 5 Star Checklists are part of medical and billing records. Subject to and without waiving the foregoing objections and its General Objections, Physician Partners have produced and/or will produce 5 Star Checklists completed by a provider, progress notes, diagnostic test results, medications prescribed, problem lists, and diagnosis codes identified, if any, for the visits with the twenty patients specifically referenced in the Amended Complaint.

                                                    */s/ Jason P. Mehta*
                                                    Jason P. Mehta
                                                    Fl. Bar No. 106110
                                                    Primary email: jmehta@foley.com
                                                    Secondary email: dmills@foley.com

Lauren L. Valiente
Fl. Bar No. 034775
Primary email: lvaliente@foley.com
Secondary email: dguillen@foley.com

Joseph W. Swanson
Fl. Bar No. 29618
Primary email: joe.swanson@foley.com
Secondary email: dmills@foley.com

Michael P. Matthews
Fl. Bar No. 63988
Primary email: mmatthews@foley.com
Secondary email: dguillen@foley.com

**Foley & Lardner LLP**
100 N. Tampa Street, Suite 2700
Tampa, FL 33602
Telephone: (813) 229-2300
Facsimile: (813) 221-4210

*Counsel for Defendant Physician Partners, LLC, Florida Medical Associates, LLC d/b/a VIPcare, and Anion Technologies, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 20, 2024, a copy of the foregoing was served by email to all counsel of record using the email addresses they have registered with the CM/ECF system for the U.S. District Court for the Middle District of Florida (Tampa Division).

*/s/ Jason P. Mehta*
Jason P. Mehta
