UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA
*ex rel.* CLARISSA ZAFIROV,

    Relator/Plaintiff,

v.

PHYSICIAN PARTNERS, LLC;
FLORIDA MEDICAL ASSOCIATES,
LLC d/b/a VIPCARE; ANION
TECHNOLOGIES, LLC; FREEDOM
HEALTH, INC.; and OPTIMUM
HEALTHCARE, INC.,

    Defendants.
_____/

CASE NO. 8:19-cv-1236-KKM-SPF

# ORDER

Before the Court is Defendants Freedom Health, Inc. and Optimum Healthcare, Inc.'s Motion to Compel Responses to Requests for Production Nos. 4–7 (Doc. 184), Relator's Response to Defendants Freedom Health, Inc. and Optimum Healthcare, Inc.'s Motion to Compel (Doc. 202), and Defendants Freedom Health, Inc. and Optimum Healthcare, Inc.'s Reply in Support of Motion to Compel Responses to Requests for Production Nos. 4–7 (Doc. 216).  Upon consideration, the Court finds that Defendants' motion is due to be GRANTED IN PART and DENIED IN PART.

# BACKGROUND

On May 20, 2019, Relator/Plaintiff Clarissa Zafirov ("Relator"), a board-certified family care physician, brought this *qui tam* action under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, against Defendants (Doc. 1).  Relator was employed as a primary care physician by Defendant Florida Medical Associates, LLC d/b/a VIPcare from October 2018 through March 2020.  In her Amended Complaint (Doc. 86), Relator alleges that, beginning

in at least January 2014, Defendants acted in concert to falsely increase the risk adjustment scores of thousands of Medicare Advantage patients for the purpose of obtaining more funding from the United States than was rightfully owed.

In September 2021, the Court dismissed Relator's initial Complaint (Doc. 1) because it did not adequately allege that Defendants submitted false claims to the Government, "much less who submitted the claims, when they were submitted, and how those claims were submitted." (Doc. 81 at 1 (citing Fed. R. Civ. P. 9(b)). In November 2021, Relator filed her Amended Complaint, which alleged the same scheme as the initial Complaint, but cited additional conversations Relator had with employees of Defendants (Doc. 86 at ¶¶ 114, 133, 176–79, 194). Defendants' discovery efforts have revealed that many of these conversations were captured by Relator as part of the Government's investigation of her claims. Relator and the Government have produced numerous recordings, and the Freedom Defendants[1] allege that these recordings materially contradict the allegations in the Amended Complaint that are based on the recorded conversations (Doc. 184 at 3). In addition, the recordings confirm the existence of additional relevant communications between Relator and Government agents that were not captured by the recordings (*Id.*). The Freedom Defendants believe any nonprivileged communications between Relator and the Government will be critical to their defense and key evidence in assessing Relator's credibility.

On December 23, 2022, the Freedom Defendants served Relator with their First Requests for Production ("First RFP"), which included four requests that would encompass Relator's communications and documents exchanged with the Government:

- **RFP 4**: All Documents You provided to the Government Concerning any of the allegations in the Amended Complaint.

---

[1] The Freedom Defendants are Freedom Health, Inc. and Optimum Healthcare, Inc.

- **RFP 5**: All Documents the Government provided to You Concerning any of the allegations in the Amended Complaint.
- **RFP 6**: All Communications between You and the Government Concerning any of the allegations in the Amended Complaint.
- **RFP 7**: All Documents the Government provided to You through any Communication with the Government related to this matter, including, without limitation, in response to Your Communication with the United States Attorney's Office described in Jillian Estes's December 16, 2022 email to Elizabeth Bock.

(Doc. 184-2 at 9–10). In her Response to the Freedom Defendants' First RFP, Relator objected to each of these requests to the extent they sought the production of communications between Relator and the Government or the production of other documents subject to the attorney-client privilege, joint prosecution privilege, common interest privilege, and the attorney work-product doctrine (Doc. 184-3 at 6–8). Relator then stated that she would not provide her disclosure statements or any of her communications with the Government, but she would provide non-privileged records she provided to the Government concerning allegations in the Amended Complaint (*Id.*).

Over the following months, the parties conferred regarding Relator's obligation to produce nonprivileged documents responsive to these requests as well as a privilege log with details sufficient to enable Defendants to evaluate Relator's privilege claims. Relator has since agreed to (1) provide a privilege log which only categorically logs all common interest privileged communications, by identifying the date range of such communications, the date that the prefiling disclosure was made to the Government, and the date that any written disclosure was provided to the Government; (2) produce the non-work product documents provided to the Government; and (3) produce any records received in response to her *Touhy* request (Doc. 184-5). Accordingly, the Freedom Defendants move to compel Relator to produce (1) a privilege log of withheld responsive communications and documents with

3

sufficient detail for Defendants to evaluate Relator's claims of privilege; and (2) all nonprivileged communications and documents exchanged with the Government.

Since the filing of Defendants' motion, the parties have exchanged their privilege logs. With respect to communications with and documents exchanged with the Government, Relator's privilege log (Doc. 275-1) contains a single entry that states:

> Communications and work product shared between the United States and Relator and her counsel from the oral pre-filing disclosure on May 16, 2019 through the present, including without limitation the July 10, 2019 Written Disclosure Statement and any privileged or work product attachments. All other underlying documents (such as records generated by Defendants or third parties) have been produced.

(Doc. 275-1).

## ANALYSIS

Motions to compel discovery are committed to the sound discretion of the trial court. *See Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984). Discovery under the Federal Rules is governed by the principle of proportionality. Federal Rule of Civil Procedure 26(b)(1) defines the scope of discoverability as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant. *Moore v. Lender Processing Servs. Inc.*, No. 3:12-CV-205-J, 2013 WL 2447948, at *2 (M.D. Fla. June 5, 2013).

The party invoking a discovery privilege bears the burden of proving the privilege exists. *See United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991); Middle District

Discovery (2021) at Section VI(A)(1). "[W]hen possible, privileges should be narrowly construed." *Pierce Cty., Wash. v. Guillen*, 537 U.S. 129, 144–46 (2003). If a party withholds otherwise discoverable information by asserting a privilege or other discovery exemption, it must assert the claim expressly and "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5); *see also Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 695–96 (M.D. Fla. 2005); Middle District Discovery (2021) at Section VI(A)(1). "The standard for testing the adequacy of a privilege log is whether, as to each document, it sets forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." *CSX Transp., Inc. v. Admiral Ins. Co.*, No. 93-132-CIV-J-10, 1995 WL 855421, at *3 (M.D. Fla. July 20, 1995); *see also Arthrex, Inc. v. Parcus Med., LLC*, No. 2:11-cv-694-FtM, 29SPC, 2012 WL 3778981, at *4–5 (M.D. Fla. Aug. 31, 2012) (stating that a proper privilege log should contain (1) the name and job title of the author of the document; (2) the name and job title of the recipient of the document; (3) the date the document was prepared and sent or shared with persons other than the author; (4) the title and description of the document; (5) the subject matter addressed in the document; (6) the purpose for which the document was prepared or communicated; and (7) the specific basis for the claim that it is privileged).

There is no question that Relator's privilege log fails to meet these requirements. As set forth above, the privilege log contains one entry that merely references the fact that Relator is withholding her privileged communications with the Government. As the parties each acknowledge, however, courts have permitted more sparse or categorical privilege logs in

certain situations. *See, e.g.*, *Teledyne Instruments, Inc. v. Cairns*, No. 6:12-cv-854-Orl-28TBS, 2013 WL 5781274, at *16 (M.D. Fla. Oct. 25, 2013) (stating that the "Court has discretion to allow a party to produce a categorical privilege log" and that the "sufficiency of a categorical privilege log turns on whether the categories of information are sufficiently articulated to permit the opposing party to assess the claims of privilege or work product protection"); *United States v. Gericare Med. Supply Inc.*, No. Civ.A.99-0366-CB-L, 2000 WL 33156442, at *4 (S.D. Ala. Dec. 11, 2000) (finding plaintiff's categorical privilege log adequate because Rule 26 "does not require a party to sacrifice work product protection in order to assert it" and defendants failed to explain "how a categorical privilege log impaired their ability to test plaintiff's claim of work product protection, which rises or falls as a unit"); *see also* Fed. R. Civ. P. 26, 1993 advisory committee note ("Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories.").

The Freedom Defendants argue that Relator's categorical privilege log is inappropriate because it forces them to rely on Relator's conclusory assertions of privilege, thereby preventing them from exposing any "spurious claims" of privilege. (Doc. 184 at 11 (quoting *Montes v. Liberty Mut. Fire Ins. Co.*, No. 6:22-cv-920-WWB-LHP, 2023 WL 2743210, at *2 (M.D. Fla. Mar. 31, 2023)). In other words, unlike the privilege log at issue in *Teledyne*, the categories of information are not "sufficiently articulated to permit the opposing party to assess the claims of privilege or work product protection." 2013 WL 5781274, at *16. The Freedom Defendants represent that any privilege challenges "will likely turn on particularized facts like the dates on which specific communications took place; the identification of the

6

parties to the communications (including whether any communications were made by or in the presence of attorneys); the purpose of the communications (including whether the communications involved legal advice); or the description of the content of the communications (including whether the communications involved protected work product)." (Doc. 184 at 14).

Building off this, the Freedom Defendants predict that many documents Relator is withholding will not be privileged because the common interest doctrine does not confer a privilege where none previously existed. Indeed, "[t]he common interest doctrine is not an independent source of privilege, but rather acts as an exception to the general rule that a voluntary disclosure of privileged material to a third party waves" the privilege. *Lane Constr. Corp. v. Skanska USA Civ. Se., Inc.*, No. 6:21-cv-164-RBD-DCI, 2022 WL 18773723, at *1 (M.D. Fla. Nov. 7, 2022). To that end, the Freedom Defendants anticipate two categories of documents that are not privileged: (1) Relator's communications with the Government pre-dating her disclosure statement;[2] and (2) Relator's direct communications with Government agents.

Relator responds by explaining that all withheld documents are in fact privileged. First, Relator explains that communications between her, her counsel, and the Government are protected by the attorney-client privilege. *See, e.g.*, *United States ex. rel. Heesch v. Diagnostic Phys. Grp., P.C.*, No. 11-364-KD-B, 2014 WL 12603138, at *3 (S.D. Ala. June 4, 2014) ("In this case, there is no dispute that the Relator and the United States share a common interest in this FCA action; thus, their counsel's pre-suit communications in furtherance of this

---

[2] In her Response, Relator clarifies that she did not communicate with the Government prior to the pre-filing disclosure in this case (Doc. 202 at 13). As such, this category of documents does not exist.

7

litigation are entitled to protection.") (citations omitted).  In addition, Relator argues that her direct communications with the Government are entitled to work product protection.  *See, e.g.*, *Christoff v. Inglese*, No. 2:20-cv-546-SPC-NPM, 2022 WL 17987056, at *2 (M.D. Fla. Nov. 1, 2022) (stating that a "plain reading" of Rule 26 shows that the work product doctrine "extends to documents prepared by the party itself" and does not "hinge on a party's attorney or representative preparing the contested document"); *see also United States v. Planned Parenthood Fed'n of Am., Inc.*, No. 2:21-cv-022-Z, 2022 WL 21758589, at *3 (N.D. Tex. Nov. 7, 2022) ("And the rationale for the common-interest privilege is that 'persons who share a common interest in litigation should be able to communicate with their respective attorneys *and with each other* to more effectively prosecute or defend their claims.'") (quoting *In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*, 902 F.2d 244, 249 (4th Cir. 1990)) (emphasis in original).

    Considering the foregoing, Relator argues that a detailed privilege log is not appropriate in this case because the descriptive information will not help Defendants in their assessment of whether the documents are privileged.  *See, e.g.*, *Teledyne*, 2013 WL 5781274, at *16 ("A categorical log may be used where . . . the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the claim is well-grounded.") (quotations and citations omitted).  For example, Relator states that Defendants need not know the identity of the specific Government agents with whom Relator was communicating, because the application of privilege will not be dependent on that information, as communications with any Government agent in furtherance of this litigation would be protected (Doc. 202 at 18).

Relator also argues that the descriptive information in a standard privilege log is itself privileged in this case. *See, e.g.*, *Gericare Med. Supply*, 2000 WL 33156442, at *4 (finding plaintiff's categorical privilege log adequate because Rule 26 "does not require a party to sacrifice work product protection in order to assert it"). In particular, Relator states that the exact dates of certain discussions and the timing of various investigative and litigation decisions (for example, patterns of increase or decrease in communications) could reveal things that the Government attorneys considered more or less significant, and a party's opinion as to the significance of specific facts is core opinion work product. *See Bingham v. Baycare Health Sys.*, No. 8:14-cv-73-T-23JSS, 2016 WL 1546504, at *6 (M.D. Fla. Apr. 15, 2016) (finding that relator's disclosure statement qualified as work product because "the factual portions of the disclosure statement reveal the relator and counsel's mental impressions in that they reflect their analysis and selection of certain facts, which in turn reflects their insight and impressions of the case").

After consideration of the foregoing, the Court finds that Relator's categorical privilege log is insufficient. While the Court has no reason to question Relator's representation that only privileged documents have been withheld, the very purpose of a privilege log is to provide the opposing party an opportunity to assess the claim of privilege. Relator's categorical privilege log does not provide Defendants with a fair opportunity to make this assessment.[3] And Relator has not pointed the Court to a single case in which a *qui tam* relator was excused from preparing a privilege log or permitted to serve a privilege log similar to the one at issue in this case. Indeed, courts generally come to the opposite conclusion. *See United States v.*

---

[3] In reaching this conclusion, the Court does not suggest that categorial privilege logs are never appropriate, only that the categorical privilege log prepared by Relator in this case is insufficient.

9

*Adv. Dermatology & Skin Cancer Specialists, P.C.*, No. 5:20-cv-1373-JGB-SHK, 2024 WL 2107728, at *8–10 (C.D. Cal. Apr. 18, 2024) (analyzing work product and common interest privileges and ordering relator to "produce a privilege log for communications with the Government whether pre- or post-dating the filing of the Complaint"); *United States v. Cal. Inst. of Tech.*, No. CV 18-5964 CAS (RAOx), 2020 WL 13547790, at *5 (C.D. Cal. Nov. 18, 2020) (finding defendants' request that the court order relator to "list his communications with the United States on a privilege log so that, if appropriate, a challenge can be later made to the withheld documents" to be reasonable); *United States ex rel. Reddell v. DynCorp Int'l, LLC*, No. 1:14-cv-86, 2019 WL 12875494, at *2 (E.D. Tex. Sept. 17, 2019) ("[A]lthough certain communications between a relator in a False Claims Act case and the Government may be privileged, courts have required relators to produce a privilege log when they withhold those communications from discovery on the basis of privilege."); *United States v. Austin Radiological Ass'n*, No. A-10-cv-914-AWA, 2013 WL 1136668, at *13 (W.D. Tex. Mar. 18, 2013) ("[T]he Court finds that communications between Simms and the government regarding potential violations of the False Claims Act or the TMFPA are protected by work product privilege and not subject to discovery. . . . However, Simms is ordered to produce a privilege log concerning these communications to ARA to allow ARA to assess the applicability of any privileges asserted."); *cf. United States v. Mortg. Inv'rs Corp.*, No. 1:12-cv-4020-AT, 2015 WL 13732667, at *2 (N.D. Ga. Dec. 15, 2015) (denying motion to compel updated privilege log entries with respect to relator's communications with the Government because, "[g]iven the scope of this case and the length of time it spent under seal, a prolonged back and forth between Relators and the government over the decision of whether or not to engage in a joint prosecution is not

terribly surprising. Nor is it surprising that such communications would be described in the same manner and using the same language").

The Court is also not persuaded that the standard descriptive information contained in a privilege log is itself protected work product in this case. Regardless, in an abundance of caution, the Court will permit Relator to list items on her privilege log by month, instead of by specific date. Accordingly, Relator shall prepare and serve an updated privilege log which lists documents withheld on the basis of privilege with the following information: (1) the author(s) of the document or correspondence; (2) the recipient(s) of the document or correspondence; (3) the month the document was prepared and sent or shared with persons other than the author; (4) the general description of the document or correspondence; (5) the general subject matter addressed in the document or correspondence; (6) the purpose for which the document was prepared or communicated; and (7) the specific basis for the claim that it is privileged.

Finally, Defendants' motion also requests that the Court compel Relator to produce non-privileged documents in response to Request Nos. 4–7 of the First RFP. Relator represents that all non-privileged documents have been produced. Considering this representation, Defendants' request is DENIED. To the extent Relator's updated privilege log reveals withheld documents over which Defendants challenge the assertion of privilege, Defendants may file a renewed motion to compel.

Accordingly, it is hereby **ORDERED**:

(1) Defendants Freedom Health, Inc. and Optimum Healthcare, Inc.'s Motion to Compel Responses to Requests for Production Nos. 4–7 (Doc. 184) is **GRANTED in part and DENIED in part** as stated herein;

(2) Relator shall serve her updated privilege log on Defendants within fourteen days from the date of this Order.

**ORDERED** in Tampa, Florida, June 5, 2024.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE