**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA
ex rel. DR. CLARISSA ZAFIROV,

Plaintiff/Relator,

v.

FLORIDA MEDICAL ASSOCIATES, LLC, d/b/a VIPCARE; PHYSICIAN PARTNERS, LLC; ANION TECHNOLOGIES, LLC; FREEDOM HEALTH, INC.; and OPTIMUM HEALTHCARE, INC.,

Defendants.

Case No. 8:19-cv-01236

**DECLARATION OF JASON PAUL MEHTA**

I, Jason Paul Mehta, certify and declare as follows:

1. I am an attorney associated with the law firm of Foley & Lardner LLP, counsel for Florida Medical Associates, LLC, Physician Partners, LLC, and Anion Technologies, LLC ("Provider Defendants"). I am duly admitted to practice law before the Courts of the State of Florida and have been admitted to this Court. I have personal knowledge of the facts set forth in this declaration, and if called as a witness, could and would testify thereto.

2. Provider Defendants have produced all available medical records for all the patients whose claims and diagnoses Relator has identified as allegedly false. In sum, Provider Defendants have produced 17,931 pages of medical records.

**Exhibit 1**

3.      Defendants have been trying for over a year to get Relator to identify any other patients whose diagnoses she contends are false in response to Interrogatory No. 1 served on her in January 2023. Rather than identifying any other patients, all Relator would provide, on the last day of fact discovery, is the response that every claim "where the diagnosis was not supported by the medical record is a false claim." *See* Relator's Supplemental Responses to Defendants Freedom Health, Inc. and Optimum Healthcare, Inc.'s First Set of Interrogatories at 3, attached hereto as Exhibit A.

4.      Provider Defendants offered in December 2023 to produce medical records for up to 100 patients, and then offered to increase it to up to 150 patients (for Freedom's 2015-2016 time period). *See* Dec. 15, 2023 email from J. Mehta, attached hereto as Exhibit B. Relator declined these offers and decided to "move forward without reaching a stipulation" to the number of patients and instead said Relator would seek medical records first from Freedom/Optimum and then from Physician Partners, "and we can tackle any objections at that point." *See* Dec. 18, 2023 email from J. Estes, attached hereto as Exhibit C. Relator did not do any of that in the ensuing six months, instead waiting until there was just two weeks left in fact discovery to request 1,200 patients' medical records (with 600 "alternates" for a total of 1,800)—most of whom were patients of non-party affiliate providers—the subject of another pending Motion to Compel. *See* May 15, 2024 email from C. Napora, attached hereto as Exhibit D.

5.      Provider Defendants have produced all training materials, Bootcamp scripts, and surplus reports they have been able to locate, and have confirmed as much to Relator.

6.      During the parties' May 29, 2024 meet and confer, Provider Defendants' counsel stated their intent to produce retrievable hyperlinked documents with their June 1, 2024 production. Provider Defendants have now produced 770 documents that represent documents hyperlinked in emails.

7.      Provider Defendants also expressed a willingness to collect a reasonable subset of any additional hyperlinked documents identified by Relator that she believed may contain relevant information. Relator did not take Provider Defendants up on their offer.

8.      In September 2020, Counsel for Provider Defendants issued a litigation hold to Physician Partners' Information Technology ("IT") department, requiring IT to preserve detailed categories of documents, including "recordings related to any allegation related to the Action." Counsel followed up to ensure receipt of IT's written Certification of Receipt of and Compliance with Document Hold, signed by Amit Patel, then Physician Partners' Vice President of IT, on September 14, 2020.  A true and correct copy of that Certification is attached hereto as Exhibit E.

9.      Physician Partners understands from its IT personnel that, unconnected from anything having to do with Relator or this or any other litigation, in August 2023, a Physician Partners IT consultant deleted all Zoom recordings dated January 3, 2020 and earlier, that Zoom does not have copies of these recordings, and that the Zoom

recordings are no longer available. Counsel for Physician Partners informed Relator's counsel of this on May 6, 2024.

10. I, along with other attorneys from my firm, answered all of Relator's counsel's questions and requests about Zoom recordings, and Provider Defendants produced a Rule 30(b)(6) witness to testify under oath about the Zoom recordings.

11. Provider Defendants never had any Zoom Quality Huddle recordings with Relator from after January 3, 2020.

12. Provider Defendants have produced 139 video recordings in this case, including the Five Star University, training, and boot camp videos requested in RFP Nos. 22 and 25.

13. Provider Defendants located and produced the spreadsheet identified during Sajitha Johnson's deposition testimony.

14. Excerpts from a rough draft of Christopher Barber's 30(b)(6) deposition testimony transcript are attached hereto as Exhibit F.

I declare under penalty of the perjury of the laws of the United States that the foregoing is true and correct.

Executed in Hillsborough County, Florida, this 12th day of June 2024.

Jason Paul Mehta

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA
*ex rel.* DR. CLARISSA ZAFIROV,

Plaintiff and Relator,

v. ) NO. 8:19-cv-01236-KMM-SPF

FLORIDA MEDICAL ASSOCIATES, LLC, d/b/a VIPCARE; PHYSICIAN PARTNERS, LLC; ANION TECHNOLOGIES, LLC; FREEDOM HEALTH, INC.; and OPTIMUM HEALTHCARE, INC.;

Defendants.

**RELATOR'S FIRST SUPPLEMENTAL RESPONSES TO DEFENDANTS FREEDOM HEALTH, INC. AND OPTIMUM HEALTHCARE, INC.'S FIRST SET OF INTERROGATORIES**

Pursuant to Fed. R. Civ. P. 26(e), Relator Dr. Clarissa Zafirov, through undersigned counsel, hereby submits this first supplemental response to Defendant Freedom Health, Inc. and Optimum Healthcare, Inc.'s First Set of Interrogatories. Relator hereby incorporates the preliminary statement and general objections set forth in Relator's Responses and Objections to Defendant Freedom Health, Inc. and Optimum Healthcare, Inc.'s First Set of Interrogatories, served on January 31, 2023 and responds further as follows.

**INTERROGATORY NO. 1:** Identify each False Claim that You allege Freedom or Optimum submitted to CMS and state why You contend the Claim is False.

**Exhibit A**

**INITIAL RESPONSE:** Relator objects to this interrogatory as premature: Defendants have not yet provided records sufficient for Relator to identify all false claims or records at issue in this case. Further, it is overly broad and unduly burdensome as it is not brief, simple or particularized. See, *e.g.*, MDFL Civil Discovery Handbook, Section IV(A)(2). Relator additionally objects to this Interrogatory as it poses an unreasonable burden on Relator as it seeks a detailed listing of potentially thousands of false claims which resulted from the conduct alleged in Relator's Amended Complaint, particularly given that such a level of specificity is not required for Relator to prevail at trial in a case involving sampling. Once Freedom and Optimum produce reports of the claims submitted to the United States from January 1, 2015, through December 31, 2020, those claims will be sampled, specific false claims or false records in that sample will be identified, and extrapolation will be used to determine the number of false claims at issue in this case. Finally, Relator objects to this Interrogatory as seeking legal conclusions regarding falsity and materiality, as well as other legal issues.

To the extent this Interrogatory can be answered at all at this stage, Relator interprets it as seeking information about the patient exemplars identified in her Amended Complaint. Relator identified twenty exemplar patients in the Amended Complaint and described, in detail, the conduct associated with each patient which rendered the claims related to their treatment false claims and the records related to their care to be false records. The names and identifying information for each of those patients has been provided to counsel for all defendants in an Amended Complaint Patient Crosswalk. For those patients, the claim or record identified in each example is a false claim or record because Defendants had knowledge (as defined by the FCA) that the

diagnosis code was not supported by the patient's medical condition. For example, with respect to Patient A, the 5 Star Checklist provided to Dr. Zafirov by Anion on July 23, 2019, recommended "complete traumatic amputation of unspecified foot, level unspecified, initial encounter" with the source notation of "past history." Physician Partner's billing records included a statement for HCC 173, "Traumatic Amputations and Complications" with the notation that "FRH/OPT reported this HCC as previously paid." Patient A plainly still had both feet attached. Either Freedom had actual knowledge that the diagnosis code was fabricated, or it should have known that the code for an amputation was inaccurate when it was submitted only once and without any related codes or treatments. *See* Paragraphs 293-294 of Relator's Amended Complain.

**FIRST SUPPLEMENTAL RESPONSE:**

In addition to the above, Relator responds as follows: Relator contends that every claim submitted between January 1, 2015 and December 31, 2020 by Freedom or Optimum to the United States for a Medicare Advantage beneficiary whose care was rendered by a provider employed by or affiliated with the Provider Defendants where the diagnosis was not supported by the medical record is a false claim.

Defendants are in the best position to identify all false claims they have submitted or caused to be submitted, as they hold both the claims data and all supporting medical records. Relator has requested both, and Defendants have refused to provide the latter. In an effort to respond to concerns about burden, Relator retained an expert to assist in the creation of a statistically sound sample set and sought the medical records associated with the patients identified in that sample set. For damages purposes, Relator will use the data gleaned from the application of the rate at which diagnosis codes were

submitted where the diagnosis was not supported by the medical record in the sample set and apply it to the full claims data set. As Relator has repeatedly stated, this is the province of expert discovery.

Responding further, Defendants contend they require identification of specific false claims by Relator during fact discovery in order to conduct discovery. Defendants have conducted no discovery on the exemplar patients identified in Relator's Amended Complaint, so the purported need is inconsistent with Defendants' discovery efforts to date.

**INTERROGATORY NO. 2:** State in detail the amount of damages for which You allege Freedom or Optimum is liable, including the basis for such damages. **INITIAL RESPONSE:** Relator objects to this interrogatory as premature: Defendants have not yet provided records sufficient for Relator to identify all false claims or records at issue in this case which will give rise to the damages for which Defendants are liable. Further, it is overly broad and unduly burdensome as it is not brief, simple, or particularized. See, *e.g.*, MDFL Civil Discovery Handbook, Section IV(A)(2). Relator additionally objects to this Interrogatory as it poses an unreasonable burden on Relator as it seeks a detailed listing of potentially thousands of false claims which form the basis of the damages for which Defendants are liable, particularly given that such a level of specificity is not required for Relator to prevail at trial in a case involving sampling.

Under the False Claims Act, 31 U.S.C. §3729, et seq., Freedom and Optimum are jointly and severally liable for three times the amount of damages that the United States

has sustained as a result of false claims that they submitted or caused to be submitted. Freedom and Optimum are also liable to the United States for a civil penalty for each false statement and/or claim, as set by the Federal Civil Penalties Inflation Adjustment Act of 1990. Freedom and Optimum are separately responsible for the payment of Relator's reasonable attorneys' fees and costs. 31 U.S.C. § 3730(d)(1).

**FIRST SUPPLEMENTAL RESPONSE:**

In addition to the above, Relator states that the damages in this case are the amount of money paid by the United States for every claim submitted between January 1, 2015 and December 31, 2020 by Freedom or Optimum to the United States for a Medicare Advantage beneficiary whose care was rendered by a provider employed by or affiliated with the Provider Defendants where the diagnosis was not supported by the medical record.

Responding further, Relator has repeatedly stated that this is the province of expert discovery and complete damage calculations will be provided at the time of disclosure of expert reports.

**INTERROGATORY NO. 9:** State the basis for your allegation in the last sentence of Paragraph 180 that Freedom and Optimum "fail[ed] to conduct appropriate oversight of Physician Partners' submitted claims" as extracted from the complete sentence, "Freedom and Optimum's role in the submission of these false claims comes not only from their failure to conduct appropriate oversight of Physician Partners' submitted claims, but from the MAOs' role in the operation of Physician Partners."

**INITIAL RESPONSE:** Relator cannot respond to this Interrogatory as written and thus objects to it in its entirety as it is premature: discovery in this case is still in its very early stages. The Interrogatory is also objectionable because it is overly broad and unduly burdensome as it is not brief, simple or particularized. *See*, *e.g.*, MDFL Civil Discovery Handbook, Section IV(A)(2). Further, because the sentence fragment identified in this interrogatory is taken from a paragraph generally describing Freedom and Optimum's overall scheme, Relator further objects to this Interrogatory as an improper contention interrogatory which is overbroad and oppressive because any response requires a detailed narrative of Relator's entire case, as prohibited by the Middle District of Florida's Civil Discovery Handbook, Section IV(C)(2). *Suszko v. Specialized Loan Servicing, LLC*, No. 8:16-cv-2333, 2017 U.S. Dist. LEXIS 98788, at *4-5 (M.D. Fla. June 27, 2017); *Metro. Life Ins. Co. v. Liebowitz*, No. 2:20-cv-276, 2021 U.S. Dist. LEXIS 153299, at *12-13 (M.D. Fla. June 30, 2021). To the extent this Interrogatory can be answered at all at this stage, Relator identified patient examples in the Amended Complaint which reflect Freedom and Optimum's failure to conduct oversight which would have resulted in the rejection of plainly apparent incorrect diagnosis codes, including, *inter alia*, Patient A (described in response to Interrogatory 1, *supra*) and Patient M (described in the Amended Complaint at ¶¶263-266 for a diagnosis code of microcephaly, a rare and incurable birth defect).

**FIRST SUPPLEMENTAL RESPONSE:**

In meet-and-confers with Freedom Defendants counsel, Freedom clarified that this interrogatory does not seek Relator's independent knowledge but rather seeks

Relator and her counsel's interpretation of information adduced during fact discovery, to include counsel's evaluation and assessment of document production and deposition testimony. Therefore, Relator additionally objects to this interrogatory to the extent that it calls for information protected both by the attorney-client privilege and the work product doctrines. Relator also maintains the objection to that this in improper contention interrogatory which is expressly prohibited by the Middle District of Florida Handbook and attendant case law. The basis for Relator's allegation in the Amended Complaint that Freedom and Optimum failed to conduct appropriate oversight is the conduct described throughout in the Amended Complaint wherein Freedom and Optimum failed to conduct oversight which would have resulted in the rejection of plainly apparent incorrect diagnosis codes, including, *inter alia*, Patient A (described in response to Interrogatory 1, *supra*) and Patient M (described in the Amended Complaint at ¶¶263-266 for a diagnosis code of microcephaly, a rare and incurable birth defect).

**INTERROGATORY NO. 14:** State the basis for your allegation in Paragraph 194 that Freedom and Optimum took an "active role in guiding the coding practices of Physician Partners' physician," as extracted from the complete sentence, "In addition to Freedom's active role in guiding the coding practices of Physician Partners' physicians, Freedom had or should have had actual knowledge of the policies and practices at Physician Partners which caused false claims to be made."

**INITIAL RESPONSE:** Relator objects to this interrogatory as premature: discovery is in its very early stages still. Further, it is overly broad and unduly

burdensome as it is not brief, simple, or particularized. See, *e.g.*, MDFL Civil Discovery Handbook, Section IV(A)(2). In addition, Relator objects to this Interrogatory as an improper contention interrogatory that is overbroad and oppressive because any response requires a detailed narrative of Relator's entire case, which is prohibited by the Middle District of Florida's Civil Discovery Handbook, Section IV(C)(2). *Suszko v. Specialized Loan Servicing, LLC*, No. 8:16- cv-2333, 2017 U.S. Dist. LEXIS 98788, at *4-5 (M.D. Fla. June 27, 2017); *Metro. Life Ins. Co. v. Liebowitz*, No. 2:20-cv-276, 2021 U.S. Dist. LEXIS 153299, at *12-13 (M.D. Fla. June 30, 2021). To the extent this Interrogatory can be answered at all at this stage, Relator described manners in which Freedom and Optimum took an active role in guiding the coding practices of Physician Partners' physicians in Paragraphs 185-193 of the Amended Complaint.

**FIRST SUPPLEMENTAL RESPONSE:**

In meet-and-confers with Freedom Defendants counsel, Freedom clarified that this interrogatory does not seek Relator's independent knowledge but rather seeks Relator and her counsel's interpretation of information adduced during fact discovery, to include counsel's evaluation and assessment of document production and deposition testimony. Therefore, Relator additionally objects to this interrogatory to the extent that it calls for information protected both by the attorney-client privilege and the work product doctrines. Relator also maintains the objection to that this in improper contention interrogatory which is expressly prohibited by the Middle District of Florida Handbook and attendant case law. The basis for Relator's allegation in the Amended Complaint that Freedom and Optimum took an active role in guiding the coding

practices of Physician Partners' physicians is set forth in the conduct described in Paragraphs 185-193.

**<u>INTERROGATORY NO. 15:</u>** State the basis for your allegation in Paragraph 199 that "[Freedom and Optimum] acted with actual knowledge that the diagnoses codes submitted by Physician Partners, through Anion and on behalf of VIPcare and other contracted and affiliated providers, to Freedom and Optimum, and from Freedom and Optimum to the United States, were not accurate, complete and truthful and were, in fact, factually false."

**INITIAL RESPONSE:** Relator objects to this interrogatory as premature: discovery is in its very early stages still. Further, the Interrogatory is improper because it seeks information known exclusively to Defendants, and it is overly broad and unduly burdensome as it is not brief, simple, or particularized. See, *e.g.*, MDFL Civil Discovery Handbook, Section IV(A)(2). In addition, Relator objects to this Interrogatory as an improper contention interrogatory that is overbroad and oppressive because any response requires a detailed narrative of Relator's entire case, which is prohibited by the Middle District of Florida's Civil Discovery Handbook, Section IV(C)(2). *Suszko v. Specialized Loan Servicing, LLC*, No. 8:16- cv-2333, 2017 U.S. Dist. LEXIS 98788, at *4-5 (M.D. Fla. June 27, 2017); *Metro. Life Ins. Co. v. Liebowitz*, No. 2:20-cv-276, 2021 U.S. Dist. LEXIS 153299, at *12-13 (M.D. Fla. June 30, 2021).

**FIRST SUPPLEMENTAL RESPONSE:**

In meet-and-confers with Freedom Defendants counsel, Freedom clarified that this interrogatory does not seek Relator's independent knowledge but rather seeks

Relator and her counsel's interpretation of information adduced during fact discovery, to include counsel's evaluation and assessment of document production and deposition testimony. Therefore, Relator additionally objects to this interrogatory to the extent that it calls for information protected both by the attorney-client privilege and the work product doctrines. Relator also maintains the objection to that this in improper contention interrogatory which is expressly prohibited by the Middle District of Florida Handbook and attendant case law. As set forth in the complete paragraph from which Defendants' interrogatory quotes, Relator's allegation of knowledge as defined in the False Claims Act, as reflected in Paragraphs 199 and 200, derives from the totality of the allegations throughout the Amended Complaint.

**INTERROGATORY NO. 16:** State the basis for your allegation in Paragraph 200 that "[Freedom and Optimum] acted with deliberate ignorance or reckless disregard as to the truth or falsity of the diagnoses codes submitted by Physician Partners, through Anion and on behalf of VIPcare and other contracted and affiliated providers, to Freedom and Optimum, and from Freedom and Optimum to the United States, were not accurate, complete and truthful and were, in fact, factually false."

**INITIAL RESPONSE:** Relator incorporates her response to Interrogatory No. 15 herein. Paragraph 200 pleads an alternate knowledge theory to the knowledge pled in Paragraph 199.

**FIRST SUPPLEMENTAL RESPONSE:**

In meet-and-confers with Freedom Defendants counsel, Freedom clarified that this interrogatory does not seek Relator's independent knowledge but rather seeks Relator and her counsel's interpretation of information adduced during fact discovery,

to include counsel's evaluation and assessment of document production and deposition testimony. Therefore, Relator additionally objects to this interrogatory to the extent that it calls for information protected both by the attorney-client privilege and the work product doctrines. Relator also maintains the objection to that this in improper contention interrogatory which is expressly prohibited by the Middle District of Florida Handbook and attendant case law. As set forth in the complete paragraph from which Defendants' interrogatory quotes, Relator's allegation of knowledge as defined in the False Claims Act, as reflected in Paragraphs 199 and 200, derives from the totality of the allegations throughout the Amended Complaint.

 Dated this 29th day of May 2024,

 /s/ Jonathan M. Lischak
Jillian L. Estes (Fla Bar No. 0055774)
Jonathan M. Lischak (OH Bar No. 0097669)
Morgan Verkamp LLC
4410 Carver Woods Dr., Suite 200
Cincinnati, Ohio 45242
Telephone: (513) 651-4400
Fax: (513) 651-4405
Email: jillian.estes@morganverkamp.com
jonathan.lischak@morganverkamp.com

Kenneth J. Nolan (Fla. Bar No. 603406)
Marcella Auerbach (Fla. Bar No. 249335)
NOLAN, AUERBACH & WHITE, LLP
435 N. Andrews Ave., Suite 401
Fort Lauderdale, FL 33301
Phone: (954) 779-3943
Fax: (954) 779-3937
ken@whistleblowerfirm.com
marcella@whistleblowerfirm.com

Adam T. Rabin (Fla. Bar No. 985635)
Havan M. Clark (Fla. Bar No. 1026390)
RABIN KAMMERER JOHNSON
1601 Forum Place, Suite 201
West Palm Beach, FL 33401
Phone: (561) 659-7878
Fax: (561) 242-4848
arabin@rkjlawgroup.com
hclark@rkjlawgroup.com
e-filing@rkjlawgroup.com

***Counsel for Relator Dr. Clarissa Zafirov***

**VERIFICATION**

I, Clarissa A. Zafirov, state under penalty of perjury that the facts contained in the responses set forth herein are true and correct to the best of my knowledge and belief.

Executed this 29th day of May 2024,

/s/ Clarissa A. Zafirov
Clarissa A. Zafirov

**CERTIFICATE OF SERVICE**

I, Jillian Estes, hereby certify that the foregoing Relator's First Supplemental Responses and Objections was served on May 29, 2024, to all parties of record via electronic mail.

/s/ Jonathan M. Lischak
Jonathan M. Lischak

# EXHIBIT B

**From:** Mehta, Jason
**Sent:** Friday, December 15, 2023 9:22 AM
**To:** Jillian Estes
**Subject:** RE:

Hi!

Would really like to work this out with you, if we can. I'm worried about an untethered number of patient files, although I get your concern. How's this proposed revised stipulation?

> Zafirov may seek discovery of up to 150 Physician Partners' patients' medical and billing records from 2015-2016 (with Physician Partners preserving the right to object on all grounds other than timeframe), provided that Zafirov agrees not to seek any other discovery from Physician Partners from 2015-2016.

Does that work?

Thanks, Jill!
Jason

**Jason Mehta**
*Partner*

**Foley & Lardner LLP**
100 N Tampa St, Suite 2700, Tampa, FL 33602-5810
Phone 813.225.5424
View My Bio | Visit Foley.com | jmehta@foley.com

FOLEY
FOLEY & LARDNER LLP

---

**From:** Jillian Estes <Jillian.Estes@morganverkamp.com>
**Sent:** Thursday, December 14, 2023 6:32 PM
**To:** Mehta, Jason <jmehta@foley.com>
**Subject:** Re:

**** EXTERNAL EMAIL MESSAGE ****

Jason,

Thank you for making headway on this. We do not oppose the language in general, but I don't think we can commit to a number until we get claims data from Freedom and know what we'll need to be a realistic sample size. Our statistician suggests that 50 patients per year seems low for the likely number of claims, but it also depends on how the numbers across the sample look as a whole.

Also, given our track record, I expect any document request would be met with objections, but I assume you mean no objections which we cannot work through in negotiations, not none at all. So, I moved the language around to leave in the preservation of the right to object on all other grounds, but took out the initial clause so as to avoid confusion.

Exhibit B

Also clarified medical and billing records, to ensure we have the full record. I assume that was covered in your language but just for clarity.

That said, would your client agree to something like this:

> Zafirov may seek discovery of Physician Partners' patients' medical and billing records from 2015-2016 (with Physician Partners preserving the right to object on all grounds other than timeframe), provided that Zafirov agrees not to seek any other discovery from Physician Partners from 2015-2016.

Around all day tomorrow to talk through it to hopefully put this piece to rest.

Thanks!

Jill

______________________________________________________________
Jillian L. Estes | 513-448-1251 | jillian.estes@morganverkamp.com
**MORGAN VERKAMP, LLC**

---

**From:** "Mehta, Jason" <jmehta@foley.com>
**Date:** Tuesday, December 12, 2023 at 12:56 PM
**To:** Jillian Estes <Jillian.Estes@morganverkamp.com>
**Subject:** RE:

**-- External Email --**

Hi Jill—

I'm sorry for the delay in responding. I had a lengthy sentencing in Miami yesterday and have another one tomorrow in Tampa. I really apologize. Having said that, I've had a chance to speak with our client. We'd like to work this out, of course. We can agree to a stipulation between the parties, but we do not believe it should be filed with the court. We'd propose the following stipulation:

> If relevant and responsive to document requests to which Physician Partners has not objected (with Physician Partners preserving the right to object on all grounds other than timeframe), Zafirov may seek discovery of no more than 100 Physician Partners' patients' medical records from 2015-2016, provided that Zafirov agrees not to seek any other discovery from Physician Partners from 2015-2016.

If you can agree to that, we can agree to it. If that doesn't work, I understand. Please let me know if useful to discuss; if so, happy to chat tomorrow after this sentencing (will be done by 11am hopefully).

Many thanks—
Jason

**Jason Mehta**
*Partner*

**Foley & Lardner LLP**
100 N Tampa St, Suite 2700, Tampa, FL 33602-5810
Phone 813.225.5424
View My Bio | Visit Foley.com | jmehta@foley.com

The information contained in this message, including but not limited to any attachments, may be confidential or protected by the attorney-client or work-product privileges. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message and any attachments or copies. Any disclosure, copying, distribution or reliance on the contents of this message or its attachments is strictly prohibited, and may be unlawful. Unintended transmission does not constitute waiver of the attorney-client privilege or any other privilege. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party. Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

# EXHIBIT C

**From:** Mehta, Jason
**Sent:** Monday, December 18, 2023 12:32 PM
**To:** Swanson, Joe; Valiente, Lauren L.; Matthews, Mike
**Subject:** FW:

Redacted Attorney Work Product Communication

**Jason Mehta**
*Partner*

**Foley & Lardner LLP**
100 N Tampa St, Suite 2700, Tampa, FL 33602-5810
Phone 813.225.5424
View My Bio | Visit Foley.com | jmehta@foley.com

**From:** Jillian Estes <Jillian.Estes@morganverkamp.com>
**Sent:** Monday, December 18, 2023 11:54 AM
**To:** Mehta, Jason <jmehta@foley.com>
**Subject:** Re:

**** EXTERNAL EMAIL MESSAGE ****
Jason,

Good to chat with you on Saturday. Just writing to confirm our agreement to move forward without reaching a stipulation on the language. Relator plans to pursue the documents from Freedom/Optimym pursuant to their custody and control of underlying records as described in their contracts with Physician Partners. If we can't handle is that way, Relator will issue a Rule 45 subpoena to Physician Partners just as we will to any providers with relevant underlying records and we can tackle any objections at that point.

Thanks for talking it all through with me!

Hope you enjoyed the rest of the weekend.

Jill

Jillian L. Estes | 513-448-1251 | jillian.estes@morganverkamp.com
**MORGAN VERKAMP, LLC**

---

**From:** "Mehta, Jason" <jmehta@foley.com>
**Date:** Friday, December 15, 2023 at 6:17 PM

Exhibit C

**To:** Jillian Estes <Jillian.Estes@morganverkamp.com>
**Subject:** RE:

**-- External Email --**

Hi Jill—

So sorry for my delay here. Was in Boston all day and now at the airport, about to head back. Any availability this evening or tomorrow?

Thanks!
Jason

**Jason Mehta**
*Partner*

**Foley & Lardner LLP**
100 N Tampa St, Suite 2700, Tampa, FL 33602-5810
Phone 813.225.5424
View My Bio | Visit Foley.com | jmehta@foley.com

**From:** Jillian Estes <Jillian.Estes@morganverkamp.com>
**Sent:** Friday, December 15, 2023 11:58 AM
**To:** Mehta, Jason <jmehta@foley.com>
**Subject:** Re:

**** EXTERNAL EMAIL MESSAGE ****

Hey Jason,

I think it would be helpful to discuss the numbers issue. Available today to chat?

Jill

_______________________________________________

Jillian L. Estes | 513-448-1251 | jillian.estes@morganverkamp.com
**MORGAN VERKAMP, LLC**

---

**From:** "Mehta, Jason" <jmehta@foley.com>
**Date:** Friday, December 15, 2023 at 9:22 AM
**To:** Jillian Estes <Jillian.Estes@morganverkamp.com>
**Subject:** RE:

**-- External Email --**

Hi!

Would really like to work this out with you, if we can. I'm worried about an untethered number of patient files, although I get your concern. How's this proposed revised stipulation?

Does that work?

Thanks, Jill!
Jason

**Jason Mehta**
*Partner*

**Foley & Lardner LLP**
100 N Tampa St, Suite 2700, Tampa, FL 33602-5810
Phone 813.225.5424
View My Bio | Visit Foley.com | jmehta@foley.com

**From:** Jillian Estes <Jillian.Estes@morganverkamp.com>
**Sent:** Thursday, December 14, 2023 6:32 PM
**To:** Mehta, Jason <jmehta@foley.com>
**Subject:** Re:

**** EXTERNAL EMAIL MESSAGE ****
Jason,

Thank you for making headway on this. We do not oppose the language in general, but I don't think we can commit to a number until we get claims data from Freedom and know what we'll need to be a realistic sample size. Our statistician suggests that 50 patients per year seems low for the likely number of claims, but it also depends on how the numbers across the sample look as a whole.

Also, given our track record, I expect any document request would be met with objections, but I assume you mean no objections which we cannot work through in negotiations, not none at all. So, I moved the language around to leave in the preservation of the right to object on all other grounds, but took out the initial clause so as to avoid confusion.

Also clarified medical and billing records, to ensure we have the full record. I assume that was covered in your language but just for clarity.

That said, would your client agree to something like this:

> Zafirov may seek discovery of Physician Partners' patients' medical and billing records from 2015-2016 (with Physician Partners preserving the right to object on all grounds other than timeframe), provided that Zafirov agrees not to seek any other discovery from Physician Partners from 2015-2016.

Around all day tomorrow to talk through it to hopefully put this piece to rest.

Thanks!

Jill

Jillian L. Estes | 513-448-1251 | jillian.estes@morganverkamp.com
**MORGAN VERKAMP, LLC**

**From:** "Mehta, Jason" <jmehta@foley.com>
**Date:** Tuesday, December 12, 2023 at 12:56 PM
**To:** Jillian Estes <Jillian.Estes@morganverkamp.com>
**Subject:** RE:

**-- External Email --**

Hi Jill—

I'm sorry for the delay in responding. I had a lengthy sentencing in Miami yesterday and have another one tomorrow in Tampa. I really apologize. Having said that, I've had a chance to speak with our client. We'd like to work this out, of course. We can agree to a stipulation between the parties, but we do not believe it should be filed with the court. We'd propose the following stipulation:

> If relevant and responsive to document requests to which Physician Partners has not objected (with Physician Partners preserving the right to object on all grounds other than timeframe), Zafirov may seek discovery of no more than 100 Physician Partners' patients' medical records from 2015-2016, provided that Zafirov agrees not to seek any other discovery from Physician Partners from 2015-2016.

If you can agree to that, we can agree to it. If that doesn't work, I understand. Please let me know if useful to discuss; if so, happy to chat tomorrow after this sentencing (will be done by 11am hopefully).

Many thanks—
Jason

**Jason Mehta**
*Partner*

**Foley & Lardner LLP**
100 N Tampa St, Suite 2700, Tampa, FL 33602-5810
Phone 813.225.5424
View My Bio | Visit Foley.com | jmehta@foley.com

The information contained in this message, including but not limited to any attachments, may be confidential or protected by the attorney-client or work-product privileges. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message and any attachments or copies. Any disclosure, copying, distribution or reliance on the contents of this message or its attachments is strictly prohibited, and may be unlawful. Unintended transmission does not constitute waiver of the attorney-client privilege or any other privilege. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party. Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

The information contained in this message, including but not limited to any attachments, may be confidential or

protected by the attorney-client or work-product privileges. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message and any attachments or copies. Any disclosure, copying, distribution or reliance on the contents of this message or its attachments is strictly prohibited, and may be unlawful. Unintended transmission does not constitute waiver of the attorney-client privilege or any other privilege. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party. Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

The information contained in this message, including but not limited to any attachments, may be confidential or protected by the attorney-client or work-product privileges. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message and any attachments or copies. Any disclosure, copying, distribution or reliance on the contents of this message or its attachments is strictly prohibited, and may be unlawful. Unintended transmission does not constitute waiver of the attorney-client privilege or any other privilege. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party. Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

# EXHIBIT D

**From:** Chandra Napora <Chandra.Napora@morganverkamp.com>
**Sent:** Wednesday, May 15, 2024 8:51 AM
**To:** Amanda Santella; Catherine Nagle; Evan Hindman; Kelly McDonnell; Nathan Tschepik; Rahul Kohli; Scott Drake; Mehta, Jason; Swanson, Joe; Valiente, Lauren L.; Lee Bentley; Matthews, Mike; Benjamin, Olivia; Gerencir, Samantha M.
**Cc:** Jillian Estes; Anne Hayes Hartman; Jennifer Verkamp; Jonathan Lischak; Traci Ann Smith; Adam Rabin; Havan Clark
**Subject:** Follow-up re Relator's requests for production

**** EXTERNAL EMAIL MESSAGE ****

All,

We write in response to Defendants' refusal to produce records in response to Relator's requests for production number 41 (directed to the Freedom Defendants); number 36 (directed to Anion and VIPcare); and number 43 (directed to Physician Partners).

The request was the same to each defendant:

> All medical and billing records related to any Physician Partners patient whose services were paid in whole or in part by any Government health insurance program. This request specifically includes, but is not limited to, all 5 Star Checklists provided to and/or completed by a provider, primary care and specialist provider notes, diagnostic test results, medication lists, problem lists, and all diagnosis codes associated with that patient whether by a provider, as a result of a chart review, or by any other source.

Each defendant objected to the production of the requested records and unilaterally narrowed the request to records related only to the patients identified in Relator's complaint. Such unilateral narrowing is of course not appropriate. That said, to the extent Defendants objected on the basis of burden or proportionality, and as part of ongoing meet-and-confer, we advised that we retained an expert to assist in creating a sample of patient records to ensure that the necessary request for medical records is proportional to the needs of the case. To that end, we will be sending via secured file transfer a spreadsheet identifying 1,200 patients for whom we require the records requested in the referenced requests for production. You will note that the spreadsheet contains 1,800 identified patients. To the extent any of the first 1,200 patient's records is unavailable after reasonable search, the next patient's records should be pulled as a replacement, and so on, such that we receive a total of 1,200 patients' records.

As always, we are available to discuss this request and the narrowing we have done consistent with Rule 26. We are available Thursday for any needed discussion. Please let us know if either 12, 1, 2:30, or 4 EST works for you. Otherwise, please advise when we can expect these records.

Thank you,
Chandra

Chandra Napora
Morgan Verkamp LLC
4410 Carver Woods Dr., Ste. 200
Cincinnati, OH 45242
Tel. 1.513.618.2025
Fax 1.513.651.4405
Web http://www.morganverkamp.com
Email chandra.napora@morganverkamp.com
(she/her)

**Exhibit D**

THIS E-MAIL COMMUNICATION IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENT(S) NAMED ABOVE. This message may be an Attorney-Client communication and/or Attorney Work Product and as such is privileged and confidential. If the reader of this message is not the intended recipient, you received this communication in error. Any review, dissemination, distribution, disclosure, copying or use of the contents of the message is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by reply e-mail and/or telephone. After such notification, please erase the message completely from your computer system. Your assistance in correcting any error is appreciated.

# EXHIBIT E

*Confidential: Protected by Attorney-Client Privilege*

**Certification of Receipt of and Compliance with Document Hold**

I hereby certify that I have received a copy of the Important Notice Regarding Document Hold (the "Notice"). I further certify that I understand and will comply with the Notice and will advise **Dan Kollefrath** or outside counsel **Lee Bentley** (813-559-5524) or **Jason Mehta** (813-559-5532) of Bradley Arant Boult Cummings LLP of any instances in which I or anyone else, intentionally or inadvertently, fails to comply with it.

Signed: ______________________

Name: Amit C Patel

Title: Vice President IT

Date: September 14, 2020

**Exhibit E**

# EXHIBIT F

REALTIME AND INTERACTIVE REALTIME TRANSCRIPT

ROUGH DRAFT DISCLAIMER

--------------

IMPORTANT NOTICE:

AGREEMENT OF PARTIES

---------------

We, the party working with realtime and rough draft transcripts, understand that if we choose to use the realtime rough draft screen or the printout, that we are doing so with the understanding that the rough draft is a non certified copy.

We further agree not to share, give, copy, scan, fax or in any way distribute this realtime rough draft in any form (written or computerized) to any party. However, your own experts, co-counsel and staff may have limited internal use of same with the understanding that we agree to destroy your realtime rough draft and/or any computerized form, if any, and replace it with the final transcript upon its completion.

CASE: USA vs. FLORIDA MEDICAL ASSOCIATES

DATE: 6/7/24

Reporter's note:

**EXHIBIT F**

Since this proceeding has been realtimed and is in rough draft form, please be aware that there may be a discrepancy regarding page and line number when comparing the realtime screen, the rough draft, rough draft disk, and the final transcript.

Also please be aware that the realtime screen and the non certified rough draft transcript may contain untranslated steno, reporter's note in double parenthesis, misspelled proper names, incorrect or missing Q/A symbols or punctuation, and/or nonsensical English word combinations. All such entries will be correct on the final certified transcript.

COURT REPORTER'S NAME: Lisa Forlano, RDR, CRR, CCR

FIRM NAME: Alan Lesky & Associates

Rough draft

VIDEO OPERATOR: We're now on the record. The following is a videotaped deposition. My name is Lee Bitman. I represent Expert Legal Video Productions.

This deposition is a Zoom hybrid with the witness and counsel being located at the Law Offices of Foley & Lardner, located at 100 North Tampa Street, Tampa, Florida, as well as counsel on Zoom.

This is being taken in the matter of the United States of America, ex rel Dr. Clarissa Zafirov verse Florida Medical Associates, LLC, et al., which is filed in the United States District Court for the Middle District of Florida, Tampa

Division. The Case No. is 8:19-CV-01236.

Present for this deposition is the witness, Christopher Barber.

At this point will counsel please introduce themselves for the record?

MR. RABIN: I'm Adam Rabin, co-counsel for Relator, Dr. Clarissa

Zafirov.

MR. SWANSWON: This is Joe Swanson with the law firm of Foley & Lardner. We represent Physician Partners, Florida Medical Associates and Anion.

MS. McDONNELL: This is Kelly McDonnell with the law firm of O'Melveny & Myers on behalf of Freedom Health, Inc. and Optimum Healthcare, Inc.

MS. ESTES: This is Jillian Estes, counsel for Relator, Dr. Zafirov with the Morgan Verkamp law firm.

MS. GERENCIR: Good morning,

systems did PPC have during the relevant timeframe for recording messages or conversations or meetings?

MR. SWANSWON: Object to form and scope.

THE WITNESS: Repeat the question, please.

BY MR. RABIN:

Q What system during the relevant

timeframe did PPC have for recording voice messages, conversations or meetings such as video meetings?

MR. SWANSWON: Object to form and scope.

THE WITNESS: We use broad voice for land lines in the clinics, across the clinics and limited, you know, voicemail storage capacity. We also used Zoom for video conferencing and training.

BY MR. RABIN:

Q Did PPC have a practice of

recording Zoom meetings between its employees and providers?

MR. SWANSWON: Object to form and scope.

THE WITNESS: It wasn't a company policy to do that. It was used more on an individual basis to train or re-train, you know, rather than having to repeat the same conversation over and over again with different people we would encourage team members at times, you know, record this conversation and that way it can be shared with other folks,

other team members.

MR. RABIN: I'm going to go ahead and mark as Exhibit 4 the next exhibit.

(e-mail chain was marked Exhibit 4 for identification.)

BY MR. RABIN:

Q Mr. Barber, are you able to see the document on the screen that I've marked as

Exhibit 4?

A Yes.

Q All right. So what I'm showing you now is an e-mail from your counsel, Mr. Swanson, to various lawyers, including counsel for the relator with an attached called Litigation Hold 2020 and the message refers in part to the 15 Zoom recordings involving doctor scar off were dated and then it list the dates.

And you see in the sentence list blow the dates it says the recordings were deleted in August 2023?

A Yes.

Q First of all, which PPC employees or VIPCare employees met with Dr. Zafirov during the subject Zoom meetings

that are referenced in this e-mail?

MR. SWANSWON: Object to scope.

THE WITNESS: I don't know.

BY MR. RABIN:

Q Does PPC know which employees of

PPC or VIPCare would typically have met with Dr. Zafirov?

A Yes.

Q And who were they?

A It could be a variety. Could you, I guess, clarify the question?

Q Sure. In this e-mail it references 15 Zoom recordings involving Dr. Zafirov, correct?

A Yes.

Q All right. I'm just trying to figure out who from PPC or VIPCare would have been party to those Zoom meetings with Dr. Zafirov?

A Okay. Dr. Hans, Dr. Haas, Emily Gallman, Alex Lavin, Rajiv Patel.

Q Anyone else?

A I don't know who all Dr. Zafirov would have met with. I think that -- the names I provided certainly would have been working

with her. But I can't provide you a comprehensive list of everybody that

Dr. Zafirov would have met with.

Q Who at PPC would have known that these 15 Zoom recordings -- let me rephrase it.

Who at PPC would have known that these 15 Zoom meetings were being recorded?

MR. SWANSWON: Object to form.

THE WITNESS: The people that were party to the meeting.

BY MR. RABIN:

Q Were there people that were not in attendance at the meeting such as the IT department at PPC that also would have known about the meetings being recorded?

MR. SWANSWON: Object to form.

THE WITNESS: There could have been a general awareness by virtue of the company using Zoom that meetings were being recorded.

BY MR. RABIN:

Q In Mr. Swanson's e-mail, it refers to 15 Zoom recordings that were deleted in August 2023. Has PPC subsequent to this e-mail on May 23, 2024 learned of any other

Zoom recordings involving Dr. Zafirov that have been deleted?

A No.

Q Was there a department at PPC that was responsible for deleting the 15 Zoom recordings?

MR. SWANSWON: Object to form.

THE WITNESS: The IT department would have been.

BY MR. RABIN:

Q What was the reason that PPC's IT department deleted the 15 Zoom recordings?

MR. SWANSWON: Object to form.

THE WITNESS: There was a transition underway in the IT department and so when the legal hold was circulated, the team that received that was different than the team that deleted the video.

MR. RABIN: Let's go ahead and mark as Exhibit 4 -- I'm sorry, Exhibit 5 the next document.

(Notice of Litigation Hold

document was marked Exhibit 5 for identification.)

BY MR. RABIN:

Q Are you able to see this document on the screen, sir?

A Yes.

Q And it's a three-page document. The highlights on it are mine.

You see where it says important notice regarding document hold?

A Yes.

Q And it refers to a certain case number which happens to be the case number for this case filed by Dr. Zafirov.

You've seen this litigation hold notice before, correct?

A Yes.

Q And the title of the document as we received it and as you saw in the e-mail before it referenced the year 2020, do you know when this particular litigation hold notice was circulated at PPC?

A I believe September of 2020.

Q And how do you know that?

MR. SWANSWON: Objection. To the extent that the answer calls for relaying information communicated or

discussed with counsel, I'm going to instruct him not to answer.

BY MR. RABIN:

Q Do you have a source of knowledge of that fact other than communications with counsel?

A No. If we would have received this, we would have circulated it.

Q To whom -- I'm sorry. Go ahead.

A I'm done.

Q Was the Notice of Litigation Hold in Exhibit 5 circulated to all PPC and VIPCare employees?

MR. SWANSWON: Object to form and scope.

THE WITNESS: It would have been

communicated to those involved.

BY MR. RABIN:

Q Let's break that down.

How was the litigation hold notice in Exhibit 5 published to the people that received it?

MR. SWANSWON: Object to form.

THE WITNESS: It would have been circulated via e-mail.

BY MR. RABIN:

Q And who was the author of the e-mail?

MR. SWANSWON: Object to form and scope.

THE WITNESS: The author of the e-mail, I don't know specifically. I think it would come from our compliance department.

BY MR. RABIN:

Q And to clarify, I'm asking who sent the e-mail as the sender?

A I can't recall who sent the e

male.

Q And before you had made a reference and I'm paraphrasing to the relevant or appropriate people that were the recipients of this notice of litigation hold, what was the term that you used?

A The term I used for what?

Q To refer to who got the notice?

A I think the people that were involved, or potentially involved.

Q And who decided who those people were that would receive the litigation notice?

MR. SWANSWON: Object to form and scope.

THE WITNESS: Our compliance team.

BY MR. RABIN:

Q And is there a list of people that PPC has that received this notice of litigation hold?

A Repeat the question.

Q Sure. Does PPC have a list of the people that received the notice?

MR. SWANSWON: Object to form and scope.

THE WITNESS: Yes, I think so.

BY MR. RABIN:

Q And does PPC know if there were certain departments that received the notice?

A We would know who received it. Those individuals would be in a department.

Q And if someone wanted to know the list of people that received the notice how would they go about determining?

A Look at the e male.

Q And has that e-mail been produced in discovery in this case?

MR. SWANSWON: Object to scope.

THE WITNESS: I don't know.

BY MR. RABIN:

Q All right. We're going to go ahead and transition to Topic 2 in the notice. I'll pull it back up to refresh you on it. The

topic that starts with Physician Partners, employee and organizational structure, including the items in A, B, C and D, and then the note, in part, refers to followon questions related to those charges may be asked of Physician Partners, Physician Partners may also be asked about compensation bonus structure for all roles for medical coding to include coding reviewed, education or revision was expected or performed.

And before we move into that, did -- with respect to the litigation hold notice that I was just showing to you in Exhibit 5, did anyone have to sign any type of attestation or other document with respect to that litigation hold notice that was published to certain PPC or VIPCare employees?

MR. SWANSWON: Object to form.

THE WITNESS: The recipients

would confirm and acknowledge receipt of the hold.