# Exhibit A



O'Melveny & Myers LLP
2801 North Harwood Street
Suite 1600
Dallas, TX 75201-2692

T: +1 972 360 1900
F: +1 972 360 1901
omm.com

May 29, 2024

**Scott Drake**
D: +1 972 360 1915
sdrake@omm.com

<u>**VIA EMAIL**</u>

Jillian L. Estes
Frederick M. Morgan, Jr.
Chandra Napora
Jonathan Lischak
Morgan Verkamp LLC
4410 Carver Woods Drive, Suite 200
Cincinnati, OH 45242

Kenneth J. Nolan
Marcella Auerbach
Nolan, Auerbach, & White, LLP
435 N. Andrews Ave., Suite 401
Fort Lauderdale, FL 33301

Adam T. Rabin
Havan M. Clark
Rabin Kammerer Johnson
1601 Forum Place, Suite 201
West Palm Beach, FL 33401

Re:   <u>*United States ex rel. Zafirov v. Florida Medical Assocs., LLC, et al.*</u>

Counsel:

We write in response to your letter delivered to us on Sunday, May 26, 2024 ("Letter") regarding Freedom Health, Inc., and Optimum Healthcare, Inc.'s ("Freedom Defendants") purportedly deficient productions. We note that this letter arrived one business day before the close of fact discovery. We disagree that Freedom Defendants' productions are deficient and with your mischaracterizations of the history of discovery in this matter, as described herein.

I.   **Freedom Defendants' Document Productions**

As a preliminary matter, Relator's contention that Freedom Defendants' discovery has been in any way delayed is without merit. First, Relator takes issue with Freedom Defendants' representations that they complied with the March 15, 2024 substantial completion deadline. Your Letter mischaracterizes that deadline as a deadline applicable to *all* of Freedom Defendant productions, when it only applied to Freedom Defendants' productions of documents in accordance with their Responses and Objections to Set One of Relator's Requests for Production, to which the ESI custodians and search terms were tailored and agreed upon by the Parties. *See* March 22, 2024 email from Kelly McDonnell (noting that Freedom Defendants had "substantially completed their document productions in response to Relator's RFPs on March 15"). Freedom Defendants did not agree to substantially complete the production of documents upon which they might affirmatively rely *over two months before* the end of the fact discovery period and before any depositions had been taken. Nor did Freedom Defendants agree to substantially complete their production of ESI as to requests for production Relator had not yet served. Although discovery in this matter commenced over 18 months ago, Relator chose to



wait until April 29, 2024, the last possible day in the discovery window, to serve 23 new Requests for Production; that Freedom Defendants continue to produce responsive documents should come as no surprise to Relator.

With respect to the two "examples" of delayed productions that Relator identifies—which were produced on May 8, 2024—both were re-productions of third-party documents obtained pursuant to Freedom Defendants' subpoenas and in response to a Request for Production first served by Relator on April 29, 2024.[1]  The production was not late; rather, it was early, as Freedom Defendants' response was not due until May 29.  Freedom Defendants worked diligently to produce documents received late in the discovery window from third-parties, and produced them *before* the deadline for responses and objections to the April 29 Requests, and just nine days after receiving the Request for those documents from Relator.  Freedom Defendants received the A&M production on April 9, 2024 (which Freedom Defendants reviewed and produced within a month), and the Ideker production on May 1, 2024 (which Freedom Defendants reviewed and produced within a week).  Relator is correct that these third parties returned large productions, but the critical point is that Freedom Defendants worked hard to review these documents as quickly as possible so that Relator could have them well in advance of Freedom Defendants' May 29 due date.

The other example Relator provides as to Freedom Defendants' purportedly delayed productions is the production of *one exchange* by Dr. Mansour in response to Freedom Defendants' June 20, 2023 subpoena.  After failing to produce these documents to Freedom Defendants *for almost a year*, Relator's counsel Adam Rabin finally made the production on behalf of his other client, Dr. Mansour, on May 17, 2024.  Mr. Rabin was well aware of the documents at issue and even utilized them during the deposition he took of Mr. Kollefrath in the *Mansour* litigation.  *See Mansour v. Freedom Health, Inc*., No. 8:22-cv-595-WFJ-SPF (M.D. Fla.)  In the same vein, Mr. Rabin has had extensive knowledge of Ms. Gareau's role at Freedom Defendants for years—indeed, she is mentioned by name throughout Dr. Mansour's complaint.  Relator's counsel had more than sufficient knowledge about Ms. Gareau at the time of the ESI negotiations for Relator to have raised her as a possible custodian if she was so inclined—but she did not do so.[2]  This dispute has been fully briefed and decided by the

---

[1] Relator had not issued a Request for Production calling for documents produced by third parties until the April 29, 2024 Requests.

[2] In December 8, 2022, Freedom Defendants circulated a draft ESI Protocol to the Parties.  After more than three months of negotiation and drafts exchanged, the Parties signed the ESI Protocol on March 27, 2023.  As to custodians, the ESI Protocol provided that the Parties would produce initial lists of custodians and "[t]he Parties shall meet and confer if any Party reasonably believes that there are additional custodians likely to have unique, relevant information."  ESI Protocol at 2. The ESI Protocol further provided that the Parties would produce lists of search terms that the Requesting Party could "provide additional search terms that it believes in good faith are necessary to identify responsive documents."  *Id*. at 3. Pursuant to these provisions, Freedom Defendants provided Relator with a list of their custodians on May 18, 2023.  In a response email on May 25, 2023, Relator asked Freedom Defendants to add custodians addressing certain topics, none of which implicated Ms. Gareau's role at Freedom Defendants.  Freedom Defendants agreed to add two MRA auditors as custodians on June 6, 2023.  Relator confirmed her understanding of Freedom Defendants' custodians on June 13, 2023.  At no point following that email exchange did Relator suggest other custodians or state a belief that the list was incomplete.  Notably, at no point did Relator suggest that Ms. Gareau would be an appropriate custodian.



Magistrate, who was "not persuaded that the April 2019 emails reveal any production deficiencies," *See* ECF 268, at 3.  Freedom Defendants do not feel the need to engage further on this issue.

Relator's claim that Freedom Defendants "should" have designated Ms. Gareau as a custodian is similarly meritless.  Relator admits that ESI custodians were "intensely negotiated." She also states that "each party is best suited in the first instance to identify relevant, responsive repositories of information," but for the reasons stated above, this is not a case where only Freedom Defendants knew about Ms. Gareau or her role.  Ms. Gareau was well-known to Relator's counsel, and Relator's counsel also had in its possession the very documents that she now claims are the basis for seeking additional discovery from Ms. Gareau's custodial file.  Relator could have asked Freedom Defendants to add Ms. Gareau as a custodian at a time when that was possible (not one business day before the close of fact discovery).  Relator chose not do so.  Freedom Defendants were not obligated to designate every one of its many employees as ESI custodians, as that would produce endless discovery. *See, e.g.*, *Jones v. Varsity Brands, LLC*, 2021 U.S. Dist. LEXIS 237676, at *18-19 (W.D. Tenn. Dec. 13, 2021) (denying request to add custodian where documents of proposed custodian would be duplicative).  Rather, Freedom Defendants selected, with heavy input from Relator, those ESI custodians it believed were most likely to have non-duplicative, responsive materials. That is precisely what Freedom Defendants did and they have produced more than 275,000 pages of documents in this litigation (not counting documents obtained and produced from third parties).  Given the breadth of Freedom Defendants' ESI productions here, to the extent Ms. Gareau's email would contain responsive documents, those documents would likely be pulled into the custodial pools of the MRA Department colleagues, many of whom are ESI custodians, with whom she was corresponding.   Nevertheless, in response to Relator's specific concerns, Freedom Defendants devoted substantial resources, including over the weekend, to performing additional searches of Ms. Gareau's custodial file, *see* ECF 263-1 and did not turn up any new substantive information that would suggest additional responsive material exists.  Accordingly, Freedom Defendants decline Relator's request to reopen ESI custodial discussions one business day before the end of fact discovery.

## II.     Additional Documents Requested in Relator's May 26 Letter

In your letter, Relator identified a number of categories of documents for the first time that she purports to be responsive to her First Set of Requests for Production.  Relator's assertion that such documents were required to be produced as part of Freedom Defendants' response to Relator's First Set of Requests for Production and are "overdue" entirely ignores what followed Relator's requests, namely, Freedom Defendants' objections to those requests (including as to their incredible breadth and the associated burden), the months of meet and confers regarding the exact scope of Freedom's production in response to those requests, and the resulting chart that memorializes the compromises the parties reached as a result of those negotiations.  *See* June 30, 2023 Letter and Appendix, sent via email by Elizabeth Arias; *see also* August 24, 2023 Letter, sent via email by Elizabeth Arias.   Relator *agreed* to the scope of Freedom Defendants' production, and *agreed* to the search terms that Freedom Defendants would apply to custodial document collections to search for documents responsive to certain RFPs; the time for those discussions passed months ago.[3]  Relator's last-minute attempt to

---

[3] Freedom Defendants and Relator negotiated ESI search terms extensively.  Relator was provided with hit counts for the searches and Freedom Defendants added a number of search terms at Relator's request.  Freedom Defendants' circulated proposed search terms on September 29, 2023.  Relator



expand discovery conflicts directly with the written record between the parties about the scope of Freedom Defendants' obligations.

Nevertheless, Freedom Defendants respond here to each of Relator's requests. With respect to Relator's second through fifth bullets in section B of her Letter, Freedom Defendants are not obligated to, and will not, "generate[]," "run" or "quer[y]" information to create reports to produce them to Relator. "[A] party cannot invoke Rule 34(a) to require another party to create or prepare a new or previously non-existent document solely for its production." *Advanced Cable Ties, Inc. v. Am. Elite Molding, LLC*, No. 3:18-cv-2035-MCR/MJF, 2019 U.S. Dist. LEXIS 250217, at *13-14 (N.D. Fla. Feb. 7, 2019) (citing *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 227 (N.D. Tex. 2016)); *see also Hallmark v. Cohen & Slamowitz*, 302 F.R.D. 295, 299 (W.D.N.Y. 2014) (litigant need not create audited financial statements to comply with plaintiff's discovery request); *Alexander v. F.B.I.*, 194 F.R.D. 305, 310 (D.D.C. 2000) ("Rule 34 only requires a party to produce documents that are already in existence."). With regard to the second bullet, Freedom Defendants have already informed Relator that every Physician Partners provider with 50 or more patients in their patient panel is subject to QIP II audits, making this discovery redundant in any event. *See* Freedom Defendants' Responses and Objections to Interrogatory No. 13. With respect to the Third and Fourth bullets, Freedom Defendants produced responsive audit materials to Relator, some of which Relator has used at the depositions of Freedom Defendants' personnel. *See, e.g.*, Exs, 11-15 to the Deposition of Cathy English (FRDM-00012489, FRDM-00012522, FRDM-00012556, FRDM-00012601, and FRDM-00012642; *see also* FRDM-00254701 (summarizing QIP meeting).

In addition, "Relator demands production of every audit, including the audited records and resulting report, associated with a Physician Partners physician that Freedom conducted between 2015 and 2020." In response to the only RFPs touching on "audits" (RFPs 16 and 17), Freedom Defendants promised to produce "final versions of nonprivileged Medicare Advantage risk adjustment review reports" and documents, if any, "that evaluate the financial impact on Freedom Defendants of any increase in [risk scores]" for certain members referenced in the Amended Complaint; Relator agreed with the scope of the search that Freedom Defendants promised to undertake. *See supra* (discussing negotiations on scope of discovery). Freedom Defendants conducted that review, applying any agreed search terms to the searches requiring review of custodial files, and have produced all responsive, non-privileged documents, thereby satisfying their obligations with respect to those RFPs.

In any event, Freedom Defendants have also produced other documents, beyond the documents responsive to RFPs 16 and 17, which show the "results of its auditors of providers" in QIP and "reports that show the IPA, the number of members, and their current risk score." The record establishes that Relator is aware—she asked one of Freedom Defendants' corporate representatives about such documents in her deposition. *See* FRDM-00018064, Slides 18-28 (Ex. 6 in Relator's Deposition of Radha Rai) (QIP Committee meeting deck, discussing the results of the QIP audits). Similarly, Freedom Defendants produced numerous documentation reports and provider meeting notes from QIP reviews and exchanges between

---

proposed edits on October 13, 2023. Freedom Defendants proposed revised search terms in response to further conferrals with Relator, and the Parties reached substantial agreement on the terms during their December 19, 2023 meet and confer. As with the custodians, Relator had and used the opportunity to suggest and obtain revisions to the search terms.



Freedom Defendants' MRA auditors and Physician Partners regarding the results of their QIP audits of providers.  *See, e.g.*, FRDM-00154951; FRDM-00254701; FRDM-00171061.

Freedom Defendants also produced "reports that show the IPA, the number of members, and their current risk score."  In fact, Relator asked Radha Rai at her deposition about Freedom Defendants' "Dashboard" presentation, which listed the IPAs, their membership, and their average MRA risk scores.  FRDM-00053909 (Ex. 10 in Relator's Deposition of Radha Rai). Similarly, Freedom Defendants have produced Joint Operating Committee meeting decks, in which Freedom Defendants shared this information with IPAs, such as Physician Partners. *See, e.g.*, FRDM-00165627.

With regard to Relator's repeated demands for "discovery on discovery," here focused on Microsoft Teams chats, Freedom Defendants did their diligence in the early stages of discovery to determine where repositories of responsive information may be located, and Freedom Defendants determined that Teams was not such a repository.  The deposition testimony that Relator cites in service of her demand confirms as much.  Asked whether she used Teams, Ms. Kortsch replied, "Not for work purposes for documents and such, no."  Kortsch Depo. Tr. 42:20-21.  Asked whether Elevance used any "chat or IM system," Ms. Kortsch responded that Teams was available "[f]or general communication."  *Id.* at 43:2-9.  Ms. Kortsch then said that Freedom used Teams, too, but provided no testimony about whether (to her knowledge) any substantive written communications took place on the platform.  Freedom Defendants will not delve further into this topic as it is protected by attorney work product.

Next, Relator demands every medical record for all Provider Defendant beneficiaries between 2015 and 2020.  As an initial matter, Relator has not set forth any colorable argument that these documents are even within Freedom Defendants' possession, custody, or control. Freedom Defendants have repeatedly told Relator that they, as a general matter, do not possess medical records, and only obtain them for limited purposes (such as targeted audits), which are far more limited in nature than what Relator's request demands.  On our May 24, 2024 meet-and-confer on this topic, counsel for Relator explained Relator's belief that Freedom Defendants had "actual possession" of some—but certainly not all—of these medical records, and had "constructive possession" of the remainder.  When pressed, Relator's counsel admitted that they did not know if Freedom Defendants possessed *any* of the medical records, and did not select the purported "sample" based on whether Freedom Defendants were more likely to have possession of them—which would have been the case if, for example, the sample was geared toward records that would have been implicated by one of Freedom Defendants' targeted audits.  To the extent Freedom Defendants have any of the records requested, Relator's "actual possession" arguments make little sense—producing some but not all patient records would not permit either side to prove anything material about the propriety of any particular diagnosis codes, since diagnoses could have been recorded in other medical records for which Freedom does *not* have actual possession.  And Relator's "constructive possession" claim only underscores the excessive burden of Relator's request.  Relator apparently believes that Freedom Defendants have a right to demand all medical records from Physician Partners, but those rights depend on a detailed analysis of the interplay between Freedom Defendants' contracts with Physician Partners, and *each member's* agreements with both parties as to how the parties are permitted to use their protected medical records.

Even assuming that Freedom Defendants *possess* these documents, as Freedom Defendants have already explained, Relator's demand is exceedingly overbroad, burdensome, and disproportionate to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1) (discovery must be

"proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit"). Freedom Defendants simply cannot agree to Relator's demand, especially where Relator has failed even to identify the allegedly false diagnosis codes at issue in this case—the only diagnosis codes to which this wide-ranging discovery request is relevant. And while Freedom Defendants are still investigating the burdens associated with locating and producing the somewhat narrower subset of 1,200-1,800 patient records requested just two weeks ago, it is plain already that the associated burdens would be extreme. Relator's demands do not comply with the standards for proportional discovery set out in Rule 26.

Finally, as to the last category of documents discussed in your Letter, Freedom Defendants have produced (or will produce by the end of today) quarterly Freedom compliance meeting minutes, agendas, and materials in response to Relator's April 29 Request for Production No. 46, which sought documents "regarding any board or committee that in any way involves risk adjustment, diagnostic coding, overpayments, or claims submission, all meeting minutes, agendas, notes, and other memoranda." We understand that Ms. Kortsch was referencing this Freedom compliance committee when testifying about the "Medicare compliance committee." Freedom's Compliance Department also oversees delegation oversight activities, and reports related to such activities are included in the minutes and/or presentations for the aforementioned compliance committee. Thus, these documents have also been produced (or will be produced later today). Likewise, with respect to the "risk register" documents referenced in Relator's Letter, Freedom Defendants have already produced certain copies or excerpts that were identified through the parties' agreed search terms and responsive to Relator's First Set of Requests for Production,[4] and has produced or will produce more such documents today, which were identified through additional targeted searching conducted since receipt of Relator's May 26, 2024 Letter.

### III.     Freedom Defendants' Privilege Log

It is difficult to take seriously your contention that Freedom Defendants' privilege log was "the sparsest privilege log we have ever received in decades of this work" when Relator's privilege log contains all of ***3 rows*** and contains absolutely no meaningful information from which Freedom Defendants can determine what documents were withheld and on what basis. Relator refuses to even provide metadata—standard in the industry and consistent with the Parties' negotiated privilege log protocol. Freedom Defendants' privilege log, which has been supplemented to include documents withheld or redacted for privilege pursuant to Freedom Defendants' latest production, contains a comparable plethora of information than Relator's log. And, to the extent Relator takes issue with the quantity of documents on the log, that only goes to show that Freedom Defendants did not improperly withhold documents from Relator on the basis of privilege.

Setting aside these glaring differences between the parties' respective logs, the point here is that Freedom Defendants' log complies with the applicable rules and the parties' agreements on this subject. The Protocol Relating to Privileged Responsive Materials, which the Parties negotiated for nearly nine months, permits a party to produce a privilege log "containing only objective metadata . . . and an indication of the privilege or protection being

---

[4] *See, e.g.*, FRDM-00000632.

asserted" and sets forth the fields such a log must include. *See* Protocol Relating to Privileged Responsive Materials at 2. Freedom Defendants' privilege log complies with these requirements. The Protocol also sets forth a procedure by which a "Party may request additional information for any specific privilege log entry." *Id.* (emphasis added). Freedom Defendants timely served their privilege log nearly two months ago. Instead of using this time to request additional information for *specific* privilege log entries (as required by the Protocol), allowing Freedom Defendants to respond, and meeting-and-conferring with Freedom Defendants as needed, Relator is just now raising these alleged and generalized deficiencies and demanding that Freedom Defendants "supplement their log." Relator has no basis to make this demand and has provided no explanation as to why the Parties should deviate from the procedure set forth in the Protocol (which, again, is the product of months and months of negotiations between the parties).

Relator also takes issue with Freedom Defendants' privilege log because "she cannot ascertain whether the advice sought or given was legal in nature or business-related." All items logged for privilege are so logged because they are "legal in nature," as purely business-related advice is not privileged. With respect to the threads Relator identified, those communications all involve Ms. Papoulis, the Anthem (now Elevance Health) in-house legal officer responsible for oversight of Freedom Defendants at the time, and the provision of legal advice related to either the Medicare Provider Manual or the policy and procedure regarding the MRA code deletion process (Ms. Kortsch forwarded Ms. Papoulis' email thread to Ms. Kortsch's other email address).

To the extent Relator is unsure which documents have been withheld for privilege by Freedom Defendants, she can review Freedom Defendants' privilege log, which itemizes by metadata every single document identified for production that was withheld or redacted for privilege.

IV. **Freedom Defendants' Responses and Objections to Relator's Interrogatories (Set One)**

Freedom Defendants have served their supplemented responses to Relator's First Set of Interrogatories.

\*       \*       \*

While Freedom Defendants have ordinarily offered to meet and confer on these sorts of issues, Freedom Defendants recognize that there is now no time remaining, given the time required to respond to Relator's many allegations and that fact discovery closes today. Freedom Defendants nonetheless hope that this Letter can resolve the disputes implicated in Relator's May 26, 2024 Letter.

Sincerely,


Scott Drake


CC (*via Electronic Mail*): Counsel of Record