# Exhibit B

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* DR. CLARISSA ZAFIROV,<br><br>         Plaintiff/Relator,<br><br>v.<br><br>PHYSICIAN PARTNERS, LLC; FLORIDA MEDICAL ASSOCIATES, LLC, d/b/a VIPCARE; ANION TECHNOLOGIES, LLC; FREEDOM HEALTH, INC.; and OPTIMUM HEALTHCARE, INC.,<br><br>         Defendants. | Case No. 8:19-cv-01236-KKM-SPF |

## PROTOCOL RELATING TO THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION ("ESI")

The parties to this matter agree to the following concerning the production of documents and electronically stored information.

### I.     Scope

a. <u>General</u>. The procedures and protocols outlined herein govern the production of documents and electronically stored information ("ESI") by all parties to this matter (collectively, the "Parties").

b. <u>Objective</u>. The terms of this Protocol shall be construed so as to ensure the prompt, efficient, and cost-effective exchange of information. Nothing in this document is intended to be an exhaustive list of discovery obligations or rights of the Party producing documents or ESI ("Producing Party") or the Party requesting the documents or ESI ("Requesting Party"). This Protocol shall not enlarge or narrow the

scope of discovery as imposed by the rules governing this matter, court orders, or as agreed to between the Parties.[1]

c. <u>Non-Waiver</u>. By establishing and complying with this Protocol, the Parties and their attorneys do not waive their rights to any protection or privilege, including the attorney-client privilege or the attorney work product doctrine. All Parties preserve their attorney-client privilege, protection under the attorney work product doctrine, and all other applicable privileges and protections. This Protocol does not contain or signify any intent to in any way waive or weaken these privileges and protections. All documents produced hereunder are fully protected and covered by any protective orders entered by the Court in this matter. This protection includes the non-waiver of privilege in materials produced under both Federal Rule of Evidence 502(d) and any protective order entered by the Court in this matter.

## II.      Identification of Responsive Documents and ESI

a. <u>Custodians</u>. Within fourteen days of the Parties signing this stipulation and the Stipulated Protective Order, the Parties shall exchange in writing a list of custodians most likely to have relevant ESI. The Parties shall meet and confer if any Party reasonably believes that there are additional custodians likely to have unique, relevant information. Following that initial meet and confer, should any Party identify additional individuals similarly likely to have unique, relevant information, that Party

---

[1] For purposes of this Protocol, the "Parties" are Dr. Clarissa Zafirov; Florida Medical Associates, LLC d/b/a VIPCare; Physician Partners, LLC; Anion Technologies, LLC; Freedom Health, Inc.; and Optimum Healthcare, Inc.

shall disclose the name of the individual to the other Parties, at which point the Parties can meet and confer about the inclusion of that individual as a custodian.

b. <u>Temporal Scope</u>. The Parties agree that they will meet and confer regarding the date range for discovery.

c. <u>Use of Search Terms</u>. A Party may use search terms, other objective delimiters (such as e-mail domains), and/or technology-assisted review technologies as a means of limiting the volume of documents and ESI to be reviewed for responsiveness. The Parties agree that the Producing Party is best situated to evaluate the procedures, methodologies, and technologies appropriate for producing its own electronically stored information. The Producing Party will disclose the search terms and the objective delimiters and/or culling processes it plans to use. The Producing Party will identify which document repositories or data sources will be subject to search methodologies. To the extent reasonably possible, search terms will be crafted in good faith to identify responsive documents and with input from the custodians in order to identify appropriate nomenclature, abbreviations, vernacular, etc.

Upon the receipt of search terms from the Producing Party, the Requesting Party may provide additional search terms that it believes in good faith are necessary to identify responsive documents. Upon receipt of the additional search terms, the Producing Party will provide a search term hit list or hit report, including the number of documents that hit on each term, the number of unique documents that hit on each term (meaning documents that hit on a particular term and no other term on the list),

and the total number of documents that would be returned by using the proposed search terms.

If the Producing Party objects to any of the additional terms, it will provide a good-faith basis for its objection. For any search terms provided by the Producing Party or the Requesting Party to which a Party has raised an objection, the Parties will work together in good faith to reach agreement. The Parties agree to make good faith efforts to identify specific sources and terms that will capture responsive documents and minimize the capture of nonresponsive or duplicative documents.

d. <u>De-duplication</u>. Prior to production, the parties should de-duplicate e-mails across custodians. For clarity, no party should de-duplicate any emails unless they are identified as family-level hash duplicate. Attachments to parent documents may not be deduplicated against a duplicate standalone version of the attachment, and standalone versions of documents may not be suppressed if a duplicate version exists as an attachment. The Producing Party will track all deduplicated files and provide the names of all custodians of those duplicates in the load file. If the duplicates are e-mails, the Producing Party will provide the process of creating the hash value to the Requesting Party, e.g., the processing platform used or, alternatively, the names and order of concatenated fields by which the duplication hash was calculated.

e. <u>Threading</u>. The parties may utilize e-mail threading, which means in instances in which a group of e-mails are captured in an e-mail string, only the latest e-mail in the string will be produced along with all attachments included in the e-mail string. However, if the string diverges into different strings, unique content from each

4

string will be produced. Emails containing unique attachments not otherwise contained in the inclusive email shall also be produced along with their parent email. E-mails suppressed under this paragraph need not be reflected on the Party's privilege log.

### III. Production Format

a. <u>TIFF/Native File Format Production</u>. The Parties will produce ESI as single-page Group IV black-and-white TIFF images with corresponding multi-page text, or in native file format with slip-sheet if applicable, and necessary load files. Native files, along with corresponding metadata, will be preserved. TIFF images will be of 300 dpi quality or better. All ESI containing text shall be produced in a searchable format when available. The Parties agree that all non-redacted versions of Excel spreadsheets (or similar spreadsheets created using a different software program, *e.g.*, Lotus 123 etc.), PowerPoint presentations (or similar documents created using a different software program, drawing files (*e.g.*, Visio, CAD, etc.), and audio and visual files (*e.g.*, Quicktime Movie, Windows Media Video, Voicemails), will be produced in native format. Documents of a type that cannot be reasonably converted to TIFF images may be produced natively. To the extent reasonably feasible, documents that contain tracked changes such as comments, deletions, and other revision marks, speaker notes, or hidden text will be produced in a manner that makes such content visible and searchable.

All load files will include an image load file as well as a metadata (.dat) file on the document level for the metadata fields identified below, to the extent they are available.

In certain circumstances, variations to the production format specified in this Protocol may be necessary. In such circumstances, the Parties will meet and confer regarding the production format.

b. <u>Metadata</u>. The Parties shall provide the following metadata fields associated with each document produced, to the extent they are reasonably available: Custodian,[2] File Path,[3] Email Subject, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date Modified, Hash Value (such as MD5 or SHA-1), File Size, File Extension, Bates Number Begin, Bates Number End, Attachment Range, Attachment Begin, Attachment End (or the equivalent thereof), Group ID/Family ID, Redacted (Y/N). and Confidentiality Designation.

c. <u>Color</u>. Subsequent to the production of documents, the Requesting Party may request from the Producing Party that specific imaged files be produced in color if the images are illegible due to color content (such as colored text on a colored background) or where color is material to the interpretation of a document. Such a request shall include (1) Bates numbers of requested native files and (2) copy of

---

[2] Custodian may include a non-human data source, such as an archive or shared repository.

[3] To the extent that file path information contains work product, such information may be redacted. However, the Parties reserve the right to request native file path information when redacted file path information is provided in the first instance.

corresponding image for each document. The Producing Party will produce the document in color within fourteen (14) days of the request by the Requesting Party.

d. <u>Native Files</u>. The Parties agree that documents will be produced in the format set forth in Section III, and that, other than the categories listed in III.a, the Parties are not required to produce ESI in native format on a wholesale basis. Subsequent to the production of documents, however, the Requesting Party may request from the Producing Party that specific imaged files be produced in native format if the files are difficult to read in an imaged form or if there is another good faith basis for production of the document in native format. Such a request shall include (1) Bates numbers of requested native files and (2) copy of corresponding image for each document. The Producing Party will produce the native form of the document within fourteen (14) days of the request by the Requesting Party.

e. <u>Structured Data</u>. To the extent possible, all exports of structured data or reports from databases will be produced in .csv file, Excel file, or other delimited format. The Producing Party will provide descriptions, such as within a data dictionary, of any non-common field titles for which the values are not readily apparent, to the extent that information is available. If an existing report format is not reasonably available or usable, the Parties will meet and confer to attempt to identify a mutually agreeable form of production based on the specific needs and the content and format of data within the structured data source.

f. <u>Document Numbering</u>. Each page of a produced document will have a legible, unique page identifier ("Bates Number") electronically "burned" onto the

image in the bottom right corner of the document, or if that location would obscure the document, then in a location that does not obliterate, conceal, or interfere with any information from the source document. The Bates Number for each page of each document will be created so as to identify the Producing Party. In the case of materials redacted or deemed confidential, a redaction or confidentiality designation will also be "burned" onto the document's image or on the slip-sheet and filename for natively produced documents. The confidentiality designation will be burned onto the document at a location that does not obliterate, conceal, or interfere with any information from the source document. Failure to comply with this procedure shall not waive any protection of confidential treatment, including the right to make a later confidentiality designation of produced materials.

     g.  <u>Production Media</u>. The Producing Party may produce documents via a secure file transfer mechanism or on readily accessible computer or electronic media as the Parties may hereafter agree upon, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface) ("Production Media"). All Production Media will be encrypted and the Producing Party will provide a decryption key to the Requesting Party in a communication separate from the production itself.

     h.  <u>Production to All Parties</u>. The Parties agree that any document produced to any Party in response to discovery requests issued pursuant to Federal Rules of Civil Procedure 33, 34, 36 and issued in this litigation shall be produced to all Parties. Consistent with Federal Rule of Civil Procedure 5(a)(1)(C), all discovery papers must be served on all Parties.

IV.   **ESI Liaison**

a.   The parties agree to designate one or more persons to serve as liaisons for the purpose of meeting and conferring regarding discovery of ESI.

V.   **Additional Provisions**

a.   <u>Discoverability and Admissibility</u>. This Protocol does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI in this or in any other litigation. This protocol does not modify the provisions of the Stipulated Protective Order entered in this matter nor the protections from disclosure contained therein. Nothing in this Protocol shall be construed to affect the admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time.

Additionally, nothing in this Protocol shall be deemed to waive or limit any Party's right to object to the production of certain electronically stored information, or to move for an appropriate order on the ground that the sources are not reasonably accessible.

b.   <u>Privilege Logs</u>. The parties will meet and confer and separately file an agreement addressing the logging of privileged materials.

c.   <u>Modification</u>. To the extent compliance with this Protocol imposes an undue burden with respect to any procedure, source, or search term described herein, the Parties shall promptly confer in an effort to resolve the issue. Any practice or procedure set forth herein may be varied by agreement of the Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the

timely and economical exchange of electronic data. Any Party that seeks to deviate from or exceed the discovery limits set forth herein must obtain leave of the Court to do so unless all Parties otherwise consent in writing.

      d. <u>Dispute Resolution</u>. In accordance with Local Rule 3.01(g), the Parties will attempt to resolve disputes regarding the issues set forth herein prior to filing a motion with the Court or otherwise seeking relief. Such efforts to resolve any such dispute shall at minimum include (1) a written explanation of the disputing party's position, sent no later than ten days prior to the filing of any motion with the Court and (2) a telephonic meet-and-confer with opposing party no later than five days prior to the filing of any motion with the Court, provided the opposing party does not unreasonably delay the scheduling of any such requested meet-and-confer. If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

Dated: 03/27/2023

By:   */s/ Jillian L. Estes*

Frederick M. Morgan, Jr. (OH 0027687)
Jennifer M. Verkamp (OH 0067198)
Jillian L. Estes (FL 0055774)
Morgan Verkamp LLC
4410 Carver Woods Dr., Suite 200
Cincinnati, Ohio 45242
Telephone: (513) 651-4400
Fax: (513) 651-4405
Email: rmorgan@morganverkamp.com
jverkamp@morganverkamp.com
jillian.estes@morganverkamp.com

Dated: 03/27/2023

By:   */s/ Benjamin D. Singer*

Benjamin D. Singer
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
(202) 383-5414 (fax)
bsinger@omm.com

David Deaton*
O'MELVENY & MYERS LLP
610 Newport Center Dr., 17th FL
Newport Beach, CA 92660
(949) 823-6900

Kenneth J. Nolan
(Fla. Bar No. 603406)
Marcella Auerbach
(Fla. Bar No. 249335)
NOLAN, AUERBACH & WHITE,
LLP
435 N. Andrews Ave., Suite 401
Fort Lauderdale, FL  33301
Phone: (954) 779-3943
Fax: (954) 779-3937
ken@whistleblowerfirm.com
marcellla@whistleblowerfirm.com

Adam T. Rabin (Fla. Bar No. 985635)
Havan M. Clark (Fla. Bar No. 1026390)
RABIN KAMMERER JOHNSON
1601 Forum Place, Suite 201
West Palm Beach, FL 33401
Phone: (561) 659-7878
Fax: (561) 242-4848
arabin@rkjlawgroup.com
hclark@rkjlawgroup.com
e-filing@rkjlawgroup.com

*Counsel for Relator Dr. Clarissa Zafirov,
M.D.*

(949) 823-6994 (fax)
ddeaton@omm.com

Elizabeth M. Bock*
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
(213) 430-6000
(213) 430-6407 (fax)
ebock@omm.com

Ginger Boyd
Fla. Bar No. 294550
NELSON MULLINS RILEY &
SCARBOROUGH LLP
215 S. Monroe Street, Suite 400
Tallahassee, FL 32301
(850) 205-3356
(850) 521-1472 (fax)
Ginger.Boyd@nelsonmullins.com

*Counsel for Defendants Freedom
Health, Inc.; and Optimum
HealthCare, Inc*

By:   */s/ Jason P. Mehta*

Jason P. Mehta
Fla. Bar No. 106110
Natalie Hirt Adams
Fla. Bar. No. 1030877
FOLEY & LARDNER LLP
100 N. Tampa St., Suite 2650
Tampa, FL 33602
Telephone: (813) 229-2300
Facsimile: (813) 221-4210
jmehta@foley.com
nhadams@foley.com
dmills@foley.com

*Counsel for Defendants Physician*

11

*Partners, LLC; Florida Medical Associates, LLC; and Anion Technologies, LLC*

*\*Admitted pro hac vice*