## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| *ex rel.* DR. CLARISSA ZAFIROV, | ) | |
| | ) | |
| Plaintiff and Relator, | ) | |
| | ) | |
| v. | ) | NO. 8:19-cv-01236-KMM-SPF |
| | ) | |
| FLORIDA MEDICAL ASSOCIATES, | ) | |
| LLC, d/b/a VIPCARE; PHYSICIAN | ) | |
| PARTNERS, LLC; ANION | ) | |
| TECHNOLOGIES, LLC; FREEDOM | ) | |
| HEALTH, INC.; and OPTIMUM | ) | |
| HEALTHCARE, INC.; | ) | |
| | ) | |
| Defendants. | ) | |

_____

## RELATOR'S RESPONSE IN OPPOSITION TO FREEDOM DEFENDANTS' MOTION TO COMPEL PRODUCTION IN RESPONSE TO RFP NO. 11

Defendants Freedom Health, Inc. and Optimum Healthcare, Inc. (collectively "Freedom Defendants") move to compel production of an agreement between Relator Dr. Clarissa Zafirov and another former Physician Partners physician, Dr. George Mansour. Doc. 280. Freedom Defendants' motion is predicated on unsupported conjecture as to the content of the agreement, which they assert can only be remedied by disclosure of information to which they are not entitled. As Defendants' motion makes clear, Relator has not concealed any non-privileged facts relevant to this litigation. To the contrary, Relator disclosed the content of the agreement addressing Dr. Mansour's financial interest in the outcome of this case and has only withheld information that is not relevant to this case; even if that information were relevant, it

1

contained attorney-client communication and attorney work product that is protected from disclosure by the common interest doctrine.

For the reasons set forth herein, Freedom Defendants' motion to compel must be denied in full.

## I.    The Zafirov-Mansour Agreement

Dr. Clarissa Zafirov, a physician employed by Defendant Physician Partners as a primary care physician at a Defendant VIPcare clinic, brought this False Claims Act lawsuit against Freedom Defendants and Provider Defendants (Physician Partners, LLC, Florida Medical Associates d/b/a VIPcare, and Anion Technologies, LLC) in May 2019. Dr. Zafirov's complaint remained under seal until June 2020.  In December 2019, Dr. George Mansour, a self-employed physician affiliated with Physician Partners though a practice management contract, separately brought a False Claims Act case against Freedom Health, Inc. and Physician Partners, LLC, asserting, *inter alia*, that those entities exerted extreme pressure on physicians to fabricate or exaggerate diagnosis codes, resulting in false claims. Dr. Mansour's complaint was under seal until September 2020. Although Dr. Zafirov and Dr. Mansour did not know each other or interact prior to the filing of their complaints, Dr. Mansour's allegations reflected experiences highly consistent with the allegations of fraud set out in Dr. Zafirov's complaint.

Resting on a mischaracterization of the first-to-file bar, Defendants speculate that Dr. Zafirov and Dr. Mansour's interests were "diametrically opposed." Doc. 280 at 11. In fact, this has never been the case: Since the filing of their respective False

Claims Act cases, Dr. Zafirov and Dr. Mansour have always been aligned as advocates on behalf of the United States to remedy financial damage resulting from the fraudulent schemes implemented by the Freedom and Provider Defendants.

It is from that common interest that the agreement at issue in this motion arises. The manner in which Dr. Zafirov and Dr. Mansour (at the advice and with the direction of their respective counsel) sought to effectuate their common interest, and their reasons for doing so, are set forth within the agreement, hereinafter referred to as the "Zafirov-Mansour Agreement." A detailed discussion of those terms is not relevant to any parties' claims or defenses and would eviscerate the privilege which Relator has asserted. Defendants have already been provided with any colorably relevant terms, as Relator provided the same in response to the Provider Defendants' Interrogatory No. 8 (Doc. 280-8). As Defendants know from, *inter alia*, Relator's sworn response, the Zafirov-Mansour Agreement was entered into in contemplation of joint prosecution of their matters, was drafted by counsel in anticipation of litigation, and was executed by Dr. Zafirov, Dr. Mansour, and their counsel.[1] Thus, the attorney-client privilege and work-product and common interest doctrines attend to the agreement Defendants seek, and Defendants are not entitled to disregard those protections.

---

[1] The Zafirov-Mansour Agreement was signed by the parties' counsel at that time – Frederick M. Morgan, Jr. of Morgan Verkamp, LLC and Marcella Auerbach of Nolan Auerbach & White, LLP as counsel for Dr. Zafirov and Ryon McCabe of McCabe Rabin, P.A. for both Dr. Zafirov and Dr. Mansour. The agreement was entered into in December 2020 (with one counsel signing in January 2021).

II.     **Argument**

**A. The Non-Disclosed Portions of the Agreement are Not Relevant.**

While the bounds of discovery under Fed. R. Civ. Pro. Rule 26 are broad, they are not limitless. *Pinilla v. Northwings Accessories Corp.*, No. 07-21564, 2007 U.S. Dist. LEXIS 70885, at *10-11 (S.D. Fla. Sep. 25, 2007). Rather, a party moving to compel discovery "bears the initial burden of proving it is relevant." *E-Venture Worldwide, LLC v. Toll Bros., Inc.*, No. 2:22-cv-552-JLB-KCD, 2023 U.S. Dist. LEXIS 118164, at *3 (M.D. Fla. July 10, 2023).

Defendants provide no authority for the proposition that joint prosecution/joint defense/common interest agreements are inherently relevant to the underlying claims or defenses in the litigated matter. Nor could they, as the cases do not so hold. Although Freedom Defendants fail to acknowledge the body of case law addressing the lack of relevance of common interest agreements or joint defense agreements wherein parties align interests in the litigation of a matter, the law is clear: The agreements themselves are not relevant to the claims or defenses of the case. *Byte Fed., Inc. v. Lux Vending, LLC,* No. 8:23-cv-102-MSS-SPF, 2024 U.S. Dist. LEXIS 89043, at *2 (M.D. Fla. May 17, 2024) (agreement "is properly characterized as a joint defense or common interest agreement, and as such, is not relevant"); *Biovial Labs. Int'l SRL v. Watson Pharms., Inc.*, No. 1:10-cv-20526-CIV-MORE, 2010 U.S. Dist. LEXIS 95769, at *5 (S.D. Fla. Aug. 30, 2010) (explaining that typical joint defense agreements are "not relevant to any parties' claims or defenses") (citation omitted); *In re Takata Airbag*

4

*Prods. Liab. Litig.*, No. 1:15-02599-MD, 2017 U.S. Dist. LEXIS 76100, at *99 (S.D. Fla. Mar. 7, 2017) (finding a joint defense agreement was "not relevant to any claim or defense and it falls squarely within the protection of the work product privilege").

Relator does not dispute that the existence of the agreement (including who the parties thereto are) may be relevant to the extent bias of a witness is at issue. *Biovial Labs*, 2010 U.S. Dist. LEXIS 95769, at *5. To that end, Relator has been clear with Defendants that the Zafirov-Mansour Agreement exists, including that both relators signed it. Further, while maintaining her objection to relevance, Relator provided in her Interrogatory Responses the underlying facts and identified the financial division in the Zafirov-Mansour Agreement. Doc. 280-6.[2]

Freedom Defendants assert that knowledge is not enough and, without any basis, they claim that the remainder of the agreement *must* be deemed relevant and therefore disclosed to Defendants in its entirety, *in case* the remainder has any additional details that Relator and Dr. Mansour did not disclose that Freedom Defendants may decide speak to credibility of one or both witnesses. However, the limited cases upon which Defendants rely do not require unfettered access to records simply because a defendant raises the credibility scepter. Specifically, *United States ex rel. Harman v. Trinity Indus.*, No. 2:12-CV-00089-JRG, 2014 U.S. Dist. LEXIS 191815, at *8 (E.D. Tex. July 11, 2014) is a spoliation case that references a prior opinion

---

[2] Relator maintains her objection, set forth in the cited interrogatory response, as to the relevance of the mandatory monetary provisions of the False Claims Act, including the framework set forth in 31 U.S.C. § 3730(d).

finding evidence that a lawsuit was intended to lift the plaintiffs out of bankruptcy is relevant to credibility. Those circumstances have no bearing on the potential relevance *vel non* of the Zafirov-Mansour Agreement. Likewise, *United States ex rel. Graves v. Plaza Med. Ctrs. Corp.*, No. 10-23382-CIV, 2017 U.S. Dist. LEXIS 143563, at *7 (S.D. Fla. Sep. 6, 2017), relates to credibility of allegations when a relator attempted to re-contract with the entity she had accused of committing fraud. Nothing about the Zafirov-Mansour Agreement or the terms therein bears a resemblance to the *Graves* circumstances relating to credibility.

And while Relator does not dispute that a party is entitled to evidence that bears on witness credibility, Freedom Defendants must have some basis to tie their credibility attack to the document which they seek. Freedom Defendants have none. Defendants collectively deposed Dr. Zafirov for more than twelve hours, yet they elicited *no testimony* from her around any of the underlying facts to which they say they are entitled, nor any testimony which would suggest that any portions of the Zafirov-Mansour Agreement other than the disclosed financial sharing arrangement include any information relevant to her motivations for bringing the False Claims Act case, how she gathered evidence in support of her claims, or the veracity of allegations. And, unless Defendants are somehow suggesting that the Zafirov-Mansour Agreement contains an agreement to falsify or destroy evidence that might favor defendants (a preposterous notion which the undersigned counsel would assert is a sanctionable claim to make), then it is inconceivable how any such information would exist in a

6

common interest agreement, or any other agreement, between two parties who were both in active litigation with the defendants at the time of the agreement.

Similarly, Freedom Defendants' second basis for potential relevance – "Freedom's ability to defend against any evidence provided by Dr. Mansour or originating from Dr. Mansour's involvement in the case" – has no discernable relationship to the content of the Zafirov-Mansour Agreement. Even if *any* of Freedom's unsupported conjecture as to what might be in the Zafirov-Mansour Agreement were true, none of that would weigh on the authenticity, veracity or applicability of any evidence that Dr. Mansour may provide in this case. The evidence itself speaks to that, and Defendants have not raised any such challenges. (To the contrary, Dr. Mansour has produced records in response to Freedom's subpoena to him which call into question the completeness of *Freedom Defendants'* production, not Dr. Mansour's production. (Doc. 279 at 16-17.)

Moreover, Freedom Defendants have had the opportunity to question Dr. Mansour as to whether he had any obligations relative to document production as a result of the Zafirov-Mansour Agreement. In Dr. Mansour's deposition, Freedom's counsel heavily questioned Dr. Mansour as to whether he made any promises to Dr. Zafirov regarding his testimony, documents or any other actions relative to the financial arrangement made in the Zafirov-Mansour Agreement. Dr. Mansour clearly and unequivocally denied as much:

| Mansour Transcript at 42:1-5: [3] | |
|---|---|
| Mr. Buffaloe: (counsel for Freedom Defendants | What if anything do you have to say that would support Dr. Zafirov's claims in this case? |
| Mr. Rabin: (counsel for Dr. Mansour) | Objection to form. |
| Dr. Mansour: | I just have to say the truth. |

| Mansour Transcript at 42:20-43:1: | |
|---|---|
| Mr. Buffaloe: | So in connection with this agreement for 70 percent of the financial recovery to go to Dr. Zafirov and 30 percent to you, do you have any obligation to Dr. Zafirov to support her in this case? |
| Mr. Rabin: | Objection to form. |
| Dr. Mansour: | Never have an obligation. |

Given that Freedom Defendants have had the opportunity to question Dr. Mansour under oath, took that opportunity to question Dr. Mansour on the very content which they assert *might* exist, and Dr. Mansour denied under oath that the content about which Defendants baselessly speculate exists, Freedom Defendants' complaint that they have "no way to know what was offered" cannot establish relevance. Doc. 280 at 7. *See also*, *The York Group, Inc. v. Pontone*, No. 2:10-CV-1078-JFC, 2012 U.S. Dist. LEXIS 193838, at *26 (W.D. Pa. Aug. 6, 2012) (denying motion to compel additional information in response to interrogatory where "ability to inquire

---

[3] Freedom Defendants' deposition of Dr. Mansour occurred on June 12, 2024 – the same date this response is due. For that reason, the "rough" transcript was used to identify the quoted language and page numbers herein.

about this topic during depositions of Plaintiffs' representatives, both in the past and in upcoming depositions, is sufficient…"). Provider Defendants also noticed the deposition of Dr. Mansour. Although he testified at length about the fraudulent conduct he experienced while associated with Physician Partners with reference to their documents, the Provider Defendants elected to ask no questions of him on this (or any other) topic, thus belying any assertion that the Agreement is relevant to assessing Dr. Mansour's credibility or the significance of documents which he produced or addressed. Simply, Freedom Defendants have not satisfied their burden to show the relevance of the document they seek, and both the uncontroverted testimonial evidence and the caselaw require rejection of Freedom Defendants' attempt to morph their baseless speculation into anything other than that.

**B.  The Zafirov-Mansour Agreement is Privileged.**

Only if the Court determines that the Zafirov-Mansour Agreement is relevant does the inquiry shift to whether the agreement is privileged and therefore due to be logged but not produced. *See Lux Vending LLC*, 2024 U.S. Dist. LEXIS 89043, at *2 n.1, *quoting Biovial Labs*, 2010 U.S. Dist. LEXIS 95769 at *5 ("The Court need not determine whether the Agreement is privileged because the issue 'can be resolved on a threshold issue – whether the agreement is even *relevant* for discovery purposes'") (emphasis in original).

Here, there is little doubt that the Zafirov-Mansour Agreement is privileged as it was made between Dr. Zafirov, Dr. Mansour, and their respective counsel in anticipation of and in furtherance of on-going litigation, in direct communication with

and at the advice of counsel for both relators. In an effort to avoid the protection provided by the common interest doctrine[4] to joint prosecution agreements, Freedom Defendants endeavor to liken the arrangement to a fee agreement or settlement agreement. It is neither of those. There was no lawsuit between Dr. Zafirov and Dr. Mansour to resolve, no fees paid from one to another for their counsel's services, and the parties do not rely on any confidentiality provision contained within the Zafirov-Mansour Agreement as the basis for identifying it as privileged. As Relator has stated to Freedom Defendants repeatedly in meet-and-confers, and as is spelled out plainly in Dr. Zafirov's response to the Physician Partners' interrogatory seeking additional information about the Zafirov-Mansour Agreement, it is an agreement that was "drafted by counsel in the anticipation of litigation" and was "entered into solely for the purposes of litigation." Doc. 280-8.

As such, the agreement, and the content therein, which contemplates legal guidance and decision-making, are prototypical communications protected by the attorney-client privilege and the work-product doctrine. "The attorney-client privilege attaches to all 'communications made in confidence by a client to an attorney for the purposes of securing legal advice or assistance.'" *United States v. Vazquez*, No. 8:18-cr-

---

[4] Defendants have consistently attempted to mischaracterize Relator's understanding of this doctrine. Relator has never claimed that the common interest doctrine is a standalone privilege. Rather, when parties' interests are appropriately aligned in litigation or anticipated litigation, the common interest doctrine creates an exception to waiver-by-disclosure of otherwise privileged material—either attorney-client communication or work product—that would typically occur when the privileged material is communicated outside the attorney/client relationship. *E.g., In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 922 (8th Cir. 1997); Restatement (Third) of the Law Governing Lawyers § 76 (2000). *Cf.* Restatement § 76 cmt. b; *United States v. BDO Seidman, LLP*, 492 F.3d 806, 816 (7th Cir. 2007).

597-TPB-JSS, 2023 U.S. Dist. LEXIS 179603, at *13 (M.D. Fla. Oct. 3, 2023), *citing In re Grand Jury Subpoena,* 2 F.4th 1339, 1345 (11th Cir. 2021). "If one of the primary purposes of the communication is to convey legal advice, then the attorney-client privilege generally attaches." *Bartholomew v. Lowe's Home Ctrs.*, LLC, No. 2:19-cv-695-JLB-KCD, 2022 U.S. Dist. LEXIS 129856, at *4 (M.D. Fla. July 22, 2022). Relatedly, "the work-product doctrine protects from disclosure documents and tangible things that are prepared in anticipation of litigation or for trial *by* or for *another party* or its representative." *Christoff v. Inglese,* No. 2:20-cv-546-SPC-NPM, 2022 U.S. Dist. LEXIS 233506, at *5-6 (M.D. Fla. Nov. 1, 2022) (emphasis in original) (*citing* Fed. R. Civ. P. 26(b)(3)(A)). "It is equally clear that documents prepared by counsel or *parties*, or their representatives . . . are protected." *Id.* at *6 (citations omitted) (emphasis in original).

Pursuant to the common interest doctrine, a party may share privileged information or work product "with another party without waiving the right to assert the privilege when the parties have a shared interest in actual or potential litigation against a common adversary." *Lane Constr. Corp. v. Skanska USA Civil Se., Inc.*, No. 6:21-cv-164-RBD-DCI, 2022 U.S. Dist. LEXIS 238518, at *11 (M.D. Fla. Nov. 7, 2022). The common interest doctrine is applicable when "(1) there was a common legal interest among them, (2) the parties are represented by separate lawyers and, (3) the parties (with their lawyers) agreed to exchange information concerning the matter

of common interest." *Id.* at * 12, *citing United States v. Patel,* 509 F. Supp. 3d 1334, 1340 (S.D. Fla. Dec. 23, 2020).[5]

Despite Freedom Defendants' assertions, a shared legal interest can also have a commercial or financial component. Freedom Defendants rely on *Spencer v. Taco Bell, Corp.*, No. 8:12-cv-387-T-23TBM, 2013 U.S. Dist. LEXIS 196231 at *6 (M.D. Fla. Apr. 23, 2013) for the errant proposition that common interest agreements are "to advance a common *legal* interest, as opposed to a commercial or financial interest." Doc. 284 at 10-11. *Spencer* does not say this. To the contrary, *Spencer* and myriad other cases simply recognize that a common interest agreement may not be "solely commercial." *Id.* at *6, *quoting Mitsui Sumitomo Ins. Co. v. Carbel, LLC,* No. 09-21208-CIV, 2011 U.S. Dist. LEXIS 74148, at *4 (S.D. Fla. July 11, 2011); *Lane Constr. Corp.*, 2022 U.S. Dist. LEXIS 238518, at *13. Accordingly, given that the primary goal of the Zafirov-Mansour Agreement is to prosecute the fraud perpetuated by the Defendants, the associated financial component does not hinder application of the common interest privilege. *See Infinite Energy, Inc. v. Econnergy Energy Co.*, No. 1:06CV124-SPM/SK, 2008 U.S. Dist. LEXIS 63493, at *5 (N.D. Fla. July 23, 2008 ("The interest must, therefore, relate to litigation for this privilege to apply, but actual litigation need not be ongoing") (internal citations omitted). To the extent there are any financial

[5] Of course, while Defendants seek a written agreement between Drs. Zafirov and Mansour, the common interest doctrine may still apply when there is no written agreement. *See*, e.g., *Patel*, 509 F. Supp. 3d at 1340 ("A written executed agreement is not required to establish that a common interest privilege existed.").

components contained in the Zafirov-Mansour Agreement, those were provided to Defendants via interrogatory response.

The second and third elements of the common interest doctrine are also satisfied here: Relator Zafirov was represented by separate counsel from Dr. Mansour in negotiating the Zafirov-Mansour Agreement, and no complete unity of counsel has ever existed.[6] And, as Relator has repeatedly described to Defendants, the Agreement was established for the parties to pursue their common interests in litigation.

Of note, Defendants errantly suggest that the common interest may not apply if Dr. Zafirov and Dr. Mansour had "diametrically opposed" positions because of the "first-to-file" provision set forth in 31 U.S.C. § 3730(b)(5). First, Dr. Zafirov and Dr. Mansour have and always have had a common interest in litigating on behalf of the United States against Freedom Health and Physician Partners. But nevertheless, it would not be material to the outcome of this analysis even if Dr. Zafirov and Dr. Mansour had potentially adverse interests. "[C]ourts have noted that the common interest privilege does not require a complete unity of interests among the participants and applies where the interests of the parties are not identical, and it applies even where the parties' interests are adverse in substantial respects." *Wausau Underwriters Ins. Co. v. Reliable Transp. Specialists, Inc.*, No. 15-12954, 2018 U.S. Dist. LEXIS 151745, at *4-5 (E.D. Mich. Sep. 6, 2018) (quotations omitted).

---

[6] The McCabe Rabin firm, now Rabin Kammerer and Johnson, entered into a retainer agreement with Dr. Zafirov contemporaneous to the execution of the Zafirov-Mansour Agreement. The law firms of Morgan Verkamp and Nolan, Auerbach and White do not represent Dr. Mansour.

Ultimately, Freedom Defendants assert that, unless Relator reveals all of the content of the Zafirov-Mansour Agreement, including information protected under the attorney-client privileges and work-product doctrine, then Relator cannot assert the protection of the common interest doctrine. This flips the doctrine and its protections on its head. First, it is unclear what more the Freedom Defendants contemplate that Relator could describe about the nature of the agreement without invading the very content which is protected from disclosure. Relator has already asserted the basis for the agreement, the parties to the agreement, and counsel's role in preparing and executing that agreement.

Thus, Relator has met her burden that the document contains privileged information and protected work product; Freedom Defendants have failed to satisfy their burden to show that protected content should nevertheless be revealed. *Adp v. Ultimate Software Group*, No. 17-cv-6127-MIDDLEBROOKS, 2017 U.S. Dist. LEXIS 231044, at *5 (S.D. Fla. Dec. 15, 2017), *quoting Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985) ("The burden on establishing that a document is work product is on the party who asserts the claim, but the burden of showing that the materials that constitute work product should nonetheless be disclosed is on the party who seeks their production"). And, having had ample opportunity to question both relators through deposition and interrogatory, Defendants cannot plausibly assert that they had no other way to obtain the information they seek. *Logistec USA, Inc. v. Daewoo Int'l Corp.*, No. CV213-027, 2013 U.S. Dist. LEXIS 202033, at *5 (S.D. Ga. Dec. 2, 2013)(Denying motion to compel

14

because "[d]iscovery of work product material will be denied if the information can be obtained by deposition" and defendant had the opportunity to "obtain substantially equivalent information" through depositions of the two involved individuals)(internal citations omitted).

Second, while Freedom Defendants castigate Relator for not providing more information on a privilege log, this is a consequence of their own making: The Protocol Related to Privileged Responsive Materials entered into after negotiations by all parties in this matter excludes the logging of attorney work product. See Protocol Related to Privileged Responsive Materials, Para. II(a) and (b), attached hereto as Exhibit A. Accordingly, even if the Zafirov-Mansour Agreement in its entirety is considered to be relevant and responsive, Relator was not obligated to log it pursuant to the agreement with Defendants' counsel, which has governed this case.[7]

Because of the agreed-upon Privilege Log Protocol which expressly excludes attorney work product from logging obligations, the cases on which Freedom Defendants rely are inapplicable: none of those cases (nor any other case that Relator has identified) has directed the logging of a privileged document in contravention of specific terms of an agreement governing production in that case. *E.g.*, *Axon Enter. Inc. v. Venjuris PC*, 6:22-mc-36-PGB-LHP, 2023 U.S. Dist. LEXIS 20629, at *15 (M.D. Fla. Feb. 7, 2023) (directing logging based on Fed. R. Civ. P. 45(e)(2) and the judge-specific

---

[7] Relator notes that Provider Defendants and Freedom Defendants have not themselves produced or logged a Common Interest or Joint Defense Agreement, nor have they produced or logged a single communication between counsel for the respective defendants. Relator assumes this is in reliance on the same provision of the Protective Order upon which Relator relied in assessing her logging obligations.

standing order; no reference to party protocol). If the Court finds that term of the agreed-upon protocol do not apply to common interest agreements and determines that it would be appropriate for Relator to log the Zafirov-Mansour Agreement, Relator asks that the Court also direct Defendants to amend their privilege logs to reflect any agreements also withheld on that basis.

## III.    *In Camera* **Review**

Courts often find it beneficial to review the underlying document *in camera* to fully assess the relevance and protections being asserted. *See*, *e.g.*, *Takata*, 2017 U.S. Dist. LEXIS 76100, at *101-104 (finding *in camera* review of joint defense agreement to be necessary and warranted rather than rely on one party's characterization of the disputed document); *Biovial Labs*, 2010 U.S. Dist. LEXIS 95769, at *4, *citing Jeld-Wen, Inc. v. Nebula Glasslam Int'l, Inc.,* No. 07-22326, 2008 U.S. Dist. LEXIS 18821, at *5 (S.D. Fla. Mar. 11, 2008) ("When a party seeks to compel production of a joint defense agreement, courts will examine the agreement *in camera* and make an independent determination regarding the nature of the agreement").

The Middle District of Florida does not permit a party to submit a document for *in camera* review absent prior court permission. *See* M.D. Fla. Civil Discovery Handbook, Sec. 6(B)(3) ("Documents or other privileged information should not be furnished to the Court for in camera review without prior court approval.") Relator believes that an *in camera* review would be beneficial here and will, upon the Court's

16

request, submit the Zafirov-Mansour Agreement *in camera* to aid in this Court's review of the foregoing arguments.

## IV.   Conclusion

For the reasons set forth herein, Relator Dr. Clarissa Zafirov respectfully requests that the Court deny Defendants' motion in total. In the alternative, Relator requests that the Court first review the Zafirov-Mansour Agreement *in camera* and then conclude that the non-disclosed portions of the agreement are not relevant to any parties' claims or defenses in this case, or alternatively that the document is subject to the attorney-client privilege and work product doctrine and need not be logged pursuant to the Privilege Log Protocol negotiated and entered into by counsel for all parties hereto.

Respectfully submitted, this 12th day of June 2024,

/s/ Jillian L. Estes
Jillian L. Estes (Fla Bar No. 0055774)
Jonathan M. Lischak (OH Bar No. 0097669)
Morgan Verkamp LLC
4410 Carver Woods Dr., Suite 200
Cincinnati, Ohio 45242
Telephone: (513) 651-4400
Fax: (513) 651-4405
Email: jillian.estes@morganverkamp.com
jonathan.lischak@morganverkamp.com

Adam T. Rabin (Fla. Bar No. 985635)
Havan M. Clark (Fla. Bar No. 1026390)
RABIN KAMMERER JOHNSON
1601 Forum Place, Suite 201
West Palm Beach, FL 33401
Phone: (561) 659-7878
Fax: (561) 242-4848
arabin@rkjlawgroup.com

hclark@rkjlawgroup.com
e-filing@rkjlawgroup.com

***Counsel for Relator Dr. Clarissa Zafirov***

## CERTIFICATE OF SERVICE

I, Jillian Estes, hereby certify that the foregoing was served on June 12, 2024, to all parties of record via the CM/ECF Electronic Filing System.

/s/ Jillian L. Estes
Jillian L. Estes (Fla Bar No. 0055774)