# Exhibit A

1

```
 1              UNEDITED TRANSCRIPT DISCLAIMER

 2

 3
    UNITED STATES OF AMERICA
 4  ex rel. DR. CLARISSA ZAFIROV,

 5           Plaintiff/Relator,
                                      CASE NO.:
 6  vs.                               8:19-cv-01236-KKM-SPF

 7  FLORIDA MEDICAL ASSOCIATES, LLC,
    d/b/a VIPCARE; PHYSICIAN PARTNERS,
 8  LLC; ANION TECHNOLOGIES, LLC;
    FREEDOM HEALTH, INC.; and OPTIMUM
 9  HEALTHCARE, INC.,

10           Defendants.
    _____/
11

12              UNEDITED TRANSCRIPT DISCLAIMER

13  The following transcript of proceedings, or any portion
    thereof, in the above entitled matter, taken on May 30,
14  2024, is being delivered unedited and uncertified by the
    official court reporter.
15
    The purchaser agrees not to disclose this unedited
16  transcript in any form (written or electronic) to anyone
    who has no connection to this case.  This is an
17  unofficial transcript which should not be relied upon
    for purposes of verbatim citation of testimony.
18
    This transcript has not been checked, proofread, or
19  corrected.  It is a draft transcript, not a certified
    transcript.  As such, it may contain computer-generated
20  mistranslations or stenotype code or electronic
    transmission errors, resulting in inaccurate or
21  nonsensical word combinations or untranslated stenotype
    symbols which cannot be deciphered by non-stenotypists.
22  Corrections will be made in the preparation of the
    certified transcript (which must be purchased in
23  addition to the disc) resulting in differences in
```

```
24  content, page and line numbers, punctuation, and
    formatting.

25
```

CONFIDENTIAL

```
 1             P R O C E E D I N G S

 2                    *********

 3          THE VIDEOGRAPHER:  Good morning.  We are going

 4     on record at 9:34 a.m., on May 30, 2024.  This is

 5     the video deposition of Dr. Clarissa Zafirov, taken

 6     by the counsel for defendants in the matter of

 7     United States of America on behalf of Dr. Clarissa

 8     Zafirov versus Florida Medical Associates, LLC,

 9     doing business as VIPcare; Physician Partners, LLC;

10     Anion Technologies, LLC; Freedom Health

11     Incorporated; and Optimum HealthCare, Incorporated,

12     filed in the United States District Court for the

13     Middle District of Florida, Tampa Division, Case

14     No. 8:19-cv-01236-KKM-SPF.

15          The location of the deposition is 100 North

16     Tampa Street, Suite 2700.  My name is Michelle

17     Fuller, representing Veritext, and I am the

18     videographer.  The court reporter is Tonya Magee

19     from the firm Veritext.

20          Counsel and all present, including remotely,

21     will now state their appearances and affiliations
```

1  Q.  For what purpose?

2  A.  Usually we would exchange recording devices.

3  Q.  She would give you a recording device?

4  A.  Correct.

5  Q.  Where did you meet with her?

6  A.  Usually we would meet somewhere in the

7  vicinity of my workplace.

8  Q.  Was anyone else present for these meetings?

9  A.  No, I don't believe so.

10 Q.  How long did these meetings last with

11 Agent Garrido?

12     MS. ESTES:  Object to form.

13 A.  Usually -- it's hard to say.  Usually we would

14 meet for a short period, twenty minutes, sometimes more.

15 It depends what was going on.  It depends on the

16 situation.  So you'd want to ask them that.

17 Q.  (BY MR. SWANSON)  You'd want to ask -- you

18 would like us to ask Special Agent --

19 A.  So if you want to know exactly, I think they

20 would be more familiar with that.  I think that's

21 something they actually would keep track of.  I didn't

22 really keep track of that.  So that's a difficult

23 question to answer.

24 Q.  When you say, "they," do you mean the

25 government?

```
16   anyone with whom you were making a recording?
17        A.   She may have said something along those lines,
18   but I don't remember.
19        Q.   Do you know what a leading question is?
20             MS. ESTES:   Objection to form.
21        A.   Yes.
22        Q.   (BY MR. SWANSON)   What is it?
23        A.   So you're suggesting something that
24   encouraging the person who will answer along by the
25   beginning of your suggestion.
```

106

```
1         Q.   Did Agent Garrido instruct you not to ask
2    leading questions during any of the meetings that you
3    were recording?
4         A.   I can't tell you.   There were some directions
5    given to me, but I can't tell you content-wise at this
6    point exactly what she said.
7         Q.   Who else might know what Agent Garrido told
8    you?
9              MS. ESTES:   Object to form.
10        A.   I have no idea.   That I don't know at all.
11        Q.   (BY MR. SWANSON)   Would Agent Garrido know what
12   she told you?
13             MS. ESTES:   Object to form.
```

```
14        A.    You'd have to ask her.
15        Q.    (BY MR. SWANSON)   After you made a recording
16   and you met with Agent Garrido, did you discuss with her
17   anything about the recordings?
18              MS. ESTES:   Again, I'm going to direct you not
19        to answer the content of your communications with
20        her other than the process questions that you can
21        answer, but not the specific content.
22              MR. SWANSON:   So you will not answer any
23        questions as to the substance of communications
24        with Agent Garrido?
25              MS. ESTES:   That's correct.
                                                              107
1         Q.    (BY MR. SWANSON)   Was anyone other than
2    Agent Garrido present for the conversations that you had
3    with her?
4         A.    No, I don't believe so.
5         Q.    How long did those meetings last with her when
6    you met after having made a recording?
7         A.    I couldn't say.
8         Q.    Did you take notes during any of your meetings
9    with Agent Garrido?
10        A.    I don't believe so.
11        Q.    Have you read any email about your meetings
```

CONFIDENTIAL

```
                                                              1



 1                  UNEDITED TRANSCRIPT DISCLAIMER

 2

 3
     UNITED STATES OF AMERICA
 4   ex rel. DR. CLARISSA ZAFIROV,

 5            Plaintiff/Relator,
                                      CASE NO.:
 6   vs.                              8:19-cv-01236-KKM-SPF

 7   FLORIDA MEDICAL ASSOCIATES, LLC,
     d/b/a VIPCARE; PHYSICIAN PARTNERS,
 8   LLC; ANION TECHNOLOGIES, LLC;
     FREEDOM HEALTH, INC.; and OPTIMUM
 9   HEALTHCARE, INC.,

10            Defendants.
     _____/
11

12                  UNEDITED TRANSCRIPT DISCLAIMER

13   The following transcript of proceedings, or any portion
     thereof, in the above entitled matter, taken on May 31,
14   2024, is being delivered unedited and uncertified by the
     official court reporter.
15
     The purchaser agrees not to disclose this unedited
16   transcript in any form (written or electronic) to anyone
     who has no connection to this case.  This is an
17   unofficial transcript which should not be relied upon
     for purposes of verbatim citation of testimony.
18
     This transcript has not been checked, proofread, or
19   corrected.  It is a draft transcript, not a certified
     transcript.  As such, it may contain computer-generated
20   mistranslations or stenotype code or electronic
     transmission errors, resulting in inaccurate or
21   nonsensical word combinations or untranslated stenotype
     symbols which cannot be deciphered by non-stenotypists.
22   Corrections will be made in the preparation of the
     certified transcript (which must be purchased in
23   addition to the disc) resulting in differences in
```

CONFIDENTIAL

```
24  content, page and line numbers, punctuation, and
    formatting.
25
```

2

```
 1              P R O C E E D I N G S
 2                    *********
 3         THE VIDEOGRAPHER:  Good morning.  We are going
 4  on the record at 9:02 a.m., on May 31, 2024.  This
 5  is the video-recorded deposition of Dr. Clarissa
 6  Zafirov, taken by counsel for defendants in the
 7  matter of United States of America on behalf of
 8  Dr. Clarissa Zafirov versus Florida Medical
 9  Associates, LLC, doing business as VIPcare;
10  Physician Partners, LLC; Anion Technology, LLC;
11  Freedom Health, Incorporated; and Optimum
12  HealthCare, Incorporated, filed in the United
13  States District Court for the Middle District of
14  Florida, Tampa Division, Case No.
15  8:19-cv-01266-KKM-SPF.
16         The location of the deposition is 100 North
17  Tampa Street, Suite 2700, Tampa, Florida.  My name
18  is Michelle Fuller, representing Veritext, and I am
19  the videographer.  The court reporter is Tonya
20  Magee from the firm Veritext.
21         Counsel and all present, including remotely,
```

CONFIDENTIAL

23      of those communications.

24      A.   I can't comment on that.  Anything that was

25 discussed in relation to that would have been with the

                                                          115

1 government or with my attorney.

2       Q.   (BY MR. DRAKE)  When you say, "the

3 government" --

4       A.   Or OIG.

5       Q.   Yeah, and thank you.

6            And OIG was Agent Garrido, generally, correct?

7       A.   Correct.

8       Q.   There was this one meeting with two to three

9 others you can't really remember who they were; is that

10 correct?

11      A.   Not reliably at this point, no.

12      Q.   Yeah, that's fair.

13           So the conversation -- and I think we

14 established yesterday, you had several meetings where it

15 was just you and Agent Garrido and no lawyers, right?

16      A.   That is correct.

17      Q.   Okay.  And are you able to recall the

18 discussions you had with Agent Garrido at those meetings

19 where there were no lawyers?

20           MS. ESTES:  While you're answering whether you

<mark>21      recall, I would instruct you not to answer as to
22      the content of the communication.
23      A.    I don't think that I recall the content of
24 those conversations this far down the road with any
25 reliability.</mark>

                                                    116

1       Q.    (BY MR. DRAKE)  Did you take notes from any of
2  these meetings?
3       A.    I don't recall that being the case.
4       Q.    You don't recall if Agent Garrido did?
5             MS. ESTES:  Object to form.
6       A.    She may have, but I'm not sure what is
7  available or what she -- I don't know what -- what
8  she -- when and if she did.  She might have had a pen at
9  some point.  Who knows.
10      Q.    (BY MR. DRAKE)  We'd need to ask her?
11      A.    Well, I'm saying I don't know --
12      Q.    Right.
13      A.    -- what they keep in terms of their internal
14 records or what their requirements are.  It's not
15 from -- I have no idea.
16      Q.    Okay.  And we established the meetings took
17 place after your case was on file.  So sometime after
18 May '19 -- May of 2019, correct?

<mark>Case 8:19-cv-01236-KKM-SPF   Document 298-1   Filed 06/14/24   Page 10 of 10 PageID 5089</mark>