UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* DR. CLARISSA ZAFIROV,<br><br>    Plaintiff/Relator<br><br>v.<br><br>FLORIDA MEDICAL ASSOCIATES, LLC,<br>d/b/a VIPCARE; PHYSICIAN PARTNERS,<br>LLC; ANION TECHNOLOGIES, LLC;<br>FREEDOM HEALTH, INC.; and OPTIMUM<br>HEALTHCARE, INC.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) CASE NO. 8:19-cv-01236<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**RELATOR'S OPPOSITION TO FREEDOM DEFENDANTS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER**

I.    **Introduction**

Defendants Freedom Health, Inc. and Optimum Healthcare, Inc. (collectively, "Freedom Defendants") seek to block the deposition of a relevant witness, Mital Panara, a former employee of Freedom who, throughout the relevant time period, oversaw Freedom's risk adjustment operations. Freedom Defendants' motion is a transparent effort to deny Relator an agreed-upon deposition of an agreed-upon witness based solely on a perceived procedural issue which is largely of their own making. As described herein, Mr. Panara was the architect and implementer of a key quality program whereby, *inter alia*, Freedom Defendants abdicated claims review oversight to Provider Defendants for providers identified as the highest-risk for

submission of unsupported claims. Yet, Freedom never identified Mr. Panara as a witness or provided his contact information on their initial or supplemental disclosures, and did not identify him as a custodian for document production purposes.

Despite Freedom's failure to identify Mr. Panara, Relator learned of the import of his role through document production and sought a deposition date for him, which the parties agreed to set for June 10, 2024. All counsel was aware of and confirmed the date, and when Freedom identified that Mr. Panara was no longer employed by the company, Freedom counsel provided the scheduled date to the counsel that Freedom retained for him. It was only when Relator sought to adjust the start time of the deposition that Relator learned that Mr. Panara had been non-responsive to the counsel selected by Freedom. When that counsel ultimately conveyed that he could not reach and therefore would not be representing Mr. Panara, the June 10 deposition was canceled out of necessity and Relator turned to the steps to serve him individually with a deposition subpoena. Per local rules, a Notice of Third Party subpoena was served on Defendants on June 14, 2024. When Freedom Defendants did not respond to that notice, a subpoena was served through a process server on Mr. Panara on June 18, 2024 for a deposition scheduled for June 28, 2024.

Freedom's sole basis for now seeking to quash the subpoena arises from the date the subpoena was served on Mr. Panara. Freedom's representations about Relator's communications with Mr. Panara's designated counsel are incomplete and misleading. Freedom's description of events skips over the role its counsel played in the deposition scheduling, as well as the consistent practices of the parties and outside

2

counsel in this action as they worked to complete twenty depositions over a period of just over thirty days. Freedom should not now be allowed to exploit a technical violation to block a deposition of a relevant witness where the witness is available and no party can show (or even asserts) any undue prejudice or burden from the deposition proceeding. In fact, critical to their motion, Freedom Defendants do not, and cannot, assert that they did not know that Mr. Panara was identified as a deposition witness, did not know of his deposition, did not have time to prepare questions for it, or would suffer any prejudice or burden from Mr. Panara being deposed pursuant to the current subpoena.

Finally, Freedom Defendants' motion does not acknowledge that the deposition noticed for Friday, June 28, 2024, was postponed off of that date *at the request of Freedom* – not Relator or the witness. While Freedom Defendants represented to Relator that the request was to allow a traditional instead of expedited briefing schedule, their motion failed to convey that to the Court such that the Court was still burdened with an expedited briefing schedule even though there is no longer a time urgency to Freedom's request. Relator conferred with Mr. Panara's current counsel to confirm that the witness is willing to appear at a rescheduled time following the Court's resolution of this motion. Accordingly, should the Court agree with Relator that the deposition of Mr. Panara can proceed as anticipated by all parties, Relator respectfully requests that the order direct that it be held within 45 days of the Court's order on a date mutually agreeable to the parties and the witness.

3

## II. Factual Background

Mital Panara was Vice President for Revenue Management at Freedom and responsible for oversight of the Medicare Risk Adjustment Department. Among other duties, he was the chair of Freedom's Quality Improvement Committee, which was designed to "increase the accuracy and consistency of coding system wide." Other witnesses deposed in this matter have identified that Mr. Panara held roles critical to the allegations of this case. For example, Freedom's 30(b)(6) witness Radha Rai identified Mr. Panara as one of the architects of Freedom's Quality Improvement Program, and one of the individuals who attended regular Joint Operating Committee meeting with Physician Partners. Karen Kelly, former director of Freedom's Medicare Risk Adjustment department, identified Mr. Panara as the individual responsible for which IPA (such as Physician Partners) would be delegated with responsibility to perform a 100% chart review for providers identified for the Freedom's QIP III program for providers with a history of "subpar performance." Despite these key roles, Freedom failed to identify Mr. Panara on its initial or supplemental Rule 26(a) disclosures, nor did they identify him as a document custodian for production purposes.

Due to Freedom's failure to identify Mr. Panara as a key individual, Relator only ascertained the need for his deposition in April 2024 and made the request to Freedom for an available date. On April 11, 2024, Freedom counsel emailed Relator to state that Mr. Panara was no longer employed by Freedom and that they were working to locate his contact information to be provided to an attorney, Ryan

4

Stumphauzer, who has represented other former Freedom employees in this action; Freedom did not provide any contact information for Mr. Panara to Relator. Exhibit A, April 11, 2024 e-mail from K. McDonnell. Relator admits that, in the flurry of activity around the scheduling of more than twenty depositions, the information in the email from Freedom regarding Mr. Panara's representation by Mr. Stumphauzer was not immediately incorporated in Relator's deposition planning at that time. (By way of illustration, approximately 50 emails were transmitted between the parties the week of April 8, 2024 in this matter.) At no point did Freedom's counsel follow up with Relator to update that Mr. Stumphauzer had not been retained by Mr. Panara, to identify any other counsel that it retained on behalf of Mr. Panara,[1] or to provide Mr. Panara's contact information to Relator in lieu of going through retained counsel.

On May 3, 2024, Relator sent a chart of the twenty depositions slated for May 6 – June 14, 2024 which included Mr. Panara's deposition for June 10, 2024. Exhibit B, May 3, 2024 e-mail from J. Estes. The email transmitting the chart made clear that Relator's counsel viewed Mr. Panara as a party witness and asked counsel to confirm those dates or to provide alternative dates. Freedom counsel did not respond to the email or correct Relator's representation of Mr. Panara as a party witness, nor state whether or not they knew if he was represented by Mr. Stumphauzer at that time. As the party who would have been paying for Mr. Stumphauzer's counsel, Freedom was

---

[1] Mr. Panara is now represented by counsel Shane Warner. Relator does not know if Freedom provided Mr. Warner as counsel to Mr. Panara, is paying for Mr. Warner's services, and if so, when those services were engaged.

5

uniquely positioned at that time to know whether or not such representation had been confirmed.

On June 5, 2024, during a break from the deposition of Dr. Sangeeta Hans, Relator conferred with Defendants' counsel for their agreement to adjust the start time of Mr. Panara's deposition on June 10 to accommodate timing of California-based counsel; Freedom's counsel confirmed their availability and inquired whether Relator's counsel had conferred with Mr. Panara's counsel on the timing. Freedom Defendants' motion is misleading in the implication of this discussion. Relator's counsel Jillian Estes responded that *she* did not then know who was representing Mr. Panara, not that Relator's counsel writ large did not. Rather, the members of Relator's team responsible for Mr. Panara's deposition had become aware of Mr. Stumphauzer's representation by that time, and having heard nothing from Freedom which would suggest that representation to be in question, were proceeding apace for the June 10 deposition based on the standard practice of confirming dates through emails.

Relator's counsel called Mr. Stumphauzer that same date to confirm that the change in start time was acceptable to the witness as well. Mr. Stumphauzer confirmed that Freedom counsel had provided him with the June 10, 2024 date for Mr. Panara's deposition and that he had that date reserved on his calendar for the deposition. However, Mr. Stumphauzer let Relator's counsel know then that he had not yet been able to get in contact with Mr. Panara. Even at that date, Mr. Stumphauzer stated that he would continue his efforts to contact Mr. Panara and, if he was successful, the Monday deposition could still proceed. By June 7, given the uncertainties and the need

6

to accommodate the schedules of the parties and the court reporter and videographer, Relator notified the parties that the deposition for June 10, 2024, would have to be taken off the calendar due to Mr. Panara's non-responsiveness. Exhibit C at 4, June 7, 2024 e-mail from J. Estes.

Relator communicated with Mr. Stumphauzer on June 11, 2024, at which time he informed Relator that he had still not been able to contact Mr. Panara and believed that it was "doubtful" that he would be representing him. Relator then promptly contacted Freedom to request contact information for Mr. Panara. *Id.* at 2-3, June 11 e-mail from A. Hartman. While Freedom initially failed to provide Mr. Panara's contact information, they did finally provide it in response to a follow-up inquiry on June 12, 2024. *Id.* at 1. In response to Freedom Defendants' assertion that they would object to any effort to serve Mr. Panara with a subpoena for deposition, Relator served Defendants with a Notice of Third Party Subpoena on June 14, 2024. Doc. 306-2 at 3. But Freedom Defendants did not respond to the Notice upon receipt nor the following day, nor indicate their intention to file a motion at that time which would have avoided process service fees and burden on the witness if a protective order had been entered at that time. Hearing no objection from Freedom, Relator engaged a process server to locate Mr. Panara and serve the deposition subpoena at his home on June 18, 2024. *Id.* at 2.

Mr. Panara did not respond to or communicate with Relator in response to receipt of the subpoena. Tellingly, communications from Freedom's counsel indicate that Mr. Panara or his counsel instead communicated directly to them either upon

7

receipt or very nearly thereafter. Mr. Panara's immediate outreach to Freedom's counsel raises questions as to when he had previously been in communication with them, whether he had been advised by Freedom's counsel to expect the subpoena, and the amount of communication around the June 10, 2024 deposition as to whether his avoidance of communication with Mr. Stumphauzer was a coordinated effort.

On June 21, 2024, Freedom conveyed to Relator that they had been in contact with either Mr. Panara or his counsel and indicated that Freedom intended to file a motion to quash. Exhibit D at 4, June 21, 2024 email from E. Hindman. Freedom proposed moving the set date of June 28, 2024, and upon request for clarification, confirmed "we would take the deposition off calendar and agree to reschedule a date that works for all parties if the Court denies our motion to quash." *Id.* at 2. Relator confirmed that her agreement to that proposal would depend on the witness's agreement to the same. *Id.* at 1.

On Monday, June 24, 2024, Relator conferred with Shane Warner, counsel for Mr. Panara, who confirmed that he was amenable to moving the date (subject to some scheduling conflicts in early August) and that he would accept service of an amended subpoena for Mr. Panara for a future date. See Exhibit E, June 24, 2024 e-mail from A. Hartman. Thus, Relator agreed to Freedom's proposal to move the deposition back. *Id.*

### III. Good Cause Exists to Allow the Panara Deposition to Take Place After the Close of Discovery

The narrowness of the issue before the Court is significant to the resolution of this motion: Relator does not seek to re-open fact discovery in its entirety, to take depositions of newly identified witnesses, or to seek production of additional documents related to the pending deposition. Rather, Freedom Defendants' motion is limited to the single deposition of Mital Panara – a witness identified for deposition well-before the close of fact discovery and whose deposition was only foreclosed by the non-responsiveness of the witness to the counsel provided to him by Freedom Defendants.

Defendants seek to quash that subpoena served on Mr. Panara on June 18, 2024 setting the deposition for June 28, 2024 (which has now been moved back to a date to be agreed-upon by counsel), and for issuance of a protective order solely because "the subpoena was served after the close of fact discovery, and with insufficient time for compliance." Doc. 306 at 4. In seeking a protective order preventing the deposition, Defendants must show "good cause" exists for the court to issue such an order. Fed. R. Civ. P. 26(c)(1). To establish good cause, the moving party must make a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Ekokotu v. Fed. Exp. Corp.*, 408 F. App'x 331, 336 (11th Cir. 2011) (internal quotation marks and citation omitted); *see also Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 430 (M.D. Fla. 2005). In addition to showing good cause, the moving party must show that, on balance, its interest in seeking the protective order

outweighs the interests of the opposing party. *McCarthy v. Barnett Bank of Polk Cty.*, 876 F.2d 89, 91 (11th Cir. 1989).

Here, Freedom Defendants have failed to meet their burden that they are entitled to a protective order. Relator does not dispute that the subpoena to Mr. Panara was served past the deadline for such service. However, the record is clear that Relator acted in good faith, consistent with the practices and communications consistently utilized in this case, and her actions are not neglectful, but certainly excusable.

First, Freedom Defendants' motion fails to address at all the standard operating practices which were utilized by all parties in this case given the very rapid pace of the depositions and the complexities of scheduling all witnesses in the narrow timeframe allotted. While Relator does not dispute that notices and subpoenas are prescribed by the Federal Rules, the parties in this case heavily relied on communication between counsel to schedule and confirm depositions, and often formalized the depositions at or very near to the depositions themselves. For example, on May 8, 2024, Relator served notices of four depositions which had been scheduled and confirmed by counsel for dates ranging from May 9, 2024 through June 3, 2024. On May 16, 2024, Relator served notices of four more depositions which had been scheduled and confirmed by counsel for dates ranging from May 24, 2024 through June 14, 2024. Although Defendants only elected to take three depositions in this case, they took advantage of similar flexibility. For example, Dr. George Mansour was subpoenaed for a June 12 deposition by Freedom on May 22, 2024, but Physician Partners did not issue their

own subpoena to Dr. Mansour until June 10, 2024.[2] None of these documents were met with objection or even consternation from any party over the dates of service; this was the usual practice used in this case. Accordingly, when Relator's counsel spoke with Mr. Stumphauzer on June 5 to set timing for the June 10 deposition about which he had been notified more than a month prior and was holding on his schedule, Relator would have issued the subpoena at that time. Given, however, the information learned in that call that Mr. Panara had been nonresponsive and the representation indicated by Freedom had never been formalized, Relator could not serve Mr. Panara through Mr. Stumphauzer at that time. Relator acted expeditiously to serve him once his contact information was received from Freedom on June 12, 2024.

    Accordingly, Relator's conduct with respect to Mr. Panara's deposition was in good faith and consistent with the practices that had been implemented throughout the history of the case. However, even if the Court finds that not serving a subpoena to formalize the noticed deposition was neglectful, it is excusable and not cause for a protective order to prohibit the deposition under the standards of the Eleventh Circuit. In *Fisher Island Ltd. v. Fisher Island Invs., Inc.*, 518 F. App'x 663, 666 n.1 (11th Cir.

---

[2] Of note, Dr. Mansour's counsel notified Freedom that Dr. Mansour could not be available for seven consecutive hours on June 12 due to medical issues. By agreement with counsel, but not seeking permission for extension of the deadline from the Court, the parties agreed to hold any additional hours of Dr. Mansour's deposition on June 19, 2024. Freedom concluded its questioning of Dr. Mansour on June 12 such that the additional time on June 19 was not needed, but the willingness to schedule outside of the June 14 deadline for its witnesses is inconsistent with the positions taken herein.

11

2013), the 11th Circuit recognized four factors as relevant to the decision of whether a party's actions were excusable:

> (1) the danger of prejudice to the [opponent]; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. The factors are non-exclusive, and the test requires an equitable determination taking account of all the relevant circumstances surrounding the party's omission.

Here, each of the factors counsels fully in Relator's favor. First, there is no danger of undue prejudice to Freedom; indeed, Freedom makes no argument that the deposition of Mr. Panara at this point would present an undue burden, nor could they make such an argument. Second, the delay is a matter of days as Relator moved as expeditiously as possible to individually serve Mr. Panara when she learned that Mr. Stumphauzer would not be representing him. That delay presents no impact on judicial proceedings because (1) all remaining deadlines are presently stayed pending the outcome of Defendants' dispositive motion so no other deadlines would be impacted at all, and (2) there are several other outstanding discovery motions and production issues to be resolved so this deposition would not be the cause of any time demands beyond those already in play. As to the third and fourth elements, a protective order is not merited because of the standard communications practices in this case in confluence with a lack of information from Freedom as to Mr. Panara's representation status. While Relator acknowledges her initial oversight of the information in Freedom's April 11 email that Mr. Panara was a former employee, that is not material to the present situation, particularly as Freedom failed to later clarify

Mr. Panara's representation status, even though Freedom (as the party paying for Mr. Stumphauzer's services) would have had complete awareness that the arrangement of which they informed Relator had not been formalized. *See*, e.g., *Gonzalez v. ETourandTravel, Inc.*, No. 6:13-cv-827-Orl-36TBS, 2014 U.S. Dist. LEXIS 40180, at *4 (M.D. Fla. Mar. 26, 2014) (finding good cause to reopen discovery, recognizing that "[t]he overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result.") (quoting *Oliver v. City of Orlando,* No. 6:06-cv-1671-Orl-31DAB, 2007 U.S. Dist. LEXIS 80552, at *4 (M.D. Fla. Oct. 31, 2007)).

Caselaw relied upon by Defendants is either actually supportive of Relator, or inapposite to the circumstances here. For example, where Freedom Defendants assert that Relator could have noticed Mr. Panara's deposition anytime during discovery, Relator had no basis to know of his import until the very end of discovery due to Freedom's failure to identify him as a relevant witness or custodian, and because Freedom didn't produce a complete set of documents related to him until the end of discovery. Similarly, in *Barnette v. Fed. Exp. Corp.*, No. 2:10-cv-471-FtM-36SPC, 2011 U.S. Dist. LEXIS 65179, at *5 (M.D. Fla. June 14, 2011), the court found good cause to reopen discovery given the late production of relevant information by defendants. Further, cases which deny relief based on an unexplained delay until after the close of discovery are inconsistent with the facts presented here wherein the timing of the case and the subsequent subpoena is clearly set out and there is no unexplained delay by

Relator. *See*, e.g. *Inman v. Richman Prop. Servs., Inc.*, No. 3:13-cv-941-J-32MCR, 2014 U.S. Dist. LEXIS 129415, at *10 (M.D.Fla. Sep. 16, 2014) (denying motion to compel where plaintiff had no reasonable explanation for waiting for the last day of discovery to resolve issue with defendant); *Arch Speciality Ins. Co. v. BP Inv. Partners, LLC*, No. 6:18-cv-1149-Orl-WWB-DCI, 2020 U.S. Dist. LEXIS 253751, at *3-5 (M.D. Fla. Feb. 26, 2020) (granting motion to quash where defendant offered "no legitimate reason" why it waited until nearly close of discovery to serve a facially overbroad subpoena for documents and compliance would require an extension of the discovery period).

Rather, courts in this district and around the country recognize good cause to allow important depositions where the party requesting the deposition showed diligence (even if the party "could have been more diligent") and there would be little or no burden on the objecting party. *See Genetec, Inc. v. Pros, Inc.*, No. 1:20-cv-07959 (JLR), 2022 U.S. Dist. LEXIS 230768, at *3-5 (S.D.N.Y. Dec. 22, 2022) (reopening discovery for two depositions where the depositions were noticed and tentatively scheduled before the close of fact discovery, fact discovery closed less than three weeks ago, there would be no need to prolong the discovery period, and the parties had already prepared for the deposition). The good cause to allow such a deposition is even more clear where "there is no danger of prejudice to Defendants in extending the deadlines, [and] the danger of prejudice to Plaintiff in denying the motion would be severe." *Andrews v. Marshall*, No. 2:16-cv-814-FtM-99MRM, 2019 U.S. Dist. LEXIS 236267, at *8 (M.D. Fla. Mar. 20, 2019) (also noting, "[f]inally, while the Court recognizes a certain lack of diligence on the part of the Plaintiff's counsel, counsel did

14

schedule the subject depositions before the close of discovery, and defense counsel was willing to produce the witness for deposition despite the fact that the depositions were scheduled after the close of discovery. At bottom, the Court finds that the potential prejudice to Plaintiff warrants granting the relief requested.") Simply, where there would be no undue prejudice to the other parties, there would be no impact on the drafting of dispositive motions, the deposition would not delay any other proceedings, and the requesting party did not act in bad faith, "justice is best served by permitting the deposition to take place." *Hgr Constr. v. Hanover Ins. Co.*, No. 6:18-cv-1406-Orl-40LRH, 2020 U.S. Dist. LEXIS 260312, at *14-15 (M.D. Fla. July 13, 2020).

### IV. The Subpoena Should Not Be Quashed Based on The Date Selected.

In addition to their motion for protective order, Defendants seek to quash the subpoena for failure to provide adequate notice between the date the subpoena was served and the scheduled date of the deposition. Mr. Panara filed a joinder raising that objection as well. Doc. 309. First, Relator notes she did seek to pick a mutually agreeable date with Freedom, and Freedom elected not to cooperate in selecting that date. Exhibit C at 2, June 12, 2024 e-mail from K. McDonnell. Relator then set the tentative deposition date for June 28, 2024, fourteen days from the date of the Notice of Third Party Subpoena, which was served on Defendants on June 14, 2024. Given that Mr. Panara had been non-responsive to the communications from Mr. Stumphauzer and Relator did not have information as to whether Mr. Panara was represented by any other counsel at that time, Relator could not negotiate a date with Mr. Panara prior to sending the process server to attempt delivery of the noticed

15

subpoena. Thus, rather than send a subpoena with a different date than the date which was in the notice, Relator elected to serve the subpoena with the date listed and, as has been customary in this case, was (and is) willing to amend the date to accommodate the schedule of counsel and the witness. *See* Ex. A at 4, April 3 e-mail from K. McDonnell noting, "we had to submit a Touhy request as a starting point to scheduling her deposition, which required a subpoena and therefore a tentative date. We did not expect the noticed date to go forward and, as you know, it did not go forward on that date. This is common practice."

In conversation with Mr. Warner on June 24, 2024, with respect to moving the date off of June 28, 2024, at Freedom's request, Mr. Panara's counsel did not raise any concerns about the proximity of the scheduled date and did not indicate Mr. Panara's unavailability for the scheduled date. Despite the Local Rules compelling meet-and-confer before filing a motion to quash, Mr. Warner did not indicate any intention to move to quash (or to join Freedom's motion to quash) based on the scheduled date at that time nor at any time since then before filing his Joinder motion. *See* Doc. 309, failing to include notice of conference required by Local Rule 3.01(g).

Critically, however, any issues with the noticed date have been obviated by Freedom's request to move the scheduled date of June 28, 2024 off the calendar and all parties' agreement to reschedule the date if the Court denies Freedom's motion. All parties agreed to allow the deposition to be rescheduled at the direction of the Court – and Mr. Warner agreed to accept service of a rescheduled deposition subpoena – so a date can be mutually selected fourteen or more days out to alleviate any notice

16

concerns. See Ex. E, confirming conversation between Relator's counsel and Mr. Panara's counsel as to rescheduling deposition to later date, and confirmation of receipt by Freedom's counsel.

## V.     Conclusion

The deposition of Mital Panara has been long-known, long-anticipated, and long-agreed-upon by all parties, and Mr. Panara himself has raised no objections other than timing of the subpoena to providing his testimony. Freedom Defendants have sought to capitalize on a procedural step not strictly adhered to in this litigation to now gain a litigation advantage by foreclosing the testimony of a key witness, but have not identified any burden which would arise from fact discovery being completed as planned. For the reasons set forth herein, Relator respectfully requests that Freedom Defendants' motion to quash and motion for protective order be denied in its entirety, and that the parties be ordered to reset the deposition at a time mutually available to counsel and the witness more than 14 days but no more than 45 days from the date the Court enters its order.

Respectfully submitted,

/s/ Jillian L. Estes
Jillian L. Estes (FL 0055774)
Jennifer M. Verkamp*
Anne H. Hartman*
Chandra Napora*
Jonathan M. Lischak*
MORGAN VERKAMP LLC
4410 Carver Woods Dr., Suite 200
Cincinnati, OH 45242
Telephone: (513) 651-4400
Fax: (513) 651-4405

17

Email:
jillian.estes@morganverkamp.com
jverkamp@morganverkamp.com
ahartman@morganverkamp.com
cnapora@morganverkamp.com
jlischak@morganverkamp.com

Adam T. Rabin (Fla. Bar No. 985635)
Havan M. Clark (Fla. Bar No. 1026390)
RABIN KAMMERER JOHNSON
1601 Forum Place, Suite 201
West Palm Beach, FL 33401
Phone: (561) 659-7878
Fax: (561) 242-4848
arabin@rkjlawgroup.com
hclark@rkjlawgroup.com
e-filing@rkjlawgroup.com

*Counsel for Relator Dr. Clarissa Zafirov, M.D.*

\* Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Response in Oppositin was served via electronic mail on counsel for all parties of record on this 26th day of June, 2024.

      /s/   Jillian L. Estes
Jillian L. Estes