UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA
*ex rel.* CLARISSA ZAFIROV,

      Relator/Plaintiff,

v.                              CASE NO. 8:19-cv-1236-KKM-SPF

PHYSICIAN PARTNERS, LLC;
FLORIDA MEDICAL ASSOCIATES,
LLC d/b/a VIPCARE; ANION
TECHNOLOGIES, LLC; FREEDOM
HEALTH, INC.; and OPTIMUM
HEALTHCARE, INC.,

      Defendants.
_____/

## ORDER

Before the Court is Defendants Freedom Health, Inc. and Optimum Healthcare, Inc.'s Motion to Compel Production of Documents in Response to Requests for Production No. 11 (Doc. 280) and Relator's Response in Opposition to Freedom Defendants' Motion to Compel Production in Response to RFP No. 11 (Doc. 293). The Court held a hearing on the motion on June 18, 2024. At the hearing, the Court ordered Relator to produce the disputed document to the Court for *in camera* review. Now, upon consideration, the Court finds that Defendants' motion is due to be GRANTED IN PART and DENIED IN PART.

In their Motion, the Freedom Defendants seek to compel production of an agreement between Relator Dr. Clarissa Zafirov and Dr. George Mansour (the "Relator Sharing Agreement"), as it is responsive to Request No. 11 of the Freedom Defendants' First Request for Production, which sought "[a]ll Agreements between [Relator] and Dr. George Mansour." (Doc. 280-2). Relator and Dr. Mansour are both physicians who contracted with

Defendant Physician Partners, LLC, and both filed *qui tam* actions against Physician Partners and the Freedom Defendants.   Dr. Mansour filed, voluntarily dropped, refiled, and voluntarily re-dropped his *qui tam* claims.   The Freedom Defendants believe he will be a critical witness in this case.   As such, the Freedom Defendants served Relator with an interrogatory asking that she "[d]escribe in detail every fact concerning the nature of your relationship with Dr. George Mansour, including, without limitation, any agreements or contracts between you and Dr. George Mansour related to the Amended Complaint or this litigation."  (Doc. 280-6).   In response to this interrogatory, Relator revealed that she and Dr. Mansour are parties to a financial agreement that requires Relator to share 30% of the any money she recovers in this litigation with Dr. Mansour (*Id.*).   Relator initially stated that "she and Dr. Mansour have a contractual relationship related to this case, which such contract will be produced in relevant and non-privileged part." (Doc. 280-6 at 2).   Relator later amended her interrogatory answer to state, in relevant part:

> Relator responds that she and Dr. Mansour have a contractual relationship related to this case.   The nonprivileged information that is not protected work product related to that relationship is the following:
>
> Relator is represented in this matter by counsel who also represent Dr. Mansour in the case captioned *U.S. ex rel. Mansour v. Freedom Health, et al.*, Case No. 8:19-cv-02877 (the "Mansour Matter").   Specifically, the law firm of Rabin Kammerer Johnson represents Dr. Zafirov in the instant matter and Dr. Mansour in the Mansour Matter.
>
> Relator and Dr. Mansour have an agreement that establishes the division of any relator's share resulting from the instant matter. Specifically, should a relator's share result from this action, Relator shall retain 70% of such share, and Dr. Mansour shall receive 30%.

(*Id.* at 3).   Accordingly, Relator has refused to produce the Relator Sharing Agreement, maintaining that the only portion of the Relator Sharing Agreement that is relevant and

nonprivileged is the fee-sharing provision, and that she has already described this portion of the agreement through her interrogatory answer.

The Freedom Defendants argue that Relator should produce the Relator Sharing Agreement because it is relevant, as it is important to (a) assessing Relator's credibility and (b) their ability to defend against any evidence provided by Dr. Mansour or originating from Dr. Mansour's involvement in this case. The Freedom Defendants also argue that Relator has failed to meet her burden of establishing that a privilege applies. Relator responds that the non-disclosed portions of the Relator Sharing Agreement are not relevant, and that the Relator Sharing Agreement is clearly protected by the work product doctrine, the attorney-client privilege, and common interest doctrine, as it was made between Relator, Dr. Masour, and their respective counsel in anticipation of and in furtherance of on-going litigation.

At the hearing, the Court concluded that an *in camera* review of the Relator Sharing Agreement was appropriate. *See, e.g.*, *In re Takata Airbag Prods. Liability Litig.*, No. 15-02599, 2017 WL 10351709, at *2–3 (S.D. Fla. Mar. 7, 2017) (finding *in camera* review of joint defense agreement to be necessary and warranted because it is inappropriate to exclusively rely on one party's characterization of the disputed document and "the relevancy of a joint defense agreement depends upon the language in the agreement") (quoting *Warren Distrib. Co. v. InBev USA LLC*, No. 0701053 (RBK), 2008 WL 4371763, at *2 (D.N.J. Sept. 18, 2008)); *Biovail Labs. Int'l SRL v. Watson Pharms., Inc.*, No. 1:10-cv-20526, 2010 WL 3447187, at *1 (S.D. Fla. Aug. 30, 2010) ("When a party seeks to compel production of a joint defense agreement, courts will examine the agreement in camera and make an independent determination regarding the nature of the agreement.") (citing *Jeld–Wen, Inc. v. Nebula Glasslam Int'l, Inc.*,

No. 07–22326, 2008 WL 756455, at *5 (S.D. Fla. Mar. 11, 2008)).  Relator timely provided the agreement to the Court.

The undersigned has carefully reviewed the Relator Sharing Agreement, and concludes that it is not properly characterized as a typical joint prosecution or common interest agreement, as it does not contain the standard, boilerplate language establishing the terms, conditions, and limitations for the sharing of privileged and confidential information.[1] Instead, the Relator Sharing Agreement memorializes Relator and Dr. Mansour's agreement to share in any proceeds recovered in this litigation, and provides additional terms and conditions related to this sharing of proceeds.  As such, the Court agrees that the Relator Sharing Agreement is relevant to the Freedom Defendants' ability to assess Relator's credibility and to defend against evidence provided by or originating from Dr. Mansour.  *See Jeld-Wen*, 2008 WL 756455, at *9 ("Thus, Jeld-Wen's showing that information contained in the June 11th Agreement could reasonably be found to demonstrate bias on the part of Howes in the instant case suffices to bring the June 11th Agreement within the definition of 'relevance' dictated by Rule 26, Fed.R.Civ.P., for discovery purposes.").

Having determined that the Relator Sharing Agreement is relevant, the Court next must determine whether the agreement is privileged.  The Court finds that the agreement qualifies as work product under Rule 26, as it is a document "prepared in anticipation of litigation or for trial by or for another party or its representative[.]"  Fed. R. Civ. P.

---

[1] To be clear, and as discussed more fully below, the Court does not mean to suggest that the Relator Sharing Agreement does not contain terms reflecting a common legal interest between Relator and Dr. Mansour.  Instead, the Court only emphasizes that the agreement is not the *typical* common interest agreement that merely reflects the parties' terms for sharing privileged information, and as a result, is not relevant.  *Cf. In re Takata*, 2017 WL 10351709, at *3–4 (finding standard joint defense agreement not to be relevant).

26(b)(3)(A); *see also Drummond Co. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1334–35 (11th Cir. 2018) ("Attorney work product protection extends to material obtained or prepared by counsel in the course of their legal duties provided that the work was done with an eye toward litigation."). As Relator states in her response, although she initiated this action in May 2019, the action remained under seal until June 2020. Dr. Mansour initiated his *qui tam* action in December 2019, and that action remained under seal until September 2020. The parties then executed this Relator Sharing Agreement in December 2020, with one attorney signing in January 2021.

The Court also finds that the common interest doctrine applies to the agreement. *See, e.g.*, *Lane Constr. Corp. v. Skanska USA Civil Se., Inc.*, No. 6:21-cv-164-RBD-DCI, 2022 WL 18773723, at *1 (M.D. Fla. Nov. 7, 2022) ("Under the 'common interest' exception to waiver, a party may share its work product with another party without waiving the right to assert the privilege when the parties have a shared interest in actual or potential litigation against a common adversary, and the nature of their common interest is legal, and not solely commercial.") (quoting *Spencer v. Taco Bell Corp.*, No. 8:12-cv-387-T-23TBM, 2013 WL 12156093, at *3 (M.D. Fla. Apr. 23, 2013)). The party asserting that a document falls within the common interest doctrine must show "(1) there was a common legal interest among them, (2) the parties are represented by separate lawyers and, (3) the parties (with their lawyers) agreed to exchange information concerning the matter of common interest." *Lane Constr. Corp.*, 2022 WL 18773723, at *1 (quoting *United States v. Patel*, 509 F. Supp. 3d 1334, 1340 (S.D. Fla. 2020)). Here, Relator has established each of these elements, as (1) Relator and Dr. Mansour shared a common legal interest in prosecuting Defendants for submitting

allegedly false claims on behalf of the United States;[2] (2) Relator and Dr. Mansour were represented by separate counsel when they negotiated and executed the Relator Sharing Agreement;[3] and (3) the Relator Sharing Agreement reflects Relator and Dr. Mansour's agreement to exchange information concerning this litigation.

The protection afforded to work product, however, is not absolute. Indeed, "[d]iscovery may be had into factual work product upon a party showing 'substantial need for the materials to prepare its case' and that it 'cannot, without undue hardship, obtain their substantial equivalent by other means.'" *Drummond*, 885 F.3d at 1335 (quoting Fed. R. Civ. P. 26(b)(3)(A)). "Greater protection is given to the attorney's opinion work product—that is, materials containing 'the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.'" *Drummond*, 885 F.3d at 1335 (quoting Fed. R. Civ. P. 26(b)(3)(B)). "[O]pinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *Cox v. Admin. U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994) (quotations omitted).

The Court finds that the Freedom Defendants have established a substantial need for the Relator Sharing Agreement, and there is no substantial equivalent or alternative document

---

[2] The Court is not persuaded that the mere possibility of Relator and Dr. Mansour having a degree of competing pecuniary interests alters this analysis. *Cf. Fojtasek v. NCL (Bahamas) Ltd.*, 262 F.R.D. 650, 656 (S.D. Fla. 2009) (incident report prepared by a third party in anticipation of litigation was protected by the common interest privilege, and "the fact that [the third party] was not ultimately named in this suit, and the fact that [the defendant] has asserted that [the third party] bears full responsibility, does not change their common interest at the time the report was shared with [the defendant]"); *Patel*, 509 F. Supp. 3d at 1341 (stating that parties' legal interest must be "substantially similar").

[3] Dr. Mansour's counsel entered into a retainer agreement with Dr. Zafirov contemporaneous to the execution of the Relator Sharing Agreement. Relator's other attorneys do not represent Dr. Mansour (Doc. 293).

for Defendants to obtain by other means.  As such, Defendants could not obtain the "substantial equivalent" without undue hardship.  As addressed in Defendants' motion and at the hearing, the Relator Sharing Agreement reflects a financial agreement between Relator and the primary supporting non-party fact witness in this case.  In order to properly assess Relator's credibility and to defend against Dr. Mansour's testimony, Defendants are entitled to review this document.

While the majority of the Relator Sharing Agreement is appropriately characterized as fact work product, the agreement also contains information that is properly characterized as opinion work product insofar as it reflects the parties' reasons for entering into the Agreement, "and therefore necessarily reflect[s] the mental impressions and opinions of the parties' counsel." *In re Takata*, 2017 WL 10351709, at *6.  As a result, these portions of the Relator Sharing Agreement may be redacted. *Cf. Jeld-Wen*, 2008 WL 756455, at *5–12 (recognizing that where settlement and joint defense provisions of an agreement can be segregated, courts should order the production of the settlement paragraphs but protect the joint-defense provisions from disclosure).  To that end, Relator shall produce the Relator Sharing Agreement, but may redact the following provisions: (1) the third sentence in Recital A; (2) the first sentence of Recital D; (3) Term and Condition 1; (4) the 13th through 18th words of the first sentence in Term and Condition 4, as well as the 9th through 21st words of the second sentence in Term and Condition 4; and (5) Term and Condition 5.

Accordingly, it is hereby **ORDERED**:

(1) Defendants Freedom Health, Inc. and Optimum Healthcare, Inc.'s Motion to Compel Production of Documents in Response to Requests for Production No. 11 (Doc. 280) is **GRANTED IN PART AND DENIED IN PART** as stated above.

7

(2) Relator shall produce a redacted copy of the Relator Sharing Agreement to Defendants on or before July 3, 2024.

**ORDERED** in Tampa, Florida, June 27, 2024.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE