# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

UNITED STATES OF AMERICA
*ex rel.* DR. CLARISSA ZAFIROV,

    Plaintiff/Relator,

v.

PHYSICIAN PARTNERS, LLC; FLORIDA MEDICAL ASSOCIATES, LLC, d/b/a VIPCARE; ANION TECHNOLOGIES, LLC; FREEDOM HEALTH, INC.; and OPTIMUM HEALTHCARE, INC.,

    Defendants.

Case No. 8:19-cv-01236-KKM-SPF

**DEFENDANTS FREEDOM HEALTH, INC. AND OPTIMUM HEALTHCARE, INC.'S MOTION TO COMPEL PRODUCTION OF COMMUNICATIONS IN RESPONSE TO REQUEST FOR PRODUCTION NO. 6**

## I. INTRODUCTION

Under Federal Rule of Civil Procedure 37, Defendants Freedom Health, Inc. and Optimum Healthcare, Inc. (collectively, "Freedom Defendants") move to compel Relator Dr. Clarissa Zafirov ("Relator") to produce communications with the federal agent who conducted the parallel criminal investigation into Relator's *qui tam* allegations. Relator claims work-product protection over all 419 text messages between her and that agent based on an undifferentiated assertion that every single one was a "[c]ommunication in furtherance of [the] Government's investigation of [Relator's] *qui tam* lawsuit." *See* Ex. A (Relator's Second Privilege Log). Relator uses the same justification to withhold Relator's counsel's communications with the same agent, despite the fact that no government attorneys were involved in the communications at issue here.

Relator's work-product claims are illegitimate. And even if the work-product doctrine applies, the communications contain only "fact work product" that should be disclosed regardless—Freedom Defendants have a "substantial need" for these communications between two critical fact witnesses, and no other means of discovering the information.

## II. FACTUAL AND PROCEDURAL HISTORY

On December 23, 2022, Freedom Defendants served Relator with Request for Production ("RFP") No. 6, which requested "All Communications between [Relator] and the Government Concerning any of the allegations in the Amended Complaint." *See* ECF 284 ("Privilege Log Order") at 2-3; ECF 184-2 (Freedom Defendants' First

Set of RFPs). On February 20, 2024, following extensive meet-and-confer negotiations, Freedom Defendants moved to compel the production of relevant communications that Relator planned to withhold, and an adequate privilege log that would permit Freedom Defendants to assess any privilege claims. ECF 184. On April 1, 2024, Relator submitted her privilege log, which contained a single entry covering all of Relator's (and her counsel's) communications with any agent of the government. *See* Privilege Log Order at 4; *see also* ECF 275-1 (Relator's initial privilege log).

On June 5, 2024, this Court granted Freedom Defendants' motion to compel in part, holding that there was "no question" that Relator's privilege log was inadequate. Privilege Log Order at 5, 9 ("Relator's categorical privilege log does not provide Defendants with a fair opportunity to [assess her privilege claims]."). The Court ordered Relator to serve an updated privilege log providing additional information, and denied Freedom Defendants' motion to compel the production of documents without prejudice to a "renewed motion to compel" after Freedom Defendants had the opportunity to review Relator's updated privilege log. Privilege Log Order at 11.

On June 21, 2024, Relator served her second privilege log, *see* Ex. A. Relator's second privilege log contains 419 entries describing text-message communications between Relator and Special Agent Raquel Garrido ("Agent Garrido"), an agent of the United States Department of Health and Human Services, Office of Inspector General ("HHS-OIG").[1] The second privilege log also describes various

---

[1] By agreement of the parties, Relator's second privilege log does not include communications solely between Relator's counsel and DOJ attorneys that occurred after the filing of Relator's complaint.

communications between Relator's *counsel* and Agent Garrido, including 21 communications between Relator's counsel and Agent Garrido on which no government attorneys were copied. *See* Ex. A (log entries 1-0422, 1-0424-29, 1-0433, and 1-0435-47). Relator asserted "Work Product Privilege" and "Common Interest Doctrine" over each of these communications. *Id.* Concerning purpose, Relator represented that each and every communication was sent "in furtherance of [the] Government's investigation of [Relator's] *qui tam* lawsuit." *Id.* (Column H).

Freedom Defendants have also sought Relator's communications with Agent Garrido from HHS-OIG. *See* ECF 253. Rather than asserting any privilege objection, the government informed Freedom Defendants that Relator's communications with Agent Garrido could not be produced because any text messages between Relator and Agent Garrido were lost or destroyed around June 2020 (the same month this litigation was unsealed), when Agent Garrido "received a new phone." *Id.* at 9, 23.

This Motion seeks to compel the production of each of the 419 text messages between Relator and Agent Garrido, plus the 21 communications between Relator's counsel and Agent Garrido on which no government attorney was copied (collectively, the "Communications").[2] For the sake of clarity, Freedom Defendants thus seek the

---

The parties also agreed to a brief extension of the deadline for service of the second privilege log; Relator's log was timely served.

[2] This Motion is timely. Although the fact discovery window closed on May 29, 2024, the Second Privilege Log that precipitated this Motion was served only on June 21, 2024. The Court also explicitly anticipated the possibility of a "renewed motion to compel" after Freedom Defendants had the opportunity to review the supplemental log, notwithstanding that the fact discovery would be closed before the log was due. *See* Privilege Log Order at 11. Freedom Defendants acted diligently in reviewing that supplemental log, meeting and conferring with Relator, and filing this Motion. To the extent a showing of good cause is necessary to grant the relief sought here, good cause exists. *Cf., e.g.*,

production of log entries 1-0001-419, 1-0422, 1-0424-29, 1-0433, and 1-0435-47. *See* Ex. A.

### III. ARGUMENT

Relator, as the party invoking the work-product doctrine, bears the burden on this Motion to Compel.[3]  *See United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991); Middle District Civil Discovery Handbook (2021) at Section VI(A)(1). Discovery privileges are to be "construed narrowly" whenever possible. *Pierce County v. Guillen*, 537 U.S. 129, 144-46 (2003). Relator makes no claim of attorney-client privilege; Relator's only privilege assertions concern the work-product privilege.[4]

Even if the work-product doctrine applies, the Communications may be discoverable—"The protection afforded to work product … is not absolute," ECF 312 at 6. So-called "fact work product" is discoverable if (1) a party has a "substantial need for the materials" and (2) the party "'cannot, without undue hardship, obtain their substantial equivalent by other means.'" *Drummond Co. v. Conrad & Scherer, LLP*, 885

---

ECF 313 at 2 (permitting the taking of a deposition in this action after the close of fact discovery because Relator "acted in good faith in attempting to timely schedule" the deposition).

[3] While movants seeking to compel discovery bear an initial burden of proving relevance, *Moore v. Lender Processing Servs. Inc.*, 2013 WL 2447948, at *2 (M.D. Fla. June 5, 2013), Relator has conceded the relevance of the discovery sought, and could not plausibly have challenged the relevance of her communications with the government in any event, *see* ECF 184 at 5-6 (analyzing relevance). The Federal Rules require the logging of only "otherwise discoverable" information, Fed. R. Civ. P. 26(b)(5)(A), so the Court need not assess the relevance of any of the Communications.

[4] Relator also asserts that the common interest doctrine applies to each communication, but as this Court previously recognized (Privilege Log Order at 7), "[t]he common interest doctrine is not an independent source of privilege, but rather acts as an exception to the general rule that a voluntary disclosure of privileged material to a third party waives" the privilege. *Lane Constr. Corp. v. Skanska USA Civ. Se., Inc.*, 2022 WL 18773723, at *1 (M.D. Fla. Nov. 7, 2022) (quotation omitted).

F.3d 1324, 1335 (11th Cir. 2018) (quoting Fed. R. Civ. P. 26(b)(3)(A)).[5]

First, the Communications are not work product. The Communications sent by Agent Garrido were not created "by or for Relator," and *none* of the Communications were prepared "in anticipation of" Relator's *qui tam* claims. Second, even if some of the Communications are Relator's fact work product, they are nonetheless discoverable. Freedom Defendants have a "substantial need" for this discovery, which cannot be obtained from any other source.

**A.     The Work-Product Doctrine Does Not Apply.**

The work-product doctrine applies to documents "prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). Relator here must therefore satisfy "two elements"—"the document 'must be (1) produced by an attorney or her agent and (2) created in anticipation of litigation.'" *United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1319, 1323 (N.D. Ga. 2015) (quoting *Adams v. City of Montgomery*, 282 F.R.D. 627, 633 (M.D. Ala. 2012)); *see also Simmons v. USI Ins. Servs. LLC,* 2023 WL 6958659, at *2 (M.D. Fla. Oct. 20, 2023) (adopting *Bibby* standard), *motion for reconsideration granted in part*, 2023 WL 9104760 (M.D. Fla. Nov. 6, 2023).

---

[5] While an attorney's "opinion work product enjoys a nearly absolute immunity," *Cox v. Admin. U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994) (quotation omitted), no opinion work product is likely at issue here. No attorneys were allegedly involved in the creation of Relator's direct text exchanges with Agent Garrido, and the only Communications sought here that involve Relator's counsel do not involve the government's counsel. *See infra*, Section III.B. To the extent that any Communications *do* contain opinion work product, Freedom Defendants would have no objection to a process by which Relator could submit the documents to the Court for *in camera* review to permit the redaction of any opinion work product.

Relator cannot satisfy either element.

**1.     *Communications Sent by Agent Garrido Were Not Prepared "By or For" Relator.***

Non-parties are "not entitled to claim work product protection." *Centennial Bank v. Servisfirst Bank Inc.*, 2016 WL 3574587, at *4 (M.D. Fla. July 1, 2016) (quotation omitted); *see also Tambourine Comercio Internacional SA v. Solowsky*, 312 F. App'x 263, 284 (11th Cir. 2009)). The United States is not a party to this suit.[6] *See United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 430 (2023) ("When the Government has chosen not to intervene in a *qui tam* suit, it is (by definition) not a party."); *accord United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009). Per the Federal Rules, then, any privilege that belongs exclusively to the United States is not Relator's to invoke. *See, e.g.*, *United States ex rel. Minge v. TECT Aero., Inc.*, 2011 U.S. Dist. LEXIS 92243, at *4 (D. Kan. Aug. 18, 2011) (rejecting "expansion" of work-product and common-interest doctrines to "either protect the communications from Relator Minge to government counsel, or empower Relators to assert the government's work-product privilege"). So Relator's work-product assertion therefore turns on whether any communications were prepared "by or for" Relator, since only *Relator's* work product could possibly deserve protection.

While the communications sent by Relator or her counsel were presumably prepared "by or for" Relator, the communications sent by Agent Garrido were not

---

[6] While the United States intervened for the limited purpose of defending the constitutionality of the False Claims Act, ECF 259, that limited intervention does not render the United States "a party for discovery not related to defending the constitutionality of the False Claims Act," *see* ECF 310.

-6-

prepared "for" Relator, and thus do not implicate the work-product privilege. The Communications were exchanged in the context of a then-ongoing *criminal* investigation by HHS-OIG, which involved the use of recordings and other consensual monitoring activities. The United States' statements in this litigation establish that the recordings were created in the context of the United States' own criminal investigation (and not as part of Relator's investigations into her own *qui tam* claims). *See* ECF 10 at 3-4 ("[T]he United States Attorney's Office has opened a criminal investigation into the allegations that is proceeding on a parallel basis with this civil inquiry *and is using covert information gathering techniques*." (emphasis added)); *see also id.* at 1 (representing that the government's "criminal investigation," which was "supported by [HHS-OIG]," involved the use of "a variety of law enforcement tools, including covert information gathering techniques"). And the criminal nature of this investigation is further underscored by the use of non-consensual recordings, which would have been unlawful unless effectuated for a criminal investigation.[7]

Relator was a *witness* in the government's criminal investigation, and no component of HHS-OIG (including Agent Garrido) could possibly be considered an "agent" of Relator. To risk stating the obvious: private citizens do not direct the course of the United States' criminal investigations. The 201 Communications sent by Agent Garrido thus were not prepared "by or for" Relator, and Relator's work-product assertion over those Communications fails at the outset.

---

[7] Recording a party without their consent for purposes other than conducting a criminal investigation is a felony under Florida Law. *See* Fla. Stat. § 934.03.

### 2. *The Communications Were Not Prepared in Anticipation of This Litigation.*

For the work-product privilege to attach, "'the primary motivating purpose behind the creation of the document' must be to help in ongoing litigation or possible future litigation." *Schuller v. Geovera Specialty Ins. Co.*, 2018 WL 11344857, at *2 (M.D. Fla. Dec. 6, 2018) (quoting *United States v. Davis,* 636 F.2d 1028, 1040 (5th Cir. 1981)). Relator's conclusory and boilerplate assertions that each and every Communication was "in furtherance of Government's investigation of *qui tam* lawsuit," *see* Ex. A, is belied by the record, and her "fatally vague" assertions fail to carry her burden, *see Aspen Am. Ins. Co. v. Tasal, LLC*, 2020 WL 10140952, at *5 (M.D. Fla. Dec. 23, 2020); *accord Doctors' Admin. Sols., LLC v. Allscripts, LLC*, 2011 WL 13176224, at *5 (M.D. Fla. Jan. 25, 2011).

None of the Communications was sent in furtherance of Relator's *qui tam* litigation because all of them concerned the United States' *criminal* investigation. *See supra* 7; *see also Miller v. Holzmann*, 2007 WL 779393, at *1 (D.D.C. Mar. 8, 2007) (finding work-product privilege inapplicable to memorandum describing "interviews … conducted by the FBI to ascertain whether a prosecutable crime had been committed" because document not prepared "in anticipation of civil litigation or for a trial"). Relator's communications with Agent Garrido did not begin until Relator became involved in making the recordings at the heart of the government's criminal investigations. Ex. B (Zafirov 5/30/2024 Tr. at 100:7-8). Relator communicated with Agent Garrido at the government's behest, and not vice versa. Indeed, Relator affirmatively disclaimed any knowledge of the government's purpose or motivation

with respect to her communications with Agent Garrido. *See* Ex. B (Zafirov 5/31/2024 Tr. at 118:18-119:4) (Relator: "I don't know the intention of the government and Agent Garrido. That's not for me to say what they were hoping to acquire."). If Relator was unaware *why* she was speaking to the government at the time, she cannot now claim that the "primary motivating purpose" of each Communication (regardless of the author) was to further her own *qui tam* claims, *cf. Schuller*, 2018 WL 11344857, at *2.[8]

Relator's actions during this period may well have been partially motivated by her desire to convince the government to intervene in her *qui tam* action. She may have thought that her cooperation in the government's criminal investigation would make that outcome more likely. Relator's counsel's communications with Agent Garrido may have been motivated in part by that same desire. But that is not the test. Relator must "connect the dots," *Aspen*, 2020 WL 10140952, at *5, between her general motivations and the at-issue communications, by establishing that *each*

---

[8] Freedom Defendants lack detailed information as to the motivations behind the Text Messages because HHS-OIG has refused to permit Agent Garrido to sit for a deposition pursuant to Freedom Defendants' subpoena, *see* ECF 253, and because Relator largely refused to testify about the contents of her communications with Agent Garrido, *see, e.g.*, Ex. B (Zafirov 5/31/2024 Tr. at 122:4-123:19). Claiming attorney-client privilege (not work-product privilege), Relator's counsel instructed Relator not to testify about the content of any of her communications with the government—even for conversations in which no lawyers were present. *Id.* Relator's Second Privilege Log, of course, does not assert that attorney-client privilege applies to the Text Messages, despite the fact that they concern the "content" of Relator's communications with the government—the purported basis for Relator's counsel's privilege instructions at Relator's deposition.

Given these unsupported (and now apparently abandoned) privilege assertions, Freedom Defendants reserve the right to seek further deposition testimony from Relator based on the outcome of this Motion, Freedom Defendants' motion to compel deposition testimony from Agent Garrido (ECF 253), and any discovery obtained as a result of the Court's rulings on those motions.

*particular* communication was principally motivated by the purpose of furthering her *qui tam* litigation (as opposed to, say, cooperating with the government's criminal investigation). Relator does not (and cannot) clear that bar as to any of the Communications, and certainly does not do so as to *all* of the Communications.

B.  **Even if the Work-Product Doctrine Applies, the Communications Are Discoverable.**

Fact work product is discoverable if a party shows a "'substantial need for the materials to prepare its case' and that it 'cannot, without undue hardship, obtain their substantial equivalent by other means.'" *Drummond*, 885 F.3d at 1335 (quoting Fed. R. Civ. P. 26(b)(3)(A)). This test, frequently satisfied in False Claims Act litigation, permits the discovery of investigatory information when disclosure is necessary to resolve information asymmetries on relevant topics of discovery. *See, e.g.*, *United States ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 419, 425-26 (D.D.C. 2014) ("Particularly in *qui tam* actions, fairness dictates that both sides have equal access to relevant witness statements developed by law enforcement in prior or parallel criminal investigations."); *Miller*, 2007 WL 779393, at *1 ("no substitute" for FBI file describing interviews conducted in parallel criminal investigation because *qui tam* defendants needed file to, "for example, impeach witnesses with prior inconsistent statements or to learn of potentially exculpatory witnesses"); *Hairston v. ED Nelson Transp.*, 2015 WL 12843867, at *2 (M.D. Fla. Aug. 10, 2015) (compelling disclosure of "investigator's entire case file" where defendants intended to introduce only a portion of surveillance, as full file was "relevant to the accuracy and reliability of the subject surveillance").

While "opinion" work product merits greater protection, the Communications contain no "opinion" work product. Opinion work product consists of "[m]aterial that reflects an *attorney's* mental impressions, conclusions, opinions, or legal theories." *Cox*, 17 F.3d at 1422 (emphasis added) (citing, *inter alia*, *Hickman v. Taylor*, 329 U.S. 495, 511 (1947); *Upjohn Co. v. United States*, 449 U.S. 383, 399 (1981)). No attorneys were involved *at all* in the vast majority of the Communications at issue here. *See* Ex. A at 1-15 (describing Relator's direct exchanges with Agent Garrido). And while Freedom Defendants also seek to compel 21 additional messages involving Relator's counsel (including 16 authored and sent by Relator's counsel), no *government* attorneys were involved in any of those communications. *See id.* at 16 (listing Relator's counsel's government communications). It is thus unlikely that Relator's counsel had occasion to divulge their "mental impressions, conclusions, opinions, or legal theories," *see Cox*, 17 F.3d at 1422, in those communications with a non-attorney agent.[9]

To the extent any of the Communications contain "fact" work product, Freedom Defendants have a "substantial need" for it, and no means to obtain a functional equivalent of the information contained therein. Given that Relator's credibility is a live issue in this litigation, *see* Privilege Log Order at 2; *see also* ECF 312 at 4 (recognizing relevance of "Relator's credibility"), the "contemporaneous" documentation of the government's "parallel [criminal] investigation" into Relator's

---

[9] Regardless, as noted *supra*, n. 5, any "opinion" work product can be redacted prior to production through a process of *in camera* review. *See, e.g.*, *United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*, 2019 U.S. Dist. LEXIS 56510, at *19-21 (D. Minn. Apr. 2, 2019) (endorsing this *in camera* approach).

*qui tam* allegations is a critically relevant source of discovery. *See Fesenmaier*, 2019 U.S. Dist. LEXIS 56510, at *19 (compelling production of "contemporaneous notes and memoranda").

And there is "no substitute" for this "critical" discovery. *See Landis*, 303 F.R.D. at 425-26. That would be the case even if Freedom Defendants could feasibly inquire into the content of the Communications through other means, such as through deposition testimony; contemporaneous communications and recollections are "unique" sources of information with independent value, *see Fesenmaier*, 2019 U.S. Dist. LEXIS 56510, at *19. But the Communications are especially irreplaceable in this case, not least because (1) Relator has refused to testify to the contents of her communications with Agent Garrido, *see supra*, n. 8 and accompanying text; (2) Agent Garrido has thus far refused to sit for a deposition, *see generally* ECF 253; (3) the Communications cannot be obtained from Agent Garrido because they were lost or destroyed around the time this litigation was unsealed in June 2020, *see id.* at 9, 23; and both Relator and Agent Garrido have represented that they do not remember details of their interactions, *see, e.g.*, ECF 298 at 1; ECF 253 at 10, 14, 17-18. Relator has suggested that Freedom Defendants should obtain this critical discovery from Agent Garrido, *see* ECF 298 at 1-2; Agent Garrido and HHS-OIG have suggested that Relator is the proper source, *see id.* The only way to pierce this shell game is by compelling disclosure of the only reasonably available, *objective* evidence surrounding the recordings at the heart of this case, and only Relator has that evidence in her

possession. *C.f. United States ex rel. Cairns v. D.S. Med., L.L.C.*, 2016 WL 7437919, at *6 (E.D. Mo. Dec. 22, 2016) (compelling disclosure of interview reports where the "inevitable lapse of memories renders depositions taken now of the interviewees an unsatisfactory equivalent to the Reports of the earlier interviews").

In *Landis*, the United States District Court for the District of Columbia analyzed nearly this precise issue and compelled disclosure. As the court explained there, witness statements given to criminal investigators "provide the witnesses' initial, unadorned testimony on the key issues; and to reveal how the witnesses' testimony and recollections may have changed over time." 303 F.R.D. at 426. "For those reasons," the memoranda prepared in connection with the investigators' criminal investigations constituted "unique sources of both affirmative evidence and impeachment material for which there is no substitute." *Id.* ("Particularly in *qui tam* actions, fairness dictates that both sides have equal access to relevant witness statements developed by law enforcement in prior or parallel criminal investigations."). Likewise here, "fairness" dictates that the Communications be produced; as in *Landis*, the "civil lawyers litigating this *qui tam* action have received a substantial advantage from having access to the fruits of the prior criminal investigation," and "*both* sides" should have access to these "critical sources of evidence." *Id.* at 425 (emphasis in original).

In *Hairston*, this Court assumed without deciding that certain surveillance footage and other investigative notes were work product, but nonetheless compelled disclosure of all fact work product. 2015 WL 12843867, at *1-2. There, the court

-13-

compelled the production of "information relating to surveillance of Plaintiff by a third-party investigator hired by Defendants." *Id.* at *1. By producing "only … the surveillance footage they intend[ed] to use at trial" and claiming work-product privilege over all the other documents, this court found that "Defendants *created* Plaintiff's substantial need for all of the surveillance by intending to use a portion of it." *Id.* This Court also found the "'substantial need' and no 'substantial equivalent'" tests … satisfied" with respect to the "investigator's entire case file," as the defendants "placed the surveillance in issue and Plaintiff has no other means to obtain the [information in the case file]." *Id.* at *2. The relevance to this litigation is plain—Relator similarly seeks to withhold contemporaneously created documentation germane to surveillance conducted of her counterparty in civil litigation.

And in countless other *qui tam* cases, courts have compelled the disclosure of fact work product in analogous circumstances. *See, e.g.*, *Miller*, 2007 WL 779393, at *1; *Fesenmaier*, 2019 U.S. Dist. LEXIS 56510, at *18; *United States ex rel. Minge v. TECF Aero., Inc.*, 2011 U.S. Dist. LEXIS 53516, at *22-23 (D. Kan. May 18, 2011) ("Communications from the individual Relators to Government agents or attorneys are not shown to be within the protection of Rule 26(b)(3)(A). Even if they are, Defendant has a substantial need for these documents."), *mot. for reconsideration denied*, 2011 U.S. Dist. LEXIS 92243, at *4; *Landis*, 303 F.R.D. at 425-26; *Cairns*, 2016 WL 7437919, at *6 (compelling disclosure of interview reports containing fact work product); *cf. United States v. Sutton*, 2022 WL 3340046, at *6 (D.D.C. Aug. 12, 2022)

(compelling disclosure of interview memoranda arising from criminal investigation); *In re HealthSouth Corp. Sec. Litig.*, 250 F.R.D. 8, 14 (D.D.C. 2008) (same).

Relator's broad and undifferentiated privilege assertions over the Communications fly in the face of this substantial body of precedent. Freedom Defendants need these documents in order to defend against Relator's *qui tam* claims, and Relator's spurious privilege assertions must give way to that substantial need.

\*   \*   \*

Freedom Defendants seek a limited set of communications between Relator and Agent Garrido, concerning an HHS-OIG investigation with critical importance to this dispute. Relator's work-product assertions over the Communications are illegitimate; the communications were created in the context of a criminal investigation that Relator did not direct, and into which she had limited knowledge. But even if the work-product privilege applies, this Court should compel the disclosure of these highly relevant documents, for which no adequate substitute exists. Freedom Defendants respectfully requests that the Court grant this Motion and compel the production of the Communications.

Dated: July 3, 2024

Respectfully submitted,

By: */s/ Scott Drake*
Scott Drake (Lead Counsel)\*
O'MELVENY & MYERS LLP
2801 North Harwood Street
Suite 1600
Dallas, TX 75201
(972) 360-1900
sdrake@omm.com

Benjamin D. Singer*
Amanda M. Santella*
William Buffaloe*
Kelly McDonnell*
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
bsinger@omm.com
asantella@omm.com
wbuffaloe@omm.com
kmcdonnell@omm.com

Catherine Nagle*
O'MELVENY & MYERS LLP
1301 Avenue of the Americas
Suite 1700
New York, NY 10019
(212) 326-2000
cnagle@omm.com

Ginger Boyd
Fla. Bar No. 294550
NELSON MULLINS RILEY & SCARBOROUGH LLP
215 South Monroe Street, Suite 400
Tallahassee, FL 32301
(850) 205-3356
ginger.boyd@nelsonmullins.com

*Counsel for Defendants Freedom Health, Inc. and Optimum Healthcare, Inc.*

*\* admitted pro hac vice*

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Freedom Defendants conferred with counsel for the parties regarding the relief sought in this Motion. Relator opposes. The Provider Defendants—Florida Medical Associates, LLC, d/b/a VIPcare, Physician Partners, LLC, and Anion Technologies, LLC—do not oppose.

By: */s/ Scott Drake*
Scott Drake*

*Counsel for Freedom Defendants*
*\* admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2024, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will provide electronic service to all counsel of record.

By: */s/ Scott Drake*
Scott Drake*

*Counsel for Freedom Defendants*
* *admitted pro hac vice*