## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* DR. CLARISSA ZAFIROV,<br><br>    Plaintiff and Relator,<br><br>v.<br><br>FLORIDA MEDICAL ASSOCIATES,<br>LLC, d/b/a VIPCARE; PHYSICIAN<br>PARTNERS, LLC; ANION<br>TECHNOLOGIES, LLC; FREEDOM<br>HEALTH, INC.; and OPTIMUM<br>HEALTHCARE, INC.;<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)  NO. 8:19-cv-01236-KMM-SPF<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**RELATOR'S RESPONSE IN OPPOSITION TO FREEDOM DEFENDANTS'
MOTION TO COMPEL PRODUCTION IN RESPONSE TO RFP NO. 6**

Defendants Freedom Health, Inc. and Optimum Healthcare, Inc. (collectively "Freedom Defendants" or "Defendants") move to compel production of (1) text messages exchanged between Relator Dr. Clarissa Zafirov and Special Agent Raquel Garrido, the HHS-OIG agent who facilitated Dr. Zafirov's consensual monitoring which was initiated as a result of this case, and (2) Relator's counsels' communications with Special Agent Garrido on which counsel for the United States were not also copied. Freedom Defendants' motion should be denied in its entirety because Defendants seek privileged information and there is no substantial need (nor any need at all) to invade that privilege.

1

## I.    The Requested Communications

Freedom Defendants seek to compel the production of two subsets of documents, both protected by the work product doctrine. All communications Defendants seek were made after Relator retained counsel and initiated this False Claims Act case, and all relate only to the consensual monitoring that was directed by the Government as a result of this case, in which Relator participated at the direction of her counsel.

Defendants lump the subsets together, but they are distinct. First, Defendants seek to compel the production of 419 texts between Dr. Zafirov and Special Agent Garrido, who facilitated the consensual monitoring directed by the United States. The texts[1] were exchanged between Dr. Zafirov and Special Agent Garrido beginning in August 2019.[2] Second, Freedom Defendants seek the production of communications[3] *from Relator's counsel* to Special Agent Garrido. Defendants do not move to compel communications made between Relator's counsel and Special Agent Garrido where counsel for the United States was also included on the communications, despite acknowledging that Special Agent Garrido is a non-attorney agent (ECF No. 318 at 12) of the United States and despite those communications being made for the same purpose as the communications which they do seek – to facilitate the United States' investigation into fraudulent claims submitted to the Medicare Advantage program.

---

[1] Itemized on the privilege log set attached to Defendants' brief as ECF No. 318-1, Items 1-0001 – 1-0419.

[2] This case was filed under seal on May 20, 2019.

[3] Itemized on the privilege log set attached to Defendants' brief as ECF No. 318-1, Items 1-0422, 1-0424-29, 1-0433, and 1-0435-47.

## II.   Argument

As a primary matter, Defendants' motion is predicated on two foundational inaccuracies that must be corrected for the Court to properly consider their request. First, Defendants make no effort at all to satisfy the burden on them as the moving party to establish the relevance of the discovery they have requested. *E-Venture Worldwide, LLC v. Toll Bros., Inc.*, No. 2:22-cv-552-JLB-KCD, 2023 U.S. Dist. LEXIS 118164, at \*3 (M.D. Fla. July 10, 2023) (a party moving to compel discovery "bears the initial burden of proving it is relevant"). Instead, Defendants relegate the acknowledgement of their burden only to a single footnote in which they assert that "Relator has conceded the relevance of the discovery sought." ECF No. 318 at 4, n. 3 (citing to *their own* brief, not a statement by Relator). This is untrue.

Relator does not concede that all text messages or emails effectuating investigative techniques are relevant *to any parties' claim or defense*; they plainly are not.[4] Defendants make the leap to claiming that the information related to the recordings is "critical," but never say specifically *what* makes the information relevant at all, let alone critical, to any claim or defense. Simply saying so is not enough. *Apotex, Inc. v. Mylan Pharms., Inc.*, No. 12-60704-CIV, 2013 U.S. Dist. LEXIS 186937, at \*19 (S.D.

---

[4] Defendants imply that the inclusion of the communications on Relator's privilege log automatically renders them relevant. This Court compelled Relator to produce an itemized privilege of all withheld communications; Relator's inclusion of all such communications was responsive to that order. ECF No. 284. The existence of text messages between Relator and Special Agent Garrido, for example, have long been known to the parties based on the production of the consensual monitoring recordings, so leaving such communications off the privilege log based on Relator's assertion of the lack of relevance would have exposed Relator to potential sanctions for failing to comply with the Court's order. Thus, Relator logged the withheld communications not as a concession of relevance but in order to ensure compliance with the Court's order.

Fla. June 4, 2013) ("[S]peculation does not establish a minimal showing of relevance and provides no basis to compel the production of the [requested documents]"). Defendants' failure to make any effort to satisfy this burden is outcome-determinative to their motion with respect to communications related to the investigative process. *Am. Shaman Franchise Sys., LLC v. O'Neal*, No. 8:20-cv-936-KKM-AAS, 2023 U.S. Dist. LEXIS 119928, at *7 (M.D. Fla. July 12, 2023).

Second, in arguing that Relator cannot assert privilege on behalf of the Government, Defendants suggest to the Court that the Government has not itself asserted privilege over the sought-after communications. This is also untrue. Defendants made *Touhy* requests to the Government that encompass the communications sought in the instant motion, and the United States asserted privilege over the same. *See* ECF No. 253-9 (HHS's response to Touhy subpoena from Freedom Defendants, finding no non-privileged documents between Special Agent Garrido and Relator's counsel with respect to the investigative process or in Agent Garrido's email box).[5] Similarly, in response to Freedom's *Touhy* request to the United States Attorney's Office for the Middle District of Florida (which, by Freedom's broad definition, included both the civil and criminal divisions), the USAO responded:

> In addition, to the extent you seek non-public documents and information relating to the details of the USAO-MDFL's investigation and the internal or intra-governmental deliberations (such as attorney notes or communications)[,]these materials fall well within the

---

[5] As evidenced in the HHS letter, OIG could not review Garrido's text messages because they no longer had her phone from that period of time. Accordingly, HHS stated only that no responsive records were found at all; it does not speak to whether any such communications would have been privileged had they been located.

> protections afforded under the attorney work product doctrine and the attorney-client, deliberative process, and law enforcement investigatory files privileges.

Thus, where Freedom Defendants have sought the same records from the United States and the United States has objected and refused production based on privilege, using this motion as an end-run to obtain the same records from Relator is improper and disingenuous. Such gamesmanship should not be permitted in this Court and is itself grounds to deny Defendants' motion.

### A. The Communications are Protected Work Product.

Even if Defendants' motion were appropriately candid *and* included information sufficient to satisfy Defendants' burden, it should nonetheless be denied in full because the sought-after communications are protected by the work-product doctrine. "[T]he work-product doctrine protects from disclosure 'documents and tangible things that are prepared in anticipation of litigation or for trial *by* or for *another party* or its representative." *Christoff v. Inglese,* No. 2:20-cv-546, 2022 U.S. Dist. LEXIS 233506, at *5-6 (M.D. Fla. Nov. 1, 2022) (emphasis in original), *citing* Fed. R. Civ. P. 26(b)(3)(A). "It is equally clear that documents prepared by counsel, or parties or their representatives…are protected." *Id.* at *6 (citations omitted).

Work product can be divided into two categories. Fact work product includes "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative," while opinion work product includes "material that reflects the [attorney's] mental impressions, conclusions, opinions, or legal theories." *Primeaux v. Progressive Am. Ins. Co.*, No. 2:20-cv-941, 2022 U.S. Dist.

LEXIS 240353, at *2 (M.D. Fla. Nov. 15, 2022) (citations omitted). To access another party's protected fact work product, the moving party must show there is a "substantial need" that it cannot satisfy without "undue hardship." *Id.* As Defendants' recognize, *opinion* work product "enjoys a nearly absolute immunity" from discovery. *Id., citing Cox v. Adm'r U.S. Steel & Carnegie,* 17 F. 3d 1386, 1422 (11th Cir. 1994). Here, Defendants seek both fact and opinion work product, which are intertwined.

With respect to the text communications between Relator and Special Agent Garrido, the content of the texts on their face largely (though not exclusively) contain fact work product – the tangible communications made in furtherance of the Government's investigative process through consensual monitoring. But the decisions that those texts reflect are opinion work product: the pace of the investigation, which conversations to record, what means to use to record them, what witnesses and facts are focused on by either Relator or the Government in different time frames, and similar such decisions. For example, a text message could both reflect a decision as to which recording device to employ (fact work product) and which witnesses the United States was more or less interested in recording (opinion work product).

It matters not that the communications did not include counsel for the United States: Defendants do not – and cannot – assert that Special Agent Garrido was operating in a vacuum separate from the attorneys responsible for the case. Indeed, Freedom Defendants recognize Special Agent Garrido to be a "non-attorney agent"

of the governments' attorneys (ECF No. 318 at 11).[6] Defendants' assertion that work product protection is inapplicable to communications made by Special Agent Garrido is improperly narrow – Special Agent Garrido was conducting the investigation as directed by counsel for the United States, not on her own volition. Thus, her communications must enjoy work product protection. *Christoff*, 2022 U.S. Dist. LEXIS at *5-*6.[7]

## B. The Communications Were Prepared in Anticipation of Litigation and the Common Interest Doctrine Requires the Protection of these Communications.

Defendants also challenge that the work product doctrine applies because "the communications were not prepared in anticipation of this litigation." ECF No. 318 at 6. As even Defendants' arguments confirm, this is factually incorrect: The investigation into both civil *and* criminal violations were conducted in parallel (*id.* at 7, citing ECF No. 10 at 3-4), as is a very common and resource-maximizing approach taken by the United States in investigating allegations brought forth by relators in False Claims Act cases. And although the protection would have attached just from the anticipation that the communications with Special Agent Garrido *could* further

---

[6] It is important to note that Defendants used the term "agent" with a lower case "a" consistent with how the term "agent" is used in the elements of the work product doctrine, not "Agent" with a capital "A" as Defendants used when referring to Special Agent Garrido by her professional title.

[7] Defendants' argument that work product cannot be invoked by the United States because the United States is not a party to this case is a red herring. The United States is *always* the real-party-in-interest in a False Claims Act case. In compelling the production of Relator's itemized privilege log, this Court relied on multiple cases that have applied the work product doctrine to communications between relators and the Government. ECF No. 284 at 9-10; *see also United States ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, at (C.D. Cal. Feb. 5, 2003) (discussing at length the application of work product privilege to communications between Relator and the government).

7

Relator's *qui tam* claims, it is notable that they actually have: The recordings made as a result of Relator's consensual monitoring were produced by the United States and are in evidence in *this* litigation.[8] But moreover, work product protection is not confined solely to the case in which it is exercised. Rather, "[d]ocuments which were produced in anticipation of litigating one case remain protected in a separate case, at least where the cases are closely related." *Shipes v. BIC Corp.*, 154 F.R.D. 301, 305 (M.D. Ga. Mar. 11, 1994); *see also Universal City Development Partners, Ltd. v. Ride & Show Engineering, Inc.,* 230 F.R.D. 688, 691 (M.D. Fla. 2005) ("Although the United States Court of Appeals for the Eleventh Circuit has not addressed the issue, the Court finds that the above language from [*F.T.C. v. Grolier, Inc.*, 462 U.S. 19, 103 S. Ct. 2209 (1983)] provides a strong basis to conclude that Rule 26(b)(3) applies to subsequent litigation").

Accordingly, work product protection attaches to the communications requested by Defendants because they were "prepared in anticipation of litigation or for trial by or for another party or its representative." *Christoff*, 2022 U.S. Dist. LEXIS 233506, at *5-6; *United States ex rel. Branch Consultants, LLC v. Allstate Ins. Co.*, No. 06-4091-SSV-SS, 2010 U.S. Dist. LEXIS 162399, at *15-16 (E.D. La. May 12, 2010)(recognizing communications between relator and the government as work

---

[8] Relator's deposition testimony actually supports, rather than refutes, the applicability of the work product doctrine. Relator never said that she didn't know if the communications and related recordings were made in anticipation of litigation; every question asked of Relator and every response that she gave plainly related to litigation and the allegations that she brought to the United States. Relator said she did not know Special Agent Garrido's intentions with respect to criminal (as opposed to civil) charges, thus underscoring how closely the two investigations were handled. ECF No. 384-2, Exhibit B, at transcript pages 118:18-119:4.

product, and finding burden for disclosure of post-suit communications was not satisfied); *United States ex rel. Everest Principals, LLC v. Abbott Labs.*, No. , 2023 U.S. Dist. LEXIS 207948, at *11-13 (S.D. Cal. Nov. 20, 2023) ("[T]he subsequent communications between the Relator and the Government while litigation is ongoing are likewise protected by the work product doctrine.").

The need for the type of candor that can only be obtained through the protections afforded by the work product doctrine, the attorney/client privilege, and the common interest doctrine is the reason that courts routinely recognize and protect a "common legal interest" between a relator and agents of the United States in False Claims Act cases. The common interest arises when there is "a joint effort with respect to a common legal interest..." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815-16 (7th Cir. 2007). Here, the False Claims Act itself establishes the community of interest. 31 U.S.C. § 3730 (providing for the sharing of information in advance of the complaint, and providing co-party status to Relator for claims brought on behalf of the United States). Indeed, "the unique relationship of the government and the relator in qui tam cases requires the sharing of the work product generated between the relator and his attorney with the government in order for the case to proceed." *United States ex rel. Purcell v. MWI,* 209 F.R.D. 21, 27 (D.D.C. 2002); *Ryan Uehling Millennium Labs., Inc. v. Allied World Assur. Co*, 2014 U.S. Dist. LEXIS, 54284,*18 (E.D. Ca 2014), *citing, among others, United States ex rel. [Redacted] v. [Redacted]*, 209 F.R.D. 475, 479 & n. 3 (D. Utah 2001) (holding that the substance of discussions between the government and the relators incident to the government's investigation into the relator's claims were

9

protected work product because "[a]t this point in the litigation," the government and relators "share a community of interest," even though their interests subsequently might diverge). Within that framework, both subsets of the communications Defendants seek fall squarely within the scope of the work product doctrine.

### C. Defendants Have Shown No Substantial Need for the Messages and Have Made No Showing that Any Need Cannot be Met in Other Ways.

As to fact work product, Defendants could reach a limited subset comprised only of documents containing fact work product if, "(1) they are otherwise discoverable under Rule 26(b)(1); and (2) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Rule 26(b)(3)(A)(i)-(ii), Fed. R. Civ. P.

As set forth above, Defendants have not shown that all of the communications they seek are relevant and thus otherwise discoverable under Rule 26, so Defendants do not and cannot meet the first prong. As to the second, Defendants fail to meet their burden to show that protected content should nevertheless be revealed. *Adp v. Ultimate Software Group*, No. 17-cv-6127-MIDDLEBROOKS, 2017 U.S. Dist. LEXIS 231044, at \*5 (S.D. Fla. Dec. 15, 2017), *quoting Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985) ("The burden of establishing that a document is work product is on the party who asserts the claim, but the burden of showing that the materials that constitute work product should nonetheless be disclosed is on the party who seeks their production").

Defendants fail to identify a substantial need for those communications to

prepare their case, and they fail to show that they cannot obtain any substantially-needed information by any other source.[9] The sole basis for which Defendants claim a "substantial need" for the requested communications is to assess Relator's credibility. But, the burden is still on the Defendants to connect the sought-after communications to that theoretical "substantial need;" Defendants have made no effort to do so for either subset of the records which they seek.

With respect to Relator's texts with Special Agent Garrido, Defendants assert that information about the contents is "critical," but they never state *why*, and (likely because it would be preposterous), they never assert that they have no way other than the receipt of protected information to assess Relator's credibility.

Neither the *Landis* nor *Fesenmaier* cases on which Defendants rely is apposite: In the context of criminal investigative reports, these courts directly connected prior contemporaneous notes and memoranda to the substantial need for both sides to have equal access to "witnesses' initial, unadorned testimony." *United States ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 419, 425-26 (D.D.C. Sept. 30, 2014); *United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*, No. 13-cv-3003, 2019 U.S. Dist. LEXIS 56510, at *18-19 (D. Minn. Apr. 2, 2019). And while Defendants cite an inapposite

---

[9] Defendants' assertion that disclosure of fact work product is frequently found in False Claims Act litigation disregards the material differences in the sorts of records sought in this motion and the sorts of records compelled for production in the cases upon which they rely (i.e. witness statements, FBI file describing interviews of witnesses, and an investigators' case file). *See* ECF No. 318 at 10. The equivalent to those cases would be if Relator was in possession of the recordings created by the consensual monitoring but refused to produce those based on an assertion of privilege. That is not the case here: all parties are in possession of the comparable critical evidence and have been since they were produced by the United States more than a year ago.

decision in *Fesenmaier*, they do not point the Court to a more on-point decision in that same matter, where the defendants sought communications between the relator and the government's agent. In that instance, the court found that communications made *prior* to the relator's prefiling disclosure fell outside the applicable protections, but communications—like the ones sought here—made *after* the prefiling disclosure were protected from disclosure to the defendants. *United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*, No. 13-cv-3003, 2019 U.S. Dist. LEXIS 217621, at *4 (D. Minn. Dec. 17, 2019). Here, there simply are no communications that predate the prefiling disclosure, because the relationship between Relator and the Government's agent arose directly from the filing of the complaint in this matter and the Government's investigations of the allegations made therein.

Defendants also rely on *Hairston v. Ed Nelson Transp.*, No. 3:13-cv-1457-J-32JBT, 2015 U.S. Dist. LEXIS 187673, at *3-5 (M.D. Fla. Aug. 10, 2015), but that too is not analogous to the communications requested in Defendants' motion. There, the court compelled the production of all surveillance recordings made by investigators and additional information "relevant to the accuracy and reliability of the subject surveillance." *Id.* at *5. But here, Defendants have not challenged the completeness of the Government's production of recordings, nor the accuracy or reliability of the recordings. And further, each witness captured on the recordings who reviewed the content confirmed the accuracy of the same. *See* Composite of Deposition Testimony of Emily Gallman, Alex Lavin and Sangeeta Hans, attached hereto as Composite Ex.

A.[10] *Hairston* does not speak at all to communications between a confidential source and a government agent, nor to the "substantial need" for one party to have access to privileged records solely to address a witness' credibility.

Moreover, Defendants are certainly capable of assessing Relator's credibility without reliance on any of the protected communications. For example, Defendants already sought and received access to nonprivileged portions of Relator's agreement with Dr. George Mansour, which they asserted would speak to Relator's credibility. ECF No. 280 at 6 ("First, the agreement is important to assessing Relator's credibility"). Second, if Defendants intend to challenge Relator's credibility by comparing statements on the recordings to other statements made by Relator, it is the recordings themselves that are critical, not the communications that facilitated them. If Defendants contemplate some other way to assess Relator's credibility using the communications rather than the recordings, that is not clear from the motion despite the burden on Defendants to clearly articulate the need. While Defendants castigate Relator and the United States' rejection of their efforts to get at the communications between Relator and Special Agent Garrido as a "shell game," the truth is simply that Defendants have been chasing information to which they are not entitled and which does not bear on any claim or defense in this case. Neither Relator nor the United States has agreed to produce what Defendants seek because Defendants are not

---

[10] The relevant testimony from Emily Gallman is at Gallman 339:5-340:20. The relevant testimony from Alex Lavin is at Lavin 101:23-103:22. The relevant testimony from Sangeeta Hans is at Hans 36:10-20.

entitled to it.

Finally, with respect to the communications between Relator's counsel and Special Agent Garrido, Defendants' complete failure to satisfy their burden as to why the privilege should be pierced is even more stark. Defendants make *no* mention of any "substantial need" – or any need at all – for these communications. There is no conceivable way in which communications between Relator's counsel and Special Agent Garrido would provide information critical for Defendants to assess Relator's credibility, and Defendants make no effort to connect those dots. Having failed to offer any "substantial need," there is no need for any subsequent evaluation of whether an articulated need could be met by any other means. Rather, for any communications between Relator's counsel and Special Agent Garrido that the court determines to contain fact work product, the work product doctrine requires that they remain protected.

### D. No Justification Exists to Reveal Opinion Work Product

As to opinion work product, no exceptions apply, and Defendants are not entitled to production of any records that contain opinion work product. Rule 26(b)(3)(B); *Cox*, 17 F.3d at 1422. While "opinion work product" is often described by the categories set forth in Fed. R. Civ. P. 26(b)(3)(B) – "mental impressions, conclusions, opinions, or legal theories" – the terms have more specific meanings in application. For example, "opinion work product includes such items as an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and the interferences he draws from interviews of witnesses."

*FTC v. Vylah Tec LLC*, No. 2:17-cv-228-FtM-99MRM, 2018 U.S. Dist. LEXIS 223374, at *13 (M.D. Fla. Nov. 26, 2018), *quoting In re Bilzerian*, 258 B.R. 846, 849 (Bankr. MD. Fla. Jan. 29, 2001). Opinion work product includes "written communications revealing an attorney's litigation strategy." *Twin Pines Coal Co. v. Colonial Pipeline Co.*, No. 2:09-cv-1403-SLB, 2011 U.S. Dist. LEXIS 167547, at *25 (N.D. Ala. June 10, 2011). As set forth above, the communications sought by Defendants could reveal litigation strategy or other intentions for litigation. Such information can be ascertained not only on the face of the communications but also from contextual information of other communications. For example, the dates on which communications occurred could reveal the pace of the investigation or the events in the case occurring on or around those dates. As such, the opinion work product sought by Defendants is squarely protected by the work product doctrine and must remain so.

Communications in which Relator's counsel conveyed information directly to Special Agent Garrido constitute opinion work product for the additional reason that Relator's counsels' mental impressions, conclusions, opinions or legal theories are apparent in both the selection of particular information to be sent to the United States, as well as any commentary or analysis included. *E.g. United States ex rel. Calilung v. Ormat Indus.*, No. 3:14-cv-00325-RCJ-VPC, 2015 U.S. Dist. LEXIS 171802, at *11 (D. Nev. Dec. 23, 2015) ("[T]he court observes that the culling of certain documents to attach to the disclosure statements – like the selection of facts discussed therein – was done in anticipation of litigation, and likely reflects some analysis and strategizing by Relator's counsel"). Further, Defendants inappropriately and summarily reject the

15

notion that Relator's counsel – clearly attorneys – would share their mental impressions with an agent of the United States when the Relator was interacting with that agent at the direction of counsel and in reliance on advice of her counsel. Such an assertion is wholly inconsistent with the relationship between relators and the entire team of attorneys and agents of the United States who work in coordination to prosecute False Claims Act cases, and cannot serve as a basis to invade the protection afforded to opinion work product.

## III. *In Camera* Review

Courts, including this one, often find it beneficial to review the underlying documents at issue in a motion to compel *in camera* to fully assess the relevance and privileges being asserted. *See* ECF No. 312 at 1 (addressing the Zafirov-Mansour Agreement, "At the hearing, the Court ordered Relator to produce the disputed document to the Court for *in camera* review").

The Middle District of Florida does not permit a party to submit a document for *in camera* review absent prior court permission. *See* M.D. Fla. Civil Discovery Handbook, Sec. 6(B)(3) ("Documents or other privileged information should not be furnished to the Court for in camera review without prior court approval"). Relator believes that an *in camera* review may be beneficial with respect to the communications between Relator and Special Agent Garrido to aid in this Court's review of the foregoing arguments. Because the communications between Relator's counsel and Special Agent Garrido are privileged irrespective of the content and because Defendants have made no effort to articulate a need for those communications,

16

Relator believes an *in camera* review of those documents to be unnecessary. However, Relator will, of course, produce any records for *in camera* inspection at the request of the Court.

## IV.   Conclusion

For the reasons set forth herein, Relator Dr. Clarissa Zafirov respectfully requests that the Court deny Defendants' motion in total as the communications contain or would disclose opinion work product which Defendants are not entitled to review. In the alternative, for any communications which the Court finds to contain fact work product, Relator respectfully requests that the Court deny Defendants' motion for failure to satisfy their burden to articulate a substantial need for the documents that cannot be satisfied with any less burdensome alternatives.

Respectfully submitted, this 24th day of July 2024,

/s/ Jillian L. Estes
Jillian L. Estes (Fla Bar No. 0055774)
Jonathan M. Lischak*
Chandra A. Napora*
Jennifer M. Verkamp*
Morgan Verkamp LLC
4410 Carver Woods Dr., Suite 200
Cincinnati, Ohio 45242
Telephone: (513) 651-4400
Fax: (513) 651-4405
Email: jillian.estes@morganverkamp.com
jonathan.lischak@morganverkamp.com

Adam T. Rabin (Fla. Bar No. 985635)
Havan M. Clark (Fla. Bar No. 1026390)
RABIN KAMMERER JOHNSON
1601 Forum Place, Suite 201
West Palm Beach, FL 33401
Phone: (561) 659-7878

Fax: (561) 242-4848
arabin@rkjlawgroup.com
hclark@rkjlawgroup.com
e-filing@rkjlawgroup.com

**Counsel for Relator Dr. Clarissa Zafirov**

\* admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I, Jillian Estes, hereby certify that the foregoing was served on July 24, 2024, to all parties of record via the CM/ECF Electronic Filing System.

/s/ Jillian L. Estes
Jillian L. Estes (Fla Bar No. 0055774)