# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* DR. CLARISSA ZAFIROV,  Plaintiff and Relator,  v.  FLORIDA MEDICAL ASSOCIATES, LLC, d/b/a VIPCARE; PHYSICIAN PARTNERS, LLC; ANION TECHNOLOGIES, LLC; FREEDOM HEALTH, INC.; and OPTIMUM HEALTHCARE, INC.;  Defendants. | ) ) ) ) ) ) ) NO. 8:19-cv-01236-KMM-SPF ) ) ) ) ) ) ) ) ) ) |

## RELATOR'S RESPONSE IN OPPOSITION TO FREEDOM DEFENDANTS' MOTION TO REDACT TRANSCRIPT

Defendants Freedom Health, Inc. and Optimum Healthcare, Inc. (collectively "Freedom Defendants" or "Defendants") move to redact selected portions of the transcript from the discovery hearing held before this Court on June 18, 2024. ECF No. 322. Relator opposes the redactions because they are overly broad and seek to redact portions of the transcript which do not contain confidential or commercially sensitive information. Rather, the sections proposed for redaction are based on Freedom's statutory obligations, obligations under Freedom's public Corporate Integrity Agreement, counsel arguments, or simply do not contain any sensitive information. For these reasons, Relator urges the Court to deny Defendants' motion in its entirety.

I.  **Argument.**

Although conspicuously absent from Freedom Defendants' motion, all discussions of redacting or sealing any portion of a public record must begin with the presumption of public access. *Ward Edwards, Inc. v. Devlin Grp., Inc.*, No. 3:16-MC-60-J-32PDB, 2018 U.S. Dist. LEXIS 248244, at *4 (M.D. Fla. May 31, 2018), *citing Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1235 (11th Cir. 2013) ("A court has discretion to determine which parts of the record should be sealed, but its discretion is guided by the presumption of public access"). "[I]f a party seeks to seal documents, the court must consider the nature and character of the information in them and balance the public's right of access against a party's interest in confidentiality." *Ward Edwards*, 2018 U.S. Dist. LEXIS 248244 at *4-5, *citing Perez-Guerrero*, 717 F.3d at 1235. Generalized assertions of harm are insufficient to overcome the presumption of public access. *St. Johns Vein Ctr., Inc. v. Streamlinemd, LLC*, No. 3:17-CV-892-J-34PDB, 2017 U.S. Dist. LEXIS 224758, at *6 (M.D. Fla. Nov. 3, 2017).

A transcript of a public hearing is plainly a public record (as opposed to a discovery document irrelevant to the underlying issues) such that the presumption of public access applies. *Ward Edwards, Inc.*, 2018 U.S. Dist. LEXIS 248244, at *4, *citing F.T.C. v. AbbVie Prods., LLC*, 713 F.3d 54, 63-64 (11th Cir. 2013). Accordingly, motions to redact portions of hearing transcripts are regarded with the same standard as sealing filed documents. *Id.* Redactions *can* be viewed as a less drastic alternative to sealing a document in its entirety, but still, "[b]efore the Court can order redaction of the record,

it must satisfy itself that the information the parties wish to redact is actually confidential." *Conair Corp. v. Barbar, Inc.*, No. 6:14-cv-831-Orl-31TBS, 2014 U.S. Dist. LEXIS 192375, at *2 (M.D. Fla. July 16, 2014). In this case, the Stipulated Protective Order agreed upon by the Parties and entered by the Court (ECF No. 140-1) defines "Confidential – Business Information" using the terminology set forth in Rule 26(c)(1)(G), which includes "a trade secret or other confidential research, development, or commercial information."[1] Courts should not redact information that only makes "vague reference" to confidential information or where the arguments do "little more than describe the general nature" of confidential exhibits. *Conair*, 2014 U.S. Dist. LEXIS 192375, at *3; *Ward Edwards*, 2018 U.S. Dist. LEXIS 248244, at *7.

## II.    Transcript Excerpts.

Defendants seek to redact 31 portions of the public hearing transcript. During meet-and-confer preceding this motion, Relator agreed that three of the identified sections contained information – in whole or in part – that may be considered confidential and therefore did not oppose redaction at this point in the proceedings.[2]

---

[1] The Stipulated Protective Order also includes definitions of material that is confidential as containing protected health information ("PHI") or which requires additional levels of protection such as to warrant "attorneys' eyes only" protection. ECF No. 140-1 at 3-5. None of the language identified for redaction appears to involve those levels of protection.

[2] Even if the Court determines that any of the information requested by Freedom Defendants is appropriate for redaction in the hearing transcript, that does not necessarily mean that the information, or documents which reference the information, would be appropriately sealed in trial or other parts of the case. *Spire, Inc. v. Cellular South, Inc.*, No. 17-00266-KD-N, 2017 U.S. Dist. LEXIS 228562, at *11 (S.D. Ala. Dec. 22, 2017).

However, regarding two of those sections, Freedom Defendants included *in their public, unredacted motion* the very numbers they seek to redact. For example, as Freedom lists in their motion, Relator did not oppose the request to redact "29:5, starting at 3,342" but that number is no longer private now that Freedom Defendants have included it on the public record. Likewise, Relator did not oppose "55 to 60" in Line 27:10, but then Defendants included those specific numbers in their public motion (instead of, for example, the position of the words in the sentence as the Court has done in identifying words to be redacted (ECF No. 312 at 7)). Because Freedom Defendants have now made public the information they informed Relator they would seek to redact and have not taken measures to protect these numbers from public view, Relator retracts her non-opposition and opposes redacting those portions of the transcript as well. *Conair*, 2014 U.S. Dist. LEXIS 192375, at *2-3 (denying redaction of information where party did "not place much value in the secrecy of this information").

Freedom Defendants generally categorize remaining portions of the transcript as: (1) Freedom Defendants' Auditing Processes, or (2) Freedom Defendants' Contract with Provider Defendants. ECF No. 322 at 5-6. Relator addresses each of those in turn.

**A. Documents Described as "Freedom Defendants' Auditing Processes."**

Freedom Defendants broadly over-use the category of "Freedom Defendants' Auditing Processes" and seek to redact information that is either already in the public record or does not contain information which is actually confidential. For example, the first selection that Freedom Defendants seek to redact is Lines 26:5-26:6. ECF No.

4

322 at 5. However, that portion of the transcript says nothing of *Freedom Defendants'* auditing processes; it speaks only to the *United States'* auditing process – a process which is widely publicized and with which Freedom Defendants are obligated to comply as a Medicare Advantage Organization. *See*, *e.g.* HHS-Operated Risk Adjustment Data Validation (HHS-RADV): Audit Sample Reports, June 22, 2016 (now retired), published by United States Centers for Medicare and Medicaid Services ("CMS"), at slide 37 (describing "Expected Sample Size and Allocation of Enrollees" as "200 enrollees selected for large insurers (4,000+)");[3] 2019 Benefit Year Introduction of HHS-RADV and Initial Validation Audit (IVA) Entity Participation, March 4, 2020, published by CMS, at slide 27 ("CMS selects up to 200 enrollees per issuer in each state in which the issuer offers RA covered plan").[4] Accordingly, it is inconceivable that disclosing government standards that are already publicly available could present Freedom Defendants *any* competitive harm as insight into Freedom Defendants' auditing process, let alone significant enough harm as to overcome the presumption of public access to court records.

The second selections that Freedom Defendants seek to redact is equally inappropriate for redaction. Here again, Freedom Defendants assert that Line 26:13, starting at "as is," through Line 26:23 relate to "Freedom Defendants' Auditing

---

[3] https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/HRADV_slides_062216_5CR_032619_2.pdf

[4] https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/HRADV_IntrotoRADV_030420_5CR_032720_5.pdf

Processes." ECF No. 322 at 5. Those lines relate to the auditing process set forth in a Corporate Integrity Agreement ("CIA") implemented by the United States, which was public when it was entered into and posted on CMS's website.[5] And, Freedom Defendants themselves posted the *entire* CIA to PACER *in this case* nearly four years ago. *See* ECF No. 42-4. That CIA expressly sets forth the auditing processes that Freedom Defendants now seek to redact. *Id.* at 38, Appendix C, "Risk Adjustment Review." Thus, like the RADV audit, it is inconceivable that Freedom would be at risk of a competitive harm by public disclosure of already-public information which Freedom Defendants agreed to in relation to a public settlement with the United States (ECF No. 42-3).[6] *Conair*, 2014 U.S. Dist. LEXIS 192375, at *3 (denying motion to seal where the party's "voluntary disclosure shows that they do not regard this information as secret."). Relatedly, Freedom presents no arguments as to what competitive harm would arise from making public information about the independent monitor required by the CIA.

The remaining sections that Freedom Defendants seek to redact as part of the "Audit Process" are similar. For example, the general existence of a Quality Improvement Program ("QIP") or vague statements that it is a process by which Freedom Defendants audit enrollee charts is not proprietary information; to the contrary, it is a process statutorily mandated for every Medicare Advantage

---

[5] https://oig.hhs.gov/compliance/corporate-integrity-agreements/closed-cias.asp#f

[6] The CMS-required CIA is the subject of multiple sections that Freedom seeks to redact. All are inappropriate for redaction. *See*, e.g, Lines 43:1-9, 43:13-18, 43:22-24.

Organization. *See* 42 C.F.R. § 422.152 (titled "Quality improvement program" and stating as a "general rule" that "[e]ach MA organization that offers one or more MA plan must have, for each plan, an ongoing quality improvement program that meets applicable requirements of this section for the services it furnishes to its MA enrollees"). Yet, Freedom Defendants still seek to redact virtually every mention of this required program, even lines which contain nothing remotely confidential, like Line 73:17. The only support Freedom Defendants offer for their attempt to seal these transcript portions from the public is through reference to declarations from prior filings. Those declarations may speak to how certain business practices are proprietary and confidential, but Freedom Defendants do not tie the representations in those declarations to any of the language they seek to redact. Generalized, unmoored assertions are insufficient to justify shielding from the public information that carries with it the presumption of access.

### B. Documents Described as "Freedom Defendants' Contracts with Provider Defendants."

The other category of documents which Freedom Defendants seek to redact is "Freedom Defendants' Contract with Provider Defendants." ECF No. 322 at 5-6. Here again, beyond generalities, Freedom Defendants do not specify *how* any of the information discussed in the hearing transcript is so confidential as to present competitive risk of corporate harm or disclosure of trade secrets.

First, much of what Freedom Defendants seek to redact is counsel argument as to how contract terms between Freedom Defendants and providers *could* be legally

7

interpreted, though significantly, the contract language itself is not quoted or referenced in the transcript. For example, in Lines 46:5-9, Freedom Defendants seek to redact Ms. Santella's speculation as to what position a provider *might* take with respect to her contractual relationship with Freedom; not how any specific provider *is* actually executing their relationship with Freedom (or, more importantly, why that would present a commercial threat to Freedom if disclosed). Likewise, Lines 46:12-46:17 are Ms. Santella's response to a question presented by the Court as to how a contract term should (according to Freedom Defendants) be interpreted for purposes of litigation, not a representation of Freedom's actual internal corporate information or confidential business practices. Defendants have simply presented no good cause to overcome the presumption of public access for these sorts of generic, non-confidential statements. *Ward Edwards*, 2018 U.S. Dist. LEXIS 248244, at *7 (denying motion to redact where arguments did "little more than describe the general nature of the exhibits" and where moving party's reason for requesting seal (embarrassment) was "too conclusory to support the necessity of sealing or overcome the presumption of public access").

    Second, even the portion of Ms. Santella's arguments where she does directly state (or paraphrase) the contract obligations (Lines 47:11-17) does not disclose confidential, proprietary information. CMS directs that MAOs, like Freedom Defendants, "must obtain the risk adjustment data required by CMS from the provider, supplier, physician, or other practitioner that furnished the item or service." 422 C.F.R. § 422.310(d)(3); also 42 C.F.R. § 422.310(e) ("MA organizations and their

8

providers and practitioners are required to submit a sample of medical records for the validation of risk adjustment data, as required by CMS"). Thus, the dispute as to the scope of the contractual provisions is at the heart of the arguments at hand, *not* at the heart of any unique, confidential contractual arrangement between Freedom Defendants and their providers.

### C. Specific Numbers Disclosed in Arguments.

Finally, the only arguably proprietary information included in the audit portions of the transcript Freedom Defendants' seek to redact *and* which Freedom Defendants did not already disclose in their motion relates to the specific number of enrollees audited for the QIP. Though, in an abundance of caution, Relator did not oppose those specifics being redacted, Relator notes that the burden is still on Freedom Defendants to provide a detailed explanation as to why the presumption of public access should be overcome, irrespective of party agreement. *Jackson v. Deen*, No. CV412-139, 2013 U.S. Dist. LEXIS 65814, at *4 n.6 (S.D. Ga. May 8, 2013), *quoting Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086 (JMF), 2012 U.S. Dist. LEXIS 177525, at *8 (S.D.N.Y. Dec. 3, 2012) ("The consent of the parties is not a valid basis to justify sealing, as the rights involved are the rights of the public").

Nothing in Freedom Defendants' motion, nor in any of the prior declarations which it references, addresses what sort of competitive harm would arise from a competitor knowing the number of charts audited in a period of time. The hearing transcript does not speak to any way in which those members were selected for audit, the results of any audits, or corrective measures (if any) taken in response to an audit.

9

Defendants do not represent in their motion that the specific figures they seek to redact (or anything else, for that matter) fall within the language defined by the Protective Order, though that would be non-dispositive even if the figures met that standard. *Contra Local Access, LLC v. Peerless Network, Inc.*, No. 6:14-cv-399-Orl-40TBS, 2015 U.S. Dist. LEXIS 157235, at *3-4 (M.D. Fla. Nov. 20, 2015) (sealing documents disclosing confidential financial information, but expressly noting that, "the parties' agreement to seal court documents 'is immaterial' to the public's right of access"), *quoting Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992). Where, as here, testimony is presented solely as to underlying numbers but without reference to specific sealed records, good cause is not established to redact that information from a public transcript. *Spire*, 2017 U.S. Dist. LEXIS 228562, at *11 (denying motion to redact reference to number of corporations' customers without reference to any sealed documents). Further, the fact that Freedom Defendants failed to protect the numbers referenced in Lines 27:10 and 29:5 further supports that this is not the type of information which must be maintained as a carefully-guarded secret in order to protect Freedom Defendants' business interests.

### III. Conclusion.

For the reasons set forth herein, Relator Dr. Clarissa Zafirov respectfully requests that the Court deny Defendants' motion to redact portions of the June 18, 2024 hearing transcript for failure to provide good cause to overcome the presumption of public access to court records.

Respectfully submitted this 6th day of August 2024,

/s/ Jillian L. Estes
Jillian L. Estes (Fla Bar No. 0055774)
Jonathan M. Lischak*
Chandra A. Napora*
Jennifer M. Verkamp*
Morgan Verkamp LLC
4410 Carver Woods Dr., Suite 200
Cincinnati, Ohio 45242
Telephone: (513) 651-4400
Fax: (513) 651-4405
Email: jillian.estes@morganverkamp.com
jonathan.lischak@morganverkamp.com
chandra.napora@morganverkamp.com
jennifer.verkamp@morganverkamp.com

Adam T. Rabin (Fla. Bar No. 985635)
Havan M. Clark (Fla. Bar No. 1026390)
RABIN KAMMERER JOHNSON
1601 Forum Place, Suite 201
West Palm Beach, FL 33401
Phone: (561) 659-7878
Fax: (561) 242-4848
arabin@rkjlawgroup.com
hclark@rkjlawgroup.com
e-filing@rkjlawgroup.com

*Counsel for Relator Dr. Clarissa Zafirov*

* admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I, Jillian Estes, hereby certify that the foregoing was served on August 6, 2024, to all parties of record via the CM/ECF Electronic Filing System.

/s/ Jillian L. Estes
Jillian L. Estes (Fla Bar No. 0055774)

11