1                    **UNITED STATES DISTRICT COURT**
                     **MIDDLE DISTRICT OF FLORIDA**
2                            **TAMPA DIVISION**

3    CLARISSA ZAFIROV,

4                        Plaintiff,

5        vs.                          CASE NO. 8:19-cv-1236-KKM-SPF
                                      April 22, 2024
6                                     Tampa, Florida
                                      1:02 - 4:56 p.m.
7
     FLORIDA MEDICAL ASSOCIATES, LLC,
8    et al.,

9                        Defendants,

10   CHAMBER OF COMMERCE (Amicus)

11   ANTI-FRAUD COALITION (Amicus)

12   UNITED STATES (Statement of Interest)

13                       Defendants.
     _____/
14

15

16
                  TRANSCRIPT OF MISCELLANEOUS HEARING
17            BEFORE THE HONORABLE KATHRYN K. MIZELLE
                   UNITED STATES DISTRICT JUDGE
18

19

20

21

22

23

24
     Proceedings reported and transcribed by
25   computer-aided transcription.

```
1   APPEARANCES:

2

    For the Relator:        JILLIAN LEVY ESTES, ESQ.
3                           Morgan Verkamp, LLC
                            4410 Carver Woods Drive, Suite 200
4                           Blue Ash, Ohio 45242
                            513/651-4400
5
    For the United States:  J. JENNIFER KOH, ESQ.
6                           Trial Attorney
                            Commercial Litigation Branch
7                           Civil Division
                            Department of Justice
8
    For the Defendants,     Matthew D. Krueger
9   Anion Technologies,     Foley & Lardner LLP
    LLC, Florida Medical    777 East Wisconsin Avenue
10  Associates, Inc.,       Milwaukee Wisconsin 53202
    Physician Partners,     414/297-4987
11  LLC,

12  For the Defendant,      STEVEN A. ENGEL, ESQ.
    The Chamber of          Dechert, LLP
13  Commerce for the        1900 K St NW
    United States of        Washington, D.C. 20006
14  America:                202/261-3300

15  For the Defendant,      TEJINDER SINGH, ESQ.
    Anti-Fraud Coalition:   Sparacino, PLLC
16                          1920 L Street, NW,Suite 835
                            Washington, D.C. 20036
17                          202/629-3530

18  Court Reporter:         Howard W. Jones, RDR, RMR, FCRR
                            801 N. Florida Avenue, Suite 15A
19                          Tampa, Florida 33602
                            813/301-5024
20

21              * * * * * * * * * *

22

23

24

25
```

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1                            **I N D E X**

2                                                    **PAGE**

3
    ARGUMENT BY MR. KRUEGER:                            4
4
    ARGUMENT BY MR. ENGEL:                             28
5
    ARGUMENT BY MS. KOH:                               53
6
    ARGUMENT BY MS. ESTES                              95
7
    ARGUMENT BY MR. SINGH:                            129
8
    ARGUMENT BY MR. KRUEGER:                          160
9
    ARGUMENT BY MR. ENGEL:                            175
10
    ARGUMENT BY MS. ESTES:                            178
11
    CERTIFICATE OF COURT REPORTER:                    180
12

13
                        * * * * * * * * * *
14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2           (Court called to order)

 3           THE COURT:  Good afternoon.  We are here for oral

 4    argument in Case 8:19-cv-1236.

 5           Who speaks for the plaintiff in this case?  Who

 6    will be arguing?

 7           MS. ESTES:  Good morning, Your Honor.  My name is

 8    Jullian Estes for Relator, Clarissa Zafirov, and we'll be

 9    arguing today with Jennifer Koh for the United States.

10           THE COURT:  Okay.  That's what I was gonna ask

11    next.

12           Okay.  Ms. Koh, you'll be handling the United

13    States' position?

14           MS. KOH:  Yes, I will.

15           THE COURT:  Okay.  And who is going to be arguing

16    on behalf of the defendants collectively?  And then I'll

17    turn to Chamber of Commerce and Anti-Fraud Coalition.

18           MR. KRUEGER:  Good afternoon, Your Honor.  I'm

19    Matthew Krueger on behalf of Defendants Physician Partners,

20    Florida Medical Associates, and Anion Technologies, also be

21    speaking on behalf of the defendants.

22           THE COURT:  Okay.  And now the Chamber?

23           MR. ENGEL:  Good afternoon, Your Honor.  Steve

24    Engel on behalf of the Chamber of Commerce.

25           THE COURT:  Good afternoon.
```

1          And then Anti-Fraud Coalition?

2          MR. SINGH:  Tejinder Singh, Your Honor.

3          THE COURT:  Okay.  Thank you.

4          Okay.  I know I've allocated particular times to

5     different individuals.  I'm not wedded to those, this is not

6     actually an (inaudible), it's more I want to address certain

7     issues with counsel and hear the different parties and then

8     the amicus perspective.

9          I'll tell you the three big topics that I would

10    like addressed.  Obviously, I've read all the briefing, so

11    I'm familiar with those arguments, but to me, the three

12    pressure points that I would appreciate clarity on.

13         The first is with regards to the Appointment

14    Clause continuity aspect, what the standard is under case

15    law and why that is or is not satisfied here.

16         The second has to do with the historical record

17    and what it bears out in support of the Qui Tam provision in

18    the FCA.

19         And obviously, quite a few questions under each of

20    these topics, but these are the three broad ones.

21         And then the third has to do with in a

22    post-*Polansky* world, what partial assignment of property

23    remains under the *Stevens* standing theory, because I think

24    there's some questions that are unresolved in light of

25    *Polansky*.

1          So those are the three main topics I would like to

2    discuss.  I have a few other questions that I will follow up

3    with.

4          Given that this is the defendants' motion, I guess

5    I'll start -- unless the parties have a different order of

6    argument that they would prefer, but I would start with the

7    defendants.  Then I would plan to turn to the Chamber of

8    Commerce, and then I would turn it over to Ms. Zafirov's

9    counsel, the government, and the Anti-Fraud Coalition.  And

10   like I said, I'm not wedded to particular times, I'm more

11   interested in the answers.

12         So, Mr. Krueger, if you would like to give -- I

13   don't want to curtail any planned remarks if you would like

14   to give those and then I can follow up with my questions in

15   those three buckets.  That's fine.

16         MR. KRUEGER:  Okay.  Thank you, Your Honor.  Good

17   afternoon and may it please the Court.

18         I remind you again, I'm Matthew Krueger on behalf

19   of Defendants Physician Partners, Florida Medical

20   Associates, and Anion Technologies.  With me at counsel

21   table, also from Foley & Lardner, are Jason Mayden (ph),

22   Joseph Swanson (ph), as well as (inaudible) of the

23   defendants.

24         I'll start with some briefly prepared remarks, but

25   then be sure to address the questions that you posed.  And I

```
 1    would like to ask if I could reserve five minutes up front

 2    for rebuttal?

 3              THE COURT:  Yes.

 4              MR. KRUEGER:  Okay.  Thank you.

 5              Fundamentally, the defendants' motion raises the

 6    question of accountability.  The Constitution requires that

 7    the individuals who exercise the awesome power to enforce

 8    Federal law are accountable to the President and, therefore,

 9    ultimately to the people.  The False Claims Act Qui Tam

10    device is utterly opposed to accountability and it's an

11    unconstitutional aberration.

12              As this case shows, the False Claims Act vests

13    self-appointed private individuals with the executive's

14    power to exercise prosecutorial discretion in deciding

15    whether to file suit, what claims to assert, and now for the

16    past four years in this case, to litigate as the only and

17    primary party as the government has disclaimed being a

18    party, having declined pursuing the government's claim

19    without the ability for the executive to remove and replace

20    her with another accountable officer.

21              There is no precedent that supports this, no Court

22    of Appeals has addressed these questions in the last

23    20 years, but you have had in these past years decision

24    after decision by the Supreme Court that underscores the

25    importance of accountability in Article II in the
```

1   Appointments Clause, as well as the requirements of the Take

2   Care Clause with removal.

3          So I'll turn to your questions and starting first

4   with the Appointments Clause.  I think your question

5   reflects that the first part of an Appointments Clause

6   argument is really not in dispute here insofar as the

7   Relator -- a Relator's clearly exercising core executive

8   power by choosing and exercising prosecutorial discretion in

9   bringing what is essentially a penal statute of claims under

10   the False Claims Act.  That's clear from *Buckley*, *Morrison*,

11   *Nixon*, that you have the exercise of enforcement discretion,

12   that under CELA law with its test of there needing to be

13   substantial authority is clearly met here.

14          The same precedents that I just cited also answer

15   your question as to continuity.

16          THE COURT:  What is the standard?  *Lucia* (ph) says

17   that it's -- continuity is an element of officer status, but

18   then doesn't elaborate much.  And then looking back over a

19   hundred years in the precedent, there's various

20   articulations of what continuity consists of and I'm looking

21   to know what that is for this case.

22          MR. KRUEGER:  Right.  As the Second Circuit

23   recognized in *Donziger*, and I would point you to the Second

24   Circuit's decision --

25          THE COURT:  I was gonna ask if that's what you

1   would recommend I adopt as the continuity standard here.

2           MR. KRUEGER:  I don't think you necessarily need

3   to adopt *Donziger* straight out, I think you can simply say

4   that under *Morrison*, under *Buckley*, under the D.C. Circuit's

5   examples, and under *Donziger's* examples of a special counsel

6   or an independent counsel that are exercising enforcement of

7   the law, even if they're for a particular case, but over an

8   extended period of time, that that clearly meets continuity

9   without needing to necessarily articulate a test that will

10  apply in every circumstance.

11          Because I think what you're recognizing is some of

12  the case law is a bit messy, particularly when you go to the

13  very old cases where you have an ad hoc, for example,

14  engagement of a surgeon by an agent of the United States.

15  And so I think you could tie to the particular circumstance

16  of somebody who is given the authority to prosecute claims

17  on behalf of the United States satisfies continuity.

18          THE COURT:  Can you think of any example from any

19  of the cases where someone is exercising significant

20  executive power, but on a more temporary basis where that

21  person was not deemed an officer?

22          MR. KRUEGER:  I cannot think of one offhand.  I

23  think in many ways the substantial authority test gets you

24  90 percent of the way there.  CELA does articulate

25  continuity, as another example, but I can't think of one in

1    which you would have the first requirement met, but not the

2    second.

3            And I think that makes very good sense, because

4    when you have an individual who is exercising short of

5    discretion the sort of authority that is recognized as

6    substantial under CELA.  Again, this is very clear under

7    CELA or free exercise, that -- excuse me, a free enterprise

8    fund, situations where an individual has the authority to

9    bring claims, to prosecute them, I can't imagine a situation

10   in which that's not going to meet (inaudible) for an

11   officer.

12           THE COURT:  Is there any of those cases you would

13   point me to -- I mean, I have to articulate a standard I'm

14   applying.  Which one would I use?  Because they do seem to

15   vary somewhat.  Like trying to find the through lines.

16   Frequently, they say things like created by statute, the

17   duties are specified in the statute, they have some sort of

18   compensation based off of the statute.

19           I think there's some more haziness around the,

20   what does it mean to be temporary, episodic, that kind of

21   thing.  I do see in the earlier cases, especially like

22   *Germane*, and I'm gonna ask counsel who is arguing on the

23   other side this question:

24           Some of those distinctions have to do with almost

25   fact determinations by subject matter experts, which seem

1  different in kind and discretionary-type decisions as to

2  what claims to bring, what legal arguments to formulate, and

3  such.  And I didn't know if there's any basis to draw a

4  distinction there on what it means to be continuous or not.

5          MR. KRUEGER:  Yes, I do think there are several

6  reasons.  First with those older cases, you had essentially

7  a surgeon and an appraiser who had a subject matter

8  expertise that were hired almost as an expert consultant for

9  a very limited discrete task that wasn't bound up in --

10 there's two distinctions, again wasn't bound up in core

11 executive power prosecuting a case, but also where

12 essentially agents of an officer who is otherwise

13 responsible for administering a Federal statute.  Here you

14 have no such other Federal officer.  It is the Relator alone

15 who is prosecuting the United States' claims here, much more

16 like *Morrison*, like *Donziger*.

17         I think to the extent the Court does feel the need

18 to articulate a particular test, I think *Donziger* is the

19 best articulation that we have.  And what's clear from that

20 is that -- the fact that it's a particular case and not a

21 sustained office for indefinite period is not dispositive.

22         And I think the way to think about this, because

23 the other side has pointed to things like lack of salary or

24 lack of employment, is that that can't possibly be the test.

25 That might be an indicia of where the test is satisfied, but

```
1    if you think about a situation, if Congress, for example,

2    had created an Office of Relator for this particular case

3    and appointed Ms. Zafirov to prosecute that, you would be

4    all fours with Morrison or Donziger.  It can't be the case

5    that just by Congress not doing that, can they do an end run

6    around the Appointments Clause, because responsibilities

7    being fulfilled are essentially the same.

8             I would also add that you do have a monetary

9    interest in this case were she to prevail.  And obviously,

10   the motive for her prosecuting this is to have a share of

11   the recovery.  And so functionally there isn't really any

12   difference between drawing a salary and having a share of

13   the recovery.

14            THE COURT:  If there is an Appointment Clause

15   problem here, is there any way to remedy it?

16            MR. KRUEGER:  In this case, the remedy must be

17   dismissal.  Whether Congress has a way to craft the statute

18   differently, if that's -- if that's your question.

19            THE COURT:  No, that's not my question.  Yes, they

20   could rewrite it.  My question is, is there any way to

21   remedy it.  Front-end Appointment Clause challenges present

22   different remedy problems than back-end removal ones

23   sometimes, in the case law at least, so that's what I'm

24   asking.

25            MR. KRUEGER:  I don't see a way that that's
```

1    possible here, because it is an unappointed and, as you're

2    indicating, an unremovable Relator, who has exercised that

3    enforcement discretion to file this lawsuit and, since the

4    government has declined, has now been the only party with

5    primary responsibility to litigate it.  So I see no way to

6    remedy this other than dismissal.

7         THE COURT:  Okay.  I want to turn now to history.

8    Both sides spilled a lot of ink and I understand the case

9    law has and I think this is where the real rub of the

10   constitutional inquiry comes to a forefront, is in the

11   historical pedigree of Qui Tam in the United States.

12         What I didn't see in the briefing -- and I'll ask

13   everyone this, so these aren't surprise questions going

14   forward.  In English, statutory Qui Tam, I see three

15   buckets, you have mere bounties to informers with no cause

16   of action attached.  You have causes of action given to

17   people who are actually aggrieved parties, who suffered

18   something, you know, in addition to the public wrong.  And

19   then you also have what I'll term for purposes of oral

20   argument today, true Qui Tams.  So something where the

21   person is given a cause of action, but they themselves have

22   not suffered an individualized harm and their right to

23   obtain a portion of the penalty and the bounty.

24         So I think the FCA Relator is in the third bucket

25   and I'm wondering in the cases, even *Stevens*, it's not

```
 1   always parsed in this way and whether I should be

 2   distinguishing between the three kinds of history and then

 3   what does that history bear out with regards to the true

 4   Qui Tam statistics, because I think, you know, after recent

 5   Supreme Court precedent, especially Bruen, like I need to be

 6   doing the proper historical analogies here and I'm not sure

 7   a bounty hunter informer is an equivalent and I certainly

 8   don't think someone who has their own individualized harm

 9   that has no res judicata preclusive effect on the government

10   if it were to litigate its case to final judgment, that's

11   also not the same thing.  So where does that leave me?

12          MR. KRUEGER:  I agree with your analytical

13   approach of distinguishing between these and I think the

14   bottom line answer is where that leaves you is that there is

15   not historical precedent of situations like you have under

16   the False Claims Act of a Qui Tam Relator with no injury of

17   their own, but who is given authority to litigate the

18   government's injury.

19          THE COURT:  So this is -- based on my own research

20   so far, there is -- as I've identified them and categorized

21   them, I think the first few Congresses passed between five

22   to ten what I'll call true Qui Tam statutes.  And then as

23   far as enforcement -- so those were on the books.  But as

24   far as enforcement and use, based on my Westlaw research,

25   I've uncovered less than a dozen what I call true Qui Tam
```

1    enforcement actions in the first 70 years of the founding.

2              Is there any constitutional theory that would tell

3    me that there's -- is there a significant difference between

4    Congress enacting a law and then like widespread use of the

5    law, how does that cut in favor or against Qui Tam?  In

6    specific, I mean FCA.

7              MR. KRUEGER:  So you cited *Bruen* and I think *Bruen*

8    provides for you a test for how to look at history.  And so

9    step one, even before you look at history should you ask is

10   there a need to look at history, is Article II ambiguous on

11   the question at hand?  And I would submit to you you don't

12   actually need to look at history, because particularly, say,

13   under the Appointments Clause, as we just discussed, you

14   have an individual who is exercising this authority without

15   appointment.

16             But if you do feel the need to look at history,

17   our research is similar where we identified, and I think we

18   cited them in our brief, five statutes of the first Congress

19   that did expressly authorize Qui Tam actions without their

20   necessarily being a personal injury.

21             But as you observed, much of the discussion, much

22   of the scholarly literature lumps those together with other

23   statutes where you have an authorization that's only for a

24   bounty, which is very different, in that situation, a person

25   is not exercising Article II authority, or somebody who has

16

1    a personal injury.  Again, very different.

2           So if you're looking at -- and I don't know that I

3    would even call those, to use your label, true Qui Tam,

4    because much of the literature describes them as Qui Tam

5    in --

6           THE COURT:  Right, I've used that just as a

7    (inaudible) for today's purpose.  You could say FCA-like

8    Qui Tam.

9           MR. KRUEGER:  Okay.  And so I think, as you

10    pointed out, there were relatively few FCA-type Qui Tams,

11    but again, I'm gonna even distinguish those from what we

12    have today.

13           And the other pertinent point, and this is -- this

14    is discussed in *Bruen* in terms of how you handle historical

15    analysis, is it's very important to ask whether early

16    practice was something that the framers deliberately chose,

17    thought about, and were recognized.  And --

18           THE COURT:  Where do I look to to find whether

19    they did that deliberate thoughtful enactment versus

20    reactionary adoption from English law?

21           MR. KRUEGER:  You would expect to find statements

22    in the Federalist papers, the Congressional discussions and

23    deliberations around the Constitution or around the

24    enactment of the statutes, as you do when you're talking

25    about removal power where removal power was recognized at

1   the time as essential to Article II.  You have no such

2   consideration.  Instead, you have sort of a thoughtless

3   adoption of a practice that had been in some existence

4   without thinking necessarily what does it mean when we've

5   departed from the Parliamentary system that existed in

6   England and have adopted a clear separation of powers?

7   That's borne out by the fact that these statutes aren't

8   actually used and fall largely into disuse.

9           THE COURT:  Is there any literature, Congressional

10  record, is there any place I can go to find this compendium

11  of Qui Tam statutes and Qui Tam enforcement actions other

12  than my own ability to research it?  There's a Law Review

13  article that's cited in *Stevens*, and there is a Professor

14  Prakash article, neither of which do a fulsome compendium.

15  So I'm just wondering where I can find this historical

16  research.

17          MR. KRUEGER:  I would also cite you to then head

18  of OLC's memo by William Barr in which he articulated –– in

19  which he analyzes many of these same statutes.  I think he

20  looks to some of the same underlying secondary sources.  The

21  ones that we've cited to, they're few and far between.

22  Those were the ones that we were able to uncover from our

23  research.  And I think the takeaway from that is that you

24  don't have the un-checkered, well-established historical

25  practice that *Bruen* suggests would be relevant.

1          THE COURT:  So you think there needs to be use

2     under the statute for it to be widespread and unbroken

3     tradition that would inform the constitutional question, not

4     just on the books?  There's been some form of a Qui Tam

5     action that's been passed by Congress since the founding.

6     Does that not -- how does that bear, that's what I'm asking.

7     Like how do I weigh those?

8          MR. KRUEGER:  Right.  You know, again, step one,

9     do you even need to look at this history given the

10    incredible body of case law that has emerged about what does

11    Article II really mean in terms of removal power,

12    appointments power?  And I don't think you do, because you

13    have such a clear violation here.  And we know from Justice

14    Thomas's dissent in *Polansky* and other places that

15    historical practice, even if it were very established, can't

16    create present power under the clear violation.

17         THE COURT:  Okay.  I think the hardest question

18    then for you is like what do I do with the situation like

19    *Marsh*, right?  Like we've had parliamentary prayer under

20    modern precedents.  If it was just being applied, would that

21    be passing constitutional muster?

22         MR. KRUEGER:  I think *Marsh* is a great

23    counterexample where there was a long and unbroken use, to

24    your point, as well as a recognition that this is happening

25    and discussion among the framers about whether the Bill of

1  Rights is consistent with this sort of practice.  There is

2  no similar consideration or recognition that this historical

3  artifact of Qui Tam, which, again, even in England had

4  mostly fallen into disuse, would pose the problem that it

5  does today, particularly when you have to have some sort of

6  apples-to-apples comparison.  A legislative prayer isn't

7  gonna change much from the 1780s to today.

8          This sort of Qui Tam statute that you might have

9  had at the founding, just a factual falsity, was X delivered

10  instead of Y, is night and day different from the modern

11  regulatory False Claims Act in which, with the growth of the

12  modern regulatory state, you have certifications of

13  compliance with all manner of regulations that are bound up

14  when you're doing business with the government.  And,

15  therefore, the False Claims Act today is not anything like

16  that original Qui Tam, but instead, is essentially a

17  regulatory enforcement behemoth, in which last year over 700

18  Qui Tams were filed by self-appointed private individuals

19  making first impression interpretations of Federal law and

20  regulatory standards that are very different than what would

21  have happened at the founding.

22          But again, even if you found -- and you don't

23  have, but if you had some unbroken chain of a very

24  simplistic Qui Tam statute, that wouldn't justify what

25  Congress created in 1986.  That's the actual historical

 1    legacy, is just back to the mid '80s, which immediately drew

 2    opposition from the then-head of OLC.  And so it's nothing

 3    like legislative prayer in *Marsh*.

 4             THE COURT:  Okay.  Anything else with that or can

 5    we move on to my post-*Polansky* questions about remaining

 6    partial assignment?

 7             MR. KRUEGER:  Absolutely.

 8             THE COURT:  Okay.  So *Polansky* gives the

 9    government the right to intervene at any time if they show

10    good cause and then subjects the dismissal under Rule 41

11    metrics.

12             What are those standards?  Not so much the good

13    cause, I'm more interested in the dismissal, because that's

14    the visceration of a Relator's partial assignment.  So

15    *Stevens* gives the Relator standing, because in theory they

16    have a partial assignment of the government's damages claim.

17    So I want to unpack this a little bit.

18             The first question I have, which provision gives

19    Congress the right to assign this to a private citizen who's

20    not been injured?

21             MR. KRUEGER:  Justice Thomas in *Polansky* flagged

22    that as a question under Article I, whether Congress even

23    had power to do so.  It's not been articulated by Congress

24    and so I think that is a separate constitutional challenge.

25             THE COURT:  I understand, no one is bringing it

1    here.  I'm just asking the question, because I think

2    *Polansky* said, lower courts, you should consider these

3    questions when you're faced with these challenges.  And the

4    only potential I've heard from the Relator or those in

5    support thereof is the Property Clause.

6            MR. KRUEGER:  That's right.

7            THE COURT:  Why is this not other property under

8    the Property Clause?

9            MR. KRUEGER:  Look, we're not in a position where

10   we want to defend Congress's authority to enact this, it's

11   not the court challenge we brought here.  But I think even

12   if there were authority under the Property Clause, that

13   wouldn't address any of the Article II questions.

14           THE COURT:  Well, no.  So I -- well, yes and no,

15   sorry.  I won't say no.  What I'm -- I kind of wanted to

16   think systematically through this.  Does Congress have the

17   right to assign part of the damages of a False Claims Act to

18   a private citizen who has not been harmed?  So first

19   question is, is that other property?  Is a contingent,

20   nonspecific, monetary judgment to no particular person, it's

21   like writ large to the public to be -- to be determined by

22   whomever initiates the action, is that other property for

23   purposes of the Property Clause under Article I?

24           MR. KRUEGER:  I think there are real reasons to

25   doubt that, particularly because under the False Claims Act

1    this isn't a contract dispute about a fixed amount of money

2    or some finite property.  The False Claims Act authorizes

3    enforcement of civil monitory penalties, treble damages, or

4    a contingent undefined amount of property that's really a

5    penal statute of recovery.  And so I wouldn't suggest to you

6    that the Property Clause authorizes it.

7                THE COURT:  Do you have any case that would say

8    that?

9                MR. KRUEGER:  I don't standing here today,

10   because, again, it wasn't sort of the core challenge that we

11   brought.  Happy to submit additional briefing on that if the

12   Court thinks it's important to first address the Article I

13   question.

14               THE COURT:  I think it bears in a post-*Polansky*

15   world and here's why:  So if it is property that Congress

16   can assign, and that is what *Stevens* I think contemplated,

17   *Polansky* significantly increased the government's

18   termination of whatever that partial assignment is, which is

19   why I started with the first question of what's the standard

20   for dismissal under *Polansky*.

21               So Justice Kagan says that:  The Supreme Court has

22   never sat out a grand theory of what rule requires.  She's

23   referring to Rule 41.  And the inquiry is necessarily

24   contextual.  Given that, a District Court should think

25   several times before denying a motion to dismiss by the

1    government.  If the government offers reasonable argument

2    for why the burdens of continued litigation outweigh its

3    benefits, the Court should grant the motion.  And that is so

4    even if the Relator presents a credible assessment to the

5    contrary.

6          So what is that standard and has it completely

7    eviscerated any property interest that the Relator has?

8    Because I think the question remains if the Relator has an

9    individualized property interest separate from just being an

10   agent of the United States, is there a way for that Relator

11   to proceed absent the United States?

12         MR. KRUEGER:  Forgive me for fighting your premise

13   a little bit, but I don't think that -- *Stevens* talks about

14   assignment of an interest, but it also recognizes a

15   proprietary interest, as well as the government's interest

16   in regulatory and vindicating violations of law.

17         THE COURT:  Uh-huh.

18         MR. KRUEGER:  So that's partly what makes this

19   such a problematic arrangement under Article II as well, is

20   you have the Relator, who has -- even if her property

21   interest is now even less stable because the government may

22   dismiss, under the current statute she is exercising the

23   government's --

24         THE COURT:  Right.  So I think you're getting to

25   one of the other questions that the decent in *Polansky*

24

1   posed, which is it servable.  Is it there a way for a

2   Relator to vindicate whatever this partial contingent

3   assignment of property is absent the United States as an

4   indispensable party?  And I think the answer probably is no

5   from what you're telling me, because any contemplation of

6   the FCA works in tandem with what you would conceive of as

7   an Article II violation.

8          MR. KRUEGER:  That's absolutely right.  And I

9   think Justice Kavanaugh's statement in *TransUnion* also bears

10  on that that, where although he's addressing Article III

11  standing in that context, he observes that if an unharmed

12  plaintiff were given the ability to enforce Federal law,

13  that would infringe upon Article II.  And that's what

14  Relators necessarily are doing under *Stevens*, is they are

15  exercising enforcement of an injury that is only the

16  government.  They are unharmed.

17         THE COURT:  Well, I think *Stevens* was

18  contemplating that they are given something more than the

19  agency, right?  *Stevens* says it's not -- the reason they

20  have Article III standing is because of the partial

21  assignment, not because they're vindicating the Federal

22  government's -- I think -- it doesn't say this explicitly,

23  but *Stevens* doesn't say that they're only operating as an

24  agent, because then you would run headlong into Article II

25  problems.  So the statute making them have a right to

1    proceed in their own interest and having a partial

2    assignment of the damages claims is what gives them the

3    individualized harm to proceed under Article III.  Right?

4            So I'm wondering what that property right is and

5    is it -- the layers of good cause to intervene and then the

6    Rule 41 dismissal bears on whether that still exists or if

7    it -- that's what I'm asking, what's the standard for a

8    dismissal or thinking the government always distinguished

9    the right and, if that's the case, then what assignment has

10   occurred at all?

11           MR. KRUEGER:  So what *Polansky* teaches us is to

12   look to Rule 41 as sort of the bottom line of it, right?  In

13   a situation like this, where we're in Rule 41(a)(2), because

14   there's been an answer and now the government has declined

15   and is not in the case, then *Polansky* makes clear that the

16   interests of the Relator come to bear.  Under a

17   Rule 41(a)(2) dismissal, the Court is required not only to

18   take into account the movant's interests were the government

19   to intervene and try to dismiss again, but also the

20   defendant's.

21           And so they don't have carte blanche.  And so the

22   analogy that the opposition makes to say removal does not

23   work, because intervening and trying to dismiss is not

24   necessarily a given that the Court will have to dismiss.

25           THE COURT:  Okay.

1          MR. KRUEGER:  I'm happy to -- I absolutely want to

2   continue engaging, I just -- I want to --

3          THE COURT:  Well, I have only one question left

4   for defendants and if there's anything else you want to tell

5   me, please do so.  But this goes to an issue that I said I

6   don't really need you to opine on, but I'm curious your

7   answer.

8          What additional controls, if the FCA were to be

9   rewritten, would make this compliant for purposes of the

10  Vesting and Take Care Clause?

11         MR. KRUEGER:  There are other examples, say, under

12  the SEC or the CFTC in which executive branch can give a

13  bounty to a whistleblower who brings information forward for

14  the government.  And so to the extent the opposition is

15  concerned about protecting that need to fight fraud, that's

16  a very obvious answer.  And that's what many of the other

17  Qui Tams, as they were called at the time involved, were

18  certain bounty statutes.  So that would be one very simple

19  and straightforward fix that align with many other Federal

20  statutes.

21         THE COURT:  Okay.

22         MR. KRUEGER:  We could certainly talk about what

23  other sort of levels of control are needed --

24         THE COURT:  That's essentially erasing the right

25  to be part of the law suit.  That just makes them a

1    whistleblower for purposes of receiving a part of the

2    judgment that's eventually secured.  But that's not giving

3    them a cause of action or any right to in any way be

4    involved in the case.  Right?  That's not a partial

5    assignment that gives them standing.

6           So what I guess I'm asking, is there any -- absent

7    just taking that away, is there any other control here that

8    would render it constitutional in your view under the

9    Vesting or the Take Care Clause.

10          MR. KRUEGER:  You need an absolute ability to

11    remove, which does not exist here.  That's very clear now

12    that we know *Morrison* is the outer bounds.  So you would

13    need true removal authority.  Just dismissal, and

14    particularly a qualified dismissal that's subject to court

15    approval for a situation, would not satisfy.  So that's a

16    major, major problem.

17          You also -- but I don't think that's gonna take

18    care of the fact that Relators have prosecutorial discretion

19    to file a lawsuit in the first instance and then inflict the

20    harms that come from filing a law enforcement.  And so you

21    would also need some mechanism to not allow private

22    individuals to be the ones who file a suit without there

23    being a true intervention and adoption by the government.

24          THE COURT:  Okay.

25          MR. KRUEGER:  If I may, I reserve the five

1    minutes.

2             THE COURT:  Yes, Mr. Krueger.  Thank you.

3             MR. KRUEGER:  Thank you very much, Your Honor.

4             THE COURT:  Okay.  Mr. Engel.

5             MR. ENGEL:  Good afternoon, Your Honor.  Steve

6    Engel on behalf of the Chamber of Commerce.

7             Well, I think that Your Honor has hit on a number

8    of important questions here and I'm happy to -- I agree with

9    what the defendants have said on these issues.  I'm happy to

10   sort of fill in some of the gaps or provide some of my own

11   thoughts on those.

12            Obviously, the backdrop of all of this is a

13   statutory scheme that offends three separate provisions of

14   Article II.  And so I think, you know, the Court's questions

15   focus correctly on the Appointments Clause, as well as

16   history, because, frankly, without the history we wouldn't

17   even be here I think.  I mean, I think if there was -- if

18   Congress were to have adopted the False Claims Act and the

19   Qui Tam device in 1986, and if there wasn't Qui Tam at

20   English Common Law, if there weren't versions of Qui Tam in

21   the first Congress, it clearly would be seen as, you know,

22   an anomalous massive violation of Article II at the time.

23   We're here because there is Qui Tam in the English roots.

24            But I think as the Court's last questions got,

25   there obviously are very serious Take Care and Vesting

1    Clause issues with Qui Tam as it's currently structured, in

2    addition to the Appointments Clause.

3            So if I can take the Court's first question about

4    what's the standard for continuity.  I mean, I think that,

5    you know, the standardized, as articulated by Justice Kagan

6    and the Court in *Lucia*, is the traditional standard that it

7    must be the incidents of officer status were set out in

8    *Germane*, you know, a long time ago.

9            I think from the standpoint of is a Relator an

10   officer, the thing to keep in mind is that the Supreme Court

11   and the Courts of Appeals have repeatedly made clear that

12   single-case officers, single-case prosecutors, do qualify as

13   officer status and, indeed, it's not even to be debated.

14   And so obviously, the Second Circuit in a number of

15   interesting opinions wrestled with this in *Donziger*

16   recently.  But we have *Morrison*, which was a hard case,

17   because everyone knew that the Special -- that the

18   Independent Counsel was an officer.  We also have *Nixon vs.*

19   *United States* in which, you know, the rule-based appointed

20   Special Prosecutor of the Attorney General was recognized to

21   be an officer.  And the D.C. Circuit addressed this with

22   respect to Special Counsel Mueller fairly recently.

23           And so a single case officer, someone who is

24   charged with one mission and carries it forward until the

25   end of that mission and then goes back to the private

1    sector, clearly is an officer of the United States.  And I

2    would submit that the Relator, who has the authority to

3    litigate on behalf of the United States, as

4    *Buckley vs. Valeo* said very clearly, enforcing the laws in

5    the civil fashion is a core executive authority.  *Heckler*

6    *vs. Chaney* talked about the importance also of civil

7    enforcement.  These are core executive authorities and if

8    that is vested in an individual, that satisfies both the

9    front end of exercising substantial authority of the United

10   States and is sufficient for continuity.

11           THE COURT:  Is there any -- it cuts against the

12   plaintiff in other contexts, but for continuity purposes,

13   the inability to remove the Relator, does that make the

14   office not continuous in the way the Special Prosecutor or

15   the Independent Counsel would be?

16           MR. ENGEL:  Yeah.  No, I think -- I mean, I think

17   it obviously demonstrates that the officer -- that the

18   Relator gets to hold onto the office, you know, even -- and

19   a number of these provisions of Article II reinforce each

20   other.  So traditionally, when we talk about removal

21   restrictions, we think of them as Vesting Clause issue.

22   That's how pre-enterprise found CELA law and the like

23   identifies it.  But I think it certainly shows that the

24   Relator has a hold on the office.

25           The other things that I think are relevant here is

1    that it's not personal to the Relator in the sense that, as

2    the United States, you know, will tell you or has told you,

3    the United States can intervene.  The United States can step

4    in.  And what happens when the United States intervenes, the

5    United States takes over the case and an officer of the

6    Department of Justice, a properly appointed officer, will

7    carry forward, you know, that litigation.

8         And the other thing is that the Relator occupies

9    the field of the Qui Tam action related to the allegations

10   in the complaint.  So this is 31 U.S.C. 3730(b)(5).  That

11   says when a Relator like Ms. Zafirov here, Dr. Zafirov, has

12   brought this action, nobody else can bring a similar action.

13   And that's very different from the way any civil litigant

14   would operate, you know, under any other statute.  And

15   that's, of course, because under the False Claims Act

16   Congress has granted a self-appointed Relator the right to

17   litigate on behalf of the United States and to do that

18   subject only to the ability of the Department of Justice to

19   come in and take over that role, a situation that's, you

20   know, plainly not here.

21        So I think for all of these -- you know, for all

22   of these reasons, it's clear, and Justice Thomas, you know,

23   suggested as much in building the prima facie case in his

24   dissent in *Polansky*, that this is someone exercising core

25   executive power and, therefore, it's someone who must be

1    appointed consistent with the Appointments Clause.  And the

2    only -- you know, the only reason we're even talking about

3    it, I would submit, is because of history, which unless the

4    Court has questions on this, I'm happy to turn to.

5          THE COURT:  Let's turn to history.  Could you set

6    out before we turn to what the history bears out here in

7    terms of the types of Qui Tams and their usage versus just

8    enactment, what is the constitutional theory for history

9    that might seem to conflict with current Supreme Court

10   precedent on separation of powers?

11         MR. ENGEL:  Yeah.  I mean, I think that the Court

12   has been pretty clear about this, that we certainly take

13   seriously what the framers thought about and what they did

14   in the first Congress.  But the -- you know, the framers

15   were not -- they were not perfect interpreters of the new

16   experiment that they had created.  And so we know that the

17   first Congress granted the Supreme Court jurisdiction that

18   it could not exercise under the Judiciary Act of 1789,

19   because Chief Justice Marshall, the Court, told us that in

20   *Marbury vs. Madison*.

21         We know that the first Congress assigned

22   responsibilities to courts to make pension decisions subject

23   to revision by the Secretary of War or Secretary of the

24   Treasury.  And in *Hebrons* case the Court said, no, no,

25   that's unconstitutional.  And so, you know, if we fast

1   forward a few Congresses, we have the Alien and Sedition

2   Acts, which I think the Supreme Court in *New York Times vs.*

3   *Sullivan* and most people think, you know, were flatout

4   violations of the First Amendment.

5            And so the fact that the first Congress did it is

6   certainly relevant to the analysis, but it's never been

7   dispositive.  And the Court said that in *Marsh vs. Chambers*.

8   As my friend pointed out, in the first Congress, they

9   debated whether having a chaplain was consistent with the

10  Establishment Clause and they came to the conclusion that

11  the kind of chaplains that they had, you know, would rotate

12  persons to sanctify the proceedings of the first Congress

13  was consistent with the Establishment Clause.  They made

14  that judgment then, the Supreme Court confirmed that in

15  *Marsh vs. Chambers*.

16            But you had *Waltz*, where the Court again said the

17  fact that we've had tax exemptions for religious

18  institutions from the beginning is relevant, but not

19  dispositive if we come to the conclusion that it violates

20  the First Amendment.  And the Court in *Bruen* indicated that

21  too to some agree with somewhat later, you know, history of

22  statutes and the like.

23            THE COURT:  So what history matters the most, that

24  it's enacted, that it's widely used, that it's consistently

25  used?

34

1          MR. ENGEL:  Yeah.  So I think that to the extent

2   that the constitutional framework is unclear and to the

3   extent that the history of the first Congress in continuing

4   has kind of liquidated one meaning of it through an unbroken

5   practice that was considered adopted and has become part of

6   the framework of our laws, that's the kind of history that

7   could be relevant.  But I would submit here we have -- we

8   don't have that for several reasons.

9          One is we have a very clear understanding, which

10  the Court, particularly in the last 25 years, has continued

11  to articulate of the scope of Article II.  And so we have

12  Free Enterprise Fund and we have CELA law and we have *Lucia*

13  and we have *Arthrex*.  You know, we have a series of cases in

14  which the Court has continually emphasized that all of the

15  executive power is vested in the President and that Congress

16  cannot prevent the President from having a unitary and an

17  accountable executive.  And that's really the problem with

18  the False Claims Act.

19          THE COURT:  So had there been a False Claims Act

20  statute passed by the very first Congress and it's been

21  widely used up until present day, where would that leave --

22          MR. ENGEL:  I would submit that -- I would say

23  that had it been widely used and understood to be consistent

24  with Article II, and it was debated at the time and everyone

25  said, no, this is what Article II means, and I would even

1    further submit if this were the case, then perhaps the

2    understanding of -- in this hypothetical, the understanding

3    of Article II would have taken a very different turn I

4    think.  I mean, I think what the history shows is -- and

5    incidentally, I think the history of these statutes is gonna

6    be muddy, I would submit.  The Court asked where to find a

7    list of these statutes --

8                THE COURT:  Do you have any recommendations?

9                MR. ENGEL:  Well, so to me, I think in Footnotes

10   Three and Four of our brief we list a number of the

11   statutes.  I think it -- actually, sorry, it's Footnote Two

12   of our brief I think.  I'm looking it up.  Three and Four of

13   our brief, Footnote Two of the government's brief, excuse

14   me.  Sai Prakash has a good article --

15               THE COURT:  The chief prosecutor?

16               MR. ENGEL:  Prosecutor, he --

17               THE COURT:  But he says the article that would do

18   a full compendium has yet to be written and then I don't

19   think it's been written since.

20               MR. ENGEL:  We have to reach out to colleagues in

21   the Academy to start putting pen to paper.  But I think that

22   there are -- I mean, I think there are -- Professor Prakash

23   also cites a number of articles on Qui Tam and the early

24   statute.  This, you know, as the Court is aware, was a big

25   deal in the years after 1986 and sort of in the early '90s

1   about what this all meant, you know, and after the release

2   of Attorney General Barr's OLC opinion on the subject and

3   the like.  And so, I mean, it's there.  But I guess what I

4   would submit is it's gonna be muddy.  What we don't -- the

5   statutes are a little bit sparse --

6           THE COURT:  You mentioned the Bill Barr's OLC

7   memo.  He references the SG's counter-position.  Do you know

8   if that's public?  I couldn't find it.

9           MR. ENGEL:  That's a good question.  I thought it

10  was, but I confess I haven't read it in some time, so --

11          THE COURT:  I wondered if that had some -- he

12  summarized it as, but the history is SG's position, and I

13  would be curious if the SG filed something.

14          MR. ENGEL:  And maybe a friend from the Department

15  of Justice --

16          THE COURT:  We have to ask that.

17          MR. ENGEL:  What I do suspect is that if you want

18  to find the Department of Justice's traditional position on

19  this issue as reflected by the Solicitor General's office,

20  there's a series of briefs.  I think somebody may cite the

21  brief from the Bush administration, 2003 or 2004,

22  thereabouts, there was a Tenth Circuit brief in a case

23  beginning with a P, I forget, but which the U.S. government

24  filed a few years ago.  And then, of course, we have the

25  current brief from the Department of Justice.

1          Those are the kind of arguments I think that the

2    Department -- that the litigator, Solicitor General Starr

3    and his successors have tended to sort of use to justify,

4    which is, you know, number one, that there's authority of

5    the Department of Justice to step in if they want to.

6    Number two, they repeat this analogy, which has always been

7    unpersuasive to me, but that isn't this just like civil

8    rights statutes and environmental statues where injured

9    parties may sue and in -- successfully sue and they can

10   benefit, you know, the public as well.  I mean, clearly,

11   those --

12          THE COURT:  Like citizen suit provisions, yeah.

13          MR. ENGEL:  And as *Lujan* tells us and *TransUnion*

14   tells us, they must be injured in the first place, which is

15   a very different situation here.  In no instance are those

16   citizen suits coming on behalf of the United States.

17          And the standing doctrines that the Supreme Court

18   has wrestled with, as in *TransUnion* and *Lujan*, are in part

19   reflecting the Article II values that are directly before

20   the Court, you know, on this motion, which is it's up to the

21   President and accountable elected President to take care

22   that the laws are faithfully executed to exercise the

23   executive power and we can't have private parties running

24   around and making those decisions.

25          Those private parties are not accountable.  And

1    they don't have, you know, the virtues of prosecutorial

2    discretion, you know, and the potential for, you know, the

3    policy latent judgments and priorities that the Department

4    of Justice does and does with the False Claims Act, which is

5    why the vast majority of these cases the Department of

6    Justice takes no position and just sits them out.  You know,

7    they don't have the resources, they make their own priority

8    judgments, and they, as a result, are not accountable for

9    the 80 percent or so of False Claims Act cases that proceed

10    with these unappointed, unelected, unaccountable Relators

11    and the like.  But --

12            THE COURT:  Okay.

13            MR. ENGEL:  So --

14            THE COURT:  If we could turn to the last kind of

15    bucket of questions as to what are the standards for

16    intervention and dismissal by the government after *Polansky*

17    and what does that do, if anything, to the partial

18    assignment of property that *Stevens* contemplated.

19            MR. ENGEL:  Sure.  Judge, I --

20            THE COURT:  And I understand these are not

21    directly raised here, some of these arguments, but I think

22    they're important for me to think through as I'm resolving

23    the motion.  And really, because of the ultimate

24    matriculation to the end of is there any way that a Relator

25    can pursue the right that Congress gave it without violating

1    Article II.

2            MR. ENGEL:  Again, I think these are very fair

3    questions.  And after all, you know, Justice Thomas's

4    dissent in *Polansky* and the concurrences of Justice

5    Kavanaugh and Justice Barrett is part of why there's renewed

6    interest in this, because we know in addition to all the

7    line of Article II precedents that the Court has been

8    generating and, obviously, Justice Thomas fairly asks while

9    making a strong prima facie case, and I submit a correct

10   one, about the unconstitutionality of Qui Tam, he recognizes

11   that there are difficulties that the Court's will need to

12   work out.  So I think it's a very fair question.

13           You know, when we're talking about the partial

14   assignment here, I think there's two parts of it I think,

15   one of which is the partial assignment that comes with what

16   do we make of the conditions that if truly the Relator has a

17   right in this action, which *Stevens* held it has Article III

18   standing and (inaudible) in this case because of -- you

19   know, because of this partial assignment, what do we make of

20   the fact that the Department of Justice in the rare case,

21   but as a theoretical matter, can just dismiss the case,

22   intervene and dismiss?  And to the extent *Polansky* says they

23   can even do so, you know, after the initial review period,

24   does that -- you know, what does that say?  And I guess I

25   would -- and so that's part of the partial assignment.

1          The other part of the partial assignment and I

2    think what Justice Thomas was talking about is that since

3    *Stevens* recognizes that the Relator has a partial assignment

4    for standing even if the Relator cannot constitutionally

5    speak on behalf of the United States.  And so the 65 percent

6    or 80 percent of the case that purports to be on behalf of

7    the United States should go away, is there still a right of

8    the Relator to litigate on her own behalf for the, you know,

9    whatever percent of the claim that she has received as a

10   partial assignment?  And I think there's two issues there --

11         THE COURT:  Because then there wouldn't be an

12   Article II problem.  I think that's where he's going with

13   that, right?

14         MR. ENGEL:  Or he's asking the question.

15         THE COURT:  Right, is there -- is there a way for

16   that person to vindicate whatever that interest is without

17   offending Article II.

18         MR. ENGEL:  Yes.  Yes.  And I think so --

19         THE COURT:  I think that's why he asked the

20   severability question and we know what he would say on

21   severability, but we'll (inaudible) courts on

22   severability --

23         MR. ENGEL:  I mean, I think that the severability

24   case, the severability issue, should be pretty clean here,

25   because the only -- the principal reason why we have the

1    False Claims Act is that Congress thought that the DOJ

2    wasn't doing a good enough job of seeking to pursue false

3    claims and so they wanted to disburse executive power among

4    financially motivated private Relators in the hope that it

5    would spur additional enforcement to help the public fisc.

6              So the idea that Congress intended simply to

7    incentivize, you know, private bounty hunters to go pursue

8    their own bounties with no benefit to the public I think

9    is -- you know, it would be a strained interpretation if one

10   adopted the sort of --

11             THE COURT:  Is it even possible, right?  Like

12   wouldn't the government be an indispensable party under like

13   regular joinder rules?

14             MR. ENGEL:  Yes.  And how would it work for

15   res judicata?  We've always said that --

16             THE COURT:  Right, that's another big problem.

17             MR. ENGEL:  So I think if in fact the government's

18   part of the False -- of the Qui Tam action, particularly in

19   cases where they have not intervened, is unconstitutional.

20   I don't think we can sever it and allow the Relator to

21   pursue, you know, her private interest.  I don't think

22   that's a reasonable reading of the statute, I think that

23   creates all kinds of incongruities as to how it goes.  I

24   mean, after all, the government still under *Polansky* has the

25   ability to come in and dismiss the case.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1          I mean, so are we suggesting that if she's only,

2    you know, operating on her partial assignment that -- I

3    mean, presumably the government would still have the ability

4    to dismiss?  It's a unit.  I mean, the idea is this is --

5    you know, this is a system in which private bounty hunters

6    are seeking to enforce Federal law with a benefit to the

7    government without, you know, benefit to the public fisc.  I

8    mean, that was the plan.

9          THE COURT:  What is the standard after *Polansky*

10   for a Rule 41(a)(2) dismissal in an FCA context?

11         MR. ENGEL:  Yeah.  I don't know that I've seen

12   post-*Polansky* cases.  They may exist, but I don't know.  I

13   mean, so I would just stick with, I mean, Justice Kagan said

14   that we're not gonna settle it, but that the government

15   should, you know, be in a position, you know, that courts

16   should generally approve it if the government has explained

17   itself sufficiently I suppose.  I mean, I think that's -- I

18   could pull up exactly what she said.

19         THE COURT:  No, she says if the government offers

20   a reasonable argument for like why the burdens of continued

21   litigate outweigh its benefit, the Court should grant the

22   motion.  And that so even if the Relator presents a credible

23   assessment to the contrary.

24         One question that's posed for me, because I deal

25   with Rule 41 all the time, is you can't come in, in the

1    Eleventh Circuit as least, and dismiss claims.  You either

2    dismiss the whole party or nothing.

3          So the workaround is Rule 15(a), but that's an

4    even lower bar I think than Rule 41 in terms of you're

5    completely eviscerating whatever that partial assignment of

6    a particular claim is if the government intervenes and says,

7    well, we just want to drop these claims and now we're gonna

8    move to amend the complaint.  So that's like another layer

9    of -- I don't even -- yeah.

10          MR. ENGEL:  No, I totally agree, it's a

11   complexity.  I also think it doesn't solve the Article II

12   problems.  It clearly doesn't solve the -- no matter how,

13   you know, much authority the government has to come in and

14   dismiss the case, it doesn't solve the Appointments Clause

15   problem at all.  You know, this is, I mean, similar -- this

16   is one of the arguments raised in *Lucia*.  There was an

17   argument that, well, the SEC reviews the ALJ's decisions

18   de novo, and so, therefore, you know, maybe it shouldn't

19   really matter, maybe it's just kind of a recommendation to

20   the ALJ's decision to the SEC.  And the Court in the

21   Appointments Clause context rejected that.

22          So even if the government could theoretically come

23   in and dismiss easily, and maybe that -- I don't think it

24   solves the Take Care Clause concerns, which I'm happy to

25   address, but maybe it ameliorates one part of the Take Care

1    Clause concerns.  It doesn't solve the Vesting and it

2    clearly doesn't solve the Appointments Clause problems.

3              THE COURT:  Again, I understand no one is raising

4    this, but is this property that Congress has the power to

5    dispose of under the Property Clause?

6              MR. ENGEL:  So I don't think it is and that's

7    because --

8              THE COURT:  Even though Blackstone calls it an

9    inchoate property right?

10             MR. ENGEL:  So I don't think -- so Blackstone

11   calls a cause of action an inchoate property right.

12             THE COURT:  Uh-huh.

13             MR. ENGEL:  So it would be -- so this is not --

14   the way I see this is, this is Congress outsourcing an

15   executive function to the world, disbursing executive power

16   to enforce the laws through -- it's not just -- it would be

17   one thing if the government has a particular claim.  I mean,

18   you know, if the government had a particular claim against a

19   particular person, you know, it's possible that we could

20   look at that as a property right that Congress could cut

21   off, could decide to assign, or could give to the executive

22   the authority to kind of assign.

23             Like if the government has a -- I just stayed at

24   the Meridian Hotel.  I mean, once that was Federal property

25   and that's either now leased or it's been sold, you know, to

1    someone else to make a hotel.  I mean, Congress or the

2    government can take a real property right.  But --

3              THE COURT:  That's my question actually I was

4    gonna ask, because it says respecting territory or other

5    property if it's limited to real property or purtenances

6    thereof.

7              MR. ENGEL:  Well, I mean, I think it would include

8    personal property, but I don't think that's what -- what the

9    False Claims Act does is it says any person may pursue the

10   quasi criminal via the civil fines forfeiture actions on

11   behalf of the United States.

12             THE COURT:  But under a theory that we've given

13   you I guess under a contract aspect of assignment of those

14   damages, right?

15             MR. ENGEL:  But I would say I don't think that --

16   but because of the way it's structured, which is it's not

17   even an inchoate of a particular action, nobody's brought

18   the action at the time at which Congress is doing the

19   assignment.

20             THE COURT:  Do they have to?

21             MR. ENGEL:  I mean, I think Congress is

22   outsourcing an executive function.

23             THE COURT:  So I was trying to think of an analogy

24   in the law to what was happening here.  So say somebody

25   is -- has terminal cancer and they write their will and say,

46

1    I have a medical malpractice suit against my oncologist.  I

2    haven't brought it, but I'm going to assign it to my

3    daughter to bring on my behalf.  Is that not property for

4    her?

5            MR. ENGEL:  Well, and when somebody passes, the

6    estate steps into the shoes and to the extent that the -- a

7    claim that a living person had survives some --

8            THE COURT:  Right, if it's not a wrongful death

9    statute.

10           MR. ENGEL:  There are causes of action clearly

11   that survive, and so the estate does typically, by operation

12   of law, the executor can pursue those claims.  That's why

13   Humphrey's executor is, you know, Humphrey's widow, who is

14   suing for his backpay because FDR fired him.  You know, so I

15   mean --

16           THE COURT:  So why isn't that property that the

17   government can do the same thing with, it has a cause of

18   action against someone who defrauded it?

19           MR. ENGEL:  Because at the time, in 1986, when

20   Congress passed the False Claims Act, it had no cause of

21   action against anyone.  What it was saying is we are going

22   to -- the traditional law enforcement -- you know,

23   Article II enforcement authority to pursue civil claims on

24   behalf of the United States we are gonna give to the world

25   under the following terms and conditions and the world can

1    go out there and any person who knows of something, you

2    know, as an unaccountable private bounty hunter can pursue

3    these claims.  And so Congress is not actually assigning

4    a -- assigning person property, assigning real property, you

5    know, by the False Claims Act, it is just outsourcing of

6    Federal -- a group essential Federal function to enforce

7    Federal law to private parties.

8            And so, again, it would be one thing if Congress

9    knew --

10           THE COURT:  There was no fraud action pre-FCA that

11   they could have assigned?

12           MR. ENGEL:  There's no -- well, but again, the

13   distinction I'm trying to draw here is that they're not

14   assigning a particular fraud action, they're not assigning a

15   known property, putting aside whether Congress can do it

16   directly, whether it has to do it through --

17           THE COURT:  The problem is particularly and lack

18   of specificity?

19           MR. ENGEL:  Yeah, and the problem is it's not a

20   claim.  It is -- what is it?  It's an executive function.

21   It is the executive function of enforcing the laws --

22           THE COURT:  So is *Stevens* wrong?

23           MR. ENGEL:  Sorry?

24           THE COURT:  Is *Stevens* wrong?

25           MR. ENGEL:  Well, *Stevens* is precedent, so --

1          THE COURT:  (Inaudible) for me, I'm asking you.

2          MR. ENGEL:  Well, what *Stevens* said was that when

3   we think of case or controversy under Article III, we have

4   said in the past it's things that look like cases or

5   controversy as of 1789.  And so what I think Justice Scalia

6   and the Court was wrestling with was the fact that Qui Tams

7   were there in 1789.  They were there in, you know, 1788 in

8   England and presumably some of the states and they were

9   there in the -- you know, some version of Qui Tam was there

10  in the first Congress.  And so the Court formulated a

11  partial assignment theory that it said satisfied standing

12  based upon the test that it had been set out for case or

13  controversy as it existed in 1789.  That test is very

14  focused on when they said case or controversy, what did they

15  have in mind?

16          I would submit it's different.  Article II was

17  new.  Justice Thomas mentions this in citing Professor

18  Prakash in his *Polansky* dissent.  You know, Article II is

19  new.  It's different from British practice where

20  Parliament --

21          THE COURT:  Right.

22          MR. ENGEL:  And the like.  And so it's not

23  entirely surprising that, you know, in 1789 when there was

24  no Federal government to speak of and when, you know,

25  officers were only being created, you know, at that time

1    Congress would pursue, you know, to continue this practice

2    without thinking about it for expediency in a way in which

3    once the executive branch was set up quickly became

4    anomalous.

5              On the other -- on the history, you know, as we've

6    talked about, I mean, a lot of these statues are actually

7    criminal.  Not a lot, because there aren't that many, but --

8              THE COURT:  Some were, yeah, like the larceny one.

9              MR. ENGEL:  Exactly.  And so to some extent I

10   would submit that history just proves too much.  I mean, I

11   assume that the Department of Justice would not take the

12   position that a Qui Tam statute permitting private

13   prosecutions in this day and age is consistent with

14   Article II.  At least I hope not.  But, you know, certainly

15   *Morrison vs. Olson* and *Nixon vs. United States* sound very

16   strongly that the prosecutorial function is, you know,

17   inherently executive.  And so a lot --

18             THE COURT:  Well, I'm gonna ask this, I'm not sure

19   of the daylight here, given that the treble damages are

20   similar to what you would get in terms of -- when you're

21   criminally prosecuting a corporation, you're only getting

22   fines anyway.  So how is this any different subject to the

23   Eighth Amendment excessive fines.

24             MR. ENGEL:  Agreed.

25             THE COURT:  I understand that you don't have a

 1  grant jury subpoena power, but you do have civil discovery

 2  powers.

 3           MR. ENGEL:  Yeah, I totally agree.  And then I

 4  would just further submit that *Buckley* and *Heckler vs.*

 5  *Chaney* make clear that civil enforcement of the laws is

 6  equally a core executive power, you know.  And so, I mean, I

 7  think many people would find it, you know, surprising to

 8  think of a private prosecution in this day and age, you

 9  know.  But I think the constitutional principle is the same

10  for criminal and civil and, as the Court indicated, Qui Tam

11  is quasi criminal with respect to the fines and -- and the

12  treble damages and the attorneys' fees and the like.

13           But the key is it is a public injury to the United

14  States.  And while *Stevens* does say that there's a partial

15  assignment, which is good enough for standing, in part

16  because of the history, Justice Scalia and the Court dropped

17  a footnote to say we're not addressing the Article II.  And,

18  you know, I think for the reasons that the briefs make

19  clear, as Justice Thomas suggested in his *Polansky* dissent,

20  there's a pretty strong prima facie case that all of the

21  Article II decisions that have been coming from the Court

22  over the last 40 years, including *Morrison vs. Olson*,

23  frankly, weigh against the constitutionality of Qui Tam

24  under Article II, so...

25           THE COURT:  Same question I ended with defendants.

1   Is there any additional control that would make the current

2   False Claims Act constitutional for purposes of Vesting or

3   Take Care Clause?

4          MR. ENGEL:  So again, and we're in the realm of

5   hypotheticals, but I think because what -- under the current

6   structure, it can't be saved, because the decision to

7   initiate the case is made by the Relator and because the

8   Relator is not appointed consistent with the Appointments

9   Clause.  If you told me that -- obviously, if you have a

10  situation simply of a bounty, you know, to someone,

11  whistleblower who brings information to the government and

12  then the government proceeds and pursues the case, that

13  could be consistent.

14         Another hypothetical statute, which, you know, of

15  course, Congress would have to adopt, would be one in which

16  if the Attorney General wants the whistleblower to pursue a

17  claim of the United States on behalf of the United States,

18  just like you can have --

19         THE COURT:  Deputized?

20         MR. ENGEL:  Yeah, the Attorney General has the

21  power to appoint people to pursue litigation on behalf of

22  the United States.  That's the justification for, you know,

23  the half a dozen Special Counsels we've been dealing with on

24  the criminal side.  But the Attorney General has the same

25  authority on the civil side.  And so if there was ex ante, a

52

1  proper -- you know, proper appointment before somebody comes

2  into court, because I think an important thing here is that

3  the Relator is the first mover, right?  The Relator forces

4  the government to make a decision about whether to kind of

5  come in, whether not to come in, or whether she can pursue

6  on her own.

7           And, you know, I think as Justice Kavanaugh spoke

8  for the Court in *TransUnion* or as he spoke for D.C. Circuit

9  in his *Aiken County* opinion, I think it's very -- that

10  undermines prosecutorial discretion, which is a core

11  Article II, you know, power there.  So I think that's a

12  problem.

13           But if you said that the whistleblower can file a

14  report to the Department of Justice so the Department of

15  Justice could pursue the case or it could actually say the

16  Attorney General as the head of a department is going to

17  appoint the whistleblower to go forward with the case, I

18  suppose that, you know, would be consistent.  But obviously,

19  that's not what we have here.  We have a highly reticulated

20  provision in which an unappointed and unaccountable Relator

21  is litigating on behalf of the United States.  And the fact

22  that on the back end the Department of Justice has certain

23  rights doesn't solve the Appointments Clause problem and it

24  certainly doesn't solve the Vesting Clause or, I submit, the

25  Take Care Clause as well.

53

```
 1                THE COURT:  Okay.  Thank you, Mr. Engel.

 2                MR. ENGEL:  Thank you, Your Honor.

 3                THE COURT:  Ms. Estes or Ms. Koh, whoever would

 4    like to go first.

 5                MS. KOH:  May it please the Court, Jennifer Koh

 6    for the United States.  Good afternoon.

 7                THE COURT:  Good afternoon.

 8                MS. KOH:  Your Honor, with your indulgence, I

 9    would ask that I'll start with my Appointments Clause

10    arguments and will quickly get into the questions that --

11                THE COURT:  Okay.

12                MS. KOH:  -- were posed.

13                But I did want to start off with the Supreme Court

14    has spoken in many cases on these constitutional issues that

15    we're discussing here today and the government's view is

16    that those analyses that the Supreme Court has conducted in

17    those cases is very pertinent to hear, even though they were

18    oftentimes in Article III context or FCA statutory

19    interpretation.

20                And so if we look at how the Supreme Court in

21    Stevens and the other cases have analyzed these

22    constitutional issues, we feel it is clear here, in regard

23    to the Appointments Clause, as well as the Take Care Clause,

24    that defendants' arguments are gonna fail as they have

25    failed in the five appellate courts that have looked at
```

54

1    these issues directly.

2              First, as it relates to the Appointments Clause,

3    it's clear Relators are not officers of the United States,

4    nor are they acting officers.  *Stevens* has clearly stated

5    they are partial assignees of the government's claims.

6    They, thus, have a personal stake in the outcomes of the

7    case, which is directly at odds with any idea that they are

8    public -- that they are Federal officers.

9              *Cochise*, when looking at the statute of

10   limitations provision, was absolutely clear that they were

11   not an official of the United States charged with the

12   (inaudible) Act.  And additionally, the appellate courts

13   what have looked at this issue have found that Relators lack

14   indicia of officers and have ruled accordingly and have

15   held -- upheld the Relators' position with regards to the

16   Appointments Clause that there is no violation.

17             I think one of the issues that the Court is

18   struggling with here on the continuity standard, part of the

19   struggle there in the government's view is it's -- you know,

20   it's trying to stick a square peg into a round hole, because

21   when we talk about the continuity standard, Relator's

22   status, their status doesn't meet the initial threshold that

23   they are operating and exercising a core executive power

24   unfettered by supervision of the government.

25             So this idea that are they holding a continuing

55

1    position, there really isn't a position.  They don't have a

2    title.  They don't have a role.  They don't have anything

3    that the government has recognized beyond what the False

4    Claims Act allows, which is private parties that are --

5    declined cases, in particular, continue to litigate on

6    behalf of the government.  And so --

7            THE COURT:  Isn't their role, the Relator, and the

8    rights the FCA provided procedural in cause of action?

9            MS. KOH:  I'm sorry?

10           THE COURT:  Okay.  It sounds like you're first

11   starting like the what are they doing here, right, in terms

12   of power.  The False Claims Act gives them a role, they're

13   the Relator, and then gives them a lot of rights to initiate

14   an action, to seek discovery, to bring claims.  I mean, even

15   when the government intervenes, my understanding is they're

16   allowed to cross-examine at trial.  I mean, they're fully a

17   party.  So they still have a role, it's just not -- it's a

18   self-appointed role, but it's a role that's identified in

19   the statute.

20           MS. KOH:  Absolutely.  And the government --

21           THE COURT:  I mean, you said something earlier

22   that they -- and I agree *Stevens* contemplated they're a

23   personal assignee and, in that capacity, are not acting on

24   behalf of necessarily the United States, although that

25   doesn't deal with the preclusive effects.

1          But they are also acting as an agent.  Like they

2   bring an action in their own personal capacity, but also on

3   behalf of the United States.  So isn't that on behalf of the

4   United States?  I mean, literally, that's how the FCA is

5   written.

6          MS. KOH:  Right, yes.  And the Relators are

7   permitted through the False Claims Act to continue the

8   litigation on behalf of the United States.

9          I would note like they're a partial assignee of

10  the government's damages.  They get that because the

11  government so gives it to them.

12         THE COURT:  Then they're acting as an agent of the

13  United States in the entire case, not just as to the partial

14  assignee part, right?

15         MS. KOH:  They continue to take a role as pursuing

16  the declined -- their litigation in declined cases, but I

17  don't want to forget that there were these vast control

18  mechanisms in place whereby the government is looking over

19  their shoulder, keeping up with what's going on in ensuring

20  that the government's interest is met.

21         And so I know we haven't talked a lot about the

22  control mechanisms that the government has in place for

23  Relators, but I don't want them to be underestimated,

24  because they get rattled off all the time.  I mean,

25  ultimately, ultimately the government has the ability to

57

1    step in, intervene and dismiss a case over a Relator's

2    objection.  The government is not saying it's unfettered,

3    certainly the statute provides limitations on that, but I

4    think we see in *Polansky* that those limitations are

5    relatively low.

6              THE COURT:  What are those limitations?

7              MS. KOH:  So the Relators are entitled to a

8    hearing.  If the government wants to dismiss the case over

9    their objection, they're entitled to a hearing, and --

10             THE COURT:  Right.  But I don't have hearings just

11   for hearing sake, right?  So what happens at the hearing?

12   Like what's the standard that the Court is supposed to be

13   applying at the hearing?

14             MS. KOH:  So I think *Polansky* is the one that --

15   the standard that is set, which is the Court needs to assess

16   whether the dismissal complies with Rule 41 and the

17   government is given substantial deference.  So as we've

18   discussed already, if the government deems the benefits of

19   the case outweigh the costs, then that is -- and the Court

20   agrees with that, then the Court -- the case should be

21   dismissed even if Relator's statements to the contrary are

22   credible.  It's whether the government feels the case is

23   worth pursuing.  And it's not --

24             THE COURT:  If the government is moving to

25   dismiss, obviously, they don't think the case is worth

 1   pursuing, so doesn't that render the standard less standard?

 2        MS. KOH:  So the government has to do an analysis

 3   of whether the cost and benefits of the case ultimately --

 4   like in *Polansky*, it was an issue of the money and the

 5   resources that were going into that case.  So there is a

 6   standard there, it's just *Polansky* has set that standard

 7   relatively low.

 8        So the government gets kind of the gravity of the

 9   say in this because it's the government's cause of action

10   that the Relators are pursuing on -- because the government

11   allows them to do so.

12        THE COURT:  Well, that seems like they're acting

13   more like the agent of the government and less and less on

14   their own behalf.

15        MS. KOH:  Well, so that's the structure that the

16   False Claims Act sets aside -- sets forth for us that's what

17   the structure is.  Whether it's an agent or not, I won't go

18   as far as to say that the Relator is an agent of the

19   government.  The Relator is pursuing their claims that the

20   government has given them, but not unfettered, not in a

21   vacuum, with the government overseeing what's going on.

22        THE COURT:  What about the res judicata or

23   preclusive effect of a non-intervened case on the

24   government?

25        MS. KOH:  So if -- non-intervened case --

1          THE COURT:  You don't usually allow, right, a

2  preclusive effect to a nonparty?

3          MS. KOH:  Well, so in the case where a

4  government -- the government has declined to intervene, the

5  case goes all the way through trial and there is a judgment,

6  I mean, the government is bound by that judgment if it is --

7  you know, if the judgment is for the government's claims.

8  And so that's contemplated by the statute.

9          I think the government would say before you get to

10  that point, all the various control mechanisms and

11  constraints that the government had in place come into play.

12  So in terms of the government being bound by a decision that

13  we completely disagree with, that doesn't just happen

14  overnight.  The government as -- in its role of monitoring

15  the Relator Qui Tam litigations out there, is keeping an eye

16  and when it sees certain problems or if it thinks it's going

17  in a direction that the government doesn't agree with, we

18  have the ability to intervene.  We have the ability to come

19  in and dismiss over the Relator's objection.  We have the

20  ability to broker a settlement, whether the Relator likes it

21  or not.  And so all of those things together need to be kind

22  of examined holistically to look at this res judicata issue.

23          THE COURT:  So what if at a Rule 42 -- I'm sorry,

24  41 dismissal motion the government says we disagree with the

25  theory of fraud that the Relator brought.  Is that

1    sufficient?

2          MS. KOH:  It's hard to answer a hypothetical like

3    that.  I think if the government disagrees --

4          THE COURT:  I mean, you wouldn't have brought the

5    case, right, if you thought the theory was insufficient?

6    But maybe the Court thinks that the theory is valid based on

7    the -- like maybe it's a contract case, for example, and the

8    plain meaning of the contract would support the Relator's

9    view, but the government for a variety of reasons doesn't

10   want to pursue that contract interpretation.  Maybe it's not

11   a term they care about, maybe it's a contractor they want to

12   continue having good relations with, maybe it's a contract

13   term that appears in a bunch of contracts and they don't

14   want to litigate this case or have binding precedent.  Is

15   that a sufficient basis for a dismissal?

16         MS. KOH:  Under Rule 41, in the situation of a

17   declined Qui Tam case, yes, I think it would be.  If the

18   government could satisfy the Rule 41 standards, which is

19   giving the government substantial deference, then, yes, it

20   would be.

21         I think in the hypothetical, however, if the

22   government had a problem with the theory of the case that

23   the Relator was pursuing, there are many avenues up to that

24   point that would have kicked in short of going to trial and

25   presenting the case before a jury.  Right?  So I think

1    that's where -- if we look at the control that the executive

2    has over the Relator's, there are many of them, and they

3    allow the -- they allow the government to have that control.

4         Plus, the spirit of all of these controls makes

5    Relators and the government work in tandem many times.  Like

6    oftentimes there's not -- you know, there may not be -- we

7    don't have to invoke the rules every single time, because

8    Relators know, right?  They know if they're going to pursue

9    a case that they think the government is not gonna agree

10   with, they're most likely not gonna pursue the case, because

11   they know the government could come in and dismiss it.  It

12   kind of all works together here.

13        And I think this kind of ties back to when we look

14   at what is the power that is vested in the Relator.  And

15   this kind of goes into the Take Care Clause issues.  But

16   defendants rely on cases like *Morrison* and *Buckley*,

17   (inaudible), all of those cases to say, look, look at

18   these -- these officers in these roles are officers and,

19   therefore, the Relator should be too.  Vastly different.

20        In *Buckley* the Federal Election Commission, the

21   individuals at issue were the actual commissioners of the

22   Federal Election Commission.  Vastly different kind of

23   missions and powers that were given to them.  Same with the

24   CFPB and even the Independent Counsel, right?  Even though

25   the Independent Counsel has a similarity that it's one

1    particular investigation, they have way more authority than

2    the Relators have, mostly --

3              THE COURT:  In what way?

4              MS. KOH:  In the Independent Counsel situation,

5    the Department of Justice stops investigating.  We can't

6    also pursue what the Independent Counsel is pursuing in any

7    investigation.

8              THE COURT:  What about Special Counsel?

9              MS. KOH:  Special Counsel, same way.  Like once a

10   Special Counsel is investigating, government has to be very

11   careful, we can't be doing -- investigating two -- having

12   two parallel investigations, criminal investigations, into

13   one action.  Whereas in the False Claims Act, the Relator

14   can continue to pursue those claims, there's nothing that

15   precludes the government from continuing to investigate

16   those same claims.  And so I think --

17             THE COURT:  Does that ever happen?

18             MS. KOH:  There are situations where it happens.

19   There's some very practical situations where the government,

20   you know, is forced to make an intervention decision before

21   it's prepared to do so and it will continue to -- it will

22   have to notify the Court that it's not intervening, but it

23   does continue to investigate.  There are -- you know, also,

24   not just limited to the False Claims Act, the same claims if

25   they violate other rules, regulations, like they can be

63

1  pursued in that front as well.

2          THE COURT:  Okay.  So the difference is no

3  parallel investigations.  What else?

4          MS. KOH:  So with Independent Counsel, they have

5  Independent Counsel can issue indictments, Independent

6  Counsel can appoint its own employees, they can participate

7  in the criminal and civil litigation, they can conduct grand

8  jury proceedings, all things that, obviously, because they

9  are criminal actions -- and I will take issue that I do

10  think there is a difference when we're talking about the

11  constitutional powers of the executive, there is a

12  difference between criminal and civil.  But, you know, they

13  can conduct their own grand jury investigations.  So

14  Independent Counsel has this vast power that's given to

15  them.

16          It's even more stark in the CFPB situation or the

17  FEC or even in the Free Enterprise, the public company

18  accounting oversight board, they are given a mission to do

19  something, right?  And with CFPB, they are given a mission

20  to ensure consumer products are safe and transparent.

21  Right?  And then the Federal Election Commission, they're

22  given the mandate of enforcing the Federal Election Campaign

23  Act.  Very different from Relators.

24          A single Relator handles -- brings a single case

25  against a single -- well, whichever defendants they name, it

1    can be more than one defendant, but the scope of what

2    Relators are handling, vastly different from those other

3    cases.

4              And so I do think as the Court struggles with this

5    continuity issue and some of the other indicia of officers,

6    that's part of why it doesn't quite fit.  It doesn't quite

7    fit together, because it's just --

8              THE COURT:  I hear what you're saying, like the

9    Commission could investigate multiple different

10   investigations, multiple, and it's all within a different --

11   it's within a subject matter.  But in some ways the FCA like

12   authorizes a Relator to bring -- if they have knowledge,

13   personal knowledge, and can allege that, you know, under

14   Rule 11 and whatnot, they can allege it as to a host of

15   different claims.  It's not limited to elections, it's not

16   limited to securities fraud, it's anything, right?  It's

17   the -- in terms of substantive law, it's any type of

18   contract with the government, any sort of fraud on the

19   government.

20             MS. KOH:  Yeah.  And I --

21             THE COURT:  Isn't that a broader mandate?

22             MS. KOH:  It is.  So I think, again, kind of

23   looking at this from a -- if we step back a little bit as to

24   who Relators are, it's not a monolithic body that's out

25   there that has this power, right?  It's gonna be --

1          THE COURT:  It's anyone with personal knowledge to

2    make sufficient allegations in a complaint.

3          MS. KOH:  Yes.  And they can then bring any --

4          THE COURT:  And who aren't involved themselves in

5    the fraud.  But, yes.

6          MS. KOH:  Any potential False Claims Act violation

7    that they see and have a basis to bring.

8          THE COURT:  Isn't that a bigger mandate, though,

9    is my point, in terms of what you're trying to enforce?

10          MS. KOH:  Well, it is -- on one hand it is a

11    bigger mandate.  I do think it then comes with the control

12    mechanisms that are in place there.  Right?  And I think one

13    of them is that the Relator has to have information that

14    they're bringing to them that really limits down what an

15    individual Relator -- what authority and power that

16    individual Relator has.  Right?  Because any individual

17    person isn't seeing the fraud across all the government

18    contracts and government programs out there.

19          THE COURT:  Sure, they're the ones that they're

20    aware of, right.  I agree.

21          MS. KOH:  So I think we have to look at Relators,

22    we have to look at Relators as who they are, individuals out

23    there who bring individual cases versus a Relator -- a kind

24    of grand Relator monolith out there that has all these

25    powers that they can exercise, right?  But the way the False

1    Claims Act was written was it was very circumscribed to what

2    the Relator knew in that particular situation.  So I

3    think --

4            THE COURT:  For continuity purposes, can you give

5    me an example of someone who exercises this sort of

6    substantial power?  And by that, I mean civil enforcement

7    power, but who has not been deemed an officer?

8            MS. KOH:  So there are situations in the other --

9    like in the Sherman (ph) Act type case or in the Title VII

10   cases where an individual is given the ability to bring a

11   suit to vindicate public rights.

12           THE COURT:  But that's because they have an

13   individual injury that -- they are themselves an aggrieved

14   party.  Am I right in saying that they don't bind the United

15   States in whatever parallel proceeding the United States may

16   pursue?

17           MS. KOH:  That's correct.

18           THE COURT:  So I mean, that seems wildly different

19   to me.  Like if I have a personal claim because you hit me,

20   I should be allowed to vindicate it even if the government

21   wants to charge you with assault.

22           MS. KOH:  Yes.  Yes.  So not to say that there's a

23   one-on-one comparison there, but I think that is -- that

24   is -- the spirit of what happens in those cases are similar

25   to what happens in the False Claims Act.

1          To answer your direct question of whether there's

2    a situation where there is someone who brings a suit to

3    vindicate public harm, I -- none is coming to my mind right

4    now.

5          THE COURT:  I think that's a very important

6    question for purposes of continuity.  Right?  Is there any

7    individual exercising substantial executive power in a civil

8    enforcement action who has been not deemed an officer?

9          MS. KOH:  Well, I think where the government would

10   take issue there is with the exercising substantial

11   government power.  And that's what -- I think we don't need

12   to get to the continuity.

13         THE COURT:  Okay.  Then cut that out of my

14   question.  Anyone who has civil enforcement authority who

15   has not been deemed an officer?

16         MS. KOH:  Yeah, but I think if they're not -- if

17   they're not exercising substantial government power, they

18   don't need to be deemed an officer.  Right?  So I think

19   that's -- the defendants' argument fails on that first --

20   first prong, and so we don't really --

21         THE COURT:  I think that's a hard argument in

22   light of the case law, that civil enforcement authority to

23   initiate an action to judgment where you can get treble

24   damages that are considered punitive in nature subject to

25   the Eighth Amendment is not a substantial executive power.

1          MS. KOH:  Well, posed that way, I actually would

2    agree with you.  Definitely enforcement of the False Claims

3    Act is definitely a core executive power, it's significant.

4          THE COURT:  Enforcement of the -- you agree?

5          MS. KOH:  I agree with you that enforcement of the

6    False Claims Act is a substantial power.  It is a core

7    executive power.  There's no --

8          THE COURT:  Then we're really in continuity land.

9          MS. KOH:  Well, so then that power is vested --

10   the Attorney General is the one who has got the primary

11   responsibility to enforce the False Claims Act.  The False

12   Claims Act allows for this -- this idea of a Relator to come

13   in and where the Attorney General deems it appropriate to

14   let the Relator move forward.  That's where I think I would

15   take issue with what the Relator has is then not, in and of

16   itself, exercising a core executive power, because they are

17   constrained by the government control mechanisms that are

18   there and I think Congress has allowed for this flexibility

19   for the executive to decide how to enforce those powers.  I

20   think courts have recognized --

21         THE COURT:  Okay.  So you're just saying the

22   Relator is not the one actually enforcing it, the government

23   is?

24         MS. KOH:  The Relators are enforcing it on behalf

25   of the government.

1          THE COURT:  Okay.  I think I understand that.  Is

2   there a definition you think the case law prescribes for

3   continuity?

4          MS. KOH:  I think for continuity, since we don't

5   think we need to get there and we don't think we need to

6   establish a standard for Relators to meet continuity that

7   there isn't one in this context.  And I think --

8          THE COURT:  If I disagree, what's the standard for

9   continuity I'm supposed to be applying?

10         MS. KOH:  Well, I think in addition to continuity,

11  one of the things that defendants raises, this removal

12  requirement, right, that the government can't -- unlike an

13  officer, they can't remove them, which I think ties to the

14  continuity piece.

15         THE COURT:  I think it does and that probably

16  helps your argument on continuity, but I think it really

17  undercuts your argument on Take Care and Vesting.

18         MS. KOH:  The removal -- sorry.

19         THE COURT:  The inability to remove.

20         MS. KOH:  Well, I think government would say, yes,

21  we do not have, like you see in other statutes a carte

22  blanche ability to remove that says when the executive so

23  decides, this officer is out.  Agreed, the government does

24  not have that in the False Claims Act.  But I think, again,

25  it's this mismatch of, first of all, there's not --

1          THE COURT:  Which is a big problem, right?  Like

2     if you're the government and you don't like how your agent

3     is prosecuting the case, you put a different agent in

4     usually.  So you reassign the case to a different line

5     prosecutor.  But that's not capable here.  Right?  You can

6     kill the whole case through dismissal, but you can't replace

7     the person who is litigating unless you wanted to take on

8     the action yourself?

9          MS. KOH:  So I think the removability talks about

10    removing a person from a particular office, which here I

11    think doesn't quite fit where Relators are, because there's

12    not an office.  What does fit, what kind of is an analogy

13    there, would be the ability to dismiss the case.  And I

14    think the government has the ability to go in and dismiss a

15    case with the constraints that are built into the False

16    Claims Act and the *Polansky* decision.  So it's not carte

17    blanche, right?  But it is -- the government has a very

18    strong ability here to dismiss a case if it so decides to do

19    so and then to continue to investigate whichever claims it

20    would like to investigate.

21          THE COURT:  If the Court grants your dismissal

22    without prejudice.

23          MS. KOH:  That's right, yes.  That's right.

24          THE COURT:  Okay.  Can we turn to the history?  I

25    imagine you might have a disagreement at the threshold

1    question of what -- maybe you don't have disagreement.  Can

2    you tell me the constitutional principle I first look to

3    before I start parsing history to see what's similar, what's

4    dissimilar?

5            MS. KOH:  Well, I think, so the *Riley* (ph) court

6    in the -- I think *Riley* was in the --

7            THE COURT:  Fifth Circuit.

8            MS. KOH:  Sorry, was it the Fifth Circuit?

9            THE COURT:  The Fifth, yeah.

10           MS. KOH:  It said the history of the False Claims

11   Act is certainly a touchstone illuminating the

12   constitutionality of the False Claims Act.  Just to go to

13   the point of courts have looked at this, most importantly

14   *Stevens*, right?  But --

15           THE COURT:  *Stevens* didn't look at this question,

16   though.

17           MS. KOH:  *Stevens* looked at the history of the

18   False Claims Act in the context of Article III, but I don't

19   think their analysis of the history -- historical basis of

20   the False Claims Act would change whether they're looking at

21   Article III versus Article II.  I think that -- so their

22   analysis is instructive here on how they looked at it.  They

23   clearly put great weight, right, great weight in the long

24   history of the False Claims Act -- sorry, in Qui Tam

25   provisions going back, way back, to England and to the early

1    United States and all that, that whole time period, and

2    followed that lineage up to 2020 when it decided *Stevens*.

3         So kind of just one note is I know defendants make

4    an argument that hasn't come up today, but that the 1986

5    amendments of the False Claims Act kind of cut this

6    historical tie.  We would just note that *Stevens* didn't --

7    the Supreme Court in *Stevens* didn't view it that way.  But

8    we would look at *Stevens* as instructive here as to how the

9    Supreme Court would ultimately consider the history of the

10   False Claims Act and they found that it was well nie

11   conclusive that the False Claims Act, that Relators had

12   Statutory III standing and that analysis would be same if

13   they were looking at Article II constitutionality.

14        THE COURT:  Okay.  I don't think that *Stevens* -- I

15   mean, there would be no reason to explicitly say we are not

16   addressing the Article II question if they thought they

17   were.

18        MS. KOH:  Well, I think that they were not

19   explicitly addressing Article II, but I think what I'm

20   trying to say is that their analysis that they undertook

21   would be a very similar analysis and I would expect them to

22   come out the same way as it relates to the history of the

23   False Claims Act.

24        THE COURT:  Okay.  If I disagree, what do you

25   think about the constitutional theory argument of -- I mean,

1   and *Stevens* is, you know, early 2000s, before a lot of the

2   more recent separation of powers opinions have come out.

3           In light of what are I think compelling arguments

4   under Article II, what kind of history is needed here to

5   prove that it overcomes what seems to be the import of some

6   of those recent opinions?

7           MS. KOH:  So I think -- I know you asked the

8   question earlier is it the fact that the statutory enacted

9   versus --

10          THE COURT:  Being used and how consistently used,

11  that sort of thing.

12          MS. KOH:  Yes.  And so I think the government

13  would hang its hat on the fact that enactment portion of it,

14  really having an issue, we don't think that at that time

15  they were enacting laws kind of without deep thought.  And

16  so the fact --

17          THE COURT:  Contra-*Marbury v. Madison*, *New York

18  Times v. Sullivan*, I mean, contra all those opinions?

19          MS. KOH:  Yes.  And that the fact that they put

20  them on the books, that is the key -- the key inquiry.

21          THE COURT:  Okay.  Do you have a Supreme Court

22  case that tells me that's the key inquiry?

23          MS. KOH:  I don't, other than I would point to

24  *Stevens* in terms of how the *Stevens* court looked at this,

25  they were looking at the enactments and focusing on the laws

 1    that were enacted at that time.

 2              THE COURT:  Do you know if the then-Solicitor

 3    General countermemo to Bill Barr's OLC memo is public?

 4              MS. KOH:  I am not aware whether it's public or

 5    not.

 6              THE COURT:  Okay.  Do you know if there's a

 7    compendium of the -- lists the enactments or prosecutions

 8    other than me doing Westlaw, Boolean searches trying to find

 9    opinions that dealt with that?

10              MS. KOH:  Other than that, and I think defense

11    cited a few things, the government is not aware of a

12    compendium of all these early statutes.  I wish I were, but

13    unfortunately I am not.

14              THE COURT:  I wish I were.

15              Okay.  So the government's position is that

16    enactment is the relevant historical touchstone, not use,

17    whether widespread or consistent?  Obviously, those would be

18    helpful, but the key is enactment from one of the first

19    Congresses.

20              MS. KOH:  Yes.

21              THE CLERK:  What do I do with the fact that not

22    all those enactments are of the same sort and then *Bruen*,

23    you know, tells me that I have to be looking to see if

24    they're relevant comparators?  And here, as I said, I seem

25    to see three buckets that don't seem similar to me, bounties

1    for informers with no cause of action, causes of action,

2    which I think are similar to antitrust and Title VII-type

3    plaintiffs who have real injuries themselves in addition to

4    vindicating the public wrong, and then I'll change my -- I

5    won't call them true Qui Tams, because that's been

6    problematic.  I'll call them the FCA-like Qui Tams that have

7    no aggrieved person, but have a cause of action.

8           What do I do with the fact that there's far

9    less -- when you combine them altogether -- and I don't

10   think *Stevens* was trying to do some parsing of all of the

11   record, it was just kind of saying, yes, this is true for

12   case in controversy purposes.  What do I do about that, that

13   there's less of them when we start looking at what's an

14   apple and an apple?

15          MS. KOH:  I think for purposes of looking back at

16   the history in this context and the reason why I think

17   *Stevens* kind of groups all of these together is because

18   you're not gonna find the perfect match, right?  And I think

19   you're not gonna find the exact something that looks like

20   the False Claims Act that was enacted in 1863 back during

21   the early enactment statutes.  So I think there is -- the

22   Courts should be permitted to kind of lump those together

23   and take the spirit of Qui Tam action, the spirit of an

24   individual bringing a case to vindicate a public right that

25   is beyond themselves, was fully entrenched back in the

1    founding of the country.

2              THE COURT:  Yeah, I agree with that, right.  I

3    don't think the historical analogue -- and this is I think

4    what the SGRU (inaudible).  The wrong inquiry is to find,

5    you know, this perfect silver coin matches this one.  That's

6    not a -- it's to find the legal rule that's consistent.  And

7    I think the legal rule that's consistent is not aggrieved,

8    but I have a cause of action.  And there were at least five

9    to ten of those passed by the first few Congresses.  So it's

10   no unheard of, they existed.  What weight do I give them?

11             MS. KOH:  I think the government -- the Court,

12   Your Honor, should give them significant weight.

13             THE COURT:  Because they were enacted?

14             MS. KOH:  Because they were enacted.  And *Stevens*

15   gives them significant weight.

16             THE COURT:  Well, *Stevens* lumps all of it

17   together, though.  That's my point.  There's not this

18   differentiation between historical kinds of Qui Tam.

19             MS. KOH:  So I think *Stevens* was not faced with

20   this -- the paradigm of separating these things out.  So

21   it's hard to say what they would have said if they were

22   faced with this, but I think the government would say, yes,

23   even though they were no all lumped together, *Stevens* was

24   looking at Qui Tam actions as a whole and whether that

25   legacy followed through from the beginning all the way until

1   today.

2            THE COURT:  What do you do with the fact that they

3   weren't used for large swathes of America history?

4            MS. KOH:  Well, I think, you know, that that is

5   something to be considered, but that you would put more

6   weight on the fact that these were all enacted at that time.

7            THE COURT:  Even though they weren't debated the

8   way some of the other statutes that were enacted were from

9   the first few Congresses?

10            MS. KOH:  Well, I think the fact that they were --

11            THE COURT:  Is that real liquidation, is I guess

12   the right way of saying that?

13            MS. KOH:  Well, I think the fact that they were --

14   they were considered and put on the books and enacted, like

15   that is the primary length to which the Court should look at

16   the history.

17            THE COURT:  Wouldn't that have been dispositive in

18   a lot of seminal cases?

19            MS. KOH:  In the context of the False Claims Act

20   or --

21            THE COURT:  No, just I'm talking about like as a

22   constitutional interpretation matter writ large.  If they

23   were enacted by the first few Congresses as almost

24   dispositive of the history, wouldn't that render a lot of

25   seminal cases wrong?

1          MS. KOH:  Your Honor, because that was not part of

2    what our brief addressed and what I'm prepared to speak to

3    you today, I don't really have a good answer for you on that

4    one.

5          THE COURT:  Okay.  I think the strongest argument

6    of the constitutionality of Qui Tam is the historical

7    pedigree, so I think it's very important how that is parsed

8    and what weight is given to aspects of it.

9          MS. KOH:  I -- sorry.

10         THE COURT:  No, no, no, that's why I'm asking

11   about it in all transparency.  I think that's really the

12   best argument the government has.

13         MS. KOH:  Well, and so it may be that my colleague

14   sitting at the table will have a good answer for you on that

15   point, but what I did want to kind of emphasize to the Court

16   is that I think more than the historical pedigree, which is

17   very important and I absolutely agree that it's one of the

18   main arguments here supporting the constitutionality, but I

19   don't want to lose from our sight that the power, the

20   executive power, that is being given to the Relators is not

21   a carte blanche carving out what the Attorney General can do

22   and, here you go, Relators, go for it.  Right?  It's an

23   Attorney General considering which situations they should

24   allow Relators to move forward in, having them do so, but

25   with supervision of the Attorney General and the Department

1    of Justice.  It's not carte blanche go at it and, you know,

2    be -- you know, do what you will.  It's constrained within

3    the provisions of the False Claims Act that give the

4    executive controls, and substantial controls, over the

5    Relator.

6              And so I think that's where the government would

7    see one of the extremely powerful arguments here as to why

8    both in Appointments and in the Take Care and Vesting

9    Clauses, the defendants' arguments fail.  We think the

10   Circuit Courts that have looked specifically at Article II

11   agree that they fail.  We think the Eleventh Circuit in the

12   Race (ph) opinion, even though not about Article II

13   constitutionality, they weren't silent about it, they spoke

14   on -- they spoke on Article II, they cited to the other

15   Circuit Courts that have --

16             THE COURT:  They said they have significant

17   guardrails and control over them.  I agree.  And then they

18   were explicitly carved out deciding the Article II question.

19   I think you have a stronger Vesting/Take Care Clause, but by

20   even the way you framed it, saying that there is an

21   enforcement, like substantial executive power through the

22   enforcement of the FCA and the Relator is just kind of under

23   the control of the Department of Justice, I think that leads

24   to a big Appointments Clause problem.

25             MS. KOH:  I think the Appointments Clause also

1    looks at who would need to be an officer, someone who is

2    exercising significant authority, right?  And that's just

3    not what the Relators are doing in this situation.  And so I

4    think even for the Appointments Clause --

5            THE COURT:  Well, they're acting as the agent of

6    the government that you said the exercise of that

7    enforcement statute is.

8            MS. KOH:  Well, they are acting as -- because

9    Congress saw fit to enact the False Claims Act and give the

10   Relators this position, they are able to pursue cases in the

11   government -- in the Attorney General's place.  I think that

12   that's not just -- it's not just in their place, period, I

13   think in their place with all the control mechanisms that

14   the Attorney General continues to have.

15           I think the Supreme Court in multiple instances

16   identifies who the Relator is, they are a private party,

17   right?  They cite to the statute that said litigations or

18   actions brought by private parties.  There's no

19   contemplation that Relators were --

20           THE COURT:  Okay.  So what's the difference

21   between Congress saying, private party, you can prosecute

22   anyone for larceny, which is what they did at the founding?

23           MS. KOH:  Well, I think there we would -- if we

24   envision different types of False Claims Act that would

25   entail criminal violations, I think that's where we would

 1    say that's gonna be a different analysis, because criminal

 2    prosecution goes to the heart of the executive power,

 3    whereas civil litigation there's some flexibility that is

 4    afforded the executive to allow the executive to --

 5              THE COURT:  I thought you said the False Claims

 6    Act enforcement, civil enforcement, is substantial executive

 7    power.

 8              MS. KOH:  It is substantial executive power that

 9    the Attorney General always retains responsibility for.

10              THE COURT:  Okay.  So if you're designating a

11    private individual to act on behalf of the United States,

12    which is what is happening as a Relator, why is that any

13    different than Congress creating a statute allowing them to

14    do that in a criminal capacity?  And specifically, how do

15    you marry up the fact that the -- one of the first Qui Tams

16    that was passed after the founding was for criminal Qui Tam

17    for larceny within any of the places under the sole and

18    exclusive jurisdiction of the United States or upon the high

19    seas or conversion of certain war materials?  That's passed

20    in 1790.

21              MS. KOH:  Well, I would go back to -- I would go

22    back to the idea that the Attorney General is passing to

23    Relators the ability to pursue the case with those control

24    mechanisms in place.  So I would take issue with the agent

25    argument that is -- that defendants are making, that they

1    suddenly become the agent of the government.

2           THE COURT:  I think *Stevens* says they are.  The

3    statute says they are.  Every Qui Tam complaint I have says

4    they are.

5           MS. KOH:  *Stevens* said that they are partial

6    assignees, so thus they are --

7           THE COURT:  And that they're agents, but the

8    partial assignee is what gives them the Article III

9    standing.  If all you had was agency theory, I think there

10   would not be Article III for a private person.  You would

11   have obvious Article II problems, which I think is why the

12   Court in *Stevens* didn't talk about it.

13          MS. KOH:  So I think with the control mechanisms

14   that the executive has over the Relator kind of diminishes

15   the level of power that is given to the Relators and

16   sufficiently enough that it does not create an Article II

17   constitutionality invasion of --

18          THE COURT:  I think those are a little bit two

19   different issues, thought, right?  Like that might remedy

20   some of the concerns on the Take Care/Vesting, but I don't

21   think it remedies the Appointment Clause problem.  And that

22   is not remediable, right?  Like there are different remedies

23   for a removal back-end problem than there are from a

24   front-end Appointments Clause problem.

25          MS. KOH:  Well, I think -- I respectfully

 1    disagree.  I feel like in terms of the Appointments Clause,

 2    before even deciding whether an individual is an officer,

 3    the question is are they exercising sufficient authority

 4    that creates a constitutional issue here.  And that's where

 5    the government -- the Relator is -- because of this

 6    constraint that the executive has upon them, they're not

 7    acting as officers, they aren't exercising the same

 8    authority that the Attorney General would exercise or one of

 9    his designees.  So I think that's where --

10             THE COURT:  Can you give me an example of someone

11    who is binding the Federal government who has not been

12    deemed an officer?

13             MS. KOH:  Sure.  Like myself as a trial attorney

14    at the Department of Justice, right?  Not deemed an officer

15    and not appointed, however, binding the government.

16             THE COURT:  Okay.  What do you do with the early

17    history over proving the point on criminal enforcement?

18             MS. KOH:  So I think, again, going back to how we

19    look at the history, it's not a one-to-one comparison, so to

20    the extent that some of those early Qui Tam statutes did

21    contemplate criminal prosecutions, I think if you then look

22    at when the False -- the False Claims Act did not

23    contemplate that, there's a separate statute that was --

24             THE COURT:  I know.  But how do you marry that up

25    with your initial statement that the enactment is the most

84

1    important part of historical analysis for constitutional

2    purposes?

3              MS. KOH:  I'm sorry, I missed the enactment and --

4              THE COURT:  You said that for constitutional

5    interpretation questions, the fact of the enactment is the

6    most important touchstone.  If that's true, then what do I

7    do with the fact that in 1790 Congress authorized criminal

8    Qui Tam for larceny?

9              MS. KOH:  I think that --

10             THE COURT:  It's an Act -- like, what?  What do I

11   do with it?

12             MS. KOH:  And that's where I would say that the

13   Court should look at that not as a one-to-one.  Yes, that

14   was in place --

15             THE COURT:  Is that unconstitutional?

16             MS. KOH:  I don't believe it's unconstitutional.

17   I think --

18             THE COURT:  It's not unconstitutional for a

19   private individual to criminally prosecute on behalf of the

20   Federal government?

21             MS. KOH:  I'm sorry, I thought that statute that

22   you were referring to, whether that was unconstitutional.

23             THE COURT:  Wait.  I'm talking about the 1790

24   statute.  If Congress were to pass that today, is that

25   constitutional?

85

1           MS. KOH:  Oh, if they were to pass it today?  I

2    don't -- I don't have a good answer to that in terms of what

3    Congress might do today.  I would imagine, I would imagine,

4    that Courts have held that criminal prosecution and civil

5    litigation are two different things.  They're of the same

6    category, but two different things.  And criminal

7    prosecution goes to the heart of executive power, so I

8    would -- I can't imagine that such a statute would be passed

9    whether -- if it happened and what the analysis would be.

10   Hard to say standing here.

11           THE COURT:  Right.  So my point is I think that

12   the history would not be very instructive, because I'm

13   getting the impression you would say it's not

14   constitutional, which I think is probably consistent with

15   what every Court in the country would rule.

16           So that's why I'm asking the question.  Like is

17   enactment alone really the touchstone for historical

18   constitutional analysis?

19           MS. KOH:  Well, I think enactment of the statutes

20   of those kinds, right?  And I think that's -- that's where I

21   keep going back to, is you're not gonna find specific False

22   Claims Act statutes back then, but you look at the kinds

23   of --

24           THE COURT:  Yes, it matters what's relevant and

25   what's not relevant.  The reason I put it in the relevant

1    bucket is because it's not the person from whom it was

2    stolen, it's just the person who has a cause of action and

3    who has been given a portion of the conversion proceeds that

4    could be recovered from the criminal defendant.

5              MS. KOH:  And I would point to the -- I would hope

6    that the courts would look at all of the statutes that were

7    passed at that time that are relevant and the vast majority

8    of them are not criminal.  And so to the extent that when

9    you're examining the False Claims Act today and looking back

10   at the legacy, it's not gonna be a perfect match and there

11   is this one criminal act back then.  But that doesn't --

12   that doesn't dissuade the Court for finding that history

13   supports the constitutionality of a Qui Tam action.

14             THE COURT:  What's the difference between a civil

15   enforcement action under the FCA against a corporation and a

16   criminal indictment?

17             MS. KOH:  So that is a tough one.  And that is one

18   that is kind of a sticking point, because the FCA clearly is

19   a civil statute, so it's at least labeled as such.  Because

20   the False Claims Act seeks damages that the government

21   has -- that was perpetrated on the government and that is

22   able to do a trebles of that, plus add penalties, there

23   is -- there have been instances where the Eighth Amendment

24   has been invoked here.  I mean, we saw it in *Yates*.  But we

25   would -- the government's position would be --

1          THE COURT:  And the Supreme Court says it's

2    punitive.

3          MS. KOH:  Yes.

4          THE COURT:  So it --

5          MS. KOH:  But the government's position still here

6    would be that it is damages that are -- that the government

7    has experienced and, therefore, there is no -- it's not a

8    criminal statute.  It's not -- it doesn't have the -- the

9    penalties may overlap and look the same as what you might --

10          THE COURT:  How would it differ?  Right?  Like you

11   could just charge them with wire fraud or mail fraud, but

12   usually wire fraud given how that stuff rises.

13          MS. KOH:  Well, the damages in the False Claims

14   Act are tied specifically to the fraud, to the -- you know,

15   tied back to the claims that are false.

16          THE COURT:  Right.  In some ways you get more

17   money out of the False Claims Act then you would out of a

18   fine at criminal sentencing.  So I don't see a lot of

19   daylight then.  Is it just the ability to use the grand jury

20   to do discovery?

21          MS. KOH:  I think that's one of the facts there.

22   I think also we would -- we at the Department of Justice

23   wouldn't be able to invoke criminal jurisdiction.  My civil

24   frauds and U.S. Attorney's Offices that are enforcing the

25   False Claims Act are not able to prosecute criminal actions

1    absent getting authority from high up there.  So I think

2    there is gonna be a difference between civil and criminal.

3    I understand that the penalties or the ultimate outcome may

4    look similar.

5              THE COURT:  Or it may look worse.

6              MS. KOH:  Or it may look worse.  Yeah, it may look

7    worse.  Depending on the scope of the fraud, it may look

8    worse.  But the government is in the business of making

9    itself whole and making its best effort to prevent future

10   potential companies, individuals, businesses from

11   contemplating fraud, to dissuade them from doing so.  And so

12   that's -- you know, Congress has enacted the False Claims

13   Act in order to do that and deemed it a civil statute and so

14   that's the government's view.

15             I think there is language in the Fifth Circuit

16   that talked about criminal statutes just being different,

17   criminal prosecution going to the heart of the executive's

18   core constitutional powers.  And so on that line we would

19   continue to say there is a difference between a civil False

20   Claims Act and a criminal prosecution of something.

21             THE COURT:  Okay.  The last bucket of questions I

22   asked counsel on the other side, is this property under the

23   Property Clause, the partial assignment interest that

24   *Stevens* contemplates?

25             MS. KOH:  So the Federal -- so the Federal

1    government, we -- we obviously have a property interest in

2    our Federal fisc and the False Claims Act is enforcement of

3    any sort of fraud upon that Federal fisc.  So in that sense

4    we would say that --

5             THE COURT:  The cause of action you have against

6    those who you allege to have defrauded you, do you think

7    that's property?

8             MS. KOH:  I think there is a Property Clause, I

9    think that it is properly invoked here, that it ultimately,

10   if you boil it down to what is the constitutional basis,

11   would go back to the Property Clause.

12            THE COURT:  Right.  So are you saying it's

13   property?  The cause of action that is contingent on

14   certain -- yet reduced to judgment, is that property?

15            MS. KOH:  So I would note that in the *Stevens*

16   court, in the *Stevens* case they did invoke -- they did

17   invoke the proprietary nature of this.  I am only hesitating

18   because it was not part of what we had briefed and so I have

19   not looked into this in depth to determine that.  And so I

20   would rely on what the *Stevens* court and what they said,

21   that it was a proprietary interest that the government had

22   in its Federal fisc.

23            THE COURT:  And then what is that assignment now

24   in light of *Polansky*, which gives I think the government a

25   lot more control over the Qui Tam action?  In that respect,

1    I mean, I think you would agree with me, but what is the

2    nature?  And I think it turns on the standards of

3    intervention and dismissal under *Polansky*.  Whatever has

4    been assigned I think is that.

5              MS. KOH:  I'm sorry, what has been assigned?

6              THE COURT:  So the terms of the assignment are

7    whatever the intervention and dismissal standards are in

8    *Polansky*.  And what are they?  They are very deferential to

9    the government, but what is the actual standard?  Otherwise,

10   is it illusory?

11             MS. KOH:  Well, I think -- so, you know, as the

12   Court said in *Polansky*, right, we've got to look at the

13   facts at issue when applying Rule 41, and the Court said if

14   the government views that the benefits of the case are

15   outweighed by the costs, then that's sufficient to meet that

16   standard.  I don't think there's a specific standard that's

17   out there that -- you know, that states X, Y, and Z, but I

18   think --

19             THE COURT:  And the point of that is to avoid an

20   Article II problem, I believe.  Right?

21             MS. KOH:  That could be why.  I don't want to

22   opine as to the point of that.

23             THE COURT:  So I'm having a hard time

24   understanding why the government would ever move to dismiss

25   if it didn't think it was better to dismiss than to keep the

1     case.  So what's the standard?

2          MS. KOH:  So the government allows -- because the

3     Relators are permitted to pursue cases on their own with the

4     government supervision looking over their shoulder, there is

5     a certain -- there is -- the government does have less

6     control over that situation versus like, for example, if

7     I've got a case within the Department of Justice and

8     pursuing a case.

9          So I think that's -- there is inherently built

10    into this leeway that is provided to a Relator.  It's not

11    unfettered, and I don't want to overstate that, it's not

12    unfettered, it's not without the controls the government's

13    position is, the executive still maintains sufficient

14    control in those situations.  But Relators are permitted to

15    move forward.

16         And even though the government is looking over

17    their shoulder, they're not in their files, they're not

18    looking at everything that the Relator is doing.  Right?

19    So --

20         THE COURT:  Am I to imply like from a criminal

21    rule like 48 the superstrong presumption of good faith if

22    the government moves to dismiss, I have to dismiss?  Is that

23    the same rule I should be applying on the Rule 41 civil

24    context?

25         MS. KOH:  I think it should be the substantial

1    deference rule that the Supreme Court laid out.

2            THE COURT:  Does that leave any assignment of

3    property to the Relator?

4            MS. KOH:  I think during the course of the False

5    Claims Act litigation there is assignment of the claims --

6            THE COURT:  I don't think it vests, right?  Under

7    this theory of *Polansky*, nothing vests until you have a

8    judgment.  If the government can always intervene and

9    dismiss without any backstop, then you have no vesting

10   property right.  I think that what saves the partial

11   assignment is the fact there are some standard of review for

12   intervention and dismissal.  That's why I'm fixated on what

13   that standard is.

14           MS. KOH:  And I think the standard of review would

15   be the standard of review that's using Rule 41 and that the

16   Supreme Court has articulated in *Polansky*.  It's contextual,

17   you've got to look at the facts, and if the Court agrees

18   with the government's position that it should be dismissed,

19   if the Court agrees with that, even where Relator's

20   arguments may be credible, then the Court needs to dismiss

21   the case.  I think that's how *Polansky* plays out.

22           THE COURT:  I think that's what *Polansky* says, I'm

23   just wondering what is left to the assignment to the

24   Relator.

25           MS. KOH:  Well, the Relator then -- the Relator --

1          THE COURT:  What is the -- yeah, I think I

2    understand.  I'm just -- I'm trying to think of a context in

3    which the government cannot extinguish whatever assignment

4    has been contingently granted to the Relator.

5          MS. KOH:  Yeah.  I think in the False Claims Act

6    context, once the government decides and is successful in

7    dismissing, then that assignment is gone.

8          THE COURT:  Well, of course, after they dismiss

9    it.  But I mean, with the decision to dismiss, is that what

10   you're saying?

11         MS. KOH:  With the decision to dismiss, yes.

12         THE COURT:  The decision to move to dismiss, you

13   think that that terminates the partial assignment?

14         MS. KOH:  No, I think the statute requires that

15   the Court -- that the Relator is entitled to a hearing, so I

16   think we've got to cross that hurdle first.  Right?  And

17   then once the Court orders the dismissal, then, yes, then

18   the Relator's interests have been dismissed.

19         THE COURT:  Right.  So their interests, whatever

20   the assignment is that *Stevens* says gives them standing is

21   whatever they have to avoid a dismissal under Rule 41?

22         MS. KOH:  I think that's one way -- I think we can

23   look at it that way.  I think we're -- I'm in agreement with

24   that.

25         THE COURT:  Okay.

94

1          MS. KOH:  I would like to just real quick -- I

2     think I have addressed many of the issues.  I would --

3          THE COURT:  Well, actually, I have a couple of

4     questions.  These are one-offs.  I'll ask other counsel this

5     too.

6          So the False Claims Act says any person can sue.

7     Does that mean noncitizens and foreign nationals could be

8     Relators under the False Claims Act?

9          MS. KOH:  The government would -- again, because

10    that was not part of our briefing, so -- but I would -- I

11    think the government's position is that it would include any

12    persons, so including foreign citizens.

13         THE COURT:  Do you think the Article II issue is

14    in any way more complicated in light of the Eleventh Circuit

15    precedent that authorizes a Relator to reassign portions of

16    the False Claims Act if they're party litigation funds?

17         MS. KOH:  I think it probably is made more

18    complicated, but I don't think it changes the analysis.  I

19    don't think it changes the analysis.

20         THE COURT:  Okay.  Then my last question, but I

21    can ask Ms. Zafirov's counsel this too.  There's a

22    timeliness objection to this motion.  Do you have a view of

23    that or should I just defer that --

24         MS. KOH:  I would defer to my co-counsel here.

25         THE COURT:  Okay.

1              MS. KOH:  But I would note that, yeah, the

2    government has also noted that the case has been pending for

3    many, many years and it's just --

4              THE COURT:  I'm aware.  It's on my CJA list every

5    six months, so --

6              MS. KOH:  And this is the first time that it's

7    been raised.  I will leave that to Ms. Zafirov's counsel

8    too.

9              THE COURT:  Okay.  Thank you.

10             Let's take a 15-minute break.  Just a comfort

11   break.  So we'll resume at 3:15.

12             (A brief recess was taken, after which the

13   following proceedings continued in open court.)

14             THE COURT:  Okay.  Ms. Estes.

15             MS. ESTES:  Good afternoon, Your Honor.

16             THE COURT:  Good afternoon.

17             MS. ESTES:  I'm mindful of the fact that we're

18   sharing our time with the government, so I'll try not to

19   retread all the ground that was covered, but I certainly

20   want to answer the questions that Your Honor has posed

21   starting with the very last one.  I think you had a question

22   as to timeliness.  I can begin there --

23             THE COURT:  Yes.

24             MS. ESTES:  -- and then go back a little bit.

25             The timeliness is very a foundational argument

1    here.  The defendants bring this argument years into this

2    case, when nothing substantive has changed in the case.

3    There's not something new that came up, a factual basis that

4    brought it.  And I think the defendants conceded that it was

5    Justice Thomas's dissent in *Polansky* that kind of renewed

6    this interest of, hey, maybe we have this argument.

7             THE COURT:  Uh-huh.

8             MS. ESTES:  But the defendants never brought it.

9    It's not in their affirmative defenses, it wasn't brought at

10   any point in the years of this litigation, and certainly to

11   the extent that they're --

12            THE COURT:  You think if they didn't bring the

13   constitutional challenges and affirmative defense, it's

14   waived?

15            MS. ESTES:  I do believe it would be waived at

16   this point, with the exception of if it were --

17            THE COURT:  What do you mean at this point?

18            MS. ESTES:  Well into the case, past the

19   opportunity to amend pleadings, past the opportunity to

20   raise --

21            THE COURT:  I don't think any amendment would cure

22   what they're alleging is a constitutional violation.

23            Here's my real question:  Constitutional

24   challenges get brought at summary judgment all the time and

25   we haven't yet passed the dispositive motion deadline.  So

1    why is a motion for judgment on the pleadings, which can be

2    interpreted as a Rule 12(b)(6) or as a summary judgment,

3    inappropriate at this juncture where it's preceding the

4    deadline for dispositive motions?

5            MS. ESTES:  Again, because nothing factually is

6    different here that the defendants didn't already know at

7    the time that we were briefing motions to dismiss.  The

8    first time around we've done 12(b)(6) motions, we've passed

9    those motions.  We've gotten all the way to this phase where

10   it hasn't been identified or addressed as an issue and

11   there's nothing new that was brought to the Court that

12   would -- or, excuse me, to the parties that would change

13   whether there is a constitutional issue here or not.  If it

14   has, it's been there since the beginning, the opportunities

15   to bring it have been plenty, we've been --

16           THE COURT:  Did it need to be raised as an

17   affirmative defense?

18           MS. ESTES:  We assert that it would need to be

19   raised as an affirmative defense, unless it was a

20   jurisdictional issue, which is how the -- excuse me, how the

21   defendants articulate getting around that in their issue.

22   They kind of draft a footnote passing mention at this time

23   on this issue and say, but where it's a subject matter

24   jurisdiction question, then we can bring it at any point.

25           But if it was a subject matter jurisdiction, then

1   the Courts had an obligation in something like *Yates* to

2   address early on that Article II is a subject matter

3   jurisdictional question.  And it didn't do that.  And in

4   fact, *Stevens* also didn't address that this is not a

5   jurisdiction issue we need to address in this case.  So

6   Article II can't be a matter of jurisdiction.  It's -- they

7   can raise it as a 12(b)(6) argument, but that has been

8   waived at this point.

9           So if they're going to make a subject matter

10  jurisdiction argument, then the Courts do speak to the fact

11  that this -- there is jurisdiction, *Yates* by not addressing

12  it.  And there's very clear Eleventh Circuit case law saying

13  even if the parties don't raise jurisdiction as a defense,

14  the Court has to do it.

15          THE COURT:  Right.  Okay.  So assuming I agree

16  with you that it's not subject matter jurisdiction, what is

17  the standard for timeliness in this context?

18          MS. ESTES:  I don't have an articulated standard,

19  Your Honor, but it would be at a time reasonable to the

20  beginning of the case.  I mean, when the motions to dismiss

21  were originally briefed.  They don't have the opportunity to

22  just continually bring motions to dismiss in the midst of a

23  case.  There was an opportunity for that, it wasn't

24  articulated as a defense where we could have had a motion to

25  dismiss on that at the beginning of the case and it's now

99

 1    years into litigation and it hasn't come up and --

 2              THE COURT:  So it's waived?

 3              MS. ESTES:  That's our argument, yes.

 4              THE COURT:  Okay.  Let's go to the substance.

 5              MS. ESTES:  Certainly.  Is there any spot you

 6    prefer to start?

 7              THE COURT:  Well, actually, one of the last

 8    questions I asked the government, can noncitizens and

 9    foreign nationals me Relators under the False Claims Act

10    since it just says person?

11              MS. ESTES:  I believe that they can be and I

12    believe there are instances where they have and that's

13    because the government's level of control doesn't change

14    with respect to where the person bringing the case is

15    situated or where they're from.  The interest of the

16    government in overseeing the litigation is maintained

17    regardless of whether the person is a citizen or not, is a

18    foreign national or not.

19              THE COURT:  Do you agree with the government that

20    the enforcement of the civil -- I'm sorry, the False Claims

21    Act is a substantial executive power?

22              MS. ESTES:  I agree that the government has

23    primary authority when they're exercising it.  Their

24    exercise of it is a substantial executive power that the

25    United States allows the Relator to participate in.  I don't

1    believe that the Relator's authority and rights granted

2    under the False Claims Act is a core executive power.

3              THE COURT:  Any person in the world can be a

4    Relator because they meet that definition?  Is there no

5    heightened Article II problem with a foreign national

6    prosecuting something on behalf of the United States?

7              MS. ESTES:  So I want to walk back a little bit

8    that any person in the world can be a relator, because --

9              THE COURT:  Well, not from involving a fraud, I

10   don't mean the statutory exceptions, I just mean anyone who

11   doesn't otherwise meet them.

12             MS. ESTES:  So anyone who has knowledge that would

13   underlie a False Claims Act case, which would be someone

14   who's working in contracting, for example, and has knowledge

15   of the way the government funds are being misused, would

16   fall into that category.  And by virtue of having that

17   knowledge, it would empower them to become a False Claims

18   Act Relator when they're under that umbrella, because

19   they're always under the substantial authority of the United

20   States.  Regardless of where they live, where they were

21   born, any of those things, the government's authority to

22   oversee that and all the safeguards that are in place to

23   ensure that the government's interests are protected do not

24   change regardless of what that person's basis is, where

25   they're from.

1          THE COURT:  So that, coupled with the ability to

2   reassign your False Claims Act, third-party litigation

3   funder, does that not pose heightened problems?  So say

4   there's a military contractor and the Relator is someone who

5   is in a foreign sphere of war and witnesses what they think

6   is fraud, they can bring a Qui Tam action against a military

7   contractor and then assign all of their interest, say, to a

8   foreign government to fund -- or, I'm sorry, not all the

9   interest, a substantial portion of their interest as the

10   Relator to a foreign government, who is then the one with

11   the financial incentive behind the Qui Tam action and that

12   doesn't violate Article II?

13          MS. ESTES:  So I think it would depend on the

14   circumstances of that specific case and the relationship

15   between the parties that, you know, is conceived Relator in

16   this situation and what role they have with the government

17   and how is that working.  But nevertheless, the controls

18   that the government have would still be in place and that is

19   something that the government inquires to, as to the role of

20   any third-party funder from, you know, the inception of the

21   case.  So if that was something that the relationship

22   between the Relator and whoever the funding source was, be

23   it --

24          THE COURT:  How would the government know?

25          MS. ESTES:  The Relator has an obligation to

1    disclose that information, it's a question that's asked at

2    the inception of a case.

3            THE COURT:  What if it's taken on halfway through

4    the case, the Relator runs out of funds and needs more

5    financial backing to continue prosecuting?

6            MS. ESTES:  In that hypothetical, that situation

7    wouldn't be disclosed at the beginning, then there would not

8    be I guess an affirmative obligation to bring it forward.

9            THE COURT:  So the government could in theory have

10   a foreign government bringing a Qui Tam action on behalf of

11   the United States that is feasible without an affirmative

12   obligation by the Relator to relate that information to the

13   Federal government?

14           MS. ESTES:  In that instance, there is not an

15   affirmative obligation that I know of, but all the controls

16   would still protect any foreign interests that are anti --

17   or, excuse me, inconsistent with the United States'

18   interests from seeping through to the False Claims Act.

19           THE COURT:  How?  If they don't even know that the

20   foreign government has the financial stake in the

21   litigation?

22           MS. ESTES:  Because they know of the litigation

23   itself.  So all the ways that they're overseeing, the

24   ability to see discovery and to see depositions.  So if

25   there was an interest contrary to the United States that

 1    came up at any point, whether it was from the Relator at the

 2    beginning --

 3             THE COURT:  Yeah, but the government might not be

 4    on heightened awareness if that you're subpoenaing these

 5    documents when it's a private American citizen and they

 6    might be if it's a country that they believe to have suspect

 7    motives in wanting that discovery.  They might have

 8    different protective orders, for example.  I mean, like

 9    there are a lot of discovery issues here that, you know,

10    we're not gonna ferret out all that stuff today.  But I'm

11    just thinking of context, which the Article II problems seem

12    particularly problematic.

13             MS. ESTES:  I don't agree that they're

14    particularly problematic, because that authority stays with

15    the government all the way through.  And in particular, we

16    see when the United States doesn't intervene in a case, the

17    things that they ask for are to be part of the pleadings.

18    And to see the deposition transcripts, they can request to

19    see the discovery that's coming in in that case.

20             And so at any point that there is a sign, whether

21    it's from the Relator or from a third party who is kind of

22    puppet stringing a Relator that the government didn't know

23    about, that those interests were no longer aligned with the

24    United States, the United States has the ability to

25    interject and to resolve that situation.

1          That's not something to my knowledge that we've

2     seen play out in any proceedings before.  I think it would

3     certainly get to, you know, the good cause standard for

4     dismissing.  But the process is in place to protect against

5     that.

6          THE COURT:  Okay.  And then is Ms. Zafirov

7     currently a U.S. citizen nor a foreign national?  I saw that

8     she is now a resident of Canada.

9          MS. ESTES:  Dr. Zafirov is –– she is currently

10    residing in Canada and I believe she is a U.S. citizen.

11         THE COURT:  Okay.  Would you like to turn to the

12    three issues that I have been talking with the other

13    counsel?  Continuity is the first problem.

14         MS. ESTES:  Certainly.  So when we talk

15    continuity, I reiterate the United States' position that

16    this is a bit of a square peg/round hole kind of situation,

17    because these cases –– excuse me, the Relator's involvement

18    with the United States is specifically limited to the case

19    in which they bring.  So there's not a position from which

20    they can be removed specific to each case.  So their

21    authority that's granted by the False Claims Act lives and

22    dies with that case.  The government has ––

23         THE COURT:  Isn't that true with the Independent

24    Counsel and Special Counsel?

25         MS. ESTES:  Not entirely, no, because there were

1    certain ones where the United States didn't have the

2    authority to bring.  It's a bit similar to what we see in

3    *Morrison*, but even in *Morrison* the standards of who that

4    actor was were very, very different than the authority and

5    the role that the Relator has.  Those cases -- these are

6    limited only to the one that they have knowledge.

7          So a Special Counsel starting from the beginning

8    has the ability to investigate a case, which is something

9    that the Relator does independently, they don't have that

10   longstanding authority where the Special Counsel has been

11   investigating and choosing different cases to bring along

12   the way.  Relator has the knowledge related to the case that

13   it's bringing and it's siloed to that space.

14         THE COURT:  The Special Counsel is also assigned

15   to a particular investigation, although might produce

16   multiple indictments, but I don't see how that's different.

17         MS. ESTES:  So --

18         THE COURT:  Just the pre-investigatory filing

19   powers?

20         MS. ESTES:  Well, the prefiling investigatory

21   powers I think are very significant in making an assessment

22   as to what cases it's going with to bring, because the

23   Special Counsel is brought in for a concern, an issue rather

24   than necessarily for a specific case and it evaluates and it

25   determines each of the cases that need to spawn out of that

1    situation.  So like you said, it may be a series of

2    different indictments, however that they choose to proceed

3    with that.  They're beginning with an issue and then

4    expanding that into their investigation, which has a whole

5    bunch of resources that the United States does not grant to

6    Relators in --

7         THE COURT:  And that makes it continuos?

8         MS. ESTES:  It changes the framework of the

9    evaluation.  They're doing a much longer project with a

10   bigger focus than what the Relator is doing, which is

11   specific only to the case for which they have knowledge.

12        THE COURT:  Maybe.  I mean, this case is longer

13   than the current Special Counsel's are.

14        MS. ESTES:  False Claims Act cases can take a

15   really long time and I certainly live in that space and

16   understand that.  But it will still end at the end of this

17   case.

18        THE COURT:  What's the standard for continuity?

19        MS. ESTES:  I think the standard for continuity is

20   insofar as the Relator has been assigned, that interest has

21   been assigned.  So the partial assignment that *Stevens* talks

22   about, the continuity is as long as that assignment exists,

23   and that assignment exists from the time that the Relator

24   brings a False Claims Act case until the case is dismissed.

25        THE COURT:  No, sorry.  What's the constitutional

1  standard for continuity that makes someone an officer and

2  not an officer?

3          MS. ESTES:  Oh, I'm sorry.  So backing up, I think

4  before we even get to that question, I don't think that's

5  singularly what makes someone an officer or not an officer.

6          THE COURT:  No, I agree, but I think the first

7  question is less difficult.  I think the second of

8  continuity is hard, which is why I'm asking what's the

9  standard.  I hear different standards in different Supreme

10 Court cases over the last 125 years.  So what's the

11 standard?

12         MS. ESTES:  I think the question might be that

13 there is not a clear one and it's context specific.  So in

14 the context of the False Claims Act case, it's cabined to

15 just that case.  That's why that none of the Courts who have

16 evaluated whether a relator is an officer so far have come

17 to the conclusion that they are.

18         Using that same continuity discussion that

19 sometimes comes up --

20         THE COURT:  Those discussions are very short, they

21 usually say it's this case and not -- doesn't satisfy

22 continuity.  I have yet to see -- or maybe tell me, which of

23 those cases have the most extended discussion of continuity

24 as a constitutional element of officer?

25         MS. ESTES:  So I agree that there's not a lot of

 1    depth into it, because I think when they apply the standard

 2    of what that assignment really is, which is limited to the

 3    life of the case of this person, it has --

 4             THE COURT:  What about *Donziger*?  That came up

 5    with defense counsel.

 6             MS. ESTES:  So *Donziger* I think is a completely

 7    different animal and it's a little bit of apples-to-oranges

 8    discussion that we were having earlier, because they're

 9    talking about that special prosecutor again who has roles

10    far beyond and preexisting that a Relator gets.  So they

11    talk -- and I think they use term machinery of the United

12    States, which exists in that case, and that's actually a

13    really good example of what a Relator doesn't have and what

14    separates them from the discussion of someone who is just

15    presumed to be an officer, which is what happens in a lot of

16    these cases when they go in and they have this ability to do

17    all of this investigative work and the subpoena power and

18    the grand jury power that never comes to a Relator.  That's

19    never focused on us.

20             And so that line is drawn well before the

21    continuity aspect and I think that's why the discussion

22    isn't there, it's sort of secondary to say, in addition to

23    not having all of the responsibility and the authority that

24    comes with an officer that they would have if they were in

25    fact officers of the Court, it just exists for the life of

1    this case.  So it just stops there and I don't think a

2    separate standard has been articulated because of that.  But

3    that really frames why getting to an in-depth standard on

4    that is not necessary, because we never cross that bridge.

5            THE COURT:  I asked this to opposing counsel and I

6    guess the government too.  Any example of an individual

7    exercising -- and for sake of argument assume that this is

8    substantial executive power, but not deemed an officer.

9            MS. ESTES:  I actually completely echo counsel's

10   argument that, for example, Federal prosecutors are not.

11   And I would point to the significance of that line of a

12   Federal prosecutor as something we see in *Morrison*, because

13   when *Morrison* got to the end, it determined that it didn't

14   violate separation of powers, but recognized that that

15   person had more responsibility than a Federal prosecutor.

16           So if a Federal prosecutor is sort of the line,

17   *Morrison* didn't violate Article II being on the far side of

18   that.  Relator is on the other side of that line, we have

19   way less than a Federal prosecutor has.

20           THE COURT:  Ms. Koh took an oath to the

21   Constitution and is paid by the Department of Justice.  I

22   used to be in that role, so I was fully accountable.  That's

23   very different than a private citizen.

24           MS. ESTES:  I agree, she is fully accountable and

25   we're fully accountable to her, because that's the way the

1    statute lays out.  So those people who still have that

2    authority and who are still in that oversight position,

3    they --

4             THE COURT:  You're saying your client is fully

5    accountable to the executive branch?

6             MS. ESTES:  I think the way that the False Claims

7    Act is laid out provides the government such substantial

8    controls and authorities to hold Relators accountable to the

9    positions of the United States, yes.

10            THE COURT:  Okay.  So other than an individual who

11   is litigating as a DOJ lawyer, can you give me a different

12   example?

13            MS. ESTES:  I'm not sure that there are places --

14   I fully won't presume to know the rules of all the people in

15   all the capacities of the United States.  You're asking for

16   someone else who's litigating in the name of the United

17   States?

18            THE COURT:  Or just exercising substantial

19   executive power who has not been deemed an officer.  They

20   seem to go hand in hand, right?  Like someone is exercising

21   substantial executive power and they're deemed to have a

22   continuous office or neither.  But give me example of one

23   without the other.

24            MS. ESTES:  So perhaps -- and I'm --

25            THE COURT:  Like bank receivers, they're deemed

1    officers, right?  And they have limited one-case purview.

2    How is that different?

3        MS. ESTES:  The bank receivers, to be clear, I've

4    never worked in that area, so I don't know a lot of the

5    authority that is invested in them or not.

6        THE COURT:  That doesn't have to do the

7    continuity, does it?

8        MS. ESTES:  No, I don't think that it does.  But

9    I'm -- to answer your question about a specific example, I

10   may go perhaps to a defense contractor who are bringing in

11   employed civilians and bringing them in to work in war

12   spaces.  And so we're coming in, if they, you know, have

13   weapons on them, if they are entitled to use that weapon to

14   protect the safety of the space that they're working in,

15   that would certainly be something that's important as an

16   executive function, you know, using deadly force as a

17   citizen to protect the space of the Federal government.

18        And where they're not officers, they're employees,

19   or they're contractors, however their relationship is billed

20   out, and we've given them the authority to execute a

21   necessary function, which in that case would be, you know,

22   deadly force to protect a military space.  But those people

23   are not officers.

24        THE COURT:  This is a question we discussed with

25   government counsel.  Could Congress authorize a private

1   person to bring a criminal prosecution if the partial

2   assignment theory is just that you're gonna get the fine

3   aspect?

4          MS. ESTES:  So I think this ties back maybe to the

5   question -- the historical question, right?  So we're going

6   back to the larceny statutes and was it allowed back then,

7   would it be allowed now.  Again, I would posit this is very

8   context specific.  So at the time when the first Congress

9   allowed those, that was necessary to protect the interest of

10  the United States.

11         The way that the country has developed and the

12  government has developed and all of that, I don't think that

13  that is --

14         THE COURT:  You're making a necessary and proper

15  argument that -- like, somehow Congress could infringe

16  Article II powers because it was necessary and proper at the

17  time, but they couldn't now?

18         MS. ESTES:  No, I'm not saying that it was

19  infringing on Article II at any point, because I don't

20  know --

21         THE COURT:  Okay.  So even today Congress could

22  create a criminal prosecution by a private person?

23         MS. ESTES:  It would be completely specific as to

24  how that worked and what the oversight rule was.

25         THE COURT:  It's the exact same as the False

1    Claims Act.

2             MS. ESTES:  If it was the exact same as the False

3    Claims Act, this -- case law protects the enforcement of

4    criminal statutes differently than it protects the

5    enforcement of civil statues.  So I don't know that -- if it

6    was written exactly the same, but the standards of things

7    that could be brought were also criminal that it would --

8    that it would fit within the same box that the False Claims

9    Act does.  But that's not the situation that we have, and in

10   fact, that's --

11            THE COURT:  Well, I think this is what we were

12   trying to explore with the government counsel.  In some ways

13   the False Claims Act imposes or can impose a much stiffer

14   punitive fine on a corporate defendant than criminal

15   prosecutions do.

16            MS. ESTES:  Financially, it might be.  And that's

17   part of the incentive of avoiding --

18            THE COURT:  Well, that's all you can do to a

19   corporate entity, right?

20            MS. ESTES:  Right -- well, not necessarily,

21   because the implication of having a criminal judgment has a

22   lot more than just the payment of that, right?  It could --

23            THE COURT:  Reputational harms, you mean?

24            MS. ESTES:  Reputational harm, the ability to get

25   a contract, for insurance purposes, there's all sorts of

```
 1    other things that trickle down with a criminal indictment or
 2    a conviction that don't necessarily come from a civil
 3    penalty.  So that's not -- they're not an equal consequence.
 4           THE COURT:  With regards to the historical record
 5    and kind of the constitutional unitive theory for how to
 6    deal with the different types of Qui Tams, what is your
 7    position?  I know you've heard me kind of categorize them,
 8    but like how do I go about parsing the history, what's
 9    similar, what's not similar, what's relevant, what's not
10    relevant?
11           MS. ESTES:  So I think you're right that there are
12    similarities and they've changed over time, and what seems
13    like such a small number, there was five to ten back then,
14    was proportionally a lot different than if five to ten
15    existed now.  There wasn't that many statutes.  So that
16    actually was quite a lot that went into those what we call
17    the False Claims Act-like bucket back then.
18           I would go, again, to looking at what the
19    comparator is, because I think that Marsh does speak to the
20    reality that a statute being passed by the first Congress
21    is -- I think they call weighty.
22           THE COURT:  When it's well within (inaudible) or
23    debated, the constitutionality unbroken tradition.
24           MS. ESTES:  Right.
25           THE COURT:  Do we have that here?
```

1      MS. ESTES:  We have it in ways, yes.  Because the

2   False Claims Act, some version has existed, you know -- or

3   Qui Tam statutes across history, and we have the United

4   States history, I won't say on the larger scale.  We have

5   from those early days the use of them.  And then how to use

6   them has been considered all the way along the way.  And

7   it's gone up and down with the needs of the country and the

8   concerns that came from them.  You know, we see how it was

9   supported and then less.

10      And I think *Yates* actually speaks directly to this

11   when it talks about the idea of an outmanned -- the

12   government was outmanned by corporate defendants.  And that

13   was the same thing that was existing from those early days.

14      So the statutes that were created, the early False

15   Claims Act statutes, even the early Qui Tam statutes, was

16   not as *the* Chamber puts it, because the government wasn't

17   doing a good job.  The government was doing the best it

18   could, it needs more, because there's so much issue out

19   there.  So these early statutes came in.  The same as the

20   '86 amendments came in, because the government finds itself

21   once again outmanned by the amount of fraud.

22      And that really speaks to -- it was a very timely

23   report, but it came out I think about six days ago where the

24   GAO looked at the amount of fraud being spent across the

25   United States and it's somewhere between about 320 to

```
1   $530 billion a year, annually, for the past five years.  I

2   mean, that -- those numbers are mind boggling, but that's

3   what's going out the door in fraud.  It's almost impossible

4   to imagine a level of the Department of Justice that could

5   equally match that.

6           And so the idea that Yates is supported, but they

7   use the Qui Tam statutes, is to level that playing field, to

8   give the Department of Justice more tools in its toolbox, so

9   more people to be able to help in governing that is exactly

10  consistent with what they were looking at when they framed

11  those early statutes.

12          THE COURT:  The purposes are, but the procedures

13  by which they're effectuated were not all the same.  That's

14  why I'm asking do -- I look at bounty statutes the same as I

15  do as people who had individualized aggrieved harms who are

16  also given causes of action and then what we've been calling

17  the FCA-type Qui Tams where you have no aggrieved person

18  standing, but you've been given a cause of action and a

19  purported partial assignment.

20          MS. ESTES:  When we're looking at the relationship

21  between the reporter, or whatever way they call them,

22  informers or reporters in some things versus what is a

23  Qui Tam --

24          THE COURT:  Why are the pure informer bounty

25  statutes, like a whistleblower statute today, why is that a
```

1    good analogy?

2            MS. ESTES:  Well, that's -- I'm sorry, that's what

3    I was gonna say.  They're different.  It's maybe two

4    different types of apples rather than apples to oranges.

5            THE COURT:  Right.  So how does that support an

6    historical record -- or, sorry, historical tradition for the

7    FCA-type Qui Tam at issue here?  Because I don't think

8    anyone, I don't hear the defendants or (inaudible) arguing

9    that a bounty statute is unconstitutional.

10           MS. ESTES:  Well, the bounty statutes aren't in

11   front of us and I posit they might argue that those aren't

12   constitutional given the opportunity.  But the --

13           THE COURT:  Right.  But I don't think -- they're

14   not historically as relevant to me as the ones that are more

15   like the FCA, which gave somebody a cause of action to

16   recover something that they don't personally have an injury

17   against, it's an assignment.

18           MS. ESTES:  Those are certainly a closer

19   comparative.  I don't think the other ones are out of the

20   discussion, because it also goes to the relationship between

21   the United States empowering private citizens to effectuate

22   something to the benefit of the United States.

23           THE COURT:  Then those fall in great destitute,

24   (ph) right?  Like I mean, the False Claims Act has a much

25   better longevity because of the Civil War, whereas those

1    don't as much.  But they raise very different Article II

2    problems.

3            MS. ESTES:  Which is why I don't think they're as

4    directly related.  I don't think they're completely excluded

5    from the conversation of the original framers considering

6    that the idea of bringing in a private citizen to, you know,

7    remedy some sort of harm to the government was considered.

8    The ones that are more FCA-like are the closer comparison.

9            THE COURT:  Does it matter that the recent Supreme

10   Court opinions articulate a much more robust unitive

11   executive -- I mean, comparatively, like this is not the

12   same state of precedent that the Courts of Appeals had when

13   they were rendering their decisions.  And I think a lot of

14   those decisions rested heavily on the historical idea that

15   this Qui Tam type of action had been unbroken from the

16   founding without parsing the different kinds, without really

17   dealing with the facts, but there were a large swath, I mean

18   50 years at times, where it wasn't being used at all and

19   without the benefit really of the last decade of separation

20   of powers precedents.

21           MS. ESTES:  I don't think it changes the ultimate

22   outcome.  It might change the analysis in getting to some of

23   the different parts of it, but nothing about the Act has

24   changed in that passage of time, nothing about the

25   implementation of the Act has changed other than it's

1    consistently threatened the government's oversight.  But

2    it's never walked closer to the separation of powers line

3    all the way along that way, even with the benefit of more

4    recent precedent.

5            THE COURT:  I think the more recent precedent is

6    what says it gets closer, not the -- I agree, the FCA hasn't

7    meaningfully been amended since 1986.  There's been tweaks,

8    but not meaningful amendments.  But the case law I think

9    puts it in greater tension today than it did, say, even in

10   2000.

11           MS. ESTES:  I don't agree that it's in greater

12   tension.  One, because I think well before we get to the

13   things that might be perceived to be putting it in tension

14   and certainly the arguments that the defendants make that we

15   have to cross that barrier of are we even at an Appointments

16   Clause discussion and is there anything that the United

17   States is not able to protect its rights that would, you

18   know, raise a Take Care Clause question.

19           THE COURT:  Right.  But I mean, that assumes

20   there's no -- the Take Care Clause question is remediable,

21   right, in some ways?  The Appointments Clause is not, which

22   is why I start with the continuity problem.

23           MS. ESTES:  But before we even get to the

24   continuity problem, I think we -- we don't agree that

25   it's -- that we're even getting to that, because we're not

1    getting to the substantial authority part of it.  That part

2    has been addressed.

3            And I did want to specifically raise, because the

4    defendants and Mr. Engel both spent a lot of time talking

5    about the '89 Bill Barr Office of Legal Counsel opinion,

6    which talks about that, not favorably, of course --

7            THE COURT:  It was a memo.

8            MS. ESTES:  A memo.  I'm sorry, I apologize.

9            THE COURT:  Well, that matters, because it wasn't

10   the official position of the Department.

11           MS. ESTES:  It does.  But it's also been walked

12   back completely, specifically with respect to the

13   Appointments Clause.  So the '96 Office of Legal Counsel

14   memo disavowed that conclusion completely, the conclusions

15   that it came to about the Appointments Clause in *Buckley*,

16   and says there's not an issue here with respect to

17   Article II and, in fact, they don't get to an Appointments

18   Clause discussion.  So reliance upon that.

19           And I would actually point to the '96 memo for

20   some of the historical context that you were asking about.

21   It's not that compendium that you were looking for, but --

22           THE COURT:  Is there a compendium anywhere, slash,

23   do you know the SG's office (inaudible) memo to the Barr OLC

24   memo?

25           MS. ESTES:  I don't.  I would be more than happy

 1    to find out --

 2                THE COURT:  Okay.

 3                MS. ESTES:  -- that.  And to the extent that

 4    briefing on that part of it would be instructive to Your

 5    Honor, we are, of course, prepared and willing to do that.

 6                THE COURT:  That's a big lift if you really mean

 7    that.

 8                MS. ESTES:  I really mean it if it would help with

 9    your decision.  I don't think that it changes the outcome of

10    where we are now and I think the historical background that

11    exists in so many of the discussions resolves the question.

12    But to the extent that Your Honor feels otherwise, we would,

13    of course, provide any --

14                THE COURT:  I think the history is the hardest

15    part of this case.

16                MS. ESTES:  I think it's a hard part and I think

17    it has a singular outcome of constitutionality.

18                THE COURT:  Okay.  Third question:  Post *Polansky*,

19    what is the partial assignment of property that remains that

20    was contemplated in *Stevens*?

21                MS. ESTES:  The partial assignment is what it has

22    always been, and I'm not sure whether it was the Chamber or

23    defense counsel who referred to sort of this percentage

24    that's allocated and that's just not how it works.

25                The partial assignment has always been a role

1    that's given and it's a role that is, you know, within the

2    oversight of the United States to move litigation forward

3    for a False Claims Act case.  That didn't change.  That

4    exists.  And it's always been the right of the United States

5    to --

6              THE COURT:  Let me just be clear.  You think the

7    assignment is the granting of a cause of action divorced

8    from the proprietary interest of a recovery?

9              MS. ESTES:  I don't think they're divorced, I

10   think the proprietary interest in -- the United States'

11   proprietary interest in the cause of action partial -- part

12   of that is what they have assigned to the Relator.

13             THE COURT:  Right.  So I think they have to go

14   together to give them standing, right?  Like you -- it's

15   almost like the partial assignment -- yeah, I think they

16   have to go together.

17             MS. ESTES:  I agree, because the remedy travels

18   with the cause, right?  We don't come to a financial

19   interest in anything if there is not a successful cause of

20   action, so that part has always traveled --

21             THE COURT:  Yeah, that's the wager problem.

22             MS. ESTES:  Of course.  But I don't think that

23   that has changed at all, that's been the way all the way

24   through and from pre-*Stevens* decisions that there was always

25   a role for the government to have oversight and to, you

1  know, remove cases that they didn't think should be there,

2  to dismiss those cases.

3      You know, there were some Courts that came to this

4  like absolute discussion thing, but the standard that

5  *Polansky* came to articulates that it's extreme deference to

6  the government.  And I think this is where sort of rubber

7  meets the road a little bit, in that this issue that you

8  raise before of what happens if we get to trial and, you

9  know, we have just -- the government doesn't agree with the

10  theory.  It's not happening because of all of the steps

11  along the way.

12      So defendants don't cite to any cases where there

13  has been an outcome contrary to the United States' stated

14  position.  And *Yates* speaks specifically to this.  So *Yates*

15  tells us that the False Claims Act is built with

16  consideration --

17      THE COURT:  When does your partial assignment

18  vest, and has it vested?

19      MS. ESTES:  Yeah, I think when you file the case

20  that partial assignment is there and it begins and that it

21  takes on a different nature if the government intervenes or

22  doesn't intervene.  But it's always a partial assignment.

23  It's never our case, you know, it's always the government's

24  remedy that we're pursuing in their name.  It's never hers,

25  it's always the government's.

124

1          THE COURT:  Well, then it's not an assignment.

2    That's what I'm saying, it doesn't vest.  That's a

3    contingent assignment.  When does your partial assignment

4    vest?

5          MS. ESTES:  I guess I don't distinguish the

6    difference in the contingent, because it's not contingent,

7    the assignment is there at the ability to file that case.

8    But it, like any partial assignment, ends at some point.

9    That's the end of it.  So if the case is dismissed, her

10   interest -- there's nothing to have an interest in anymore,

11   it ends at that point.

12         THE COURT:  What argument would you think you

13   could raise to defeat the government if they intervened and

14   moved to dismiss under Rule 41?  What's the standard?

15         MS. ESTES:  So the standard, I do agree with the

16   government, is a substantial deference.  But I believe the

17   reason that it was worded that way -- and I think you're

18   right, it gives the government a considerable amount of

19   power.  But it was really meant to protect situations that

20   we haven't seen.  But, for example, if the agent working

21   that case had an improper relationship, say, with a

22   defendant, that there was some sort of sweetheart deal being

23   cut because of a, you know, shareholding issue or something

24   that wasn't public, and that agent who happened to be

25   assigned to that case was pushing a deal that was improper,

125

1    that -- it gives the opportunity for there to be an

2    explanation to say this isn't the right time, the right time

3    to settle in or to intervene and let this be dismissed.

4    There's a reason why.

5          *Yates*, again, I would go back to, talks about all

6    the things that are appropriate considerations and it talks

7    about public policy and the lack of wanting a bad appellate

8    decision and other things like that that are reasonable.

9    But there are occasions where even --

10         THE COURT:  Those are the conditions of your

11   partial assignment, but there's not like an improper

12   relationship procuring a settlement with the defendant, that

13   kind of thing?

14         MS. ESTES:  I don't think it's a condition, but

15   you asked of an occasion in which that might be invoked and

16   I can certainly see a world where that happens.  We're not

17   seeing it happen, because I think of the life and the

18   realities of Qui Tam litigation is that that's not how it

19   works in practice.  But there are occasions in which

20   something like that could.  And I believe the government's

21   point in preserving some sort of access, you know, some

22   position for the Relator to be able to articulate by carte

23   blanch dismissal authority is to protect in those rare

24   cases.  But I concede they're rare, that's why they're not

25   happening very often.

1          THE COURT:  *Braxton* (ph) called the cause of

2    action an inchoate right.  Do you agree?

3          MS. ESTES:  I do agree that a person, and in this

4    case the United States, is right and the cause of action

5    is --

6          THE COURT:  Well, I'm talking about the Relator.

7          MS. ESTES:  Oh, excuse me.

8          THE COURT:  Do you agree that it's an inchoate

9    right?

10          MS. ESTES:  The Relator's right to participate in

11    the False Claims Act?

12          THE COURT:  And to recover.

13          MS. ESTES:  I believe it's a right given to them

14    by the False Claims Act.  I don't know that it's either the

15    same sort of right that we would see in an individual

16    holding their own property right.

17          THE COURT:  Okay.  Then that leads to my next

18    question.  Is it property under the Property Clause?

19          MS. ESTES:  I do believe that a cause of action,

20    in this case the United States' cause of action, is property

21    and that it's within -- well within their limits to decide

22    how to divest of that property.  And one of the ways that

23    they've chosen to do is to work with the Relator.

24          And I think this is actually a really important

25    point, because the distinction here that makes that

1    relationship different and this discussion of the separation

2    of powers from all of the other discussions of separation of

3    powers is that the purpose of all that is to protect

4    Congress from something it would usurp or aggrandize the

5    executive's control in their role in this.  The executive is

6    saying it doesn't usurp our role, we're good, this is

7    actually exactly the way that this works and the way we want

8    to do this and we have all the right controls in place.

9         And that is different from every other case that's

10   been presented by the defendants.  There isn't an

11   opportunity where -- in any of the readings or anything that

12   I've seen, and I've tried to go back to the underlying

13   discussions in these cases, to say this right is being

14   handled exactly how we want it to be, there is no --

15   basically to say that there is separation of powers here

16   would be overruling the United States saying they're not

17   usurping your authority, it's being handled the way we want

18   to handle it.

19        Congress wrote it out in a way that's exactly the

20   way that we want to deal with it and it's working.  It's

21   working for us to recover billion and billions of dollars.

22   So I do think it's a completely different situation than

23   anything else we've seen.

24        THE COURT:  I'm not sure the executive branch can

25   be -- gets to make the determination of whether there's a

```
 1   separation of powers termination just because it's working
 2   well for them.
 3             MS. ESTES:  I don't think that they're --
 4   obviously, that we have, you know, a judicial branch also
 5   that weighs in on these things, but they are a factor in it.
 6   There's not a question -- when Morrison tells us this and we
 7   get actually (inaudible).  The question is the usurpation of
 8   power between the two parties and does the rights that
 9   Congress has created in the Relator usurp the executive
10   branch's authority.  And --
11             THE COURT:  Does it delegate executive power to a
12   private individual?
13             MS. ESTES:  I'm sorry, I couldn't -- the last part
14   I didn't hear.
15             THE COURT:  I think the question is does the False
16   Claims Act delegate executive power to a private individual.
17   I think that's the problem that they're raising, the
18   defendants, as a challenge.
19             MS. ESTES:  And if it --
20             THE COURT:  And I think that's the way to think
21   about it too, is a delegation problem.  And I don't care if
22   Congress and the executive agree that it's a good
23   delegation.  That might not matter for purposes of
24   constitutional interpretation.
25             MS. ESTES:  I don't know that it's outcome
```

```
 1   determinative, but I do think it matters, because if the
 2   idea behind the separation of powers is to ensure that the
 3   branches have separate authority to handle their own, you
 4   know, kind of towers of information that they're on and they
 5   are doing it in a way that they believe fits within their
 6   own structure, that they're not saying this is over -- you
 7   know, overstepping our line.  In fact, they're saying the
 8   opposite, that we are -- that we have controls that is
 9   working for us to maintain the authority that is bestowed
10   upon the executive, that that is significant and different
11   than other cases.
12           THE COURT:  Okay.  I think I have everything, but
13   if there's anything else you would like to bring to my
14   attention, please do so.
15           MS. ESTES:  No, Your Honor, I think that covers
16   everything for Relator.
17           THE COURT:  Okay.
18           MS. ESTES:  Thank you.
19           THE COURT:  Thank you.
20           Okay.  Mr. Singh.  Good afternoon.
21           MR. SINGH:  Good afternoon, Your Honor.  It's a
22   pleasure to be here with you.  I would like to address some
23   of the things that just came out in the previous discussion
24   and then go through the questions that you've been asking
25   everybody.
```

1          The first question you raised, Your Honor, that I

2    want to clue in on was this question -- this hypothetical

3    you gave about a foreign government pursuing a False Claims

4    Act action.  I don't think it's -- I don't think it's

5    possible for the simple reason that governments aren't

6    regarded as persons and couldn't bring one.

7          THE COURT:  No, I don't think they could be the

8    person, but my question is whether a Relator could assign

9    their interest to, say, a government, the same way that the

10   Eleventh Circuit says they can assign it to a litigation

11   finance fund.

12         MR. SINGH:  Yeah.  And so I think part of what's

13   going on here is that the Relator is not assigning their

14   interest per se to a litigation funder in litigation funding

15   agreements, they're making a separate deal.  It's usually

16   structured quite differently.  That doesn't directly answer

17   your question.

18         Could it happen?  The answer is that's completely

19   untested.  It's never happened to anybody's knowledge.  And

20   of course, it's a situation that can happen in any civil

21   litigation by defendants, by plaintiffs, they can always

22   funnel information to third parties in violation of

23   protective orders and other restrictions.

24         Ms. Estes was quite right to note that there are a

25   lot of restrictions in False Claims Act cases that prevent

1    information from leaking out.  This is true even with

2    respect to litigation funders.  So, for example, while the

3    case is under seal, information just isn't handed out to

4    third parties, including litigation funders who may have an

5    interest in the case.  The same would, of course, be true

6    vis-a-vis any other third party.  Once the litigation comes

7    out from under seal, there will invariably be protective

8    orders and other mechanisms, and those apply here just like

9    they do in any other civil litigation.

10           THE COURT:  And to be clear, I'm not thinking that

11   this is happening in any particular case, I'm just trying to

12   take the logical like follow-on position of if there are

13   Article II implications that the -- with a private

14   Relator -- or private citizen being a Relator and the

15   government said enforcement of the False Claims Act is

16   substantial executive power, under -- I understand subject

17   to all these oversights by the Department, is it possible

18   that somehow a foreign government is really the one with the

19   financial interest motivating the litigation?  And I have

20   no -- I don't know that that's happened, I'm just trying to

21   think of the most offensive Article II hypo.  You know?

22           MR. SINGH:  Sure.  I don't actually think it

23   creates a unique Article II concern, however.  And I would

24   just think about it like this:  Because the executive

25   branch -- and this is -- now I'm just retreading Ms. Estes's

1   answer and so I'll move on.  But because the government

2   maintains all of its supervisory control over these cases,

3   because it has the power to say we're dismissing this,

4   surely that would be one of the grounds on which the motion

5   would be granted.  I'll talk happily about the standard for

6   dismissals in a moment, but surely --

7            THE COURT:  If they know about it, right?

8            MR. SINGH:  Yeah.  But I think the idea -- look,

9   if the hypothesis is what about Relators who just deceive

10  the government about everything and break all the rules and

11  aren't litigating in good faith, you can always imagine such

12  offensive hypotheticals I suppose.  But the False Claims Act

13  really gives the government a lot of power to deal with even

14  really, really bad actors.

15           And look, can everything be circumvented at some

16  point?  Maybe.  But that is also true in all other kinds of

17  litigation.  You know, there are lots of sorts of litigation

18  we've talked about where the government has an interest --

19           THE COURT:  One distinguishing hallmark which we

20  haven't discussed this afternoon is, under the Appointments

21  Clause the officer takes an oath and that's what

22  distinguishes somebody from assuming their role.  You know,

23  I was not a judge until I took the oath.  The President is

24  not the President until he takes the oath.  There is

25  something significant and a demarcation between being a

1    private citizen and being an officer of the United States

2    because you've taken an oath of loyalty to the Constitution.

3           So I think there is something there that even all

4    the oversight in the world of looking at interrogatory

5    requests and whatnot are different, the allegiances are

6    different, the consequences are different, as in you can't

7    remove the Relator.

8           And I think that cuts both ways, right?  Like you

9    can't remove the Relator, it helps and hurts your side.

10          MR. SINGH:  I think that -- well, two things.  So

11   first, if we're doing scary hypos, you can always imagine

12   someone who breaks their oath on purpose.  And I agree that

13   the oath is significant.  It matters that people take it, we

14   love that people take it.  But of course, if we're doing

15   scary hypotheticals, someone can always break it and they

16   can do so secretly.  And again, it's subject to what the

17   government and the supervisory authorities in the government

18   learn.

19          I actually don't think for purposes of Article II

20   it changes the outcome materially in terms of whether

21   there's sufficient control in place.  If you look at the

22   cases about removal power, for example, they're not gonna

23   turn too much on the specific content of an oath.  Right?

24          THE COURT:  Well, that's because it's not an

25   Appointment Clause.

134

1           MR. SINGH:  Right.

2           THE COURT:  Removal is different.

3           MR. SINGH:  Yeah.  Well, removal I think

4    implicates both Appointments and Take Care.  I've read the

5    Supreme Court's precedents on the matter.

6           But in any event, Your Honor, my point is that

7    while I understand the gravity of the oath, I don't think it

8    actually necessarily changes the constitutional calculus.

9           I do want to -- on the point of removal, you say

10   you can't remove a Relator, but I think --

11          THE COURT:  Can you?

12          MR. SINGH:  Functionally, I think the answer is

13   yes.  I think dismissal of the action is tantamount to

14   removal of the Relator.

15          THE COURT:  That's terminating the action, that's

16   not replacing the person who's acting as your agent.

17          MR. SINGH:  Well, but the government could bring

18   it's own action.  There's no reason that the government

19   couldn't do both, that is say we're terminating this action,

20   we're bringing a parallel action.  My colleague for the

21   Chamber mentioned 3730(b)(5) when he said the Relator

22   occupies the field.

23          THE COURT:  (Inaudible) the other private

24   individual.

25          MR. SINGH:  Exactly, not the government.  And so

1    the government is always free to bring a related action.

2             Now, it's true the government can't conscript

3    another private party to come be the Relator.  But that --

4    you know, we understand why that's not true.  They can pick

5    anyone who works for them to come and proceed with the

6    same -- functionally the same action alleging the same

7    violations.  And I think that is essentially the same as

8    complete removal power.  If they were to dismiss a Relator's

9    case and bring their own action, it gets them to the exact

10   same spot.  And so I think that functionally the government

11   has that removal power.

12             The government also, of course, has supervisory

13   power.  Short of that, they come very close to removal.

14   When they intervene in a case, then the Relator's actions

15   can no longer bind the government.  So although it's true

16   that the Relator gets to stay in the case and participate as

17   a party, they're not binding the government anymore.  I

18   would say that that's pretty --

19             THE COURT:  You think they have no preclusive

20   effect even though they are allowed to participate?

21             MR. SINGH:  So the statute provides, Your Honor,

22   that when the government intervenes, the actions of the

23   Relator do not bind the government.  It says so in the

24   terms.  That's in Section 3730.  And so --

25             THE COURT:  So all preclusive effect falls away as

 1  soon as it's intervened?

 2          MR. SINGH:  Well, the government's own actions

 3  will have preclusive effect --

 4          THE COURT:  On it.

 5          MR. SINGH:  Yes.

 6          THE COURT:  Right.

 7          MR. SINGH:  But the Relator's actions no longer

 8  bind the government in litigation.  Right?  And of course,

 9  the outcome would still be res judicata and they have

10  collateral estoppel effects as normal, because the

11  government is now a full party to the case.

12          So, you know, the piece that I -- a piece that I

13  really wanted to emphasize that also came up in the previous

14  conversation and I want to double down a little bit on

15  Ms. Estes's answer, because you've asked every lawyer here

16  if they can identify an example of somebody who exercises

17  what you call significant executive power, but wouldn't be

18  deemed an officer.  And the government contractors answer is

19  the answer.

20          There are contractors everywhere, thousands and

21  thousands of them, taking home hundreds of billions of

22  Federal dollars and performing mission-critical functions.

23  Ms. Estes mentioned battle field contractors.  That's an

24  obvious example.  We rely on contractors to protect the

25  border along the south.  We rely on contractors to parse

1    incredibly sensitive national security information, signals,

2    intercepts.  Even the Department of Homeland Security uses

3    contractors for all their cyber security initiatives as

4    well, it's another huge area where they play a role.  And I

5    can go on and on.

6              In fact, this case is a good illustration.

7    Medicare Part C is when private health plans basically step

8    entirely into the shoes of Medicare.  Unlike Medicare, which

9    previously and also used contractors to decide which claims

10   to approve or not, they now write the plans, make the

11   coverage determinations, and give the money to providers or

12   not based on their say-so, of course, subject to some

13   Federal oversight.

14             I think there are so many situations.  If you

15   think about modern government and if you take the defense

16   arguments to their logical extreme, where you land is that

17   modern government cannot work anymore, because there are

18   many, many, many functions that are being performed by

19   private parties to help the government.

20             And I want to be clear.  Our position on this is

21   that's okay.  That's okay for them, it's okay for the other

22   contractors I've described, and it's okay for Relators who

23   are performing essentially the same role.  Now, sure,

24   they're not getting a contract handed to them in the

25   beginning, but that's for a very straightforward practical

1    reason that I think has no constitutional significance.

2          The reason is that the government doesn't know who

3    they are in the beginning.  It doesn't know which

4    individuals out there in the world have information about

5    hidden frauds and can bring it forward to help resolve those

6    frauds.  It has to rely on those individuals coming forward.

7    And to do so, it has to have an incentive for them which

8    will protect them from retaliation and provide them with

9    some recompense for the ordeal they'll go through.

10          I'll tell you, I also heard from the other side so

11    much talk about unaccountable self-appointed Relators.  I

12    represent Relators and seven out of ten, eight out of ten

13    times, once we're done telling them what the litigation is

14    going to be like, they get scared and don't want to do it,

15    because they know they'll be blacklisted in their community,

16    they know that if -- they'll have to shoulder years of costs

17    all on their own.  None of it's coming from the government,

18    they are going to do that personally with their private

19    resources.  And so when we have these conversations, Your

20    Honor, about, you know, Relators are really officers,

21    they're exercising government power --

22          THE COURT:  They're not usually taken on

23    contingency fees?

24          MR. SINGH:  If they can find someone to do it on

25    contingency fee, that is an option available to them.  But

1    again, they have to do that themselves.  And if they can't

2    find someone, they have to pay someone or find someone to do

3    it pro bono.  The point is that's on the Relator.  They get

4    no help from the government when it comes to investigating

5    their case, putting it together, and filing it.  They get no

6    help from the government then when it comes to taking it --

7    to dealing with what they have to deal with, whatever

8    obligations they have going forward.

9          The government handles its end of things.  It may

10   be grateful for the help that it gets from Relators.  It

11   often is and that's great, we love that public-private

12   partnership, just as all contractors love their partnerships

13   with the government.  But this is not a situation where the

14   Relator files a case, you know, the government hands them a

15   windbreaker, a gun, and a salary, and says, okay, welcome to

16   the team, let's do this, you're now an officer.  Nothing

17   like that.

18         Throughout the entire life of the litigation, the

19   Relator is essentially on their own playing this adjunct

20   second banana role to the government, providing information,

21   helping the government make decisions, helping it make sense

22   of information it gets that it may lack the expertise

23   in-house to figure out, but that doesn't make the -- it's

24   not exercising power.  Right?  The government is exercising

25   the power, the Relator is helping --

1          THE COURT:  Is litigation authority not a power?

2          MR. SINGH:  So I want to be clear about when that

3    kicks in.  And just it may be helpful to just walk through

4    the process of these cases.

5          So the first thing that happens is that the

6    Relator conducts whatever investigation or knowledge

7    gathering they need, they find counsel, they put together a

8    complaint, they file it.  All of that totally on their own,

9    right?

10          At that point, the lawsuit is filed and it goes --

11    it's filed under seal, it doesn't go to the defendant, it

12    only goes --

13          THE COURT:  I get the -- and then they ask for an

14    extension of time, it's usually a year, year and a half,

15    until the government decides that they want to intervene.

16          MR. SINGH:  Music to my ears, Your Honor.  I like

17    hearing that.

18          THE COURT:  And I always grant the extension of

19    time.

20          MR. SINGH:  Oh, please stop, just once just slow

21    the -- okay.  But --

22          THE COURT:  I'm just saying I'm familiar with the

23    initiation.

24          MR. SINGH:  Great.  But while that's happening,

25    Your Honor, the Relator doesn't have litigation authority in

1    the sense that they can do anything.  The case is under seal

2    and until --

3            THE COURT:  Right.  But in most cases, the

4    government doesn't intervene and when they have litigation

5    authority, they're the only person or party in the court on

6    one side.

7            MR. SINGH:  And so I want to get us in that moment

8    in time and understand what's happening at that moment.

9            The government has three choices.  It has the

10   choice to intervene and take over the case.  It has the

11   choice to move to dismiss the case and kill it.  And it has

12   the choice to decline to intervene, which gives the Relator

13   the right to conduct the action going forward subject to

14   ongoing oversight by the government.

15           And I think that what we need to understand is

16   that in that moment, you know, again, it's the government's

17   decision making, the executive branch's decision making

18   specifically that vests the Relator with the right to

19   continue the action.  Because the government could just as

20   easily say this action is over as it could decline to

21   intervene at that moment.

22           THE COURT:  And presumably that dismissal would be

23   without prejudice?

24           MR. SINGH:  Yeah.  So if Rule 41 is the standard,

25   Rule 41 --

1          THE COURT:  Right, this is pre-answer, obviously.

2          MR. SINGH:  Yeah, it's before answer, before the

3    complaint is even served.

4          THE COURT:  Right.  Could have statute of

5    limitations aspects.

6          MR. SINGH:  There might be a relation back, the

7    debate or something like that if the government wanted to,

8    you know, dismiss the action and then bring a separate

9    action.  But it can also intervene and put the Relator in

10   the back seat, it has that -- it can weigh those options and

11   make a call.

12         And so what I -- but the point I want to emphasize

13   is -- and the Court said this almost verbatim in *Yates*.  In

14   situations where the Relator has primary responsibility for

15   conducting the action, it is only because the executive

16   branch decided that it should be so.

17         And so I think when we talk about, again, their

18   premise, what they want you to look at --

19         THE COURT:  Can the executive branch do that,

20   though?

21         MR. SINGH:  Sorry?

22         THE COURT:  What significance does that have, that

23   the executive branch has decided that a private individual

24   gets to litigate on its behalf?

25         MR. SINGH:  Because it means that if you believe

1    that what's going on here is the exercise of some executive

2    power and I really want an officer of the United States to

3    be the one who decides to exercise that power, that is

4    happening at that moment.  By declining --

5              THE COURT:  You're telling a private individual to

6    go do it, is what you're saying?  That decision point of

7    intervene, not intervene, dismiss, they're now making the

8    Relator their mercenary.

9              MR. SINGH:  In a manner of speaking, it's not so

10   different from any contracting situation.

11             THE COURT:  But there's no contract.

12             MR. SINGH:  Right.  I said it's not so different.

13   It's a little bit different, but because there's a statutory

14   mechanism you don't need a contract, the terms are spelled

15   out.  And I think the terms work.  They work for all parties

16   involved, as you've seen, the executive branch is happy with

17   this.  And while I understand the perspective that they

18   can't waive away constitutional violations, I do think that

19   when the gravamen of the violation is that the executive

20   branch's ox is being gored, for the executive branch to say

21   our ox is fine is one factor that ought to loom --

22             THE COURT:  (Inaudible) how the Supreme Court

23   deals with non-delegation issues in the legislative context?

24             MR. SINGH:  So again, I don't think that

25   non-delegation doctrine -- it hasn't come up that often, but

1    when it has come up, I don't think the issue there is that

2    the executive branch has insufficient --

3            THE COURT:  No, I mean like Congress is perfectly

4    happy to tell an Article II agency to regulate.  Right, the

5    court doesn't usually give sort of credence to like -- what

6    I'm trying to say is the separation of powers question is

7    one that is not susceptible to the branch saying we would

8    prefer not to exercise these powers, we're gonna give it

9    away, or are fine giving it away, right?  Or then tell me

10   where the case law supports that view.

11           MR. SINGH:  I would just think of it entirely

12   differently and I think that *Yates* actually, again, has the

13   language.  And this is binding precedent in this Circuit and

14   it's clear on this.  It says what the False Claims Act does

15   is the government retains the function of protecting the

16   public fisc.  But what the False Claims Act does is give it

17   the flexibility to do so through an avatar in the

18   litigation.  That's the word from *Yates*.

19           THE COURT:  Is that a helpful phrasing?

20           MR. SINGH:  It's a weird phrasing, but I think

21   that it is helpful, because I think what it shows, Your

22   Honor, is that just as the government has flexibility to

23   carry out a lot of its functions through contractors or

24   private third parties, so too here.  And not in a way that I

25   think anyone --

1          THE COURT:  Can I ask -- can I ask a different

2    question?  Because you gave me good examples.  I agree, the

3    government contracting national security, that sort of

4    thing.  But those are all contractors in that they are

5    operating subject to the terms of a contract, which you

6    admitted.

7          Is there anyone who operates in like a litigation

8    function who is not deemed an officer?

9          MR. SINGH:  So I don't know.  Certainly I have not

10   seen case law about this.  This is not the type of situation

11   that comes up frequently.  And so --

12         THE COURT:  Which is why it's called an avatar I

13   think.  I mean, or -- it's like every time we talk about it,

14   it's like unusual.  But I'm trying to square it with the

15   continuity and other Appointment Clause requirements.

16         MR. SINGH:  It's unusual today, but I do think

17   that it's perhaps conspicuous that the other side is -- we

18   have discussed that historically there were many Qui Tam

19   statutes, including some of what you've described as the

20   true Qui Tam statutes.  The most clearly analogous uninjured

21   plaintiff pursuing public injury on the government's behalf

22   and keeping a piece of the reward.  And no one said those

23   were unconstitutional back then.  And I don't think that

24   there is -- and so, you know, those, I would hold them all

25   up as potential examples that might satisfy Your Honor.

1    That's why the history is relevant.  Right?  And I think

2    that there is --

3                THE COURT:  Sorry.  You're saying all of them, not

4    just the FCA similar ones?

5                MR. SINGH:  Oh, no, I'm saying look at the similar

6    ones where --

7                THE COURT:  And they're sufficient regardless of

8    how many prosecutions were brought under anything?

9                MR. SINGH:  I do think so, Your Honor.  The way I

10   read *March vs. Chambers* and the cases that came thereafter,

11   they say that the -- *March vs. Chambers* distinguished

12   between mere historical practice and the acts of the first

13   Congress and placed particularly strong weight on the acts

14   of the first Congress on the premise that the men who

15   drafted the Constitution would not have enacted laws that

16   conflicted with those same provisions.

17               And so if you want my -- actually, my favorite

18   historic example, there's a -- and actually, let me circle

19   back to one of the questions you've asked.  I am also not

20   aware of a compendium.  I do think, however, that Westlaw

21   searching is unlikely to be fruitful, precisely because when

22   so many of the sources are so old and likely to be in trial

23   level courts, it's not gonna be where they are.  But the one

24   I'm gonna talk to you about you can find a little bit about

25   it -- and if you want more briefing on this, you know, I

```
1   know it's a heavy left, but we can go lift it.

2           There was this Slave Trade Act.  It was first

3   enacted --

4           THE COURT:  Yes, this is the one -- the Rhode

5   Island?

6           MR. SINGH:  Yeah.

7           THE COURT:  Yes.  Okay.  Yes, I'm familiar with

8   that.  That's the only deep dive I've seen.

9           MR. SINGH:  Yeah, me too.

10          THE COURT:  One particular Qui Tam, right.  So I

11  am familiar with that, yes.

12          MR. SINGH:  But it's a lovely statute, right?  It

13  said at first that the --

14          THE COURT:  Does it matter there that the District

15  Attorney was often the lawyer representing the person who is

16  like the Relator?

17          MR. SINGH:  I don't think it matters, because it

18  was a smaller country and it's not surprising that there

19  were those people, but I think that --

20          THE COURT:  But if the person is a government

21  officer who is the one litigating on behalf of the

22  Relator --

23          MR. SINGH:  It was not a Federal officer I don't

24  think.

25          THE COURT:  Yeah, I don't --
```

1          MR. SINGH:  Yeah, I don't think that matters.  You

2    can have a cop do a False Claims Act case and it would be

3    fine.  And so I think -- I think that statute provides a

4    really good illustration, a very analogous statute.  So

5    George Washington signs it into law.  It says at first the

6    informer can keep half the bounty of the law suit.  Then it

7    gives them the whole bounty.  I think they amended it in

8    1800 or --

9          THE COURT:  Uh-huh.

10          MR. SINGH:  -- (inaudible) to do that.  That was

11    cool.  And so, yeah, I think there are great historical

12    examples that show that this type of statute was amended --

13    was enacted and then amended to strengthen it.  And so the

14    idea they just did this unthinkingly, they had no idea what

15    a Qui Tam was.  It's not true.  It's evidently not true.

16          Now, when you have such older historic records and

17    a lot of action going on in the trial level courts, I think

18    deep dives like that are going to be elusive.  And so the

19    question then becomes, well, what follows from that?  Do we

20    just get to say, okay, well, now we're going to ignore

21    history or we're going to presume that the history doesn't

22    exist?  I think that's unfair.  I think to presume --

23          THE COURT:  I think we have to do the historical

24    research.

25          MR. SINGH:  Yeah.  But I think that if the

```
 1   historical research doesn't turn up that much, I think to
 2   presume that nobody cared is the wrong conclusion.  Because
 3   I think this Court should not lightly be striking down acts
 4   of Congress that have existed since the 1860s substantially
 5   unchanged except that the government has become more
 6   empowered to supervise.
 7            And I don't think that the Court -- and so I think
 8   that when you think about just where the judicial role is, I
 9   agree originalism and history have a tremendously important
10   role to play, but to put the thumb on the scale and say
11   unless you can prove that the history conclusively
12   establishes the constitutionality of this thing and I find
13   the record to be robust and complete, you know, I'm gonna
14   strike down a Federal statute that's been around for 180
15   years, I think that's a lot.  And so I would be very
16   cautious about it.
17            I think the right answer is --
18            THE COURT:  One, I'm very cautious about it and,
19   two, I don't strike down statutes.
20            MR. SINGH:  Sure.  Well --
21            THE COURT:  One case.  But I hear your point.
22            MR. SINGH:  Understood.
23            THE COURT:  I'm not -- I think the aspect that
24   you're missing to the argument, or at least rhetorically
25   leaving out, is that the recent Supreme Court precedent is
```

1    very much opposed to these separation of powers arguments.

2    And I think that if we were in a vacuum and they passed the

3    False Claims Act as it looked in 1986 today for the first

4    time, I don't think this would be a very close question in

5    Article II given the current precedent.

6            MR. SINGH:  So maybe I can address that.

7            THE COURT:  That's why I said I think that this --

8    I agree the history is really hard and I'm looking for help

9    on it.

10           MR. SINGH:  Sure.  I want to give as much as I

11   can.  You've got my best shot so far and, as I say, if

12   supplemental briefing would be helpful, we can try and put

13   it together.

14           I'll candidly admit I don't know what that

15   historical inquiry will show.  We've looked at the statutes

16   I think probably about the similar depth as Your Honor has

17   and, you know, we think that what's there establishes the

18   constitutionality of this mechanism, that is, the specific

19   mechanism of a private plaintiff suing despite no personal

20   injury on behalf of the government.  And so we think that's

21   a clear historical record.  But we can do more on that.

22           On the question of the modern precedents, I think

23   the issue is that they are fundamentally addressed to a

24   different set of questions, that is, they are largely about

25   this unitary executive idea, how much control must the

1    President have over folks who are already in the executive

2    branch, the officers.  And --

3              THE COURT:  I mean, what do you do about the

4    Appointments Clause cases?

5              MR. SINGH:  So I think that the --

6              THE COURT:  *Polansky* certainly helps on that

7    question, I agree.  There's more control given to the

8    government.  But I don't think it remedies any of the

9    Appointment Clause problems.

10             MR. SINGH:  Well, I think the Appointments Clause

11   question is -- the simple way to put it is, are these

12   Relators exercising such powers that they must be officers

13   who are subject to the Appointments Clause.  That's how I

14   would put it, right?  Because I think everyone agrees

15   they're not actually officers.  And so the question is, do

16   they need to be.  And there's I would say prescious little

17   law about that.  I don't think any of the recent Supreme

18   Court precedents are addressed to that question.  Instead --

19   and I don't think any case is considered somebody in the

20   Relator's position.  Let me expound a little on what I mean.

21             So there are two pieces to being an officer, you

22   have to have the continuing office established by law and

23   you have to exercise significant powers under the law of the

24   United States.  That's how *Lucia* phrased the test.

25             On the continuity point, I think I agree with

152

1    everybody in the room that the law is unclear about what

2    (inaudible).  I will say, for the reasons I gave earlier,

3    the scope of the Relator's involvement is narrower even than

4    the Special Counsel's, because the Relator has no government

5    office during the prefiling investigation.  And it would be

6    wrong to downplay the significance of that, because that's

7    really where the government flexes its power, when it goes

8    out and issues search warrants, when it gets records from

9    third parties using the full weight of the United States to

10   gain that information.  That is quite a different story.

11          When the people who are doing that work for months

12   or years get paid by the government to do that work as

13   opposed to Relators who have is to shoulder all of that

14   expense on their own, that's a big deal.  A very big deal.

15          And so when you talk about continuing obligation,

16   you know, it's not even just one case, in the sense that

17   those cases might also be one case, it's like a part of one

18   case for which the Relator is playing any role where they're

19   doing something directly for the government.

20          Now, are they -- I also think that the continuity

21   piece ought to incorporate the fact that the Relator status

22   is contingent on the government's continued forbearance,

23   that is, the government's dismissal power makes the Relator

24   status quite tenuous.  They have no civil service

25   protections, they have very minimal protections from being

1    removed from the case.  And so I think that's relevant as

2    well to the continuity question as you think about it.

3          I also think that these two prongs, although

4    they're talked about as independent inquiries, are probably

5    at least functionally in the cases mushed together a little

6    bit in some sort of sliding scale, that is to say, if

7    someone is not exercising a lot of power --

8          THE COURT:  I think that's a fair assessment.

9          MR. SINGH:  Yeah.  And so there are I think --

10   again, everything I said before about how limited the

11   Relator's powers are -- and here I really do want to

12   distinguish between power -- and I want to be super clear

13   about this, the Relator has no power that a private civil

14   litigant in a different type of case wouldn't have.  If they

15   were a plaintiff in any other civil --

16         THE COURT:  Except res judicata against the

17   Federal government.

18         MR. SINGH:  But that's not a power for the

19   Relator, that's a consequence of judgments that I think

20   courts could, if they felt like it, waive.  That's not a --

21   that's a judicial doctrine that's not in the statute.  And

22   so I don't think that the -- I don't think they're granted a

23   power that way.  And so my sense for it, Your Honor, is that

24   the Relator is not exercising power different from what a

25   private civil litigant would exercise in an antitrust case,

 1    a securities fraud case, any other number of cases that also

 2    implicate governmental interests where the government might

 3    bring a criminal action based on the same conduct.  Those

 4    cases all exist throughout the U.S. Code -- or those causes

 5    of action exist throughout the U.S. Code.  The Relator here

 6    has no special powers.  What they actually have is less

 7    power because of all the supervisory controls that the

 8    government has.

 9             THE COURT:  So let me go back to when you said

10    that you think the judicial doctrine of res judicata could

11    be waived such that a second FCA claim could have been

12    brought by the government if -- how would this work?  Say,

13    you reduced the judgment a final number and the Relator is

14    awarded 30 percent of that and then the government says,

15    well, we can get more.  Now what?

16             MR. SINGH:  I think a judgment in the government's

17    favor would likely be preclusive.  But to that situation --

18             THE COURT:  What about a dismissal with prejudice?

19             MR. SINGH:  So, yeah, I think the government, if

20    it brought a later action, could make arguments.  But I'll

21    tell what the government actually does, which resolves this

22    issue before it happens, is they frequently will file a

23    statement of interest like the ones you've seen in this case

24    and they will say, if you're going to dismiss the Relator's

25    actions, we ask that any dismissal be without prejudice to

1    the government.  And frequently that relief is granted.  And

2    so the government retains the right to bring its own action

3    if a declined Qui Tam case is dismissed.  And courts

4    frequently grant that relief.  So that's how it works out in

5    practice.  And it obviates the need to have a debate about

6    whether res judicata would apply if a declined case is

7    dismissed.

8           But I think that even if you were to have that

9    debate, it's not a guarantee that the government's

10   subsequent action would be dismissed.  You know, I think

11   estoppel doctrines work a little differently against the

12   government and so I think there is room there.  Now, I'm

13   sure the other side will disagree about that, but my point

14   is it's not set in stone, so I don't think the Relator has

15   been granted any power to bind the government.

16          THE COURT:  And you don't think -- well, I don't

17   know.  Is there any double jeopardy concern given the

18   punitive nature of the fines imposed?

19          MR. SINGH:  I have not seen double jeopardy ever

20   applied in the False Claims Act context and I don't believe

21   it would apply.  I believe it applies in the --

22          THE COURT:  Wouldn't it arise if you give

23   preclusive effect to the earlier judgment, like is the

24   government gonna bring it again.  But if it did, would there

25   be double jeopardy?

1          MR. SINGH:  I don't think so, Your Honor.  I don't

2    think -- I think double jeopardy does not apply in this

3    context.

4          THE COURT:  Because of the designation as civil?

5          MR. SINGH:  Yes, Your Honor, I think that's right.

6    And there may be other reasons as well.  I'll admit I have

7    not run that issue to ground, so don't -- you know, I know

8    less about that than I think.

9          I will say the one reason double jeopardy stands

10   out to me is it does strike me as there's a familiar

11   historical analogue to what we're going through now.  I

12   think everyone understands that this motion was precipitated

13   by Justice Thomas's dissent saying, hey, I think there are

14   constitutional questions about the False Claims Act.

15   Justice Thomas, of course, did the same thing joined by

16   Justice Ginsburg in the context of the double jeopardy --

17         THE COURT:  I'm very familiar with *Gamble*.

18         MR. SINGH:  And then ultimately determined, you

19   know, my --

20         THE COURT:  But then history didn't bear it out,

21   which is why I care about the history.

22         MR. SINGH:  But I think so to here, I think that,

23   you know, one should not overread the dissent in *Polansky* as

24   an opinion that the statute actually is unconstitutional.  I

25   think --

 1          THE COURT:  I agree.  I agree.  I think *Polansky*

 2   is telling lower courts to give it consideration, which is

 3   what I'm trying to do.  And I think that's why Justice

 4   Kavanaugh wrote his opinion saying I also would like this to

 5   be given due consideration.

 6          MR. SINGH:  Yes, Your Honor.  I would be happy to

 7   answer any other questions the Court has, but I know this

 8   has been --

 9          THE COURT:  Longer than anyone anticipated.  No, I

10   don't think I have any other particular questions, unless

11   you want to address whether this is property.

12          MR. SINGH:  So I think you saw the Relator say

13   this is covered by the Property Clause.  You saw the

14   defendants effectively wave a white flag over that argument.

15   I think that you should -- in whatever decision you write,

16   the right thing to do would be to assume it arguendo as

17   opposed to -- because the parties seem to be in agreement.

18   And I think that that's correct.

19          Now, there may -- we didn't brief this question,

20   there may be other constitutional bases for the assignment

21   as well.

22          THE COURT:  What would they be?

23          MR. SINGH:  So you could imagine, for example, it

24   being an outgrowth of the necessary and proper clause

25   coupled to the authority to enact the False Claims Act in

1    the first instance, that is, if Congress has the authority

2    to enact the False Claims Act, it has the authority --

3              THE COURT:  But what's the basis for enacting the

4    False Claims Act?

5              MR. SINGH:  The Commerce Clause power likely.  And

6    I believe the spending power may be as well, since it

7    protects Federal funds.  So there are a number of sources of

8    power that allow Congress to enact statutes like this.  And

9    I would view the Qui Tam provisions as sort of an adjunct to

10   those.  So I think the Property Clause is sufficient, but I

11   think there may be more there.  And that's why I don't think

12   it would be necessarily the best idea to get into it given

13   that the parties haven't really fought over it in this case.

14             I did want to leave you with like one final

15   thought, and that is I think the history is supportive of

16   our side and one of the ways that the other side wants to

17   brush the history aside is to say the modern regulatory

18   state is different.  You know, government has gotten bigger,

19   enforcement has gotten bigger, and so on and so forth.  But

20   similar arguments could always be made.  I mean, we've heard

21   time and again, people say today's guns are different than

22   the guns that existed at the time of the founding and,

23   therefore, we interpret the Second Amendment -- we all

24   interpret it differently.  But the Supreme Court has been

25   quite clear, no, you --

```
 1              THE COURT:  I agree, I think I agree with where
 2    you're going, the legal principle needs to run true
 3    throughout, right, regardless of the --
 4              MR. SINGH:  Yes, Your Honor.
 5              THE COURT:  -- iteration of how it looks today?
 6    So I'm just trying to figure out what the principle was that
 7    I can glean from the historical record to apply to Qui Tam
 8    as it was enacted in 1986.
 9              MR. SINGH:  Thank you, Your Honor.  I think the
10    historical principle is it's totally fine for the
11    government to -- for Congress to permit private persons to
12    sue on the government's behalf and keep a portion of the
13    recovery.
14              THE COURT:  Okay.  Thank you, sir.
15              I did say that, Mr. Krueger, you could have five
16    minutes, right?  I realize this all went much longer than
17    counsel anticipated.
18              MR. DRAKE:  Judge, Scott Drake for Freedom.  In
19    light of that, I was going to ask if I could sneak out?
20              THE COURT:  Yes.  Anyone is free to leave.  I
21    understand --
22              MR. DRAKE:  Normally I wouldn't do that, but I'm
23    told if I don't make my 5:30, I'm not able to get home.
24              THE COURT:  Go home, then.
25              MR. DRAKE:  So I appreciate the Court's time and
```

1    sorry to leave.  Thank you.

2          THE COURT:  No, it's okay.  If anyone needs to

3    leave, I understand.  This went much longer.

4          Yes, sir.

5          MR. KRUEGER:  Thank you, Your Honor.  I want to

6    pick up on a handful of points.

7          First, there's been a lot of discussion about

8    whether there are any examples of somebody who exercises

9    what has been conceded to be core executive power in

10   prosecuting and enforcing Federal law where that individual

11   does not also amount to be an officer.  And I think the

12   answer is no, is what you've been told today, that there's

13   not an example of that.  That's critically important.

14         And to the extent that there's been examples given

15   of like a Federal --

16         THE COURT:  Would you like to actually address I

17   think what Ms. Estes's point was about the pre-initiation of

18   the lawsuit being a part of the case that Relators are cut

19   out of and, thus, it's more narrow in scope?

20         MR. KRUEGER:  Sure.  And before I do that --

21         THE COURT:  That was Mr. Singh's argument too I

22   think.

23         MR. KRUEGER:  And right before I address that, let

24   me point out there's been some discussion that perhaps the

25   Federal prosecutor is an example of that, and I think the

1    answer is clearly no.  If you look at the government's brief

2    here, it wasn't signed just by Ms. Koh, it's signed by an

3    officer.  Indictments of Federal law suits are always signed

4    by an officer, a U.S. Attorney, an Assistant Attorney

5    General.  Line prosecutors don't get to file lawsuits in the

6    first instance like a Relator can.

7         As to your point about the pre-commencement

8    powers, although they may not have governmental powers at

9    that point, it's not nearly as significant as they're

10   suggesting, because once a suit is filed, then the Relator

11   files suit in ways that are far more than any private

12   individual could.  They can file claims that are only the

13   government's.  They can seek discovery that would be much,

14   much broader than they would be able to assert if discovery

15   was limited only to their own private interests.

16        And this case is an example.  The relator was a

17   physician and worked on a handful of particular cases, but

18   her complaint sweeps far, far more broadly to claims on

19   behalf of the entire United States.  And so it's now

20   subjecting defendants to discovery related to physicians

21   that are far beyond any work that she saw beyond her

22   particular claims.  Once filing that suit and then engaging

23   in this much broader discovery that only the government

24   would otherwise be able to do, she could have amended her

25   complaint to broaden it.  And as the case goes on she will

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1    be seeking damages that are far beyond damage related to

2    claims that she actually worked on individually. She is

3    stepping into the government's shoes and seeking to impose a

4    judgment that is far, far broader. So I don't think that

5    the fact that she doesn't have investigative powers should

6    distinguish her.

7         Cases like *Buckley*, like *Donziger*, all point to

8    the fact that if the -- that when you have prosecutorial

9    power that's going forward in filing the suit, deciding

10   whether to file the suit, what claims to assert, and

11   implementing it, that's executive power.

12        And we don't have any contrary examples other than

13   what Relator -- excuse me, what Mr. Singh pointed to when

14   asked for an example was to try to point back to the very

15   earliest statutes, to history.

16        Before I go to history, though, I want to just

17   point out the reality of today, because there's been a lot

18   of emphasis in hearing the government in that position try

19   to puff up what they call the substantial supervision over

20   the case. But it just doesn't align with the reality of

21   these cases.

22        Once the government declined -- and you could look

23   at Docket 120, for example. The government's statement of

24   interest in this case is that it's not the party and that it

25   takes no position on the merits of the factual allegations

1    in this case.

2            Who's prosecuting this case?  To the extent that

3    there are controls that point to hypotheticals like the

4    government could intervene later and at that point, now that

5    it's declined, the Relator would remain a party and could

6    not reduce the Relator's participation in the case.

7            THE COURT:  Well, I don't know what to do with

8    that language in light of *Polansky*.

9            MR. KRUEGER:  *Polansky* goes to a dismissal, right?

10           THE COURT:  Right.  Yes, that is true.  But if you

11   can rid the Relator of the entire case, I'm not sure how

12   that's not reducing the rights.

13           MR. KRUEGER:  Agreed if you were successful in

14   that, but you can't dismiss a Relator without the Court's

15   approval.  And so if we're going to -- that sort of connects

16   up to the removal and how this is not a removable Relator in

17   the way the executive power speaks to.

18           But the point is, the supervisory controls are

19   convoluted at best.  The government, in order to apparently

20   be able to effectuate that, would have to intervene and

21   dismiss a case.  At that point, the closer we get to trial

22   there's real risk of a dismissal with prejudice.  There's no

23   right to dismissal without prejudice.  And they may have

24   blown the statute of limitations as opposed to being able to

25   prosecute the case themselves, as opposed to being able to

1   replace Relator with somebody that they actually want in the

2   position.

3           THE COURT:  You sort of touched on something I

4   didn't ask in your opening, the timeliness argument.  I

5   don't think it's a subject matter jurisdiction issue or I

6   don't think it can be standing, right, because of *Stevens*?

7   So in light of the fact that *Polansky* leaves some partial

8   assignment, it has not abrogated *Stevens*, so it can't be

9   subject matter jurisdiction, right?

10          MR. KRUEGER:  Our subject matter jurisdiction is

11  the argument that if there is no valid Article II -- valid

12  under Article II cause of action, then the Relator would be

13  without a cause of action, without standing to sue.  But

14  even if --

15          THE COURT:  But isn't that different, though, a

16  cause of action is different than -- or is that how that

17  works, I guess is what I'm trying to say?  Like they might

18  still have standing, but not be in the zone of interest.  I

19  don't know.  I'm just trying to figure out like if I don't

20  agree that it's a subject matter jurisdiction issue, then

21  what?

22          MR. KRUEGER:  Then I think you're still absolutely

23  free to address this question.  As you pointed out, it's

24  very, very common that constitutional challenges are raised

25  at summary judgment.  We are --

1          THE COURT:  Just an abuse of discretion whether I

2    think it's timely and unfair to the parties.  What's the

3    standard for raising a constitutional claim?  I've certainly

4    not seen it always raised as like an affirmative defense, it

5    could just be raised as a 12(b)(6), but --

6          MR. KRUEGER:  You know, the case law is mixed on

7    this.  We did a deep dive case law looking at this question

8    and I did not find a single case in which a Court refused to

9    address a pure legal issue, a constitutional challenge,

10   because it wasn't pleaded in the answer.  I'm not aware of

11   any.  Instead, cases like *Exactek* (ph) in this Circuit, the

12   Court went ahead and reached it noting in particular the

13   lack of any prejudice to the other side.

14         When the opposition was talking about it being

15   untimely under Rule 12, that's just clearly not true,

16   because Rule 12(c) allows this motion.  It's not a 12(b)

17   motion, Rule 12(c) motions can be brought -- whenever.  So

18   there's no statement in Rule 12 that says this is untimely.

19   And there's -- and so the Court absolutely has discretion to

20   address it, particularly when there's no prejudice to the

21   other side.

22         When we had a significant discussion about do we

23   have officers here, because I think, as you pointed out,

24   this is a really clearcut case if Relators are exercising

25   the power of officers, because there's no appointment, done

1    deal.  And so --

2              THE COURT:  Well, I think it's an open question

3    whether they're in a continuous office.  I think that's the

4    hard part of officer.

5              MR. KRUEGER:  Right.  And I think when you have

6    cases like *Morrison*, like *Donziger*, I don't know how you

7    would distinguish those cases from Relators who are

8    executing executive power on a continuous basis.  This case

9    has been going for four years now.  The fact that it's a

10   discrete particular case, *Donziger* points out isn't

11   dispositive.  And that sets it apart from some of these very

12   older cases where, again, you might have a surgeon or an

13   appraiser who is asked by a Federal officer to lend their

14   subject matter expertise as to a very finite task that's

15   part of a broader task being done by that officer.

16             THE COURT:  Do you have a response to the

17   government contractors example?

18             MR. KRUEGER:  Yes, I wrote that one down too,

19   because it's not the answer to the situation here for a

20   couple of reasons.

21             First, and I think you asked my friend about that,

22   that there's no examples of a government contractor being

23   vested with the enforcement of Federal law as a power, like

24   a prosecutor.  He's give an example --

25             THE COURT:  Litigation authority, is that the

1    divining line, litigation authority?

2          MR. KRUEGER:  I'm gonna give you a couple of

3    distinctions and that's one.  And that's a really important

4    one, because it has core executive power to bring an

5    enforcement action and to exercise the enforcement

6    discretion in the first instance to file a suit.  So that

7    would be different than, for example, if the government --

8    if DOJ had picked a particular case and decided that it

9    would be litigated and then went and hired a law firm to

10   carry out the litigation under their supervision.  This is

11   more like Congress saying we hereby allow anybody to be a

12   contractor to the government and file suit however they

13   want.

14          So that gets to the second distinction.  So first,

15   enforcement of Federal law, but second --

16          THE COURT:  Well, I think enforcement is a

17   broad -- you mean litigation enforcement, right?  Like if

18   you have someone who is a contract worker at the border and

19   they're arresting people or detaining people or whatever

20   they're doing to help DHS, they're enforcing Federal law.

21   In a discretionary capacity too, right?  Like they're not

22   just reevaluating the customs value of the goods that came

23   in.  That's a very fact determination.  It's discretionary,

24   is what I'm saying.  So I don't think that gets you there, I

25   think it has to be a litigation distinction, right?

1          MR. KRUEGER:  I think it's part of it, but I

2     want -- and with it you look at cases like *Nixon*, again,

3     like *Buckley*, where the choice of bringing that suit,

4     discretionary, but it's a significant thing to bring charges

5     and then to be litigating.  But with that, in a government

6     contractor situation, those government contractors are

7     always hired by an Article II officer under their close

8     supervision and subject to removal or termination of the

9     contract.  Totally different than here, where anybody in the

10    world can self-appoint without Article II having anything to

11    do with it.

12          In fact, here, part of the problem is that

13    Congress didn't like how Article II was doing False Claims

14    Act work.  Congress didn't like that DOJ wasn't more

15    aggressive or whatever they thought.  And so it goes right

16    to the heart of separation of powers, that Congress here

17    allowed anybody to self-appoint without an officer of

18    Article II having a contract with that person or being able

19    to terminate the contract.  So I really think it's an apples

20    and oranges.

21          So when, again, you asked opposing counsel for an

22    example that had to do with prosecution, the best that he

23    could point to was, well, some of these things existed at

24    history.  And so it gets to your history question again,

25    which you have pointed out is perhaps what you think is the

1    hardest question here.

2          And I think there's a few points that we need to

3    come back to.  You've been asking what is the standard to

4    assess it.  And I think you should feel some level of

5    comfort that a lot of research has been done here.  Between

6    what you've seen in all of our briefs, in *Stevens*, and the

7    OLC memo, I won't call it an opinion, in the Law Review

8    article by Prakash and other ones that he cites, there's

9    been a lot of work and attention put into this.  And what

10   has been found is that the history is very uneven, very

11   checkered, as to what you would deem as those not aggrieved,

12   but cause of action Qui Tams.

13         So I don't think you should act as though we don't

14   know the historical record here.  We do.  And the historical

15   record is that what happened in England is not particularly

16   pertinent, because we adopted a different separation of

17   powers.

18         THE COURT:  Wouldn't it be important, though, if

19   there's 300 cases brought in the first decade of the

20   enactment of those FCA-like case -- statutes and we just --

21   they're all at the trial level and the record of them and no

22   one contested them, wouldn't that be important?  I feel like

23   that would be important.

24         MR. KRUEGER:  With all due respect, that's sheer

25   speculation by opposing counsel that that was the situation.

1    You do have, again, all of the work that has been put into

2    this, including by Professor Prakash and others.  And nobody

3    has come forward with an example -- or of a history of that.

4    We know how to do historical research, people have put

5    efforts into it.

6           And the answer is that the Qui Tams were not

7    regularly used.  In fact, the research is that they fell

8    into disuse.  And in fact, we know that there are lots of

9    examples of abuse of them and a dislike of them, which led

10   to the 1943 enactment of the False Claims Act pulling it

11   back.

12          So again, I think what you have here is a

13   situation that's so different than *Marsh*, with a long

14   unbroken chain, point one.  Point two, a situation where you

15   don't have considered adoption of Qui Tams at the time of

16   the framing.  You have considered adopt -- you have

17   consideration of the Appointments Clause, of the importance

18   of removal, but you have no evidence of a thoughtfulness

19   around allowing private individuals, 700 of them last year

20   alone, under the False Claims Act self-appointing to execute

21   for the executive branch.

22          I think, if anything, again, the historical

23   record, as my colleague Mr. Engel pointed out, it may prove

24   too much, because you have these examples of criminal

25   statutes, larceny like you pointed out, at the time of the

 1    framing.

 2            If we're going to say that that historical record

 3    justifies what can happen today, because this decision or

 4    the principles articulating need to address what Congress

 5    can do in all manner of suits, it would be opening the door

 6    to things that I think everybody in the room would think are

 7    unthinkable, that you would allow private individuals to

 8    bring suit in the name of the United States or a criminal

 9    prosecution in the name of the United States, for example,

10    larceny.

11            So your historical record is there.  And the way

12    to approach it is not, again, what my opposing counsel

13    suggested of an absence of history means you grant judgment

14    for the defendants here.  It's the opposite, it's what you

15    said, that we have this not even being a close case under

16    the Appointments Clause or the Take Care Clause or the

17    Vesting Clause given the Supreme Court's guidance in the

18    last 20 years.  And so when you have private individuals

19    exercising core executive power who are not removable, who

20    are not appointed, then you would need to have a very robust

21    historical record to overcome what is a pretty clear

22    constitutional violation.

23            The answer that you hear is, well, dismissal is

24    equivalent to removal.  That, of course, doesn't solve the

25    Appointments Clause problem, but let me point for a moment

1    to why removal is not -- or dismissal is not the same as

2    removal.

3          You pointed this out yourself, that dismissal ends

4    an action.  It's not the same as allowing the government to

5    put its preferred actor in place.  Accountability requires

6    the President to be able to have the person that it wants

7    litigating the lawsuit.  Dismissal does not do that.  To the

8    contrary, dismissal comes, again, as far -- the litigant in

9    the case comes with risks of the statute of limitations

10   being blown, risks of a with-prejudice dismissal.  And so if

11   today the government became displeased with how the Relator

12   is handling this case and wanted to intervene and dismiss

13   today, it would face all of those risks.  And what it can't

14   do today is have a different person that it prefers

15   litigating this case.  Nor is it --

16          THE COURT:  Except itself.

17          MR. KRUEGER:  Except itself.  But what would

18   happen if that were the case?  Then the Relator would get to

19   remain as a party and not have her rights diminished.  So,

20   for example, we could get to trial and the Relator could

21   take opposing positions on a motion in limine.  The Relator

22   could, for example, seek to examine a government witness

23   more than the government would want that to happen at trial.

24   That puts into view how absurd the statute is.  In what

25   other situation can a private individual litigate alongside

 1    the government to enforce Federal law and take different

 2    positions than the government is taking?

 3            THE COURT:  Do you agree, though, that once

 4    intervened the Relator doesn't have preclusive effect on the

 5    government's positions?  I wasn't aware of that until it was

 6    brought out, so I'm curious.  What's your position on it?

 7            MR. KRUEGER:  Well, I think it depends on what we

 8    mean by preclusive effect.  What the statute says is that

 9    the Relator's positions are not binding, but I think all

10    that means is, for example, in my motion in limine --

11            THE COURT:  So they can disagree.

12            MR. KRUEGER:  Yeah.  How does that help

13    accountability?  How does that help the government being

14    able to have its person in place?  It's the exact opposite

15    of that.

16            And so when we talk about preclusion, to your

17    point, if you don't have the government intervene, as in

18    here, then the Relator will in fact bind the government by

19    the preclusive effect of any decision on the merits in this

20    case, again, without actually having a Federal officer

21    litigating this case.

22            I'm taking a moment to see my notes.  You've been

23    very, very patient with all the counsel here today and we

24    appreciate your time.

25            THE COURT:  Ms. Estes, is there gonna be any

1    desire for surrebuttal on your part, just given that you're

2    the other party?  You're the only other party.  I'm just

3    asking.

4                MS. ESTES:  The desire certainly, but I'll

5    refrain, Your Honor, given the time we've spent already

6    today.

7                THE COURT:  Okay.  Well, if there's anything else,

8    let me know.  I realize this is very lengthy, but I don't

9    intend on having a subsequent oral argument on it, so...

10               MR. KRUEGER:  I appreciate it, Your Honor.  I'll

11   wrap up here just with a last point, to come back to the

12   Appointments Clause, because I think, as you said, that may

13   be the most straightforward way to approach this case.

14               After *Morrison* I don't know how you could find

15   that the Relator is not an officer.  And *Morrison* has been

16   already understood to be probably more lenient towards

17   infringements on the separation of powers.

18               THE COURT:  Outer limit.

19               MR. KRUEGER:  The outer limit, that's right.  As

20   you pointed out, the Relator has an even broader mandate

21   than the Independent Counsel in *Morrison*, who is confined to

22   look only at a certain set of facts, was appointed by the

23   Attorney General, and then was investigating just that

24   circumscribed set of facts.  Whereas here, again,

25   self-appointed, able to litigated for four years plus, and

1    when doing so used the broad discovery powers that civil

2    litigation entitles, including discovery far beyond what

3    she'd be able to do if it were just her own injury, seeking

4    a judgment that is remedied in the government's injuries,

5    bringing essentially punitive treble damages, civil monetary

6    penalties that, let's face it, basically exert settlements

7    out of defendants in the vast majority of cases.

8            The False Claims Act has become of behemoth and it

9    is not sufficiently accountable when over 700 people last

10   year could self-appoint to litigate on behalf of the United

11   States.

12           We appreciate the time.  If you have any other

13   questions, I would be happy to answer them.

14           THE COURT:  No further questions.

15           MR. KRUEGER:  Thank you, Your Honor.

16           MR. ENGEL:  Your Honor, may I?

17           THE COURT:  Yes.  That applies if anyone else

18   wants two more minutes or five minutes or whatever.

19           MR. ENGEL:  I'll try to -- Mr. Singh had said that

20   there was a white flag on the Property Clause and I just

21   wanted to make sure that the record is clear here.  What we

22   see the False Claims Act's doing here is outsourcing a

23   government function, a function that *Buckley* recognized is

24   the civil enforcement of the laws.  That's different from

25   the hypothetical of whether the government in a particular

176

```
 1    instance, whether Congress could transfer a particular

 2    chosen action, identifiable personal property to one person

 3    or the other.

 4             THE COURT:  If Congress had a -- right, an

 5    identifiable cause of action, they could reassign that.

 6             MR. ENGEL:  Yeah, I mean --

 7             THE COURT:  Similar to what happens in bankruptcy,

 8    right?

 9             MR. ENGEL:  I would say we would have the

10    bankruptcy -- Congress sometimes will legislate against the

11    backdrop of pending litigation.  There are Supreme Court

12    cases on this too, about whether and when they can kind of

13    address these things.  And so, you know, if Congress wanted

14    to legislate under the Property Clause with respect to

15    identifiable personal property, that would be a very

16    different interest than what we're talking about here, which

17    is essentially we are concerned that the executive branch is

18    not doing enough to enforce Federal law and so we are, for

19    all time to all comers, be they foreign or domestic,

20    outsourcing to persons to litigate on behalf of the United

21    States.  And *Buckley* could not have been clearer to say that

22    the civil litigation remedy is a core executive authority

23    there.

24             Then the only other -- the other point, and I

25    think the Court understands this.  There's a question about,
```

1    well, here the government is saying save the False Claims

2    Act, save the Qui Tam Relators.  We're not involved, we're

3    not taking a position on the merits, but we're okay with

4    what -- how things are going here.

5           There is a list of Supreme Court cases in which

6    the Solicitor General stood up at the Supreme Court and said

7    the executive is okay with this, we're okay in Free

8    Enterprise Fund with the PCAOB, we're okay in Arthrex with

9    way the ALJ -- the patent ALJs handled this matter.  And in

10   both of those cases, and there's others out there, the

11   Supreme Court said, no, that's not enough, because the

12   purpose of the separation of powers is to ultimately ensure

13   the liberty of the people --

14          THE COURT:  The people, right.

15          MR. ENGEL:  -- by ensuring that there's an

16   accountable President who is making these decisions on

17   behalf of the people and he can be held accountable.  And

18   the Qui Tam provisions of the False Claims Act are run

19   directly opposite to that structure, where here the

20   Department of Justice takes no position on the merits of

21   this litigation and, yet, a private party is purporting to

22   execute the laws.  And so it's -- DOJ, can they be held

23   accountable, is the President directing this litigation, is

24   he not?  Well, they said we heard about it and we decided

25   not it intervene, we decided not to step in and now we take

```
 1    no position.  And this is the antithesis of accountability

 2    under the Constitution, not something that the executive

 3    branch can give up.

 4            I very much appreciate your time this afternoon.

 5            THE COURT:  Thank you, Counsel.

 6            Yes, ma'am.

 7            MS. ESTES:  If I may have one minute, Your Honor?

 8            THE COURT:  Yes.  That's why I offered, because I

 9    realize --

10            MS. ESTES:  One minute to confer --

11            THE COURT:  Whomever.

12            MS. ESTES:  I want to summarize only on one point,

13    Your Honor.  And I promise this will be less than a minute.

14            The realities of the case, and I want in

15    particular to point to the instance in this case that

16    counsel raised about the Court taking no position on the

17    merits.  It is not viewed in a silo.

18            THE COURT:  The government, sorry?

19            MS. ESTES:  Excuse me, the government.

20            THE COURT:  I also have no position on the merits.

21            MS. ESTES:  The government in its pleadings when

22    it does a statement of interest say it has no position on

23    the merits and counsel pointing to that as it not having

24    oversight on the merits.  But those are not viewed in a

25    silo, that statement, and I want to make sure that that's
```

1  not viewed as some perception that when the government says

2  that that it at writ large has no position on --

3         THE COURT:  It's abandoned false supervisory

4  powers.

5         MS. ESTES:  All of it comes together.

6         THE COURT:  I understood.  I took it in context.

7         MS. ESTES:  Okay.  Thank you.  That's our only

8  last position, Your Honor.  Thank you.

9         THE COURT:  Okay.  Thank you all.  I realize this

10  was much more lengthy than the docket indicated, but I

11  appreciate everyone's argument and preparedness and I am

12  considering not a mandatory, but maybe an invitation if

13  there's any party that wants to do supplemental briefing on

14  the historical question.  I'm considering it.  I understand

15  that there has been much done, but my impression of the lift

16  would be much more than perhaps counsel would want to do

17  given economic realities of the case.  So I'm just thinking

18  through it.

19         Okay.  If there's nothing further, then we're

20  adjourned.  Thank you.

21              (Proceedings adjourned.)

22

23

24

25

180

1   UNITED STATES DISTRICT COURT )
                                 )
2   MIDDLE DISTRICT OF FLORIDA   )

3

            **REPORTER TRANSCRIPT CERTIFICATE**

4

5        I, Howard W. Jones, Official Court Reporter for the
    United States District Court, Middle District of Florida,
6   certify, pursuant to *Section 753, Title 28, United States
    Code*, that the foregoing is a true and correct transcription
7   of the stenographic notes taken by the undersigned in the
    above-entitled matter (Pages 1 through 179 inclusive) and
8   that the transcript page format is in conformance with the
    regulations of the Judicial Conference of the United States
9   of America.

10                              /s
                            _____
11                          Bill Jones, RDR, RMR, FCRR
                            Official Court Reporter
12                          United States District Court
                            Middle District of Florida
13                          Tampa Division
                            Date:  5/8/2024
14

15

16

17

18

19

20

21

22

23

24

25

**MR. DRAKE: [3]**
159/18 159/22
159/25
**MR. ENGEL: [49]**
4/23 28/5 30/16
32/11 34/1 34/22
35/9 35/16 35/20
36/9 36/14 36/17
37/13 38/13 38/19
39/2 40/14 40/18
40/23 41/14 41/17
42/11 43/10 44/6
44/10 44/13 45/7
45/15 45/21 46/5
46/10 46/19 47/12
47/19 47/23 47/25
48/2 48/22 49/9
49/24 50/3 51/4
51/20 53/2 175/16
175/19 176/6 176/9
177/15
**MR. KRUEGER:**
**[51]** 4/18 6/16 7/4
8/22 9/2 9/22 11/5
12/16 12/25 14/12
15/7 16/9 16/21
17/17 18/8 18/22
20/7 20/21 21/6
21/9 21/24 22/9
23/12 23/18 24/8
25/11 26/1 26/11

26/23 27/16 27/25
28/3 160/5 160/20
160/23 163/9
163/13 164/10
164/22 165/6 166/5
166/18 167/2 168/1
169/24 172/17
173/7 173/12
174/10 174/19
175/15
**MR. SINGH: [64]**
5/2 129/21 130/12
131/22 132/8
133/10 134/1 134/3
134/12 134/17
134/25 135/21
136/2 136/5 136/7
138/24 140/2
140/16 140/20
140/24 141/7
141/24 142/2 142/6
142/21 142/25
143/9 143/12
143/24 144/11
144/20 145/9
145/16 146/5 146/9
147/6 147/9 147/12
147/17 147/23
148/1 148/10
148/25 149/20
149/22 150/6
150/10 151/5

151/10 152/9
153/18 154/16
154/19 155/19
156/1 156/5 156/18
156/22 157/6
157/12 157/23
158/5 159/4 159/9
**MS. ESTES: [92]**
4/7 95/15 95/17
95/24 96/8 96/15
96/18 97/5 97/18
98/18 99/3 99/5
99/11 99/22 100/7
100/12 101/13
101/25 102/6
102/14 102/22
103/13 104/9
104/14 104/25
105/17 105/20
106/8 106/14
106/19 107/3
107/12 107/25
108/6 109/9 109/24
110/6 110/13
110/24 111/3 111/8
112/4 112/18
112/23 113/2
113/16 113/20
113/24 114/11
114/24 115/1
116/20 117/2
117/10 117/18

MS. ESTES:... [37]
118/3 118/21
119/11 119/23
120/8 120/11
120/25 121/3 121/8
121/16 121/21
122/9 122/17
122/22 123/19
124/5 124/15
125/14 126/3 126/7
126/10 126/13
126/19 128/3
128/13 128/19
128/25 129/15
129/18 174/4 178/7
178/10 178/12
178/19 178/21
179/5 179/7
MS. KOH: [109]
4/14 53/5 53/8
53/12 55/9 55/20
56/6 56/15 57/7
57/14 58/2 58/15
58/25 59/3 60/2
60/16 62/4 62/9
62/18 63/4 64/20
64/22 65/3 65/6
65/10 65/21 66/8
66/17 66/22 67/9
67/16 68/1 68/5
68/9 68/24 69/4

69/10 69/18 69/20
70/9 70/23 71/5
71/8 71/10 71/17
72/18 73/7 73/12
73/19 73/23 74/4
74/10 74/20 75/15
76/11 76/14 76/19
77/4 77/10 77/13
77/19 78/1 78/9
78/13 79/25 80/8
80/23 81/8 81/21
82/5 82/13 82/25
83/13 83/18 84/3
84/9 84/12 84/16
84/21 85/1 85/19
86/5 86/17 87/3
87/5 87/13 87/21
88/6 88/25 89/8
89/15 90/5 90/11
90/21 91/2 91/25
92/4 92/14 92/25
93/5 93/11 93/14
93/22 94/1 94/9
94/17 94/24 95/1
95/6
THE CLERK: [1]
74/21
THE COURT:
[368]

$

$530 [1]  116/1
$530 billion [1]

'

'80s [1]  20/1
'86 [1]  115/20
'89 [1]  120/5
'90s [1]  35/25
'96 [2]  120/13
120/19

/

/s [1]  180/10

1

11 [1]  64/14
12 [9]  97/2 97/8
98/7 165/5 165/15
165/16 165/16
165/17 165/18
120 [1]  162/23
1236 [1]  4/4
125 [1]  107/10
129 [1]  3/7
15 [1]  43/3
15-minute [1]
95/10
15A [1]  2/18
160 [1]  3/8
175 [1]  3/9
178 [1]  3/10
1780s [1]  19/7
1788 [1]  48/7
1789 [5]  32/18 48/5
48/7 48/13 48/23

# 1

179 [1]  180/7
1790 [3]  81/20 84/7
 84/23
180 [2]  3/11 149/14
1800 [1]  148/8
1860s [1]  149/4
1863 [1]  75/20
1900 [1]  2/13
1920 [1]  2/16
1943 [1]  170/10
1986 [8]  19/25
 28/19 35/25 46/19
 72/4 119/7 150/3
 159/8
1:02 [1]  1/6

# 2

20 [1]  171/18
20 years [1]  7/23
200 [1]  2/3
2000 [1]  119/10
20006 [1]  2/13
2000s [1]  73/1
2003 [1]  36/21
20036 [1]  2/16
2004 [1]  36/21
202/261-3300 [1]
 2/14
202/629-3530 [1]
 2/17
2020 [1]  72/2

2024 [2]  1/5 180/13
22 [1]  1/5
25 [1]  34/10
28 [2]  3/4 180/5

# 3

30 percent [1]
 154/14
300 [1]  169/19
31 [1]  31/10
320 [1]  115/25
3300 [1]  2/14
33602 [1]  2/19
3530 [1]  2/17
3730 [3]  31/10
 134/21 135/24
3:15 [1]  95/11

# 4

40 [1]  50/22
41 [20]  20/10 22/23
 25/6 25/12 25/13
 25/17 42/10 42/25
 43/4 57/16 59/24
 60/16 60/18 90/13
 91/23 92/15 93/21
 124/14 141/24
 141/25
414/297-4987 [1]
 2/10
42 [1]  59/23
4400 [1]  2/4
4410 [1]  2/3

45 [1]  181 of 2/4
48 [1]  91/21
4987 [1]  2/10
4:56 [1]  1/6

# 5

5/8/2024 [1]  180/13
50 years [1]  118/18
5024 [1]  2/19
513/651-4400 [1]
 2/4
53 [1]  3/5
53202 [1]  2/10
5:30 [1]  159/23

# 6

65 percent [1]  40/5

# 7

70 [1]  15/1
700 [3]  19/17
 170/19 175/9
753 [1]  180/5
777 [1]  2/9

# 8

80 percent [2]  38/9
 40/6
801 [1]  2/18
813/301-5024 [1]
 2/19
835 [1]  2/16
8:19-cv-1236 [1]
 4/4

**8**

8:19-cv-1236-KKM -SPF [1] 1/5

**9**

90 percent [1] 9/24
95 [1] 3/6

**A**

abandoned [1] 179/3
aberration [1] 7/11
ability [25] 7/19 17/12 24/12 27/10 31/18 41/25 42/3 56/25 59/18 59/18 59/20 66/10 69/22 70/13 70/14 70/18 81/23 87/19 101/1 102/24 103/24 105/8 108/16 113/24 124/7
able [19] 17/22 80/10 86/22 87/23 87/25 116/9 119/17 125/22 159/23 161/14 161/24 163/20 163/24 163/25 168/18 172/6 173/14 174/25 175/3
about [108] 11/22 12/1 16/17 16/25

18/10 18/25 20/5 22/1 23/13 26/15 26/22 29/3 30/6 30/20 32/2 32/12 32/13 36/1 39/10 39/13 40/2 49/2 49/6 52/4 54/21 56/21 58/22 60/11 62/8 63/10 70/9 72/25 75/12 77/21 78/11 79/12 79/13 82/12 84/23 88/16 103/23 106/22 108/4 108/9 111/9 114/8 115/11 115/23 115/25 118/23 118/24 120/5 120/6 120/15 120/20 125/5 125/7 126/6 128/21 130/3 131/24 132/5 132/7 132/9 132/10 132/18 133/22 137/15 138/4 138/11 138/20 140/2 142/17 145/10 145/13 146/24 146/24 149/8 149/16 149/18 150/16 150/24 151/3 151/17 152/1

152/6 152/21 153/4 153/10 153/13 154/18 155/5 155/13 156/8 156/14 156/21 160/7 160/17 161/7 165/14 165/22 166/21 173/16 176/12 176/16 176/25 177/24 178/16
above [1] 180/7
above-entitled [1] 180/7
abrogated [1] 164/8
absence [1] 171/13
absent [4] 23/11 24/3 27/6 88/1
absolute [2] 27/10 123/4
absolutely [8] 20/7 24/8 26/1 54/10 55/20 78/17 164/22 165/19
absurd [1] 172/24
abuse [2] 165/1 170/9
Academy [1] 35/21
access [1] 125/21
accordingly [1] 54/14

# A

account [1]  25/18
accountability [6]
7/6 7/10 7/25 172/5
173/13 178/1
accountable [15]
7/8 7/20 34/17
37/21 37/25 38/8
109/22 109/24
109/25 110/5 110/8
175/9 177/16
177/17 177/23
accounting [1]
63/18
across [3]  65/17
115/3 115/24
act [120]  7/9 7/12
8/10 14/16 19/11
19/15 21/17 21/25
22/2 28/18 31/15
32/18 34/18 34/19
38/4 38/9 41/1 45/9
46/20 47/5 51/2
54/12 55/4 55/12
56/7 58/16 62/13
62/24 63/23 65/6
66/1 66/9 66/25
68/3 68/6 68/11
68/12 69/24 70/16
71/11 71/12 71/18
71/20 71/24 72/5
72/10 72/11 72/23

75/20 77/19 79/3
80/9 80/24 81/6
81/11 83/22 84/10
85/22 86/9 86/11
86/20 87/14 87/17
87/25 88/13 88/20
89/2 92/5 93/5 94/6
94/8 94/16 99/9
99/21 100/2 100/13
100/18 101/2
102/18 104/21
106/14 106/24
107/14 110/7 113/1
113/3 113/9 113/13
114/17 115/2
115/15 117/24
118/23 118/25
122/3 123/15
126/11 126/14
128/16 130/4
130/25 131/15
132/12 144/14
144/16 147/2 148/2
150/3 155/20
156/14 157/25
158/2 158/4 168/14
169/13 170/10
170/20 175/8 177/2
177/18
Act's [1]  175/22
Act-like [1]  114/17
acting [9]  54/4

55/3 56/1 56/12
58/12 80/5 80/8
83/7 134/16
action [81]  13/16
13/16 13/21 18/5
21/22 27/3 31/9
31/12 31/12 39/17
41/18 44/11 45/17
45/18 46/10 46/18
46/21 47/10 47/14
55/8 55/14 56/2
58/9 62/13 67/8
67/23 70/8 75/1
75/1 75/7 75/23
76/8 86/2 86/13
86/15 89/5 89/13
89/25 101/6 101/11
102/10 116/16
116/18 117/15
118/15 122/7
122/11 122/20
126/2 126/4 126/19
126/20 130/4
134/13 134/15
134/18 134/19
134/20 135/1 135/6
135/9 141/13
141/19 141/20
142/8 142/9 142/15
148/17 154/3 154/5
154/20 155/2
155/10 164/12

Case 3:19-cv-01236-KKM-SPF Document 164 Filed 03/30/24 Page 186 of 295 PageID 6282

action... [7]  164/13 164/16 167/5 169/12 172/4 176/2 176/5
actions [13]  15/1 15/19 17/11 45/10 63/9 76/24 80/18 87/25 135/14 135/22 136/2 136/7 154/25
actor [2]  105/4 172/5
actors [1]  132/14
acts [4]  33/2 146/12 146/13 149/3
actual [3]  19/25 61/21 90/9
actually [35]  5/6 13/17 15/12 17/8 35/11 45/3 47/3 49/6 52/15 68/1 68/22 94/3 99/7 108/12 109/9 114/16 115/10 120/19 126/24 127/7 128/7 131/22 133/19 134/8 144/12 146/17 146/18 151/15 154/6 154/21 156/24 160/16

ad [1]  9/13
ad hoc [1]  9/13
add [2]  12/8 86/22
addition [6]  13/18 29/2 39/6 69/10 75/3 108/22
additional [4] 22/11 26/8 41/5 51/1
additionally [1] 54/12
address [18]  5/6 6/25 21/13 22/12 43/25 98/2 98/4 98/5 129/22 150/6 157/11 160/16 160/23 164/23 165/9 165/20 171/4 176/13
addressed [9]  5/10 7/22 29/21 78/2 94/2 97/10 120/2 150/23 151/18
addressing [5] 24/10 50/17 72/16 72/19 98/11
adjourned [2] 179/20 179/21
adjunct [2]  139/19 158/9
administering [1]

administration [1] 36/21
admit [2]  150/14 156/6
admitted [1]  145/6
adopt [4]  9/1 9/3 51/15 170/16
adopted [5]  17/6 28/18 34/5 41/10 169/16
adoption [4]  16/20 17/3 27/23 170/15
affirmative [8]  96/9 96/13 97/17 97/19 102/8 102/11 102/15 165/4
afforded [1]  81/4
after [13]  7/24 14/4 35/25 36/1 38/16 39/3 39/23 41/24 42/9 81/16 93/8 95/12 174/14
afternoon [14]  4/3 4/18 4/23 4/25 6/17 28/5 53/6 53/7 95/15 95/16 129/20 129/21 132/20 178/4
again [46]  6/18 10/6 11/10 16/1 16/11 18/8 19/3

**A**

again... [39]  19/22 22/10 25/19 33/16 39/2 44/3 47/8 47/12 51/4 64/22 69/24 83/18 94/9 97/5 108/9 112/7 114/18 115/21 125/5 133/16 139/1 141/16 142/17 143/24 144/12 153/10 155/24 158/21 166/12 168/2 168/21 168/24 170/1 170/12 170/22 171/12 172/8 173/20 174/24

against [16]  15/5 30/11 44/18 46/1 46/18 46/21 50/23 63/25 86/15 89/5 101/6 104/4 117/17 153/16 155/11 176/10

age [2]  49/13 50/8

agency [3]  24/19 82/9 144/4

agent [16]  9/14 23/10 24/24 56/1 56/12 58/13 58/17 58/18 70/2 70/3 124/20 124/24 134/16

agents [2]  11/12 82/7

aggrandize [1] 127/4

aggressive [1] 168/15

aggrieved [7]  13/17 66/13 75/7 76/7 116/15 116/17 169/11

ago [3]  29/8 36/24 115/23

agree [46]  14/12 28/8 33/21 43/10 50/3 55/22 59/17 61/9 65/20 68/2 68/4 68/5 76/2 78/17 79/11 79/17 90/1 98/15 99/19 99/22 103/13 107/6 107/25 109/24 119/6 119/11 119/24 122/17 123/9 124/15 126/2 126/3 126/8 128/22 133/12 145/2 149/9 150/8 151/7 151/25 157/1 157/1 159/1 159/1 164/20 173/3

69/23 163/13

agreement [2] 93/23 157/17

agreements [1] 130/15

agrees [4]  57/20 92/17 92/19 151/14

ahead [1]  165/12

aided [1]  1/25

Aiken [1]  52/9

al [1]  1/8

Alien [1]  33/1

align [2]  26/19 162/20

aligned [1]  103/23

ALJ [1]  177/9

ALJ's [2]  43/17 43/20

ALJs [1]  177/9

all [102]  5/10 12/4 19/13 25/10 28/12 31/21 31/21 34/14 36/1 39/3 39/6 41/23 41/24 42/25 43/15 50/20 56/24 59/5 59/10 59/21 61/4 61/12 61/17 63/8 64/10 65/17 65/24 69/25 72/1 73/18 74/12 74/22 75/10 75/17 76/16

**A**

all... [67]  76/23 76/25 77/6 78/11 80/13 82/9 86/6 95/19 96/24 97/9 100/22 101/7 101/8 102/15 102/23 103/10 103/15 108/17 108/23 110/14 110/15 112/12 113/18 113/25 115/6 116/13 118/18 119/3 122/23 122/23 123/10 125/5 127/2 127/3 127/8 131/17 132/2 132/10 132/16 133/3 135/25 137/3 138/17 139/12 140/8 143/15 145/4 145/24 146/3 152/13 154/4 154/7 158/23 159/16 162/7 169/6 169/21 169/24 170/1 171/5 172/13 173/9 173/23 176/19 176/19 179/5 179/9
**allegations [3]** 31/9 65/2 162/25
**allege [3]**  64/13

**allegiances [1]** 133/5
**alleging [2]**  96/22 135/6
**allocated [2]**  5/4 121/24
**allow [10]**  27/21 41/20 59/1 61/3 61/3 78/24 81/4 158/8 167/11 171/7
**allowed [8]**  55/16 66/20 68/18 112/6 112/7 112/9 135/20 168/17
**allowing [3]**  81/13 170/19 172/4
**allows [6]**  55/4 58/11 68/12 91/2 99/25 165/16
**almost [6]**  10/24 11/8 77/23 116/3 122/15 142/13
**alone [3]**  11/14 85/17 170/20
**along [5]**  105/11 115/6 119/3 123/11 136/25
**alongside [1]** 172/25
**already [5]**  57/18 97/6 151/1 174/5

**also [45]**  4/20 6/21 8/14 11/11 12/8 13/19 14/11 17/17 23/14 24/9 25/19 27/17 27/21 29/18 30/6 35/23 43/11 56/1 56/2 62/6 62/23 79/25 87/22 95/2 98/4 105/14 113/7 116/16 117/20 120/11 128/4 132/16 135/12 136/13 137/9 138/10 142/9 146/19 152/17 152/20 153/3 154/1 157/4 160/11 178/20
**although [6]**  24/10 55/24 105/15 135/15 153/3 161/8
**altogether [1]**  75/9
**always [25]**  14/1 25/8 37/6 41/15 81/9 92/8 100/19 121/22 121/25 122/4 122/20 122/24 123/22 123/23 123/25 130/21 132/11 133/11 133/15

A

always... [6]  135/1
140/18 158/20
161/3 165/4 168/7
am [8]  66/14 74/4
74/13 89/17 91/20
146/19 147/11
179/11
ambiguous [1]
15/10
ameliorates [1]
43/25
amend [2]  43/8
96/19
amended [5]  119/7
148/7 148/12
148/13 161/24
amendment [7]
33/4 33/20 49/23
67/25 86/23 96/21
158/23
amendments [3]
72/5 115/20 119/8
America [3]  2/14
77/3 180/8
American [1]  103/5
amicus [3]  1/10
1/11 5/8
among [2]  18/25
41/3
amount [6]  22/1
22/4 115/21 115/24

analogies [1]  14/6
analogous [2]
145/20 148/4
analogue [2]  76/3
156/11
analogy [5]  25/22
37/6 45/23 70/12
117/1
analyses [1]  53/16
analysis [15]  16/15
33/6 58/2 71/19
71/22 72/12 72/20
72/21 81/1 84/1
85/9 85/18 94/18
94/19 118/22
analytical [1]  14/12
analyzed [1]  53/21
analyzes [1]  17/19
animal [1]  108/7
Anion [3]  2/9 4/20
6/20
annually [1]  116/1
anomalous [2]
28/22 49/4
another [7]  7/20
9/25 41/16 43/8
51/14 135/3 137/4
answer [31]  8/14
14/14 24/4 25/14
26/7 26/16 60/2
67/1 78/3 78/14

130/16 130/18
132/1 134/12
136/15 136/18
136/19 142/1 142/2
149/17 157/7
160/12 161/1
165/10 166/19
170/6 171/23
175/13
answers [1]  6/11
ante [1]  51/25
anti [6]  1/11 2/15
4/17 5/1 6/9 102/16
ANTI-FRAUD [5]
1/11 2/15 4/17 5/1
6/9
anticipated [2]
157/9 159/17
antithesis [1]  178/1
antitrust [2]  75/2
153/25
any [90]  6/13 9/18
9/18 10/12 11/3
12/11 12/15 12/20
15/2 17/9 17/10
20/9 21/13 22/7
23/7 24/5 27/3 27/3
27/6 27/7 30/11
31/13 31/14 35/8
38/24 45/9 47/1
49/22 51/1 54/7

# A

any... [60]  62/6
64/17 64/18 65/3
65/6 65/16 67/6
81/12 81/17 89/3
92/2 92/9 94/6
94/11 94/14 96/10
96/21 97/24 99/5
100/3 100/8 100/21
101/20 102/16
103/1 103/20 104/2
109/6 112/19
121/13 123/12
124/8 127/11
130/20 131/6 131/9
131/11 134/6
143/10 151/8
151/17 151/19
152/18 153/15
154/1 154/25
155/15 155/17
157/7 157/10 160/8
161/11 161/21
162/12 165/11
165/13 173/19
173/25 175/12
179/13
anybody [3]  167/11
168/9 168/17
anybody's [1]
130/19
anymore [3]  124/10

anyone [14]  46/21
65/1 67/14 80/22
100/10 100/12
117/8 135/5 144/25
145/7 157/9 159/20
160/2 175/17
anything [16]  19/15
20/4 26/4 38/17
55/2 64/16 119/16
122/19 127/11
127/23 129/13
141/1 146/8 168/10
170/22 174/7
anyway [1]  49/22
anywhere [1]
120/22
apart [1]  166/11
apologize [1]  120/8
apparently [1]
163/19
Appeals [3]  7/22
29/11 118/12
APPEARANCES
[1]  2/1
appears [1]  60/13
appellate [3]  53/25
54/12 125/7
apple [2]  75/14
75/14
apples [6]  19/6 19/6
108/7 117/4 117/4

applied [2]  18/20
155/20
applies [2]  155/21
175/17
applies in [1]
155/21
apply [7]  9/10
108/1 131/8 155/6
155/21 156/2 159/7
applying [5]  10/14
57/13 69/9 90/13
91/23
appoint [6]  51/21
52/17 63/6 168/10
168/17 175/10
appointed [14]  7/13
12/3 19/18 29/19
31/6 31/16 32/1
51/8 55/18 83/15
138/11 171/20
174/22 174/25
appointing [1]
170/20
appointment [10]
5/13 12/14 12/21
15/15 52/1 82/21
133/25 145/15
151/9 165/25
appointments [38]
8/1 8/4 8/5 12/6
15/13 18/12 28/15

appointments... [31]  29/2 32/1 43/14 43/21 44/2 51/8 52/23 53/9 53/23 54/2 54/16 79/8 79/24 79/25 80/4 82/24 83/1 119/15 119/21 120/13 120/15 120/17 132/20 134/4 151/4 151/10 151/13 170/17 171/16 171/25 174/12

appraiser [2]  11/7 166/13

appreciate [7]  5/12 159/25 173/24 174/10 175/12 178/4 179/11

approach [3]  14/13 171/12 174/13

appropriate [2] 68/13 125/6

approval [2]  27/15 163/15

approve [2]  42/16 137/10

April [1]  1/5

are [223]

area [2]  111/4

aren't [9]  13/13 17/7 49/7 65/4 83/7 117/10 117/11 130/5 132/11

argue [1]  117/11

arguendo [1] 157/16

arguing [5]  4/6 4/9 4/15 10/22 117/8

argument [41]  3/3 3/4 3/5 3/6 3/7 3/8 3/9 3/10 4/4 6/6 8/6 13/20 23/1 42/20 43/17 67/19 67/21 69/16 69/17 72/4 72/25 78/5 78/12 81/25 95/25 96/1 96/6 98/7 98/10 99/3 109/7 109/10 112/15 124/12 149/24 157/14 160/21 164/4 164/11 174/9 179/11

arguments [17] 5/11 11/2 37/1 38/21 43/16 53/10 53/24 73/3 78/18 79/7 79/9 92/20 119/14 137/16 150/1 154/20

arise [1]  155/22

around [9]  10/19 12/6 16/23 16/23 37/24 97/8 97/21 149/14 170/19

arrangement [1] 23/19

arresting [1] 167/19

Arthrex [2]  34/13 177/8

article [84]  7/25 15/10 15/25 17/1 17/13 17/14 18/11 20/22 21/13 21/23 22/12 23/19 24/7 24/10 24/13 24/20 24/24 25/3 28/14 28/22 30/19 34/11 34/24 34/25 35/3 35/14 35/17 37/19 39/1 39/7 39/17 40/12 40/17 43/11 46/23 48/3 48/16 48/18 49/14 50/17 50/21 50/24 52/11 53/18 71/18 71/21 71/21 72/13 72/16 72/19 73/4 79/10 79/12 79/14 79/18 82/8 82/10 82/11

# A

article... [26]  82/16
90/20 94/13 98/2
98/6 100/5 101/12
103/11 109/17
112/16 112/19
118/1 120/17
131/13 131/21
131/23 133/19
144/4 150/5 164/11
164/12 168/7
168/10 168/13
168/18 169/8
**Article I [3]**  20/22
21/23 22/12
**Article II [66]**  7/25
15/10 15/25 17/1
18/11 21/13 23/19
24/7 24/13 24/24
28/14 28/22 30/19
34/11 34/24 34/25
35/3 37/19 39/1
39/7 40/12 40/17
43/11 46/23 48/16
48/18 49/14 50/17
50/21 50/24 52/11
71/21 72/13 72/16
72/19 73/4 79/10
79/12 79/14 79/18
82/11 82/16 90/20
94/13 98/2 98/6
100/5 101/12

103/11 109/17
112/16 112/19
118/1 120/17
131/13 131/21
131/23 133/19
144/4 150/5 164/11
164/12 168/7
168/10 168/13
168/18
**Article III [10]**
24/10 24/20 25/3
39/17 48/3 53/18
71/18 71/21 82/8
82/10
articles [1]  35/23
articulate [8]  9/9
9/24 10/13 11/18
34/11 97/21 118/10
125/22
articulated [7]
17/18 20/23 29/5
92/16 98/18 98/24
109/2
articulates [1]
123/5
articulating [1]
171/4
articulation [1]
11/19
articulations [1]
8/20
artifact [1]  19/3

# as [20]

as to [1]  58/18
Ash [1]  2/4
aside [3]  47/15
58/16 158/17
ask [20]  4/10 7/1
8/25 10/22 13/12
15/9 16/15 36/16
45/4 49/18 53/9
94/4 94/21 103/17
140/13 145/1 145/1
154/25 159/19
164/4
asked [14]  35/6
40/19 73/7 88/22
99/8 102/1 109/5
125/15 136/15
146/19 162/14
166/13 166/21
168/21
asking [16]  12/24
18/6 21/1 25/7 27/6
40/14 48/1 78/10
85/16 107/8 110/15
116/14 120/20
129/24 169/3 174/3
asks [1]  39/8
aspect [5]  5/14
45/13 108/21 112/3
149/23
aspects [2]  78/8
142/5

**A**

assault [1]  66/21
assert [4]  7/15
97/18 161/14
162/10
assess [2]  57/15
169/4
assessment [4]  23/4
42/23 105/21 153/8
assign [9]  20/19
21/17 22/16 44/21
44/22 46/2 101/7
130/8 130/10
assigned [9]  32/21
47/11 90/4 90/5
105/14 106/20
106/21 122/12
124/25
assignee [4]  55/23
56/9 56/14 82/8
assignees [2]  54/5
82/6
assigning [6]  47/3
47/4 47/4 47/14
47/14 130/13
assignment [59]
5/22 20/6 20/14
20/16 22/18 23/14
24/3 24/21 25/2
25/9 27/5 38/18
39/14 39/15 39/19
39/25 40/1 40/3

40/10 42/2 43/5
45/13 45/19 48/11
50/15 88/23 89/23
90/6 92/2 92/5
92/11 92/23 93/3
93/7 93/13 93/20
106/21 106/22
106/23 108/2 112/2
116/19 117/17
121/19 121/21
121/25 122/7
122/15 123/17
123/20 123/22
124/1 124/3 124/3
124/7 124/8 125/11
157/20 164/8
Assistant [1]  161/4
ASSOCIATES [4]
1/7 2/10 4/20 6/20
assume [3]  49/11
109/7 157/16
assumes [1]  119/19
assuming [2]  98/15
132/22
attached [1]  13/16
attention [2]
129/14 169/9
attorney [22]  2/6
29/20 36/2 51/16
51/20 51/24 52/16
68/10 68/13 78/21
78/23 78/25 80/11

80/14 81/9 81/22
83/8 83/13 147/15
161/4 161/4 174/23
Attorney's [1]
87/24
attorneys' [1]  50/12
authorities [3]  30/7
110/8 133/17
authority [55]  8/13
9/16 9/23 10/5 10/8
14/17 15/14 15/25
21/10 21/12 27/13
30/2 30/5 30/9 37/4
43/13 44/22 46/23
51/25 62/1 65/15
67/14 67/22 80/2
83/3 83/8 88/1
99/23 100/1 100/19
100/21 103/14
104/21 105/2 105/4
105/10 108/23
110/2 111/5 111/20
120/1 125/23
127/17 128/10
129/3 129/9 140/1
140/25 141/5
157/25 158/1 158/2
166/25 167/1
176/22
authorization [1]
15/23
authorize [2]  15/19

**A**

authorize... [1] 111/25
authorized [1] 84/7
authorizes [4] 22/2 22/6 64/12 94/15
available [1] 138/25
avatar [2] 144/17 145/12
Avenue [2] 2/9 2/18
avenues [1] 60/23
avoid [2] 90/19 93/21
avoiding [1] 113/17
awarded [1] 154/14
aware [8] 35/24 65/20 74/4 74/11 95/4 146/20 165/10 173/5
awareness [1] 103/4
away [6] 27/7 40/7 135/25 143/18 144/9 144/9
awesome [1] 7/7

**B**

back [41] 8/18 12/22 20/1 29/25 52/22 61/13 64/23 71/25 71/25 75/15 75/20 75/25 81/21 81/22 82/23 83/18 85/21 85/22 86/9 86/11 87/15 89/11 95/24 100/7 112/4 112/6 112/6 114/13 114/17 120/12 125/5 127/12 142/6 142/10 145/23 146/19 154/9 162/14 169/3 170/11 174/11
back-end [2] 12/22 82/23
backdrop [2] 28/12 176/11
background [1] 121/10
backing [2] 102/5 107/3
backpay [1] 46/14
backstop [1] 92/9
bad [2] 125/7 132/14
banana [1] 139/20
bank [2] 110/25 111/3
bankruptcy [2] 176/7 176/10
bar [1] 43/4
Barr [3] 17/18 120/5 120/23
Barre's [3] 36/2 36/6 74/3
Barrett [1] 39/5
barrier [1] 119/15
based [8] 10/18 14/19 14/24 29/19 48/12 60/6 137/12 154/3
bases [1] 157/20
basically [3] 127/15 137/7 175/6
basis [10] 9/20 11/3 60/15 65/7 71/19 89/10 96/3 100/24 158/3 166/8
battle [1] 136/23
be [230]
bear [4] 14/3 18/6 25/16 156/20
bears [5] 5/17 22/14 24/9 25/6 32/6
became [2] 49/3 172/11
because [155] 5/23 9/11 10/3 10/14 11/22 12/6 13/1 14/4 15/12 16/4 18/12 20/13 20/15 21/1 21/25 22/10 23/8 23/21 24/5 24/20 24/21 24/24

**B**

because... [133]
25/13 25/23 28/16
28/23 29/17 31/15
32/3 32/19 38/23
39/6 39/18 39/19
40/11 40/25 42/24
44/7 45/4 45/16
46/14 46/19 49/7
50/16 51/5 51/6
51/7 52/2 54/20
56/10 56/24 58/9
58/10 61/7 61/10
63/8 64/7 65/16
66/12 66/19 68/16
70/11 75/5 75/17
76/13 76/14 78/1
80/8 81/1 83/5
85/12 86/1 86/18
86/19 89/18 91/2
94/9 97/5 99/13
100/4 100/8 100/18
102/22 103/14
104/17 104/25
105/22 108/1 108/8
109/2 109/4 109/12
109/25 112/16
112/19 113/21
114/19 115/1
115/16 115/18
115/20 117/7
117/20 117/25

119/24 119/25
120/3 120/9 122/17
123/10 124/6
124/23 125/17
126/25 128/1 129/1
131/24 132/1 132/3
133/2 133/24
136/10 136/15
137/17 138/15
141/19 142/15
142/25 143/13
144/21 145/2
146/21 147/17
149/2 151/14 152/4
152/6 154/7 156/4
157/17 161/10
162/17 164/6
165/10 165/16
165/23 165/25
166/19 167/4
169/16 170/24
171/3 174/12
177/11 178/8
become [5] 34/5
82/1 100/17 149/5
175/8
becomes [1] 148/19
been [82] 13/4 17/3
18/4 18/5 20/20
20/23 21/18 25/14
32/12 33/6 34/19
34/20 34/23 35/19

37/6 39/7 44/25
48/12 50/21 51/23
66/7 67/8 67/15
75/5 77/17 83/11
86/3 86/23 86/24
90/4 90/5 93/4
93/18 95/2 95/7
97/10 97/14 97/15
97/15 98/7 104/12
105/10 106/20
106/21 109/2
110/19 115/6
116/16 116/18
118/15 119/7 119/7
120/2 120/11
121/22 121/25
122/4 122/23
123/13 127/10
129/24 149/14
154/11 155/15
157/8 158/24 160/7
160/9 160/12
160/14 160/24
162/17 166/9 169/3
169/5 169/9 169/10
170/1 173/22
174/15 176/21
179/15
before [25] 1/17
15/9 22/25 32/6
37/19 52/1 59/9
60/25 62/20 71/3

before... [15]  73/1
83/2 104/2 107/4
108/20 119/12
119/23 123/8 142/2
142/2 153/10
154/22 160/20
160/23 162/16
begin [1]  95/22
beginning [12]
33/18 36/23 76/25
97/14 98/20 98/25
102/7 103/2 105/7
106/3 137/25 138/3
begins [1]  123/20
behalf [39]  4/16
4/19 4/21 4/24 6/18
9/17 28/6 30/3
31/17 37/16 40/5
40/6 40/8 45/11
46/3 46/24 51/17
51/21 52/21 55/6
55/24 56/3 56/3
56/8 58/14 68/24
81/11 84/19 100/6
102/10 142/24
145/21 147/21
150/20 159/12
161/19 175/10
176/20 177/17
behemoth [2]  19/17
175/8

behind [2]  101/9
129/2
being [37]  7/17
12/7 15/20 18/20
23/9 27/23 48/25
59/12 73/10 78/20
88/16 100/15
109/17 114/20
115/24 118/18
124/22 127/13
127/17 131/14
132/25 133/1
137/18 143/20
151/21 152/25
157/24 160/18
163/24 163/25
165/14 166/15
166/22 168/18
171/15 172/10
173/13
believe [17]  84/16
90/20 96/15 99/11
99/12 100/1 103/6
104/10 124/16
125/20 126/13
126/19 129/5
142/25 155/20
155/21 158/6
benefit [8]  37/10
41/8 42/6 42/7
42/21 117/22
118/19 119/3

benefits [4]  55/23
57/18 58/3 90/14
best [8]  11/19 78/12
88/9 115/17 150/11
158/12 163/19
168/22
bestowed [1]  129/9
better [2]  90/25
117/25
between [22]  12/12
14/2 14/13 14/21
15/3 17/21 63/12
76/18 80/21 86/14
88/2 88/19 101/15
101/22 115/25
116/21 117/20
128/8 132/25
146/12 153/12
169/5
beyond [7]  55/3
75/25 108/10
161/21 161/21
162/1 175/2
big [8]  5/9 35/24
41/16 70/1 79/24
121/6 152/14
152/14
bigger [5]  65/8
65/11 106/10
158/18 158/19
Bill [5]  18/25 36/6
74/3 120/5 180/11

Case 8:19-cv-01236-KKM-SPF    Document 245    Filed 09/30/24    Page 197 of 295 PageID 6293

billed [1] 111/19
billion [2] 116/1 127/21
billions [2] 127/21 136/21
bind [6] 66/14 135/15 135/23 136/8 155/15 173/18
binding [6] 60/14 83/11 83/15 135/17 144/13 173/9
bit [16] 9/12 20/17 23/13 36/5 64/23 82/18 95/24 100/7 104/16 105/2 108/7 123/7 136/14 143/13 146/24 153/6
blacklisted [1] 138/15
Blackstone [2] 44/8 44/10
blanch [1] 125/23
blanche [5] 25/21 69/22 70/17 78/21 79/1
blown [2] 163/24 172/10
Blue [1] 2/4
board [1] 63/18

body [2] 18/10 64/24
boggling [1] 116/2
boil [1] 89/10
bono [1] 139/3
books [4] 14/23 18/4 73/20 77/14
Boolean [1] 74/8
border [2] 136/25 167/18
born [1] 100/21
borne [1] 17/7
both [8] 13/8 30/8 79/8 120/4 133/8 134/4 134/19 177/10
bottom [2] 14/14 25/12
bound [5] 11/9 11/10 19/13 59/6 59/12
bounds [1] 27/12
bounties [3] 13/15 41/8 74/25
bounty [15] 13/23 14/7 15/24 26/13 26/18 41/7 42/5 47/2 51/10 116/14 116/24 117/9 117/10 148/6 148/7
box [1] 113/8
branch [18] 2/6

26/12 49/3 90/5 127/24 128/4 131/25 142/16 142/19 142/23 143/16 143/20 144/2 144/7 151/2 170/21 176/17 178/3
branch's [3] 128/10 141/17 143/20
branches [1] 129/3
Braxton [1] 126/1
break [4] 95/10 95/11 132/10 133/15
breaks [1] 133/12
bridge [1] 109/4
brief [12] 15/18 35/10 35/12 35/13 35/13 36/21 36/22 36/25 78/2 95/12 157/19 161/1
briefed [2] 89/18 98/21
briefing [9] 5/10 13/12 22/11 94/10 97/7 121/4 146/25 150/12 179/13
briefly [1] 6/24
briefs [3] 36/20 50/18 169/6
bring [36] 10/9

## B

bring... [35]  11/2
31/12 46/3 55/14
56/2 64/12 65/3
65/7 65/23 66/10
96/1 96/12 97/15
97/24 98/22 101/6
102/8 104/19 105/2
105/11 105/22
112/1 129/13 130/6
134/17 135/1 135/9
138/5 142/8 154/3
155/2 155/24 167/4
168/4 171/8
bringing [13]  8/9
20/25 65/14 75/24
99/14 102/10
105/13 111/10
111/11 118/6
134/20 168/3 175/5
brings [5]  26/13
51/11 63/24 67/2
106/24
British [1]  48/19
broad [3]  5/20
167/17 175/1
broaden [1]  161/25
broader [6]  64/21
161/14 161/23
162/4 166/15
174/20
broadly [1]  161/18

broker [1]  59/20
brought [21]  21/11
22/11 31/12 45/17
46/2 59/25 60/4
80/18 96/4 96/8
96/9 96/24 97/11
105/23 113/7 146/8
154/12 154/20
165/17 169/19
173/6
Bruen [7]  14/5 15/7
15/7 16/14 17/25
33/20 74/22
brush [1]  158/17
bucket [5]  13/24
38/15 86/1 88/21
114/17
buckets [3]  6/15
13/15 74/25
Buckley [11]  8/10
9/4 30/4 50/4 61/16
61/20 120/15 162/7
168/3 175/23
176/21
building [1]  31/23
built [3]  70/15 91/9
123/15
bunch [2]  60/13
106/5
burdens [2]  23/2
42/20
Bush [1]  36/21

business [2]  19/14
88/8
businesses [1]
88/10

## C

cabined [1]  107/14
calculus [1]  134/8
call [12]  14/22
14/25 16/3 75/5
75/6 114/16 114/21
116/21 136/17
142/11 162/19
169/7
called [4]  4/2 26/17
126/1 145/12
calling [1]  116/16
calls [2]  44/8 44/11
came [15]  33/10
96/3 103/1 108/4
115/8 115/19
115/20 115/23
120/15 123/3 123/5
129/23 136/13
146/10 167/22
Campaign [1]
63/22
can [115]  6/14 9/3
9/18 12/5 17/10
17/15 20/4 22/16
26/12 29/3 31/3
31/3 31/12 37/9
38/25 39/21 39/23

C

**can... [98]** 41/20
45/2 46/12 46/17
46/25 47/2 47/15
51/18 52/5 52/13
62/14 62/25 63/5
63/6 63/6 63/7
63/13 64/1 64/13
64/14 65/3 65/25
66/4 67/23 70/5
70/24 71/1 78/21
80/21 83/10 92/8
93/22 94/6 94/21
95/22 97/1 97/24
98/7 99/8 99/11
100/3 100/8 101/6
103/18 104/20
106/14 110/11
113/13 113/18
125/16 127/24
130/10 130/20
130/21 132/11
132/15 133/11
133/15 133/16
134/11 135/4
135/15 136/16
137/5 138/5 138/24
141/1 142/9 142/10
142/19 145/1 145/1
146/24 147/1 148/2
148/6 149/11 150/6
150/11 150/12

159/7 161/6 161/12
161/13 163/11
164/6 165/17
168/10 171/3 171/5
172/25 173/11
176/12 177/17
177/22 178/3
**can't [24]** 9/25 10/9
11/24 12/4 18/15
37/23 42/25 51/6
62/5 62/11 69/12
69/13 70/6 85/8
98/6 133/6 133/9
134/10 135/2 139/1
143/18 163/14
164/8 172/13
**Canada [2]** 104/8
104/10
**cancer [1]** 45/25
**candidly [1]** 150/14
**cannot [5]** 9/22
34/16 40/4 93/3
137/17
**capable [1]** 70/5
**capacities [1]**
110/15
**capacity [4]** 55/23
56/2 81/14 167/21
**care [23]** 8/2 26/10
27/9 27/18 28/25
37/21 43/24 43/25

51/3 52/2 53/23
60/11 61/15 69/17
79/8 79/19 82/20
119/18 119/20
128/21 134/4
156/21 171/16
**Care/Vesting [1]**
82/20
**cared [1]** 149/2
**careful [1]** 62/11
**carries [1]** 29/24
**carry [3]** 31/7
144/23 167/10
**carte [6]** 25/21
69/21 70/16 78/21
79/1 125/22
**carved [1]** 79/18
**Carver [1]** 2/3
**carving [1]** 78/21
**case [198]**
**cases [66]** 9/13 9/19
10/12 10/21 11/6
13/25 34/13 38/5
38/9 41/19 42/12
48/4 53/14 53/17
53/21 55/5 56/16
61/16 61/17 64/3
65/23 66/10 66/24
77/18 77/25 80/10
91/3 104/17 105/5
105/11 105/22
105/25 106/14

C

cases... [33]  107/10
107/23 108/16
123/1 123/2 123/12
125/24 127/13
129/11 130/25
132/2 133/22 140/4
141/3 146/10 151/4
152/17 153/5 154/1
154/4 161/17 162/7
162/21 165/11
166/6 166/7 166/12
168/2 169/19 175/7
176/12 177/5
177/10
categorize [1]
114/7
categorized [1]
14/20
category [2]  85/6
100/16
cause [33]  13/15
13/21 20/10 20/13
25/5 27/3 44/11
46/17 46/20 55/8
58/9 75/1 75/7 76/8
86/2 89/5 89/13
104/3 116/18
117/15 122/7
122/11 122/18
122/19 126/1 126/4
126/19 126/20

164/16 169/12
176/5
causes [5]  13/16
46/10 75/1 116/16
154/4
cautious [2]  149/16
149/18
CELA [6]  8/12 9/24
10/6 10/7 30/22
34/12
certain [9]  5/6
26/18 52/22 59/16
81/19 89/14 91/5
105/1 174/22
certainly [23]  14/7
26/22 30/23 32/12
33/6 49/14 52/24
57/3 71/11 95/19
96/10 99/5 104/3
104/14 106/15
111/15 117/18
119/14 125/16
145/9 151/6 165/3
174/4
CERTIFICATE [2]
3/11 180/3
certifications [1]
19/12
certify [1]  180/5
CFPB [3]  61/24
63/16 63/19

chain [2]  19/23
170/14
challenge [5]  20/24
21/11 22/10 128/18
165/9
challenges [5]
12/21 21/3 96/13
96/24 164/24
CHAMBER [10]
1/10 2/12 4/17 4/22
4/24 6/7 28/6
115/16 121/22
134/21
Chambers [4]  33/7
33/15 146/10
146/11
Chaney [2]  30/6
50/5
change [8]  19/7
71/20 75/4 97/12
99/13 100/24
118/22 122/3
changed [5]  96/2
114/12 118/24
118/25 122/23
changes [7]  94/18
94/19 106/8 118/21
121/9 133/20 134/8
chaplain [1]  33/9
chaplains [1]  33/11
charge [2]  66/21

# C

charge... [1]  87/11
charged [2]  29/24
54/11
charges [1]  168/4
checkered [2]
17/24 169/11
chief [2]  32/19
35/15
choice [4]  141/10
141/11 141/12
168/3
choices [1]  141/9
choose [1]  106/2
choosing [2]  8/8
105/11
chose [1]  16/16
chosen [2]  126/23
176/2
circle [1]  146/18
Circuit [17]  8/22
29/14 29/21 36/22
43/1 52/8 71/7 71/8
79/10 79/11 79/15
88/15 94/14 98/12
130/10 144/13
165/11
Circuit's [2]  8/24
9/4
circumscribed [2]
66/1 174/24
circumstance [2]

circumstances [1]
101/14
circumvented [1]
132/15
cite [4]  17/17 36/20
80/17 123/12
cited [7]  8/14 15/7
15/18 17/13 17/21
74/11 79/14
cites [2]  35/23
169/8
citing [1]  48/17
citizen [13]  20/19
21/18 37/12 37/16
99/17 103/5 104/7
104/10 109/23
111/17 118/6
131/14 133/1
citizens [2]  94/12
117/21
civil [43]  2/7 22/3
30/5 30/6 31/13
37/7 45/10 46/23
50/1 50/5 50/10
51/25 63/7 63/12
66/6 67/7 67/14
67/22 81/3 81/6
85/4 86/14 86/19
87/23 88/2 88/13
88/19 91/23 99/20
113/5 114/2 117/25

152/24 153/13
153/15 153/25
156/4 175/1 175/5
175/24 176/22
civilians [1]  111/11
CJA [1]  95/4
claim [12]  7/18
20/16 40/9 43/6
44/17 44/18 46/7
47/20 51/17 66/19
154/11 165/3
claims [140]  7/9
7/12 7/15 8/9 8/10
9/16 10/9 11/2
11/15 14/16 19/11
19/15 21/17 21/25
22/2 25/2 28/18
31/15 34/18 34/19
38/4 38/9 41/1 41/3
43/1 43/7 45/9
46/12 46/20 46/23
47/3 47/5 51/2 54/5
55/4 55/12 55/14
56/7 58/16 58/19
59/7 62/13 62/14
62/16 62/24 62/24
64/15 65/6 66/1
66/25 68/2 68/6
68/11 68/12 69/24
70/16 70/19 71/10
71/12 71/18 71/20

C

claims... [79] 71/24
72/5 72/10 72/11
72/23 75/20 77/19
79/3 80/9 80/24
81/5 83/22 85/22
86/9 86/20 87/13
87/15 87/17 87/25
88/12 88/20 89/2
92/5 92/5 93/5 94/6
94/8 94/16 99/9
99/20 100/2 100/13
100/17 101/2
102/18 104/21
106/14 106/24
107/14 110/6 113/1
113/3 113/8 113/13
114/17 115/2
115/15 117/24
122/3 123/15
126/11 126/14
128/16 130/3
130/25 131/15
132/12 137/9
144/14 144/16
148/2 150/3 155/20
156/14 157/25
158/2 158/4 161/12
161/18 161/22
162/2 162/10
168/13 170/10
170/20 175/8

175/22 177/1
177/18
CLARISSA [2] 1/3
4/8
clarity [1] 5/12
clause [77] 5/14 8/1
8/2 8/4 8/5 12/6
12/14 12/21 15/13
21/5 21/8 21/12
21/23 22/6 26/10
27/9 28/15 29/1
29/2 30/21 32/1
33/10 33/13 43/14
43/21 43/24 44/1
44/2 44/5 51/3 51/9
52/23 52/24 52/25
53/9 53/23 53/23
54/2 54/16 61/15
79/19 79/24 79/25
80/4 82/21 82/24
83/1 88/23 89/8
89/11 119/16
119/18 119/20
119/21 120/13
120/15 120/18
126/18 132/21
133/25 145/15
151/4 151/9 151/10
151/13 157/13
157/24 158/5
158/10 170/17
171/16 171/16

174/12 175/20
176/14
Clauses [1] 79/9
clean [1] 40/24
clear [30] 8/10 10/6
11/19 17/6 18/13
18/16 25/15 27/11
29/11 31/22 32/12
34/9 50/5 50/19
53/22 54/3 54/10
98/12 107/13 111/3
122/6 131/10
137/20 140/2
144/14 150/21
153/12 158/25
171/21 175/21
clearcut [1] 165/24
clearer [1] 176/21
clearly [16] 8/7
8/13 9/8 28/21 30/1
30/4 37/10 43/12
44/2 46/10 54/4
71/23 86/18 145/20
161/1 165/15
client [1] 110/4
close [4] 135/13
150/4 168/7 171/15
closer [5] 117/18
118/8 119/2 119/6
163/21
clue [1] 130/2

C

co [1]  94/24
co-counsel [1]  94/24
COALITION [5]  1/11 2/15 4/17 5/1 6/9
Cochise [1]  54/9
Code [3]  154/4 154/5 180/6
coin [1]  76/5
collateral [1]  136/10
colleague [3]  78/13 134/20 170/23
colleagues [1]  35/20
collectively [1]  4/16
combine [1]  75/9
come [29]  25/16 27/20 31/19 33/19 41/25 42/25 43/13 43/22 52/5 52/5 59/11 59/18 61/11 68/12 72/4 72/22 73/2 99/1 107/16 114/2 122/18 135/3 135/5 135/13 143/25 144/1 169/3 170/3 174/11
comers [1]  176/19
comes [14]  13/10

39/15 52/1 65/19 107/19 108/18 108/24 131/6 139/4 139/6 145/11 172/8 172/9 179/5
comfort [2]  95/10 169/5
coming [7]  37/16 50/21 67/3 103/19 111/12 138/6 138/17
commencement [1]  161/7
COMMERCE [7]  1/10 2/13 4/17 4/24 6/8 28/6 158/5
Commercial [1]  2/6
Commission [4]  61/20 61/22 63/21 64/9
commissioners [1]  61/21
common [2]  28/20 164/24
community [1]  138/15
companies [1]  88/10
company [1]  63/17
comparative [1]  117/19
comparatively [1]

comparator [1]  114/19
comparators [1]  74/24
comparison [4]  19/6 66/23 83/19 118/8
compelling [1]  73/3
compendium [8]  17/10 17/14 35/18 74/7 74/12 120/21 120/22 146/20
compensation [1]  10/18
complaint [8]  31/10 43/8 65/2 82/3 140/8 142/3 161/18 161/25
complete [2]  135/8 149/13
completely [11]  23/6 43/5 59/13 108/6 109/9 112/23 118/4 120/12 120/14 127/22 130/18
complexity [1]  43/11
compliance [1]  19/13
compliant [1]  26/9

C

complicated [2]
94/14 94/18
complies [1]  57/16
computer [1]  1/25
computer-aided [1]
1/25
concede [1]  125/24
conceded [2]  96/4
160/9
conceive [1]  24/6
conceived [1]
101/15
concern [3]  105/23
131/23 155/17
concerned [2]
26/15 176/17
concerns [4]  43/24
44/1 82/20 115/8
conclusion [5]
33/10 33/19 107/17
120/14 149/2
conclusions [1]
120/14
conclusive [1]
72/11
conclusively [1]
149/11
concurrences [1]
39/4
condition [1]
125/14

conditions [3]
39/16 46/25 125/10
conduct [4]  63/7
63/13 141/13 154/3
conducted [1]
53/16
conducting [1]
142/15
conducts [1]  140/6
confer [1]  178/10
Conference [1]
180/8
confess [1]  36/10
confined [1]  174/21
confirmed [1]
33/14
conflict [1]  32/9
conflicted [1]
146/16
conformance [1]
180/7
Congress [73]  12/1
12/5 12/17 15/4
15/18 18/5 19/25
20/19 20/22 20/23
21/16 22/15 28/18
28/21 31/16 32/14
32/17 32/21 33/5
33/8 33/12 34/3
34/15 34/20 38/25
41/1 41/6 44/4
44/14 44/20 45/1

45/18 45/21 46/20
47/3 47/8 47/15
48/10 49/1 51/15
68/18 80/9 80/21
81/13 84/7 84/24
85/3 88/12 111/25
112/8 112/15
112/21 114/20
127/4 127/19 128/9
128/22 144/3
146/13 146/14
149/4 158/1 158/8
159/11 167/11
168/13 168/14
168/16 171/4 176/1
176/4 176/10
176/13
Congress's [1]
21/10
Congresses [6]
14/21 33/1 74/19
76/9 77/9 77/23
Congressional [2]
16/22 17/9
connects [1]  163/15
conscript [1]  135/2
consequence [2]
114/3 153/19
consequences [1]
133/6
consider [2]  21/2
72/9

Case 8:19-cv-01236-KKM-SPF    Document 334-2    Filed 05/30/24    Page 205 of 295 PageID 6301

considerable [1] 124/18

consideration [6] 17/2 19/2 123/16 157/2 157/5 170/17

considerations [1] 125/6

considered [9] 34/5 67/24 77/5 77/14 115/6 118/7 151/19 170/15 170/16

considering [4] 78/23 118/5 179/12 179/14

consistent [14] 19/1 32/1 33/9 33/13 34/23 49/13 51/8 51/13 52/18 74/17 76/6 76/7 85/14 116/10

consistently [3] 33/24 73/10 119/1

consists [1] 8/20

conspicuous [1] 145/17

Constitution [6] 7/6 16/23 109/21 133/2 146/15 178/2

constitutional [42] 13/10 15/2 18/3 18/21 20/24 27/8 32/8 34/2 50/9 50/10 53/14 53/22 63/11 71/2 72/25 77/22 83/4 84/1 84/4 84/25 85/14 85/18 88/18 89/10 96/13 96/22 96/23 97/13 106/25 107/24 114/5 117/12 128/24 134/8 138/1 143/18 156/14 157/20 164/24 165/3 165/9 171/22

constitutionality [12] 50/23 71/12 72/13 78/6 78/18 79/13 82/17 86/13 114/23 121/17 149/12 150/18

constitutionally [1] 40/4

constrained [2] 68/17 79/2

constraint [1] 83/6

constraints [2] 59/11 70/15

consultant [1] 11/8

consumer [1] 63/20

contemplate [2] 83/21 83/23

contemplated [5] 22/16 38/18 55/22

contemplates [1] 88/24

contemplating [2] 24/18 88/11

contemplation [2] 24/5 80/19

content [1] 133/23

contested [1] 169/22

context [22] 24/11 42/10 43/21 53/18 69/7 71/18 75/16 77/19 91/24 93/2 93/6 98/17 103/11 107/13 107/14 112/8 120/20 143/23 155/20 156/3 156/16 179/6

contexts [1] 30/12

contextual [2] 22/24 92/16

contingency [2] 138/23 138/25

contingent [8] 21/19 22/4 24/2 89/13 124/3 124/6 124/6 152/22

contingently [1] 93/4

continually [2] 34/14 98/22

C

continue [13]  26/2
49/1 55/5 56/7
56/15 60/12 62/14
62/21 62/23 70/19
88/19 102/5 141/19
continued [5]  23/2
34/10 42/20 95/13
152/22
continues [1]  80/14
continuing [5]  34/3
54/25 62/15 151/22
152/15
continuity [43]
5/14 8/15 8/17 8/20
9/1 9/8 9/17 9/25
29/4 30/10 30/12
54/18 54/21 64/5
66/4 67/6 67/12
68/8 69/3 69/4 69/6
69/9 69/10 69/14
69/16 104/13
104/15 106/18
106/19 106/22
107/1 107/8 107/18
107/22 107/23
108/21 111/7
119/22 119/24
145/15 151/25
152/20 153/2
continuos [1]  106/7
continuous [5]  11/4

30/14 146/22 166/3
166/8
contra [2]  73/17
73/18
Contra-Marbury
[1]  73/17
contract [16]  22/1
45/13 60/7 60/8
60/10 60/12 64/18
113/25 137/24
143/11 143/14
145/5 167/18 168/9
168/18 168/19
contracting [3]
100/14 143/10
145/3
contractor [7]
60/11 101/4 101/7
111/10 166/22
167/12 168/6
contractors [14]
111/19 136/18
136/20 136/23
136/24 136/25
137/3 137/9 137/22
139/12 144/23
145/4 166/17 168/6
contracts [2]  60/13
65/18
contrary [7]  23/5
42/23 57/21 102/25
123/13 162/12

172/8
control [24]  26/23
27/7 51/1 56/17
56/22 59/10 61/1
61/3 65/11 68/17
79/17 79/23 80/13
81/23 82/13 89/25
91/6 91/14 99/13
127/5 132/2 133/21
150/25 151/7
controls [13]  26/8
61/4 79/4 79/4
91/12 101/17
102/15 110/8 127/8
129/8 154/7 163/3
163/18
controversy [5]
48/3 48/5 48/13
48/14 75/12
conversation [2]
118/5 136/14
conversations [1]
138/19
conversion [2]
81/19 86/3
conviction [1]
114/2
convoluted [1]
163/19
cool [1]  148/11
cop [1]  148/2
core [18]  8/7 11/10

C

**core...** [16]  22/10
30/5 30/7 31/24
50/6 52/10 54/23
68/3 68/6 68/16
88/18 100/2 160/9
167/4 171/19
176/22
**corporate** [3]
113/14 113/19
115/12
**corporation** [2]
49/21 86/15
**correct** [4]  39/9
66/17 157/18 180/6
**correctly** [1]  28/15
**cost** [1]  58/3
**costs** [3]  57/19
90/15 138/16
**could** [67]  7/1 9/15
12/20 16/7 26/22
32/5 32/18 34/7
38/14 42/18 43/22
44/19 44/20 44/21
44/21 47/11 51/13
52/15 52/15 60/18
61/11 64/9 86/4
87/11 90/21 94/7
98/24 102/9 111/25
112/15 112/21
113/7 113/22
115/18 116/4

130/7 130/8 130/18
134/17 141/19
141/20 142/4
153/20 154/10
154/11 154/20
157/23 158/20
159/15 159/19
161/12 161/24
162/22 163/4 163/5
165/5 168/23
172/20 172/20
172/22 174/14
175/10 176/1 176/5
176/21
**couldn't** [5]  36/8
112/17 128/13
130/6 134/19
**counsel** [50]  5/7 6/9
6/20 9/5 9/6 10/22
29/18 29/22 30/15
61/24 61/25 62/4
62/6 62/8 62/9
62/10 63/4 63/5
63/6 63/14 88/22
94/4 94/21 94/24
95/7 104/13 104/24
104/24 105/7
105/10 105/14
105/23 108/5 109/5
111/25 113/12
120/5 120/13

159/17 168/21
169/25 171/12
173/23 174/21
178/5 178/16
178/23 179/16
**counsel's** [3]
106/13 109/9 152/4
**Counsels** [1]  51/23
**counter** [1]  36/7
**counter-position** [1]
36/7
**counterexample** [1]
18/23
**countermemo** [1]
74/3
**country** [6]  76/1
85/15 103/6 112/11
115/7 147/18
**County** [1]  52/9
**couple** [3]  94/3
166/20 167/2
**coupled** [2]  101/1
157/25
**course** [17]  31/15
36/24 51/15 92/4
93/8 120/6 121/5
121/13 122/22
130/20 131/5
133/14 135/12
136/8 137/12
156/15 171/24

C

court [114]  1/1 2/18
3/11 4/2 6/17 7/21
7/24 11/17 14/5
21/11 22/12 22/21
22/24 23/3 25/17
25/24 27/14 29/6
29/10 32/4 32/9
32/11 32/17 32/19
32/24 33/2 33/7
33/14 33/16 33/20
34/10 34/14 35/6
35/24 37/17 37/20
39/7 42/21 43/20
48/6 48/10 50/10
50/16 50/21 52/2
52/8 53/5 53/13
53/16 53/20 54/17
57/12 57/15 57/19
57/20 60/6 62/22
64/4 70/21 71/5
72/7 72/9 73/21
73/24 76/11 77/15
78/15 80/15 82/12
84/13 85/15 86/12
87/1 89/16 89/20
90/12 90/13 92/1
92/16 92/17 92/19
92/20 93/15 93/17
95/13 97/11 98/14
107/10 108/25
118/10 141/5
144/5 149/3 149/7
149/25 151/18
157/7 158/24 165/8
165/12 165/19
176/11 176/25
177/5 177/6 177/11
178/16 180/1 180/4
180/5 180/11
180/12
Court's [8]  28/14
28/24 29/3 39/11
134/5 159/25
163/14 171/17
courts [24]  21/2
29/11 32/22 40/21
42/15 53/25 54/12
68/20 71/13 75/22
79/10 79/15 85/4
86/6 98/1 98/10
107/15 118/12
123/3 146/23
148/17 153/20
155/3 157/2
coverage [1]  137/11
covered [2]  95/19
157/13
covers [1]  129/15
craft [1]  12/17
create [3]  18/16
82/16 112/22
created [7]  10/16
48/25 115/14 128/9
creates [3]  41/23
83/4 131/23
creating [1]  81/13
credence [1]  144/5
credible [4]  23/4
42/22 57/22 92/20
criminal [41]  45/10
49/7 50/10 50/11
51/24 62/12 63/7
63/9 63/12 80/25
81/1 81/14 81/16
83/17 83/21 84/7
85/4 85/6 86/4 86/8
86/11 86/16 87/8
87/18 87/23 87/25
88/2 88/16 88/17
88/20 91/20 112/1
112/22 113/4 113/7
113/14 113/21
114/1 154/3 170/24
171/8
criminally [2]
49/21 84/19
critical [1]  136/22
critically [1]  160/13
cross [4]  55/16
93/16 109/4 119/15
cross-examine [1]
55/16
cure [1]  96/21

**C**

curious [3]  26/6 36/13 173/6
current [7]  23/22 32/9 36/25 51/1 51/5 106/13 150/5
currently [3]  29/1 104/7 104/9
curtail [1]  6/13
customs [1]  167/22
cut [6]  15/5 44/20 67/13 72/5 124/23 160/18
cuts [2]  30/11 133/8
cv [2]  1/5 4/4
cyber [1]  137/3

**D**

D.C [5]  2/13 2/16 9/4 29/21 52/8
damage [1]  162/1
damages [14]  20/16 21/17 22/3 25/2 45/14 49/19 50/12 56/10 67/24 86/20 87/6 87/13 162/1 175/5
Date [1]  180/13
daughter [1]  46/3
day [4]  19/10 34/21 49/13 50/8
daylight [2]  49/19

days [3]  115/5 115/13 115/23
de [1]  43/18
de novo [1]  43/18
deadline [2]  96/25 97/4
deadly [2]  111/16 111/22
deal [13]  35/25 42/24 55/25 114/6 124/22 124/25 127/20 130/15 132/13 139/7 152/14 152/14 166/1
dealing [3]  51/23 118/17 139/7
deals [1]  143/23
dealt [1]  74/9
death [1]  46/8
debate [3]  142/7 155/5 155/9
debated [5]  29/13 33/9 34/24 77/7 114/23
decade [2]  118/19 169/19
deceive [1]  132/9
decent [1]  23/25
Dechert [1]  2/12
decide [4]  44/21

decided [6]  72/2 142/16 142/23 167/8 177/24 177/25
decides [5]  69/23 70/18 93/6 140/15 143/3
deciding [4]  7/14 79/18 83/2 162/9
decision [20]  7/23 7/24 8/24 43/20 51/6 52/4 59/12 62/20 70/16 93/9 93/11 93/12 121/9 125/8 141/17 141/17 143/6 157/15 171/3 173/19
decisions [10]  11/1 32/22 37/24 43/17 50/21 118/13 118/14 122/24 139/21 177/16
decline [2]  141/12 141/20
declined [12]  7/18 13/4 25/14 55/5 56/16 56/16 59/4 60/17 155/3 155/6 162/22 163/5
declining [1]  143/4

# D

deem [1] 169/11
deemed [14] 9/21
66/7 67/8 67/15
67/18 83/12 83/14
88/13 109/8 110/19
110/21 110/25
136/18 145/8
deems [2] 57/18
68/13
deep [4] 73/15
147/8 148/18 165/7
defeat [1] 124/13
defend [1] 21/10
defendant [8] 2/12
2/15 64/1 86/4
113/14 124/22
125/12 140/11
defendant's [1]
25/20
defendants [34] 1/9
1/13 2/8 4/16 4/19
4/21 6/7 6/19 6/23
26/4 28/9 50/25
61/16 63/25 69/11
72/3 81/25 96/1
96/4 96/8 97/6
97/21 115/12 117/8
119/14 120/4
123/12 127/10
128/18 130/21
157/14 161/20

defendants' [5] 6/4
7/5 53/24 67/19
79/9
defense [11] 74/10
96/13 97/17 97/19
98/13 98/24 108/5
111/10 121/23
137/15 165/4
defenses [1] 96/9
defer [2] 94/23
94/24
deference [5] 57/17
60/19 92/1 123/5
124/16
deferential [1] 90/8
definitely [2] 68/2
68/3
definition [2] 69/2
100/4
defrauded [2]
46/18 89/6
delegate [2] 128/11
128/16
delegation [4]
128/21 128/23
143/23 143/25
deliberate [1] 16/19
deliberately [1]
16/16
deliberations [1]
16/23

delivered [1] 19/9
demarcation [1]
132/25
demonstrates [1]
30/17
denying [1] 22/25
departed [1] 17/5
department [29]
2/7 31/6 31/18
36/14 36/18 36/25
37/2 37/5 38/3 38/5
39/20 49/11 52/14
52/14 52/16 52/22
62/5 78/25 79/23
83/14 87/22 91/7
109/21 116/4 116/8
120/10 131/17
137/2 177/20
depend [1] 101/13
Depending [1] 88/7
depends [1] 173/7
deposition [1]
103/18
depositions [1]
102/24
depth [4] 89/19
108/1 109/3 150/16
Deputized [1]
51/19
described [2]
137/22 145/19
describes [1] 16/4

**D**

designating [1] 81/10

designation [1] 156/4

designees [1] 83/9

desire [2] 174/1 174/4

despite [1] 150/19

destitute [1] 117/23

detaining [1] 167/19

determination [2] 127/25 167/23

determinations [2] 10/25 137/11

determinative [1] 129/1

determine [1] 89/19

determined [3] 21/21 109/13 156/18

determines [1] 105/25

developed [2] 112/11 112/12

device [2] 7/10 28/19

DHS [1] 167/20

did [22] 15/19 16/19 32/13 33/5

48/14 53/13 78/13 80/22 83/20 83/22 89/16 89/16 97/16 119/9 120/3 148/14 155/24 156/15 158/14 159/15 165/7 165/8

didn't [23] 11/3 13/12 71/15 72/6 72/7 82/12 90/25 96/12 97/6 98/3 98/4 103/22 105/1 109/13 109/17 122/3 123/1 128/14 156/20 157/19 164/4 168/13 168/14

dies [1] 104/22

differ [1] 87/10

difference [10] 12/12 15/3 63/2 63/10 63/12 80/20 86/14 88/2 88/19 124/6

different [81] 5/5 5/7 6/5 11/1 12/22 15/24 16/1 19/10 19/20 31/13 35/3 37/15 48/16 48/19 49/22 61/19 61/22 63/23 64/2 64/9 64/10 64/15 66/18

70/3 70/4 80/24 81/1 81/13 82/19 82/22 85/5 85/6 88/16 97/6 103/8 105/4 105/11 105/16 106/2 107/9 107/9 108/7 109/23 110/11 111/2 114/6 114/14 117/3 117/4 118/1 118/16 118/23 123/21 127/1 127/9 127/22 129/10 133/5 133/6 133/6 134/2 143/10 143/12 143/13 145/1 150/24 152/10 153/14 153/24 158/18 158/21 164/15 164/16 167/7 168/9 169/16 170/13 172/14 173/1 175/24 176/16

different than [1] 164/16

differentiation [1] 76/18

differently [6] 12/18 113/4 130/16 144/12 155/11 158/24

difficult [1] 107/7

D

**difficulties [1]** 39/11

**diminished [1]** 172/19

**diminishes [1]** 82/14

**direct [1]** 67/1

**directing [1]** 177/23

**direction [1]** 59/17

**directly [10]** 37/19 38/21 47/16 54/1 54/7 115/10 118/4 130/16 152/19 177/19

**disagree [7]** 59/13 59/24 69/8 72/24 83/1 155/13 173/11

**disagreement [2]** 70/25 71/1

**disagrees [1]** 60/3

**disavowed [1]** 120/14

**disburse [1]** 41/3

**disbursing [1]** 44/15

**disclaimed [1]** 7/17

**disclose [1]** 102/1

**disclosed [1]** 102/7

**discovery [13]** 50/1 55/14 87/20 102/24

161/13 161/14 161/20 161/23 175/1 175/2

**discrete [2]** 11/9 166/10

**discretion [11]** 7/14 8/8 8/11 10/5 13/3 27/18 38/2 52/10 165/1 165/19 167/6

**discretionary [4]** 11/1 167/21 167/23 168/4

**discretionary-type [1]** 11/1

**discuss [1]** 6/2

**discussed [6]** 15/13 16/14 57/18 111/24 132/20 145/18

**discussing [1]** 53/15

**discussion [16]** 15/21 18/25 107/18 107/23 108/8 108/14 108/21 117/20 119/16 120/18 123/4 127/1 129/23 160/7 160/24 165/22

**discussions [5]** 16/22 107/20 121/11 127/2

**dislike [1]** 170/9

**dismiss [45]** 22/25 23/22 25/19 25/23 25/24 39/21 39/22 41/25 42/4 43/1 43/2 43/14 43/23 57/1 57/8 57/25 59/19 61/11 70/13 70/14 70/18 90/24 90/25 91/22 91/22 92/9 92/20 93/8 93/9 93/11 93/12 97/7 98/20 98/22 98/25 123/2 124/14 135/8 141/11 142/8 143/7 154/24 163/14 163/21 172/12

**dismissal [37]** 12/17 13/6 20/10 20/13 22/20 25/6 25/8 25/17 27/13 27/14 38/16 42/10 57/16 59/24 60/15 70/6 70/21 90/3 90/7 92/12 93/17 93/21 125/23 134/13 141/22 152/23 154/18 154/25 163/9 163/22 163/23

# D

dismissal... [6]
171/23 172/1 172/3
172/7 172/8 172/10
dismissals [1]  132/6
dismissed [9]  57/21
92/18 93/18 106/24
124/9 125/3 155/3
155/7 155/10
dismissing [3]  93/7
104/4 132/3
displeased [1]
172/11
dispose [1]  44/5
dispositive [8]
11/21 33/7 33/19
77/17 77/24 96/25
97/4 166/11
dispute [2]  8/6 22/1
dissent [8]  18/14
31/24 39/4 48/18
50/19 96/5 156/13
156/23
dissimilar [1]  71/4
dissuade [2]  86/12
88/11
distinction [5]  11/4
47/13 126/25
167/14 167/25
distinctions [3]
10/24 11/10 167/3
distinguish [5]

162/6 166/7
distinguished [2]
25/8 146/11
distinguishes [1]
132/22
distinguishing [3]
14/2 14/13 132/19
DISTRICT [11]
1/1 1/1 1/17 22/24
147/14 180/1 180/2
180/5 180/5 180/12
180/12
disuse [3]  17/8 19/4
170/8
dive [2]  147/8 165/7
dives [1]  148/18
divest [1]  126/22
divining [1]  167/1
DIVISION [3]  1/2
2/7 180/13
divorced [2]  122/7
122/9
do [154]  5/16 5/21
10/14 10/21 10/24
11/5 12/5 12/8
15/16 16/18 16/24
17/14 18/7 18/9
18/12 18/18 18/18
20/23 22/7 26/5
29/12 31/17 35/8
35/17 36/7 36/17

38/16 39/12 39/19
39/23 45/20 46/17
47/15 47/16 50/1
58/2 58/11 62/21
63/9 63/18 64/4
65/11 69/21 70/18
72/24 73/21 74/2
74/6 74/21 74/21
75/8 75/8 75/10
75/12 75/12 76/10
77/2 77/2 78/21
78/24 79/2 81/14
81/14 83/16 83/16
83/24 84/6 84/7
84/10 84/11 85/3
86/22 87/20 88/13
89/6 94/13 94/22
96/15 96/17 98/3
98/10 98/14 99/19
100/23 108/16
111/6 113/15
113/18 114/8
114/25 116/14
116/15 120/23
121/5 124/15 126/2
126/3 126/8 126/19
126/23 127/8
127/22 129/1
129/14 131/9
133/16 134/9
134/19 135/23
138/7 138/14

**D**

do... [43]  138/18
138/24 139/1 139/2
139/16 141/1
142/19 143/6
143/18 144/17
145/16 146/9
146/20 148/2
148/10 148/19
148/23 150/21
151/3 151/3 151/15
152/12 153/11
157/3 157/16
159/22 160/20
161/24 163/7
165/22 166/16
168/11 168/22
169/14 170/1 170/4
171/5 172/7 172/14
173/3 175/3 179/13
179/16
docket [2]  162/23
179/10
doctrine [3]  143/25
153/21 154/10
doctrines [2]  37/17
155/11
documents [1]
103/5
does [59]  9/24
10/20 11/17 14/3
14/11 15/5 17/4

19/5 21/16 25/22
27/11 30/13 38/4
38/4 38/17 39/24
39/24 45/9 46/11
50/14 62/17 62/23
69/15 69/23 70/12
82/16 91/5 92/2
94/7 101/3 105/9
106/5 111/7 111/8
113/9 114/19 117/5
118/9 120/11
123/17 124/3 128/8
128/11 128/15
142/22 144/14
144/16 147/14
154/21 156/2
156/10 160/11
172/7 173/12
173/13 178/22
doesn't [47]  8/18
24/22 24/23 43/11
43/12 43/14 44/1
44/2 52/23 52/24
54/22 55/25 58/1
59/13 59/17 60/9
64/6 64/6 70/11
86/11 86/12 87/8
99/13 100/11
101/12 103/16
107/21 108/13
111/6 123/9 123/22

138/2 138/3 139/23
140/11 140/25
141/4 144/5 148/21
149/1 162/5 162/20
171/24 173/4
doing [26]  12/5
14/6 19/14 24/14
41/2 45/18 55/11
62/11 74/8 80/3
88/11 91/18 106/9
106/10 115/17
115/17 129/5
133/11 133/14
152/11 152/19
167/20 168/13
175/1 175/22
176/18
DOJ [5]  41/1
110/11 167/8
168/14 177/22
dollars [2]  127/21
136/22
domestic [1]  176/19
don't [162]  6/13 9/2
12/25 14/8 15/11
16/2 17/24 18/12
19/22 22/9 23/13
25/21 26/6 27/17
34/8 35/18 36/4
38/1 38/7 41/20
41/21 42/11 42/12

**D**

don't... [139]  43/9
43/23 44/6 44/10
45/8 45/15 49/25
55/1 55/2 55/2
56/17 56/23 57/10
57/25 59/1 60/13
61/7 66/14 67/11
67/18 67/20 69/4
69/5 70/2 71/1
71/18 72/14 73/14
73/23 74/25 75/9
76/3 78/3 78/19
82/20 84/16 85/2
85/2 87/18 90/16
90/21 91/11 92/6
94/18 94/19 96/21
98/13 98/18 98/21
99/25 100/10
102/19 103/13
105/9 105/16 107/4
109/1 111/4 111/8
112/12 112/19
113/5 114/2 117/7
117/8 117/13
117/16 117/19
118/1 118/3 118/4
118/21 119/11
119/24 120/17
120/25 121/9 122/9
122/18 122/22
123/12 124/5
125/14 126/14
128/3 128/21
128/25 130/4 130/4
130/7 131/20
131/22 133/19
134/7 138/14
143/14 143/24
144/1 145/9 145/23
147/17 147/23
147/25 148/1 149/7
149/19 150/4
150/14 151/8
151/17 151/19
153/22 153/22
155/14 155/16
155/16 155/20
156/1 156/1 156/7
157/10 158/11
159/23 161/5 162/4
162/12 163/7 164/5
164/6 164/19
164/19 166/6
167/24 169/13
169/13 170/15
173/17 174/8
174/14
done [6]  97/8
138/13 165/25
166/15 169/5
179/15
Donziger [11]  8/23
9/3 11/16 11/18
12/4 29/15 108/4
108/6 162/7 166/6
166/10
Donziger's [1]  9/5
door [2]  116/3
171/5
double [7]  136/14
155/17 155/19
155/25 156/2 156/9
156/16
doubt [1]  21/25
down [9]  65/14
89/10 114/1 115/7
136/14 149/3
149/14 149/19
166/18
downplay [1]  152/6
dozen [2]  14/25
51/23
Dr. [2]  31/11 104/9
Dr. Zafirov [2]
31/11 104/9
draft [1]  97/22
drafted [1]  146/15
Drake [1]  159/18
draw [2]  11/3 47/13
drawing [1]  12/12
drawn [1]  108/20
drew [1]  20/1
Drive [1]  2/3
drop [1]  43/7
dropped [1]  50/16

# D

due [2]  157/5 169/24
during [3]  75/20 92/4 152/5
duties [1]  10/17

# E

each [4]  5/19 30/19 104/20 105/25
earlier [6]  10/21 55/21 73/8 108/8 152/2 155/23
earliest [1]  162/15
early [16]  16/15 35/23 35/25 71/25 73/1 74/12 75/21 83/16 83/20 98/2 115/5 115/13 115/14 115/15 115/19 116/11
ears [1]  140/16
easily [2]  43/23 141/20
East [1]  2/9
echo [1]  109/9
economic [1]  179/17
effect [10]  14/9 58/23 59/2 135/20 135/25 136/3 155/23 173/4 173/8

effectively [1]  157/14
effects [2]  55/25 136/10
effectuate [2]  117/21 163/20
effectuated [1]  116/13
effort [1]  88/9
efforts [1]  170/5
eight [1]  138/12
Eighth [3]  49/23 67/25 86/23
either [3]  43/1 44/25 126/14
elaborate [1]  8/18
elected [1]  37/21
Election [4]  61/20 61/22 63/21 63/22
elections [1]  64/15
element [2]  8/17 107/24
Eleventh [5]  43/1 79/11 94/14 98/12 130/10
else [10]  20/4 26/4 31/12 45/1 63/3 110/16 127/23 129/13 174/7 175/17
elusive [1]  148/18

emerged [1]  18/10
emphasis [1]  162/18
emphasize [3]  78/15 136/13 142/12
emphasized [1]  34/14
employed [1]  111/11
employees [2]  63/6 111/18
employment [1]  11/24
empower [1]  100/17
empowered [1]  149/6
empowering [1]  117/21
enact [5]  21/10 80/9 157/25 158/2 158/8
enacted [15]  33/24 73/8 74/1 75/20 76/13 76/14 77/6 77/8 77/14 77/23 88/12 146/15 147/3 148/13 159/8
enacting [3]  15/4 73/15 158/3
enactment [14]  16/19 16/24 32/8

# E

enactment... [11] 73/13 74/16 74/18 75/21 83/25 84/3 84/5 85/17 85/19 169/20 170/10

enactments [3] 73/25 74/7 74/22

end [14] 12/5 12/21 12/22 29/25 30/9 38/24 52/22 82/23 82/24 106/16 106/16 109/13 124/9 139/9

ended [1] 50/25

ends [3] 124/8 124/11 172/3

enforce [10] 7/7 24/12 42/6 44/16 47/6 65/9 68/11 68/19 173/1 176/18

enforcement [43] 8/11 9/6 13/3 14/23 14/24 15/1 17/11 19/17 22/3 24/15 27/20 30/7 41/5 46/22 46/23 50/5 66/6 67/8 67/14 67/22 68/2 68/4 68/5 79/21 79/22 80/7 81/6 81/6 83/17 86/15 89/2

131/15 158/19 166/23 167/5 167/5 167/15 167/16 167/17 175/24

enforcing [8] 30/4 47/21 63/22 68/22 68/24 87/24 160/10 167/20

engagement [1] 9/14

engaging [2] 26/2 161/22

ENGEL [9] 2/12 3/4 3/9 4/24 28/4 28/6 53/1 120/4 170/23

England [5] 17/6 19/3 48/8 71/25 169/15

English [4] 13/14 16/20 28/20 28/23

enough [5] 41/2 50/15 82/16 176/18 177/11

ensure [4] 63/20 100/23 129/2 177/12

ensuring [2] 56/19 177/15

entail [1] 80/25

enterprise [5] 10/7

177/8

entire [4] 56/13 139/18 161/19 163/11

entirely [4] 48/23 104/25 137/8 144/11

entitled [5] 57/7 57/9 93/15 111/13 180/7

entitles [1] 175/2

entity [1] 113/19

entrenched [1] 75/25

environmental [1] 37/8

envision [1] 80/24

episodic [1] 10/20

equal [1] 114/3

equally [2] 50/6 116/5

equivalent [2] 14/7 171/24

erasing [1] 26/24

especially [2] 10/21 14/5

ESQ [4] 2/2 2/5 2/12 2/15

essential [2] 17/1 47/6

essentially [11] 8/9

# E

essentially... [10]
11/6 11/12 12/7
19/16 26/24 135/7
137/23 139/19
175/5 176/17
establish [1] 69/6
established [3]
17/24 18/15 151/22
establishes [2]
149/12 150/17
Establishment [2]
33/10 33/13
estate [2] 46/6
46/11
ESTES [9] 2/2 3/6
3/10 4/8 53/3 95/14
130/24 136/23
173/25
Estes's [3] 131/25
136/15 160/17
estoppel [2] 136/10
155/11
et [1] 1/8
evaluated [1]
107/16
evaluates [1]
105/24
evaluation [1]
106/9
even [68] 9/7 13/25
15/9 16/3 16/11

18/9 18/15 19/3
19/22 20/22 21/11
23/4 23/20 23/21
28/17 29/13 30/18
32/2 34/25 39/23
40/4 41/11 42/22
43/4 43/9 43/22
44/8 45/17 53/17
55/14 57/21 61/24
61/24 63/16 63/17
66/20 76/23 77/7
79/12 79/20 80/4
83/2 91/16 92/19
98/13 102/19 105/3
107/4 112/21
115/15 119/3 119/9
119/15 119/23
119/25 125/9 131/1
132/13 133/3
135/20 137/2 142/3
152/3 152/16 155/8
164/14 171/15
174/20
event [1] 134/6
eventually [1] 27/2
ever [3] 62/17
90/24 155/19
every [8] 9/10 61/7
82/3 85/15 95/4
127/9 136/15
145/13
everybody [3]

everyone [5] 13/13
29/17 34/24 151/14
156/12
everyone's [1]
179/11
everything [6]
91/18 129/12
129/16 132/10
132/15 153/10
everywhere [1]
136/20
evidence [1] 170/18
evidently [1]
148/15
eviscerated [1] 23/7
eviscerating [1]
43/5
ex [1] 51/25
exact [5] 75/19
112/25 113/2 135/9
173/14
Exactek [1] 165/11
exactly [8] 42/18
49/9 113/6 116/9
127/7 127/14
127/19 134/25
examine [2] 55/16
172/22
examined [1] 59/22
examining [1] 86/9
example [37] 9/13

**E**

example... [36]
9/18 9/25 12/1 60/7
66/5 83/10 91/6
100/14 103/8
108/13 109/6
109/10 110/12
110/22 111/9
124/20 131/2
133/22 136/16
136/24 146/18
157/23 160/13
160/25 161/16
162/14 162/23
166/17 166/24
167/7 168/22 170/3
171/9 172/20
172/22 173/10
examples [12]  9/5
9/5 26/11 145/2
145/25 148/12
160/8 160/14
162/12 166/22
170/9 170/24
except [4]  149/5
153/16 172/16
172/17
exception [1]  96/16
exceptions [1]
100/10
excessive [1]  49/23
excluded [1]  118/4

exclusive [1]  81/18
excuse [9]  10/7
35/13 97/12 97/20
102/17 104/17
126/7 162/13
178/19
execute [3]  111/20
170/20 177/22
executed [1]  37/22
executing [1]  166/8
executive [84]  7/19
8/7 9/20 11/11
26/12 30/5 30/7
31/25 34/15 34/17
37/23 41/3 44/15
44/15 44/21 45/22
47/20 47/21 49/3
49/17 50/6 54/23
61/1 63/11 67/7
67/25 68/3 68/7
68/16 68/19 69/22
78/20 79/4 79/21
81/2 81/4 81/4 81/6
81/8 82/14 83/6
85/7 91/13 99/21
99/24 100/2 109/8
110/5 110/19
110/21 111/16
118/11 127/5
127/24 128/9
128/11 128/16
128/22 129/10

131/16 131/24
136/17 141/17
142/15 142/19
142/23 143/1
143/16 143/19
143/20 144/2
150/25 151/1 160/9
162/11 163/17
166/8 167/4 170/21
171/19 176/17
176/22 177/7 178/2
executive's [3]  7/13
88/17 127/5
executor [2]  46/12
46/13
exemptions [1]
33/17
exercise [16]  7/7
7/14 8/11 10/7
32/18 37/22 65/25
80/6 83/8 99/24
143/1 143/3 144/8
151/23 153/25
167/5
exercised [1]  13/2
exercises [3]  66/5
136/16 160/8
exercising [31]  8/7
8/8 9/6 9/19 10/4
15/14 15/25 23/22
24/15 30/9 31/24
54/23 67/7 67/10

**E**

exercising... [17] 67/17 68/16 80/2 83/3 83/7 99/23 109/7 110/18 110/20 138/21 139/24 139/24 151/12 153/7 153/24 165/24 171/19
exert [1]  175/6
exist [5]  27/11 42/12 148/22 154/4 154/5
existed [8]  17/5 48/13 76/10 114/15 115/2 149/4 158/22 168/23
existence [1]  17/3
existing [1]  115/13
exists [7]  25/6 106/22 106/23 108/12 108/25 121/11 122/4
expanding [1] 106/4
expect [2]  16/21 72/21
expediency [1]  49/2
expense [1]  152/14
experienced [1] 87/7

experiment [1] 32/16
expert [1]  11/8
expertise [3]  11/8 139/22 166/14
experts [1]  10/25
explained [1]  42/16
explanation [1] 125/2
explicitly [4]  24/22 72/15 72/19 79/18
explore [1]  113/12
expound [1]  151/20
expressly [1]  15/19
extended [2]  9/8 107/23
extension [2] 140/14 140/18
extent [14]  11/17 26/14 34/1 34/3 39/22 46/6 49/9 83/20 86/8 96/11 121/3 121/12 160/14 163/2
extinguish [1]  93/3
extreme [2]  123/5 137/16
extremely [1]  79/7
eye [1]  59/15

**F**

face [2]  172/13 175/6

faced [1]  25/3
76/22
facie [3]  31/23 39/9 50/20
fact [42]  10/25 11/20 17/7 27/18 33/5 33/17 39/20 41/17 48/6 52/21 73/8 73/13 73/16 73/19 74/21 75/8 77/2 77/6 77/10 77/13 81/15 84/5 84/7 92/11 95/17 98/4 98/10 108/25 113/10 120/17 129/7 137/6 152/21 162/5 162/8 164/7 166/9 167/23 168/12 170/7 170/8 173/18
factor [2]  128/5 143/21
facts [6]  87/21 90/13 92/17 118/17 174/22 174/24
factual [3]  19/9 96/3 162/25
factually [1]  97/5
fail [3]  53/24 79/9 79/11
failed [1]  53/25
fails [1]  67/19

**1**

fair [3]  39/2 39/12
153/8
fairly [2]  29/22
39/8
faith [2]  91/21
132/11
faithfully [1]  37/22
fall [3]  17/8 100/16
117/23
fallen [1]  19/4
falls [1]  135/25
false [115]  7/9 7/12
8/10 14/16 19/11
19/15 21/17 21/25
22/2 28/18 31/15
34/18 34/19 38/4
38/9 41/1 41/2
41/18 45/9 46/20
47/5 51/2 55/3
55/12 56/7 58/16
62/13 62/24 65/6
65/25 66/25 68/2
68/6 68/11 68/11
69/24 70/15 71/10
71/12 71/18 71/20
71/24 72/5 72/10
72/11 72/23 75/20
77/19 79/3 80/9
80/24 81/5 83/22
83/22 85/21 86/9
86/20 87/13 87/15

87/17 87/25 88/12
88/19 89/2 92/4
93/5 94/6 94/8
94/16 99/9 99/20
100/2 100/13
100/17 101/2
102/18 104/21
106/14 106/24
107/14 110/6
112/25 113/2 113/8
113/13 114/17
115/2 115/14
117/24 122/3
123/15 126/11
126/14 128/15
130/3 130/25
131/15 132/12
144/14 144/16
148/2 150/3 155/20
156/14 157/25
158/2 158/4 168/13
170/10 170/20
175/8 175/22 177/1
177/18 179/3
falsity [1]  19/9
familiar [6]  5/11
140/22 147/7
147/11 156/10
156/17
far [19]  14/20 14/23
14/24 17/21 58/18
75/8 107/16 108/10

100/17 150/11
161/11 161/18
161/18 161/21
162/1 162/4 162/4
172/8 175/2
fashion [1]  30/5
fast [1]  32/25
favor [2]  15/5
154/17
favorably [1]  120/6
favorite [1]  146/17
FCA [25]  5/18
13/24 15/6 16/7
16/10 24/6 26/8
42/10 47/10 53/18
55/8 56/4 64/11
75/6 79/22 86/15
86/18 116/17 117/7
117/15 118/8 119/6
146/4 154/11
169/20
FCA-like [4]  16/7
75/6 118/8 169/20
FCA-type [3]  16/10
116/17 117/7
FCRR [2]  2/18
180/11
FDR [1]  46/14
feasible [1]  102/11
FEC [1]  63/17
Federal [49]  7/8
11/13 11/14 19/19

# 1

**Federal... [45]**
24/12 24/21 26/19
42/6 44/24 47/6
47/6 47/7 48/24
54/8 61/20 61/22
63/21 63/22 83/11
84/20 88/25 88/25
89/2 89/3 89/22
102/13 109/10
109/12 109/15
109/16 109/19
111/17 136/22
137/13 147/23
149/14 153/17
158/7 160/10
160/15 160/25
161/3 166/13
166/23 167/15
167/20 173/1
173/20 176/18
**Federalist [1]** 16/22
**fee [1]** 138/25
**feel [6]** 11/17 15/16
53/22 83/1 169/4
169/22
**feels [2]** 57/22
121/12
**fees [2]** 50/12
138/23
**fell [1]** 170/7
**felt [1]** 153/20

**ferret [1]** 103/10
**few [12]** 5/19 6/2
14/21 16/10 17/21
33/1 36/24 74/11
76/9 77/9 77/23
169/2
**field [4]** 31/9 116/7
134/22 136/23
**Fifth [4]** 71/7 71/8
71/9 88/15
**fight [1]** 26/15
**fighting [1]** 23/12
**figure [3]** 139/23
159/6 164/19
**file [14]** 7/15 13/3
27/19 27/22 52/13
123/19 124/7 140/8
154/22 161/5
161/12 162/10
167/6 167/12
**filed [6]** 19/18
36/13 36/24 140/10
140/11 161/10
**files [3]** 91/17
139/14 161/11
**filing [5]** 27/20
105/18 139/5
161/22 162/9
**fill [1]** 28/10
**final [3]** 14/10
154/13 158/14
**finance [1]** 130/11

**financia... [5]** 101/11
102/5 102/20
122/18 131/19
**financially [2]** 41/4
113/16
**find [24]** 10/15
16/18 16/21 17/10
17/15 35/6 36/8
36/18 50/7 74/8
75/18 75/19 76/4
76/6 85/21 121/1
138/24 139/2 139/2
140/7 146/24
149/12 165/8
174/14
**finding [1]** 86/12
**finds [1]** 115/20
**fine [8]** 6/15 87/18
112/2 113/14
143/21 144/9 148/3
159/10
**fines [5]** 45/10
49/22 49/23 50/11
155/18
**finite [2]** 22/2
166/14
**fired [1]** 46/14
**firm [1]** 167/9
**first [64]** 5/13 8/3
8/5 10/1 11/6 14/21
15/1 15/18 19/19
20/18 21/18 22/12

**first... [52]** 22/19 27/19 28/21 29/3 32/14 32/17 32/21 33/4 33/5 33/8 33/12 33/20 34/3 34/20 37/14 48/10 52/3 53/4 54/2 55/10 67/19 67/20 69/25 71/2 74/18 76/9 77/9 77/23 81/15 93/16 95/6 97/8 104/13 107/6 112/8 114/20 130/1 133/11 140/5 146/12 146/14 147/2 147/13 148/5 150/3 158/1 160/7 161/6 166/21 167/6 167/14 169/19

**fisc [6]** 41/5 42/7 89/2 89/3 89/22 144/16

**fit [6]** 64/6 64/7 70/11 70/12 80/9 113/8

**fits [1]** 129/5

**five [11]** 7/1 14/21 15/18 27/25 53/25 76/8 114/13 114/14 116/1 159/15 175/18

**fixated [1]** 92/12

**fixed [1]** 22/1

**flag [2]** 157/14 175/20

**flagged [1]** 20/21

**flatout [1]** 33/3

**flexes [1]** 152/7

**flexibility [4]** 68/18 81/3 144/17 144/22

**FLORIDA [11]** 1/1 1/6 1/7 2/9 2/18 2/19 4/20 6/19 180/2 180/5 180/12

**focus [2]** 28/15 106/10

**focused [2]** 48/14 108/19

**focusing [1]** 73/25

**Foley [2]** 2/9 6/21

**folks [1]** 151/1

**follow [3]** 6/2 6/14 131/12

**follow-on [1]** 131/12

**followed [2]** 72/2 76/25

**following [2]** 46/25 95/13

**follows [1]** 148/19

**footnote [4]** 35/11 35/13 50/17 97/22

**forbearance [1]** 152/22

**force [2]** 111/16 111/22

**forced [1]** 62/20

**forces [1]** 52/3

**forefront [1]** 13/10

**foregoing [1]** 180/6

**foreign [15]** 94/7 94/12 99/9 99/18 100/5 101/5 101/8 101/10 102/10 102/16 102/20 104/7 130/3 131/18 176/19

**forfeiture [1]** 45/10

**forget [2]** 36/23 56/17

**Forgive [1]** 23/12

**form [1]** 18/4

**format [1]** 180/7

**formulate [1]** 11/2

**formulated [1]** 48/10

**forth [2]** 58/16 158/19

**forward [17]** 13/14 26/13 29/24 31/7 33/1 52/17 68/14 78/24 91/15 102/8 122/2 138/5 138/6

# I

forward... [4]  139/8 141/13 162/9 170/3
fought [1]  158/13
found [5]  19/22 30/22 54/13 72/10 169/10
foundational [1]  95/25
founding [9]  15/1 18/5 19/9 19/21 76/1 80/22 81/16 118/16 158/22
four [5]  7/16 35/10 35/12 166/9 174/25
fours [1]  12/4
framed [2]  79/20 116/10
framers [5]  16/16 18/25 32/13 32/14 118/5
frames [1]  109/3
framework [3]  34/2 34/6 106/8
framing [2]  170/16 171/1
frankly [2]  28/16 50/23
fraud [26]  1/11 2/15 4/17 5/1 6/9 26/15 47/10 47/14 59/25 64/16 64/18

65/5 65/17 87/10 87/11 87/12 87/14 88/7 88/11 89/3 100/9 101/6 115/21 115/24 116/3 154/1
frauds [3]  87/24 138/5 138/6
free [8]  10/7 10/7 34/12 63/17 135/1 159/20 164/23 177/7
Freedom [1]  159/18
frequently [5]  10/16 145/11 154/22 155/1 155/4
friend [3]  33/8 36/14 166/21
front [6]  7/1 12/21 30/9 63/1 82/24 117/11
front-end [2]  12/21 82/24
fruitful [1]  146/21
fulfilled [1]  12/7
full [3]  35/18 136/11 152/9
fully [7]  55/16 75/25 109/22 109/24 109/25 110/4 110/14
fulsome [1]  17/14

function [12]  44/15 45/22 47/6 47/20 47/21 49/16 111/16 111/21 144/15 145/8 175/23 175/23
functionally [5]  12/11 134/12 135/6 135/10 153/5
functions [3]  136/22 137/18 144/23
fund [5]  10/8 34/12 101/8 130/11 177/8
fundamentally [2]  7/5 150/23
funder [3]  101/3 101/20 130/14
funders [2]  131/2 131/4
funding [2]  101/22 130/14
funds [4]  94/16 100/15 102/4 158/7
funnel [1]  130/22
further [4]  35/1 50/4 175/14 179/19
future [1]  88/9

# G

gain [1]  152/10
Gamble [1]  156/17
GAO [1]  115/24

# G

gaps [1]  28/10
gathering [1]  140/7
gave [5]  38/25
117/15 130/3 145/2
152/2
General [20]  29/20
36/2 37/2 51/16
51/20 51/24 52/16
68/10 68/13 74/3
78/21 78/23 78/25
80/14 81/9 81/22
83/8 161/5 174/23
177/6
General's [2]  36/19
80/11
generally [1]  42/16
generating [1]  39/8
George [1]  148/5
Germane [2]  10/22
29/8
get [33]  49/20 53/10
56/10 56/24 59/9
67/12 67/23 69/5
87/16 96/24 104/3
107/4 112/2 113/24
119/12 119/23
120/17 123/8 128/7
138/14 139/3 139/5
140/13 141/7
148/20 152/12
154/15 158/12

163/21 172/18
172/20
gets [15]  9/23 30/18
58/8 108/10 119/6
127/25 135/9
135/16 139/10
139/22 142/24
152/8 167/14
167/24 168/24
getting [10]  23/24
49/21 85/13 88/1
97/21 109/3 118/22
119/25 120/1
137/24
Ginsburg [1]
156/16
give [25]  6/12 6/14
26/12 44/21 46/24
66/4 76/10 76/12
79/3 80/9 83/10
110/11 110/22
116/8 122/14
137/11 144/5 144/8
144/16 150/10
155/22 157/2
166/24 167/2 178/3
given [41]  6/4 9/16
13/16 13/21 14/17
18/9 22/24 24/12
24/18 25/24 45/12
49/19 57/17 58/20

63/19 63/22 66/10
78/8 78/20 82/15
86/3 87/12 111/20
116/16 116/18
117/12 122/1
126/13 150/5 151/7
155/17 157/5
158/12 160/14
171/17 174/1 174/5
179/17
gives [17]  20/8
20/15 20/18 25/2
27/5 55/12 55/13
56/11 76/15 82/8
89/24 93/20 124/18
125/1 132/13
141/12 148/7
giving [3]  27/2
60/19 144/9
glean [1]  159/7
go [36]  9/12 17/10
40/7 41/7 47/1
52/17 53/4 58/17
70/14 71/12 78/22
78/22 79/1 81/21
81/21 89/11 95/24
99/4 108/16 110/20
111/10 114/8
114/18 122/13
122/16 125/5
127/12 129/24

# G

go... [8]  137/5 138/9
 140/11 143/6 147/1
 154/9 159/24
 162/16
goes [14]  26/5
 29/25 41/23 59/5
 61/15 81/2 85/7
 117/20 140/10
 140/12 152/7
 161/25 163/9
 168/15
going [40]  4/15
 10/10 13/13 40/12
 46/2 46/21 52/16
 56/19 58/5 58/21
 59/16 60/24 61/8
 71/25 83/18 85/21
 88/17 98/9 105/22
 112/5 116/3 130/13
 138/14 138/18
 139/8 141/13 143/1
 148/17 148/18
 148/20 148/21
 154/24 156/11
 159/2 159/19 162/9
 163/15 166/9 171/2
 177/4
going to [1]  163/15
gone [2]  93/7 115/7
gonna [34]  4/10
 8/25 10/22 16/11

19/7 27/5 17 35/5
 36/4 42/14 43/7
 45/4 46/24 49/18
 53/24 61/9 61/10
 64/25 75/18 75/19
 81/1 85/21 86/10
 88/2 103/10 112/2
 117/3 133/22 144/8
 146/23 146/24
 149/13 155/24
 167/2 173/25
good [36]  4/3 4/7
 4/18 4/23 4/25 6/16
 10/3 20/10 20/12
 25/5 28/5 35/14
 36/9 41/2 50/15
 53/6 53/7 60/12
 78/3 78/14 85/2
 91/21 95/15 95/16
 104/3 108/13
 115/17 117/1 127/6
 128/22 129/20
 129/21 132/11
 137/6 145/2 148/4
goods [1]  167/22
gored [1]  143/20
got [8]  28/24 68/10
 90/12 91/7 92/17
 93/16 109/13
 150/11
gotten [3]  97/9
 158/18 158/19

governing [1]  16/9
government [264]
government to [1]
 159/11
government's [44]
 7/18 14/18 20/16
 22/17 23/15 23/23
 24/22 35/13 41/17
 53/15 54/5 54/19
 56/10 56/20 58/9
 59/7 74/15 86/25
 87/5 88/14 91/12
 92/18 94/11 99/13
 100/21 100/23
 119/1 123/23
 123/25 125/20
 136/2 141/16
 145/21 152/22
 152/23 154/16
 155/9 159/12 161/1
 161/13 162/3
 162/23 173/5 175/4
governmental [2]
 154/2 161/8
governments [1]
 130/5
grand [6]  22/22
 63/7 63/13 65/24
 87/19 108/18
grant [7]  23/3
 42/21 50/1 106/5
 140/18 155/4

## G

grant... [1]  171/13
granted [9]  31/16
32/17 93/4 100/1
104/21 132/5
153/22 155/1
155/15
granting [1]  122/7
grants [1]  70/21
grateful [1]  139/10
gravamen [1]
143/19
gravity [2]  58/8
134/7
great [7]  18/22
71/23 71/23 117/23
139/11 140/24
148/11
greater [2]  119/9
119/11
ground [2]  95/19
156/7
grounds [1]  132/4
group [1]  47/6
groups [1]  75/17
growth [1]  19/11
guarantee [1]  155/9
guardrails [1]
79/17
guess [10]  6/4 27/6
36/3 39/24 45/13
77/11 102/8 109/6

guidance [1]
171/17
gun [1]  139/15
guns [2]  158/21
158/22

## H

had [41]  7/23 11/6
11/7 12/2 17/3
18/19 19/3 19/9
19/23 20/23 32/16
33/11 33/16 33/17
34/19 34/23 36/11
44/18 46/7 46/20
48/12 59/11 60/22
72/11 82/9 89/18
89/21 95/21 98/1
98/24 109/15
116/15 118/12
118/15 124/21
148/14 165/22
167/8 168/22
175/19 176/4
half [3]  51/23
140/14 148/6
halfway [1]  102/3
hallmark [1]
132/19
hand [4]  15/11
65/10 110/20
110/20
handed [2]  131/3

handful [2]  160/6
161/17
handle [3]  16/14
127/18 129/3
handled [3]  127/14
127/17 177/9
handles [2]  63/24
139/9
handling [3]  4/12
64/2 172/12
hands [1]  139/14
hang [1]  73/13
happen [8]  59/13
62/17 125/17
130/18 130/20
171/3 172/18
172/23
happened [6]  19/21
85/9 124/24 130/19
131/20 169/15
happening [9]
18/24 45/24 81/12
123/10 125/25
131/11 140/24
141/8 143/4
happens [11]  31/4
57/11 62/18 66/24
66/25 108/15 123/8
125/16 140/5
154/22 176/7
happily [1]  132/5

# H

**happy [11]** 22/11
26/1 28/8 28/9 32/4
43/24 120/25
143/16 144/4 157/6
175/13
**hard [10]** 29/16
60/2 67/21 76/21
85/10 90/23 107/8
121/16 150/8 166/4
**hardest [3]** 18/17
121/14 169/1
**harm [6]** 13/22
14/8 25/3 67/3
113/24 118/7
**harmed [1]** 21/18
**harms [3]** 27/20
113/23 116/15
**has [188]**
**hasn't [5]** 72/4
97/10 99/1 119/6
143/25
**hat [1]** 73/13
**have [281]**
**haven't [7]** 36/10
46/2 56/21 96/25
124/20 132/20
158/13
**having [19]** 7/18
12/12 25/1 33/9
34/16 60/12 62/11
73/14 78/24 90/23

108/23 113/21
168/10 168/18
173/20 174/9
178/23
**haziness [1]** 10/19
**he [18]** 17/18 17/19
17/19 24/11 35/16
35/17 36/7 36/11
39/10 40/19 40/20
52/8 132/24 134/21
168/22 169/8
177/17 177/24
**he's [4]** 24/10 40/12
40/14 166/24
**head [3]** 17/17 20/2
52/16
**headlong [1]** 24/24
**health [1]** 137/7
**hear [8]** 5/7 53/17
64/8 107/9 117/8
128/14 149/21
171/23
**heard [5]** 21/4
114/7 138/10
158/20 177/24
**hearing [9]** 1/16
57/8 57/9 57/11
57/11 57/13 93/15
140/17 162/18
**hearings [1]** 57/10
**heart [4]** 81/2 85/7

**heavily [1]** 118/14
**heavy [1]** 147/1
**Hebrons [1]** 32/24
**Heckler [2]** 30/5
50/4
**heightened [3]**
100/5 101/3 103/4
**held [5]** 39/17
54/15 85/4 177/17
177/22
**help [12]** 41/5
116/9 121/8 137/19
138/5 139/4 139/6
139/10 150/8
167/20 173/12
173/13
**helpful [5]** 74/18
140/3 144/19
144/21 150/12
**helping [3]** 139/21
139/21 139/25
**helps [3]** 69/16
133/9 151/6
**her [16]** 7/20 12/10
23/20 40/8 41/21
42/2 46/4 52/6
109/25 124/9
161/18 161/21
161/24 162/6
172/19 175/3
**here [93]** 4/3 5/15

# H

here... [91]  8/6 8/13
9/1 11/13 11/15
12/15 13/1 14/6
18/13 21/1 21/11
22/9 27/7 27/11
28/8 28/17 28/23
30/25 31/11 31/20
32/6 34/7 37/15
38/21 39/14 40/24
45/24 47/13 49/19
52/2 52/19 53/15
53/22 54/18 55/11
61/12 70/5 70/10
70/18 71/22 72/8
73/4 74/24 78/18
78/22 79/7 83/4
85/10 86/24 87/5
89/9 94/24 96/1
97/6 97/13 103/9
114/25 117/7
120/16 126/25
127/15 129/22
130/13 131/8
136/15 143/1
144/24 153/11
154/5 156/22 161/2
165/23 166/19
168/9 168/12
168/16 169/1 169/5
169/14 170/12
171/14 173/18

173/23 174/11
174/24 175/21
175/22 176/16
177/1 177/4 177/19
here's [2]  22/15
96/23
hereby [1]  167/11
hers [1]  123/24
hesitating [1]  89/17
hey [2]  96/6 156/13
hidden [1]  138/5
high [2]  81/18 88/1
highly [1]  52/19
him [1]  46/14
hired [3]  11/8 167/9
168/7
his [8]  31/23 37/3
46/14 48/18 50/19
52/9 83/9 157/4
historic [2]  146/18
148/16
historical [43]  5/16
13/11 14/6 14/15
16/14 17/15 17/24
18/15 19/2 19/25
71/19 72/6 74/16
76/3 76/18 78/6
78/16 84/1 85/17
112/5 114/4 117/6
117/6 118/14
120/20 121/10
146/12 148/11

148/23 149/5
150/15 150/21
156/11 159/7
159/10 169/14
169/14 170/4
170/22 171/2
171/11 171/21
179/14
historically [2]
117/14 145/18
history [63]  13/7
14/2 14/3 15/8 15/9
15/10 15/12 15/16
18/9 28/16 28/16
32/3 32/5 32/6 32/8
33/21 33/23 34/3
34/6 35/4 35/5
36/12 49/5 49/10
50/16 70/24 71/3
71/10 71/17 71/19
71/24 72/9 72/22
73/4 75/16 77/3
77/16 77/24 83/17
83/19 85/12 86/12
114/8 115/3 115/4
121/14 146/1
148/21 148/21
149/9 149/11 150/8
156/20 156/21
158/15 158/17
162/15 162/16
168/24 168/24

# H

history... [3]  169/10
 170/3 171/13
hit [2]  28/7 66/19
hoc [1]  9/13
hold [4]  30/18
 30/24 110/8 145/24
holding [2]  54/25
 126/16
hole [2]  54/20
 104/16
holistically [1]
 59/22
home [3]  136/21
 159/23 159/24
Homeland [1]
 137/2
Honor [43]  4/7 4/18
 4/23 5/2 6/16 28/3
 28/5 28/7 53/2 53/8
 76/12 78/1 95/15
 95/20 98/19 121/5
 121/12 129/15
 129/21 130/1 134/6
 135/21 138/20
 140/16 140/25
 144/22 145/25
 146/9 150/16
 153/23 156/1 156/5
 157/6 159/4 159/9
 160/5 174/5 174/10
 175/15 175/16

HONORABLE [1]
 1/17
hope [3]  41/4 49/14
 86/5
host [1]  64/14
hotel [2]  44/24 45/1
house [1]  139/23
how [63]  15/5 15/8
 16/14 18/6 18/7
 30/22 41/14 41/23
 43/12 49/22 53/20
 56/4 68/19 70/2
 71/22 72/8 73/10
 73/24 78/7 81/14
 83/18 83/24 87/10
 87/12 92/21 97/20
 97/20 101/17
 101/24 102/19
 105/16 111/2
 112/24 114/5 114/8
 115/5 115/8 117/5
 121/24 125/18
 126/22 127/14
 143/22 146/8
 150/25 151/13
 151/24 153/10
 154/12 155/4 159/5
 163/11 163/16
 164/16 166/6
 168/13 170/4
 172/11 172/24

174/14 177/4
how the [1]  97/20
Howard [2]  2/18
 180/4
however [7]  60/21
 83/15 106/2 111/19
 131/23 146/20
 167/12
huge [1]  137/4
huh [4]  23/17 44/12
 96/7 148/9
Humphrey's [2]
 46/13 46/13
hundred [1]  8/19
hundreds [1]
 136/21
hunter [2]  14/7
 47/2
hunters [2]  41/7
 42/5
hurdle [1]  93/16
hurts [1]  133/9
hypo [1]  131/21
hypos [1]  133/11
hypothesis [1]
 132/9
hypothetical [7]
 35/2 51/14 60/2
 60/21 102/6 130/2
 175/25
hypotheticals [3]

# H

hypotheticals... [3]
51/5 132/12 163/3
hypotheticals, [1]
133/15
hypotheticals,
someone [1]
133/15

# I

I'll [22]  4/16 5/9 6/5
6/24 8/3 13/12
13/19 14/22 53/9
75/4 75/6 94/4
95/18 132/1 132/5
138/10 150/14
154/20 156/6 174/4
174/10 175/19
I'm [104]  4/18 5/5
5/11 6/10 6/10 6/18
8/20 10/13 10/22
12/23 13/25 14/6
16/11 17/15 18/6
20/13 21/1 21/15
25/4 25/7 26/1 26/6
27/6 28/8 28/9 32/4
35/12 38/22 43/24
46/2 47/13 48/1
49/18 49/18 55/9
59/23 69/9 72/19
77/21 78/2 78/10
84/3 84/21 84/23
85/12 85/16 90/5
90/23 92/12 92/22
93/2 93/2 93/23
95/4 95/17 99/20
101/8 103/10 107/3
107/8 110/13
110/24 111/9
112/18 116/14
117/2 120/8 121/22
124/2 126/6 127/24
128/13 131/10
131/11 131/20
131/25 140/22
140/22 144/6
145/14 146/5
146/24 147/7
149/13 149/18
149/23 150/8
155/12 156/17
157/3 159/6 159/22
159/23 163/11
164/17 164/19
165/10 167/2
167/24 173/6
173/22 174/2
179/14 179/17
I've [15]  5/4 5/10
14/20 14/25 16/6
21/4 42/11 91/7
111/3 127/12
127/12 134/4
137/22 147/8 165/3
idea [16]  45/6 47/4
54/7 54/25 68/12
81/22 115/11 116/6
118/6 118/14 129/2
132/8 148/14
148/14 150/25
158/12
identifiable [3]
176/2 176/5 176/15
identified [4]  14/20
15/17 55/18 97/10
identifies [2]  30/23
80/16
identify [1]  136/16
ignore [1]  148/20
II [66]  7/25 15/10
15/25 17/1 18/11
21/13 23/19 24/7
24/13 24/24 28/14
28/22 30/19 34/11
34/24 34/25 35/3
37/19 39/1 39/7
40/12 40/17 43/11
46/23 48/16 48/18
49/14 50/17 50/21
50/24 52/11 71/21
72/13 72/16 72/19
73/4 79/10 79/12
79/14 79/18 82/11
82/16 90/20 94/13
98/2 98/6 100/5
101/12 103/11

**I**

II... [17] 109/17
112/16 112/19
118/1 120/17
131/13 131/21
131/23 133/19
144/4 150/5 164/11
164/12 168/7
168/10 168/13
168/18
III [11] 24/10 24/20
25/3 39/17 48/3
53/18 71/18 71/21
72/12 82/8 82/10
illuminating [1]
71/11
illusory [1] 90/10
illustration [2]
137/6 148/4
imagine [9] 10/9
70/25 85/3 85/3
85/8 116/4 132/11
133/11 157/23
immediately [1]
20/1
implementation [1]
118/25
implementing [1]
162/11
implicate [1] 154/2
implicates [1]
134/4

implication [1]
113/21
implications [1]
131/13
imply [1] 91/20
import [1] 73/5
importance [3]
7/25 30/6 170/17
important [18]
16/15 22/12 28/8
38/22 52/2 67/5
78/7 78/17 84/1
84/6 111/15 126/24
149/9 160/13 167/3
169/18 169/22
169/23
importantly [1]
71/13
impose [2] 113/13
162/3
imposed [1] 155/18
imposes [1] 113/13
impossible [1]
116/3
impression [3]
19/19 85/13 179/15
improper [3]
124/21 124/25
125/11
inability [2] 30/13
69/19
inappropriate [1]

97/3
inaudible [18] 5/6
6/22 10/10 16/7
39/18 40/21 48/1
54/12 61/17 76/4
114/22 117/8
120/23 128/7
134/23 143/22
148/10 152/2
Inc [1] 2/10
incentive [3]
101/11 113/17
138/7
incentivize [1] 41/7
inception [2]
101/20 102/2
inchoate [5] 44/9
44/11 45/17 126/2
126/8
incidentally [1]
35/5
incidents [1] 29/7
include [2] 45/7
94/11
including [6] 50/22
94/12 131/4 145/19
170/2 175/2
inclusive [1] 180/7
incongruities [1]
41/23
inconsistent [1]
102/17

incorporate [1] 152/21
increased [1] 22/17
incredible [1] 18/10
incredibly [1] 137/1
indeed [1] 29/13
indefinite [1] 11/21
independent [14] 9/6 29/18 30/15 61/24 61/25 62/4 62/6 63/4 63/5 63/5 63/14 104/23 153/4 174/21
independently [1] 105/9
indicated [3] 33/20 50/10 179/10
indicating [1] 13/2
indicia [3] 11/25 54/14 64/5
indictment [2] 86/16 114/1
indictments [4] 63/5 105/16 106/2 161/3
indispensable [2] 24/4 41/12
individual [26] 10/4 10/8 15/14 30/8 65/15 65/16

65/16 65/23 66/10 66/13 67/7 75/24 81/11 83/2 84/19 109/6 110/10 126/15 128/12 128/16 134/24 142/23 143/5 160/10 161/12 172/25
individualized [5] 13/22 14/8 23/9 25/3 116/15
individually [1] 162/2
individuals [13] 5/5 7/7 7/13 19/18 27/22 61/21 65/22 88/10 138/4 138/6 170/19 171/7 171/18
indulgence [1] 53/8
inflict [1] 27/19
inform [1] 18/3
information [14] 26/13 51/11 65/13 102/1 102/12 129/4 130/22 131/1 131/3 137/1 138/4 139/20 139/22 152/10
informer [3] 14/7 116/24 148/6
informers [3] 13/15

infringe [2] 24/13 112/15
infringements [1] 174/17
infringing [1] 112/19
inherently [2] 49/17 91/9
initial [3] 39/23 54/22 83/25
initiate [3] 51/7 55/13 67/23
initiates [1] 21/22
initiation [2] 140/23 160/17
initiatives [1] 137/3
injured [3] 20/20 37/8 37/14
injuries [2] 75/3 175/4
injury [11] 14/16 14/18 15/20 16/1 24/15 50/13 66/13 117/16 145/21 150/20 175/3
ink [1] 13/8
inquires [1] 101/19
inquiries [1] 153/4
inquiry [6] 13/10 22/23 73/20 73/22 76/4 150/15

I

insofar [2]  8/6 106/20
insofar as [2]  8/6 106/20
instance [8]  27/19 37/15 102/14 158/1 161/6 167/6 176/1 178/15
instances [3]  80/15 86/23 99/12
instead [5]  17/2 19/10 19/16 151/18 165/11
institutions [1] 33/18
instructive [4] 71/22 72/8 85/12 121/4
insufficient [2]  60/5 144/2
insurance [1] 113/25
intend [1]  174/9
intended [1]  41/6
intercepts [1]  137/2
interest [40]  1/12 12/9 23/7 23/9 23/14 23/15 23/15 23/21 25/1 39/6 40/16 41/21 56/20 88/23 89/1 89/21

96/6 99/15 101/7 101/9 101/9 102/25 106/20 112/9 122/8 122/10 122/11 122/19 124/10 124/10 130/9 130/14 131/5 131/19 132/18 154/23 162/24 164/18 176/16 178/22
interested [2]  6/11 20/13
interesting [1] 29/15
interests [10]  25/16 25/18 93/18 93/19 100/23 102/16 102/18 103/23 154/2 161/15
interject [1]  103/25
interpret [2] 158/23 158/24
interpretation [6] 41/9 53/19 60/10 77/22 84/5 128/24
interpretations [1] 19/19
interpreted [1] 97/2
interpreters [1] 32/15

interrogatory [1] 133/4
intervene [26]  20/9 25/5 25/19 31/3 39/22 57/1 59/4 59/18 92/8 103/16 123/22 125/3 135/14 140/15 141/4 141/10 141/12 141/21 142/9 143/7 143/7 163/4 163/20 172/12 173/17 177/25
intervened [6] 41/19 58/23 58/25 124/13 136/1 173/4
intervenes [5]  31/4 43/6 55/15 123/21 135/22
intervening [2] 25/23 62/22
intervention [6] 27/23 38/16 62/20 90/3 90/7 92/12
invariably [1] 131/7
invasion [1]  82/17
invasion of [1] 82/17
invested [1]  111/5
investigate [6]

# I

investigate... [6]
62/15 62/23 64/9
70/19 70/20 105/8
investigating [6]
62/5 62/10 62/11
105/11 139/4
174/23
investigation [6]
62/1 62/7 105/15
106/4 140/6 152/5
investigations [5]
62/12 62/12 63/3
63/13 64/10
investigative [2]
108/17 162/5
investigatory [2]
105/18 105/20
invitation [1]
179/12
invoke [4]  61/7
87/23 89/16 89/17
invoked [3]  86/24
89/9 125/15
involved [5]  26/17
27/4 65/4 143/16
177/2
involvement [2]
104/17 152/3
involving [1]  100/9
is [734]
Island [1]  147/5

isn't [19]  12/11
19/6 22/1 37/7
46/16 55/1 55/7
56/3 64/21 65/8
65/17 69/7 104/23
108/22 125/2
127/10 131/3
164/15 166/10
issue [38]  26/5
30/21 36/19 40/24
54/13 58/4 59/22
61/21 63/5 63/9
64/5 67/10 68/15
73/14 81/24 83/4
90/13 94/13 97/10
97/13 97/20 97/21
97/23 98/5 105/23
106/3 115/18 117/7
120/16 123/7
124/23 144/1
150/23 154/22
156/7 164/5 164/20
165/9
issues [15]  5/7 28/9
29/1 40/10 53/14
53/22 54/1 54/17
61/15 82/19 94/2
103/9 104/12
143/23 152/8
it [479]
it's [239]
iteration [1]  159/5

its [30]  8/12 14/10
23/2 42/21 59/14
63/6 73/13 88/9
89/22 116/8 119/17
132/2 139/9 142/24
144/23 152/7 155/2
172/5 173/14
178/21
itself [7]  42/17
68/16 88/9 102/23
115/20 172/16
172/17

# J

Jason [1]  6/21
JENNIFER [3]  2/5
4/9 53/5
jeopardy [6]
155/17 155/19
155/25 156/2 156/9
156/16
JILLIAN [1]  2/2
job [2]  41/2 115/17
joinder [1]  41/13
joined [1]  156/15
Jones [3]  2/18
180/4 180/11
Joseph [1]  6/22
judge [4]  1/17
38/19 132/23
159/18
judgment [21]
14/10 21/20 27/2

# J

**judgment... [18]**
33/14 59/5 59/6
59/7 67/23 89/14
92/8 96/24 97/1
97/2 113/21 154/13
154/16 155/23
162/4 164/25
171/13 175/4
**judgments [3]** 38/3
38/8 153/19
**judicata [8]** 14/9
41/15 58/22 59/22
136/9 153/16
154/10 155/6
**judicial [5]** 128/4
149/8 153/21
154/10 180/8
**Judiciary [1]** 32/18
**Jullian [1]** 4/8
**juncture [1]** 97/3
**jurisdiction [15]**
32/17 81/18 87/23
97/24 97/25 98/5
98/6 98/10 98/11
98/13 98/16 164/5
164/9 164/10
164/20
**jurisdictional [2]**
97/20 98/3
**jury [6]** 50/1 60/25
63/8 63/13 87/19

**just [110]** 8/14 12/5
15/13 16/6 17/15
18/4 18/20 19/9
20/1 21/1 23/9 26/2
26/25 27/7 27/13
32/7 37/7 38/6
39/21 42/13 43/7
43/19 44/16 44/23
47/5 49/10 50/4
51/18 55/17 56/13
57/10 58/6 59/13
62/24 64/7 68/21
71/12 72/3 72/6
75/11 77/21 79/22
80/2 80/12 80/12
86/2 87/11 87/19
88/16 92/23 93/2
94/1 94/23 95/3
95/10 98/22 99/10
100/10 103/11
105/18 107/15
108/14 108/25
109/1 110/18 112/2
113/22 121/24
122/6 123/9 128/1
129/23 131/3 131/8
131/11 131/20
131/24 131/25
132/9 139/12 140/3
140/3 140/20
140/20 140/22

144/22 146/4
148/14 148/20
149/8 152/16 159/6
161/2 162/16
162/20 164/19
165/1 165/5 165/15
167/22 169/20
174/1 174/2 174/11
174/23 175/3
175/20 179/17
**Justice [46]** 2/7
18/13 20/21 22/21
24/9 29/5 31/6
31/18 31/22 32/19
36/15 36/25 37/5
38/4 38/6 39/3 39/4
39/5 39/8 39/20
40/2 42/13 48/5
48/17 49/11 50/16
50/19 52/7 52/14
52/15 52/22 62/5
79/1 79/23 83/14
87/22 91/7 96/5
109/21 116/4 116/8
156/13 156/15
156/16 157/3
177/20
**Justice's [1]** 36/18
**justification [1]**
51/22
**justifies [1]** 171/3

**J**

justify [2]  19/24
 37/3

**K**

Kagan [3]  22/21
 29/5 42/13
KATHRYN [1]
 1/17
Kavanaugh [3]
 39/5 52/7 157/4
Kavanaugh's [1]
 24/9
keep [5]  29/10
 85/21 90/25 148/6
 159/12
keeping [3]  56/19
 59/15 145/22
key [5]  50/13 73/20
 73/20 73/22 74/18
kicked [1]  60/24
kicks [1]  140/3
kill [2]  70/6 141/11
kind [40]  10/20
 11/1 21/15 33/11
 34/4 34/6 37/1
 38/14 43/19 44/22
 52/4 58/8 59/21
 61/12 61/13 61/15
 61/22 64/22 65/23
 70/12 72/3 72/5
 73/4 73/15 75/11

75/11 75/22 78/13
79/22 82/14 86/18
96/5 97/22 103/21
104/16 114/5 114/7
125/13 129/4
176/12
kinds [7]  14/2
 41/23 76/18 85/20
 85/22 118/16
 132/16
KKM [1]  1/5
knew [3]  29/17
 47/9 66/2
know [192]
knowledge [12]
 64/12 64/13 65/1
 100/12 100/14
 100/17 104/1 105/6
 105/12 106/11
 130/19 140/6
known [1]  47/15
knows [1]  47/1
KOH [8]  2/5 3/5
 4/9 4/12 53/3 53/5
 109/20 161/2
Krueger [8]  2/8 3/3
 3/8 4/19 6/12 6/18
 28/2 159/15

**L**

label [1]  16/3
labeled [1]  86/19
lack [7]  11/23

11/24 23/7 39/5 54/13
125/7 139/22
165/13
laid [2]  92/1 110/7
land [2]  68/8
 137/16
language [3]  88/15
 144/13 163/8
larceny [7]  49/8
 80/22 81/17 84/8
 112/6 170/25
 171/10
Lardner [2]  2/9
 6/21
large [5]  21/21 77/3
 77/22 118/17 179/2
largely [2]  17/8
 150/24
larger [1]  115/4
last [18]  7/22 19/17
 28/24 34/10 38/14
 50/22 88/21 94/20
 95/21 99/7 107/10
 118/19 128/13
 170/19 171/18
 174/11 175/9 179/8
latent [1]  38/3
later [3]  33/21
 154/20 163/4
law [50]  5/15 7/8
 8/12 9/7 9/12 12/23
 13/9 15/4 15/5

# L

law... [41] 16/20
17/12 18/10 19/19
23/16 24/12 26/25
27/20 28/20 30/22
34/12 42/6 45/24
46/12 46/22 47/7
64/17 67/22 69/2
98/12 113/3 119/8
144/10 145/10
148/5 148/6 151/17
151/22 151/23
152/1 160/10 161/3
165/6 165/7 166/23
167/9 167/15
167/20 169/7 173/1
176/18
laws [11] 30/4 34/6
37/22 44/16 47/21
50/5 73/15 73/25
146/15 175/24
177/22
lawsuit [5] 13/3
27/19 140/10
160/18 172/7
lawsuits [1] 161/5
lawyer [3] 110/11
136/15 147/15
layer [1] 43/8
layers [1] 25/5
lays [1] 110/1
leads [2] 79/23

leaking [1] 131/1
learn [1] 133/18
leased [1] 44/25
least [7] 12/23 43/1
49/14 76/8 86/19
149/24 153/5
leave [8] 14/11
34/21 92/2 95/7
158/14 159/20
160/1 160/3
leaves [2] 14/14
164/7
leaving [1] 149/25
led [1] 170/9
leeway [1] 91/10
left [3] 26/3 92/23
147/1
legacy [3] 20/1
76/25 86/10
legal [7] 11/2 76/6
76/7 120/5 120/13
159/2 165/9
legislate [2] 176/10
176/14
legislative [3] 19/6
20/3 143/23
lend [1] 166/13
length [1] 77/15
lengthy [2] 174/8
179/10
lenient [1] 174/16

23/21 58/1 58/13
58/13 75/9 75/13
91/5 107/7 109/19
115/9 154/6 156/8
178/13
let [9] 68/14 122/6
125/3 146/18
151/20 154/9
160/23 171/25
174/8
let's [5] 32/5 95/10
99/4 139/16 175/6
level [8] 82/15
99/13 116/4 116/7
146/23 148/17
169/4 169/21
levels [1] 26/23
LEVY [1] 2/2
liberty [1] 177/13
life [4] 108/3
108/25 125/17
139/18
lift [3] 121/6 147/1
179/15
light [8] 5/24 67/22
73/3 89/24 94/14
159/19 163/8 164/7
lightly [1] 149/3
like [149] 5/10 6/1
6/10 6/12 6/13 7/1
10/15 10/16 10/21

# L

like... [140]  11/16
11/16 11/23 14/5
14/15 15/4 16/7
18/7 18/18 18/18
18/19 19/15 20/3
21/21 25/13 30/22
31/11 33/22 36/3
37/7 37/12 38/11
41/11 41/12 42/20
43/8 44/23 48/4
48/22 49/8 50/12
51/18 53/4 55/10
55/11 56/1 56/9
57/12 58/4 58/12
58/13 60/2 60/7
61/5 61/16 62/9
62/25 64/8 64/11
66/9 66/19 69/21
70/1 70/2 70/20
75/6 75/19 77/14
77/21 79/21 82/19
82/22 83/1 83/13
84/10 85/16 87/10
91/6 91/20 91/21
94/1 98/1 103/8
104/11 106/1
110/20 110/25
112/15 114/8
114/13 114/17
116/25 117/15
117/24 118/8
118/11 122/14
122/15 123/4 124/8
125/8 125/11
125/20 129/13
129/22 131/8
131/12 131/24
133/8 138/14
139/17 140/16
142/7 144/3 144/5
145/7 145/13
145/14 147/16
148/18 152/17
153/20 154/23
155/23 157/4 158/8
158/14 160/15
160/16 161/6 162/7
162/7 163/3 164/17
164/19 165/4
165/11 166/6 166/6
166/23 167/11
167/17 167/21
168/2 168/3 168/13
168/14 169/20
169/22 170/25
likely [4]  61/10
146/22 154/17
158/5
likes [1]  59/20
limine [2]  172/21
173/10
limit [2]  174/18
174/19
limitations [2]
54/10 57/3 57/4
57/6 142/5 163/24
172/9
limited [11]  11/9
45/5 62/24 64/15
64/16 104/18 105/6
108/2 111/1 153/10
161/15
limits [2]  65/14
126/21
line [13]  14/14
25/12 39/7 70/4
88/18 108/20
109/11 109/16
109/18 119/2 129/7
161/5 167/1
lineage [1]  72/2
lines [1]  10/15
liquidated [1]  34/4
liquidation [1]
77/11
list [4]  35/7 35/10
95/4 177/5
lists [1]  74/7
literally [1]  56/4
literature [3]  15/22
16/4 17/9
litigant [4]  31/13
153/14 153/25
172/8
litigate [14]  7/16

# L

litigate... [13]  13/5
14/10 14/17 30/3
31/17 40/8 42/21
55/5 60/14 142/24
172/25 175/10
176/20
litigated [2]  167/9
174/25
litigating [10]
52/21 70/7 110/11
110/16 132/11
147/21 168/5 172/7
172/15 173/21
litigation [48]  2/6
23/2 31/7 51/21
56/8 56/16 63/7
81/3 85/5 92/5
94/16 96/10 99/1
99/16 101/2 102/21
102/22 122/2
125/18 130/10
130/14 130/14
130/21 131/2 131/4
131/6 131/9 131/19
132/17 132/17
136/8 138/13
139/18 140/1
140/25 141/4
144/18 145/7
166/25 167/1
167/10 167/17

176/11 176/22
177/21 177/23
litigations [2]  59/15
80/17
litigator [1]  37/2
little [16]  20/17
23/13 36/5 64/23
82/18 95/24 100/7
108/7 123/7 136/14
143/13 146/24
151/16 151/20
153/5 155/11
live [2]  100/20
106/15
lives [1]  104/21
living [1]  46/7
LLC [4]  1/7 2/3 2/9
2/11
LLP [2]  2/9 2/12
logical [2]  131/12
137/16
long [6]  18/23 29/8
71/23 106/15
106/22 170/13
longer [8]  103/23
106/9 106/12
135/15 136/7 157/9
159/16 160/3
longevity [1]
117/25
longstanding [1]

look [47]  15/8 15/9
15/10 15/12 15/16
16/18 18/9 21/9
25/12 44/20 48/4
53/20 59/22 61/1
61/13 61/17 61/17
65/21 65/22 71/2
71/15 72/8 77/15
83/19 83/21 84/13
85/22 86/6 87/9
88/4 88/5 88/6 88/6
88/7 90/12 92/17
93/23 116/14 132/8
132/15 133/21
142/18 146/5 161/1
162/22 168/2
174/22
looked [11]  53/25
54/13 71/13 71/17
71/22 73/24 79/10
89/19 115/24 150/3
150/15
looking [25]  8/18
8/20 16/2 35/12
54/9 56/18 64/23
71/20 72/13 73/25
74/23 75/13 75/15
76/24 86/9 91/4
91/16 91/18 114/18
116/10 116/20
120/21 133/4 150/8

# L

**looking...** [1]  165/7
**looks** [4]  17/20
 75/19 80/1 159/5
**loom** [1]  143/21
**lose** [1]  78/19
**lot** [30]  13/8 49/6
 49/7 49/17 55/13
 56/21 73/1 77/18
 77/24 87/18 89/25
 103/9 107/25
 108/15 111/4
 113/22 114/14
 114/16 118/13
 120/4 130/25
 132/13 144/23
 148/17 149/15
 153/7 160/7 162/17
 169/5 169/9
**lots** [2]  132/17
 170/8
**love** [3]  133/14
 139/11 139/12
**lovely** [1]  147/12
**low** [2]  57/5 58/7
**lower** [3]  21/2 43/4
 157/2
**loyalty** [1]  133/2
**Lucia** [5]  8/16 29/6
 34/12 43/16 151/24
**Lujan** [2]  37/13
 37/18

**lump** [1]  75/22
**lumped** [1]  76/23
**lumps** [2]  15/22
 76/16

# M

**ma'am** [1]  178/6
**machinery** [1]
 108/11
**made** [5]  29/11
 33/13 51/7 94/17
 158/20
**Madison** [2]  32/20
 73/17
**mail** [1]  87/11
**main** [2]  6/1 78/18
**maintain** [1]  129/9
**maintained** [1]
 99/16
**maintains** [2]  91/13
 132/2
**major** [2]  27/16
 27/16
**majority** [3]  38/5
 86/7 175/7
**make** [26]  26/9
 30/13 32/22 38/7
 39/16 39/19 45/1
 50/5 50/18 51/1
 52/4 62/20 65/2
 72/3 98/9 119/14
 127/25 137/10
 139/21 139/21

 139/21 142/11
 154/20 159/23
 175/21 178/25
**makes** [11]  10/3
 23/18 25/15 25/22
 26/25 61/4 106/7
 107/1 107/5 126/25
 152/23
**making** [14]  19/19
 24/25 37/24 39/9
 81/25 88/8 88/9
 105/21 112/14
 130/15 141/17
 141/17 143/7
 177/16
**malpractice** [1]
 46/1
**mandate** [5]  63/22
 64/21 65/8 65/11
 174/20
**mandatory** [1]
 179/12
**manner** [3]  19/13
 143/9 171/5
**many** [22]  9/23
 17/19 26/16 26/19
 49/7 50/7 53/14
 60/23 61/2 61/5
 94/2 95/3 95/3
 114/15 121/11
 137/14 137/18
 137/18 137/18

# M

**many... [3]** 145/18 146/8 146/22
**Marbury [2]** 32/20 73/17
**March [2]** 146/10 146/11
**marry [2]** 81/15 83/24
**Marsh [7]** 18/19 18/22 20/3 33/7 33/15 114/19 170/13
**Marshall [1]** 32/19
**massive [1]** 28/22
**match [3]** 75/18 86/10 116/5
**matches [1]** 76/5
**materially [1]** 133/20
**materials [1]** 81/19
**matriculation [1]** 38/24
**matter [24]** 10/25 11/7 39/21 43/12 43/19 64/11 77/22 97/23 97/25 98/2 98/6 98/9 98/16 118/9 128/23 134/5 147/14 164/5 164/9 164/10 164/20 166/14 177/9 180/7

**matters [7]** 33/23 85/24 120/9 129/1 133/13 147/17 148/1
**Matthew [3]** 2/8 4/19 6/18
**may [35]** 6/17 23/21 27/25 36/20 37/9 42/12 45/9 53/5 61/6 66/15 78/13 87/9 88/3 88/5 88/6 88/6 88/7 92/20 106/1 111/10 131/4 139/9 139/22 140/3 156/6 157/19 157/20 158/6 158/11 161/8 163/23 170/23 174/12 175/16 178/7
**maybe [19]** 36/14 43/18 43/19 43/23 43/25 60/6 60/7 60/10 60/11 60/12 71/1 96/6 106/12 107/22 112/4 117/3 132/16 150/6 179/12
**Mayden [1]** 6/21
**me [51]** 5/11 6/20 10/7 10/13 14/11 15/3 23/12 24/5

26/5 35/9 35/14 37/7 38/22 42/24 48/1 51/9 66/5 66/19 66/19 71/2 73/22 74/8 74/23 74/25 83/10 90/1 97/12 97/20 99/9 102/17 104/17 107/22 110/11 110/22 114/7 117/14 122/6 126/7 144/9 145/2 146/18 147/9 151/20 154/9 156/10 156/10 160/24 162/13 171/25 174/8 178/19
**mean [70]** 10/13 10/20 15/6 17/4 18/11 28/17 29/4 30/16 32/11 35/4 35/22 36/3 37/10 40/23 41/24 42/1 42/3 42/4 42/8 42/13 42/13 42/17 43/15 44/17 44/24 45/1 45/7 45/21 46/15 49/6 49/10 50/6 55/14 55/16 55/21 56/4 56/24 59/6 60/4 66/6 66/18 72/15 72/25

# M

**mean... [27]** 73/18 86/24 90/1 93/9 94/7 96/17 98/20 100/10 100/10 103/8 106/12 113/23 116/2 117/24 118/11 118/17 119/19 121/6 121/8 144/3 145/13 151/3 151/20 158/20 167/17 173/8 176/6

**meaning [2]** 34/4 60/8

**meaningful [1]** 119/8

**meaningfully [1]** 119/7

**means [5]** 11/4 34/25 142/25 171/13 173/10

**meant [2]** 36/1 124/19

**mechanism [4]** 27/21 143/14 150/18 150/19

**mechanisms [9]** 56/18 56/22 59/10 65/12 68/17 80/13 81/24 82/13 131/8

**medical [5]** 1/7 2/9

**Medicare [3]** 137/7 137/8 137/8

**meet [6]** 10/10 54/22 69/6 90/15 100/4 100/11

**meets [2]** 9/8 123/7

**memo [10]** 17/18 36/7 74/3 120/7 120/8 120/14 120/19 120/23 120/24 169/7

**men [1]** 146/14

**mention [1]** 97/22

**mentioned [3]** 36/6 134/21 136/23

**mentions [1]** 48/17

**mercenary [1]** 143/8

**mere [2]** 13/15 146/12

**Meridian [1]** 44/24

**merits [8]** 162/25 173/19 177/3 177/20 178/17 178/20 178/23 178/24

**messy [1]** 9/12

**met [3]** 8/13 10/1 56/20

**metrics [1]** 20/11

**mid [1]** 20/1

180/2 180/5 180/12

**midst [1]** 98/22

**might [24]** 11/25 19/8 32/9 70/25 82/19 85/3 87/9 103/3 103/6 103/7 105/15 107/12 113/16 117/11 118/22 119/13 125/15 128/23 142/6 145/25 152/17 154/2 164/17 166/12

**military [3]** 101/4 101/6 111/22

**Milwaukee [1]** 2/10

**mind [4]** 29/10 48/15 67/3 116/2

**mindful [1]** 95/17

**minimal [1]** 152/25

**minute [4]** 95/10 178/7 178/10 178/13

**minutes [5]** 7/1 28/1 159/16 175/18 175/18

**MISCELLANEOUS [1]** 1/16

**mismatch [1]** 69/25

**missed [1]** 84/3

**missing [1]** 149/24

## M

mission [5]  29/24 29/25 63/18 63/19 136/22
mission-critical [1] 136/22
missions [1]  61/23
misused [1]  100/15
mixed [1]  165/6
MIZELLE [1]  1/17
modern [7]  18/20 19/10 19/12 137/15 137/17 150/22 158/17
moment [8]  132/6 141/7 141/8 141/16 141/21 143/4 171/25 173/22
monetary [3]  12/8 21/20 175/5
money [4]  22/1 58/4 87/17 137/11
monitoring [1] 59/14
monitory [1]  22/3
monolith [1]  65/24
monolithic [1] 64/24
months [2]  95/5 152/11
more [46]  5/6 6/10 9/20 10/19 11/15

20/13 24/18 58/13 62/1 63/16 64/1 73/2 77/5 78/16 87/16 89/25 94/14 94/17 102/4 109/15 113/22 115/18 116/8 116/9 117/14 118/8 118/10 119/3 119/5 120/25 146/25 149/5 150/21 151/7 154/15 158/11 160/19 161/11 161/18 167/11 168/14 172/23 174/16 175/18 179/10 179/16
Morgan [1]  2/3
morning [1]  4/7
Morrison [19]  8/10 9/4 11/16 12/4 27/12 29/16 49/15 50/22 61/16 105/3 105/3 109/12 109/13 109/17 128/6 166/6 174/14 174/15 174/21
most [11]  33/3 33/23 61/10 71/13 83/25 84/6 107/23 131/21 141/3 145/20 174/13

mostly [2]  59/4 62/2
motion [18]  6/4 7/5 22/25 23/3 37/20 38/23 42/22 59/24 94/22 96/25 97/1 98/24 132/4 156/12 165/16 165/17 172/21 173/10
motions [7]  97/4 97/7 97/8 97/9 98/20 98/22 165/17
motivated [1]  41/4
motivating [1] 131/19
motive [1]  12/10
motives [1]  103/7
movant's [1]  25/18
move [10]  20/5 43/8 68/14 78/24 90/24 91/15 93/12 122/2 132/1 141/11
moved [1]  124/14
mover [1]  52/3
moves [1]  91/22
moving [1]  57/24
MR [5]  3/3 3/4 3/7 3/8 3/9
Mr. [11]  6/12 28/2 28/4 53/1 120/4 129/20 159/15 160/21 162/13

# M

Mr.... [2] 170/23 175/19
Mr. Engel [4] 28/4 53/1 120/4 170/23
Mr. Krueger [3] 6/12 28/2 159/15
Mr. Singh [3] 129/20 162/13 175/19
Mr. Singh's [1] 160/21
MS [3] 3/5 3/6 3/10
Ms. [18] 4/12 6/8 12/3 31/11 53/3 53/3 94/21 95/7 95/14 104/6 109/20 130/24 131/25 136/15 136/23 160/17 161/2 173/25
Ms. Estes [5] 53/3 95/14 130/24 136/23 173/25
Ms. Estes's [3] 131/25 136/15 160/17
Ms. Koh [4] 4/12 53/3 109/20 161/2
Ms. Zafirov [3] 12/3 31/11 104/6
Ms. Zafirov's [3]

much [33] 8/18 11/15 15/21 15/21 16/4 19/7 20/12 28/3 31/23 43/13 49/10 106/9 113/13 115/18 117/24 118/1 118/10 133/23 138/11 149/1 150/1 150/10 150/25 159/16 160/3 161/13 161/14 161/23 170/24 178/4 179/10 179/15 179/16
muddy [2] 35/6 36/4
Mueller [1] 29/22
multiple [4] 64/9 64/10 80/15 105/16
mushed [1] 153/5
Music [1] 140/16
must [6] 12/16 29/7 31/25 37/14 150/25 151/12
muster [1] 18/21
my [48] 4/7 6/14 12/19 12/20 14/19 14/24 17/12 20/5 28/10 33/8 45/3 46/1 46/2 46/3 53/9

55/11 65/9 67/3 67/13 75/4 76/17 78/13 85/11 87/23 94/20 94/24 95/4 96/23 104/1 126/17 129/13 130/8 134/6 134/20 140/16 146/17 146/17 150/11 153/23 155/13 156/19 159/23 166/21 170/23 171/12 173/10 173/22 179/15
myself [1] 83/13

# N

name [6] 4/7 63/25 110/16 123/24 171/8 171/9
narrow [1] 160/19
narrower [1] 152/3
national [5] 99/18 100/5 104/7 137/1 145/3
nationals [2] 94/7 99/9
nature [5] 67/24 89/17 90/2 123/21 155/18
nearly [1] 161/9
necessarily [13] 9/2 9/9 15/20 17/4

# N

**necessarily...** [9] 22/23 24/14 25/24 55/24 105/24 113/20 114/2 134/8 158/12

**necessary** [6] 109/4 111/21 112/9 112/14 112/16 157/24

**need** [31] 9/2 11/17 14/5 15/10 15/12 15/16 18/9 26/6 26/15 27/10 27/13 27/21 39/11 59/21 67/11 67/18 69/5 69/5 80/1 97/16 97/18 98/5 105/25 140/7 141/15 143/14 151/16 155/5 169/2 171/4 171/20

**needed** [2] 26/23 73/4

**needing** [2] 8/12 9/9

**needs** [8] 18/1 57/15 92/20 102/4 115/7 115/18 159/2 160/2

**neither** [2] 17/14 110/22

**never** [11] 22/22 33/6 96/8 108/18 108/19 109/4 111/4 119/2 123/23 123/24 130/19

**nevertheless** [1] 101/17

**new** [7] 32/15 33/2 48/17 48/19 73/17 96/3 97/11

**next** [2] 4/11 126/17

**nie** [1] 72/10

**night** [1] 19/10

**Nixon** [4] 8/11 29/18 49/15 168/2

**no** [100] 1/5 7/21 7/21 11/14 12/19 13/5 13/15 14/9 14/16 17/1 19/2 20/25 21/14 21/14 21/15 21/20 24/4 30/16 32/24 32/24 34/25 37/15 38/6 41/8 42/19 43/10 43/12 44/3 46/20 47/10 47/12 48/24 54/16 63/2 68/7 72/15 75/1 75/7 76/10 76/23 77/21 78/10 78/10 78/10 80/18 87/7 92/9

93/14 100/4 103/23 104/25 106/25 107/6 111/8 112/18 116/17 119/20 127/14 129/15 130/7 131/20 134/18 135/15 135/19 136/7 138/1 139/4 139/5 143/11 144/3 145/22 146/5 148/14 150/19 152/4 152/24 153/13 154/6 157/9 158/25 160/2 160/12 161/1 162/25 163/22 164/11 165/18 165/20 165/25 166/22 169/21 170/18 175/14 177/11 177/20 178/1 178/16 178/20 178/22 179/2

**nobody** [3] 31/12 149/2 170/2

**nobody's** [1] 45/17

**non** [4] 58/23 58/25 143/23 143/25

**non-delegation** [2] 143/23 143/25

**non-intervened** [2]

# N

non-intervened...
[2]  58/23 58/25
noncitizens [2]  94/7
99/8
none [3]  67/3
107/15 138/17
nonparty [1]  59/2
nonspecific [1]
21/20
normal [1]  136/10
Normally [1]
159/22
not [324]
note [6]  56/9 72/3
72/6 89/15 95/1
130/24
noted [1]  95/2
notes [2]  173/22
180/6
nothing [12]  20/2
43/2 62/14 92/7
96/2 97/5 97/11
118/23 118/24
124/10 139/16
179/19
notify [1]  62/22
noting [1]  165/12
novo [1]  43/18
now [35]  4/22 7/15
13/4 13/7 23/21
25/14 27/11 43/7

44/25 67/4 89/23
98/25 104/8 112/7
112/17 114/15
121/10 131/25
135/2 136/11
137/10 137/23
139/16 143/7
148/16 148/20
152/20 154/15
155/12 156/11
157/19 161/19
163/4 166/9 177/25
number [11]  28/7
29/14 30/19 35/10
35/23 37/4 37/6
114/13 154/1
154/13 158/7
numbers [1]  116/2
NW [1]  2/13
NW,Suite [1]  2/16

# O

oath [9]  109/20
132/21 132/23
132/24 133/2
133/12 133/13
133/23 134/7
objection [4]  57/2
57/9 59/19 94/22
obligation [6]  98/1
101/25 102/8
102/12 102/15
152/15

obligations [1]
139/8
observed [1]  15/21
observes [1]  24/11
obtain [1]  13/23
obviates [1]  155/5
obvious [3]  26/16
82/11 136/24
obviously [16]  5/10
5/19 12/9 28/12
28/25 29/14 30/17
39/8 51/9 52/18
57/25 63/8 74/17
89/1 128/4 142/1
occasion [1]  125/15
occasions [2]  125/9
125/19
occupies [2]  31/8
134/22
occurred [1]  25/10
odds [1]  54/7
off [4]  10/18 44/21
53/13 56/24
offending [1]  40/17
offends [1]  28/13
offensive [2]  131/21
132/12
offered [1]  178/8
offers [2]  23/1
42/19
offhand [1]  9/22
office [15]  11/21

Case 3:19-cv-01236-KKM-SPF   Document 64-5   Filed 09/30/24   Page 248 of 295 PageID 6344

office... [14]  12/2
30/14 30/18 30/24
36/19 70/10 70/12
110/22 120/5
120/13 120/23
151/22 152/5 166/3
officer [55]  7/20
8/17 9/21 10/11
11/12 11/14 29/7
29/10 29/13 29/18
29/21 29/23 30/1
30/17 31/5 31/6
66/7 67/8 67/15
67/18 69/13 69/23
80/1 83/2 83/12
83/14 107/1 107/2
107/5 107/5 107/16
107/24 108/15
108/24 109/8
110/19 132/21
133/1 136/18
139/16 143/2 145/8
147/21 147/23
151/21 160/11
161/3 161/4 166/4
166/13 166/15
168/7 168/17
173/20 174/15
officers [20]  29/12
48/25 54/3 54/4
54/8 54/14 61/18

108/25 111/1
111/18 111/23
138/20 151/2
151/12 151/15
165/23 165/25
Offices [1]  87/24
official [4]  54/11
120/10 180/4
180/11
offs [1]  94/4
often [4]  125/25
139/11 143/25
147/15
oftentimes [2]
53/18 61/6
Oh [5]  85/1 107/3
126/7 140/20 146/5
Ohio [1]  2/4
okay [71]  4/10 4/12
4/15 4/22 5/3 5/4
6/16 7/4 13/7 16/9
18/17 20/4 20/8
25/25 26/21 27/24
28/4 38/12 53/1
53/11 55/10 63/2
67/13 68/21 69/1
70/24 72/14 72/24
73/21 74/6 74/15
78/5 80/20 81/10
83/16 88/21 93/25
94/20 94/25 95/9

104/6 104/11
110/10 112/21
121/2 121/18
126/17 129/12
129/17 129/20
137/21 137/21
137/21 137/22
139/15 140/21
147/7 148/20
159/14 160/2 174/7
177/3 177/7 177/7
177/8 179/7 179/9
179/19
OLC [6]  20/2 36/2
36/6 74/3 120/23
169/7
OLC's [1]  17/18
old [2]  9/13 146/22
older [3]  11/6
148/16 166/12
Olson [2]  49/15
50/22
once [13]  44/24
49/3 62/9 93/6
93/17 115/21 131/6
138/13 140/20
161/10 161/22
162/22 173/3
oncologist [1]  46/1
one [96]  9/22 9/25
10/14 15/9 18/8

# O

one... [91]  20/25
23/25 26/3 26/18
29/24 34/4 34/9
37/4 39/10 39/15
41/9 42/24 43/16
43/25 44/3 44/17
47/8 49/8 51/15
54/17 57/14 61/25
62/13 64/1 65/10
65/12 66/23 66/23
68/10 68/22 69/7
69/11 72/3 74/18
76/5 78/4 78/17
79/7 81/15 83/8
83/19 83/19 84/13
84/13 86/11 86/17
86/17 87/21 93/22
94/4 95/21 99/7
101/10 105/6
107/13 110/22
111/1 119/12
126/22 130/6
131/18 132/4
132/19 141/6 143/3
143/21 144/7
145/22 146/19
146/23 147/4
147/10 147/21
149/18 149/21
152/16 152/17
152/17 156/9

156/23 158/14
158/16 166/18
167/3 167/4 169/22
170/14 176/2 178/7
178/10 178/12
one-case [1]  111/1
one-offs [1]  94/4
ones [14]  5/20
12/22 17/21 17/22
27/22 65/19 105/1
117/14 117/19
118/8 146/4 146/6
154/23 169/8
ongoing [1]  141/14
only [30]  7/16 13/4
15/23 21/4 24/15
24/23 25/17 26/3
31/18 32/2 32/2
40/25 42/1 48/25
49/21 89/17 105/6
106/11 140/12
141/5 142/15 147/8
161/12 161/15
161/23 174/2
174/22 176/24
178/12 179/7
open [2]  95/13
166/2
opening [2]  164/4
171/5
operate [1]  31/14
operates [1]  145/7

operating [4]  24/23
42/2 54/23 145/5
operation [1]  46/11
opine [2]  26/6
90/22
opinion [7]  36/2
52/9 79/12 120/5
156/24 157/4 169/7
opinions [6]  29/15
73/2 73/6 73/18
74/9 118/10
opportunities [1]
97/14
opportunity [7]
96/19 96/19 98/21
98/23 117/12 125/1
127/11
opposed [6]  7/10
150/1 152/13
157/17 163/24
163/25
opposing [5]  109/5
168/21 169/25
171/12 172/21
opposite [4]  129/8
171/14 173/14
177/19
opposition [4]  20/2
25/22 26/14 165/14
option [1]  138/25
options [1]  142/10
oral [3]  4/3 13/19

# O

oral... [1]  174/9
oranges [3]  108/7
 117/4 168/20
ordeal [1]  138/9
order [4]  4/2 6/5
 88/13 163/19
orders [4]  93/17
 103/8 130/23 131/8
original [2]  19/16
 118/5
originalism [1]
 149/9
originally [1]  98/21
other [79]  6/2 10/23
 11/14 11/23 13/6
 15/22 16/13 17/11
 18/14 21/7 21/19
 21/22 23/25 26/11
 26/16 26/19 26/23
 27/7 30/12 30/20
 30/25 31/8 31/14
 40/1 45/4 49/5
 53/21 62/25 64/2
 64/5 66/8 69/21
 73/23 74/8 74/10
 77/8 79/14 88/22
 94/4 104/12 109/18
 110/10 110/23
 114/1 117/19
 118/25 125/8 127/2
 127/9 129/11

 130/23 131/1 131/8
 131/9 132/16
 134/23 137/21
 138/10 145/15
 145/17 153/15
 154/1 155/13 156/6
 157/7 157/10
 157/20 158/16
 162/12 165/13
 165/21 169/8
 172/25 174/2 174/2
 175/12 176/3
 176/24 176/24
others [2]  170/2
 177/10
otherwise [5]  11/12
 90/9 100/11 121/12
 161/24
ought [2]  143/21
 152/21
our [22]  15/17
 15/18 17/22 34/6
 35/10 35/12 35/13
 78/2 78/19 89/2
 94/10 95/18 99/3
 123/23 127/6 129/7
 137/20 143/21
 158/16 164/10
 169/6 179/7
out [78]  5/17 9/3
 14/3 16/10 17/7
 22/22 29/7 32/6

 32/6 33/8 35/20
 38/6 39/12 47/1
 48/12 59/15 64/24
 65/18 65/22 65/24
 67/13 69/23 72/22
 73/2 76/20 78/21
 79/18 87/17 87/17
 90/17 92/1 92/21
 102/4 103/10 104/2
 105/25 110/1 110/7
 111/20 115/18
 115/23 116/3
 117/19 121/1
 127/19 129/23
 131/1 131/3 131/7
 138/4 138/12
 138/12 139/23
 143/15 144/23
 149/25 152/8 155/4
 156/10 156/20
 159/6 159/19
 160/19 160/24
 162/17 164/19
 164/23 165/23
 166/10 167/10
 168/25 170/23
 170/25 172/3 173/6
 174/20 175/7
 177/10
outcome [8]  88/3
 118/22 121/9
 121/17 123/13

# O

outcome... [3] 128/25 133/20 136/9
outcomes [1] 54/6
outer [3] 27/12 174/18 174/19
outgrowth [1] 157/24
outmanned [3] 115/11 115/12 115/21
outsourcing [5] 44/14 45/22 47/5 175/22 176/20
outweigh [3] 23/2 42/21 57/19
outweighed [1] 90/15
over [31] 6/8 8/18 9/7 19/17 31/5 31/19 50/22 56/18 57/1 57/8 59/19 61/2 79/4 79/17 82/14 83/17 89/25 91/4 91/6 91/16 107/10 114/12 129/6 132/2 141/10 141/20 151/1 157/14 158/13 162/19 175/9
overcome [1]

overcomes [1] 73/5
overlap [1] 87/9
overnight [1] 59/14
overread [1] 156/23
overruling [1] 127/16
oversee [1] 100/22
overseeing [3] 58/21 99/16 102/23
oversight [10] 63/18 110/2 112/24 119/1 122/2 122/25 133/4 137/13 141/14 178/24
oversights [1] 131/17
overstate [1] 91/11
overstepping [1] 129/7
own [28] 14/8 14/17 14/19 17/12 25/1 28/10 38/7 40/8 41/8 52/6 56/2 58/14 63/6 63/13 91/3 126/16 129/3 129/6 134/18 135/9 136/2 138/17 139/19 140/8 152/14 155/2 161/15 175/3

ox [2] 25/ 143/20 143/21

# P

p.m [1] 1/6
page [2] 3/2 180/7
Pages [1] 180/7
paid [2] 109/21 152/12
paper [1] 35/21
papers [1] 16/22
paradigm [1] 76/20
parallel [4] 62/12 63/3 66/15 134/20
Parliament [1] 48/20
parliamentary [2] 17/5 18/19
parse [1] 136/25
parsed [2] 14/1 78/7
parsing [4] 71/3 75/10 114/8 118/16
part [38] 8/5 21/17 26/25 27/1 34/5 37/18 39/5 39/25 40/1 41/18 43/25 50/15 54/18 56/14 64/6 78/1 84/1 89/18 94/10 103/17 113/17 120/1 120/1 121/4 121/15 121/16 122/11

**P**

part... [11] 122/20 128/13 130/12 137/7 152/17 160/18 166/4 166/15 168/1 168/12 174/1
Part C [1] 137/7
partial [44] 5/22 20/6 20/14 20/16 22/18 24/2 24/20 25/1 27/4 38/17 39/13 39/15 39/19 39/25 40/1 40/3 40/10 42/2 43/5 48/11 50/14 54/5 56/9 56/13 82/5 82/8 88/23 92/10 93/13 106/21 112/1 116/19 121/19 121/21 121/25 122/11 122/15 123/17 123/20 123/22 124/3 124/8 125/11 164/7
participate [5] 63/6 99/25 126/10 135/16 135/20
participation [1] 163/6
particular [31] 5/4 6/10 9/7 9/15 11/18 43/6 44/17 44/18 44/19 45/17 47/14 55/5 62/1 66/2 70/10 103/15 105/15 131/11 147/10 157/10 161/17 161/22 165/12 166/10 167/8 175/25 176/1 178/15
particularly [13] 9/12 15/12 19/5 21/25 27/14 34/10 41/18 47/17 103/12 103/14 146/13 165/20 169/15
parties [22] 5/7 6/5 13/17 37/9 37/23 37/25 47/7 55/4 80/18 97/12 98/13 101/15 128/8 130/22 131/4 137/19 143/15 144/24 152/9 157/17 158/13 165/2
partly [1] 23/18
Partners [3] 2/10 4/19 6/19
partnership [1] 139/12
partnerships [1] 139/12
parts [2] 39/14 118/23
party [26] 7/17 7/18 13/4 24/4 41/12 43/2 55/17 66/14 80/16 80/21 94/16 101/2 101/20 103/21 131/6 135/3 135/17 136/11 141/5 162/24 163/5 172/19 174/2 174/2 177/21 179/13
pass [2] 84/24 85/1
passage [1] 118/24
passed [13] 14/21 18/5 34/20 46/20 76/9 81/16 81/19 85/8 86/7 96/25 97/8 114/20 150/2
passes [1] 46/5
passing [3] 18/21 81/22 97/22
past [6] 7/16 7/23 48/4 96/18 96/19 116/1
patent [1] 177/9
patient [1] 173/23
pay [1] 139/2
payment [1] 113/22
PCAOB [1] 177/8

# P

pedigree [3]  13/11
 78/7 78/16
peg [2]  54/20
 104/16
peg/round [1]
 104/16
pen [1]  35/21
penal [2]  8/9 22/5
penalties [5]  22/3
 86/22 87/9 88/3
 175/6
penalty [2]  13/23
 114/3
pending [2]  95/2
 176/11
pension [1]  32/22
people [22]  7/9
 13/17 33/3 50/7
 51/21 110/1 110/14
 111/22 116/9
 116/15 133/13
 133/14 147/19
 152/11 158/21
 167/19 167/19
 170/4 175/9 177/13
 177/14 177/17
per [1]  130/14
perceived [1]
 119/13
percent [6]  9/24
 38/9 40/5 40/6 40/9

percentage [1]
 121/23
perception [1]
 179/1
perfect [4]  32/15
 75/18 76/5 86/10
perfectly [1]  144/3
performed [1]
 137/18
performing [2]
 136/22 137/23
perhaps [7]  35/1
 110/24 111/10
 145/17 160/24
 168/25 179/16
period [5]  9/8 11/21
 39/23 72/1 80/12
permit [1]  159/11
permitted [4]  56/7
 75/22 91/3 91/14
permitting [1]
 49/12
perpetrated [1]
 86/21
person [39]  9/21
 13/21 15/24 21/20
 40/16 44/19 45/9
 46/7 47/1 47/4
 65/17 70/7 70/10
 75/7 82/10 86/1
 86/2 94/6 99/10

99/24 99/17 100/3
 100/8 108/3 109/15
 112/1 112/22
 116/17 126/3 130/8
 134/16 141/5
 147/15 147/20
 168/18 172/6
 172/14 173/14
 176/2
person's [1]  100/24
personal [13]  15/20
 16/1 31/1 45/8 54/6
 55/23 56/2 64/13
 65/1 66/19 150/19
 176/2 176/15
personally [2]
 117/16 138/18
persons [5]  33/12
 94/12 130/6 159/11
 176/20
perspective [2]  5/8
 143/17
pertinent [3]  16/13
 53/17 169/16
ph [9]  6/21 6/22
 8/16 66/9 71/5
 79/12 117/24 126/1
 165/11
phase [1]  97/9
phrased [1]  151/24
phrasing [2]  144/19
 144/20

physician [4] 2/10
4/19 6/19 161/17
physicians [1]
161/20
pick [2] 135/4
160/6
picked [1] 167/8
piece [5] 69/14
136/12 136/12
145/22 152/21
pieces [1] 151/21
place [18] 17/10
37/14 56/18 56/22
59/11 65/12 80/11
80/12 80/13 81/24
84/14 100/22
101/18 104/4 127/8
133/21 172/5
173/14
placed [1] 146/13
places [3] 18/14
81/17 110/13
plain [1] 60/8
plainly [1] 31/20
plaintiff [7] 1/4 4/5
24/12 30/12 145/21
150/19 153/15
plaintiffs [2] 75/3
130/21
plan [2] 6/7 42/8
planned [1] 6/13

137/10
play [4] 59/11
104/2 137/4 149/10
playing [3] 116/7
139/19 152/18
plays [1] 92/21
pleaded [1] 165/10
pleadings [4] 96/19
97/1 103/17 178/21
please [5] 6/17 26/5
53/5 129/14 140/20
pleasure [1] 129/22
plenty [1] 97/15
PLLC [1] 2/15
plus [3] 61/4 86/22
174/25
point [61] 8/23
10/13 16/13 18/24
59/10 60/24 65/9
71/13 73/23 76/17
78/15 83/17 85/11
86/5 86/18 90/19
90/22 96/10 96/16
96/17 97/24 98/8
103/1 103/20
109/11 112/19
120/19 124/8
124/11 125/21
126/25 132/16
134/6 134/9 139/3
140/10 142/12

151/25 155/13
160/17 160/24
161/7 161/9 162/7
162/14 162/17
163/3 163/4 163/18
163/21 168/23
170/14 170/14
171/25 173/17
174/11 176/24
178/12 178/15
pointed [11] 11/23
16/10 33/8 162/13
164/23 165/23
168/25 170/23
170/25 172/3
174/20
pointing [1] 178/23
points [4] 5/12
160/6 166/10 169/2
Polansky [44] 5/22
5/25 18/14 20/5
20/8 20/21 21/2
22/14 22/17 22/20
23/25 25/11 25/15
31/24 38/16 39/4
39/22 41/24 42/9
42/12 48/18 50/19
57/4 57/14 58/4
58/6 70/16 89/24
90/3 90/8 90/12
92/7 92/16 92/21

**P**

Polansky... [10]
92/22 96/5 121/18
123/5 151/6 156/23
157/1 163/8 163/9
164/7
policy [2]  38/3
125/7
portion [5]  13/23
73/13 86/3 101/9
159/12
portions [1]  94/15
pose [2]  19/4 101/3
posed [6]  6/25 24/1
42/24 53/12 68/1
95/20
posit [2]  112/7
117/11
position [40]  4/13
21/9 36/7 36/12
36/18 38/6 42/15
49/12 54/15 55/1
55/1 74/15 80/10
86/25 87/5 91/13
92/18 94/11 104/15
104/19 110/2 114/7
120/10 123/14
125/22 131/12
137/20 151/20
162/18 162/25
164/2 173/6 177/3
177/20 178/1

178/16 178/20
178/22 179/2 179/8
positions [5]  110/9
172/21 173/2 173/5
173/9
possible [5]  13/1
41/11 44/19 130/5
131/17
possibly [1]  11/24
post [5]  5/22 20/5
22/14 42/12 121/18
post-Polansky [4]
5/22 20/5 22/14
42/12
potential [5]  21/4
38/2 65/6 88/10
145/25
power [94]  7/7 7/14
8/8 9/20 11/11
16/25 16/25 18/11
18/12 18/16 20/23
31/25 34/15 37/23
41/3 44/4 44/15
50/1 50/6 51/21
52/11 54/23 55/12
61/14 63/14 64/25
65/15 66/6 66/7
67/7 67/11 67/17
67/25 68/3 68/6
68/7 68/9 68/16
78/19 78/20 79/21
81/2 81/7 81/8

99/24 100/2 108/17
108/18 109/8
110/19 110/21
124/19 128/8
128/11 128/16
131/16 132/3
132/13 133/22
135/8 135/11
135/13 136/17
138/21 139/24
139/25 140/1 143/2
143/3 152/7 152/23
153/7 153/12
153/13 153/18
153/23 153/24
154/7 155/15 158/5
158/6 158/8 160/9
162/9 162/11
163/17 165/25
166/8 166/23 167/4
171/19
powerful [1]  79/7
powers [36]  17/6
32/10 50/2 61/23
63/11 65/25 68/19
73/2 88/18 105/19
105/21 109/14
112/16 118/20
119/2 127/2 127/3
127/15 128/1 129/2
144/6 144/8 150/1

# P

powers... [13]
151/12 151/23
153/11 154/6 161/8
161/8 162/5 168/16
169/17 174/17
175/1 177/12 179/4

practical [2] 62/19
137/25

practice [11] 16/16
17/3 17/25 18/15
19/1 34/5 48/19
49/1 125/19 146/12
155/5

Prakash [6] 17/14
35/14 35/22 48/18
169/8 170/2

prayer [3] 18/19
19/6 20/3

pre [7] 30/22 47/10
105/18 122/24
142/1 160/17 161/7

pre-answer [1]
142/1

pre-commencement
[1] 161/7

pre-enterprise [1]
30/22

pre-FCA [1] 47/10

pre-initiation [1]
160/17

pre-investigatory
[1] 105/18

pre-Stevens [1]
122/24

precedent [14] 7/21
8/19 14/5 14/15
32/10 47/25 60/14
94/15 118/12 119/4
119/5 144/13
149/25 150/5

precedents [7] 8/14
18/20 39/7 118/20
134/5 150/22
151/18

preceding [1] 97/3

precipitated [1]
156/12

precisely [1] 146/21

precludes [1] 62/15

preclusion [1]
173/16

preclusive [12]
14/9 55/25 58/23
59/2 135/19 135/25
136/3 154/17
155/23 173/4 173/8
173/19

preexisting [1]
108/10

prefer [3] 6/6 99/6
144/8

preferred [1] 172/5

prefers [1] 172/14

prefiling [2] 105/20

prejudice [9] 70/22
141/23 154/18
154/25 163/22
163/23 165/13
165/20 172/10

premise [3] 23/12
142/18 146/14

prepared [4] 6/24
62/21 78/2 121/5

preparedness [1]
179/11

prescious [1]
151/16

prescribes [1] 69/2

present [3] 12/21
18/16 34/21

presented [1]
127/10

presenting [1]
60/25

presents [2] 23/4
42/22

preserving [1]
125/21

President [11] 7/8
34/15 34/16 37/21
37/21 132/23
132/24 151/1 172/6
177/16 177/23

pressure [1] 5/12

presumably [3]

# P

presumably... [3] 42/3 48/8 141/22

presume [4] 110/14 148/21 148/22 149/2

presumed [1] 108/15

presumption [1] 91/21

pretty [5] 32/12 40/24 50/20 135/18 171/21

prevail [1] 12/9

prevent [3] 34/16 88/9 130/25

previous [2] 129/23 136/13

previously [1] 137/9

prima [3] 31/23 39/9 50/20

primary [6] 7/17 13/5 68/10 77/15 99/23 142/14

principal [1] 40/25

principle [5] 50/9 71/2 159/2 159/6 159/10

principles [1] 171/4

priorities [1] 38/3

priority [1] 38/7

private [54] 7/10 19/18 20/19 21/18 27/21 29/25 37/23 37/25 41/4 41/7 41/21 42/5 47/2 47/7 49/12 50/8 55/4 80/16 80/18 80/21 81/11 82/10 84/19 103/5 109/23 111/25 112/22 117/21 118/6 128/12 128/16 131/13 131/14 133/1 134/23 135/3 137/7 137/19 138/18 139/11 142/23 143/5 144/24 150/19 153/13 153/25 159/11 161/11 161/15 170/19 171/7 171/18 172/25 177/21

pro [1] 139/3

probably [7] 24/4 69/15 85/14 94/17 150/16 153/4 174/16

problem [27] 12/15 19/4 27/16 34/17 40/12 41/16 43/15 47/17 47/19 52/12 52/23 60/22 70/1 79/24 82/21 82/23 82/24 90/20 100/5 104/13 119/22 119/24 122/21 128/17 128/21 168/12 171/25

problematic [4] 23/19 75/6 103/12 103/14

problems [10] 12/22 24/25 43/12 44/2 59/16 82/11 101/3 103/11 118/2 151/9

procedural [1] 55/8

procedures [1] 116/12

proceed [6] 23/11 25/1 25/3 38/9 106/2 135/5

proceeding [1] 66/15

proceedings [6] 1/24 33/12 63/8 95/13 104/2 179/21

proceeds [2] 51/12 86/3

process [2] 104/4 140/4

procuring [1] 125/12

produce [1]  105/15
products [1]  63/20
Professor [4]  17/13
 35/22 48/17 170/2
programs [1]  65/18
project [1]  106/9
promise [1]  178/13
prong [1]  67/20
prongs [1]  153/3
proper [6]  14/6
 52/1 52/1 112/14
 112/16 157/24
properly [2]  31/6
 89/9
property [56]  5/22
 21/5 21/7 21/8
 21/12 21/19 21/22
 21/23 22/2 22/4
 22/6 22/15 23/7
 23/9 23/20 24/3
 25/4 38/18 44/4
 44/5 44/9 44/11
 44/20 44/24 45/2
 45/5 45/5 45/8 46/3
 46/16 47/4 47/4
 47/15 88/22 88/23
 89/1 89/7 89/8
 89/11 89/13 89/14
 92/3 92/10 121/19
 126/16 126/18
 126/18 126/20

157/13 158/10
175/20 176/2
176/14 176/15
proportionally [1]
 114/14
proprietary [6]
 23/15 89/17 89/21
 122/8 122/10
 122/11
prosecute [7]  9/16
 10/9 12/3 80/21
 84/19 87/25 163/25
prosecuting [9]
 11/11 11/15 12/10
 49/21 70/3 100/6
 102/5 160/10 163/2
prosecution [10]
 50/8 81/2 85/4 85/7
 88/17 88/20 112/1
 112/22 168/22
 171/9
prosecutions [5]
 49/13 74/7 83/21
 113/15 146/8
prosecutor [12]
 29/20 30/14 35/15
 35/16 70/5 108/9
 109/12 109/15
 109/16 109/19
 160/25 166/24
prosecutorial [7]

49/16 52/10 162/8
prosecutors [3]
 29/12 109/10 161/5
protect [12]  102/16
 104/4 111/14
 111/17 111/22
 112/9 119/17
 124/19 125/23
 127/3 136/24 138/8
protected [1]
 100/23
protecting [2]
 26/15 144/15
protections [2]
 152/25 152/25
protective [3]  103/8
 130/23 131/7
protects [3]  113/3
 113/4 158/7
prove [3]  73/5
 149/11 170/23
proves [1]  49/10
provide [3]  28/10
 121/13 138/8
provided [2]  55/8
 91/10
providers [1]
 137/11
provides [5]  15/8
 57/3 110/7 135/21
 148/3

# P

providing [1] 139/20

proving [1] 83/17

provision [4] 5/17 20/18 52/20 54/10

provisions [8] 28/13 30/19 37/12 71/25 79/3 146/16 158/9 177/18

public [21] 13/18 21/21 36/8 37/10 41/5 41/8 42/7 50/13 54/8 63/17 66/11 67/3 74/3 74/4 75/4 75/24 124/24 125/7 139/11 144/16 145/21

public-private [1] 139/11

puff [1] 162/19

pull [1] 42/18

pulling [1] 170/10

punitive [5] 67/24 87/2 113/14 155/18 175/5

puppet [1] 103/22

pure [2] 116/24 165/9

purported [1] 116/19

purporting [1] 177/21

purports [1] 40/6

purpose [4] 16/7 127/3 133/12 177/12

purposes [15] 13/19 21/23 26/9 27/1 30/12 51/2 66/4 67/6 75/12 75/15 84/2 113/25 116/12 128/23 133/19

pursuant [1] 180/5

pursue [22] 38/25 41/2 41/7 41/21 45/9 46/12 46/23 47/2 49/1 51/16 51/21 52/5 52/15 60/10 61/8 61/10 62/6 62/14 66/16 80/10 81/23 91/3

pursued [1] 63/1

pursues [1] 51/12

pursuing [12] 7/18 56/15 57/23 58/1 58/10 58/19 60/23 62/6 91/8 123/24 130/3 145/21

purtenances [1] 45/5

purview [1] 111/1

pushing [1] 134/25

put [16] 70/3 71/23 73/19 77/5 77/14 85/25 140/7 142/9 149/10 150/12 151/11 151/14 169/9 170/1 170/4 172/5

puts [3] 115/16 119/9 172/24

putting [4] 35/21 47/15 119/13 139/5

# Q

qualified [1] 27/14

qualify [1] 29/12

quasi [2] 45/10 50/11

question [79] 7/6 8/4 8/15 10/23 12/18 12/19 12/20 15/11 18/3 18/17 20/18 20/22 21/1 21/19 22/13 22/19 23/8 26/3 29/3 36/9 39/12 40/14 40/20 42/24 45/3 50/25 67/1 67/6 67/14 71/1 71/15 72/16 73/8 79/18 83/3 85/16 94/20 95/21 96/23 97/24 98/3 102/1 107/4 107/7

# Q

question... [35]
107/12 111/9
111/24 112/5 112/5
119/18 119/20
121/11 121/18
126/18 128/6 128/7
128/15 130/1 130/2
130/8 130/17 144/6
145/2 148/19 150/4
150/22 151/7
151/11 151/15
151/18 153/2
157/19 164/23
165/7 166/2 168/24
169/1 176/25
179/14

questions [32]  5/19
5/24 6/2 6/14 6/25
7/22 8/3 13/13 20/5
21/3 21/13 23/25
28/8 28/14 28/24
32/4 38/15 39/3
53/10 84/5 88/21
94/4 95/20 99/8
129/24 146/19
150/24 156/14
157/7 157/10
175/13 175/14

Qui [79]  5/17 7/9
13/11 13/14 13/20
14/4 14/16 14/22
14/25 14/5 15/19
16/3 16/4 16/8
16/10 17/11 17/11
18/4 19/3 19/8
19/16 19/18 19/24
26/17 28/19 28/19
28/20 28/23 29/1
31/9 32/7 35/23
39/10 41/18 48/6
48/9 49/12 50/10
50/23 59/15 60/17
71/24 75/5 75/6
75/23 76/18 76/24
78/6 81/15 81/16
82/3 83/20 84/8
86/13 89/25 101/6
101/11 102/10
114/6 115/3 115/15
116/7 116/17
116/23 117/7
118/15 125/18
145/18 145/20
147/10 148/15
155/3 158/9 159/7
169/12 170/6
170/15 177/2
177/18

Qui Tam [47]  14/4
16/8 17/11 17/11
18/4 19/3 19/8
19/16 19/24 28/19
28/19 28/20 28/23
29/1 31/9 39/10
41/18 48/9 49/12
50/10 50/23 59/15
60/17 71/24 75/23
76/24 78/6 81/16
82/3 83/20 84/8
86/13 89/25 101/6
102/10 115/3
115/15 116/7
116/23 117/7
118/15 125/18
145/20 147/10
155/3 159/7 177/2

Qui Tams [10]
16/10 19/18 32/7
48/6 75/5 75/6
81/15 114/6 169/12
170/6

quick [1]  94/1
quickly [2]  49/3
53/10

quite [10]  5/19 64/6
64/6 70/11 114/16
130/16 130/24
152/10 152/24
158/25

# R

Race [1]  79/12
raise [8]  96/20 98/7
98/13 118/1 119/18
120/3 123/8 124/13
raised [10]  38/21

**R**

raised... [9]  43/16 95/7 97/16 97/19 130/1 164/24 165/4 165/5 178/16

raises [2]  7/5 69/11

raising [3]  44/3 128/17 165/3

rare [3]  39/20 125/23 125/24

rather [2]  105/23 117/4

rattled [1]  56/24

RDR [2]  2/18 180/11

reach [1]  35/20

reached [1]  165/12

reactionary [1] 16/20

read [4]  5/10 36/10 134/4 146/10

reading [1]  41/22

readings [1]  127/11

real [10]  13/9 21/24 45/2 45/5 47/4 75/3 77/11 94/1 96/23 163/22

realities [3]  125/18 178/14 179/17

reality [3]  114/20 162/17 162/20

realize [4]  159/16

really [43]  8/6 12/11 18/11 22/4 26/6 34/17 38/23 43/19 55/1 65/14 67/20 68/8 69/16 73/14 78/3 78/11 85/17 106/15 108/2 108/13 109/3 115/22 118/16 118/19 121/6 121/8 124/19 126/24 131/18 132/13 132/14 132/14 136/13 138/20 143/2 148/4 150/8 152/7 153/11 158/13 165/24 167/3 168/19

realm [1]  51/4

reason [13]  24/19 32/2 40/25 72/15 75/16 85/25 124/17 125/4 130/5 134/18 138/1 138/2 156/9

reasonable [5]  23/1 41/22 42/20 98/19 125/8

reasons [9]  11/6 21/24 31/22 34/8 50/18 60/9 152/2 156/6 166/20

reassign [1]  70/4

rebuttal [1]  7/2

received [1]  40/9

receivers [2] 110/25 111/3

receiving [1]  27/1

recent [8]  14/4 73/2 73/6 118/9 119/4 119/5 149/25 151/17

recently [2]  29/16 29/22

recess [1]  95/12

recognition [2] 18/24 19/2

recognized [9]  8/23 10/5 16/17 16/25 29/20 55/3 68/20 109/14 175/23

recognizes [3] 23/14 39/10 40/3

recognizing [1] 9/11

recommend [1]  9/1

recommendation [1]  43/19

recommendations [1]  35/8

recompense [1] 138/9

record [16]  5/16

# R

**record...** [15]  17/10
75/11 114/4 117/6
149/13 150/21
159/7 169/14
169/15 169/21
170/23 171/2
171/11 171/21
175/21
**records** [2]  148/16
152/8
**recover** [3]  117/16
126/12 127/21
**recovered** [1]  86/4
**recovery** [5]  12/11
12/13 22/5 122/8
159/13
**reduce** [1]  163/6
**reduced** [2]  89/14
154/13
**reducing** [1]  163/12
**reevaluating** [1]
167/22
**references** [1]  36/7
**referred** [1]  121/23
**referring** [2]  22/23
84/22
**reflected** [1]  36/19
**reflecting** [1]  37/19
**reflects** [1]  8/5
**refrain** [1]  174/5
**refused** [1]  165/8

**regard** [1]  53/22
**regarded** [1]  130/6
**regardless** [5]
99/17 100/20
100/24 146/7 159/3
**regards** [4]  5/13
14/3 54/15 114/4
**regular** [1]  41/13
**regularly** [1]  170/7
**regulate** [1]  144/4
**regulations** [3]
19/13 62/25 180/8
**regulatory** [6]
19/11 19/12 19/17
19/20 23/16 158/17
**reinforce** [1]  30/19
**reiterate** [1]  104/15
**rejected** [1]  43/21
**relate** [1]  102/12
**related** [6]  31/9
105/12 118/4 135/1
161/20 162/1
**relates** [2]  54/2
72/22
**relation** [1]  142/6
**relations** [1]  60/12
**relationship** [8]
101/14 101/21
111/19 116/20
117/20 124/21
125/12 127/1
**relatively** [3]  16/10

**relator** [161]  2/2
4/8 8/7 11/14 12/2
13/2 13/24 14/16
20/15 21/4 23/4
23/7 23/8 23/10
23/20 24/2 25/16
29/9 30/2 30/13
30/18 30/24 31/1
31/8 31/11 31/16
38/24 39/16 40/3
40/4 40/8 41/20
42/22 51/7 51/8
52/3 52/3 52/20
55/7 55/13 58/18
58/19 59/15 59/20
59/25 60/23 61/14
61/19 62/13 63/24
64/12 65/13 65/15
65/16 65/23 65/24
66/2 68/12 68/14
68/15 68/22 79/5
79/22 80/16 81/12
82/14 83/5 91/10
91/18 92/3 92/24
92/25 92/25 93/4
93/15 94/15 99/25
100/4 100/8 100/18
101/4 101/10
101/15 101/22
101/25 102/4
102/12 103/1

relator... [73]
103/21 103/22
105/5 105/9 105/12
106/10 106/20
106/23 107/16
108/10 108/13
108/18 109/18
122/12 125/22
126/6 126/23 128/9
129/16 130/8
130/13 131/14
131/14 133/7 133/9
134/10 134/14
134/21 135/3
135/16 135/23
139/3 139/14
139/19 139/25
140/6 140/25
141/12 141/18
142/9 142/14 143/8
147/16 147/22
152/4 152/18
152/21 152/23
153/13 153/19
153/24 154/5
154/13 155/14
157/12 161/6
161/10 161/16
162/13 163/5
163/11 163/14
163/16 164/1

172/18 172/20
172/21 173/4
173/18 174/15
174/20
Relator's [22]  8/7
20/14 54/21 57/1
57/21 59/19 60/8
61/2 92/19 93/18
100/1 104/17
126/10 135/8
135/14 136/7
151/20 152/3
153/11 154/24
163/6 173/9
Relators [48]  24/14
27/18 38/10 41/4
54/3 54/13 56/6
56/23 57/7 58/10
61/5 61/8 62/2
63/23 64/2 64/24
65/21 65/22 68/24
69/6 70/11 72/11
78/20 78/22 78/24
80/3 80/10 80/19
81/23 82/15 91/3
91/14 94/8 99/9
106/6 110/8 132/9
137/22 138/11
138/12 138/20
139/10 151/12
152/13 160/18

Relators' [1]  54/15
release [1]  36/1
relevant [16]  17/25
30/25 33/6 33/18
34/7 74/16 74/24
85/24 85/25 85/25
86/7 114/9 114/10
117/14 146/1 153/1
reliance [1]  120/18
relief [2]  155/1
155/4
religious [1]  33/17
rely [5]  61/16 89/20
136/24 136/25
138/6
remain [2]  163/5
172/19
remaining [1]  20/5
remains [3]  5/23
23/8 121/19
remarks [2]  6/13
6/24
remediable [2]
82/22 119/20
remedied [1]  175/4
remedies [3]  82/21
82/22 151/8
remedy [10]  12/15
12/16 12/21 12/22
13/6 82/19 118/7
122/17 123/24

Case 3:19-cv-01236-KKM-SPF    Document 110    Filed 09/30/24    Page 264 of 295 PageID 6360

remedy... [1] 176/22
remind [1]  6/18
removability [1] 70/9
removable [2] 163/16 171/19
removal [25]  8/2 12/22 16/25 16/25 18/11 25/22 27/13 30/20 69/11 69/18 82/23 133/22 134/2 134/3 134/9 134/14 135/8 135/11 135/13 163/16 168/8 170/18 171/24 172/1 172/2
remove [10]  7/19 27/11 30/13 69/13 69/19 69/22 123/1 133/7 133/9 134/10
removed [2]  104/20 153/1
removing [1]  70/10
render [3]  27/8 58/1 77/24
rendering [1] 118/13
renewed [2]  39/5 96/5
repeat [1]  37/6

repeatedly [1] 29/11
replace [3]  7/19 70/6 164/1
replacing [1] 134/16
report [2]  52/14 115/23
reported [1]  1/24
reporter [6]  2/18 3/11 116/21 180/3 180/4 180/11
reporters [1] 116/22
represent [1] 138/12
representing [1] 147/15
Reputational [2] 113/23 113/24
request [1]  103/18
requests [1]  133/5
required [1]  25/17
requirement [2] 10/1 69/12
requirements [2] 8/1 145/15
requires [4]  7/6 22/22 93/14 172/5
res [8]  14/9 41/15 58/22 59/22 136/9 153/16 154/10

res judicata [1] 41/15
research [11]  14/19 14/24 15/17 17/12 17/16 17/23 148/24 149/1 169/5 170/4 170/7
reserve [2]  7/1 27/25
resident [1]  104/8
residing [1]  104/10
resolve [2]  103/25 138/5
resolves [2]  121/11 154/21
resolving [1]  38/22
resources [4]  38/7 58/5 106/5 138/19
respect [9]  29/22 50/11 89/25 99/14 120/12 120/16 131/2 169/24 176/14
respectfully [1] 82/25
respecting [1]  45/4
response [1]  166/16
responsibilities [2] 12/6 32/22
responsibility [6] 13/5 68/11 81/9

**R**

responsibility... [3]
108/23 109/15
142/14
responsible [1]
11/13
rested [1] 118/14
restrictions [3]
30/21 130/23
130/25
result [1] 38/8
resume [1] 95/11
retains [3] 81/9
144/15 155/2
retaliation [1]
138/8
reticulated [1]
52/19
retread [1] 95/19
retreading [1]
131/25
review [6] 17/12
39/23 92/11 92/14
92/15 169/7
reviews [1] 43/17
revision [1] 32/23
reward [1] 145/22
rewrite [1] 12/20
rewritten [1] 26/9
rhetorically [1]
149/24
Rhode [1] 147/4

right [160] 8/22
13/22 16/6 18/8
18/19 20/9 20/19
21/6 21/17 23/24
24/8 24/19 24/25
25/3 25/4 25/9
25/12 26/24 27/3
27/4 31/16 38/25
39/17 40/7 40/13
40/15 41/11 41/16
44/9 44/11 44/20
45/2 45/14 46/8
48/21 52/3 55/11
56/6 56/14 57/10
57/11 59/1 60/5
60/25 61/8 61/24
63/19 63/21 64/16
64/25 65/12 65/16
65/20 65/25 66/14
67/3 67/6 67/18
69/12 70/1 70/5
70/17 70/23 70/23
71/14 71/23 75/18
75/24 76/2 77/12
78/22 80/2 80/17
82/19 82/22 83/14
85/11 85/20 87/10
87/16 89/12 90/12
90/20 91/18 92/6
92/10 93/16 93/19
98/15 110/20 111/1

113/20 113/22
114/11 114/24
117/5 117/13
117/24 119/19
119/21 122/4
122/13 122/14
122/18 124/18
125/2 125/2 126/2
126/4 126/9 126/10
126/13 126/15
126/16 127/8
127/13 130/24
132/7 133/8 133/23
134/1 136/6 136/8
139/24 140/9 141/3
141/13 141/18
142/1 142/4 143/12
144/4 144/9 146/1
147/10 147/12
149/17 151/14
155/2 156/5 157/16
159/3 159/16
160/23 163/9
163/10 163/23
164/6 164/9 166/5
167/17 167/21
167/25 168/15
174/19 176/4 176/8
177/14
rights [11] 19/1
37/8 52/23 55/8

**R**

rights... [7] 55/13 66/11 100/1 119/17 128/8 163/12 172/19
Riley [2] 71/5 71/6
rises [1] 87/12
risk [1] 163/22
risks [3] 172/9 172/10 172/13
RMR [2] 2/18 180/11
road [1] 123/7
robust [3] 118/10 149/13 171/20
role [25] 31/19 55/2 55/7 55/12 55/17 55/18 55/18 56/15 59/14 101/16 101/19 105/5 109/22 121/25 122/1 122/25 127/5 127/6 132/22 137/4 137/23 139/20 149/8 149/10 152/18
roles [2] 61/18 108/9
room [3] 152/1 155/12 171/6
roots [1] 28/23
rotate [1] 33/11
round [2] 54/20 104/16
rub [1] 13/9
rubber [1] 123/6
rule [36] 20/10 22/22 22/23 25/6 25/12 25/13 25/17 29/19 42/10 42/25 43/3 43/4 57/16 59/23 60/16 60/18 64/14 76/6 76/7 85/15 90/13 91/21 91/23 91/23 92/1 92/15 93/21 97/2 112/24 124/14 141/24 141/25 165/15 165/16 165/17 165/18
Rule 11 [1] 64/14
Rule 12 [4] 165/15 165/16 165/17 165/18
Rule 15 [1] 43/3
Rule 41 [19] 20/10 22/23 25/6 25/12 25/13 25/17 42/10 42/25 43/4 57/16 60/16 60/18 90/13 91/23 92/15 93/21 124/14 141/24 141/25
rule-based [1] 29/19
ruled [1] 54/14
rules [5] 41/13 61/7 62/25 110/14 132/10
run [5] 12/5 24/24 156/7 159/2 177/18
running [1] 37/23
runs [1] 102/4

**S**

safe [1] 63/20
safeguards [1] 100/22
safety [1] 111/14
Sai [1] 35/14
said [46] 6/10 21/2 26/5 28/9 30/4 32/24 33/7 33/16 34/25 41/15 42/13 42/18 48/2 48/4 48/11 48/14 52/13 55/21 71/10 74/24 76/21 79/16 80/6 80/17 81/5 82/5 84/4 89/20 90/12 90/13 106/1 131/15 134/21 142/13 143/12 145/22 147/13 150/7 153/10 154/9 171/15 174/12 175/19 177/6

S

said... [2]  177/11
 177/24
sake [2]  57/11
 109/7
salary [3]  11/23
 12/12 139/15
same [44]  8/14 12/7
 14/11 17/19 17/20
 46/17 50/9 50/25
 51/24 61/23 62/9
 62/16 62/24 72/12
 72/22 74/22 83/7
 85/5 87/9 91/23
 107/18 112/25
 113/2 113/6 113/8
 115/13 115/19
 116/13 116/14
 118/12 126/15
 130/9 131/5 135/6
 135/6 135/6 135/7
 135/10 137/23
 146/16 154/3
 156/15 172/1 172/4
sanctify [1]  33/12
sat [1]  22/22
satisfied [3]  5/15
 11/25 48/11
satisfies [2]  9/17
 30/8
satisfy [4]  27/15
 60/18 107/21

save [2]  177/1
 177/2
saved [1]  51/6
saves [1]  92/10
saw [6]  80/9 86/24
 104/7 157/12
 157/13 161/21
say [75]  9/3 10/16
 15/12 16/7 21/15
 22/7 24/22 24/23
 25/22 26/11 34/22
 39/24 40/20 45/15
 45/24 45/25 50/14
 50/17 52/15 58/9
 58/18 59/9 61/17
 66/22 69/20 72/15
 72/20 76/21 76/22
 81/1 84/12 85/10
 85/13 88/19 89/4
 97/23 101/3 101/7
 107/21 108/22
 115/4 117/3 119/9
 124/21 125/2
 127/13 127/15
 130/9 132/3 134/9
 134/19 135/18
 137/12 141/20
 143/20 144/6
 146/11 148/20
 149/10 150/11
 151/16 152/2 153/6

 156/9 157/12
 158/17 158/21
 159/15 164/17
 171/2 176/9 176/21
 178/22
say-so [1]  137/12
saying [29]  46/21
 57/2 64/8 66/14
 68/21 75/11 77/12
 79/20 80/21 89/12
 93/10 98/12 110/4
 112/18 124/2 127/6
 127/16 129/6 129/7
 140/22 143/6 144/7
 146/3 146/5 156/13
 157/4 167/11
 167/24 177/1
says [31]  8/16 22/21
 24/19 31/11 35/17
 39/22 42/19 43/6
 45/4 45/9 59/24
 69/22 82/2 82/3
 82/3 87/1 92/22
 93/20 94/6 99/10
 119/6 120/16
 130/10 135/23
 139/15 144/14
 148/5 154/14
 165/18 173/8 179/1
scale [3]  115/4
 149/10 153/6

# S

Scalia [2]  48/5 50/16
scared [1]  138/14
scary [2]  133/11 133/15
scheme [1]  28/13
scholarly [1]  15/22
scope [5]  34/11 64/1 88/7 152/3 160/19
Scott [1]  159/18
se [1]  130/14
seal [4]  131/3 131/7 140/11 141/1
search [1]  152/8
searches [1]  74/8
searching [1]  146/21
seas [1]  81/19
seat [1]  142/10
SEC [3]  26/12 43/17 43/20
second [11]  5/16 8/22 8/23 10/2 29/14 107/7 139/20 154/11 158/23 167/14 167/15
secondary [2]  17/20 108/22
Secretary [2]  32/23 32/23

secretly [1]  133/16
Section [2]  135/24 180/5
Section 3730 [1]  135/24
sector [1]  30/1
secured [1]  27/2
securities [2]  64/16 154/1
security [4]  137/1 137/2 137/3 145/3
Sedition [1]  33/1
see [28]  10/21 12/25 13/5 13/12 13/14 44/14 57/4 65/7 69/21 71/3 74/23 74/25 79/7 87/18 102/24 102/24 103/16 103/18 103/19 105/2 105/16 107/22 109/12 115/8 125/16 126/15 173/22 175/22
seeing [2]  65/17 125/17
seek [3]  55/14 161/13 172/22
seeking [5]  41/2 42/6 162/1 162/3 175/3
seeks [1]  86/20

seem [8]  10/7 10/14 10/25 32/9 74/24 74/25 103/11 110/20 157/17
seems [4]  58/12 66/18 73/5 114/12
seen [13]  28/21 42/11 104/2 124/20 127/12 127/23 143/16 145/10 147/8 154/23 155/19 165/4 169/6
seeping [1]  102/18
sees [1]  59/16
self [10]  7/13 19/18 31/16 55/18 138/11 168/10 168/17 170/20 174/25 175/10
self-appoint [3]  168/10 168/17 175/10
self-appointed [6]  7/13 19/18 31/16 55/18 138/11 174/25
self-appointing [1]  170/20
seminal [2]  77/18 77/25
sense [7]  10/3 31/1 89/3 139/21 141/1

# S

sense... [2]  152/16 153/23

sensitive [1]  137/1

sentencing [1]  87/18

separate [8]  20/24 23/9 28/13 83/23 109/2 129/3 130/15 142/8

separates [1]  108/14

separating [1]  76/20

separation [17]  17/6 32/10 73/2 109/14 118/19 119/2 127/1 127/2 127/15 128/1 129/2 144/6 150/1 168/16 169/16 174/17 177/12

series [3]  34/13 36/20 106/1

serious [1]  28/25

seriously [1]  32/13

servable [1]  24/1

served [1]  142/3

service [1]  152/24

set [10]  29/7 32/5 48/12 49/3 57/15 58/6 150/24 155/14

sets [3]  58/16 58/16 166/11

settle [2]  42/14 125/3

settlement [2]  59/20 125/12

settlements [1]  175/6

seven [1]  138/12

sever [1]  41/20

severability [5]  40/20 40/21 40/22 40/23 40/24

several [3]  11/5 22/25 34/8

SG [1]  36/13

SG's [3]  36/7 36/12 120/23

SGRU [1]  76/4

share [2]  12/10 12/12

shareholding [1]  124/23

sharing [1]  95/18

she [16]  12/9 23/22 40/9 42/18 42/19 52/5 104/8 104/9 104/10 109/24 161/21 161/24 161/25 162/2 162/2 162/5

she's [2]  22/22 42/1

sheer [1]  169/24

Sherman [1]  66/9

shoes [3]  46/6 137/8 162/3

short [4]  10/4 60/24 107/20 135/13

shot [1]  150/11

should [30]  14/1 15/9 21/2 22/24 23/3 40/7 40/24 42/15 42/16 42/21 57/20 61/19 66/20 75/22 76/12 77/15 78/23 84/13 91/23 91/25 92/18 94/23 123/1 142/16 149/3 156/23 157/15 162/5 169/4 169/13

shoulder [5]  56/19 91/4 91/17 138/16 152/13

shouldn't [1]  43/18

show [3]  20/9 148/12 150/15

shows [4]  7/12 30/23 35/4 144/21

shows is [1]  35/4

side [16]  10/23 11/23 51/24 51/25 88/22 109/17

Case 8:19-cv-01236-KKM-SPF    Document 366-24    Filed 10/30/24    Page 270 of 295 PageID 6366

# S

side... [10] 109/18 133/9 138/10 141/6 145/17 155/13 158/16 158/16 165/13 165/21

sides [1] 13/8

sight [1] 78/19

sign [1] 103/20

signals [1] 137/1

signed [3] 161/2 161/2 161/3

significance [4] 109/11 138/1 142/22 152/6

significant [16] 9/19 15/3 68/3 76/12 76/15 79/16 80/2 105/21 129/10 132/25 133/13 136/17 151/23 161/9 165/22 168/4

significantly [1] 22/17

signs [1] 148/5

silent [1] 79/13

silo [2] 178/17 178/25

siloed [1] 105/13

silver [1] 76/5

similar [19] 15/17 19/2 31/12 43/15 49/20 66/24 71/3 72/21 74/25 75/2 88/4 105/2 114/9 114/9 146/4 146/5 150/16 158/20 176/7

similarities [1] 114/12

similarity [1] 61/25

simple [3] 26/18 130/5 151/11

simplistic [1] 19/24

simply [3] 9/3 41/6 51/10

since [10] 13/3 18/5 35/19 40/2 69/4 97/14 99/10 119/7 149/4 158/6

SINGH [6] 2/15 3/7 5/2 129/20 162/13 175/19

Singh's [1] 160/21

single [8] 29/12 29/12 29/23 61/7 63/24 63/24 63/25 165/8

single-case [2] 29/12 29/12

singular [1] 121/17

singularly [1] 107/5

sir [2] 159/14 160/4

sits [1] 38/6

sitting [2] 58/14 78/14

situated [1] 99/15

situation [34] 10/9 12/1 15/24 18/18 25/13 27/15 31/19 37/15 51/10 60/16 62/4 63/16 66/2 67/2 80/3 91/6 101/16 102/6 103/25 104/16 106/1 113/9 127/22 130/20 139/13 143/10 145/10 154/17 166/19 168/6 169/25 170/13 170/14 172/25

situations [10] 10/8 14/15 62/18 62/19 66/8 78/23 91/14 124/19 137/14 142/14

six [2] 95/5 115/23

slash [1] 120/22

Slave [1] 147/2

sliding [1] 153/6

slow [1] 140/20

small [1] 114/13

smaller [1] 147/18

sneak [1] 159/19

so [383]

sold [1] 44/25

# S

sole [1]  81/17
Solicitor [4]  36/19 37/2 74/2 177/6
solve [8]  43/11 43/12 43/14 44/1 44/2 52/23 52/24 171/24
solves [1]  43/24
some [60]  5/24 6/24 9/11 10/17 10/19 10/24 17/3 17/20 18/4 19/5 19/23 22/2 27/21 28/10 28/10 33/21 36/10 36/11 38/21 46/7 48/8 48/9 49/8 49/9 62/19 64/5 64/11 73/5 75/10 77/8 81/3 82/20 83/20 87/16 92/11 113/12 115/2 116/22 118/7 118/22 119/21 120/20 123/3 124/8 124/22 125/21 125/21 129/22 132/15 137/12 138/9 143/1 145/19 153/6 160/24 164/7 166/11 168/23 169/4 179/1
somebody [12]  9/16 15/25 36/20 45/23 46/5 52/1 117/15 132/22 136/16 151/19 160/8 164/1
somehow [2]  112/15 131/18
someone [27]  9/19 14/8 29/23 31/24 31/25 45/1 46/18 51/10 66/5 67/2 80/1 83/10 100/13 101/4 107/1 107/5 108/14 110/16 110/20 133/12 133/15 138/24 139/2 139/2 139/2 153/7 167/18
something [31]  13/18 13/20 16/16 24/18 36/13 47/1 55/21 63/19 75/19 77/5 88/20 96/3 98/1 100/6 101/19 101/21 104/1 105/8 109/12 111/15 117/16 117/22 124/23 125/20 127/4 132/25 133/3 142/7 152/19 164/3 178/2
sometimes [3]  12/23 107/19
somewhat [2]  10/15 33/21
somewhere [1]  115/25
soon [1]  136/1
sorry [24]  21/15 35/11 47/23 55/9 59/23 69/18 71/8 71/24 78/9 84/3 84/21 90/5 99/20 101/8 106/25 107/3 117/2 117/6 120/8 128/13 142/21 146/3 160/1 178/18
sort [32]  10/5 10/17 17/2 19/1 19/5 19/8 22/10 25/12 26/23 28/10 35/25 37/3 41/10 64/18 66/5 73/11 74/22 89/3 108/22 109/16 118/7 121/23 123/6 124/22 125/21 126/15 144/5 145/3 153/6 158/9 163/15 164/3
sorts [2]  113/25 132/17
sound [1]  49/15
sounds [1]  55/10
source [1]  101/22

S

sources [3]  17/20
146/22 158/7
south [1]  136/25
space [5]  105/13
106/15 111/14
111/17 111/22
spaces [1]  111/12
Sparacino [1]  2/15
sparse [1]  36/5
spawn [1]  105/25
speak [5]  40/5
48/24 78/2 98/10
114/19
speaking [2]  4/21
143/9
speaks [5]  4/5
115/10 115/22
123/14 163/17
special [18]  9/5
29/17 29/20 29/22
30/14 51/23 62/8
62/9 62/10 104/24
105/7 105/10
105/14 105/23
106/13 108/9 152/4
154/6
specific [13]  15/6
85/21 90/16 101/14
104/20 105/24
106/11 107/13
111/9 112/8 112/23

specifically [8]
79/10 81/14 87/14
104/18 120/3
120/12 123/14
141/18
specificity [1]  47/18
specified [1]  10/17
speculation [1]
169/25
spelled [1]  143/14
spending [1]  158/6
spent [3]  115/24
120/4 174/5
SPF [1]  1/5
sphere [1]  101/5
spilled [1]  13/8
spirit [4]  61/4 66/24
75/23 75/23
spoke [4]  52/7 52/8
79/13 79/14
spoken [1]  53/14
spot [2]  99/5 135/10
spur [1]  41/5
square [3]  54/20
104/16 145/14
St [1]  2/13
stable [1]  23/21
stake [2]  54/6
102/20
standard [46]  5/14
8/16 9/1 10/13

22/19 22/23 29/25
29/4 29/6 42/9
54/18 54/21 57/12
57/15 58/1 58/1
58/6 58/6 69/6 69/8
90/9 90/16 90/16
91/1 92/11 92/13
92/14 92/15 98/17
98/18 104/3 106/18
106/19 107/1 107/9
107/11 108/1 109/2
109/3 123/4 124/14
124/15 132/5
141/24 165/3 169/3
standardized [1]
29/5
standards [9]  19/20
20/12 38/15 60/18
90/2 90/7 105/3
107/9 113/6
standing [20]  5/23
20/15 22/9 24/11
24/20 27/5 37/17
39/18 40/4 48/11
50/15 72/12 82/9
85/10 93/20 116/18
122/14 164/6
164/13 164/18
standpoint [1]  29/9
stands [1]  156/9
stark [1]  63/16
Starr [1]  37/2

S

**start [10]**  6/5 6/6 6/24 35/21 53/9 53/13 71/3 75/13 99/6 119/22
**started [1]**  22/19
**starting [4]**  8/3 55/11 95/21 105/7
**state [3]**  19/12 118/12 158/18
**stated [2]**  54/4 123/13
**statement [8]**  1/12 24/9 83/25 154/23 162/23 165/18 178/22 178/25
**statements [2]** 16/21 57/21
**states [87]**  1/1 1/12 1/17 2/5 2/13 4/9 9/14 9/17 13/11 23/10 23/11 24/3 29/19 30/1 30/3 30/10 31/2 31/3 31/3 31/4 31/5 31/17 37/16 40/5 40/7 45/11 46/24 48/8 49/15 50/14 51/17 51/17 51/22 52/21 53/6 54/3 54/11 55/24 56/3 56/4 56/8 56/13

66/15 66/15 72/9 81/11 81/18 90/17 99/25 100/6 100/20 102/11 102/25 103/16 103/24 103/24 104/18 105/1 106/5 108/12 110/9 110/15 110/17 112/10 115/4 115/25 117/21 117/22 119/17 122/2 122/4 126/4 127/16 133/1 143/2 151/24 152/9 161/19 171/8 171/9 175/11 176/21 180/1 180/5 180/5 180/8 180/12
**States' [7]**  4/13 11/15 102/17 104/15 122/10 123/13 126/20
**statistics [1]**  14/4
**statues [3]**  37/8 49/6 113/5
**status [7]**  8/17 29/7 29/13 54/22 54/22 152/21 152/24
**statute [52]**  8/9 10/16 10/17 10/18 11/13 12/17 18/2 19/8 19/24 22/5

23/2 24/25 31/14 34/20 35/24 41/22 46/9 49/12 51/14 54/9 55/19 57/3 59/8 80/7 80/17 81/13 82/3 83/23 84/21 84/24 85/8 86/19 87/8 88/13 93/14 110/1 114/20 116/25 117/9 135/21 142/4 147/12 148/3 148/4 148/12 149/14 153/21 156/24 163/24 172/9 172/24 173/8
**statutes [45]**  14/22 15/18 15/23 16/24 17/7 17/11 17/19 26/18 26/20 33/22 35/5 35/7 35/11 36/5 37/8 69/21 74/12 75/21 77/8 83/20 85/19 85/22 86/6 88/16 112/6 113/4 114/15 115/3 115/14 115/15 115/15 115/19 116/7 116/11 116/14 116/25 117/10 145/19 145/20 149/19

**S**

statutes... [5] 150/15 158/8 162/15 169/20 170/25

statutory [7] 13/14 28/13 53/18 72/12 73/8 100/10 143/13

stay [1] 135/16

stayed [1] 44/23

stays [1] 103/14

stenographic [1] 180/6

step [8] 15/9 18/8 31/3 37/5 57/1 64/23 137/7 177/25

stepping [1] 162/3

steps [2] 46/6 123/10

Steve [2] 4/23 28/5

STEVEN [1] 2/12

Stevens [53] 5/23 13/25 17/13 20/15 22/16 23/13 24/14 24/17 24/19 24/23 38/18 39/17 40/3 47/22 47/24 47/25 48/2 50/14 53/21 54/4 55/22 71/14 71/15 71/17 72/2 72/6 72/7 72/8 72/14 73/1 73/24

73/24 75/10 75/17 76/14 76/16 76/19 76/23 82/2 82/5 82/12 88/24 89/15 89/16 89/20 93/20 98/4 106/21 121/20 122/24 164/6 164/8 169/6

stick [2] 42/13 54/20

sticking [1] 86/18

stiffer [1] 113/13

still [15] 25/6 40/7 41/24 42/3 55/17 87/5 91/13 101/18 102/16 106/16 110/1 110/2 136/9 164/18 164/22

stolen [1] 86/2

stone [1] 155/14

stood [1] 177/6

stop [1] 140/20

stops [2] 62/5 109/1

story [1] 152/10

straight [1] 9/3

straightforward [3] 26/19 137/25 174/13

strained [1] 41/9

Street [1] 2/16

strengthen [1] 148/13

strike [2] 2/3 149/14 149/19 156/10

striking [1] 149/3

stringing [1] 103/22

strong [4] 39/9 50/20 70/18 146/13

stronger [1] 79/19

strongest [1] 78/5

strongly [1] 49/16

structure [5] 51/6 58/15 58/17 129/6 177/19

structured [3] 29/1 45/16 130/16

struggle [1] 54/19

struggles [1] 64/4

struggling [1] 54/18

stuff [2] 87/12 103/10

subject [26] 10/25 11/7 27/14 31/18 32/22 36/2 49/22 64/11 67/24 97/23 97/25 98/2 98/9 98/16 131/16 133/16 137/12 141/13 145/5 151/13 164/5 164/9 164/10 164/20 166/14 168/8

# S

subjecting [1] 161/20

subjects [1] 20/10

submit [14] 15/11 22/11 30/2 32/3 34/7 34/22 35/1 35/6 36/4 39/9 48/16 49/10 50/4 52/24

subpoena [2] 50/1 108/17

subpoenaing [1] 103/4

subsequent [2] 155/10 174/9

substance [1] 99/4

substantial [29] 8/13 9/23 10/6 30/9 57/17 60/19 66/6 67/7 67/10 67/17 67/25 68/6 79/4 79/21 81/6 81/8 91/25 99/21 99/24 100/19 101/9 109/8 110/7 110/18 110/21 120/1 124/16 131/16 162/19

substantially [1] 149/4

substantive [2]

successful [3] 93/6 122/19 163/13

successfully [1] 37/9

successors [1] 37/3

such [13] 11/3 11/14 17/1 18/13 23/19 85/8 86/19 110/7 114/13 132/11 148/16 151/12 154/11

suddenly [1] 82/1

sue [5] 37/9 37/9 94/6 159/12 164/13

suffered [2] 13/17 13/22

sufficient [10] 30/10 60/1 60/15 65/2 83/3 90/15 91/13 133/21 146/7 158/10

sufficiently [3] 42/17 82/16 175/9

suggest [1] 22/5

suggested [3] 31/23 50/19 171/13

suggesting [2] 42/1 161/10

suggests [1] 17/25

suing [2] 46/14 150/19

suit [3] 27/5 46/25 160/22

27/22 37/12 46/1 66/11 67/2 148/6 161/10 161/11 161/22 162/9 162/10 167/6 167/12 168/3 171/8

Suite [2] 2/3 2/18

suits [3] 37/16 161/3 171/5

Sullivan [2] 33/3 73/18

summarize [1] 178/12

summarized [1] 36/12

summary [3] 96/24 97/2 164/25

super [1] 153/12

superstrong [1] 91/21

supervise [1] 149/6

supervision [6] 54/24 78/25 91/4 162/19 167/10 168/8

supervisory [6] 132/2 133/17 135/12 154/7 163/18 179/3

supplemental [2] 150/12 179/13

**S**

support [4]  5/17
  21/5 60/8 117/5
supported [2]
  115/9 116/6
supporting [1]
  78/18
supportive [1]
  158/15
supports [3]  7/21
  86/13 144/10
suppose [3]  42/17
  52/18 132/12
supposed [2]  57/12
  69/9
Supreme [31]  7/24
  14/5 22/21 29/10
  32/9 32/17 33/2
  33/14 37/17 53/13
  53/16 53/20 72/7
  72/9 73/21 80/15
  87/1 92/1 92/16
  107/9 118/9 134/5
  143/22 149/25
  151/17 158/24
  171/17 176/11
  177/5 177/6 177/11
sure [18]  6/25 14/6
  38/19 49/18 65/19
  83/13 110/13
  121/22 127/24
  131/22 137/23

  155/13 160/20
  163/11 175/21
  178/25
surely [2]  132/4
  132/6
surgeon [3]  9/14
  11/7 166/12
surprise [1]  13/13
surprising [3]
  48/23 50/7 147/18
surrebuttal [1]
  174/1
survive [1]  46/11
survives [1]  46/7
susceptible [1]
  144/7
suspect [2]  36/17
  103/6
sustained [1]  11/21
Swanson [1]  6/22
swath [1]  118/17
swathes [1]  77/3
sweeps [1]  161/18
sweetheart [1]
  124/22
system [2]  17/5
  42/5
systematically [1]
  21/16

**T**

table [2]  6/21 78/14
take [43]  8/1 25/18
  26/10 27/9 27/17
  28/25 29/3 31/19
  32/12 37/21 43/24
  43/25 45/2 49/11
  51/3 52/25 53/23
  56/15 61/15 63/9
  67/10 68/15 69/17
  70/7 75/23 79/8
  79/19 81/24 82/20
  95/10 106/14
  119/18 119/20
  131/12 133/13
  133/14 134/4
  137/15 141/10
  171/16 172/21
  173/1 177/25
takeaway [1]  17/23
taken [6]  35/3
  95/12 102/3 133/2
  138/22 180/6
takes [7]  31/5 38/6
  123/21 132/21
  132/24 162/25
  177/20
taking [7]  27/7
  136/21 139/6 173/2
  173/22 177/3
  178/16
talk [13]  26/22

Case 8:19-cv-01236-KKM-SPF   Document 78-6   Filed 06/30/24   Page 107 of 195 PageID 6373

talk... [12]  30/20
54/21 82/12 104/14
108/11 132/5
138/11 142/17
145/13 146/24
152/15 173/16
talked [6]  30/6 49/6
56/21 88/16 132/18
153/4
talking [13]  16/24
32/2 39/13 40/2
63/10 77/21 84/23
104/12 108/9 120/4
126/6 165/14
176/16
talks [7]  23/13 70/9
106/21 115/11
120/6 125/5 125/6
Tam [65]  5/17 7/9
13/11 13/14 14/4
14/16 14/22 14/25
15/5 15/19 16/3
16/4 16/8 17/11
17/11 18/4 19/3
19/8 19/16 19/24
28/19 28/19 28/20
28/23 29/1 31/9
35/23 39/10 41/18
48/9 49/12 50/10
50/23 59/15 60/17
71/24 75/23 76/18

76/24 78/6 81/19
82/3 83/20 84/8
86/13 89/25 101/6
101/11 102/10
115/3 115/15 116/7
116/23 117/7
118/15 125/18
145/18 145/20
147/10 148/15
155/3 158/9 159/7
177/2 177/18
TAMPA [4]  1/2 1/6
2/19 180/13
Tams [14]  13/20
16/10 19/18 26/17
32/7 48/6 75/5 75/6
81/15 114/6 116/17
169/12 170/6
170/15
tandem [2]  24/6
61/5
tantamount [1]
134/13
task [3]  11/9
166/14 166/15
tax [1]  33/17
teaches [1]  25/11
team [1]  139/16
Technologies [3]
2/9 4/20 6/20
TEJINDER [2]
2/15 5/2

tell [10]  5/9 15/12
26/4 31/2 71/2
107/22 138/10
144/4 144/9 154/21
telling [4]  24/5
138/13 143/5 157/2
tells [6]  37/13 37/14
73/22 74/23 123/15
128/6
temporary [2]  9/20
10/20
ten [6]  14/22 76/9
114/13 114/14
138/12 138/12
tended [1]  37/3
tension [3]  119/9
119/12 119/13
Tenth [1]  36/22
tenuous [1]  152/24
term [4]  13/19
60/11 60/13 108/11
terminal [1]  45/25
terminate [1]
168/19
terminates [1]
93/13
terminating [2]
134/15 134/19
termination [3]
22/18 128/1 168/8
terms [19]  16/14
18/11 32/7 43/4

Case 8:19-cv-01236-KKM-SPF   Document 345-1   Filed 09/30/24   Page 16 of 35   PageID 6374

terms... [15]  46/25
49/20 55/11 59/12
64/17 65/9 73/24
83/1 85/2 90/6
133/20 135/24
143/14 143/15
145/5
territory [1]  45/4
test [10]  8/12 9/9
9/23 11/18 11/24
11/25 15/8 48/12
48/13 151/24
than [53]  12/22
13/6 14/25 17/12
19/20 24/18 43/4
62/1 64/1 73/23
74/8 74/10 78/16
81/13 82/23 90/25
105/4 105/24
106/10 106/13
109/15 109/19
109/23 110/10
113/4 113/14
113/22 114/14
117/4 118/25 119/9
120/25 127/22
129/11 152/3 156/8
157/9 158/21
159/16 161/11
161/14 162/12
164/16 167/7 168/9

170/13 172/23
173/2 174/21
176/16 178/13
179/10 179/16
Thank [20]  5/3
6/16 7/4 28/2 28/3
53/1 53/2 95/9
129/18 129/19
159/9 159/14 160/1
160/5 175/15 178/5
179/7 179/8 179/9
179/20
that [1210]
that's [210]
their [65]  13/22
14/8 14/17 15/19
25/1 32/7 38/7 41/8
45/25 54/22 55/7
56/2 56/16 56/19
57/9 58/14 58/19
63/13 71/19 71/21
72/20 80/12 80/13
91/3 91/4 91/17
91/17 93/19 96/9
97/21 99/23 101/7
101/9 104/20 106/4
111/19 118/13
123/24 126/16
126/21 127/5 129/3
129/5 130/9 130/13
132/22 133/12
135/9 137/3 137/12

137/16 138/15
138/17 138/18
139/5 139/12
139/19 140/8
142/17 143/8
152/14 161/15
166/13 167/10
168/7
them [77]  10/9
14/20 14/21 15/18
16/4 24/25 25/2
26/25 27/3 27/5
30/21 38/6 55/12
55/13 56/11 56/23
58/11 58/20 61/2
61/23 63/15 65/13
65/14 69/13 72/21
73/20 75/5 75/6
75/9 75/13 76/10
76/12 76/15 78/24
79/17 81/13 82/8
83/6 86/8 87/11
88/11 93/20 100/11
100/17 108/14
111/5 111/11
111/13 111/20
114/7 115/5 115/6
115/8 116/21
122/14 126/13
128/2 135/5 135/9
136/21 137/21
137/24 138/7 138/8

Case 8:19-cv-01236-KKM-SPF Document 93 Filed 07/25/24 Page 279 of 295 PageID 6375

them... [13]  138/8
138/13 138/25
139/14 145/24
146/3 148/7 169/21
169/22 170/9 170/9
170/19 175/13
themselves [7]
13/21 65/4 66/13
75/3 75/25 139/1
163/25
then [109]  4/16 5/1
5/7 5/21 6/7 6/8
6/14 6/25 8/18 8/18
13/19 14/2 14/22
15/4 17/17 18/18
20/2 20/10 24/24
25/5 25/9 25/15
27/19 29/25 33/14
35/1 35/18 36/24
40/11 50/3 51/12
55/13 56/12 57/19
57/20 60/19 63/21
65/3 65/11 67/13
68/8 68/9 68/15
70/19 74/2 74/22
75/4 79/17 83/21
84/6 85/22 86/11
87/17 87/19 89/23
90/15 92/9 92/20
92/25 93/7 93/17
93/17 93/17 94/20

95/24 97/24 97/25
98/10 101/7 101/10
102/7 104/6 106/3
112/6 114/13
114/17 115/5 115/9
116/16 117/23
124/1 126/17
129/24 135/14
139/6 140/13 142/8
144/9 145/23 148/6
148/13 148/19
154/14 156/18
156/20 159/24
161/10 161/22
164/12 164/20
164/22 167/9 168/5
171/20 172/18
173/18 174/23
176/24 179/19
then-head [1]  20/2
then-Solicitor [1]
74/2
theoretical [1]
39/21
theoretically [1]
43/22
theory [18]  5/23
15/2 20/15 22/22
32/8 45/12 48/11
59/25 60/5 60/6
60/22 72/25 82/9
92/7 102/9 112/2

there [202]
there's [81]  5/24
8/19 10/19 11/3
11/10 15/3 17/12
18/4 25/14 26/4
36/20 37/4 39/5
39/14 40/10 47/12
50/14 50/20 61/6
62/14 62/19 66/22
67/1 68/7 69/25
70/11 74/6 75/8
75/13 76/17 80/18
81/3 83/23 90/16
94/21 96/3 97/11
98/12 101/4 104/19
107/25 113/25
115/18 119/7
119/20 120/16
124/10 125/4
125/11 127/25
128/6 129/13
133/21 134/18
143/11 143/13
146/18 151/7
151/16 156/10
160/7 160/12
160/14 160/24
162/17 163/22
163/22 165/18
165/19 165/20
165/25 166/22

1

there's... [9]  169/2 169/8 169/19 174/7 176/25 177/10 177/15 179/13 179/19

thereabouts [1] 36/22

thereafter [1] 146/10

therefore [7]  7/8 19/15 31/25 43/18 61/19 87/7 158/23

thereof [2]  21/5 45/6

these [60]  5/20 5/20 7/22 7/23 13/13 14/13 17/7 17/19 21/2 21/3 28/9 30/7 30/19 31/21 31/22 35/5 35/7 38/5 38/10 38/20 38/21 39/2 43/7 47/3 49/6 53/14 53/21 54/1 56/17 61/4 61/18 61/18 61/18 65/24 74/12 75/17 76/20 77/6 94/4 103/4 104/17 105/5 108/16 115/19 127/13 128/5 131/17 132/2

150/1 151/11 153/3 162/21 166/11 168/23 170/24 176/13 177/16

they [283]

they'll [3]  138/9 138/15 138/16

they're [86]  9/7 17/21 24/21 24/23 38/22 47/13 47/14 55/12 55/15 55/16 55/22 56/9 56/12 57/9 58/12 61/8 61/10 63/21 65/14 65/19 65/19 67/16 67/17 71/20 74/24 80/5 82/7 83/6 85/5 91/17 91/17 94/16 96/11 96/22 98/9 99/15 99/23 100/18 100/19 100/25 102/23 103/13 106/3 106/9 108/8 110/21 110/25 111/14 111/18 111/18 111/19 114/3 116/13 117/3 117/13 118/3 118/4 122/9 125/24 125/24 127/16 128/3 128/17 129/4

129/6 129/7 130/15 133/22 135/17 137/24 138/21 138/22 141/5 143/7 146/7 151/15 152/18 153/4 153/22 161/9 166/3 167/19 167/20 167/20 167/21 169/21

they've [2]  114/12 126/23

thing [18]  10/21 14/11 29/10 31/8 44/17 46/17 47/8 52/2 73/11 115/13 123/4 125/13 140/5 145/4 149/12 156/15 157/16 168/4

things [27]  10/16 11/23 30/25 48/4 59/21 63/8 69/11 74/11 76/20 85/5 85/6 100/21 103/17 113/6 114/1 116/22 119/13 125/6 125/8 128/5 129/23 133/10 139/9 168/23 171/6 176/13 177/4

think [471]

Case 8:19-cv-01236-KKM-SPF   Document 74-17   Filed 11/22/24   Page 36 of 94 PageID 6377

think it's [1]  130/4
thinking [6]  17/4
 25/8 49/2 103/11
 131/10 179/17
thinks [3]  22/12
 59/16 60/6
third [11]  5/21
 13/24 101/2 101/20
 103/21 121/18
 130/22 131/4 131/6
 144/24 152/9
third-party [2]
 101/2 101/20
this [262]
Thomas [7]  20/21
 31/22 39/8 40/2
 48/17 50/19 156/15
Thomas's [4]  18/14
 39/3 96/5 156/13
those [89]  5/5 5/11
 6/1 6/14 6/15 10/12
 10/24 11/6 14/23
 15/22 16/3 16/11
 17/22 18/7 20/12
 21/4 28/11 37/1
 37/11 37/15 37/24
 37/25 45/13 46/12
 53/16 53/17 57/4
 57/6 59/21 61/17
 62/14 62/16 64/2
 66/24 68/19 73/6

73/18 74/17 74/23
75/22 76/9 81/23
82/18 83/20 85/20
89/6 91/14 97/9
100/21 103/23
105/5 107/20
107/23 110/1
111/22 112/9
114/16 115/5
115/13 116/2
116/11 117/11
117/18 117/23
117/25 118/14
123/2 125/10
125/23 131/8 138/5
138/6 142/10 145/4
145/22 145/24
146/16 147/19
152/17 154/3 154/4
158/10 166/7 168/6
169/11 169/20
172/13 177/10
178/24
though [17]  44/8
 53/17 61/24 65/8
 71/16 76/17 76/23
 77/7 79/12 91/16
 135/20 142/20
 162/16 164/15
 169/13 169/18
 173/3
thought [12]  16/17

32/13 36/9 41/1
60/5 72/16 73/15
81/5 82/19 84/21
158/15 168/15
thoughtful [1]
 16/19
thoughtfulness [1]
 170/18
thoughtless [1]
 17/2
thoughts [1]  28/11
thousands [2]
 136/20 136/21
threatened [1]
 119/1
three [13]  5/9 5/11
 5/20 6/1 6/15 13/14
 14/2 28/13 35/10
 35/12 74/25 104/12
 141/9
threshold [2]  54/22
 70/25
through [23]  10/15
 21/16 34/4 38/22
 44/16 47/16 56/7
 59/5 70/6 76/25
 79/21 102/3 102/18
 103/15 122/24
 129/24 138/9 140/3
 144/17 144/23
 156/11 179/18
 180/7

Case 8:19-cv-01236-KKM-SPF Document 305 Filed 04/02/24 Page 282 of 295 PageID 6378

throughout [4] 139/18 154/4 154/5 159/3
thumb [1] 149/10
thus [3] 54/6 82/6 160/19
tie [2] 9/15 72/6
tied [2] 87/14 87/15
ties [3] 61/13 69/13 112/4
time [51] 9/8 17/1 20/9 26/17 28/22 29/8 34/24 36/10 42/25 45/18 46/19 48/25 56/24 61/7 72/1 73/14 74/1 77/6 86/7 90/23 95/6 95/18 96/24 97/7 97/8 97/22 98/19 106/15 106/23 112/8 112/17 114/12 118/24 120/4 125/2 125/2 140/14 140/19 141/8 145/13 150/4 158/21 158/22 159/25 170/15 170/25 173/24 174/5 175/12 176/19 178/4

timeliness [5] 94/22 95/22 95/25 98/17 164/4
timely [2] 115/22 165/2
times [8] 5/4 6/10 22/25 33/2 61/5 73/18 118/18 138/13
title [4] 55/2 66/9 75/2 180/5
Title VII-type [1] 75/2
today [30] 4/9 13/20 16/12 19/5 19/7 19/15 22/9 53/15 72/4 77/1 78/3 84/24 85/1 85/3 86/9 103/10 112/21 116/25 119/9 145/16 150/3 159/5 160/12 162/17 171/3 172/11 172/13 172/14 173/23 174/6
today's [2] 16/7 158/21
together [15] 15/22 59/21 61/12 64/7 75/17 75/22 76/17 76/23 122/14

150/13 153/5 179/5
told [5] 31/2 32/19 51/9 159/23 160/12
too [16] 33/21 49/10 61/19 94/5 94/21 95/8 109/6 128/21 133/23 144/24 147/9 160/21 166/18 167/21 170/24 176/12
took [3] 109/20 132/23 179/6
toolbox [1] 116/8
tools [1] 116/8
topics [3] 5/9 5/20 6/1
totally [5] 43/10 50/3 140/8 159/10 168/9
touched [1] 164/3
touchstone [4] 71/11 74/16 84/6 85/17
tough [1] 86/17
towards [1] 174/16
towers [1] 129/4
Trade [1] 147/2
tradition [3] 18/3 114/23 117/6
traditional [3] 29/6

# 1

traditional... [2] 36/18 46/22
traditionally [1] 30/20
transcribed [1] 1/24
transcript [3] 1/16 180/3 180/7
transcription [2] 1/25 180/6
transcripts [1] 103/18
transfer [1] 176/1
transparency [1] 78/11
transparent [1] 63/20
TransUnion [4] 24/9 37/13 37/18 52/8
traveled [1] 122/20
travels [1] 122/17
Treasury [1] 32/24
treble [5] 22/3 49/19 50/12 67/23 175/5
trebles [1] 86/22
tremendously [1] 149/9
trial [12] 2/6 55/16 59/5 60/24 83/13

148/17 163/21 169/21 172/20 172/23
trickle [1] 114/1
tried [1] 127/12
true [24] 13/20 14/3 14/22 14/25 16/3 27/13 27/23 75/5 75/11 84/6 104/23 131/1 131/5 132/16 135/2 135/4 135/15 145/20 148/15 148/15 159/2 163/10 165/15 180/6
truly [1] 39/16
try [6] 25/19 95/18 150/12 162/14 162/18 175/19
trying [19] 10/15 25/23 45/23 47/13 54/20 65/9 72/20 74/8 75/10 93/2 113/12 131/11 131/20 144/6 145/14 157/3 159/6 164/17 164/19
turn [14] 4/17 6/7 6/8 8/3 13/7 32/4 32/5 32/6 35/3 38/14 70/24 104/11

turns [1] 90/2
tweaks [1] 119/7
two [19] 11/10 35/11 35/13 37/6 39/14 40/10 62/11 62/12 82/18 85/5 85/6 117/3 128/8 133/10 149/19 151/21 153/3 170/14 175/18
type [11] 11/1 16/10 64/17 66/9 75/2 116/17 117/7 118/15 145/10 148/12 153/14
types [4] 32/7 80/24 114/6 117/4
typically [1] 46/11

# U

U.S [7] 36/23 87/24 104/7 104/10 154/4 154/5 161/4
U.S.C [1] 31/10
Uh [4] 23/17 44/12 96/7 148/9
Uh-huh [4] 23/17 44/12 96/7 148/9
ultimate [3] 38/23 88/3 118/21
ultimately [8] 7/9 56/25 56/25 58/3

# U

ultimately... [4]
72/9 89/9 156/18
177/12
umbrella [1]
100/18
un [1]  17/24
un-checkered [1]
17/24
unaccountable [4]
38/10 47/2 52/20
138/11
unappointed [3]
13/1 38/10 52/20
unbroken [7]  18/2
18/23 19/23 34/4
114/23 118/15
170/14
unchanged [1]
149/5
unclear [2]  34/2
152/1
unconstitutional
[10]  7/11 32/25
41/19 84/15 84/16
84/18 84/22 117/9
145/23 156/24
unconstitutionality
[1]  39/10
uncover [1]  17/22
uncovered [1]
14/25

under [75]  5/14
5/19 5/23 8/9 8/12
9/4 9/4 9/4 9/5 10/6
10/6 14/15 15/13
18/2 18/16 18/19
20/10 20/22 21/7
21/12 21/23 21/25
22/20 23/19 23/22
24/14 25/3 25/16
26/11 27/8 31/14
31/15 32/18 41/12
41/24 44/5 45/12
45/13 46/25 48/3
50/24 51/5 60/16
64/13 73/4 79/22
81/17 86/15 88/22
90/3 92/6 93/21
94/8 99/9 100/2
100/18 100/19
124/14 126/18
131/3 131/7 131/16
132/20 140/11
141/1 146/8 151/23
164/12 165/15
167/10 168/7
170/20 171/15
176/14 178/2
undercuts [1]  69/17
underestimated [1]
56/23
underlie [1]  100/13

underlying [2]
17/20 127/12
undermines [1]
52/10
underscores [1]
7/24
undersigned [1]
180/6
understand [18]
13/8 20/25 38/20
44/3 49/25 69/1
88/3 93/2 106/16
131/16 134/7 135/4
141/8 141/15
143/17 159/21
160/3 179/14
understanding [5]
34/9 35/2 35/2
55/15 90/24
understands [2]
156/12 176/25
understood [4]
34/23 149/22
174/16 179/6
undertook [1]
72/20
unelected [1]  38/10
uneven [1]  169/10
unfair [2]  148/22
165/2
unfettered [5]
54/24 57/2 58/20

U

**unfettered...** [2] 91/11 91/12

**unfortunately** [1] 74/13

**unharmed** [2] 24/11 24/16

**unheard** [1] 76/10

**uninjured** [1] 145/20

**unique** [1] 131/23

**unit** [1] 42/4

**unitary** [2] 34/16 150/25

**UNITED** [92] 1/1 1/12 1/17 2/5 2/13 4/9 4/12 9/14 9/17 11/15 13/11 23/10 23/11 24/3 29/19 30/1 30/3 30/9 31/2 31/3 31/3 31/4 31/5 31/17 37/16 40/5 40/7 45/11 46/24 49/15 50/13 51/17 51/17 51/22 52/21 53/6 54/3 54/11 55/24 56/3 56/4 56/8 56/13 66/14 66/15 72/1 81/11 81/18 99/25 100/6 100/19 102/11 102/17 102/25

103/1 103/24 103/24 104/15 104/18 105/1 106/5 108/11 110/9 110/15 110/16 112/10 115/3 115/25 117/21 117/22 119/16 122/2 122/4 122/10 123/13 126/4 126/20 127/16 133/1 143/2 151/24 152/9 161/19 171/8 171/9 175/10 176/20 179/22 180/5 180/5 180/8 180/12

**unitive** [2] 114/5 118/10

**unless** [6] 6/5 32/3 70/7 97/19 149/11 157/10

**unlike** [2] 69/12 137/8

**unlikely** [1] 146/21

**unpack** [1] 20/17

**unpersuasive** [1] 37/7

**unremovable** [1] 13/2

**unresolved** [1] 5/24

**untested** [1] 130/19

**unthinkable** [1] 171/7

**unthinkingly** [1] 148/14

**until** [10] 29/24 34/21 76/25 92/7 106/24 132/23 132/24 140/15 141/2 173/5

**untimely** [2] 165/15 165/18

**unusual** [2] 145/14 145/16

**up** [37] 6/2 6/14 7/1 11/9 11/10 19/13 34/21 35/12 37/20 42/18 49/3 56/19 60/23 72/2 72/4 81/15 83/24 88/1 96/3 99/1 103/1 107/3 107/19 108/4 115/7 136/13 143/25 144/1 145/11 145/25 149/1 160/6 162/19 163/16 174/11 177/6 178/3

**upheld** [1] 54/15

**upon** [7] 24/13 48/12 81/18 83/6 89/3 120/18 129/10

**us** [12] 25/11 32/19

# U

us... [10]  37/13 37/14 58/16 108/19 117/11 123/15 127/21 128/6 129/9 141/7

usage [1]  32/7

use [14]  10/14 14/24 15/4 16/3 18/1 18/23 37/3 74/16 87/19 108/11 111/13 115/5 115/5 116/7

used [14]  16/6 17/8 33/24 33/25 34/21 34/23 73/10 73/10 77/3 109/22 118/18 137/9 170/7 175/1

uses [1]  137/2

using [4]  92/15 107/18 111/16 152/9

usually [8]  59/1 70/4 87/12 107/21 130/15 138/22 140/14 144/5

usurp [3]  127/4 127/6 128/9

usurpation [1]  128/7

usurping [1]  127/17

# V

vacuum [2]  58/21 150/2

Valeo [1]  30/4

valid [3]  60/6 164/11 164/11

value [1]  167/22

values [1]  37/19

variety [1]  60/9

various [2]  8/19 59/10

vary [1]  10/15

vast [5]  38/5 56/17 63/14 86/7 175/7

vastly [3]  61/19 61/22 64/2

verbatim [1] 142/13

Verkamp [1]  2/3

version [2]  48/9 115/2

versions [1]  28/20

versus [7]  16/19 32/7 65/23 71/21 73/9 91/6 116/22

very [74]  9/13 10/3 10/6 11/9 15/24 16/1 16/15 18/15 19/20 19/23 26/16 26/18 27/11 28/3 28/25 30/4 31/13 34/9 34/20 35/3 37/15 39/2 39/12 48/13 49/15 52/9 53/17 62/10 62/19 63/23 66/1 67/5 70/17 72/21 78/7 78/17 85/12 90/8 95/21 95/25 98/12 105/4 105/4 105/21 107/20 109/23 112/7 115/22 118/1 125/25 135/13 137/25 148/4 149/15 149/18 150/1 150/4 152/14 152/25 156/17 162/14 164/24 164/24 166/11 166/14 167/23 169/10 169/10 171/20 173/23 173/23 174/8 176/15 178/4

vest [3]  123/18 124/2 124/4

vested [6]  30/8 34/15 61/14 68/9 123/18 166/23

vesting [13]  26/10 27/9 28/25 30/21 44/1 51/2 52/24 69/17 79/8 79/19

## V

vesting... [3]  82/20 92/9 171/17
Vesting/Take [1]  79/19
vests [4]  7/12 92/6 92/7 141/18
via [1]  45/10
view [10]  27/8 53/15 54/19 60/9 72/7 88/14 94/22 144/10 158/9 172/24
viewed [3]  178/17 178/24 179/1
views [1]  90/14
VII [2]  66/9 75/2
vindicate [6]  24/2 40/16 66/11 66/20 67/3 75/24
vindicating [3]  23/16 24/21 75/4
violate [4]  62/25 101/12 109/14 109/17
violates [1]  33/19
violating [1]  38/25
violation [10]  18/13 18/16 24/7 28/22 54/16 65/6 96/22 130/22 143/19 171/22

violations [5]  29/16 33/4 80/25 135/7 143/18
virtue [1]  100/16
virtues [1]  38/1
vis [2]  131/6 131/6
visceration [1]  20/14
vs [13]  1/5 29/18 30/6 32/20 33/2 33/7 33/15 49/15 49/15 50/4 50/22 146/10 146/11

## W

wager [1]  122/21
Wait [1]  84/23
waive [2]  143/18 153/20
waived [5]  96/14 96/15 98/8 99/2 154/11
walk [2]  100/7 140/3
walked [2]  119/2 120/11
Waltz [1]  33/16
want [56]  5/6 6/13 13/7 20/17 21/10 26/1 26/2 26/4 36/17 37/5 43/7 53/13 56/17 56/23 60/10 60/11 60/14

78/15 78/19 90/21 91/11 95/20 100/7 120/3 127/7 127/14 127/17 127/20 130/2 134/9 136/14 137/20 138/14 140/2 140/15 141/7 142/12 142/18 143/2 146/17 146/25 150/10 153/11 153/12 157/11 158/14 160/5 162/16 164/1 167/13 168/2 172/23 178/12 178/14 178/25 179/16
wanted [8]  21/15 41/3 70/7 136/13 142/7 172/12 175/21 176/13
wanting [2]  103/7 125/7
wants [7]  51/16 57/8 66/21 158/16 172/6 175/18 179/13
war [5]  32/23 81/19 101/5 111/11 117/25
warrants [1]  152/8
was [137]  4/10 8/25

# W

was... [135] 9/21
16/16 16/25 18/20
18/23 19/9 24/17
28/17 29/16 29/18
29/20 33/9 33/13
34/5 34/24 35/24
36/10 36/22 40/2
42/8 43/16 44/24
45/3 45/23 45/24
46/21 47/10 48/2
48/6 48/6 48/9
48/16 48/23 49/3
51/25 54/10 58/4
60/5 60/23 66/1
66/1 66/1 71/6 71/8
72/10 75/10 75/11
75/20 75/25 76/19
76/23 78/1 81/16
81/16 82/9 83/23
84/14 84/22 86/1
86/21 89/18 89/21
90/25 94/10 95/12
95/19 96/4 97/11
97/19 97/25 98/23
101/21 101/22
102/25 103/1 105/4
109/22 112/6 112/9
112/16 112/18
112/24 113/2 113/6
114/13 114/14
114/16 115/8

115/13 115/15
115/17 115/22
117/3 118/7 120/7
121/20 121/22
122/24 124/17
124/19 124/22
124/25 124/25
130/2 130/24
132/23 147/2 147/2
147/15 147/18
147/23 148/10
148/12 148/13
148/15 156/12
159/6 159/8 159/19
160/17 160/21
161/15 161/16
162/14 165/14
168/13 168/23
169/25 173/5
174/22 174/23
175/20 179/10
Washington [3]
2/13 2/16 148/5
wasn't [16] 11/9
11/10 22/10 28/19
41/2 96/9 98/23
114/15 115/16
118/18 120/9
124/24 161/2
165/10 168/14
173/5

way [67] 9/24 11/22
12/15 12/17 12/20
12/25 13/5 14/1
23/10 24/1 27/3
30/14 31/13 38/24
40/15 44/14 45/16
49/2 59/5 62/1 62/3
62/9 65/25 68/1
71/25 72/7 72/22
76/25 77/8 77/12
79/20 93/22 93/23
94/14 97/9 100/15
103/15 105/12
109/19 109/25
110/6 112/11 115/6
115/6 116/21 119/3
119/3 122/23
122/23 123/11
124/17 127/7 127/7
127/17 127/19
127/20 128/20
129/5 130/9 144/24
146/9 151/11
153/23 163/17
171/11 174/13
177/9
ways [11] 9/23
64/11 87/16 102/23
113/12 115/1
119/21 126/22
133/8 158/16

Case 1:19-cv-01236-KKM-SPF    Document 154-158/10    Filed 09/30/24    Page 289 of 295 PageID 6385

# W

ways... [1] 161/11
we [203]
we'll [3] 4/8 40/21
95/11
we're [43] 21/9
25/13 28/23 32/2
39/13 42/14 43/7
50/17 51/4 53/15
63/10 68/8 93/23
95/17 103/10
109/25 111/12
112/5 116/20
119/25 119/25
123/24 125/16
127/6 132/3 133/11
133/14 134/19
134/20 138/13
144/8 148/20
148/21 156/11
163/15 171/2
176/16 177/2 177/2
177/3 177/7 177/8
179/19
we've [23] 17/4
17/21 18/19 33/17
41/15 45/12 49/5
51/23 57/17 90/12
93/16 97/8 97/8
97/9 97/15 104/1
111/20 116/16
127/23 132/18

174/5
weapon [1] 111/13
weapons [1] 111/13
wedded [2] 5/5
6/10
weigh [3] 18/7
50/23 142/10
weighs [1] 128/5
weight [9] 71/23
71/23 76/10 76/12
76/15 77/6 78/8
146/13 152/9
weighty [1] 114/21
weird [1] 144/20
welcome [1] 139/15
well [96] 6/22 8/1
17/24 18/24 21/14
21/14 23/15 23/19
24/17 26/3 28/7
28/15 35/9 37/10
43/7 43/17 45/7
46/5 47/12 47/25
48/2 49/18 52/25
53/23 58/12 58/15
59/3 63/1 63/25
65/10 67/9 68/1
68/9 69/10 69/20
71/5 72/10 72/18
76/16 77/4 77/10
77/13 78/13 80/5
80/8 80/23 81/21

82/2 85/19 87/13
90/11 92/25 93/8
94/3 96/18 99/7
100/9 105/20
108/20 113/11
113/18 113/20
114/22 117/2
117/10 119/12
120/9 124/1 126/6
126/21 128/2
133/10 133/24
134/3 134/17 136/2
137/4 148/19
148/20 149/20
151/10 153/2
154/15 155/16
156/6 157/21 158/6
163/7 166/2 167/16
168/23 171/23
173/7 174/7 177/1
177/24
well-established [1]
17/24
went [5] 114/16
159/16 160/3
165/12 167/9
were [91] 11/8 12/9
14/10 14/23 16/10
16/17 17/22 17/22
18/15 19/18 21/12
24/12 25/18 26/8
26/17 26/17 28/18

# W

were... [74]  29/7
32/15 32/15 33/3
35/1 48/7 48/7 48/8
48/25 49/8 53/12
53/17 54/10 56/17
58/5 61/21 61/23
72/13 72/17 72/18
73/15 73/25 74/1
74/12 74/14 76/8
76/13 76/14 76/21
76/23 77/6 77/8
77/8 77/10 77/13
77/14 77/23 79/18
80/19 84/22 84/24
85/1 86/6 96/16
97/7 98/21 100/20
103/23 104/25
105/4 108/8 108/24
113/7 113/11
115/14 116/10
116/13 118/13
118/17 120/20
120/21 123/3 135/8
145/18 145/23
146/8 147/19 150/2
153/15 155/8
163/13 170/6
172/18 175/3
weren't [4]  28/20
77/3 77/7 79/13
Westlaw [3]  14/24

what [247]
what's [33]  11/19
22/19 25/7 29/4
56/19 57/12 58/21
69/8 71/3 71/3
75/13 80/20 85/24
85/25 86/14 91/1
106/18 106/25
107/8 107/10 114/8
114/9 114/9 114/9
116/3 124/14
130/12 141/8 143/1
150/17 158/3 165/2
173/6
whatever [18]
22/18 24/2 40/9
40/16 43/5 66/15
90/3 90/7 93/3
93/19 93/21 116/21
139/7 140/6 157/15
167/19 168/15
175/18
whatnot [2]  64/14
133/5
when [85]  9/12
10/4 16/24 17/4
19/5 19/14 21/3
30/20 31/4 31/11
39/13 46/5 46/19
48/2 48/14 48/23
48/24 49/20 54/9

54/13 55/15 59/16
61/13 63/10 69/22
72/2 75/9 75/13
83/22 86/8 90/13
96/2 98/20 99/23
100/18 103/5
103/16 104/14
108/1 108/16
109/13 112/8
114/22 115/11
116/10 116/20
118/12 123/17
123/19 124/3 128/6
134/21 135/14
135/22 137/7
138/19 139/4 139/6
140/2 141/4 142/17
143/19 144/1
146/21 148/16
149/8 152/7 152/8
152/11 152/15
154/9 162/8 162/13
165/14 165/20
165/22 166/5
168/21 171/18
173/16 175/1 175/9
176/12 178/21
179/1
whenever [1]
165/17
where [86]  9/13
9/19 9/20 10/8

# W

**where...** [82]  11/11
11/25 13/9 13/20
14/11 14/14 15/17
15/23 16/18 16/25
17/15 18/23 21/9
24/10 25/13 33/16
34/21 35/6 37/8
40/12 41/19 48/19
59/3 61/1 62/18
62/19 66/10 67/2
67/9 67/23 68/13
68/14 70/11 79/6
80/25 83/4 83/9
84/12 85/20 86/23
92/19 97/3 97/9
97/23 98/24 99/12
99/14 99/15 100/20
100/20 100/24
105/1 105/10
111/18 115/23
116/17 118/18
121/10 123/6
123/12 125/9
125/16 127/11
132/18 137/4
137/16 139/13
142/14 144/10
146/6 146/23 149/8
152/7 152/18 154/2
159/1 160/10
166/12 168/3 168/9

**whereas** [4]  62/13
81/3 117/25 174/24
**whereby** [1]  56/18
**whether** [45]  7/15
12/17 14/1 16/15
16/18 18/25 20/22
25/6 33/9 47/15
47/16 52/4 52/5
52/5 57/16 57/22
58/3 58/17 59/20
67/1 71/20 74/4
74/17 76/24 83/2
84/22 85/9 97/13
99/17 103/1 103/20
107/16 121/22
127/25 130/8
133/20 155/6
157/11 160/8
162/10 165/1 166/3
175/25 176/1
176/12
**which** [100]  10/1
10/10 10/14 10/25
15/24 17/14 17/18
17/19 19/3 19/11
19/17 20/1 20/18
22/18 24/1 26/12
27/11 29/16 29/19
32/3 33/2 34/9
34/14 36/23 37/4
37/6 37/14 37/20

38/4 39/1 39/15
42/5 43/24 45/16
45/18 49/2 50/15
51/14 51/15 52/10
52/20 54/7 55/4
57/15 60/18 69/13
70/1 70/10 75/2
77/15 78/16 78/23
80/22 81/12 82/11
85/14 89/24 93/3
95/12 97/1 97/20
100/13 103/11
104/19 104/19
105/8 106/4 106/10
106/11 107/8
107/22 108/2
108/12 108/15
111/21 116/13
117/15 118/3
119/21 120/6
125/15 125/19
132/4 132/19 137/8
137/9 138/3 138/7
141/12 145/5
145/12 152/18
154/21 156/21
157/2 165/8 168/25
170/9 176/16 177/5
**whichever** [2]
63/25 70/19
**while** [6]  39/8
50/14 131/2 134/7

# W

while... [2]  140/24 143/17
whistleblower [7] 26/13 27/1 51/11 51/16 52/13 52/17 116/25
white [2]  157/14 175/20
who [92]  4/5 4/5 4/15 7/7 9/16 10/4 10/22 11/7 11/12 11/15 13/2 13/17 13/17 14/8 14/17 15/14 15/25 21/18 23/20 26/13 27/22 29/23 30/2 31/25 46/13 46/18 47/1 51/11 64/24 65/4 65/22 65/23 66/5 66/7 67/2 67/8 67/14 67/14 68/10 70/7 75/3 80/1 80/1 80/16 83/11 83/11 86/2 86/3 89/6 100/10 100/12 101/4 101/10 103/21 105/3 107/15 108/9 108/14 110/1 110/2 110/10 110/19 111/10 116/15

124/24 131/4 132/9 133/12 135/5 136/16 137/22 138/2 143/3 145/7 145/8 146/14 147/15 147/21 151/1 151/13 152/11 152/13 160/8 166/7 166/13 167/18 171/19 171/19 174/21 177/16
who's [5]  20/19 100/14 110/16 134/16 163/2
whoever [2]  53/3 101/22
whole [7]  43/2 70/6 72/1 76/24 88/9 106/4 148/7
whom [1]  86/1
whomever [2] 21/22 178/11
why [43]  5/15 21/7 22/15 22/19 23/2 38/5 39/5 40/19 40/25 42/20 46/12 46/16 64/6 75/16 78/10 79/7 81/12 82/11 85/16 90/21 90/24 92/12 97/1

108/21 109/3 116/14 116/24 116/25 118/3 119/22 125/4 125/24 135/4 145/12 146/1 150/7 156/21 157/3 158/11 172/1 178/8
widely [3]  33/24 34/21 34/23
widespread [3] 15/4 18/2 74/17
widow [1]  46/13
wildly [1]  66/18
will [30]  4/6 4/14 6/2 9/9 25/24 31/2 31/6 39/11 45/25 53/10 62/21 62/21 63/9 78/14 79/2 95/7 106/16 131/7 136/3 138/8 150/15 152/2 154/22 154/24 155/13 156/9 161/25 173/18 176/10 178/13
William [1]  17/18
willing [1]  121/5
windbreaker [1] 139/15
wire [2]  87/11

**W**

wire... [1]  87/12
Wisconsin [2]  2/9
2/10
wish [2]  74/12
74/14
within [11]  64/10
64/11 79/2 81/17
91/7 113/8 114/22
122/1 126/21
126/21 129/5
without [29]  7/19
9/9 15/14 15/19
17/4 27/22 28/16
38/25 40/16 42/7
49/2 70/22 73/15
91/12 92/9 102/11
110/23 118/16
118/16 118/19
141/23 154/25
163/14 163/23
164/13 164/13
168/10 168/17
173/20
witness [1]  172/22
witnesses [1]  101/5
won't [6]  21/15
58/17 75/5 110/14
115/4 169/7
wondered [1]  36/11
wondering [4]
13/25 17/15 25/4

Woods [1]  2/3
word [1]  144/18
worded [1]  124/17
work [18]  25/23
39/12 41/14 61/5
108/17 111/11
126/23 137/17
143/15 143/15
152/11 152/12
154/12 155/11
161/21 168/14
169/9 170/1
workaround [1]
43/3
worked [4]  111/4
112/24 161/17
162/2
worker [1]  167/18
working [8]  100/14
101/17 111/14
124/20 127/20
127/21 128/1 129/9
works [8]  24/6
61/12 121/24
125/19 127/7 135/5
155/4 164/17
world [11]  5/22
22/15 44/15 46/24
46/25 100/3 100/8
125/16 133/4 138/4
168/10

worse [1]  88/5 88/6
88/7 88/8
worth [2]  57/23
57/25
would [245]
wouldn't [17]  19/24
21/13 22/5 28/16
40/11 41/12 60/4
77/17 77/24 87/23
102/7 136/17
153/14 155/22
159/22 169/18
169/22
wrap [1]  174/11
wrestled [2]  29/15
37/18
wrestling [1]  48/6
writ [3]  21/21
77/22 179/2
write [3]  45/25
137/10 157/15
written [5]  35/18
35/19 56/5 66/1
113/6
wrong [8]  13/18
47/22 47/24 75/4
76/4 77/25 149/2
152/6
wrongful [1]  46/8
wrote [3]  127/19
157/4 166/18

1

yeah [37]  30/16
32/11 34/1 37/12
42/11 43/9 47/19
49/8 50/3 51/20
64/20 67/16 71/9
76/2 88/6 93/1 93/5
95/1 103/3 122/15
122/21 123/19
130/12 132/8 134/3
141/24 142/2 147/6
147/9 147/25 148/1
148/11 148/25
153/9 154/19
173/12 176/6
year [6]  19/17
116/1 140/14
140/14 170/19
175/10
years [22]  7/16 7/23
7/23 8/19 15/1
34/10 35/25 36/24
50/22 95/3 96/1
96/10 99/1 107/10
116/1 118/18
138/16 149/15
152/12 166/9
171/18 174/25
yes [48]  4/14 7/3
11/5 12/19 21/14
28/2 40/18 40/18
41/14 56/6 60/17

60/19 65/3 65/5
66/22 66/22 69/20
70/23 73/12 73/19
74/20 75/11 76/22
84/13 85/24 87/3
93/11 93/17 95/23
99/3 110/9 115/1
134/13 136/5 147/4
147/7 147/7 147/11
156/5 157/6 159/4
159/20 160/4
163/10 166/18
175/17 178/6 178/8
yet [5]  35/18 89/14
96/25 107/22
177/21
York [2]  33/2 73/17
you [437]
you'll [1]  4/12
you're [39]  9/11
13/1 16/2 16/24
19/14 21/3 23/24
24/5 43/4 49/20
49/21 55/10 64/8
65/9 68/21 70/2
75/18 75/19 81/10
85/21 86/9 93/10
103/4 110/4 110/15
112/2 112/14
114/11 124/17
139/16 143/5 143/6
146/3 149/24

151/24 159/2
164/22 174/1 174/2
you've [15]  92/17
114/7 116/18
129/24 133/2
136/15 143/16
145/19 146/19
150/11 154/23
160/12 169/3 169/6
173/22
your [82]  4/7 4/18
4/23 5/2 6/16 8/3
8/4 8/15 12/18
14/12 16/3 18/24
23/12 26/6 27/8
28/3 28/5 28/7 53/2
53/8 53/8 67/1
69/16 69/17 70/2
70/21 76/12 78/1
83/25 95/15 95/20
98/19 101/2 110/4
111/9 114/6 121/4
121/9 121/12
123/17 124/3
125/10 127/17
129/15 129/21
130/1 130/17 133/9
134/6 134/16
135/21 138/19
140/16 140/25
144/21 145/25
146/9 149/21

# Y

**your... [24]  150/16
153/23 156/1 156/5
157/6 159/4 159/9
160/5 161/7 164/4
168/24 171/11
173/6 173/16
173/24 174/1 174/5
174/10 175/15
175/16 178/4 178/7
178/13 179/8
yourself [2]  70/8
172/3**

# Z

**ZAFIROV [7]  1/3
4/8 12/3 31/11
31/11 104/6 104/9
Zafirov's [3]  6/8
94/21 95/7
zone [1]  164/18**