**FOR PUBLICATION**

# In the
# United States Court of Appeals
## For the Eleventh Circuit

---

No. 24-13581

---

UNITED STATES OF AMERICA,

*Movant-Appellant,*

CLARISSA ZAFIROV,
ex rel; Dr.,

*Plaintiff-Appellant,*

*versus*

FLORIDA MEDICAL ASSOCIATES, LLC,
d.b.a. VIPCARE,
PHYSICIAN PARTNERS, LLC,
ANION TECHNOLOGIES, LLC,
FREEDOM HEALTH, INC.,
OPTIMUM HEALTHCARE, INC.,

*Defendants-Appellees,*

PHYSICIAN PARTNERS SPECIALITY SERVICES, LLC, et al.,

*Defendants.*

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cv-01236-KKM-SPF

Before BRANCH, LUCK, Circuit Judges, and MORENO,* District Judge.

BRANCH, Circuit Judge:

The False Claims Act ("FCA") allows the Attorney General to bring civil suits against perpetrators of fraud against the government. This case involves another portion of the FCA—the qui tam provisions—which allow people, called relators, who have knowledge about fraud against the government to pursue a case against the perpetrator of the fraud.

Here, a relator brought an FCA suit against defendants that she alleged committed Medicare fraud, and the defendants moved for judgment on the pleadings or dismissal on the grounds that the qui tam provisions violated the Constitution's Appointments Clause, Take Care Clause, and Vesting Clause. The district court granted the defendants' motion and held that the qui tam provisions violate Article II's Appointments Clause[1] because

* Honorable Federico A. Moreno, United States District Judge for the Southern District of Florida, sitting by designation.

[1] The Appointments Clause of Article II of the Constitution provides that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Officers of the United States." U.S. Const. art. II, § 2, cl. 2.

relators qualify as officers of the United States and, as such, must be (but are not) presidentially appointed.

We disagree and hold that relators are not officers of the United States because they do not occupy a continuing position established by law. Accordingly, we join our sister circuits that have addressed this issue and hold that the qui tam provisions of the FCA do not violate the Appointments Clause.[2] Therefore, we vacate the district court's order dismissing this case and remand for the district court to evaluate the defendants' remaining constitutional arguments.

## I. Procedural Background

In 2019, Dr. Clarissa Zafirov brought this qui tam action under the FCA on behalf of the United States against her employer and related entities, Florida Medical Associates (d/b/a VipCare); Physician Partners, LLC; Anion Technologies, LLC; Freedom Health, Inc.; and Optimum Healthcare, Inc. Zafirov alleged that the defendants knowingly submitted false diagnosis codes to receive more money than they were entitled to from Medicare, a federal health insurance program. The parties litigated the case for several years until February 2024, when the defendants moved for judgment on the pleadings or dismissal of the case. The defendants

---

[2] *See Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 758 (5th Cir. 2001) (en banc); *United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1041 (6th Cir. 1994); *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 757–59 (9th Cir. 1993); *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 804–05 (10th Cir. 2002).

argued that the qui tam provisions violated Article II's (1) Appointments Clause because relators exercise significant federal authority in a continuing position without appointment by the President; (2) Take Care Clause because the President lacks sufficient supervision and control over relators who wield executive power; and (3) Vesting Clause because relators have the executive power to bring civil enforcement actions on behalf of the United States while the Constitution vests that power in the President alone. Although the United States declined to intervene in the case when it was first filed, it intervened after the defendants raised these constitutional challenges "for the limited purpose of defending the constitutionality of the qui tam provisions of the [FCA]."

The district court determined that the qui tam provisions violated the Appointments Clause, so it did not address the defendants' Take Care Clause or Vesting Clause arguments. *United States ex rel. Zafirov v. Fla. Med. Assocs., LLC*, 751 F. Supp. 3d 1293, 1304 (M.D. Fla. 2024). The district court made three central findings in its Appointments Clause analysis. *Id.* First, it concluded that relators are officers of the United States. *Id.* To make that determination, the district court used the test from *Lucia v. SEC*, 585 U.S. 237 (2018), that differentiates between government officers and mere employees to whom the Appointments Clause does not apply. *Zafirov*, 751 F. Supp. 3d at 1306–07. The *Lucia* test states that an individual is an officer if he "exercise[s] significant authority pursuant to the laws of the United States" and "occup[ies] a 'continuing' position established by law." *Lucia*, 585 U.S. at 245

(quoting *United States v. Germaine*, 99 U.S. 508, 511 (1879)). The district court held that relators' civil enforcement authority constitutes "significant authority" because similar enforcement authority qualifies FEC commissioners and special prosecutors as government officers. *Zafirov*, 751 F. Supp. 3d at 1307–09. The district court also held that relators occupy a continuing position—an "office of relator." *Id.* at 1313–17. The court reasoned that "the office of relator exists whether a person is appointed to that office or not, making that office 'continuous and permanent.'" *Id.* at 1314. And, the district court stated, it does not matter that relators act for only a single case. *Id.* at 1314–15. Second, the district court was unpersuaded that historical examples of similar qui tam provisions from the founding era justify the FCA's constitutionality. *Id.* at 1317–22. Third, it determined that Zafirov was not presidentially appointed, which the parties did not contest. *Id.* at 1304, 1322.

After finding that the qui tam provisions of the FCA violated the Appointments Clause, the district court dismissed the case because Zafirov was "the only litigant on her side of the enforcement action" and lacked authority to prosecute on behalf of the United States. *Id.* at 1323.

We now turn to an overview of the relevant provisions of the FCA.

## II. FCA Background

The FCA imposes civil liability for certain deceptive practices involving government property, including "knowingly

present[ing] . . . a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). Also liable are those who "knowingly make[] [or] use[] . . . a false record or statement material to a false or fraudulent claim." *Id.* § 3729(a)(1)(B). Each individual FCA violation carries a statutory penalty and treble damages. *Id.* § 3729(a).

The Attorney General can bring a civil action under the FCA. *Id.* § 3730(a). But private parties called relators can also bring an action "for the person and for the United States Government" that is brought "in the name of the Government" through the qui tam provisions of the FCA. *Id.* § 3730(b)(1). Various statutory mechanisms govern the respective roles of the relator and the government in qui tam actions. For example, when a relator first files a complaint, it remains under seal for at least sixty days while the government determines how it wants to proceed. *See id.* § 3730(b)(2). Those sixty days are referred to as "the seal period." *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 426 (2023). During the seal period, the government has two options: it can intervene and proceed with the action itself, or it can decline to intervene and allow the relator to proceed. 31 U.S.C. § 3730(b)(4)(A)–(B). If the government intervenes—then, or later upon a showing of good cause—it may also dismiss the action over the relator's objection. *Id.* § 3730(c)(2)(A), (c)(3); *Polansky*, 599 U.S. at 425–27. While dismissal must be approved by the court, the court applies the typical voluntary dismissal rule (Federal Rule of Civil Procedure 41) and must provide the government "substantial

deference" and grant dismissal in "all but the most exceptional cases." *Polansky*, 599 U.S. at 437.

Relators are entitled to compensation when they are involved in a successful FCA qui tam suit. 31 U.S.C. § 3730(d). The relator can receive a contingent fee of up to 30% of the proceeds of the case or settlement of the action, with the exact award based on whether the government intervened and on the extent of the relator's contributions to prosecuting the action. *Id.*

With this statutory framework in mind, we now turn to the merits of the constitutional challenge to the FCA.

## III. Discussion

Zafirov and the United States argue that the qui tam provisions of the FCA are consistent with the Constitution's Appointments Clause, Take Care Clause, and Vesting Clause. We address only the qui tam provisions' constitutionality under the Appointments Clause and remand for the district court to consider the Take Care Clause and Vesting Clause arguments in the first instance.[3]

While the parties agree that relators are not presidentially appointed, Zafirov and the United States argue that the

---

[3] "[W]e review *de novo* the constitutionality of a statute because it is a question of law." *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010). A court should invalidate an act of Congress only "for the most compelling constitutional reasons." *Mistretta v. United States*, 488 U.S. 361, 384 (1989) (quoting *Bowsher v. Synar*, 478 U.S. 714, 736 (1986)).

Appointments Clause does not require relators to be presidentially appointed because (1) relators are private parties pursuing a private interest and do not exercise executive power; (2) relators do not exercise significant authority; and (3) relators do not occupy a continuing position.

Zafirov and the United States are correct that relators do not hold a continuing position, which is sufficient to determine that relators are not officers who must be presidentially appointed. Accordingly, we need not reach any of their remaining arguments.

The Appointments Clause of Article II of the Constitution requires that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Officers of the United States." U.S. Const. art. II, § 2, cl. 2. Two "requirement[s]" determine whether a government employee is an officer of the United States: first, he must "occupy a 'continuing' position established by law"; second, he must "exercise significant authority pursuant to the laws of the United States." *Lucia*, 585 U.S. at 245 (alteration adopted) (first quoting *Germaine*, 99 U.S. at 511; and then quoting *Buckley v. Valeo*, 424 U.S. 1, 126 (1976) (per curiam)).[4] "[T]he term [officer] embraces the ideas of tenure, duration, emolument, and duties." *Germaine*, 99 U.S. at 511. So in determining whether a person holds a continuing position established by law, the Supreme Court has evaluated whether that person holds a "permanent" tenure, whether his employment has

[4] We assume without deciding that *Lucia*'s framework governs relators, who are not government employees.

"duration as to time," and whether he receives a "continuing emolument." *Auffmordt v. Hedden*, 137 U.S. 310, 327–28 (1890); *Germaine*, 99 U.S. at 511–12. And with respect to "duties," Chief Justice Marshall asked "if [the] duties continue, though the person be changed."[5] *United States v. Maurice*, 26 F. Cas. 1211, 1214 (C.C.D. Va. 1823) (No. 15,747) (Marshall, C.J.); *see also Auffmordt*, 137 U.S. at 327 (relying on *Maurice* in a continuing-position analysis).

Zafirov and the United States argue that relators do not occupy a continuing position because (1) any position they have is temporary; (2) they do not receive a continuing emolument; and (3) their duties are personal because if the relator drops out of a case, nobody can replace him. On the other hand, the defendants argue that in certain circumstances a new relator can take over an existing case from a previous relator and that the FCA created a continuous "office of relator" that relators can occupy for years at a time given the length of some FCA cases. Zafirov and the United States are correct: relators do not hold a continuing position.

[5] The district court looked to a framework created by the Second Circuit for determining whether a position is "continuing." *Zafirov*, 751 F. Supp. 3d at 1315–16. That framework considers whether (1) the position is not personal to a particular individual; (2) the position is not transient or fleeting; and (3) the duties of the position are more than incidental. *See United States v. Donziger*, 38 F.4th 290, 297 (2d Cir. 2022). The Second Circuit's test reflects its own distillation of Supreme Court caselaw. *Id.* That test is not binding on this Court, and we decline to adopt it; instead, we rely directly on the guidance the Supreme Court has provided. *See Commodores Ent. Corp. v. McClary*, 879 F.3d 1114, 1133 (11th Cir. 2018) ("[W]e are not bound by the determinations of another circuit court.").

First, we address a relator's tenure and determine whether it is "permanent" as opposed to "occasional or temporary." *Germaine*, 99 U.S. at 511–12. In *Germaine*, the Supreme Court held that a surgeon appointed by the Commissioner of Pensions to examine pension applicants did not have a permanent tenure because he acted only "when some . . . claimant of a pension present[ed] himself for examination," so the surgeon may have conducted "fifty of these examinations in a year, or none." *Id.* at 512. In addition to focusing on the "intermittent" nature of the surgeon's duties, the Court relied on the fact that the surgeon was not required to keep a place of business. *Id.* The Court conducted a similar analysis in *Auffmordt* when it held that a merchant appraiser responsible for appraising imported merchandise had an occasional and temporary role because he had "no general functions" and acted only "occasionally" when an emergency arose and his expertise was requested for a reappraisal. 137 U.S. at 326–27. Like the surgeon in *Germaine* and the appraiser in *Auffmordt*, a relator's tenure is occasional and temporary because it lasts the length of one case, a relator may bring multiple cases in a year or none, and relators are not required to keep a place of business. And if, for example, the government or the court dismisses a relator's case or if the case settles, the relator has no remaining duties. Accordingly, a relator's intermittent, nonpermanent tenure tends to show that he does not hold a continuing position. *See id.*

We now turn to the duration of a relator's role. While the defendants argue that some relators pursue FCA cases for several years, that fact does not alter our conclusion that relators do not

hold a continuing position. It is true that some relators litigate actions for multiple years (while others may have their cases dismissed within the 60-day seal period), but the Supreme Court has not focused on the overall length of a person's time fulfilling his duties when evaluating the duration of the position. For example, in *Germaine* the Court recognized that the surgeon appointed to examine pension applicants could act in his role for at least a year. *See* 99 U.S. at 512. But it did not say that the duration of the surgeon's role therefore indicated that the surgeon held a continuing position. *See id.* Instead, the Court evaluated duration the same way it assessed "tenure"—by asking whether the surgeon's duties were "permanent" or "occasional and intermittent." *Id.* at 511–12. In *Auffmordt*, the Court again analyzed tenure and duration in tandem and held that the customs appraiser did not have a role with "any duration as to time" because his employment did not "extend[] over any case further than as he is selected to act in that particular case." 137 U.S. at 327. As we described above, a relator does not have a permanent tenure, and he therefore does not have a position with duration that makes him an officer; a relator's duties do not "extend[] over any case further than as he is selected to act" when the government declines to intervene. *See id.*

Next, we turn to another critical characteristic of an officer: that he receives a "continuing emolument." *Auffmordt*, 137 U.S. at 327. To the extent that a relator's entitlement to a portion of the judgment in a successful FCA case can be considered an

"emolument,"[6] it certainly is not "continuing." *See id.* The Supreme Court's decision in *Germaine* is again instructive on the issue of a "continuing" emolument. There, the Court held that the surgeon appointed to examine pension applicants did not receive a continuing emolument and was thus not an officer of the United States because (1) the surgeon was paid an amount contingent on the number of examinations he performed; (2) "[n]o regular appropriation [was] made to pay his compensation"; (3) he worked on an "occasional and intermittent" basis; and (4) there was "no penalty for his absence from duty or refusal to perform, except his loss of the fee in the given case." *Germaine*, 99 U.S. at 512. Similarly, a relator (1) only receives payment as a one-time award contingent on the success of his case; (2) receives compensation through a portion of the judgment, if any, not through any regular appropriation; (3) works on an intermittent basis (whenever he has a claim to pursue and the litigation is active); and (4) faces no penalty for a refusal to perform except for the loss of his opportunity to receive a contingent fee for succeeding in a given case. *See* 31 U.S.C. § 3730(d). Like a relator's intermittent tenure, his lack of a continuing emolument counsels finding that he is not an officer of the United States.

Finally, we assess a relator's duties. A relator occupies a personal role, not one where his "duties continue, though the

[6] An emolument is "[a]ny advantage, profit, or gain received as a result of one's employment or one's holding of office." *Emolument*, Black's Law Dictionary (12th ed. 2024).

person be changed." *See Maurice*, 26 F. Cas. at 1214. A relator assumes a duty to litigate each case that he files, and his role in the case cannot be assumed by anybody else (except for the Attorney General when the government intervenes). *See* 31 U.S.C. § 3730(b)(5); *id.* § 3730(b)(4)(A), (c)(1). The defendants resist this conclusion, claiming that one relator can replace another if a relator who filed an FCA claim "dies or goes into bankruptcy." The defendants' argument mischaracterizes what happens when a relator dies or goes bankrupt. In those instances, another relator does not replace the deceased or bankrupt; instead, a personal representative or trustee of the relator's estate can carry forward the case on his behalf. *See United States v. NEC Corp.*, 11 F.3d 136, 139 (11th Cir. 1993) (allowing an FCA qui tam suit to continue after a relator died with that relator's personal representative continuing to pursue the action); *see also United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 364 (5th Cir. 2014) (holding bankruptcy trustee was proper party to bring FCA claim belonging to relator's bankruptcy estate). So even in the limited contexts where a relator dies or goes bankrupt, the role of relator remains personal because the relator is not replaced; his estate carries forward the claim on his behalf. The fact that a relator's duties are personal and cannot be assumed by others points to the position of relator not being a continuing one.[7] *See Maurice*, 26 F. Cas. at 1214.

---

[7] Relatedly, the defendants cite *Kellogg Brown & Root Services, Inc. v. United States ex rel. Carter*, 575 U.S. 650 (2015), for the proposition that the "office of relator" is not personal and exists independent of the person bringing a qui tam action because "if a relator's complaint is dismissed on procedural

In sum, we find that, while the length of any given FCA case is uncertain and variable, relators have temporary tenure and duration, no continuing emolument, and personal duties, so they do not occupy a continuing position.

None of the defendants' counterarguments are persuasive. To begin, the defendants point to *Morrison v. Olson*, 487 U.S. 654 (1988), to support their argument that relators hold continuing positions. But the personal role of relators is easily distinguishable from the independent counsel the Supreme Court held was an officer in *Morrison*. *Morrison* concerned a statute that "allow[ed] for the appointment of an 'independent counsel' to investigate and, if appropriate, prosecute certain high-ranking Government officials for violations of federal criminal laws." *Id.* at 660. The Supreme Court held that an independent counsel served a "temporary" role and was "appointed essentially to accomplish a single task," but was nonetheless an officer of the United States. *Id.* at 672. Like the independent counsel at issue in *Morrison*, relators have "no ongoing responsibilities that extend beyond the accomplishment of [a defined] mission." *Id.* But unlike relators, independent counsels

grounds, another relator may step into the role and raise the same claims." The defendants misunderstand the holding in *Carter*. Nothing in *Carter* authorizes one relator to "step into the role" and assume a qui tam action for another. Instead, *Carter* simply held that an FCA action dismissed on procedural grounds is no longer "pending" for purposes of the statute and therefore does not bar a later separate FCA action that raises the same claims as the prior dismissed action. *See* 575 U.S. at 662–64. *Carter* does not undermine our conclusion that the role of a relator is personal and not a continuing office.

did not have duties that were personal. If an independent counsel resigned or was removed, his replacement picked up the work right where his predecessor left off, even if it was in the middle of a case or investigation. *See id.* at 661 n.5. In fact, picking up the work of the prior independent counsel is exactly what happened in *Morrison*—Morrison, the appellant, was appointed as independent counsel when James C. McKay, the previous independent counsel, resigned. *Id.* at 667. Morrison was McKay's "replacement, with the same jurisdiction." *Id.* In contrast, the FCA's qui tam provisions do not provide any mechanism for a relator to be replaced if they "resign" by abandoning their claim. And independent counsels were on "the public payroll," *id.* at 683, as part of a "permanent indefinite appropriation . . . within the Department of Justice." 28 U.S.C. § 594; Pub. L. No. 100-202, Title II, 101 Stat. 1329 (1987). A relator, on the other hand, simply takes a portion of the judgment or settlement that he helps the government obtain, which is not an appropriation, much less a regular one. So, while *Morrison* demonstrates that a position's temporary nature is not sufficient on its own to show that a role is not continuing, other aspects of a relator's role—the lack of a continuing emolument or continuing duties—clearly distinguish relators from officers such as independent counsel.[8] And despite

[8] The defendants note "another helpful analogy" by the district court in which the district court compared relators to bank receivers who are officers of the United States even though their duties last for only a single receivership. We do not read the defendants' brief as pressing a separate argument based on a bank receiver analogy because the defendants mention this analogy in passing

the defendants' argument to the contrary, relators occupy a role comparable to the customs appraiser in *Auffmordt*, who was not an officer. The Supreme Court held that the customs appraiser did not occupy a continuing position because he was "selected for [a] particular case" and "for his special knowledge," and he did not have any "general functions." *Auffmordt*, 137 U.S. at 327. Similarly, relators have special knowledge about fraud in a particular case but fulfill no general functions. *See* 31 U.S.C. § 3730(e)(4)(A) (requiring dismissal, unless the government opposes, of actions based on allegations publicly disclosed in enumerated channels, unless the relator is an original source).

Finally, the defendants argue that the FCA created an "office of relator" that is continuous regardless of the status of any one case because various private parties can become relators and occupy the office of relator at any time. So, the defendants argue, quoting from the district court's dismissal order, "the office of relator is 'continuous even if it is not continually filled,' and it is generally held at any given time by numerous private parties conducting litigation on behalf of the United States." First, we note

---

and do not provide any analysis. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682 (11th Cir. 2014) (explaining that a party fails to adequately press an issue when it simply makes passing references to a matter in a brief without supporting arguments and authorities). In any event, like independent counsel, when receivers died or were removed, a successor took over their duties—the position was not "vacate[d]." *See Stanton v. Wilkeson*, 22 F. Cas. 1074, 1075 (S.D.N.Y. 1876). In other words, the duties of the receivership continued "though the person [was] changed." *Maurice*, 26 F. Cas. at 1214.

that there is no "office of relator"; that term is not in the FCA or any other law. Second, the defendants' argument improperly analyzes whether the *office* is a continuing one, when the proper inquiry is whether an individual occupies a continuing *position*. To determine whether a position is continuing, the Supreme Court has looked at the specific actions the individual undertakes as part of his role in that position and other characteristics of the role when it is filled.[9] *See, e.g.*, *Auffmordt*, 137 U.S. at 327 (considering the scope of the occupier's duties and whether they include "general functions"); *Germaine*, 99 U.S. at 512 (analyzing the frequency of duties the position required and its compensation structure). Even accepting the defendants' framing that there is an unfilled "office of relator," no precedent has ever looked at the existence of an unfilled position and determined that because it could be filled (*e.g.*, by a relator filing a complaint), the individual that fills that position occupies "a 'continuing' position established by law." *Lucia*, 585 U.S. at 245 (quoting *Germaine*, 99 U.S. at 511). We decline to do so for the first time in this case.

Because we conclude that relators do not occupy a continuing position, we hold that relators are not officers of the United States subject to the Appointments Clause.

[9] An evaluation of the fictional "office of relator" departs from the Supreme Court's methodology in *Auffmordt* and *Germaine*. In those cases, the Court did not evaluate a nonexistent office of the customs appraiser or office of the civil surgeon. Instead, it evaluated the role of the individual customs appraiser and the civil surgeon at issue in those respective cases. *Auffmordt*, 137 U.S. at 327; *Germaine*, 99 U.S. at 512.

## IV. Conclusion

The qui tam provisions of the FCA do not violate the Appointments Clause. Accordingly, we vacate the district court's order dismissing this case and remand for the district court to evaluate the defendants' Take Care Clause and Vesting Clause arguments.

**VACATED AND REMANDED.**

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

September 01, 2026

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 24-13581-AA
Case Style: Clarissa Zafirov v. Florida Medical Associates, LLC, et al
District Court Docket No: 8:19-cv-01236-KKM-SPF

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing or rehearing en banc is governed by 11th Cir. R. 40-2. Please see FRAP 40 and the accompanying circuit rules for information concerning petitions for rehearing. The Court has proposed amending 11th Cir. R. 40-1 (Number of Copies) to no longer require paper copies of a petition for panel rehearing or a petition for rehearing en banc. Based on the proposed amendment, other than an original petition filed in paper by a non-electronic filer, **parties are asked not to submit any paper copies** of a petition for panel rehearing or a petition for rehearing en banc.

Costs
No costs are taxed.

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion